IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,                    )
                                             )
            Plaintiff,                       )
                                             )
v.                                           )            No. CV 14-1025 RB/SMV
                                             )
THE CITY OF ALBUQUERQUE,                     )
                                             )
            Defendant.                       )

**MEMORANDUM OPINION AND ORDER**

Several parties filed motions to intervene in this litigation between the United States Department of Justice and the City of Albuquerque.   Having reviewed the parties' submissions and arguments, the Court **GRANTS** the Albuquerque Police Officers' Association motion to intervene. (Doc. 40.)   Additionally, the Court **DENIES** the motions to intervene from several concerned citizens.   (Docs. 14, 16-33, 36-39.)

I.      **BACKGROUND**

Based on reports of police misconduct, the United States Department of Justice conducted an extensive, two-year long investigation into the Albuquerque Police Department's use of force. (Compl. Ex.1 at 2-3, Doc. 1-1.)   In April 2014, the Department of Justice revealed its findings that the Albuquerque Police Department uses deadly and non-lethal force excessively against suspects. (*Id.*)   Subsequently, as authorized by the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, the United States of America filed a Complaint against the City of Albuquerque, claiming that the City's police force engages in a pattern or practice of excessive force in violation of the Fourth Amendment.   (Compl.)   The United States seeks a declaration

against the City and an injunction against the City, its officers, agents, and employees.   (Compl. ¶ 28.)

On November 14, 2014, within days of the Complaint, the parties filed a joint motion to approve a settlement agreement.   (Doc. 9.)   The Settlement Agreement represents over five months' negotiation between the two parties.   (Doc. 9 at 2.)   The proposed Agreement sets up a comprehensive framework for reform.   The parties negotiated provisions pertaining to the use of force, crisis intervention, training, investigations, community engagement, and more.   (Agmt., Doc. 9-1.)   The Agreement also provides the parties flexibility, reserving the right to jointly modify the Agreement or implement alternative provisions.   (Agmt. ¶ 338.)

The Court invited interested parties to express their views on the proposed Agreement by filing an amicus brief and presenting oral argument.   (Doc. 35.)   Seven groups, including the Albuquerque Police Officers' Association ("Union"), presented their arguments at the fairness hearing on January 21, 2015.   (Doc. 90.)   Mr. Antoine Pirard, a concerned citizen, filed two amicus briefs, though he did not appear at the fairness hearing.   (Docs. 88, 95.)

On December 18, 2014, the Union filed a motion to intervene as a defendant in the case. (Doc. 40.)   The Union argued that it had sufficient interest in the suit, and its remedy, to intervene into the action as a matter of right.   (Mot. Intervene at 3, Doc. 41.)   In the alternative, the Union asked the Court for leave to intervene permissively.   (*Id.* at 11.)

For the past forty years, the Union has been the exclusive bargaining representative of the police force.   (*Id.* at 1.)   As the exclusive representative of all non-probationary police officers in Albuquerque, the Union has statutory authority to bargain for its members' terms and conditions of work.   In July 2014, the Union and the City negotiated their current collective bargaining

2

agreement ("CBA").   (Doc. 93 at 1-2.)   The Union and City took four to five years to negotiate

the CBA.   (Doc. 66 at 2; Doc. 41 at 10.)   The City does not contest any of these facts.   (Doc 93 at

1.)   Nevertheless, both the City and the United States oppose the Union's motion to intervene.

(Docs. 93, 94.)

Separately, several concerned citizens, including Mr. Pirard, filed motions to intervene.

(Docs. 14, 16-33, 36-39.)   The motions are identical forms that support Mr. Pirard's motion to

intervene and dismiss.   The Court now considers the motions from all the proposed intervenors.

## II.   LEGAL STANDARD

Under the Rules of Civil Procedure, a party can intervene as of right into a suit if the party:

> [C]laims an interest relating to the property or transaction that is the subject of the
> action, and is so situated that disposing of the action may as a practical matter
> impair or impede the movant's ability to protect its interest, unless existing parties
> adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

The Tenth Circuit "has tended to follow a somewhat liberal line in allowing intervention."

*Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (quoting

*Coalition of Arizona/New Mexico Counties for Stable Econ. Growth v. Dep't of Interior*, 100 F.3d

837, 840 (10th Cir. 1996)).   "The effect of [Rule 24(a)] is to provide that if a person who would be

affected *in a practical sense* by the disposition of an action is not joined as a party, he has a right to

intervene unless he is adequately represented by an existing party."   *San Juan Cnty. v. United

States*, 503 F.3d 1163, 1189 (10th Cir. 2007) (en banc) (quoting the Committee on Rules of

Practice & Procedure's commentary on the 1966 amendments to the Rules of Civil Procedure).

Alternatively, a party can intervene permissively.   To do so, a party must file a timely

motion and show the court that it "has a claim or defense that shares with the main action a

common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  The Court has discretion to permit the party to join the action.   Fed. R. Civ. P. 24(b)(1).

### III.    THE UNION'S MOTION TO INTERVENE

The Union requests intervention for both the liability and the remedial phases of litigation. Most of the Union's argument, however, focus on intervention into the remedial phase.  The Court will rule currently on the Union's motion to intervene in the remedial phase and will defer the ruling on the motion to intervene in the liability phase.  *See San Juan Cnty.*, 503 F.3d at 1189 (discussing a district court's flexibility in permitting intervention for certain matters).  If the Court oversees a liability phase in this litigation, it will consider the Union's motion to intervene as timely.

### A.  The Union's Intervention as of Right

The Union claims that it must be allowed to intervene into the action as of right under Rule 24(a).  (Doc. 41 at 3.)   Courts sometime subdivide Rule 24(a)'s requirements for intervention as of right into a four-part test.   A proposed intervenor may intervene as of right if: (1) the motion is timely; (2) the intervenor claims an interest relating to the property or transaction at issue in the litigation; (3) the intervenor's interest may as a practical matter be impaired or impeded; and (4) the intervenor's interest is not adequately represented by existing parties.  *Coalition*, 100 F.3d at 840.

The parties agree that the Union's motion is timely and that its interests are not necessarily or adequately represented by the existing parties.   Both the City and the United States, however, argue that the Union has no interest in the litigation and that none of the Union's interests are impaired or impeded by the action.  (Docs. 93, 94.)   The analysis of these two prongs necessarily

4

overlap.    The Tenth Circuit, in an *en banc* decision, recently characterized this as the "impaired-interest requirement."   *San Juan Cnty.*, 503 F.3d at 1190.   Accordingly, the Court will analyze these two prongs together.

In order to intervene in this litigation, the Union "must have an interest that could be adversely affected by the litigation."   *Id.* at 1199.   "This burden is minimal."   *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1253 (10th Cir. 2001).   The requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."   *Coalition*, 100 F.3d at 841; *see also Utahns*, 295 F.3d at 1115.   Because there is no well-defined test, a court's analysis of a proposed intervenor's interest is "highly fact-specific" and requires the court to exercise "practical judgment."   *San Juan Cnty.*, 503 F.3d at 1199.

The City argues that the Union has no interest in this litigation.   The City relies on a district court case from New York for the proposition that the union has no significant protectable interest.   (Doc. 93 at 5.)   In *Floyd v. New York*, a court in the Southern District of New York denied several police unions' motions to intervene in the "stop and frisk" litigation.   302 F.R.D. 69 (S.D.N.Y. 2014).   The court's decision in that case was largely colored by the fact that the motions to intervene were filed five to thirteen years late—years after the court had made a liability determination and entered a judicial decree and remedial order.   *Id.* at 84.   The court had little sympathy for the unions' attempts to shape the court's chosen remedy given the untimeliness of the motions.   *Id.* at 112.   Additionally, the Court repeatedly noted that the unions' briefs were cursory, inadequate, and relied in large part on the argument that the unions needed to intervene on behalf of their members' reputational interests.   *Id.* at 100, 104, 109.   The *Floyd* case is

5

distinguishable based on Tenth Circuit precedent, the timing of the motions, and the arguments the Union makes.

The Union has stated a sufficient interest in this case. Here, although the City is the named Defendant, the Complaint seeks an injunction against the City, its officers, agents, and employees. (Compl. ¶ 28(b)-(c).) Practically speaking, the employees named in these clauses must refer to the police officers that the City employs. Although the individual officers are not parties to the Agreement and the Court would not hold them in contempt of court for failing to abide by any injunction, the order must apply to the officers for any injunction to be effective. Indisputably, the Union represents those officers' interests. If the police officers' interests could be impaired by the injunction, then their representative should be permitted to intervene.

Moreover, the Union is the exclusive bargaining representative of the police officers and has been for forty years. (Mot. Intervene at 1, Doc. 41.) As the recognized representative of Albuquerque police officers' interests, New Mexico law gives the Union exclusive bargaining rights. *See* Public Employee Bargaining Act ("PEBA"), N.M. Stat. Ann. §§ 10-7E-1, *et al.*; Labor Management Relations Ordinance ("LMRO"), Albuquerque, N.M., Amended Code of Ordinances §§ 3-2-1, *et al.* These statutes codify the Union's right to represent its members and the City's obligation to bargain with the Union over the terms and conditions of Union members' work. PEBA § 10-7E-15; LMRO §§ 3-2-4 and -7. With the protection of these laws, the Union negotiated a collective bargaining agreement ("CBA") with the City in July 2014. (Doc. 93 at 1-2.) The Union has an interest in ensuring the integrity of its CBA. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 771 (1983) ("[F]ederal labor policy [demands] that parties to a collective bargaining agreement must have reasonable assurance that their contract will be

6

honored.").

  The Union argues that the proposed decree could impair its interests.   Although the Union relies largely on out-of-Circuit precedent, the Court finds the argument persuasive.   First, the Union argues that the consent decree could impede its rights to negotiate over mandatory subjects of bargaining, specifically the terms and conditions of its members' employment.   Second, the Union fears that the final decree could conflict with the CBA.   It argues that "[t]o the extent that [the decree] contains or might contain provisions that contradict terms" of the CBA, the Union has an interest in the litigation.   *See United States v. Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002). In its amicus curiae brief, the Union identified several provisions that allegedly conflict with the CBA.   (Union Amicus Brief at 7-9, Doc. 66.)

  The City and the United States take great pains to explain why the Agreement does not necessarily conflict with the CBA.   The United States explains that the Agreement does not "require" a conflict.   (USA Resp. at 12-13, Doc. 94.)   Meanwhile the City expounds that the Agreement "can be read consistently" with the CBA.   (City Resp. at 10, Doc. 93.)   Inherent in the parties' arguments is the recognition that the Agreement *could* conflict with the CBA.   At one point, the parties acknowledge that the Agreement does conflict with the CBA, but insist that the Agreement complies with the "purpose of the CBA."   (City Resp. at 10; USA Resp. at 14.)   The parties cannot unilaterally change the CBA by their own agreement.   *See W.R. Grace*, 461 U.S. at 771 ("Absent a judicial determination, the [EEOC], not to mention the Company, cannot alter the collective bargaining agreement without the Union's consent.").

  More importantly, the guiding legal question at this stage is not whether there is an actual conflict, but the potential for a conflict. Even if the parties could persuade the Court that the

Agreement as written will not conflict with the CBA, the inquiry is not complete.   In the Agreement, the parties reserved the right to jointly modify the Agreement or implement alternative provisions at any time.   (Agmt. ¶ 338.)   This provision creates a situation in which the Union's rights could be impaired by the decree, although they may not be currently impaired.   If the Agreement "*may* as a practical matter impair or impede [the Union's] ability to protect its members' interests," then the Union has shown it has a sufficient interest to intervene.   *See Utahns*, 295 F.3d at 1116 (emphasis added).   As the *en banc* panel of the Tenth Circuit noted, just because a proposed intervenor's "interests may not be injured" in a likely resolution of the case, that does not undermine a party's entitlement to intervene.   *San Juan Cnty.*, 503 F.3d at 1200.   In fact, the Court hopes that the parties will resolve any potential conflicts on their own.

