IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| THE CITY OF ALBUQUERQUE, ) | |
| ) | No. CIV 14-1025 RB/KK |
| Defendant, ) | |
| ) | |
| v. ) | |
| ) | |
| THE ALBUQUERQUE POLICE OFFICERS' ) | |
| ASSOCIATION, ) | |
| ) | |
| Intervenor. ) | |

**MEMORANDUM OPINION AND ORDER**

Three community groups, Disability Rights New Mexico, the American Civil Liberties Union of New Mexico, and the Native American Voters Alliance Education Project ("Proposed Intervenors"), all seek permission to intervene in this litigation between the United States Department of Justice and the City of Albuquerque. (Doc. 107.) Previously, the Albuquerque Police Officers' Association's motion to intervene was granted. The three current parties opposed the community groups' motion. (Docs. 117, 120, 121.) Having reviewed the parties' submissions and arguments, the Court **DENIES** the motion.

**I.    BACKGROUND**

Based on reports of police misconduct, the United States Department of Justice conducted an extensive investigation into the Albuquerque Police Department's use of force. (Compl. Ex.1 at 2-3, Doc. 1-1.) In April 2014, the Department of Justice revealed its findings

that the Albuquerque Police Department uses deadly and non-lethal force excessively against suspects. (*Id.*) During its investigation and after announcing its findings, the Department of Justice met with several members of the Albuquerque community to seek their input. (Compl. Ex.1 at 2, Doc. 1-1; Doc. 120 at 4.) The Proposed Intervenors all recount having met with the Department of Justice regarding Albuquerque Police Department reform. (Doc. 129 at 2.)

Subsequently, as authorized by the Violent Crime Control and Law Enforcement Act of 1994, 42 U.S.C. § 14141, the United States of America filed a Complaint against the City of Albuquerque, claiming that the City's police force engages in a pattern or practice of excessive force in violation of the Fourth Amendment. (Compl.) On November 14, 2014, within days of the Complaint, the parties filed a joint motion to approve a settlement agreement. (Doc. 9.) The Settlement Agreement represents over five months' negotiation between the United States and the City of Albuquerque. (Doc. 9 at 2.) The Agreement sets up a comprehensive framework for reform. The parties negotiated provisions pertaining to the use of force, specialized units, crisis intervention, training, misconduct investigations, supervision, recruitment, officer health, and community engagement. (Agmt., Doc. 9-1.)

To help evaluate the fairness of the Agreement, the Court invited interested parties to express their views on the Agreement by filing amici briefs and presenting oral argument. (Doc. 35.) Seven groups presented their arguments at the fairness hearing on January 21, 2015. (Doc. 90.) As part of a coalition dubbed "APD Forward," the three Proposed Intervenors submitted an amicus brief and presented oral argument. (Doc. 56 at 1-2.) All the presenters spoke commendably and shared valuable insights into the Settlement Agreement.

In December, several concerned citizens filed motions to intervene. (Docs. 14, 16-33, 36-39.) On December 18, 2014, the Albuquerque Police Officers' Association ("Union") filed a motion to intervene as a defendant in the case. (Doc. 40.) After considering the arguments, the Court granted the Union's motion to intervene and denied the concerned citizens' motions to intervene on February 19, 2015. (Doc. 102.) Additionally, the Court ordered the Union to file any objections to the Settlement Agreement. (*Id.* at 10-11.) The Union completed and filed these objections by March 5, 2015. (Doc. 105.) After this process was complete, the Proposed Intervenors moved to join the lawsuit.

On March 10, 2015, the Proposed Intervenors sought permission to join the litigation as plaintiffs. (Doc. 107.) They claim to have an important interest in the litigation that the United States is not adequately representing. (Doc. 107 at 3, 9.) Unlike the Union Intervenor, the Proposed Intervenors do not claim a right to intervene. Instead, they request permissive intervention. (*Id.* at 2.) All three current parties oppose the motion. (Docs. 117, 120, 121.)

