# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:14-cv-1025 RB/SMV |
| THE CITY OF ALBUQUERQUE, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Progress / Status Summary of the USDOJ Settlement Agreement Entered Into By the United States of America and the City of Albuquerque Regarding the Albuquerque Police Department

Fourth Report

April, 2016 - July, 2016

Prepared by William Slauson, Executive Director, APD Administrative Support Bureau and the Albuquerque Police Department

**TABLE OF CONTENTS**

**USE OF FORCE: INTERNAL CONTROLS AND ACCOUNTABILITY**

PARAGRAPHS 13-17: USE OF FORCE PRINCIPLES.................................................................3
PARAGRAPHS 18-23: USE OF FIREARMS ........................................................................3
PARAGRAPHS 24-38: ELECTRONIC CONTROL WEAPONS.....................................................4
PARAGRAPHS 39-40: CROWD CONTROL AND INCIDENT MANAGEMENT ...................................4
PARAGRAPHS 41-45: USE OF FORCE REPORTING .............................................................5
PARAGRAPHS 46-49: FORCE INVESTIGATIONS ................................................................5
PARAGRAPHS 50-59: SUPERVISORY FORCE INVESTIGATIONS................................................6
PARAGRAPHS 60-77: FORCE INVESTIGATIONS BY INTERNAL AFFAIRS.......................................7
PARAGRAPHS 78-80: FORCE REVIEW BOARD .................................................................8
PARAGRAPHS 81-85: MULTI-AGENCY TASK FORCE ..........................................................10
PARAGRAPHS 86-89: USE OF FORCE TRAINING ..............................................................10

**SPECIALIZED UNITS**

PARAGRAPHS 90-105: SPECIALIZED TACTICAL UNITS..........................................................10
PARAGRAPHS 106-109: SPECIALIZED INVESTIGATIVE UNITS .................................................11

**CRISIS INTERVENTION**

PARAGRAPHS 110-117: CRISIS INTERVENTION AND MENTAL HEALTH RESPONSE ADVISORY .....................12
PARAGRAPHS 118-122: BEHAVIORAL HEALTH TRAINING .....................................................13
PARAGRAPHS 123-131: CRISIS INTERVENTION CERTIFIED RESPONDERS AND CIU .....................13
PARAGRAPHS 132-137: CRISIS PREVENTION..................................................................14

**POLICIES AND TRAINING**

PARAGRAPHS 138-148: POLICY DEVELOPMENT, REVIEW AND IMPLEMENTATION .....................15
PARAGRAPHS 149-154: TRAINING ON REVISED POLICIES, PROCEDURES, AND PRACTICES...................15
PARAGRAPHS 155-161: FIELD TRAINING OFFICER PROGRAM ................................................16

**MISCONDUCT COMPLAINT INTAKE / INVESTIGATION**

PARAGRAPHS 162-163: MISCONDUCT COMPLAINT INTAKE / REPORTING MISCONDUCT...........................16
PARAGRAPHS 164-168: PUBLIC INFORMATION ON CIVILIAN COMPLAINTS ...............................16
PARAGRAPHS 169-182: COMPUTER INTAKE, CLASSIFICATION, AND TRACKING............................17
PARAGRAPHS 183-194: INVESTIGATION OF COMPLAINTS ...................................................18
PARAGRAPHS 195-197: PREVENTING RETALIATION ..........................................................18
PARAGRAPHS 198-200: STAFFING AND TRAINING REQUIREMENTS...........................................19
PARAGRAPHS 201-202: DISCIPLINE PROCESS AND TRANSPARENCY.........................................19

**STAFFING, MANAGEMENT, AND SUPERVISION**

PARAGRAPHS 203-204: STAFFING, MANAGEMENT, SUPERVISION...........................................19
PARAGRAPHS 205-208: DUTIES OF SUPERVISORS ............................................................20
PARAGRAPHS 209-211: SUPERVISOR TRAINING ..............................................................20
PARAGRAPHS 212-219: EARLY INTERVENTION SYSTEM .....................................................20
PARAGRAPHS 220-231: ON-BODY RECORDING SYSTEMS ..................................................21

## RECRUITMENT, SELECTION, AND PROMOTIONS

PARAGRAPHS 232-235: RECRUITMENT, SELECTION, RECRUITMENT PLAN ................................................ 22

PARAGRAPHS 236-240: HIRING PRACTICES ................................................................................... 22

PARAGRAPHS 241-243: PROMOTIONS ......................................................................................... 22

PARAGRAPHS 244-246: PERFORMANCE AND EVALUATION ............................................................... 23

## OFFICER ASSISTANCE AND SUPPORT

PARAGRAPHS 247-253: OFFICER ASSISTANCE AND SUPPORT ............................................................. 24

## COMMUNITY ENGAGEMENT AND OVERSIGHT

PARAGRAPHS 254-259: COMMUNITY ENGAGEMENT/ PROBLEM-ORIENTED POLICING ........................... 24

PARAGRAPHS 260-265: COMMUNITY MEETINGS AND PUBLIC INFORMATION ........................................ 24

PARAGRAPHS 266-270: COMMUNITY POLICING COUNCILS ............................................................... 25

PARAGRAPHS 271-293: CIVILIAN POLICE OVERSIGHT AGENCY ........................................................... 25

## IMPLEMENTATION, COMPLIANCE, AND ENFORCEMENT

PARAGRAPHS 294-344: COMPLIANCE / OUTCOME ASSESSMENTS / PUBLIC STATEMENTS/ ACCESS .............. 27

**Paragraphs: 13-17**
**SUBSECTION: Use of Force Principles**

PROGRESS:
Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

The Department completed use of force training by the June 2, 2016 deadline. Twenty-four hours of annual use of force training will begin in early 2017, prior to the July 2017 deadline. The Department will use calendar years for annual use of force training.

SOP 2-22 Firearms and Ammunition Authorization was approved by the monitor and outlines the Department's firearm re-qualifying procedures for officers returning from various types of authorized leave.

Addressing commentary in the Monitor's Third Report regarding remedial procedures for firearm qualifications, remediation has occurred for all firearm qualification failures. Unless personnel met a qualification exemption, per SOP 2-22 Firearms and Ammunition Authorization, personnel are required by state mandate to pass firearm qualifications.

**Paragraphs: 18-23**
**SUBSECTION: Use of Firearms**

PROGRESS:
Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

SOP 3-15 Scheduled and Unscheduled Leave was changed so that the Payroll Unit will notify the Academy Major when an officer returns from long-term leave. This notification will spur the Academy to review the returning employees training records to ensure they have met all of the criteria set by the Department and the Settlement Agreement.

SOP 3-49 Early Intervention System (EIS), SOP 7-1 Internal Affairs and SOP 7-2 Critical Incident Review Team (CIRT), SOP 2-22 Firearms and Ammunition Authorization were approved by the monitor.

The Department completed use of force and the supervisory investigations training by the training deadline of June 2, 2016. Use of force reality based training encompassed the requirements set forth in this paragraph and will also be covered in each annual firearms qualifications.

APD personnel who are either on military leave or medical leave and return from such leave are required to ensure they return back to duty with a Department issued weapon.

3

The Department updated SOP 2-07 Department Property and revised procedures for the issuance and control of property.

Addressing commentary in the Monitor's Third Report regarding how firearm discharges will be tracked in the Early Intervention System (EIS), the Department uses the Firearm Discharge Form (FAD) to collect the data that is entered into EIS.

With respect to monitors concerns about the overall rate of compliance for firearm qualifications, New Mexico state statute mandates that everyone must pass firearm qualifications annually, unless they are exempt (military leave, injury, etc). The percentages of cases in which qualification failures undergo remedial training and re-qualify must be at 100% by New Mexico state statute standards.

**Paragraphs: 24-38**
**SUBSECTION: Electronic Control Weapons**

PROGRESS:
Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

The Department completed use of force training by the June 2, 2016 deadline. Twenty-four hours of annual use of force training will begin in early 2017, prior to the July 2017 deadline. The Department will use calendar years for annual use of force training.

In order to ensure that officers carry their electronic control weapons on the weak side, supervisors conduct regular line inspections to assure ongoing compliance with equipment requirements and to document their findings on the electronic line inspection form. The line inspection form was revised to include a complete list of safety equipment and to observe the proper gun belt placement of an officers Electronic Control Weapon.

The Department has revised SOP 8-2 Inspections and Audit to include the requirements of both direct and random audits in relation to the requirements set forth in paragraph 37. The Department is scheduled to begin an audit of quarterly download data from electronic control weapons in September 2016.

BlueTeam was reengineered to include a Show of Force module that includes ECW laser painting and arcing tracking. Internal Affairs (IA) staff completed the Annual Use of Force Report that summarizes all the electronic control weapon data that was captured. The Department will begin analyzing the electronic control weapon data in relation to the requirements of paragraph 38.

**Paragraphs: 39-40**
**SUBSECTION: Crowd Control and Incident Management**

PROGRESS:
Since the Agency's Third Report, SOP 3-19 Response to First Amendment Assemblies and Demonstrations

and Unplanned Incidents was approved by the monitor. The Department is proactively developing a supplemental training to cover the expanded policy.

Addressing commentary in the Monitor's Third Report regarding the use of after action reports following an Emergency Response Team (ERT) deployment, two events have occurred that required the ERT activation. ERT utilized both the Emergency Response Team Incident Action Planning form and the After Action Review form for both incidents. Prior to an activation, the ERT lieutenant consults with the tactical commander and incorporates their operational planning into the overall ERT action plan. To improve ERT responses, the ERT has developed a similar strategy as tactical. A training synopsis will be created for monthly ERT trainings, which will include topics derived from previously completed after action reports.

**Paragraphs: 41-45**
**SUBSECTION: Use of Force Reporting**

PROGRESS:
Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

The Department completed use of force training by the June 2, 2016 deadline. Twenty-four hours of annual use of force training will begin in early 2017, prior to the July 2017 deadline. The Department will use calendar years for annual use of force training.

SOP 1-39 On-Body Recording Devices and SOP 2-54 Use of Force Reporting and Supervisory Force Investigation Requirements were approved by the monitor. Training for the on-body camera policy was completed and delivered through the Public Service University (PSU) training platform.

