IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE CITY OF ALBUQUERQUE, ) <br> ) <br> Defendant, ) <br> ) <br> v. ) <br> ) <br> THE ALBUQUERQUE POLICE ) <br> OFFICERS' ASSOCIATION, ) <br> ) <br> Intervenor. ) | CIVIL NO: 1:14-cv-1025-RB-SMV |

**UNITED STATES' RESPONSE TO CITY OF ALBUQUERQUE'S MOTION REQUESTING AN EVIDENTIARY HEARING REGARDING THE NEUTRALITY OF THE INDEPENDENT MONITOR [DOC. 311]**

Plaintiff United States of America agrees with the Defendant City of Albuquerque that "[b]ias on the part of the Monitor," if it exists, "has the ability to undermine the integrity of the entire reform process" at the Albuquerque Police Department (APD). (Doc. 311 at 5). The United States further agrees with the Defendant that "certain statements and conduct by [the Court's Independent] Monitor and monitoring team members," if proven, may potentially "raise questions of potential bias" here. (*Id*. at 1.)  To date, the Defendant has not alleged that any of the Monitor's individual assessments or findings in this case are the product of bias.  In its Motion, however, the Defendant has presented information that, viewed in the light most favorable to the Defendant, would be troubling and might erode public confidence in the reform process.  The Defendant, moreover, has stated that it has "other related evidence" that it has not

1

yet disclosed to the Court or the United States but would "provide at the hearing" if the Court orders one. (*Id.* at 4.)

Given the significant public interest in this case and the importance of maintaining the public's confidence in these proceedings, the Court may find it appropriate to clear the air regarding this dispute through a limited evidentiary hearing.[1] Alternatively, the Court may deem it appropriate to conduct its own independent inquiries, as it might if it were presented with a possible basis for recusal. 28 U.S.C. § 455(c); Code of Judicial Conduct for United States Judges Canon 3(C)(2). In either event, the United States stands ready to assist.

## I.     The March 18, 2016 Meeting

The Defendant attaches to its Motion a video of a meeting that took place on March 18, 2016, involving the Monitor, the City Attorney, and APD officials. (Doc. 311-3.)[2] The City Attorney asked the Monitor to preview comments that he would make at a City Council meeting later that day, and the Monitor refused. In the course of the discussion, Deputy Chief William Roseman stated that disagreements in front of the City Council would distract from the reform effort, to APD's detriment: "We're just concerned that it's gonna actually spin it up more to where it's gonna make it harder of us to keep moving forward in a positive way." (Doc. 311-2 at 8.) The Monitor agreed and echoed Deputy Chief Roseman's point: "And you guys, and you guys are gonna be the collateral damage." (*Id.* at 9.)

---

[1] The United States does not read the Defendant's Motion for an evidentiary hearing as a request to subject the Monitor or members of the monitoring team to examination. Any such request—for example, issuing a subpoena to the Monitor to compel testimony at a deposition or hearing—would raise a significant legal issue not presented here: Monitors are entitled to quasi-judicial immunity and typically are not subject to discovery. *See, e.g.*, *Mahoney v. Holder*, 62 F. Supp. 3d 1215, 1221 (W.D. Wash. 2014) (holding that monitor in Department of Justice consent decree case involving the Seattle Police Department was "entitled to absolute quasi-judicial immunity"); *Cobell v. Norton*, 237 F. Supp. 2d 71, 100 (D.D.C. 2003) ("Oral examination of a judicial or quasi-judicial officer as to matters within the scope of his adjudicative duties should be permitted only upon a strong showing of bad faith or improper behavior.").

[2] The transcript of the video that is attached to the Defendant's Motion is not a complete transcript of the video. Doc. 311-2. Instead, the transcript begins at a point that is about five minutes into the DVD video exhibit, Doc. 311-3.

In that same discussion, the Monitor also reaffirmed his commitment to the Defendant and to the reform effort: "I'm not gonna give up on you guys." (*Id*. at 7.) "I'm gonna give it the best I can give it." (*Id*. at 9.) Thus, in context, the Monitor may not have been stating an intent to take retaliatory actions against APD, but instead concurring with Deputy Chief Roseman that disagreements between the Monitor and the City Attorney before the City Council would distract from the reform effort, to APD's detriment.

In all events, the Monitor's poor choice of words is regrettable. The Monitor's comments may raise questions in the minds of some about the legitimacy of this process—questions that the Court may wish to resolve through the evidentiary hearing that the Defendant has requested.

The Defendant alleges that it informed DOJ about the Monitor's "collateral damage" comment but that "DOJ did not take additional steps to investigate the appearance of bias by the Monitor." (Doc. 311 at 11.) This is inaccurate: as the Defendant acknowledges, it did not provide the United States with its recording of the March 6 meeting, or even inform the United States of the existence of that recording, until the day it filed its Motion on October 31, 2017. Instead, the Defendant verbally informed DOJ of the comment many months after it was made. The United States responded by making inquiries of the Monitor, who described the context of his comments. The United States believed that there had been a miscommunication and engaged in efforts to improve communication between the Defendant and the Monitor, such as by participating in APD's weekly meetings with the Monitor, developing protocols regarding the exchange of information, and memorializing the roles and responsibilities of the Monitor. (Doc. 249-1.) Nonetheless, given the public interest in this issue and the other information presented in the Defendant's Motion, the United States does not object to an evidentiary hearing or an independent assessment by the Court at this time.

