1                    IN THE UNITED STATES DISTRICT COURT

2                      FOR THE DISTRICT OF NEW MEXICO

3

    UNITED STATES OF AMERICA,        )
4                                     )
                    Plaintiff,        )
5                                     )
                    vs.               )   NO: 14-CV-1025 RB-SMV
6                                     )
    THE CITY OF ALBUQUERQUE,          )
7                                     )
                    Defendant.        )
8

9

10                       TRANSCRIPT OF PROCEEDINGS
                       TELEPHONIC STATUS CONFERENCE
11               BEFORE THE HONORABLE ROBERT C. BRACK
                      UNITED STATES DISTRICT JUDGE
12                    THURSDAY, FEBRUARY 8, 2018
                             11:01 A.M.
13              LAS CRUCES, DOÑA ANA COUNTY, NEW MEXICO

14

15

16

17

18

19

20

21         (Proceedings recorded by machine shorthand and
        transcript produced by Computer-Aided Transcription.)
22
        REPORTED BY:       VANESSA I. ALYCE, RPR, NM CCR #259
23                         Federal Official Court Reporter
                           100 N. Church Street
24                         Las Cruces, NM  88001
                           Phone:  (575) 528-1430
25                         Email:  Vanessa_Alyce@nmcourt.fed.us

```
 1    TELEPHONIC APPEARANCES:

 2        FOR THE UNITED STATES:

 3                UNITED STATES ATTORNEY'S OFFICE
                  District of New Mexico
 4                201 Third St. NW, Ste. 900
                  Albuquerque, NM  87102
 5                BY:  ELIZABETH M. MARTINEZ, ESQ.

 6                and

 7                U.S. DEPARTMENT OF JUSTICE
                  Civil Division
 8                601 D. Street NW, Room 5422
                  Washington, D.C. 20004
 9                BY:  COREY M. SANDERS, ESQ.

10                and

11                U.S. DEPARTMENT OF JUSTICE
                  Civil Division
12                601 D. Street NW, PHB 5418
                  Washington, D.C. 20004
13                BY:  PAUL KILLEBREW, ESQ.

14
          FOR THE CITY OF ALBUQUERQUE:
15
                  CITY ATTORNEY'S OFFICE
16                One Civic Plaza NW, Fourth Floor
                  Albuquerque, NM  87102
17                BY:  SAMANTHA HULTS, ESQ.
                       JERAMY SCHMEHL, ESQ.
18

19        FOR THE ALBUQUERQUE CITY COUNCIL:

20                WALZ AND ASSOCIATES
                  133 Eubank NE
21                Albuquerque, NM  87123
                  BY:  JERRY A. WALZ, ESQ.
22
          FOR THE INTERVENOR APOA:
23
                  FREDERICK MOWRER, ESQ.
24                P.O. Box 1966
                  Albuquerque, NM  87103
25
```

```
 1    TELEPHONIC APPEARANCES continued:

 2         Also Present:

 3                    DR. JAMES D. GINGER
                      Court-appointed Independent Monitor
 4
                      CHIEF MICHAEL GEIER
 5                    DEPUTY CHIEF ERIC GARCIA
                      DEPUTY CHIEF ART GONZALEZ
 6                    DEPUTY CHIEF ROGER BAÑEZ
                      LIEUTENANT CORI LOWE
 7                    Albuquerque Police Department

 8

 9                    DIONNA K. FORD, Law clerk

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1                    (On the record at 11:01 A.M.)

2              THE COURT:  Good morning.  This is *United States*

3  *of America versus City of Albuquerque*.  We're here for our

4  February 2018 monthly status conference.

5              Folks, why don't you let us know who all is on

6  the line, please.  Let's start with the City of Albuquerque.

7              MR. SCHMEHL:  Good morning, Your Honor.  This is

8  Assistant City Attorney Jeramy Schmehl.  I'm here with

9  acting City Attorney Samantha Hults; Michael Geier, Chief of

10  Police; Lieutenant Cori Lowe; Deputy Chief Eric Garcia;

11  Deputy Chief Art Gonzalez; and Deputy Chief Deputy Chief

12  Roger Bañez.

13              THE COURT:  Good morning to everyone.  Thank you

14  for your appearances.

15              And on behalf of the Government?

16              MS. MARTINEZ:  Good morning, Your Honor.

17  Elizabeth Martinez.  And we also have Paul Killebrew.

18              Is Corey Sanders on also, Paul?

19              MR. KILLEBREW:  Yes.

20              THE COURT:  And Corey Sanders.

21              MS. HULTS:  This is Samantha Hults.  We also have

22  Jerry Walz, who is independent counsel for the City Council

23  on the line.

