IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

      Plaintiff,

v.          No. 1:14-cv-1025 RB-SMV

THE CITY OF ALBUQUERQUE,

      Defendant

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

      Intervenor.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the City of Albuquerque's Motion for Court Acceptance of the City's Proposed Promotional Policy, filed on May 29, 2018. The Court held a hearing on the motion on July 23, 2018. (*See* Docs. 390; 393.) Having considered the submissions and arguments of counsel and relevant law, the Court will **GRANT IN PART** the City's motion.

The parties have been working on an updated promotional policy for the Albuquerque Police Department (APD) since 2015.[1] (*See* Doc. 238 at 2.) "Pursuant to the Court-Approved Settlement Agreement (CASA) and a Collective Bargaining Agreement between the City and the" Albuquerque Police Officers' Association (APOA), "the APOA [has] provided feedback to the City about the new Policy throughout the lengthy review and revision process." (*See* Doc.

---

[1] The Court's November 30, 2016 Memorandum Opinion and Order contains a more thorough background. (*See* Doc. 238 at 1–4.)

268 at 1.) The parties have also sought Court guidance to clarify certain terms and mediate several disputes regarding the definitions and terms of the Policy. (*See* Docs. 238; 268.)

While the parties have made some headway toward a policy that is satisfactory to both sides, three disputes remain that require input from the Court: (1) how long the promotional eligibility lists should last before they expire; (2) how many hours of disciplinary action should be used in the definition of "just cause"; and (3) whether the Policy may incorporate the "rule of three" for promotional decisions, or whether the Chief must select the candidate based on seniority. (*See* Docs. 374; 378.)

## I. Expiration of the promotional eligibility list.

Part of the promotional process involves creating a list of candidates who are eligible for promotion. (*See* Doc. 374-1 at 8–9.) Section 13(D) of the current proposed promotional policy (the "2018 Policy") provides that any promotional eligibility list will expire two years after the list is created. (*Id.* at 9.) "Individuals on a promotional list who are not promoted by the expiration date of the list must retest in a future promotional process to be considered for promotion." (*Id.*) The City's 2016 version of the Policy (the "2016 Policy") had promotional eligibility lists expire after only one year. (*See* Doc. 198-1 at 8.) The 2014 Policy provided for a perpetual list which would operate "from the date of its publication unless the list has been depleted." (Doc. 206-5 at 10.)

The APOA would like to extend the expiration date of promotional eligibility lists in the 2018 Policy to 30 months, if not longer. (*See* Doc. 378 at 2–3.) After the City changed the Policy in 2016, officers have filed at least one "Prohibited Practice Complaint" with the Albuquerque Labor-Management Relations Board, one civil lawsuit in the Second Judicial District Court, and

two claims that are scheduled to be heard (though it is unclear who will hear the claims) in July 2018. (*See id.*)

The City does not want a perpetual list, because it "may unnecessarily delay the start of a new process if officers are under investigation or otherwise suspended from the list." (Doc. 374 at 2.) The City argues that "an expiration date ensures that all individuals on the list are currently competent and knowledgeable of Department procedures and policies." (*Id.*)

The Court finds that a two-year expiration date is reasonable. As the City mentioned at the hearing, it knows of no city in the country that has a perpetual list. (*See* Doc. 393 at 5:16–19.) Even two years seems to be an exceptionally long time where APD's policies shift and adapt as the Department continues to find more effective ways to comply with the CASA. It is critical to promote officers who have demonstrated a *current* understanding of and adherence to APD's policies and who will lead the APD into full compliance with the CASA. The Court will grant the City's motion on this issue.

## II. Definition of "just cause."

Section 8(Y) of the 2018 Policy defines "just cause" in part to "mean only those disciplinary issues that normally disqualify a candidate from promotion eligibility to a position sought, as defined in Section[s] 11 and 22 of the policy, including: 1) sustained discipline[2] for complaints of misconduct that have resulted in a penalty greater than a written reprimand . . . ." (Doc. 374-1 at 3.)

Section 11(A)(1) of the City's 2018 Policy describes when disciplinary action *will* render a candidate ineligible to participate in the promotional process. (Doc. 374-1 at 7.) The language in section 11(A) is mandatory. (*Id.*) Section 11(A)(1) provides that a candidate will be ineligible

---
[2] The City defines "sustained discipline" to be another term for "disciplinary action." (*See* Doc. 238 at 6–7.)