The City argues that legally, the Union's CBA interests will not be impaired.   Relying on *Johnson v. Lodge No. 93*, the City argues that it can enter into the decree based on the CBA's management rights provision.   (Doc. 93 at 7-8.)   In *Johnson*, the district court permitted the union to intervene in the case, but denied the union's attempts to block the consent decree between the two original parties.   393 F.3d 1096, 1100-01 (10th Cir. 2004).   Because the applicable law is so different for the two phases of litigation, the Court does not find the case helpful at this stage. "The issue [at the motion to intervene stage] is the *practical* effect of a judgment . . ., not the *legally compelled* effect."   *San Juan Cnty.*, 503 F.3d at 1200.   Furthermore, the Tenth Circuit had to interpret Oklahoma law to determine whether the decree, the union's CBA rights, the union's statutory rights, and the City's management functions and zipper clause created a conflict. *Johnson*, 393 F.3d at 1102.   When the time comes to examine actual conflict, the Court will have to apply New Mexico law.

8

Finally, both the City and the United States urge the Court to deny intervention on the ground that the Union's CBA is only temporary and will expire in July 2015.   (City Resp. at 1-2; USA Resp. at 6-7.)   The Court finds this argument unpersuasive in light of well-established labor law precepts.   Regardless of the date on the cover page, the City cannot "unilaterally impose conditions of employment once a CBA has expired."   *Am. Fed. of State v. City of Albuquerque*, 304 P.3d 443, 446 (N.M. Ct. App. 2013); *see also* N.M. Stat. Ann. § 10–7E–26 (requiring expired CBAs to remain in effect until new agreements are reached).   Considering that the current CBA took four to five years to negotiate (Doc. 66 at 2; Doc. 41 at 10), the parties may be contending with the requirements of the current CBA for the entire duration of the consent decree.   The parties cannot simply ignore the CBA and the Union's demands.   Police buy-in will be key to the success of this decree.   Similarly, the Union's cooperation will be crucial to the smooth implementation of the Agreement.

Because the Court finds that the Union has met the requirements of Rule 24(a)(2), the Court grants the Union's motion to intervene as of right. The Court considers this to be an equitable and efficient resolution.   The City insists that "in the event the City violates the CBA in implementing the settlement agreement," the Union could seek damages against the City in state court.   (Doc. 93 at 15.)   This is an inefficient result, especially considering that this Court will retain jurisdiction over the decree for years to come.   Roping in another court could lead to conflicting interpretations of the consent decree's meaning.   Permitting the Union to intervene at this stage will ensure that its objections and concerns are fully addressed in the final consent decree.   Granting intervention does not mean the Union has the power to veto the proposed Agreement.

### B.  The Union's Standing to Intervene

In the alternative, the City argues that the Union cannot intervene, even if it can show an impaired interest, because it has no Article III standing.   (Doc. 93 at 14.)   Some courts have ruled that, in addition to satisfying the requirements of Rule 24(a), an intervenor must have standing. *See, e.g.*, *In re Endangered Species Act Section 4 Deadline Litigation*, 704 F.3d 972 (D.C. Cir. 2013).   However, the Tenth Circuit has no such requirement.   *San Juan Cnty.*, 503 F.3d at 1171. "[S]o long as there was Article III standing for the original party on the same side of the litigation as the intervenor, the intervenor need not itself establish standing." *Id.*   The Court does not comment on intervenors' rights to appeal the litigation if the original party with standing does not appeal.   *See, e.g.*, *Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) (holding that proponents of California's Proposition 8 could not pursue appeal after the state defendants declined appeal).

### C.  Permissive Intervention

Because the Court finds that the Union may intervene as a matter of right, the Court does not address the Union's right to intervene permissively.

### D.  Intervenor Status

The Union has already aired some of its objections in its role as amicus curiae.   However, "the right to file a brief as *amicus curiae* is no substitute for the right to intervene as a party in the action under Rule 24(a)(2)."   *Coalition*, 100 F.3d at 844; *see also Utahns*, 295 F.3d at 1115.   The Union has indicated that it has additional objections to the proposed Agreement.   (Union Reply at 6, Doc. 100.)   The Court now orders the Union to state its formal objections on the record, as a party to the case, within fourteen days of this decision.   Responses and Replies will be due according to the Local Rules.

10

As the parties craft their objections and responses, the Court reminds the parties that the Court will have to interpret New Mexico statutes and New Mexico contracts.   Accordingly, the Court asks the parties to analyze the issues, and in particular the CBA, under New Mexico law and, when appropriate, the National Labor Relations Act.   *See Regents of Univ. of New Mexico v. New Mexico Fed'n of Teachers*, 962 P.2d 1236, 1243 (N.M. 1998) (explaining that given the recent passage of New Mexico's Public Employee Bargaining Act, New Mexico courts often look to "well-settled, long-standing interpretation of the NLRA" for guidance).

## IV.    THE CONCERNED CITIZENS' MOTIONS TO INTERVENE

Nine concerned citizens also moved to intervene in this case.   (Docs. 14, 16-33, 36-39.) Originally, twenty-three citizens filed motions; however, several persons withdrew the documents. (Docs. 72, 74-75, 78-87, 89.)   At least one person withdrew her motion complaining that the motion was filed fraudulently and without her permission.   (Doc. 86.)   The bulk of the remaining motions are identical forms with spaces where proposed intervenors can insert their name and contact information.   (Docs. 16-33, 36-39.)   The form motions appear to support the original filings of Mr. Antoine Pirard, who moved to intervene and dismiss the suit.   (Docs. 14-15.) Because the form motions include no argument of their own, the Court will consider the concerned citizen's motions in conjunction with Mr. Pirard's.

Based on his two motions and two amicus briefs, the Court construes Mr. Pirard's primary concern to be the City's commitment to abiding by the Constitution and laws of the United States. (Docs. 14-15, 88, 95.)   He objects to the "lawlessness within police departments."   (Doc. 88 at 2) (emphasis omitted).

Although Mr. Pirard may have an interest in ensuring that local police departments operate

11

effectively and within the confines of the Constitution, his interest is adequately represented by the United States.   Here, the United States seeks to protect the interest of the public and to enforce the Constitution.   Where the government is pursuing a single objective on behalf of the public, adequate representation is presumed.   *See San Juan Cnty.*, 503 F.3d at 1204 (citation omitted); *compare National Farm Lines v. Interstate Commerce Commission*, 564 F.2d 381, 382 (10th Cir. 1977) (finding that a governmental agency did not adequately represent an intervenor's interest where the government sought "to protect not only the interest of the public but also the private interest of the petitioners").   "[R]epresentation is *adequate* 'when the objective of the applicant for intervention is identical to that of one of the parties.'"   *San Juan Cnty.*, 503 F.3d at 1204 (quoting *City of Stilwell v. Ozarks Rural Elec. Co-op. Corp.*, 79 F.3d 1038, 1042 (10th Cir. 1996)).

When the government acts on behalf of a constituency it represents, the assumption is that the government adequately represents the constituents.   Here, the United States initiated this law suit to protect the interest of Mr. Pirard, the concerned citizens, and all the residents of Albuquerque.   Unlike the Union's interest, Mr. Pirard's interest in the litigation is being effectively represented by the United States.   For that reason, Mr. Pirard cannot intervene as of right.   Similarly, Mr. Pirard has not stated a cognizable claim as a basis for permissive intervention.   Thus, the Court declines Mr. Pirard's request under Rule 24(a) and (b).

Because the Court denies Mr. Pirard's motion to intervene, it also denies the motions from the concerned citizens.   Additionally, because only a party to the action can file dispositive motions, Mr. Pirard's motion to dismiss is denied.

12

## V.     CONCLUSION

The Court grants the Union's motion to intervene as of right.   The Court now orders the Union to formally state its objections to the proposed Settlement Agreement within fourteen days of this Order.

The Court denies Mr. Pirard's motion to intervene and the form motions from eight concerned citizens.   In keeping with this decision, the Court also denies Mr. Pirard's motion to dismiss.

**THEREFORE,**

**IT IS ORDERED** that:

(1) The Albuquerque Police Officers' Association motion to intervene (Doc. 40) is **GRANTED**;

(2) The Albuquerque Police Officers' Association is **ORDERED** to file its objections to the proposed Agreement within fourteen days of this Order, and Responses and Replies will be due pursuant to the Local Rules;

(3) The motions to intervene from Mr. Pirard and the concerned citizens (Docs. 14, 16-33, 36-39) are **DENIED**; and

(4) Mr. Pirard's motion to dismiss (Doc. 15) is **DENIED**.

**ROBERT C. BRACK**
United States District Judge

13