## II. LEGAL STANDARD

Under the Rules of Civil Procedure, a party who "has a claim or defense that shares with the main action a common question of law or fact" may intervene upon a timely motion. Fed. R. Civ. P. 24(b)(1)(B). The Court has discretion to permit the party to join the action. Fed. R. Civ. P. 24(b)(1); *see also City of Stilwell v. Ozarks Rural Elec. Co-op*, 79 F.3d 1038, 1043 (10th Cir. 1996) ("While [the Rule 24(b)] standard is, aptly, 'permissive,' it is also 'a matter within the district court's discretion . . . .'"). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

In addition to the considerations for permissive intervention outlined in the Federal Rules, courts in the Tenth Circuit have the discretion to evaluate additional factors. Courts have

analyzed whether the intervenor's concerns are adequately represented by the exiting parties. *See City of Stilwell*, 79 F.3d at 1043 (affirming district court's reasoning that the proposed permissive intervenor's concerns "can be adequately represented by the existing defendants"). Courts also question whether "intervention would only clutter the action unnecessarily." *Arney v. Finney*, 967 F.2d 418, 421-22 (10th Cir. 1992). An intervenor's interest should "not merely duplicate existing claims, and must bring something more to an action." *Forest Guardians v. Bureau of Land Mgmt.*, 188 F.R.D. 389, 396 (D.N.M. 1999). Finally, a court may consider the availability of an adequate remedy in another action. *See United States v. N. Colo. Water Conservancy Dist.*, 251 F.R.D. 590, 599 (D. Colo. 2008).

### III. DISCUSSION

The Proposed Intervenors represent the interests of Albuquerque's Native American community, homeless community, and disabled community. (Doc. 107 at 1.) Although the Proposed Intervenors present their claims as a unified whole, the groups and their interests can be disaggregated: Disability Rights represents the disabled community; the ACLU represents the homeless community; and the Native American Voters Alliance Education Project represent the Native American community. (*Id.* at 3-4.) In its evaluation of the intervention application, the Court will consider the Proposed Intervenors' application both as a whole and each individual group's claims.

#### A. Common Questions of Law and Fact

To assess the nature of the Proposed Intervenors' claims, the Court turns to the proposed complaint. (Ex. 1, Doc. 106-1.) In their briefing, the Proposed Intervenors profess to have claims under the Fourth, Fifth, and Fourteenth Amendments. (*Id.* at 12.) The Court, however, only finds claims under the Fourth and Fourteenth Amendments.

The Proposed Intervenors correctly assert that they have questions of law and fact in common with the main action. All three Proposed Intervenors allege that the Albuquerque Police Department uses excessive force in violation of the Fourth and Fourteenth Amendments. (*Id.* ¶¶ 59-61.) They also claim that the City of Albuquerque failed to train officers in the use of force and ratified unconstitutional conduct. (*Id.* ¶¶ 70-93.) These allegations echo the United States' Complaint. (Compl., Doc. 1.) The Settlement Agreement extensively addresses use of force policies, training, and supervision. (Agmt. ¶¶ 13-89, 138-231, Doc. 9-1.) Disability Rights New Mexico also alleges that persons with mental health disorders are particularly vulnerable to incidents of excessive force. (Doc. 106-1 ¶¶ 63-65.) The United States made a similar finding (Compl. ¶ 15), and the Settlement Agreement institutes several new measures to remedy the finding (Agmt. ¶¶ 110-137).

Without a doubt, the Proposed Intervenors' complaint shares these questions of law and fact with the main action. In fact, they are duplicative. The Proposed Intervenors' concerns are being adequately addressed by the existing parties. *See City of Stilwell*, 79 F.3d at 1043 (affirming denial of permissive intervention where the applicant's concerns were adequately represented); *Forest Guardians*, 188 F.R.D. at 396 (reasoning that an intervenor's interest should "not merely duplicate existing claims, and must bring something more to an action"). The Proposed Intervenors have already had some of their input integrated into the Agreement. (Doc. 121 at 8-9; Doc. 129 at 2.) Disability Rights New Mexico has also participated in a Mental Health Response Advisory Committee created by the Agreement. (Fairness Hr'g Tr. 40:15-18, Doc. 91.) Simply because the Proposed Intervenors have different policy approaches and might have structured the settlement differently does not mean that their concerns are being inadequately represented. *See Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872-73 (10th Cir.

1986) (holding that *in*adequate representation occurs when the parties are colluding, the representative has an adverse interest to the intervenor, or the representative fails to raise the interest).

The Proposed Intervenors' complaint also raises several causes of action that are not currently addressed in the Settlement Agreement.  Specifically, the Native American Voters Alliance Education Project alleges that the Albuquerque Police Department unfairly targets Native American residents, unlawfully stops and frisks Native Americans, and regularly confiscates identification cards, creating hardship for the citizens.  (Doc. 106-1 ¶¶ 20, 24.)  Moreover, the Proposed Intervenor alleges that APD officers show wanton animosity toward Native Americans.  (*Id.* ¶ 25.)  All these allegations support the Proposed Intervenors' claim that the Albuquerque Police Department violates Native American's rights under the Fourteenth Amendment.  (*Id.* ¶¶ 66-67.)  Separately, the ACLU makes similar claims with respect to Albuquerque's homeless community.  (*Id.* ¶¶ 86-69.)  The ACLU decries the "criminalization of homelessness" and disparate policing practices based on socioeconomic circumstances.  (Doc. 107 at 10; Doc. 106-1 ¶¶ 20-22, 68-69.)

These concerns are not currently represented in this litigation.  The Proposed Intervenors raise serious allegations that directly affect Albuquerque citizens' constitutional rights.  Yet, these claims are also beyond the scope of the current litigation.  During its investigation, the United States "did not uncover any evidence indicating that force was applied against Native Americans or people experiencing homelessness" at a disproportionate rate.  (Doc. 120 at 12.)  Defendants, both the City and the Union, are unlikely to concede liability for such allegations.  To test the merits of these claims, the parties would have to engage in significant discovery.  The necessity of discovery has the potential to impede the progress of this litigation.

The Proposed Intervenors technically meet the common question of fact or law requirement for permissive intervention. Yet, the Court has concerns about the wisdom of permitting these alleged claims to go forward in this litigation. With that in mind, the Court considers the remaining factors: timeliness and undue prejudice.

### B. Timeliness

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances ....'" *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)) (explaining factors to consider in a Rule 24(a) motion for intervention). Unsurprisingly, the Proposed Intervenors claim that their application is timely, while the parties claim it is not. (Doc. 107 at 5-6; Doc. 120 at 7-10; Doc. 121 at 5.)

The Proposed Intervenors analogize to two Ninth Circuit cases, *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) and *San Jose Mercury News v. U.S. Dist. Ct.*, 187 F.3d 1096, 1101 (9th Cir. 1999), where the parties timely intervened. (Doc. 107 at 6.) Here, the Proposed Intervenors filed their applications after almost seventeen weeks—five weeks later than the cited cases. *See San Jose Mercury News*, 187 F.3d at 1101 (motion to intervene filed twelve weeks after basis for intervention passed). Furthermore, the Proposed Intervenors cite two additional cases for the proposition that the parties will suffer no prejudice because "there has been no discovery conducted and no dispositive motions filed . . . ." (Doc. 107 at 6.) The Court notes that there is a dispositive motion, the Motion to Approve the Settlement Agreement, and it has been pending for four months. (Doc. 9.)

The passage of seventeen weeks would not, necessarily, make an intervention application untimely. However, special circumstances apply to this case. In the run of cases, the first several months are marked by discovery and little legally-significant activity, as discussed in the

7

Fifth Circuit case that the Proposed Intervenors cited. *See Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125 (5th Cir. 1970) ("At the time of the intervention, there had been no legally significant proceedings" in the relevant litigation even though the case was filed a year prior). Here, however, the parties conducted significant investigations and settlement negotiations before filing the case. Days after the United States filed its Complaint, the parties entered a proposed Settlement Agreement. (Doc. 9).

Although the Court had not given final approval to the Agreement at the time the Proposed Intervenors filed their application, the Court and the parties had conducted several legally significant activities. For the past several months, the City and the United States have diligently worked to implement the terms of the Agreement. (Doc. 117 at 14; Doc. 120 7-10; Doc. 121 at 5.) The Court granted provisional approval to the Agreement in December. (Doc. 35.) The parties selected an Independent Monitor and successfully sought Court approval. (Doc. 103.) Moreover, the other aspiring intervenors filed their applications three months before the Proposed Intervenors. (Docs. 14, 16-33, 36-40.) The Court denied the concerned citizens' motions and granted the Union's motion. (Doc. 102.) In fact, before the Proposed Intervenors filed their application, the Union-Intervenor had sufficient time to pinpoint its objections to the Settlement Agreement. (Doc. 105.) Finally, coincident with this decision, the Court will grant the final approval of the Settlement Agreement.

In short, the timing of this application is a factor that weighs against the Proposed Intervenors.

### C. Undue Delay or Prejudice

Courts evaluating applications for permissive intervention must consider more than just timeliness; the Federal Rules specifically direct district courts to consider any undue delay or prejudice. Fed. R. Civ. P 24(b)(3). If a proposed intervenor's application would delay or

prejudice "the adjudication of the original parties' rights," the Court can—and likely should—deny the application for intervention. *See DeJulius v. New Eng. Health Care Emps. Pension Fund*, 429 F.3d 935, 943 (10th Cir. 2005) (affirming district court's denial of permissive intervention where there would have been "undue delay to the final disposition of the class settlement").

The United States and the City in this case have dedicated themselves to implementing the Agreement as written. The parties have had countless negotiations, hired an Independent Monitor, and sought the approval of the Albuquerque City Council. (Doc. 117 at 14; Doc. 120 9-10; Doc. 121 at 5, 8-9.) As the Union argues, "[t]o allow this intervention could cause interference with [the Agreement's] programs and goals." (Doc. 117 at 14.) The City worries that prolonging the Agreement's deadlines will increase the costs of complying with the Agreement. (Doc. 121 at 6.) Allowing intervention will delay many of the police reforms that the Proposed Intervenors demand, including comprehensive training in use of force, expanded crisis intervention training, and improved investigatory and disciplinary systems.

In particular, permitting the Proposed Intervenors' equal protection claims regarding Native Americans and people experiencing homelessness could bog down the litigation. The parties would have to conduct significant discovery, engage in motions practice, and possibly hold a trial to determine liability. Waiting to resolve the equal protection claims would delay the reform timeline. As the United States explains, allowing permissive intervention as this stage "would elevate[]" the Proposed Intervenors' claims "over other community organizations" and could delay police reform for hundreds of thousands of Albuquerque citizens. (Doc. 120 at 9.) For their part, the parties entered into the Agreement, in part, to avoid protracted litigation. (Doc. 9 at 6.) Delaying the reform initiatives seems inadvisable in light of their importance.

Of course, "one party—whether an original party, a party that was joined later, or an intervenor—[cannot] preclude other parties from settling their own disputes . . . ." *Local No. 93, Int'l Ass'n of Firefighters v. Cleveland*, 478 U.S. 501, 529 (1986). The United States and the City could finalize their Agreement over the Proposed Intervenors' objections. Then the Court could hold a second phase of litigation to determine the equal protection issues. However, that would only "clutter the action unnecessarily." *Arney*, 967 F.2d at 422. Moreover, planning for two phases of litigation involving two separate sets of plaintiffs is unnecessary because the Proposed Intervenors are free to file their equal protection claims in another case. *See N. Colo. Water Conservancy Dist.*, 251 F.R.D. at 599 (considering the availability of an adequate remedy in another action when assessing an application for permissive intervention). To address the concerns regarding mental health, the Proposed Intervenors can continue to be active in Albuquerque's newly created Mental Health Response Advisory Committee. Given the potential for serious delay and the availability of other remedies for the Proposed Intervenors, the Court considers the undue prejudice and delay determinative.

## IV.    CONCLUSION

Notwithstanding this Order, the Court hopes that the Proposed Intervenors, and other community groups, continue to monitor the progress of the Agreement and continue to engage with the on-going efforts to reform the Albuquerque Police Department. Although the Proposed Intervenors allege important claims that involve questions of law and fact in common with the main action, the Court, in its discretion, denies their application. At this stage, allowing the Proposed Intervenors to join this suit would unduly delay the implementation of the Settlement Agreement and the litigation of the current parties' rights.

**THEREFORE**,

**IT IS ORDERED** that the Motion to Intervene on Behalf of People Who have Mental Disabilities, Who Experience Homelessness and Who are Native American, Who have Encounters with the Albuquerque Police Department (Doc. 107) is **DENIED**.

_____
**ROBERT C. BRACK**
UNITED STATES DISTRICT JUDGE