Addressing commentary in the Monitor's Third Report regarding the quality of supervisory investigations, the Department is considering additional supervisory oversight mechanisms to reduce the amount of time it takes for an investigative report to be reviewed and approved.

The re-engineered version of BlueTeam (BT) has a section to determine whether a video has been captured and uploaded. The BT platform requires an officer who fails to record an incident to provide justification. Supervisors reviewing a use of force incident are accountable for assuring a video has been captured and uploaded by the officer.

**Paragraphs: 46-49**
**SUBSECTION: Force Investigations**

PROGRESS:
Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

5

The Department completed use of force and supervisory investigations training by the June 2, 2016 deadline. Twenty-four hours of annual use of force training will begin in early 2017, prior to the July 2017 deadline. The Department will use calendar years for annual use of force training.

Addressing commentary in the Monitor's Third Report regarding the quality of supervisory investigations, the Department is considering additional supervisory oversight mechanisms to reduce the amount of time it takes for an investigative report to be reviewed and approved.

The two serious use of force cases that were included in the Monitor's Third Report are currently being investigated by the Critical Incident Review Team (CIRT). These incidents occurred prior to the revised use of force policy and 40-hour use of force training.

The Talent Management Training included a training block on the functionality of the Personnel Performance Evaluation System within the City's PeopleSoft Human Resources Management System. The functionality includes the ratings and rating definitions, performance evaluation process steps, statistics and reporting, and a performance template. The supervisors training included training on the functionality of the manager's dashboard, output and quality measures, and reporting.

SOP 2-31 Investigation of Officer-Involved Shootings, Serious Use of Force and In-Custody Deaths was approved by the monitor. The Multi-Agency Task Force (MATF) is operating under an existing Memorandum of Understanding (MOU) dated October 18, 2014 and all parties understand the contents of the agreement. The Investigative Response Team (IRT) represents APD in the current MOU.

**Paragraphs: 50-59**
**SUBSECTION: Supervisory Force Investigations**

PROGRESS:
Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

The Department completed use of force training by the June 2, 2016 deadline. Twenty-four hours of annual use of force training will begin in early 2017, prior to the July 2017 deadline. The Department will use calendar years for annual use of force training.

Addressing commentary in the Monitor's Third Report regarding the quality of supervisory investigations, the Department is considering additional supervisory oversight mechanisms to reduce the amount of time it takes for an investigative report to be reviewed and approved. The Department has a renewed focus on supervisory reviews and has re-engineered an updated version of BlueTeam (BT) that will capture and track all chain of command reviews to ensure a meaningful managerial review of use of force events. BT does not allow any changes by a user once a supervisory review has been completed and submitted to the next chain of command. This is in place to safeguard the credibility of the managerial review process.

The Force Review Board (FRB) will continue to use the evaluation form to review cases. The Department's Technical Services Unit (TSU) is developing a data tracking system. The outcomes of FRB

recommendations will be tracked to ensure that cases resulting in a recommendation are referred back to the FRB. This will ensure that the outcomes of their recommendations are satisfactory. SOP 3-67 Force Review board has been approved by the monitor.

The Department is making progress to fully implement the Early Intervention System (EIS) in order to provide management with a tool that promotes supervisory awareness, provides early trend data in officer conduct, and documents and encourages employee conduct that reflects constitutional policing in order to build community trust. Additionally, the Department is considering forming a group to review samples of on-body camera videos to identify issues on an ongoing basis.

The Department completed Talent Management Training for all sworn and non-sworn personnel. The updated Employee Work Plan (EWP) performance evaluation form for supervisors include "quality of investigations" as a rating component. The new EWP process will continuously be monitored by the Department's Personnel Unit and will act to alert supervisors via e-mail when a pattern of unsatisfactory performance occurs.

**Paragraphs: 60-77**
**SUBSECTION: Force Investigations by Internal Affairs**

PROGRESS:
Since the Agency's Third Report, SOP 2-31 Investigation of Officer-Involved Shootings, Serious Use of Force and In-Custody Deaths, SOP 7-1 Internal Affairs and SOP 7-2 Critical Incident Review Team (CIRT) were approved by the monitor.

The Investigative Response Team (IRT) conducts and initiates criminal investigations of serious uses of force. The IRT is under the Professional Accountability Bureau and reports directly to the Assistant Chief of Police. This reporting structure is in place to ensure that criminal investigations remain independent from administrative investigations. The Critical Incident Review Team (CIRT) conducts administrative investigations into serious use of force incidents. The CIRT is under the Internal Affairs Division and reports directly to the Internal Affairs Commander.

Internal Affairs Section and the Critical Incident Review Team (CIRT) completed a unit handbook to assist detectives and provide information on templates, the policy, and the minimum training guidelines for each section. This handbook was submitted to the monitor for review and approval at the end of July 2016.

The Department is considering additional supervisory oversight mechanisms to reduce the amount of time it takes for an investigative report to be reviewed and approved. The Department has a renewed focus on supervisory reviews and has re-engineered an updated version of BlueTeam that will capture and track all chain of command reviews to ensure a meaningful managerial review of use of force events. BlueTeam does not allow any changes by a user once a supervisory review has been completed and submitted to the next chain of command to safeguard the credibility of the managerial review process. BlueTeam will help with assessing timely review of use of force investigations.

The Department completed Talent Management Training for all sworn and non-sworn personnel. The updated Employee Work Plan (EWP) performance evaluation form for supervisors include "quality of investigations" as a rating component. The new EWP process will continuously be monitored by the

Department's Personnel Unit and will act to alert supervisors via e-mail when a pattern of unsatisfactory performance occurs.

The Department completed eight hours of supervisory training in 2015. The Department completed an additional 24 hours of supervisory investigations training by the June 2, 2016 training deadline.

Addressing commentary in the Monitor's Third Report that the monitoring team did not receive a formal table of organization for the Internal Affairs Division (IAD), APD submitted a formal table of organization for all IAD staff to the monitoring team. This was submitted in advance of the Department's ten-month deadline of March 31st, 2016. The submission also included IAD position descriptions, Personnel Unit records, Department personnel orders, training needs assessments, training certificates, and curriculum for all required IAD personnel training.

Internal Affairs Division (IAD) conducted a needs assessment for both Internal Affairs (IA) detectives and Critical Incident Review Team (CIRT) detectives. This allowed for a determination of the minimum training requirement for each unit. The IAD updated the job descriptions for IA and CIRT detectives to reflect the minimum training standards needed before engaging in investigations. The training requirements are comprised of both in-house developed curriculum and training from outside vendors to ensure the training meets the specific needs of the Department and adheres to the Settlement Agreement. A rubric will be vetted for future trainings to assure that the nature of training meets the needs of the IAD and that it is in line with the requirements of the Settlement Agreement. The Department submitted supporting documents of the training assessments, curriculum, and training certificates to the monitoring team by the ten-month deadline for review.

APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

The Critical Incident Review Team (CIRT) implemented two new course of business documents: 1) A 24-hour report form which will have a date stamp to track that CIRT has submitted an initial use of force report through the chain of command to the Chief. This will be done within 24 hours of the incident, and 2) A special 24-hour report for K9 cases only. Where there is a K9 apprehension the sergeant will complete the investigation and then CIRT will conduct a review of the investigation. The 24-hour special report was created to ensure that the Chief is made aware of a K9 apprehension in a timely fashion.

In June 2016 the monitoring team was made aware that the average administrative investigation is not completed within the two-month timeframe provided by the Settlement Agreement. The monitoring team commended the Internal Affairs Division (IAD) for the decision not to rush investigations for the sake of meeting a deadline to the detriment of quality. The average time IAD took to complete an administrative investigation, during the second quarter of 2016, was 61 days. The IAD commander assessed the process of investigations within IAD and addressed areas that need improvement. The commander will engage in continuous assessment of the timeframes for administrative investigations to meet the requirements of the Settlement Agreement.

APD has reengineered the BlueTeam software so that the use of force and show of force form can be electronically synced. This will allow for necessary reporting data to be captured by IAPro. BlueTeam will

also capture and track all chain of command reviews to ensure a meaningful managerial review of use of force events.

APD leadership decided that the baton would be an optional carry weapon for officers. The Department analyzed data for all use of force options and the injuries sustained by subjects and officers. The data showed a decrease in use of the baton as a force option over several years. Baton strikes have the potential to cause permanent injuries to a subject or animal. The Department disagrees with the monitor's opinion that the baton is an appropriate tool for a "close quarter struggle". When engaged in a "close quarter struggle", other tactics and tools are available which are more effective and less likely to lead to injury. The Department agrees with the monitor's comments regarding the case involving the officer who failed to carry a baton. In that case a supervisor over-rationalized the officer's practice of not carrying the baton. The Department is addressing deficient supervisory reports.

Dispositions of disciplinary sanctions are investigated and resolved by command staff. The Department's chart of sanctions is an appendix to SOP 1-09 Discipline System:

## Chart of Sanctions

| CLASS | FIRST OFFENSE | SECOND OFFENSE | THIRD OFFENSE |
|---|---|---|---|
| 1 | SUSPENSION/ DISMISSAL | N/A | N/A |
| 2 | SUSPENSION 168 – 240 HOURS | SUSPENSION/ DISMISSAL | N/A |
| 3 | SUSPENSION 88 – 160 HOURS | SUSPENSION 168 – 240 HOURS | SUSPENSION/ DISMISSAL |
| 4 | SUSPENSION 40 – 80 HOURS | SUSPENSION 88 – 160 HOURS | SUSPENSION 168 – 240 HOURS |
| 5 | SUSPENSION 8 – 32 HOURS | SUSPENSION 40 – 80 HOURS | SUSPENSION 88 – 160 HOURS |
| 6 | WRITTEN REPRIMAND | SUSPENSION 8 – 32 HOURS | SUSPENSION 40 – 80 HOURS |
| 7 | VERBAL REPRIMAND | WRITTEN REPRIMAND | SUSPENSION 8 – 32 HOURS |

*Note: Chart of Sanctions. Reprinted from APD's Standard Operating Procedure 1-09 Discipline System, 2016, p.9.*
**Paragraphs: 78-80**
**SUBSECTION: Force Review Board**

PROGRESS:
Since the Agency's Third Report, SOP 3-67 Force Review Board, SOP 7-1 Internal Affairs, and SOP 7-2 Critical Incident Review Team (CIRT) were approved by the monitor.

The Department completed eight hours of supervisory training in 2015. The Department completed an additional 24 hours of supervisory investigations training by the June 2, 2016 training deadline.

The Force Review Board (FRB) will continue to use the evaluation form to review cases. The Department's Technical Services Unit (TSU) is developing a data tracking system. The outcomes of FRB recommendations will be tracked to ensure that cases resulting in a recommendation are referred back to the FRB. This will ensure that the outcomes of their recommendations are satisfactory. SOP 3-67 Force Review Board has been approved by the monitor.

The FRB will continue to evaluate quarterly use of force data compiled by the Internal Affairs Division. The Critical Incident Review Team (CIRT) will continue to issue Awareness Reports to all sworn personnel when an immediate training or policy issue needs to be addressed.

Addressing commentary in the Monitor's Third Report regarding the quality of supervisory investigations, the Department is considering additional supervisory oversight mechanisms to reduce the amount of time it takes for an investigative report to be reviewed and approved. The Department has a renewed focus on supervisory reviews and has re-engineered an updated version of BlueTeam (BT) that will capture and track all chain of command reviews to ensure a meaningful managerial review of use of force events. BT does not allow any changes by a user once a supervisory review has been completed and submitted to the next chain of command. This is in place to safeguard the credibility of the managerial review process.
BT will help with assessing timeliness in reviews of use of force investigations.

Addressing commentary in the monitor's report for paragraph 78, the Investigative Response Team (IRT) investigates for criminal behavior by an officer involved in a use of force incident. The Critical Incident Review Team (CIRT) identifies compliance with policy and the Settlement Agreement. The recommendations by the monitor to formalize a working group to evaluate procedural and technical opportunities are embodied in the CIRT unit.  This unit will assess compliance with policy and identify cases where performance was exemplary or deficient. The Department will have all CIRT cases presented to the FRB for further oversight.

Addressing commentary in the Monitor's Third Report that the Department did not include batons in the Annual Report's use of force data, page 46 of the Department's 2015 Annual Report show baton strikes as a use of force type.

The Monitor's Third Report states that the quarterly use of force data will be compared to the annual use of force report for congruency. APD has determined that the 2015 quarterly use of force data and the 2015 annual use of force report will not be congruent. The implementation of a new use of force policy which outlines different criteria for classifying a use of force incident meant that the Internal Affairs (IA) had to reclassify use of force cases from 2015 that did not match the new use of force classification

criteria.   The Department has had to complete retroactive reviews to ensure all use of force incidents are properly categorized. In order to mitigate the incongruent data moving forward, IA will begin to amend the summary report submitted to the Force Review Board (FRB) to accurately reflect any cases that were reclassified as a use of force. Any amended quarterly use of force reports will be resubmitted to the FRB.

**Paragraphs: 81-85**
**SUBSECTION:  Multi-Agency Task Force**

PROGRESS:
Since the Agency's Third Report, SOP 7-1 Internal Affairs and SOP 7-2 Critical Incident Review Team (CIRT) were approved by the monitor. The Department merged SOP 2-31 Investigation of Officer-Involved Shootings, Serious Use of Force and In-Custody Deaths with SOP 2-09 Investigative Response Team to ensure uniformity. The resulting merged policy, SOP 7-3 Investigative Response Team, was approved by the monitor.

The Multi-Agency Task Force (MATF) is operating under an existing Memorandum of Understanding (MOU) dated October 18, 2014. The parties to the MOU understand the contents of the agreement and respective duties and responsibilities. The Investigative Response Team (IRT) represents APD in the current MOU.

Addressing commentary in the Monitor's Third Report that the Department should revise the MOU to determine the process of releasing evidence for the lead agency, the Department will make a determination regarding the release of investigative materials on a case by case basis. Where the MATF is implicated, the lead investigative agency will confer with all other agencies whenever investigative materials are released. Where an agency within the MATF (Bernalillo County Sheriff's Office, New Mexico State Police, and Rio Rancho Police) is the lead investigative agency, another MATF agency will assume a secondary role and shadow the case agent. Each case will be documented to identify the lead investigative agency and case agent.

**Paragraphs: 86-89**
**SUBSECTION:  Use of Force Training**

PROGRESS:
Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

The Department completed use of force training by the June 2, 2016 deadline. Twenty-four hours of annual use of force training will begin in early 2017, prior to the July 2017 deadline. The Department will use calendar years for annual use of force training.

Training instructors gave input to the monitors regarding their rationale for the selection of cases used for the case law block of instruction. This input took into consideration out of circuit case law. The maintenance of effort (MOE) training is for refresher training on existing case law. New case law or changes in case law that require training are handled by the Academy whenever the staff is notified of a

court decision.

The Department finalized a training After Action Report of the 40 hour use of force training and submitted the report to the monitor for review and approval. The after action report includes training trends and the number of personnel that completed training.

The Academy and Internal Affairs personnel will be collaborating to compare supervisory use of force investigations from supervisors prior to their training and after their training. This will allow for the identification of training trends. The Department will be reviewing the quality of use of force investigations to identify whether deficiencies are present after training and will coordinate with the academy to address training issues.

Contrary to commentary in the Monitor's Third Report referring to the planning of the training curriculum as exhibiting a "hurry-up syndrome", the Department developed its training curriculum in parallel with the use of force policy. The training reflects approved policy and is consistent with the requirements of the Settlement Agreement. As each policy was approved by the monitor, during the policy review and approval phase, all training curriculum was updated to reflect current policy. Based on monitor feedback, supplemental trainings were provided to update the training curriculum after training began. This was done to ensure all material covered was congruent between all training classes.

APD hired additional part-time staff for the Academy to ensure optimal teacher to student ratios. The Department's budget was approved for twenty additional positions to supplement staffing needs.

In response to the Monitor's Third Report, training material for foot pursuits and on-body camera policy was provided to the monitor during the fourth reporting period (April 1 – July 31, 2016). The lesson plans and the course documentation was updated and resubmitted to the monitor for review. Supplemental training is needed on crowd control based on the monitor-approved SOP.

**Paragraphs: 90-105**
**SUBSECTION:  Specialized Tactical Units**

PROGRESS:
APD will continue to provide the monitoring team with circulars for each unit that summarize the responsibilities, training, qualifiers, and disqualifiers.

APD will continue to provide the monitoring team with training documents, synopsis, sign-in sheets, and training curriculum for the tactical unit and the Crisis Negotiations Team (CNT).

SOP 6-7 SWAT, SOP 6-9 K-9 Unit, and SOP 6-7 Explosive Ordnance Disposal Unit (Bomb Squad) were approved by the monitor.

In response to the Monitor's Third Report identifying the need for additional training for field officers, the critical incident management training provided to cadets provides strategies to handle critical incidents that may become high risk. The training covers critical tasks including setting up a perimeter, securing the proper communications, and attaining necessary resources. The 40-hour use of force training was developed specifically to address the new use of force standards in policy with a focus on topics outlined within the Settlement Agreement. The training being implemented within specific units can assist the

Academy staff in developing future trainings to enhance the outcomes for scene management during critical incidents and reiterate the policies and procedures for tactical units. The Academy Major is a board member on the Force Review Board (FRB) in order to track the data trends with tactical deployments. The value of information sharing between tactical units and the Academy will ensure continuous improvement on training needs assessments based on after action reports that provide outcomes and trends.

All sworn personnel receive mandated federal training by the Federal Emergency Management Agency (FEMA) on how to respond to, control, and coordinate critical incidents. The federal Incident Command System (ICS) training covers tasks critical to incident response.

The Tactical Unit's risk assessment is based on call-out criteria and ensuring that any call-outs for the Tactical unit meet necessary criteria. For any pre-planned event, APD shall continue to utilize the threat assessment matrix.

Operational planning is a fundamental task and is a component of training each week for the tactical unit. For example, previous unit training, such as Search Warrant Planning and Briefing, contains a training outline that includes an operational planning component.

The Tactical Unit will comment on the reason that certain tactics and strategies were used over others in After Action Reports (AAR). The AARs reflect a more critical and analytical review of all actions taken during an incident which will take into consideration the possible risks versus advantages of various tactical options. The AARs will continue to emphasize specific comments on policy, equipment, and tactical or training issues.

The Special Operations Bureau collects analytical data from tactical deployments and tracks deployment outcomes. The Department implemented an electronic platform to collect tactical data as a component of the Early Intervention System (EIS). The electronic form tracks the location of the incident, the number of arrests, whether a forcible entry was required, whether a weapon was discharged by a tactical unit member, and whether a person or domestic animal was injured or killed. Tactical data is compiled and reported annually.

The monitoring team conducted a comprehensive review of the Force Review Board (FRB) and attended a FRB meeting on June 8th, 2016. The monitoring team provided feedback after the meeting concerning the importance of ensuring that command staff stay engaged in the FRB process, diverse board members to elicit different perspectives, and the impact of accountability measures.

**Paragraphs: 106-109**
**SUBSECTION:  Specialized Investigative Units**

PROGRESS:
SOP 5-1 Special Investigations Division has been approved by the monitor. The Risk Assessment Matrix is now included in SOP 5-1 and its use is mandated in the execution of all search warrants.

Handbooks for Narcotics, Investigative Support, Gangs, Criminal Intelligence, Task Force, and Air Support have been completed. Detectives receive roll-call training and acknowledge understanding of the contents. All updated handbooks now include a training log to track this information.

The Department will continue to conduct quarterly inspections of property and inventory lists using the standardized form that was created. Standardized inventory lists for investigative units have been created, and detectives have been informed they cannot carry non-standard weapons and equipment that are outside the determined scope. The 2016 inspections were completed and submitted to the monitor.

In coordination with the City's Department of Technology and Innovation (DTI), the Special Investigations Division has completed a preliminary database platform to capture responses by specialized investigative units and will collect the information as required in the Settlement Agreement. The information gathered in the database will be included in APD's annual report. The database is actively used to log all investigative responses and is integrated with the Early Intervention System (EIS).

**Paragraphs: 110-117**
**SUBSECTION: Crisis/Intervention and Mental Health Response Advisory**

PROGRESS:
SOP 2-13 Response to Behavioral Health Issues and SOP 2-42 Hostage Situations, Suicidal, Barricaded Subjects, and Tactical Threat Assessment were approved by the monitor.

Since the Agency's Third Report, CIU has developed a PowerPoint presentation summarizing the data they have collected and analyzed. Preliminary data suggests there is a reduction in the use of force on those individuals experiencing behavioral health issues. An overview of data collection and analysis by the CIU will be a regular part of future meeting agendas for the Mental Health Response Advisory Committee (MHRAC).

The MHRAC is providing policy guidance on response strategies. The MHRAC co-chairs met with command staff to ensure their involvement in the policy review process. SOP 3-29 Policy Development Process was revised to ensure the policy flowchart was congruent with the standards written in the policy. The Crisis Intervention Unit (CIU) continues to work with MHRAC to elicit feedback from the committee members.

MHRAC published their initial report in January 2016 addressing the requirements of the Settlement Agreement. The next MHRAC annual report is expected in January 2017. The MHRAC documents are posted for the public on their website: https://www.cabq.gov/mental-health-response-advisory-committee/mental-health-response-advisory-committee-resources-links-documents/mental-health-response-advisory-committee-documents

The Department will continue to support the Mental Health Response Advisory Committee (MHRAC) objectives while actively engaging in MHRAC meetings. APD will continue to provide the monitoring team with the committee's meeting minutes and updates on collaborative efforts between MHRAC and the Department.

Both the MHRAC and Crisis Intervention Unit (CIU) have made efforts to include homelessness as an agenda item for discussion. The Department and MHRAC met to discuss improved responses to people living with mental illness who are involved in drug enforcement operations. The Department developed a plan to train Narcotics Detectives on mental health awareness and resources. A training class for the Narcotics Unit was completed in July 2016.

The Department is taking steps to implement Mobile Crisis Teams (MCT). A collaborative meeting was

held in July 2016 and the Department expects the MCT to mobilize in early 2017. The meeting included Bernalillo County officials, New Mexico State Police, the Real Time Crime Center, the City's Family and Community Services, Valencia County officials, and personnel from the University of New Mexico.

Attorneys from the City, the University of New Mexico (UNM), and the Crisis Intervention Unit (CIU) have met and have developed a preliminary Memorandum of Understanding (MOU) between UNM and CIU regarding information sharing. The draft MOU is nearing formal adoption and represents a great improvement in formalized information sharing. It will allow CIU detectives to share their caseloads with UNM and increase transparency.  The MHRAC's July meeting discussed the MOU and the Department continues to seek MHRAC's input.

The Department has presented data to the MHRAC which was well received and helpful to guide the discussion and recommendations. The Department and MHRAC will determine how often data should be presented to committee members as a topic of discussion. MHRAC has been involved in training and has met several times with Department staff to discuss changes and best practices for training. Peers on the MHRAC subcommittee have been involved in designing and delivering classes on de-escalation and perspectives in mental health for the Department.

The Department transitioned field officers from the CIT worksheet to the re-engineered TRACS system for data collection involving crisis intervention incidents. The TRACS system is more user friendly and is a pre-existing system for field officers. The system has been updated to include more data capturing fields regarding incidents with subjects experiencing a mental health crisis. Officers were given instructions on how to use TRACS through the Department's online document management system.

The Department printed 2,000 resource cards for distribution and the cards include information on local resources.

Addressing commentary in the Monitor's Third Report that the Department should take action to update the New Mexico Network of Care (NMNC) website, the NMNC is an online information portal for all citizens, families, and social service agencies. The NMNC is operated by the State's Behavioral Health Collaborative of New Mexico which is a non-affiliated group. The Department does not have any access to update nor ensure the accuracy of the data.

**Paragraphs: 118-122**
**SUBSECTION:  Behavioral Health Training**

PROGRESS:
Since the Agency's Third Report, the CIU has collaborated with telecommunicators to revise the 20-hour behavioral health training for new hires. The CIU has had ongoing discussions, tours, and meetings with dispatch administrators in order to develop a comprehensive needs assessment for the 20-hour class. As of the date of this report, there have been no new hires in training.

The Department provides a two-hour class on mental health as mandated by House Bill 93 (HB93); which was completed online by telecommunications and sworn personnel in 2015. Assessment scores were submitted and all training videos are available on the Public Service University (PSU) training platform.

The primary training was completed in conjunction with the biennium training as required by the New

Mexico Department of Public Safety.

In discussions with MHRAC, Academy trainers, and CIU trainers, it was determined that the curriculum for Mental Health First Aid was too rudimentary for police officers and cadets who already receive academy training and additional training in the basic CIT class. The refresher focused on those who will become ECIT trained. A separate needs assessment will be done for refresher courses for ECIT.

In response to the Monitor's Third Report, the Department continues to train cadets in mental health responses consistent with state mandated requirements. The training curriculum has been revised to comport with state curriculum, SOP 2-13 Response to Behavioral Health Issues, and 2-42 Hostage, Suicidal/Barricaded Subject, and Tactical Threat Assessment. Behavioral Science clinicians are helping with the implementation of changes and teaching classes, and the MHRAC has been closely involved in the training and its curriculum development. The next class for field officers who comprise the Crisis Intervention Team began in August 2016. Crisis Intervention Training is now conducted in-house under the Behavioral Sciences Division (BSD). The Department's Crisis Intervention Unit (CIU) will conduct the training for the cadets.

APD has improved its policy development process. The Office of Policy Analysis (OPA) was created and has been integrated into the Department's policy review and approval process. The OPA gathers information on national standards and best practices and integrates its findings into existing APD policy while providing a "big picture" view and deep analysis of APD policies. The OPA has initiated the six-month review process, beginning with the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA will develop policy and review policy recommendations from community stakeholders. The OPA has several identified stakeholders who will be selecting policies of interest to review and provide policy recommendations. The current community stakeholders for the OPA are the American Civil Liberties Union (ACLU), the New Mexico Criminal Defense Lawyers Association (NMCDLA), and the Mental Health Response Advisory Committee (MHRAC). OPA members are also present on other boards and committees throughout the process.

**Paragraphs: 123-131**
**SUBSECTION:  Crisis Intervention Certified Responders and CIU**

PROGRESS:
Since the Agency's Third Report, SOP 2-13 Response to Behavioral Health Issues and SOP 2-42 Hostage Situations, Suicidal, Barricaded Subjects, and Tactical Threat Assessment were approved by the monitor. The approved SOP ensures that either the CIU or the ECIT will take the lead when the unit is on-scene of a mental health call-out. Once a supervisor arrives on scene the CIU and ECIT units will act as a key consultant.

The Department is committed to collaborating with the Mental Health Response Advisory Committee (MHRAC) at several levels within the Department's internal policy review process. A member of the APD command staff attends MHRAC meetings regularly for support and to get feedback.  MHRAC plays an integral part in the Department's policy review process. The co-chairs of MHRAC were contacted by the Office of Policy Analysis (OPA) coordinator and were provided with OPA's policy review schedule.

The curriculum for Enhanced CIT field officers is being developed with help from the MHRAC. Since all officers have had the basic 40 hour CIT training, a way to identify specialized officers was developed. The

new officers will be called Enhanced Crisis Intervention Team (ECIT). This team will consist of both volunteers and recruits.

The responding CIU detectives and clinicians continue to fulfill the primary function of following up with people in the community with mental illness to connect them with services. The CIU detectives also respond to mental health crisis calls. In June, CIU responded to several calls regarding individuals threatening suicide. The CIU detectives helped resolve each crisis without injury.

In December 2017, the Crisis Intervention Unit (CIU) anticipates a staffing level of 12 fulltime detectives. CIU currently consists of six detectives.

In response to commentary in the Monitor's Third Report regarding the policy review process, APD has improved the policy development process. The Office of Policy Analysis (OPA) was created and has been integrated into the Department's policy review and approval process. The OPA will gather information on national standards and best practices and integrate their findings into existing APD policy while providing a "big picture" view and deep analysis of APD policies. OPA completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). Once the policies have completed the remainder of the Department's policy review process, they will be submitted to the monitor for review and approval.  The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process.   The current community stakeholders for the OPA are the American Civil Liberties Union (ACLU), the New Mexico Criminal Defense Lawyers Association (NMCDLA), and the Mental Health Response Advisory Committee (MHRAC). OPA members are also present on other boards and committees throughout the process.

Collaborating with the Mental Health Response Advisory Committee (MHRAC), it was decided that the Mental Health First Aid (MHFA) was too rudimentary for the needs of advanced Crisis Intervention Training. The MHFA uses standardized curricula for people with minimal training or experience in working with people living with mental illness. The Department decided that all mental health training should be developed in-house and should follow the lifespan of an employee in a logical manner.

The Mobile Crisis Teams (MCT), which pair a clinician and a police officer to respond to those in crisis are moving forward and are anticipated to be ready as soon as January 2017. The MCT will be regional in scope rather than APD focused. The MCT will also have standardized training which will include the ECIT course.

The Department has adopted recommendations by the MHRAC including revising the Department ten-codes for better tracking and enhancing the priority of these type of calls, and integrating the TRACS system with required data tracking.

To better document crisis intervention incidents, the Department transitioned field officers from the CIT worksheet to the re-engineered TRACS system for data collection involving crisis intervention incidents. The TRACS system is more user friendly and is a pre-existing system for field officers. The system has been updated to include more data capturing fields regarding incidents with subjects experiencing a mental health crisis. Officers were given instructions on how to use TRACS through the Department's online document management system.

To improve CIU reality-based trainings that are more reflective of real scenarios, the CIU worked with a

17

reality-based training company, C-WORX, to develop scenarios based on real life encounters between the Department and people living with mental illness. The CIU detectives and clinicians met with staff from C-WORX to ensure the scenarios were indicative of real life encounters.

All class attendees in the Crisis Intervention Training for Field Officers (CIT-FO) are evaluated via written test and scenarios. During the course of the scenarios, skilled crisis de-escalators are identified for future consideration for crisis certified responder positions. All scenario events are also followed by a facilitator debriefing which allows for further discussion about class participants.

The Department disagrees with statements in the Monitor's Third Report regarding SOP 2-42 Hostage, Barricaded, Suicidal Subjects, and Tactical Threat Assessment. The SOP was presented to the Policy and Procedures Review Board (PPRB) on April 1, 2015. The policy was published on the Department's electronic document management platform for a 15-day commentary period for personnel in August 2015. The memorandum referenced in the Monitor's Third Report was meant to convey that the status of the policy did not change during the current reporting period and was reviewed by the PPRB during a previous reporting period.

The critical incident management training provided to cadets provides strategies to handle critical incidents that may become high risk. The training covers critical tasks including, setting up a perimeter, securing the proper communications, and attaining necessary resources.  The training being implemented within specific units can assist the Academy staff in developing future training to enhance the outcomes for scene management during critical incidents and to reiterate the policies and procedures for tactical units. The value of information sharing between tactical units and the Academy will ensure continuous improvement on training needs assessments based on after action reports that provide outcomes and trends.

**Paragraphs: 132-137**
**SUBSECTION:  Crisis Prevention**

PROGRESS:
SOP 2-13 Response to Behavioral Health Issues was approved by the monitor. The CIU and COAST continues to work with mentally ill and homeless individuals. The data is captured in monthly reports and services are consistent with the approved SOP.

CIU and COAST continues to work with service providers in outreach programs to offer services to the chronically homeless. Clinicians are working under the clinical supervision of Dr. Nils Rosenbaum and have been a great addition to CIU and COAST. CIU and COAST have also restructured into two teams consisting of a detective, a clinician, and COAST member. Teams also streamlined what cases to take to promote efficiency and delivery of services to the population defined in this section.

COAST currently conducts on-going outreach efforts throughout the city while partnering with various providers. The CIU has met with the Mayor's office, the Albuquerque Fire Department, and service providers to come up with new initiatives and strategies to address panhandlers and chronic homelessness.

The Comprehensive Staffing Assessment and Resource Study by Dr. Alex Weiss was completed in December 2015. In it, staffing levels for APD functions were defined. The study recommends a staffing

level of twelve detectives who are crisis intervention certified. Currently the Crisis Intervention Unit (CIU) has filled six Crisis Intervention Trained Officer (CITO) positions. The Department submitted an updated plan of action for the monitor's review and consideration.

To better document crisis intervention incidents, the Department transitioned field officers from the CIT worksheet to the re-engineered TRACS system for data collection involving crisis intervention incidents. The TRACS system is more user friendly and is a pre-existing system for field officers. The system has been updated to include more data capturing fields regarding incidents with subjects experiencing a mental health crisis. Officers were given instructions on how to use TRACS through the Department's online document management system. APD will continue to work with the Mental Health Response Advisory Committee (MHRAC) to refine the process of data collection.

**Paragraphs: 138-148**
**SUBSECTION:  Policy Development, Review and Implementation**

PROGRESS:
APD finalized 37 policies which were submitted for approval by the June 5, 2016 deadline set by the court.

SOP 1-09 Discipline was approved by the monitor. Since the Agency's Third Report, the Department completed use of force training and supervisory investigations training by the training deadline of June 2, 2016. APD will use calendar years for annual use of force training. In early 2017 and prior to the July 2017 deadline, twenty-four hours of annual use of force training will commence.

The Office of Policy Analysis (OPA) has been integrated into the Department's policy review and approval process. The OPA accepts input from groups outside the Department including the Mental Health Response Advisory Committee (MHRAC), American Civil Liberties Union (ACLU), New Mexico Criminal Defense Lawyers Association (NMCDLA), and the University of New Mexico. The Department is now in the process of performing 6-month reviews on all CASA related policies as required by paragraph 145. To date, the OPA has completed reviews of SOP 2-52, 2-53, 2-54, and 2-55. APD reaches out to stakeholders for input when collaboration is necessary. APD's website also allows the public to review and provide input on Department policy. A schedule has been developed with estimated review dates for each policy.

APD renumbered the existing SOP index and organized the policies by topic. SOP 3-29 Policy Development Process has been finalized to include the OPA in APD's policy development and review process. APD will continue to use an online document management system to collect commentary for Standard Operating Procedure Review Committee (SOPRC) meetings.

The Department is making progress to fully implement the Early Intervention System (EIS) in order to provide management with a tool that promotes supervisory awareness, provides early trend data in officer conduct, and documents and encourages employee conduct that reflects constitutional policing in order to build community trust. Additional tools include the Employee Work Plan (EWP) that promotes accountability and staff development in conjunction with the EIS and IAPro systems which track essential data to analyze and promote best practices for clear evaluation and identification of trends.

**Paragraphs: 149-154**
**SUBSECTION:  Training on Revised Policies, Procedures, and Practices**

PROGRESS:

Since the Agency's Third Report, APD's Office of Policy Analysis (OPA) completed its six-month review of the use of force policy suite (SOP 2-52, 2-53, 2-54, and 2-55). The OPA reviews policy proposals from community stakeholders and elicits input from subject matter experts prior to and during the review process. The draft policies will be submitted for monitor review and approval after completion of the Department's review process.

All training records are archived at the APD Academy. The City's Department of Technology and Innovation are exploring the addition of a training module to PeopleSoft as a platform for centralized recordkeeping. The PeopleSoft platform will provide better reporting, documentation, and improved scheduling for training. The Department anticipates it will combine several systems into one by early 2017.

In order for the Department to remain current and informed on any changes in law, updates to case law changes will be noted and arranged by the Advanced Training Sergeant. Any annual refreshers to existing case law will be included in the scheduled Maintenance of Effort (MOE) training. The responsibility of the dissemination of relevant case law and statutes is specified in the training policy. The Department submitted documentation to show that the requirements set forth in the Settlement Agreement have been implemented.

In response to the Monitor's Third Report regarding Department policy, APD has finalized all Settlement Agreement related policies and the policies have since been reviewed and approved by the monitor. All policies were placed on the Department's online document management system and employees are prompted to sign the policies electronically. Policies that require further training are being conducted in-person, such as the use of force training, or with an online platform like the Daily 49 broadcasts and the online Public Service University (PSU) training platform.

The Department has hired a curriculum developer who has redeveloped lessons plans based on Settlement Agreement requirements and recommendations. Academy staff collaborated with the Public Service University staff to distribute required training online.

**Paragraphs: 155-161**
**SUBSECTION:  Field Training Officer Program**

PROGRESS:

SOP 6-1 Training Division was finalized by APD and approved by the monitor. The Field Training and Evaluation Program (FTEP) Coordinator developed protocols to ensure supervisors are documenting how core values are reinforced with new recruits. The 40-hour block of instruction is operational and no longer in the developmental stage. The training curriculum has been certified by the State and was submitted to the monitor for review. The FTEP Coordinator oversees the implementation of shift phases to ensure recruits are trained in various area commands and multiple shifts.

In collaboration with the City, the Department has removed the cap for Field Training Officer (FTO) positions. From a starting pool of approximately 40 FTOs, staffing rose to 69 in March 2016 before stabilizing at the current level of approximately 60. This represents an increase of 50% from previous FTO staffing levels. The Department has established a goal of bringing the total number of FTOs to at least 80.

The Academy implemented a system to track and evaluate FTOs and trainees. The FTEP Coordinator developed protocols to address issues of concern that may arise in an evaluation for continued improvement of the FTEP. Each identified concern is addressed, along with reasoning behind each response.

In response to the Monitor's Third Report, all academy responses to program feedback have been submitted for monitor review. APD will continue to use feedback from online surveys and face-to-face interactions to improve the program.

**Paragraphs: 162-163**
**SUBSECTION:  Misconduct complain intake / Reporting Misconduct**

PROGRESS:
Since the Agency's Third Report, SOP 3-22 Complaints Involving Department Policy or Personnel was approved by the monitor. All policies are in the process of being reviewed by the Standard Operating Procedure Review Committee (SOPRC) for potential sanction requirements. Where a policy violation requiring a sanction is identified, a recommended disciplinary range (in accordance with SOP 1-09 Discipline) will be assigned and the policy will be submitted to the Policy and Procedure Review Board (PPRB) for approval. As of the writing of this report, 27 policies have undergone the process to assign a sanction level to each potential violation.

Since the monitor first raised the issue in monitoring reports, the CPOA has undertaken a concerted effort including the scheduling special sessions of the Police Oversight Board (POB) to resolve all cases in the CPOA investigation backlog. With the exception of a few lingering cases of minor alleged SOP violations, the backlog has been cleared. Timelines on all current cases continue to be maintained.
All cases and finding letters are posted on the Police Oversight Board (POB) and CPOA's website. Non-concurrent responses from the Chief are also posted online.

**Paragraphs: 164-168**
**SUBSECTION:  Public information on civilian complaints**

PROGRESS:
SOP 3-22 Complaints Involving Department Policy or Personnel and SOP 7-1 Internal Affairs was approved by the monitor. The Civilian Police Oversight Agency (CPOA) completed work on the CPOA ordinance which have also received approval from the monitor.

Internal Affairs (IA) and CPOA staff regularly monitor the availability of complaint forms, brochures, and posters to maintain community awareness regarding the civilian complaint process. The CPOA hired a Community Engagement Specialist (CES). The CES created a Facebook page (www.facebook.com/abqcpoa) and a Twitter account (@abq_cpoa). In addition, the CES set up point of contacts for all fifty-five public locations where the CPOA posts information and provides complaint forms to ensure all public facilities have forms and current information on hand.

APD is in the process of printing complaint forms in English and Spanish to be placed in non-patrol vehicles. The CPOA is in the process of developing a brochure with an attached complaint form. The brochure will include both a prepaid complaint form and a tear off section with information about the complaint process for more accessibility.

To address commentary in the Monitor's Third Report that the complaint form should be more easily accessible online, APD staff coordinated with Technical Services to improve access to online complaint forms. APD and CPOA have updated complaint websites to improve consistency and provide instructions on how to submit a complaint using any of the methods currently available. Complaint links on the APD site now take users directly to filing instructions on the CPOA site. (https://www.cabq.gov/police/contact-the-police)

**Paragraphs: 169-182**
**SUBSECTION:  Computer intake, classification, and tracking**

PROGRESS:
Since the Agency's Third Report, SOP 3-22 Complaints Involving Department Policy or Personnel and SOP 7-1 Internal Affairs was approved by the monitor. In a published revision dated May 5, 2016, language in policy allowing for supervisory discretion in complaint handling was removed. The City has completed work on the CPOA ordinance which was approved by the monitor. The CPOA is evaluating the possibility of updating language on the website and current complaint forms to address difficulties with excessively delayed complaint filing.

Over 95 percent of APD personnel have completed training and test questions related to the intake process of civilian complaints. Some of the training was redesigned and a second training was conducted through the Public Service University online module. APD re-evaluated those individuals who did not complete the training due to leave (military leave, FMLA, etc.) to ensure these individuals are trained upon their return to work. The Department sent the monitoring team an updated list of personnel who did not complete training on March 10th, 2016 for review.

The Chief of Police sent a letter to the Chief U.S. District Judge, Chief Judge of the Bernalillo County Metropolitan Court, and the Chief Judge of the Second Judicial District Court describing the process to report officer misconduct. Each letter had six enclosures: a CPOA brochure in English and Spanish, Civilian Police Complaint form in English and Spanish, and the CPOA poster in English and Spanish. These letters were made available to the monitor in March 2016. As of this date, one judge has used the established process to file a complaint.

Mandated tracking of homelessness and mental illness data in those that file complaints has been added to policy SOP 3-22. The Internal Affairs Division has made changes in IAPro and BlueTeam in order to track homelessness and those persons with self-reported or observed mental illness. Screenshots of those systems were provided to the monitoring team for review and approval. The CPOA has a mechanism in place to track complaints from the homeless and mentally ill populations. A screenshot of the software application was provided to the monitoring team for review. Also, a checkbox field labeled homeless or mentally ill as an identifier has been added to the complaint form for proper tracking.

Upon receipt of a Civilian Police Compliant (CPC) by the Internal Affairs Division, the complaint is issued a CPC number immediately through IAPro. All hard copies of CPCs are picked up daily by the CPOA. IAPro has an alert system to ensure timeliness of complaints. The CPOA and APD have established a methodology to ensure the timeliness of the three-day requirement. Additionally, CPOA reviews the assignments of all incoming complaints on a daily basis.

To address commentary in the Monitor's Third Report that the complaint form should be more easily accessible online, APD staff coordinated with Technical Services to improve access to online complaint forms. APD and CPOA have updated complaint websites to improve consistency and provide instructions on how to submit a complaint using any of the methods currently available. Complaint links on the APD site now take users directly to filing instructions on the CPOA site. (https://www.cabq.gov/police/contact-the-police)

**Paragraphs: 183-194**
**SUBSECTION:  Investigation of Complaints**

PROGRESS:
Since the Agency's Third Report, SOP 7-3 Investigative Response Team, SOP 7-1 Internal Affairs and SOP 3-22 Complaints Involving Department Policy or Personnel was approved by the monitor. The Department merged SOP 2-31 Investigation of Officer-Involved Shootings, Serious Use of Force and In-Custody Deaths with SOP 2-09 Investigative Response Team to ensure uniformity. Guidance regarding *Miranda* Rights is provided in SOP 7-3.

The City has completed work on the CPOA ordinance which has also received approval from the monitor. A Memorandum of Understanding has been generated by the CPOA to cover guidelines for mediation and was submitted to the monitor for review.

The 24-hour supervisory use of force training curriculum addressed administrative investigations to include *Garrity* statements. The Executive Director of the CPOA met with CPOA investigators to address the need for detailed investigative reports to include explanations of how credibility determinations are made.

The CPOA Executive Director has found several instances in complaints where a criminal element was found. The Executive Director forwarded the cases to the Internal Affairs Division (IAD) with a memorandum and informed the citizen that, based upon the allegations, the IAD will take the investigation over. The CPOA provided a sample memorandum to the monitoring team for review and consideration.

The Investigative Response Team (IRT) conducts and initiates criminal investigations of serious uses of force. The IRT is under the Professional Accountability Bureau and reports directly to the Assistant Chief of Police. This reporting structure is in place to ensure that criminal investigations remain independent from administrative investigations. The Critical Incident Review Team (CIRT) conducts administrative investigations into serious use of force incidents. The CIRT is under the Internal Affairs Division and reports directly to the Internal Affairs Commander.

Since the monitor first raised the issue in monitoring reports, the CPOA has undertaken a concerted effort including the scheduling special sessions of the Police Oversight Board (POB) to resolve all cases in the CPOA investigation backlog. With the exception of a few lingering cases of minor alleged SOP violations, the backlog has been cleared. Timelines on all current cases continue to be maintained.

The POB conducted a special session to review a case involving officer discipline and the board also discussed the premise outline from paragraph 191 to allow the Executive Director, with their permission, the ability to make discipline recommendations and forward them to the Chief of Police without holding a

special session.

The CPOA Executive Director is reviewing unfounded, not sustained, and exonerated cases to ensure there is overarching impartiality for all parties.

The Internal Affairs Division (IAD) has ensured timeliness standards as set forth in the Collective Bargaining Agreement (CBA). SOP 7-1 Internal Affairs mandates that the investigation timeline start within 24 hours of receiving the case and assignment of a case number.

Internal Affairs Section (IAS) investigators are not involved in training recommendations. Only an employee's supervisor will make training recommendations for misconduct investigations. CIRT has authority to make training recommendations only in the course of an investigation that is sent to FRB.

**Paragraphs: 195-197**
**SUBSECTION:  Preventing Retaliation**

PROGRESS:
Since the Agency's Third Report, SOP 3-22 Complaints Involving Department Policy or Personnel and SOP 7-1 Internal Affairs were approved by the monitor. The City has completed work on the CPOA ordinance which have also received approval from the monitor.

The Office of Policy Analysis (OPA) began reviewing policy for the six-month review in August 2016. Once a policy has completed the Department's internal policy review process, it will be submitted to the monitor for review. The Executive Director, CPOA investigators, and the Internal Affairs Commander will meet to ensure that any instances of retaliation that occur are fully investigated. One case for the current reporting period is currently under review for potential retaliation.

In response to the Monitor's Third Report, SOP 1-4 Personnel Code of Conduct prohibiting retaliation has been finalized by APD and approved by the monitor. SOP 7-1 Internal Affairs was approved by the monitor and includes an Annual Retaliation Report and Review. The report considers all alleged incidents of retaliation that occurred or were investigated to ensure corrective action was taken. The Internal Affairs Division is responsible for creating the Annual Retaliation Report.

**Paragraphs: 198-200**
**SUBSECTION:  Staffing and Training Requirements**

PROGRESS:
SOP 3-22 Complaints Involving Department Policy or Personnel, SOP 7-1 Internal Affairs, and SOP 7-2 Critical Incident Review Team (CIRT) were approved by the monitor. The City has completed work on the CPOA ordinance which have also received approval from the monitor.

The Comprehensive Staffing Assessment and Resource Study was completed December 11, 2015 and a staffing plan was completed by APD June 11, 2016. The staffing plan accepted the recommendations regarding staffing levels for the Internal Affairs Division (IAD) and developed a projected timeline as to when the IAD will be fully staffed. The CPOA is fully staffed. The CPOA has filled the vacancy of the Community Outreach Specialist and the Data Analyst.

The CPOA is discussing the viability of implementing a tracking system to measure the productivity of investigators. A Memorandum of Understanding (MOU) has been generated to cover guidelines for mediation was submitted to the monitor for review. A MOU to define cases eligible for administrative closing will also aid in the reduction of investigative case load.

The Department completed eight hours of supervisory training in 2015. The Department completed an additional 24 hours of supervisory investigations training by the June 2, 2016 training deadline. The 24-hour block of supervisory training was for all personnel, both sworn and non-sworn, who conduct misconduct investigations.

The City has completed work on the CPOA ordinance which has been submitted and received approval from the monitor. CPOA staff received 40 hours of training. The CPOA Executive Director is compiling a source document to include dates, the subject, a syllabus if available, and the hours. Certificates of completion for any internet training was submitted to the monitor. Part of the 40 hours of training included eight hours of investigative training and 17 hours of training conducted at the NACOLE conference. Attendance at the supervisory use of force training fulfilled the ongoing 8-hour annual training requirement. The training was completed in May 2016.

**Paragraphs: 201-202**
**SUBSECTION:  Discipline Process and Transparency**

PROGRESS:
Since the Agency's Third Report, all policies are in the process of being reviewed by the Standard Operating Procedure Review Committee (SOPRC) for potential sanction requirements. Where a policy violation requiring a sanction is identified, a recommended disciplinary range (in accordance with SOP 1-09 Discipline) will be assigned and the policy will be submitted to the Policy and Procedure Review Board (PPRB) for approval. As of this date, 27 policies have undergone this review process to assign a sanction level to each potential violation.

In a published revision of SOP 1-09 Discipline, dated May 13, 2016, the policy was revised to include a list of mitigating and aggravating circumstances relative to any deviation from the use of sanctions.  The revised policy also considers whether remedial corrective action is appropriate in a case where discipline has been imposed. Examples of aggravating and mitigating circumstances which were approved by the parties and the monitoring team have also been provided in SOP 1-09.

**Paragraphs: 203-204**
**SUBSECTION:  Staffing, management, supervision**

PROGRESS:
The Comprehensive Staffing Assessment and Resource Study was completed December 11, 2015, by Dr. Alex Weiss, a nationally recognized authority in the field. In August 2016 APD initiated its annual bid for sworn officer assignments. APD met the 8-to-1 supervisory threshold for all shifts. The staffing plan was jointly developed with collaboration from the parties by June 11, 2016.

**Paragraphs: 205-208**
**SUBSECTION:  Duties of Supervisors**

PROGRESS:
SOP 3-9 Supervisory Leadership was approved by the monitor.

The Department completed Talent Management Training for all sworn and non-sworn personnel. The updated Employee Work Plan (EWP) performance evaluation form for supervisors include "quality of investigations" as a rating component. The new EWP process will continuously be monitored by the Department's Personnel Unit and will act to alert supervisors via e-mail when a pattern of unsatisfactory performance occurs.

APD is in the process of developing a user friendly system to track an officer's engagement with the community and to build trust through outreach. The community outreach efforts will be compiled for performance evaluations, along with documentation of such engagement in the officer's monthly report by their supervisor. The Department is considering other avenues to finalize in order to document community engagement and to analyze trend data.

The field service bid was completed and takes effect in September 2017.  The bid process began by rank with lieutenants first, then field sergeants, and finally patrol officers.  The Department adjusted the staffing for lieutenants to ensure consistent coverage and supervision on the weekends. The number of teams, per area command, were increased to ensure a minimum of eight team members. In addition, all field officers converted to 12-hour shifts.

**Paragraphs: 209-211**
**SUBSECTION:  Supervisor Training**

PROGRESS:
The Department completed eight hours of supervisory training in 2015. The Department completed an additional 24 hours of supervisory investigations training by the June 2, 2016 training deadline.

To address commentary in the Monitor's Third Report regarding the City's policy on the promotional process, the policy has been finalized and the Academy has finalized curriculum for personnel interested in the sergeant's promotional process.

**Paragraphs: 212-219**
**SUBSECTION:  Early Intervention System**

PROGRESS:
Since the Agency's Third Report, SOP 3-49 Early Intervention System was approved by the monitor.

As of the writing of this report, training is underway for use of force reporting using Blue Team. The training will be completed by September 2016. By the end of September, the software rollout will be completed. APD will continue to reevaluate usage and functionality of the software.

The Department is making progress to fully implement the Early Intervention System (EIS) in order to provide management with a tool that promotes supervisory awareness, provides early trend data in officer conduct, and documents and encourages employee conduct that reflects constitutional policing in order to build community trust. Additional tools include the Employee Work Plan (EWP) that promotes accountability and staff development in conjunction with the EIS and IAPro that tracks essential data to

analyze and promote best practices for clear evaluation and identification of trends. Additionally, the Department is considering forming a group to review samples of on-body camera videos to identify issues on an ongoing basis.

EIS required the implementation of IAPro and BlueTeam in order to integrate the data. An updated version of BlueTeam is being trained across the entire Department. Using data analysis, the Department changed thresholds to be consistent among peer groups to initially be reevaluated every 12 months. Thresholds will be changed concurrent with the bid.

APD is purchasing a license for EIPro, an additional module to IAPro. It is anticipated that this will be deployed later this year. The EIPro module will allow supervisors to quickly access performance data for employees.

To address commentary in the Monitor's Third Report, APD has reengineered the BlueTeam software that allows the use of force and show of force form to be electronic and synced with IAPro to capture necessary reporting data. The Department anticipates all BlueTeam training for field officers will be completed by September 2016.

**Paragraphs: 220-231**
**SUBSECTION:  On-Body Recording Systems**

PROGRESS:
Since the Agency's Third Report, the on-body camera policy (SOP 1-39) was approved by the monitor. The curriculum was submitted to the monitor for on-body recording devices. The Department has completed 95% of all required training, including training for on-body camera devices. Training was completed within two months of approval of the policy.

The Leadership Conference on Civil and Human Rights (LCCHR) analyzed the Department's on-body camera policy and published their findings using a report card format. The feedback from the LCCHR included concerns that the Department's policy should emphasize civil rights. The Communication Director reached out to the LCCHR and provided the organization with the OPA's policy recommendation form in the event that the LCCHR wants to provide policy recommendations.
In response to commentary in the Monitor's Third Report regarding safeguard measures, the Department is developing a formal audit protocol to ensure sergeants are conducting monthly inspections of working equipment including on body recording devices for officers under their command. Protocols are being developed for how each supervisor will review videos and how the videos will be selected.
**Paragraphs: 232-235**
**SUBSECTION:  Recruitment, selection, recruitment plan**

PROGRESS:
SOP 2-04 Recruiting Unit was approved by the monitor. Revisions to the City's Human Resources Department Rules and Regulations for Police Department Promotional Procedures were approved effective July 19, 2016. The revisions are designed to ensure that promotions are based on the knowledge, skills, and abilities required to perform supervisory duties and with an emphasis on effective, constitutional, and community-oriented policing as part of the promotional criteria.

To meet the requirements set forth in the Settlement Agreement the Department administers three separate examinations. The city entrance exam covers strategic thinking, the psychological exam covers emotional maturity, and the background evaluation covers ability and skills in collaborating with diverse communities.

**Paragraphs: 236-240**
**SUBSECTION:  Hiring Practices**

PROGRESS:
SOP 2-04 Recruiting Unit was approved by the monitor. The hiring of all sworn positions are covered in existing policy and procedures that include a set of listed items to consider during a pre-employment investigation.

The recruiting unit completed their 2015 annual report which meets requirements set forth in the Settlement Agreement and has been submitted to the monitor for review. APD's annual report for 2016 highlighted recruiting requirements set forth in the Settlement Agreement.

APD has implemented an online application and selection process for the minimum standards. The online application is a blind process in which age, race, gender and other identifying information is not known to any APD or city employee until after the applicant has either been qualified or disqualified from the initial application.

In response to commentary in the Monitor's Third Report regarding internal audits of timely background checks, the Department's audit and inspections unit is developing an audit plan to implement a compliance safeguard to meet this requirement.

**Paragraphs: 241-243**
**SUBSECTION:  Promotions**

PROGRESS:
Revisions to the City's Human Resources Department Rules and Regulations for Police Department Promotional Procedures were approved effective July 19, 2016. The revisions are designed to ensure that promotions are based on the knowledge, skills, and abilities required to perform supervisory duties and with an emphasis on effective, constitutional, and community-oriented policing as part of the promotional criteria.

The revised promotional policy has been approved by the monitor. The Department is initiating a promotion process for sergeants based on the new promotional policy that was approved.

**Paragraphs: 244-246**
**SUBSECTION:  Performance and Evaluation**

PROGRESS:
In response to the Monitor's Third Report, SOP 3-19 Employee Work Plan was approved by the monitor.

The Department completed Talent Management Training for all sworn and non-sworn personnel. The updated Employee Work Plan (EWP) performance evaluation form for supervisors include "quality of

investigations" as a rating component. The new EWP process will continuously be monitored by the Department's Personnel Unit and will act to alert supervisors via e-mail when a pattern of unsatisfactory performance occurs.

The Talent Management Training included a training block on the functionality of the Personnel Performance Evaluation System within the City's PeopleSoft Human Resources Management System. The functionality includes the ratings and rating definitions, performance evaluation process steps, statistics and reporting, and the performance template that will be used. The supervisors training included training on the functionality of the manager's dashboard, output and quality measures, and reporting.

**Paragraphs: 247-253**
**SUBSECTION:  Officer Assistance and Support**

PROGRESS:
Since the Agency's Third Report, SOP 1-14 Behavioral Sciences Division and SOP 1-10 Peer Support was approved by the monitor. Training on the policy and the peer support program are under development. The Department plans to use the document management system to distribute the training to personnel. The training will include protocols for the peer support program.

The Department hired a new Medical Director for the Behavioral Sciences Division (BSD). The BSD has been recruiting both direct and indirect referrals. The director has posted requests for information from the community and from professional counseling associations.  For direct referrals, BSD has posted advertisements to recruit providers. These advertisements have been posted on professional clinical organization websites.  The BSD will be hiring a midlevel clinician who is a former police officer who will provide additional hours for direct referrals and therapy.

The Department finalized a new position and began recruitment for a Peer Support Coordinator. An updated job description was submitted to the monitor for review and approval.

BSD will continue to focus on supervisor training with an instruction block for the updated policy, how to contact BSD, confidential voluntary treatment, and work on pre-employments. The BSD will remain focused on minimizing stigma on requesting services by encouraging direct referrals and maintaining a provider presence within the Department. In reference to staffing, plans are being developed to expand the methods of outreach, such as participating in ride-alongs. The medical director is working with the Department's video production team to produce a video that describes the ways an officer can contact BSD. The BSD will continue to use electronic means of disseminating information such as Public Service University (PSU) or the Department's electronic document management system.

BSD continues to deliver professional and confidential treatment that is consistent with best practices, using evidenced based treatments. Confidentiality forms are given to and signed by patients so that they understand the assurances and limitations of confidentiality. All BSD staff are qualified and independently licensed mental health professionals. They have received ethics training on confidentiality and understand the legal necessity of confidentiality.

Training for the cadets at the academy is ongoing. Classes are being further refined and new classes are being developed by BSD providers working alongside the Crisis Intervention Unit (CIU). Classes include training from BSD staff on the basic structure and purpose of BSD and how to contact them. The training

will be based on the New Mexico Department of Public Safety (NMDPS) curricula and will be NMDPS certified. There will be instruction blocks focused on mental health stressors related to law enforcement and will discuss how mental health services can be accessed by officers and their families.

The Department hosted a "Family Night" to help officers prepare for the lifestyle of being a police officer and how the particular demands and stresses may affect those that they care about. This event promotes having healthy relationships outside of law enforcement and nurturing those relationships.

BSD updated their flyer and provider list and distributed them to all area commands. The updated flyer and provider list have been submitted to the monitor for review and approval. BSD is developing a clear system to continually keep these lists easily accessible and up to date.


**Paragraphs: 254-259**
**SUBSECTION:  Community engagement / Community, Problem-Oriented Policing**

PROGRESS:
Since the Agency's Third Report, SOP 3-02 Assistant Chief of Police, Deputy Chief of Police, Major, Executive Director, and Commander Responsibilities was approved by the monitor.

Based on feedback by the monitoring team, the mission statement was changed to include references to community and problem- oriented policing principles. The Department has encouraged all staff to use the new mission statement at the bottom of their signature line so it can be viewed by all recipients of every e-mail, both internally and externally within the Department.

The Department has hired a Community Policing Council Coordinator to increase awareness, facilitate growth, provide assistance and resources to the Community Policing Councils (CPCs) and the community. The Community Policing Council Coordinator will facilitate growth, provide assistance and resources to the CPCs and the community.  The Coordinator is going to local Parent-Teacher Associations (PTA) and booster meetings to expand the demographics of the CPCs.  Media releases to inform the public of ongoing activity, changes, and trends within the Department will continue and efforts through social media, including Facebook, Next Door, and Twitter.

CPCs have been meeting on a monthly basis since November 2014, well beyond the requirement of twice a year as specified in the Settlement Agreement. All submitted proposals and recommendations from CPCs are subject to a documented formal review and response process with established deadlines. An annual report summarizing CPC proposal results was submitted in July 2016 to the monitor for review. APD has also been engaging with the public through social media; growth metrics for social media outreach are being compiled. The Department is making additional efforts to increase participation in councils and increase membership size.

The monitoring team made specific recommendations for changes to Community Oriented Policing (COP)/Problem Oriented Policing (POP) training curriculum. Recommended materials have been added to the 40-hour supervisory training and will be used in future training sessions. The Department is developing a multi-cultural panel discussion that will be added to the basic training curriculum. The panel will be held in October 2016. The discussions will be taped and delivered to all officers in early 2017.

APD continues to attend Problem Oriented Policing (POP) meetings and develop packets for each area command that includes a map of each beat/area command, contact information for neighborhood associations, and emergency contacts. A spreadsheet was developed and implemented to document community meetings and problem solving activities.

**Paragraphs: 260-265**
**SUBSECTION:  Community Meetings and Public Information**

PROGRESS:
Since the Agency's Third Report, the Department has distributed a reference sheet that contains links to websites for all Settlement Agreement related policies, audits, and documents. Relevant documents can be located at http://www.cabq.gov/police/Department-of-justice-doj-reports.

Monthly crime statistics are available at http://www.cabq.gov/police/internal-reports/monthly-reports.

APD has subscribed to crimemapping.com, a website that allows residents to view crime trends in their neighborhoods. In two of the APD area commands, Northeast and Foothills, APD Crime Prevention Specialists also provide local daily crime news emails. APD recognizes that this is a good way to convey current information to residents and plans to expand this initiative to all other area commands. All Community Policing Council meetings include a crime briefing that includes data from crimemapping.com.

The Department updated its Facebook access to enable the messaging feature. The Department responds to questions, feedback, and concerns directly from the public's input.

The Department is in the process of developing a software application (app) compatible with most mobile devices. The app will provide a community interface with the Department. The features of the app include a Community Policing Council (CPC) link, recruitment information, an events calendar, a link to file a report or ask a question. The data collected from the app will be analyzed. The launch of the app is expected by the end of 2016.

APD is working with the Police Data Initiative to increase access to open data in order to build transparency and increase community trust.

The Department has hired a Community Policing Council Coordinator to increase awareness, facilitate growth, provide assistance and resources to the Community Policing Councils (CPCs) and the community. The Community Policing Council Coordinator will facilitate growth, provide assistance and resources to the CPCs and the community.  The Coordinator is going to local Parent-Teacher Associations (PTA) and booster meetings to expand the demographics of the CPCs.  Media releases to inform the public of ongoing activity, changes, and trends within the Department will continue and efforts through social media, including Facebook, Next Door, and Twitter.

In response to commentary from the Monitor's Third Report regarding required public meetings, the Department has held meetings at all CPCs in August 2016. To promote the public meetings, the Communications Director released a media advisory that went to all local television stations and radio stations that included all the information regarding the meetings. The information has been published on the Department's website and has also been widely publicized to the Community Policing Councils (CPC).

**Paragraphs: 266-270**
**SUBSECTION:  Community Policing Councils**

PROGRESS:

Since the Agency's Third Report, the Department has hired a Community Policing Council Coordinator who is responsible for accepting all applications from individuals who are interested in participating in a CPC. The Coordinator will forward each application to the corresponding chair of the associated CPC.  The Coordinator has been tasked with improving the diversity of CPCs and encouraging the groups identified in paragraph 267 to participate on the council.  The coordinator will facilitate growth, provide assistance and resources to the CPCs and the community. The coordinator has been tasked with emphasizing the requirements set forth in this paragraph at CPC meetings to keep an ongoing forum of Settlement Agreement related topics. Topics of discussion may become formal recommendations and future recommendations will be submitted to the monitor as they become available.

The CPCs are volunteer-based. Each individual CPC decides membership and duties. A web-based form to submit interest about serving on a CPC was developed. As part of the interest submission, the form requires the attachment of a resume and personal information about the applicant. The newly hired coordinator will be responsible for performing outreach to solicit more participation in the CPCs.

CPCs have been meeting on a monthly basis since November 2014. All submitted proposals and recommendations from CPCs are subject to a documented formal review and response process with established deadlines. An annual report summarizing CPC proposal results for 2015 was completed in July 2016 and submitted to the monitor for review.

All six CPCs have facilitators that are available during council meetings; if a facilitator is not available, the Community Outreach Coordinator is available to assist.  The coordinator has been tasked with developing a survey to distribute to all CPC council members and those in attendance during a council meeting to elicit recommendations for future topics of interest.  Two facilitators were identified by the Department as ineffective have been replaced.

The CPCs are finalizing their own set of guidelines and internal processes to standardize how the CPCs will function, formalize, and submit recommendations to the Chief.

Addressing commentary in the Monitor's Third Report that the city does not support the Community Policing Councils (CPC), the City and the Department has not removed or reduced its support for the CPCs and is committed to the CPC's success. In fact, the city has increased its commitment by hiring a full time, dedicated Community Policing Council Coordinator to facilitate growth, provide assistance and resources to the CPCs.

**Paragraphs: 271-293**
**SUBSECTION:  Civilian Police Oversight Agency**

PROGRESS:

Since the Agency's Third Report, the City has made certain amendments to the Civilian Police Oversight Agency (CPOA) ordinance, in coordination with the Albuquerque Police Officers Association (APOA) and

CPOA. The monitoring team and the Department of Justice were also notified and raised no objection. These amendments remain compliant with the Settlement Agreement.

The CPOA continues to review use of force trend data that is presented quarterly to APD's Force Review Board (FRB) and provides recommendations for policy changes. The CPOA hired a data analyst in order to track and analyze trend data. The CPOA has hired a new community engagement specialist for community outreach and to solicit public feedback across diverse communities. The agency continues to engage with the community policing councils in each area command. The CPOA has implemented outreach efforts through social media outlets and numerous contacts with the print and electronic media. The CPOA has done several on-camera interviews. The outreach efforts of the CPOA will be outlined in upcoming annual and semi-annual reports.

City Council reopened the POB application process for new members and the application period closed on July 10, 2016. The CPOA continues to strive for a diverse representation on the POB. Initial one-year term extensions are automatically renewed, unless the board member does not agree to the extension. The process of renewal for the others will be defined collaboratively with the Executive Director and City Council representatives. The biographies of the current board members can be found at: https://www.cabq.gov/cpoa/police-oversight-board/pob-board-member-profiles

Since the monitor first raised the issue in monitoring reports, the CPOA has undertaken a concerted effort including the scheduling special sessions of the Police Oversight Board (POB) to resolve all cases in the CPOA investigation backlog. With the exception of a few lingering cases of minor alleged SOP violations, the backlog has been cleared. Timelines on all current cases continue to be maintained. All cases and finding letters are posted on the POB and CPOA's website. The findings have been posted publicly on the CPOA website under board meeting minutes. The board meeting minutes can be found at: https://www.cabq.gov/cpoa/police-oversight-board-pob-1/pob-agenda-meeting-minutes

The CPOA will continue to publish meeting agendas on their website and the agency is conducting regular public meetings. An amendment to the City ordinance to include that the agency will make agendas available to the public via the City website, the City Council, CPOA, and APD is anticipated. The annual report was published in April 2016 and accepted by City Council. The CPOA 2016 Semi-annual report is expected to be released in September 2016.

A packet that included the City of Albuquerque Ordinance describing the appeals process was sent to the monitoring team for review and approval.  The CPOA has added a closing paragraph on all notification letters detailing the process of appeals. Since there are two types of appeal requests, the notification letter addresses how to appeal the findings of the POB versus how to appeal the discipline recommendations by APD. The case review sub-committee is reviewing all appeals for compliance with the ordinance to determine whether or not an appeal hearing will be granted. A webpage has been added to CPOA site outlining the standards and process required to appeal: http://www.cabq.gov/cpoa/appeal-process

**Paragraphs: 294-344**
**SUBSECTION:  Compliance / Outcome Assessments / Monitoring Plan / Public Statements / Access and Confidentiality / Implementation Assessments / Selection and Compensation / Court Jurisdiction**

PROGRESS:

Since the Agency's Third Report, a considerable amount of personnel effort has been utilized in order to develop mechanisms to collect the information described in the Settlement Agreement. This includes the acquisition of additional software, development of databases and platforms, and creation of websites where Settlement Agreement reports are archived. In addition, APD has hired an internal quality assurance group that will perform ongoing audits to help facilitate the achievement of Settlement Agreement directives.

As of the date of this report, APD has provided all Internal Affairs cases requested by the monitor and will continue to do so in the future. Completed Critical Incident Review Team (CIRT) cases are available for review, if requested. APD has been compliant in reporting critical firearms discharges, in-custody deaths, or arrests of any officer that occurred during this reporting period.

Addressing commentary in the Monitor's Third Report regarding incident reporting, APD has developed a policy detailing notification of parties during a critical incident and will be submitting it to the Department's policy approval process. Prior to this official policy being approved, the Department will continue to utilize the protocol of having a City attorney notify the monitor by e-mail.