3

## II.    Comment by a Monitoring Team Member

The Defendant next describes a comment made by an unnamed member of the monitoring team and reported to the Defendant by an unnamed APD employee—that the Monitor has "an ax to grind." (Doc. 311 at 8-9.) The Defendant did not inform the United States of this comment until the day it filed its Motion.

As presented in the Defendant's Motion, the statement is third-level hearsay without attribution as to speaker or listener. Without basic facts about the conversation, it is difficult to assess the Defendant's allegation about the Monitor's actions or state of mind. Yet the Defendant has indicated that it has "other related evidence" that it would "provide at the hearing," which might include testimony from the city employee who heard the comment. (*Id.* at 4, 9.) In all events, if the comment were made as it is described—and if the comment accurately describes the Monitor's actions or state of mind—it would be troubling. As noted above, the comment may raise questions among members of the public, and the Court may wish to address those questions through an evidentiary hearing or its own independent inquiries.

## III.    The Monitor and the Department of Justice

Finally, the Defendant asserts that the "nature of the relationship" between the Monitor and the Department of Justice (DOJ) indicates bias. (Doc. 311 at 10.) It alleges that the Monitor calls the attorneys for the United States "my attorneys." (*Id.*) It expresses concern about "the nature and frequency of communications between the Monitor and DOJ attorneys (often to the exclusion of the City)." (*Id.*) And it states that DOJ takes an improper role "in handling issues of the Monitor in meetings." (*Id.*)

There is nothing improper about the Monitor's relationship with the Department of Justice. Whether the Monitor, a non-lawyer, refers to DOJ attorneys as "my attorneys" is of no

4

moment.  DOJ does not represent and has never represented the Monitor, in fact or appearance.  The Monitor does not seek legal advice from DOJ attorneys, and DOJ attorneys do not solicit or follow directives from the Monitor as they would a client.  The Monitor shows no special solicitude for the preferences of the United States in his monitoring activities.

Representatives from DOJ speak to the Monitor and his team out of the presence of the Defendant, just as the Defendant's personnel and counsel speak regularly with the Monitor and his team out of the presence of DOJ.  Nothing in the CASA requires that all parties be present for all communications with the Monitor, and for obvious reasons.  The logistics alone would bring the compliance process to a halt.  Indeed, DOJ was not present for either of the interactions between only the Monitor and the City—the "collateral damage" comment or the "ax to grind" comment—that the Defendant discusses in its Motion.

The Defendant also alleges that the United States objected when it sought mediation before a magistrate judge regarding "relationship issues, work flow and information flow, data flow, and communication." (Doc. 314, 1/5/17 Hr'g Tr. 21:20-22; Doc. 311 at 12.)  The United States did not object to mediation.  At a status conference on January 5, 2017, the United States stated that the parties should go forward with a previously scheduled conferral session and seek mediation thereafter if it was still necessary. (Doc. 314, 1/5/17 Hr'g Tr. 8:1-9:5.)  The Court endorsed that approach (*id.* 24:13-25:16), and the parties were later able to agree to the memorialization regarding communication with the Monitor referenced above (Doc. 249-1), which obviated the need for mediation.

## CONCLUSION

For the foregoing reasons, the Court may find it appropriate to resolve the issues raised by the Defendant's Motion through an evidentiary hearing or its own independent inquiries. The United States has no objection to either approach.


Respectfully submitted this 14th day of November.

Plaintiff UNITED STATES OF AMERICA

| | |
|---|---|
| JAMES D. TIERNEY | JOHN M. GORE |
| Acting United States Attorney | Acting Assistant Attorney General |
| District of New Mexico | Civil Rights Division |
| ELIZABETH M. MARTINEZ | |
| Executive Assistant United States Attorney | STEVEN H. ROSENBAUM |
| MICHAEL H. HOSES | Chief |
| Assistant United States Attorney | |
| Chief, Civil Division | */s/  Paul Killebrew* |
| RUTH F. KEEGAN | PAUL KILLEBREW |
| Assistant United States Attorney | Special Counsel |
| U.S. Attorney's Office | LUIS E. SAUCEDO |
| District of New Mexico | Counselor to the Chief |
| P.O. Box 607 | COREY M. SANDERS |
| Albuquerque, NM  87103 | STEPHEN M. RYALS |
| Telephone:  (505) 346-7274 | Trial Attorneys |
| Email: Elizabeth.Martinez@usdoj.gov | Special Litigation Section |
| | Civil Rights Division |
| | U.S. Department of Justice |
| | Washington, DC  20530 |
| | 950 Pennsylvania Avenue, N.W. |
| | Telephone:  (202) 305-3229 |
| | Facsimile:  (202) 514-4883 |
| | Email: Paul.Killebrew@usdoj.gov |

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 14, 2017, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system, which will send a notice of electronic filing to the attorneys of record.

>                */s/ Paul Killebrew*
>                PAUL KILLEBREW