24              THE COURT:  Thank you.  Good morning, Mr. Walz.

25              MR. WALZ:  Good morning, Your Honor.

1          THE COURT:  And how about from APOA?

2          MR. MOWRER:  This is Fred Mowrer on behalf of the

3   Albuquerque Police Officers Association.

4          THE COURT:  Yes, sir.  Mr. D'Amato and

5   Mr. Willoughby aren't there this morning?

6          MR. MOWRER:  No, sir, not that I'm aware of.

7          THE COURT:  And Dr. Ginger, are you there?

8          DR. GINGER:  I am, Your Honor.

9          THE COURT:  Great.  Anyone else on the line this

10   morning?

11          LAW CLERK:  Judge, this is Dionna.  I'm here.

12          THE COURT:  Thank you, Dionna.

13          So the first matter on the agenda is an update on

14   the status of the City Council's Resolution 17-252,

15   reference the audit of the monitor's performance.

16          Mr. Walz, do you have the lead on that?

17          MR. WALZ:  Yes, I do, Your Honor.  And again, for

18   the record, I'm the independent counsel for the City Council

19   of Albuquerque, for the City Council only.

20          Well, I'm pleased to report that I believe that

21   we've had significant progress made since our last status

22   conference.  Since then, a request was made on behalf of --

23   in late January of several of the requesting councilors for

24   the audit that the Internal Audit Department at this time

25   discontinue or otherwise not move forward on any type of

1    independent review or audit performance of Public Management

2    Resources, Inc., and Mr. James Ginger, who is the

3    independent monitor.  It's my understanding that based on

4    that request, there has been no movement forward by Lawrence

5    Davis, who is the acting City auditor to conduct such an

6    audit, as originally was envisioned pursuant to the City

7    Council's resolution 17-252.  Rather the City Council may be

8    working what I would label as an approach to somehow assess

9    the type and nature of services rendered and to confirm that

10   the dollars appropriated and spent were appropriately done

11   so.

12          Even though Dr. Ginger and the City had agreed to

13   a flat fee, which apparently has been a financial benefit to

14   the City, as we heard before from Dr. Ginger, a review of

15   activities and the validation of the appropriation and

16   expenditure of taxpayer money is certainly something

17   reasonable for the City Council to pursue so long as it is

18   done in the manner to not try to evaluate the performance of

19   Dr. Ginger -- as we all have acknowledged repeatedly, that's

20   the Court's sole province -- but to be able to assure

21   themselves and their constituents that his services were

22   reasonable, necessary, that he did come to Albuquerque on

23   "X" days and "X" amount was paid.

24          Now, I'm not in a position, Your Honor, at this

25   time to provide specific details as to where City Council

1   may want to go with their approach as they will need to meet

2   to hammer this out.  And however, before anything goes

3   forward, I will work in close conjunction with the City

4   Attorney's Office, DOJ, and the U.S. Attorney's Office here

5   in Albuquerque to see if there's any type of objection or

6   recommendations, and with Dr. Ginger, on perhaps the best

7   way to proceed, if indeed, the Council even wants to move

8   forward at this point.  But for now, there's just -- there's

9   nothing on the drawing board.

10         I also would like to report to the Court that we

11   had a very productive discussion -- by "we," myself, the DOJ

12   Counsel, Elizabeth Martinez at the U.S. Attorney's Office,

13   and the acting City Attorney -- as to potential areas that

14   could be measured and what documents are public record,

15   pursuant to the CASA.  And pretty good suggestions came up

16   from that discussion that may be of assistance in developing

17   some type of plan.  I'm downgrading it from the word "audit"

18   to some type of reasonable analysis as to expenditures of

19   taxpayers' funds.  But again, we want to look at activities

20   that are actually measurable, if indeed, they do go forward.

21   And again, we all reaffirm that the Court determines the

22   performance of Dr. Ginger.

23         And as we know from litigation in consent-decree

24   cases, which I have some familiarity with, that if there's a

25   challenge to the effectiveness of an expert, monitor,

1    compliance administrator, that would properly be raised as a
2    challenge through proper motion practice, after consulting
3    with the principals involved.  I want to assure everybody
4    there's no such motion practice in the works, but we
5    understand that that would be the appropriate way, if there
6    ever was such a challenge.

7              Also through the Director of Council Services, it
8    was acknowledged that the requesting councilors have
9    successfully opened up a dialogue through this process, they
10   believe, with the Court and with the DOJ and the City
11   Attorney's Office.  And even though there's always
12   information in place, as Ms. Martinez has rightfully pointed
13   out on multiple occasions and sent me a packet of material
14   that very much validated and substantiated her
15   representations, the City Council is still an independent
16   body much involved in this process, but whether they were
17   getting the appropriate flow of information, input and
18   output, that was not occurring.  But it does appear, through
19   my actions and through actions of the City Attorney's Office
20   and a willingness by the City Council to rethink some of
21   these positions that we have this new dialogue that I don't
22   think was present before.

23             And Your Honor, that's where we're at at this
24   point.  I'm sorry I can't give you any specifics, but the
25   City Council will be advised accordingly by myself.  Maybe

1    there'll be additional input from the City Attorney's

2    Office, if there's no conflicts.  And there's a lot of

3    factors we will be looking at and input that will need to be

4    given.  But for now, that's where we're at.  And I think

5    it's all a good sign.  And also at the recent status

6    conference, I believe we had two City Councilors present,

7    Councilor Benton and Councilor Jones, and I think there

8    might have been another councilor appearing telephonically,

9    so they are coming to the plate, taking a more active role,

10   and I think all these are very good signs.

11            Also we appreciated Dr. Ginger's explanation of

12   the work that he's performed and the fact that his services,

13   if you put them on an hourly scale, are something that most

14   of us would not want to be paid.  And they understand that

15   fact as well.  And that type of communication from

16   Dr. Ginger is extremely helpful in determining whether the

17   money is as well spent.

18            So Your Honor, that's what I have to say at this

19   juncture.  I think Ms. Martinez might have a few comments,

20   and I'd be glad to answer any questions that the Court may

21   have.

22            THE COURT:  Thank you, Mr. Walz.  And I hear all

23   of that as very positive.

24            Ms. Hults, anything from the City Attorney's?

25            MS. HULTS:  Yes, Your Honor, thank you.  I just

1    wanted to add a little bit to what Jerry is speaking to

2    about a flow of information and that I've been in contact

3    with Council Services about providing them with more

4    frequent -- the council, as individuals, more frequent

5    updates and to answer questions about the process or to

6    update them as to where we are.  And Assistant City Attorney

7    Jeramy Schmehl and I will be meeting with councilors

8    individually, upon their request, to kind of give them

9    information that -- or answer questions.  I feel like the

10   more communication between my office and with the assistance

11   of, you know, Jerry Walz, will help to answer some of their

12   questions maybe about, not necessarily through an audit, but

13   about performance or how things are working and moving

14   forward.  And so my office is committed to provide that to

15   them and assure that that occurs moving forward from this

16   point on.

17             THE COURT:  Well --

18             MS. HULTS:  Thank you.

19             THE COURT:  -- yes, ma'am.  Thank you.

20             Ms. Martinez?

21             MS. MARTINEZ:  Yes, Your Honor.  I do want to

22   report to the Court that the three councilors who

23   participated in our monthly meeting on Tuesday approached

24   the meeting in a very collaborative manner.  They were very

25   sincerely interested in what was going on.  It was apparent

1  that they were very much engaged and had a sincere interest

2  in wanting to know about the reform effort and the details

3  of the reform effort and were very supportive of our police

4  officers and the process that the police department is going

5  through.

6          In addition to Councilors Benton and Jones, the

7  third counselor who participated telephonically was

8  Councilor Borrego, who is a City Councilor.  And she was

9  also very, very much engaged in the meeting.  I think that

10 they were all quite surprised to learn that Dr. Ginger has

11 been working at a fifth of his regular consulting rate while

12 he has been working on this project.

13         One of the things that surprised the DOJ team and

14 Dr. Ginger is that we did not realize that the City is

15 working on its budget now and will need to be addressing

16 budgets for 2019 in April.  And that is going to require the

17 monitoring team to pull together its budget for 2019 sooner

18 than what the monitoring team and DOJ had anticipated.  I

19 know that we had been thinking that the monitoring team

20 needed to start pulling together a proposal in perhaps May

21 or June for the parties to start thinking about and

22 negotiating over, but it is obvious that this is something

23 that's going to have to happen much sooner, since the City's

24 budget has to be hammered out by April.  And so this is

25 going to be coming up at a point when the monitoring team is

1    working very, very intensely with our police department on a

2    compliance plan and on making some very, very significant

3    changes on the use-of-force aspects of the CASA.

4            So that's just an additional piece that we had

5    not anticipated, so I just wanted to make sure that that was

6    on the Court's radar, because it certainly, until Tuesday,

7    had not been on ours.

8            THE COURT:  Well, thank you.  And I'll hear from

9    Dr. Ginger.

10           Dr. Ginger, are you feeling better?

11           DR. GINGER:  Yes, sir, I am.  I think I'm

12    actually almost back to normal by now.  So I can carry on a

13    conversation without coughing for at least a good two or

14    three hours.  That's a major step forward.

15           THE COURT:  Well, that's great.  I'm hoping this

16    conversation doesn't last that long.

17           How -- although I'd like to hear your thoughts on

18    Mr. Walz' report.

19           DR. GINGER:  Your Honor, you know, as you well

20    know, I was somewhat flabbergasted by the council's apparent

21    need to take a look into what was, indeed, the low bid for

22    this project.  And I don't think, at least I hope, that

23    neither the Department of Justice, the City of Albuquerque,

24    or the Court have any problems with the quality of the work

25    that this team is doing in Albuquerque.  So I was kind of

1    surprised, I suppose, to hear that they were interested in

2    an audit.  I mean, I certainly understand their need for

3    information to cover Years 5 and 6.  And I'm obviously

4    willing to produce a proposal responsive to that, but an

5    audit just seem like a weird way to do it.  But you know,

6    we're going to continue focusing on the work that needs to

7    be done.

8            We meet with the City at least five times a month

9    through four weekly chief's meetings and a monthly parties'

10   meeting.  So there's a great deal of opportunity for input,

11   exchange, discussion, even debate, and we'll keep those

12   lines open as well.

13           THE COURT:  Well, I appreciate that.  And I have

14   recognized, as you have, all along this process has to be

15   accountable.  I was surprised by the audit request back in

16   the fall.  I'm pleased to hear that, as Mr. Walz described

17   it, it's been downgraded from audit to something other, but

18   that's -- you -- you are responsible to me for the product,

19   but responsible to City for the price of the product, and

20   that's -- we've all understood that, I think.  I just -- I

21   don't want to have too much of your time and energy spent

22   looking sideways when we have so much ground to cover going

23   forward.

24           So Mr. Mowrer, did you want to be heard on that

25   topic?

1          MR. MOWRER:  No, sir, I don't believe so.

2          THE COURT:  Well, great.  So that's a great

3   segue.  I said don't want to spend too much time looking

4   sideways as we're trying to go forward, and the second thing

5   on the agenda is an update on setting the stage for the way

6   forward.

7          Mr. Schmehl, do you have the lead on this?

8          MR. WALZ:  Your Honor, before -- again I didn't

9   mean to, but I have to interrupt like I did last time.  May

10  I be excused then again?  Because we are watching the

11  expenditures and that's all I have to say for this status

12  report.  So with the Court's permission, if there's no

13  objection, I would ask that the Court respectfully let me be

14  excused from this point forward.

15         THE COURT:  Unless there's any objection,

16  Mr. Walz, you're free to go on about your business.

17         MR. WALZ:  Thank you very much, Your Honor.  And

18  thanks to all.

19         THE COURT:  Yes, sir.  Thank you.

20         Mr. Schmehl?

21         MR. SANDERS:  Your Honor, this is Corey Sanders.

22  I believe the Department of Justice, we're going to take the

23  lead on addressing the two bullets under Issue Number 2.

24         THE COURT:  Great.

25         MR. SANDERS:  Your Honor, I will be handling the

1   second issue, CASA use of force, and my colleague, Paul

2   Killebrew, will be handling the first point regarding the

3   joint motion, Your Honor.

4        THE COURT:  Thanks.  Mr. Killebrew, then.

5        MR. KILLEBREW:  Thank you, Your Honor.  This is

6   Paul Killebrew on behalf of the United States.  We had

7   anticipated filing today a joint filing regarding the way

8   forward proposal that would have spelled out for the Court

9   how that proposal is going to be implemented and practiced

10  which will require the suspension of paragraph 308.

11  Paragraph 308 involves the timing of the monitor's report.

12  The next report is due in May, and the joint stipulation for

13  a suspension that we would have filed would have said "we're

14  not going to do that; instead, here's what we're going to

15  do...."

16        We have drafted the joint suspension from the

17  City a couple days ago.  And in reviewing it, we realized

18  that, while we had all agreed in principle on the approach

19  that would be taken, as in many things, the devil is in the

20  details.  And when we started looking at the details and

21  thinking them through, it's not that we have an objection to

22  what was on the table, it's more that we thought that these

23  details deserved a little more thinking through.  And I'm

24  happy to go into those things, if the Court would like, but

25  we've raised these concerns with the City Attorney's Office

1   this morning and with Dr. Ginger before the status

2   conference.  And everyone is in agreement on these things,

3   that these are all issues that warrant being worked out.

4   And our hope is that if we can work them out, the plan that

5   we will present to the Court will make a lot more sense,

6   will be a much more solid plan and will clearly identify for

7   the Court what's going to be happening during this period

8   between now and when you're going to get the next compliance

9   report.

10          So that's generally where we're at and -- but

11  that means that we will not be filing a joint stipulation

12  today.  We need some more time to work on it.  At this

13  point, we don't believe that it is -- it may be possible to

14  set a deadline, but we have concerns that we would set a

15  deadline and then have to move it again, so -- we've done

16  that twice already, so we're a little bit reluctant to set a

17  deadline because some of the details we need to work out may

18  simply take some time.  There's some information that we

19  need from APD that may take them some time to work out.

20          So that's where we're at today.  Another thing I

21  wanted to raise with the Court about this filing:  You may

22  remember, Your Honor, that when the parties moved to enter

23  the CASA as an order of the court, the Court received

24  briefing from the amici.  And the amici representing the

25  McClendon class pointed out that the CASA, as it was

1    written, seemed to permit the parties to modify the court

2    order without a subsequent court order.  And Your Honor

3    spelled out a process in the order entering the CASA as an

4    order that the parties would follow if they sought to modify

5    the CASA.

6         The paragraph that contains the modification

7    provision is the same paragraph that contains another

8    provision on suspending CASA requirements.  And so the

9    parties, in working on this filing have taken the approach

10   that we would follow the same procedures for this suspension

11   of paragraph 308 that we would have filed -- that we would

12   have followed for a modification of 308.  In other words,

13   we're going to spell out the suspension that we're seeking,

14   that we're stipulating to, the reasons -- the purpose of the

15   suspension and the circumstances that made it necessary.

16   And we hope that's satisfactory to the Court.

17        THE COURT:  Well, here's the thing:  We need to

18   move forward.  We had a great visit the other day and all --

19   and had all of our energies pointed in the same direction,

20   but this is, as Counsel just said, Mr. Killebrew just said,

21   this is the second or third time that we've proposed a date

22   and we've pushed it out.  And I -- I don't want to give the

23   impression that by my willingness to accept the prior two

24   extensions that I'm just -- I'm open to unlimited

25   extensions.  That's not so, and you-all need to understand

1    that.  I understand devils and I understand details, and

2    you-all know them better than I do in this regard, but when

3    you give me a proposed next deadline, I'm going to say

4    let's -- let's adhere to that.  Because as I mentioned the

5    other day, I'm getting older all the time, I don't know

6    about the rest of you, but I want to see this thing through.

7    And if we extend it too much, I won't be around.

8              So that was Mr. Killebrew.  Mr. Sanders, did you

9    have something -- well, before we go to the second bullet,

10   does anyone else want to be heard on this proposed

11   extension?

12             DR. GINGER:  Your Honor, this is Jim Ginger.  If

13   I can make a brief comment?

14             THE COURT:  Yes, sir.

15             DR. GINGER:  This next step is our last best

16   chance at getting this right.  I've reviewed the City's

17   proposal for a document to go to the Court outlining in

18   detail the way forward that, frankly, is based on an idea

19   that I proposed to the parties as a possible way to resolve

20   this.  And that idea went out as just that, it was an idea.

21   It was a fairly well sketched out conceptually, but as the

22   Court is well aware, in this process, the devil is in the

23   details.  And hammering those details out is something that

24   I recommended be done by the parties.  And that, in and of

25   itself, is -- I'll take -- I'll take the blame for it.

1    That's probably one of the reasons we're in a delayed status

2    right now is that we haven't coalesced.  We've coalesced,

3    Your Honor, the concept.  We haven't coalesced around the

4    process.

5              And I agree with the Department of Justice, we're

6    better off getting off on a very solid foundation where, you

7    know, we've identified goals and objectives and time lines.

8    And frankly, at this point, we have some goals and

9    objectives and we have some time lines, but we don't have a

10   coherent plan.  And I think it would be detrimental to the

11   progress of the process overall if we moved forward at this

12   point.

13             So I have to support DOJ's request for an

14   extension on this.  You know, an extension without a time

15   line bothers me, too, because as the Court knows, I'm a

16   goal-objective and time-line kind of fellow.  But I would

17   much rather take another few weeks and get a reliable plan

18   to the Court with goals, objectives, and time lines as

19   opposed to what we have right now, which is basically a

20   collection of goals.  I think we're all in agreement on what

21   the goals ought to be, the DOJ, the City, and the monitoring

22   team.  But until we can overlay those goals with objectives

23   and time lines, we really don't have a plan.

24             And I think, truth be known, to make a long story

25   short, the reason we're in the mess right now is we never

1    could get a real plan out of the old APD.  And I would much

2    rather have the new APD and Chief Geier and his people

3    working from a good solid plan as opposed to what we saw

4    last time, which was just a bunch of frenetic activity with

5    no concentrated focus, no goals, no objectives, no time

6    lines.

7            So I would support the parties' request for an

8    extension.

9            THE COURT:  Well, as we are going to discuss in

10   just a moment on the third item on the agenda, as I

11   indicated in our in-person session the other day, if the

12   parties want me to be in Albuquerque for the 15th, I've

13   changed the schedule around, so that I can be and I will be.

14   And it's -- I expect that we're going to have this way

15   forward plan in place with the details hammered out before

16   that time.  And I think, if we don't have it before that

17   time, it's going to be embarrassing, because we're all, in a

18   very public way, going to be addressing the community and

19   saying "gosh, we've been at this for, you know, nearly four

20   years and we're just now figuring out a way forward."  In

21   big-picture sort of analysis, that's going to be

22   embarrassing.  I don't want that for you-all.  I don't want

23   that for the process.  I want something in place.  So I

24   don't know what sort of open-ended extension you were

25   seeking, but I'm going to suggest it's in everyone's best

1    interest to have something done before we're in a very

2    public setting on March 15th.

3              Mr. Sanders, do you want to address the second

4    point?

5              MR. SANDERS:  Yes, Your Honor.

6              Your Honor, regarding the second point, we

7    brought this issue before the Court in September of 2017.

8    The second issue centers around supervisory investigations.

9    And we've been in discussions with the monitor as well as

10   with the City.  The current use-of-force platform involves

11   two levels.  And we've been speaking with all the parties to

12   think about transitioning to a three-level, which would

13   include low-level forces, intermediate forces and serious

14   uses of force, and how each of those types of forces would

15   be investigated by supervisors with the goal of trying to

16   identify efficiency, reducing burdens on first-line

17   supervisors and just overall compliance with the City's

18   provisions.

19             We met back in January, Your Honor, and we

20   discussed how the changes from the two-level platform to the

21   three-level platform won't impact various CASA-related

22   provisions.  The United States provided the City a copy of

23   some proposed changes to the CASA.  And that was received

24   very well during our discussion ons January 29th, Your

25   Honor.  To give the Court an idea, I believe over 50

1   provisions will be impacted if we transition from a

2   two-level to a three-level use-of-force platform.  We are

3   waiting for the City to give us versions of the CASA that

4   they've made changes to and we have a meeting scheduled for

5   tomorrow, Your Honor.  We're hoping that after the meeting

6   tomorrow, we will be able to reach an accord on all the

7   provisions that will be impacted by the changes.

8          Once we reach that accord, Your Honor, the

9   parties anticipate filing a joint motion letting the Court

10  know about all the modifications.  And we would seek

11  approval of the Court to accept the modifications through

12  the joint stipulation, Your Honor.

13         THE COURT:  And Mr. Sanders, do you have any time

14  line in mind for when that -- I can expect that motion?

15         MR. SANDERS:  Your Honor, ideally, we would like

16  to get that done before the meeting with the -- the

17  in-person status conference and we are working very hard to

18  reach that deadline, Your Honor.  And if the Court would

19  like us to give a status -- or if we could have a status

20  call before the in-person hearing, then we can certainly

21  provide the Court an update on where the parties are as far

22  as a viable joint stipulation, as well as the modification

23  provisions of the CASA.

24         THE COURT:  Well, what I'm hopeful is I have

25  updates and perhaps the joint motions on both of these

1   bullet points prior to that public hearing.  But if not, I'm

2   going to have you-all state in that very public forum where

3   we are and why we don't have that joint motion yet.

4           Mr. Mowrer, do you want to be heard on these

5   issues?

6           MR. MOWRER:  No, Your Honor.  Just the only thing

7   I would add in on Bullet Point 2 is that all the parties

8   spent about two and a half hours the other day working on

9   this.  I think everybody's pretty much in agreement to the

10  language changes.  And we're looking very forward to getting

11  this accomplished.  I think all the parties are working

12  toward the goal of accomplishing this because it will -- I

13  think it will go forward with the concepts that everybody's

14  been talking about today in simplifying this process and

15  making it easier for parties to comply.

16          THE COURT:  Well, great.  Great.  Thank you.

17          Mr. -- or Dr. Ginger, do you have anything else

18  on this point?

19          DR. GINGER:  Nothing else on this particular

20  topic, Your Honor.  I'll have some things to say on Item

21  Number 3, which should be informative, I guess, of what the

22  monitoring team is thinking about a way forward.

23          THE COURT:  Well, I think, unless something else

24  needs to be considered on point 2, let's move to point 3.

25  As I indicated a moment ago, I'm making plans to be there

1    for an in-court status conference on the 15th of March.

2    And I'm thinking we're going to start it in the afternoon so

3    I can go up in the morning.  I've got obligations here the

4    night before.  So 1:30 on Thursday, March 15th.  And we'll

5    just stay tuned for a location.  I'm not sure at this point

6    where we'll be.

7              But with that, Dr. Ginger?

8              DR. GINGER:  Thank you, Your Honor.  And I

9    will -- I will claim a good chunk of the blame for this

10   apparent loss of focus.  I mean, it's not really a loss of

11   focus, it's an inability for the parties and the monitoring

12   team to clearly articulate to the Court what it is we're

13   planning to try to work out in order to make up for all the

14   lost time over the last couple of years.

15             What I proposed to the parties was a two-part

16   process for a way forward, which, in effect, condenses and

17   compresses all of the -- all of the processes we engaged in

18   with the old APD command staff and sort of condenses that to

19   the most critical pieces that we plan on providing to the

20   new APD.  We've already provided a large chunk of it through

21   telephone calls and documents and that sort of thing, but

22   we'll actually be on site for the week of the 12th through

23   the 16th and then the following week as well.  So we'll be

24   on site for a two-week site visit to sort of rejuvenate the

25   compliance processes for APD, the amount of -- the amount of

1    focus and attention that's going to be required from the

2    monitoring team over the next few months to get APD to the

3    point that it's back on track.

4            At this -- at this stage of the game, I think

5    everybody understands they are seriously off track.  That

6    had nothing to do with this new command staff that is

7    present.  They've sort of inherited the mess.  And what I've

8    tried to do is design a way forward that will allow the new

9    APD to pick up the pieces and start making progress

10   relatively rapidly and, basically, to help the Court

11   understand what I'm recommending happen, is a highly

12   compressed and highly focused process that was provided

13   originally to the old APD when this project first started.

14           We had a fairly protracted period of technical

15   assistance where we worked with key command staff members on

16   a Use of Force Policy, on policy development, on training,

17   planning and development, on supervision, and on command

18   levels.  And what we plan on doing -- that period -- that

19   lasted for a period of about 18 months until we thought they

20   had had enough technical assistance and APD was ready to

21   start moving forward.  Unfortunately, that movement forward

22   never really happened with the old APD.  What we're planning

23   on doing, given the budgetary constrictions that we're

24   confronting as a monitoring team -- in other words, we've

25   spent most of our technical assistance monies already, and

1    yet we find a need to have to do that again.  And I've

2    designed a process that I think, based on my experience,

3    will allow the new APD to pick up the pieces -- I mean,

4    there's a lot of things that have been developed that we --

5    quite frankly, we just need to throw away and start over

6    again, but that's not everything.  We can -- we can salvage

7    some of the work that was done in the first couple of years.

8         But what we're planning on doing for the next

9    site visit is a highly compressed, a highly intense process

10   of strategic planning with APD command so that they can

11   clearly and effectively identify their strengths; that they

12   can acknowledge, embrace, and work with and through their

13   weaknesses, so they can identify spots where there are

14   opportunities, not to just throw out all the work that's

15   been done before, but to modify it somewhat and salvage

16   that; and probably most importantly, so that they have a

17   clear, concise, and actionable understanding of the threats

18   that exist within the organization related to this project.

19        So that's the purpose of the next two weeks of

20   site visit.  We've already begun that, Your Honor, from the

21   monitoring team's perspective, with Chief Geier's full

22   support, with Deputy Chief Garcia's direct involvement.

23   We've already started working through this, but you know, I

24   am of the opinion that, you know, based on what Chief Geier

25   was handed, I guess, back in December, he's -- any new chief

1   would need a great deal of direct involvement with the

2   monitor and the monitoring team in order to work out a way

3   forward, given the status of the agency as it was when he

4   walked into the job.  And what we're trying to do over the

5   next few weeks is to take what -- really take what we had

6   already done with APD in terms of finding a way forward and

7   establishing process to get them where they needed to be.

8   That was a -- that was an engagement and an effort that

9   was,in effect just not accepted by the old APD.  We'll try

10  to give it to APD, the new APD, again.

11         We've already started with that process.  As I've

12  mentioned, I've been in pretty extensive and intensive

13  contact with APD over the past few weeks.  Many members of

14  the monitoring team have been in contact with command staff

15  as well.  So we've already started the process.  We're

16  just -- in effect, we're trying to design a super-charged

17  initial process for the new APD so that they can get up on

18  their feet and moving as quickly as possible.

19         So we've already started that work.  We will

20  solidify that during the two weeks of the next upcoming site

21  visit.  We will provide as much technical assistance as is

22  humanly possible in that two-week period of time.  As I say,

23  we've already started on it.  Our goal is to build a

24  detailed understanding at the new APD of the compliance

25  process, of implementation modalities that stand a good

1    strong chance of success, and to get them to understand how

2    all that interrelates with the requirements of the CASA.

3              THE COURT:  Thank you, Dr. Ginger.

4              Does anyone else want to be heard on the proposal

5    about the site visits upcoming?

6              If not, Ms. Martinez, are you going to take up

7    this next bullet point?

8              MS. MARTINEZ:  Your Honor, one of the things that

9    we are contemplating during the second week of the site

10   visit is some kind of CPC summit or meeting.  And just last

11   night, Associate Monitor Steve Rickman sent us an e-mail

12   indicating that he was, indeed, planning to be here on

13   March 14th and 15th to meet with the members of the City

14   team who are handling the community engagement piece for the

15   City and for the Police Department.

16             Dr. Ginger and Mr. Schmehl have let the Court

17   know about the work that is going on at APD in terms of the

18   Department's reform efforts for the Police Department,

19   itself.  But I would like to just let the Court know that

20   the City is doing -- and the Police Department is doing a

21   tremendous amount of work also on the community front.  For

22   example, I know that the Court has heard repeatedly over the

23   last two years from the CPCs and the CPOA and POB about the

24   frustrations that they have experienced.  And just

25   yesterday, I learned about the fact that the City and the

1   Police Department already have responded to the requests

2   from POB and the CPCs for a restructuring of the citizens

3   police academy that would better meet the needs that they

4   have to get their members trained so that they can

5   participate in the functions that they have to fulfill under

6   the CASA.  And it's just terrific.  They have completely

7   revamped the training that the CPCs, the POB members have to

8   have to do their work.

9          And it's just heartening.  And I applaud the --

10   we all applaud APD and Chief Geier and the City for moving

11   so quickly on this, because the community engagement piece

12   is also a tremendously important part of this process.  And

13   we know that they are working so very hard on everything

14   else.  And I, quite frankly, was really surprised to see

15   that they managed to also take care of this piece.

16          THE COURT:  Well, thank you, Ms. Martinez.  And

17   you know, I love good news.  Thank you.

18          Mr. Schmehl, did you have something on this

19   point?

20          MR. SCHMEHL:  Yes, Your Honor, I would just add

21   the City is fully supportive of the summits.  It looks like

22   it's going to take place in the middle of March.  And I look

23   forward -- it looks forward to some good interaction with

24   the community CPCs.  And that's really all I would add, Your

25   Honor.

1            THE COURT:  Thank you.

2            And Mr. Mowrer?

3            MR. MOWRER:  No, sir, I have nothing to add on

4    this point.  Thank you.

5            THE COURT:  Well, that brings us to the end of

6    the agenda.  But before we conclude, Ms. Martinez just had

7    some really positive things to say about how quickly the new

8    command staff has covered a lot of bases, but particularly

9    the community-engagement aspect.  And Chief Geier and Deputy

10   Garcia, I'm sorry, I don't know everybody that's there from

11   APD, but thank you for your efforts.  They -- you know, they

12   don't go unrecognized.  A lot of what policemen do every day

13   does go unrecognized, I'm sure, you know, in a -- in what

14   could be a more positive sense, but I really do appreciate

15   all of your efforts because we understand this is -- it's --

16   before the community can really buy into this, they have

17   to -- they have to feel engaged and they have to feel

18   supported.  And it sounds like -- it sounds like that's what

19   you're doing, so I really do appreciate that.

20           Is there anything else that we can help with

21   today, folks?

22           MR. KILLEBREW:  Your Honor, this is Paul

23   Killebrew for the United States.

24           THE COURT:  Yes, sir.

25           MR. KILLEBREW:  I've been considering your

1   comments about having these stipulations regarding the way

2   forward and the use-of-force changes in before the hearing

3   that we are going to have on March 15th. And I want to

4   assure the Court that we are committed to making sure that

5   those filings are in, in advance of that hearing. It occurs

6   to me while we were speaking that we will have community

7   stakeholders and amici present at the public hearing, and we

8   owe to them to ensure that these filings are made well

9   enough in advance of that hearing so that they -- if they

10  have any thoughts or concerns about either of those filings,

11  they can be heard on March 15th.

12        So I will commit for the United States that we

13  will endeavor to get these filings in well enough in advance

14  and to ensure that community stakeholders and amici are

15  aware of them and so that any of their views can be heard at

16  that time.

17        THE COURT: Well, I certainly appreciate that

18  commitment and will look forward to those filings and seeing

19  you-all in the Big City on March 15th.

20        Unless there's anything else today? We'll

21  conclude then. Thanks very much. We're adjourned. You-all

22  have a great day.

23        (The proceedings concluded at 11:49 A.M.)

24

25

1                    UNITED STATES OF AMERICA

2                    DISTRICT OF NEW MEXICO

3

4             CERTIFICATE OF OFFICIAL REPORTER

5        I, Vanessa I. Alyce, RPR, NM CCR, and Federal Official

6    Court Reporter in and for the United States District Court

7    for the District of New Mexico, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code, that

9    I did report in stenographic shorthand to the best of my

10   skill and ability the foregoing pages 1-31 of the

11   proceedings set forth herein, that the foregoing is a true

12   and correct transcript of the stenographically recorded

13   proceedings held in the above-entitled matter and that the

14   transcript page format is in conformance with the

15   regulations of the Judicial Conference of the United States.

16

17   Dated this 15th day of February 2018.

18

19   S/Electronically Filed
     Vanessa I. Alyce, RPR, NM CCR #259
20   Federal Official Court Reporter
     100 N. Church Street
21   Las Cruces, NM 88001
     Phone: (575) 528-1430
22   Email:  Vanessa_Alyce@nmcourt.fed.us

23

24

25