3

to participate where s/he has "sustained disciplinary action, equal to or greater than a [40] hour suspension, within the [12] month period immediately preceding the written examination . . . ."[3] (*Id.*)

"The APOA believes that sustained discipline for complaints of misconduct should only be considered when resulting in disciplinary hours of 160 hours received within one year preceding being considered eligible for promotion" for sections 8(Y) and 11(A)(1). (Doc. 378 at 4, 5.) The APOA believes this is important both because "[t]he former Chiefs administered discipline in amounts of 160 hours routinely[,]" and because the Chief's discretion is more limited when the policy allows for a greater number of hours. (*Id.*)

Sections 11(B)(1)–(3) describe when a person *may*, at the Chief's discretion, be rendered ineligible for promotion. (Doc. 374-1 at 7.) In this section, a candidate may be ineligible if s/he has sustained 16–39 hours of suspension in the 12 months preceding the promotional process, or 20 hours in a two-year period preceding the process, or 80 hours in a five-year period preceding the process. (*Id.*) The APOA would like to increase those hours: 160 hours for 12 months, 200 hours for two years, and "the same level of suspension . . . for a five year period . . . ." (Doc. 378 at 6.)

Section 22(C) describes when a candidate who is on a promotional list *may* be removed "for just cause, as defined [in this section in part as]: 1. Imposition of more than [80] hours of suspension, cumulative, within a 2 year time period of being considered eligible, including time held in abeyance . . . ." (Doc. 374-1 at 16.) The APOA has not proposed a different number of hours for Section 22(C), but seeks "additional clarification in the definition as to the number of hours of discipline which should be considered in the definition of Just cause." (Doc. 378 at 5.)

---

[3] A candidate will also be ineligible if s/he has a "pattern of complaints[,]" but the APOA does not have an issue with this definition. (*See* Doc. 374-1 at 7.)

4

In response to the APOA's recommendations for a higher number of hours to constitute "just cause" in sections 8(Y), 11(A)(1), 11(B)(1)–(3), and potentially 22(C), the City contends that despite the fact that previous administrations imposed discipline in higher numbers, at some point the City must set a standard. At the hearing on this motion, the City emphasized the Chief's discretion under the 2018 Policy to go back and look at certain instances of discipline to allow officers to explain. (*See* Doc. 393 at 7:1–12.) While this may be true for sections 11(B)(1)–(3) and 22(C), section 11(A) is mandatory and does not appear to allow the Chief to have discretion.

The Court finds that the parties may edit the 2018 Policy to accommodate the needs of both the City and the APOA. Rather than change the number of hours in the definition of just cause, the Court directs the City to make section 11(A) discretionary. This alteration may come with a sunset provision to provide an end date that will coincide with the impact of previous administrations' disciplinary measures.

### III.  The "rule of three."

Section 21 provides that candidates must achieve a minimum score of 70% to be eligible for the promotional process. (*See* Doc. 374-1 at 14–15.) Section 21(B)(3) allows the Chief "to apply the 'rule of three' to the promotional eligibility list." (*Id.* at 15.) In other words, the Chief may, in his/her discretion, choose to promote any one of the top three scoring candidates from the promotional eligibility list. (*Id.*) The APOA contends that "the current Contract contains a provision which says that such promotional selection shall be done on a seniority basis." (Doc. 378 at 7.) The APOA neither included the language from the contract, nor explained how the contract dictates selection.

The Court notes that both the 2016 and 2014 Policies contain language allowing the Chief to utilize the rule of three in circumstances identical to those in the 2018 Policy. (Compare

Docs. 374-1 at 15; 198-1 at 14; 206-5 at 10.) The APOA's argument is, therefore, unpersuasive, and the Court will grant the City's motion on this issue.

## IV. Conclusion

The Court finds that the 2018 policy should be amended to make section 11(A) discretionary, rather than mandatory, with a sunset provision that accounts for the impact of previous administrations' disciplinary measures.

The Court will grant the City's motion in all other respects.

**IT IS SO ORDERED.**

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE