# EXTERNAL FORCE INVESTIGATIVE TEAM'S (EFIT'S) First Quarterly Report

July 16, 2021 – October 16, 2021

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
November 12, 2021

TABLE OF CONTENTS

PAGE

INTRODUCTION ..................................................................................................4

EFIT's Executive Team – DLG, LLC ...............................................................6

Darryl S. Neier, EFIT Administrator ................................................................7

Mr. Neier's Select Government Experience ......................................................8

EFIT's Executive Team – William L. Hurlock, Esq. Deputy Administrator ...................11

EFIT's Executive Team – Darriell J. Bone, Lead Supervisor ...........................................12

The EFIT Investigative Teams...........................................................................14

Relevant Timeline..............................................................................................15

EFIT's Mandate .................................................................................................16

Relevant Issues and EFIT's Accomplishments To Date....................................20

Upcoming Dates.................................................................................................34

TABLE OF EXHIBITS & CHARTS

PAGE

Exhibit A-Stipulated order of establishing an external force investigative team....................................................................4

Exhibit B-  apd process Narrative  July 12·2021 ............................  4

Exhibit c- apd process Narrative- September 8, 2021  ....................15

Exhibit d- iafd/sod mutual aid deployment .......................................18

exhibit e- Employee representative admonition  ............................ 23

exhibit f- Slides For Amici meetings ..................................................... 32

Chart- use of force by level ...............................................................29

Chart- Call-Out Response Time.......................................................... 30

Chart- Calls per Team ....................................................................31

**Introduction**

1. Please accept this first quarterly report of the External Force Investigative Team ("EFIT").[1]

**Executive Summary**

2. In February 2021, the Albuquerque City Council ("City") and the United States Department of Justice ('DOJ') entered into a Stipulated Agreement. An Order is filed with the United States District Court for the District of New Mexico ("Court") on February 26, 2021, to stay a contempt of court proceeding ("Stipulated Order") (Doc. 720). The Stipulated Order established the External Force Investigation Team ("EFIT") and its mandate. On May 2, 2021, a preliminary contract was signed between DLG, Accounting and Advisory Services ("DLG, LLC") and Albuquerque Police Department ("ABQ PD"). On June 23, 2021, the full contract was signed by DLG, LLC and the City, enabling EFIT to commence full operations on July 16, 2021.

3. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond to all call outs within one hour of notification. All Use of Force ("UOF") investigations must be completed within 60 days with a 30-day supervisory review period for a total of 90 days from start to finish. Pursuant to the Order, EFIT is to conduct joint investigations with APD Internal Affairs Force Division ("IAFD") of all Level 2 and Level 3 UOF incidents – this includes all Tactical Deployments where UOF is utilized. EFIT is also to assist APD with training concerning the UOF. The EFIT Executive Team worked with APD IAFD to establish a

---

[1] At the outset, is important to note that while the Stipulated Order Establishing an EFIT, Doc. 720, and its attendant mandate does not require EFIT to file quarterly reports, in the interest of transparency, EFIT decided to prepare and file this report and subsequent quarterly reports. In addition, for the sake of the timing and completeness for this report, the data contained herein covers July 16, 2021, to October 16, 2021, inclusive. EFIT will file its next quarterly report on January 16, 2022.

detailed Process Narrative[2] that governs the response protocols to any Level 2 and 3 UOF cases.[3] These documents are the basis for EFIT to evaluate IAFD.

4. As of this report, 4 out of the 38 (10.52% ) of the closed cases were found to be not within the APD UOF polices. Approximately 14 out of the 38 (36.84%) closed cases were found to be out of  compliance when evaluated against the Process Narrative utilized to assess investigations. EFIT's next quarterly report, which is to be filed with the Court on January 16, 2022, will have a more complete analysis based on the findings of both APD UOF compliance and case investigative compliance.

5. While this quarterly report addresses our findings until October 16, 2021, it is important to note that as of this filing date, EFIT responded to approximately 160 level 2 level 3 UOF[4] incidents to include 4 Officer Involved Shootings ("OIS") opening joint investigations with IAFD. EFIT/IAFD completed approximately 38 investigations all within the 90-day time period outlined in the Stipulated Order. EFIT assumed 9 UOF supervisor and command reviews and 1 full investigation pursuant to Paragraph 23(b) of the Stipulated Order as these investigations became close to violating the stipulated timelines.

6. It is EFIT's intention that this report will provide a better understanding of the qualifications of the EFIT team assembled, the successes, recommendations, and at times the failures of APD and in particular IAFD. EFIT's goal is to teach, mentor and professionalize IAFD so that when the assignment is completed, we leave a sustainable division that investigates UOF incidents in a timely and professional manor.

---

[2] Filed with the Court on July 12, 2021 (Doc. 839).
[3] A revised Process Narrative was filed on September 27, 2021 (Doc. 862).
[4] 9 of the UOF cases have been classified as level 1 UOF and will be investigated by the Divisions.

**EFIT's Executive Team – DLG, LLC**

7. Debra Lynn Gallant, CPA, LLC D/B/A DLG, LLC ("DLG, LLC" or "Firm") www.dlgcpa.com was formed as a single member Limited Liability Company with the State of Florida effective January 25, 2019, and is located at 7073 Edison Place, Palm Beach Gardens, FL 33418. Prior to 2019, Debra Lynn Gallant, CPA, LLC was registered in the State of New Jersey.

8. DLG, LLC is an accounting and consulting Firm, in August 2019, DLG, LLC became certified as a Women Owned Business in the State of Florida. In April 2020, DLG, LLC was certified as a Women Owned Small Business by the United States Small Business Administration (CAGE Code 8KJ22) and in May 2020, DLG, LLC was certified by the Women's Business Enterprise National Council as a Women Business Enterprise (Certification Number WBE2001341) and recently completed its 2021 recertification process.

9. The Firm is licensed and authorized to practice public accounting and advisory services by the State of Florida and New Jersey Board of Accountancy and may practice in the State of New Mexico under the Mobility Practice Privilege. Although an accounting firm, DLG, LLC conducts Police Reform, Governmental Monitoring, Internal Investigations and Forensic Accounting through the Advisory Services Group.

10. As this is our first report issued and filed with the United States District Court for the District of New Mexico ("the Court") after DLG, LLC was awarded the contract, EFIT felt that an introduction to the EFIT Executive Team is warranted[5].

---

[5] The contract was awarded pursuant to *United States of America v. The City of Albuquerque and The Albuquerque Police Officers' Association*, No. 1:14-cv-01025-JB-SMV, and specifically the Stipulated Order.

11. It is important to note that the EFIT Executive Team spends a significant amount of time in Albuquerque. EFIT believes that spending time in the city enhances the role and function of the EFIT mandate. From our first in-person meeting with the Albuquerque Police Department ("APD") on June 16, 2021, the EFIT Executive Team has cumulatively spent in excess of 19[6] weeks in Albuquerque, attending meetings with APD, IAFD, the Department of Justice ("DOJ"), the Independent Monitor ("IMT"), conducting hands-on supervision of our EFIT response teams. A full explanation of our mandate and accomplishments are noted on the following pages.

**EFIT's Executive Team – Darryl S. Neier, EFIT Administrator**

12. Having a highly experienced administrator with law enforcement experience, and a proven track record in the private sector for administering large complex projects is extremely important. Mr. Neier has over 35 years of experience administering complex domestic and international engagements throughout the United States, Canada, the United Kingdom, Puerto Rico, the Dominican Republic and India, on time and on budget.

13. Mr. Neier graduated from Utica College of Syracuse University with a master's degree in Economic Crime Management and holds certifications as a Certified Fraud Examiner and Certified Economic Crime Forensic Examiner. He brings his unique experience from an extensive law enforcement background to each engagement, spending over 20 years with the Morris County New Jersey Prosecutor's Office, commanding complex white-collar crime, internal affairs, political corruption, insurance fraud and computer crime units. His reputation as an expert in this field is widely recognized.

---

[6] As of the filing of this report 25 cumulative weeks have been spent in ABQ by members of the Executive Team.

14. Currently, he serves as an adjunct professor at Seton Hall University, Stillman School of Business. Mr. Neier developed and is instructing a financial investigations and compliance course (Forensic Accounting BACC 7210) as a requirement of the Master of Science in Accounting degree.

15. Additionally, for over 25 years, Mr. Neier has been a certified instructor with the National White Collar Crime Center ("NW3C") assisting in developing a variety of classes, authoring a number of chapters in various training manuals, and teaching current courses on Financial Records Examination and Analysis along with Elder Fraud and Abuse to law enforcement and regulatory agencies throughout the United States. He instructed classes on various topics for the National District Attorney's Association, National Advocacy Center, and is a frequent speaker at national and international conferences.

16. Mr. Neier is a member of the U.S. Technical Advisory Group to ISO TC 309, Governance of Organizations, working on establishing international standards of corporate governance, anti-bribery and whistleblowing.  He co-authored a number of standards, policies and procedures.

Mr. Neier's Select Government Experience:

17. **From 2006 – 2008**, Mr. Neier was the lead partner retained by Judge Herbert J. Stern, the Federal Monitor appointed by the United States Attorney for the District of New Jersey under a Deferred Prosecution Agreement with the University of Medicine and Dentistry of New Jersey (the "University"). During the Monitor's two-year appointment to oversee and revamp operations at the University, under the leadership of Mr. Neier, Sobel & Co.'s professionals and *per diem* investigators identified corruption and misconduct issues along with making recommendations to mitigate corruption and misconduct, evaluate internal controls and

processes, and to ensure the proper reporting and auditing of government grants.

During this engagement, 78 cases were opened with regard to investigations into issues including, but not limited to, misusing University resources, financial statement fraud, grant irregularities, violations of state "Pay-to-Play" regulations, political corruption, no-show jobs, no-bid contracts, and irregularities in Medicare and Medicaid billing.

At the conclusion of the federally mandated two-year monitorship, the University Board of Directors retained Mr. Neier to continue with open investigations.

18. **From 2007-2014**, Mr. Neier was lead partner on the monitoring team related to the construction project of 1 WTC, reporting to the Port Authority of NY& NJ Office of Inspector General. His responsibilities included, but were not limited to, overseeing the construction manager and more than 40 prime contractors with contracts totaling in excessive of $3 billion. On a continuous basis, his team evaluated contractors and the internal controls in place to enhance loss prevention and made recommendations for improvements as appropriate.

19. Mr. Neier's team of professionals reviewed and assessed the change order process, audited bank accounts to identify irregularities, audited certified payrolls, and examined Minority and Woman Owned Business Enterprises ("MWBE") firms to verify their validity and compliance with all necessary requirements. The team also conducted field audits of the prime contractors and multiple tiers of subcontractors that were working on the 1 WTC project (a number of these contractors were headquartered in Canada).

20. **From August 2012 – January 2013**, Mr. Neier was the lead partner to the North Carolina Department of Transportation ("NCDOT"), Office of Inspector General ("OIG"), providing investigative and forensic accounting services. This work included examining numerous performance and policy violations across the NCDOT. These included, but were not limited to, discrimination, hostile work environment, violating contracting and procurement regulations, nonperformance of contracts, incorrectly identifying no-work employees, conflicts of interest, travel reimbursement abuse and other performance issues. This engagement led, in part, to the demotion and transfer of a Deputy Secretary, the resignation of a Director, and suspension of a manager.

21. **On July 20, 2016**, the Honorable G. Murray Snow, United States District Court Judge, for the District of Arizona ("The Court") appointed Daniel Giaquinto, Esq. ("Mr. Giaquinto" or "Independent Investigator") as an Independent Investigator along with a team of investigators in *Manuel de Jesus Ortega Melendres et al. and United States of America v. Joseph M. Arpaio in his official capacity as Sheriff of Maricopa County, Arizona et al.*, Case No. CV-07-2513-PHX-GMS. Pursuant to the Second Amended Second Supplemental Permanent Injunction Judgment Order (Doc. 1765), the Independent Investigator team was charged with investigating and assessing the adequacy of the investigations and the discipline imposed and/or the grievance decisions rendered by the Maricopa County Sheriff's Office ("MCSO") and the Court deemed inadequate. The Court also ordered: "To the extent that the Independent Investigator deems reinvestigation to be appropriate, he shall have the authority to reinvestigate such matters, to make preliminary findings, to prepare a report, and to recommend new discipline to the Independent Disciplinary Authority for final findings and, if appropriate, for the imposition of new or different discipline."

22. Mr. Giaquinto formed a team of five Associate Investigators and named Mr. Neier the Deputy Independent Investigator, whose duties included, but were not limited to, assisting force investigations and supervising matters deemed appropriate under the Second Amended Second Supplemental Permanent Injunction Order. This appointment required reviewing the prior findings of MCSO investigations, reinvestigating internal affairs cases, reviewing evidence, interviewing witnesses, conducting *Garrity* interviews of sworn law enforcement officers and related administrative functions. Additionally, Mr. Neier assisted the Independent Investigator by attending most disciplinary hearings and Court appearances before Judge Snow.

23. Throughout this appointment, the Independent Investigator and Mr. Neier developed a cooperative working relationship with all members of the MCSO Executive Leadership, Professional Standards Bureau (Internal Affairs), the Independent Disciplinary Authority, the Court-appointed Monitor team and all parties to the case.

**EFIT's Executive Team – William L. Hurlock, Esq., Deputy Administrator.**

24. Mr. Hurlock is the managing partner of Mueller Law, LLC, a national law firm.  Prior to working at Mueller, he served as a federal prosecutor in Washington, D.C., where he investigated allegations of corruption at the highest levels of the Federal Government.  Mr. Hurlock worked with the Office of Independent Counsel David M. Barrett, who investigated allegations concerning the Secretary of Housing and Urban Development; the Office of Independent Counsel Donald C. Smaltz, who investigated allegations concerning the Secretary of Agriculture; and the Office of Independent Counsel James C. McKay, who investigated allegations concerning the United States Attorney General.

25. As a federal prosecutor, Mr. Hurlock worked closely with agents from the Federal Bureau of Investigation, the Department of Housing and Urban Development, the Bureau of Alcohol, Tobacco, and Firearms, the Department of Agriculture and the United States Postal Inspector's Office. As a prosecutor it was important for Mr. Hurlock to ensure that these agents were properly trained to gather evidence and investigate allegations in a manner that were admissible in a court of law at time of trial.

26. Mr. Hurlock previously served on the staff of a United States Congressman on Capitol Hill and a Member of Parliament in the British House of Commons. In 2020, he was re-elected to serve the Township of Montclair, New Jersey in an unprecedented third consecutive, four-year term on the Town Council where he currently serves as Deputy Mayor and First Ward Councilor. He is also the chair of the Board of School Estimate and serves on the finance and public safety committees, which oversees the Montclair Police and Fire Departments.

27. In 2018, as a member of the Montclair Town Council, Mr. Hurlock was the senior elected official on the committee assisting the Montclair Police Department to attain the New Jersey Association of Chiefs of Police accreditation, which is an alliance partner with Commission on Accreditation for Law Enforcement Agencies, Inc. ("CALEA"). In this role, Mr. Hurlock was responsible for ensuring that the Department conformed to the protocols for accreditation, including those protocols related to use of force. He is also responsible for ensuring that the Department adheres to these protocols going forward.

28. Mr. Hurlock was an adjunct professor of law at Seton Hall Law School for eleven years. He is admitted to practice in courts throughout the country, including the United States District Court for the District of New Mexico.

**EFIT's Executive Team – Darriell J. Bone, Lead Supervisor,**

29. Mr. Bone was the Command Lieutenant, assigned to the Professional Standards Bureau ("PSB" commonly referred to as Internal Affairs) of the Maricopa County Sheriff's Office.[7] The Maricopa County Sheriff's Office was under a Federal Independent Monitorship since October 2013. Mr. Bone had more than 50 PSB staff (sworn, civilian and detention) within his purview.

30. After a distinguished eight-year career with the United States Army, Mr. Bone joined the Maricopa County Sheriff's Office ("MCSO") in August 2001. During his 20-year law enforcement career, Mr. Bone served in the capacity of Patrol Deputy, Central Investigations Detective (i.e., violent crimes, fraud, burglary) and SWAT Division/ Canine. He also held supervisory positions in patrol and the SWAT Division.

31. In October 2014, Mr. Bone was transferred into the PSB. Mr. Bone has approximately 7 years of progressive responsibility within PSB, specifically as an Administrative Investigator, Sworn Administrative Commander and Deputy Division Commander. He conducted and/or supervised over 3,000 internal affairs investigations, including approximately 29 officers involved shooting investigations. From 2014 - 2021, Mr. Bone was a member of the MCSO team (rotating basis) that responds to the scene of deputy-involved shootings.

---

[7] Maricopa County has an approximate total area of 9,224 square miles and is one of the largest counties in the nation; with approximately 3,500 employees. Maricopa County is the fourth largest sheriff's office in the United States.

32. Mr. Bone had the responsibility of frequently meeting with the Independent Monitoring Team ("IM Team"), thereby developing an outstanding professional working relationship with them. In part to Mr. Bone's ethics, leadership and critical thinking skills, MCSO PSB implemented many of the police reforms, training and investigative protocols currently utilized. MCSO received a 96% compliance rating by the IM Team during the last reporting cycle for investigative quality.

33. Additionally, Mr. Bone has been approved by the IM Team to instruct the 40-hour internal affairs course, which of all members of PSB (sworn and detention), MCSO Supervisors and Commanders must attend.

**The EFIT Investigative Teams**

34. The EFIT investigative units ("Units") are comprised of some of the most experienced law enforcement officials from across the country. The Units consist of three teams each with one supervisor, three full-time investigators and one part-time investigator.[8] All teams serve in Albuquerque, working on UOF investigations on location for three-week rotations. When not on their three-week tours of duty, the Supervisors and Investigators are working from their home offices to complete their joint IAFD investigations.

35. All team members are highly experienced in Internal Affairs UOF investigations and are instructors providing law enforcement education. Many were Commanders and/or Chiefs of Police with tactical, K9, mental health, homicide, detention, and legal experience. Some also served in their respective departments while under a Court Approved Settlement Agreement ("CASA" or court order(s)) and are familiar with the processes and procedures thereunder.

---

[8] The part-time investigator (who lives in the Albuquerque area) will be working weekends with each team. Due to a personal matter his full-time deployment is pending. We are hopeful he will resume his responsibilities by December 1, 2021.

Due to the requirements of the Stipulated Order, the EFIT Executive Team wanted to hire very experienced professionals from diverse backgrounds. Three of our team members reside in the State of New Mexico, three are from the State of New York, two are from the State of Arizona, two are from the State of Florida, two are from the State of New Jersey, and the remaining three are from the State of Indiana, the State of Michigan and the Commonwealth of Pennsylvania. Additionally, EFIT is supported by Administrative/logistical support, a part-time Paralegal and a part-time Research Analyst.

**Relevant Timeline**

36. In November 2012, DOJ commenced a pattern or practice investigation of APD. As a result of that investigation, in November 2014, the Albuquerque City Council unanimously voted to endorse the use of force settlement agreement. In January 2015, DOJ and the City recommended Dr. James R. Ginger ("Dr. Ginger") as the Independent Monitor and he was appointed by the Court. As of this report, Dr. Ginger filed 14 Independent Monitor Reports with the Court.

37. On February 5, 2021, DOJ and the City filed a joint motion seeking entry of a Stipulated Order establishing an External Force Investigation Team "to ensure high-quality, timely investigations of Level 2 and Level 3 uses of force and to address investigative deficiencies in APD's force investigations, as identified in the Independent Monitor's Twelfth Report (IMR-12), Doc. 652." Doc. 692. As mentioned previously, the Court entered the Stipulated Order on February 26, 2021. Doc. 720.[9]

---

[9] The Stipulated Order is a remedial measure proposed by DOJ as an alternative to pursuing other enforcement options, such as filing a motion for contempt for the City and APD's persistent failures to comply with the force provisions of the CASA. *See* Doc. 682 (transcript of Dec. 4, 2020, Public Hearing) at 25-38.  The Stipulated Order was entered with the consent of the City. Doc. 720.

**EFIT's Mandate**

38. The Stipulated Order established the EFIT and its mandate. Currently, EFIT's contract will expire on May 3, 2022. EFIT derives its authority and jurisdiction from the Stipulated Order (Doc. 720) (See Ex. A) and Process Narrative (July 12, 2021, revised September 8, 2021) filed with the Court on July 16, 2021 (Doc. 839) and September 27, 2021 (Doc. 862), respectively. (See Exs, B &C).

39. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond within one hour of notification. EFIT and IAFD conduct joint investigations. All UOF investigations must be completed within 60 days and a 30-day supervisory review period for a total of 90 days from start to finish. Provisions are in place if an extension of these timelines is needed for extenuating circumstances, such as an inability to interview an officer sustaining serious injuries due to an officer involved shooting ("OIS").[10]

40. The Stipulated Order also establishes the staffing levels for the APD IAFD. As of August 28, 2021, IAFD must engage 25 Detectives.[11] Currently five are civilian.[12] These staffing levels will continue to be augmented as needed.

---

[10] Since EFIT's inception, two investigations required an extension.  On October 20, 2021, a Notice was filed with the Court (Doc. 864) due to an OIS delaying the completion of two 60-day investigations.

[11] For the purpose of this report the term "Detective" equates to sworn APD personnel and "Investigator" is used for civilians conducting UOF investigations.

[12] Training of IAFD takes 3 to 4 weeks for sworn personnel to over 2 months for civilians resulting in operational effectiveness. On July 19, 2021, IAFD only had 11 personnel responding to UOF Investigations compared to October 11, 2021, at 21 fully operational. It should be noted that sustainability of staffing s one of the main concerns of EFIT and will be addressed in future reports to the Court.

41. APD must create a remedial action plan for IAFD that is approved by DOJ, the IM and EFIT, and filed with the Court by December 16, 2021. APD must provide quarterly updates thereafter.

42. By January 16, 2022, APD and DOJ will evaluate EFIT. The evaluation will be filed with the Court by February 16, 2022. Finally, EFIT is also to assist APD with training concerning the UOF. A decision must be made by March 2022, to end the EFIT program when the contract expires on May 3, 2022, or to extend EFIT with a new ending date. Ultimately, the goal is for EFIT to return responsibility back to APD for UOF investigations.

43. Once awarded the preliminary contract, the EFIT Executive Team started working with then-IAFD Commander Cori Lowe to establish a detailed process narrative that governs the response protocols to Level 2 and 3 UOF cases. This document was filed with the Court and serves as the working procedure that IAFD/EFIT follows and the basis for EFIT to evaluate IAFD.

44. Commander Lowe and Darryl Neier worked closely to ensure that they thoroughly covered the policies and procedures needed. Once in draft form, the Process Narrative was circulated to APD legal, DOJ and the IM. Comments were received and when appropriate incorporated and/or discussed with APD legal, DOJ and the IM. A final document was approved and filed with the Court on July 12, 2021 (Doc. 839).

45. Once filed, the Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators.  This document establishes specific timelines and procedures to be followed for every Level 2 and Level 3 UOF investigation.

46. Cases that are fully investigated by IAFD/EFIT are reviewed by the EFIT Team Supervisor, then forwarded to the IAFD Sergeant for their review.  The IAFD Sergeant determines if the force is within ADP policy, then forwards for an IAFD Command review. It is after the Command level that the EFIT Executive Team reviews the UOF determination and recommends closing a case.

47. Provisions have been written into the Stipulated Order should EFIT need to assume full responsibility of an investigation or disagree with investigative findings.   Between October 25, 2021, and October 31, 2021, EFIT assumed 9 UOF supervisor and command reviews and 1 full investigation pursuant to Paragraph 23(b) of the Stipulated Order as these investigations became close to violating the stipulated timelines.

48. When EFIT first began to fulfil its court-ordered mandate, the Executive Team reviewed three closed UOF investigations from early 2021, consisting of Level 2 UOF, Level 3 UOF, and a tactical activation. EFIT evaluated these cases not only to ensure the correct classification was used, but also to determine whether the investigations were thorough and objective. EFIT presented its completed reviews to APD, the IM, and DOJ on June 21, 2021, during the Independent Monitoring Team ("IMT") site visit.

49. In June 2021, Mr. Neier and Mr. Hurlock responded to a tactical activation that involved a UOF. We noticed that IAFD had a very disorganized approach once on scene, resulting in tactical officers and the subject Individual remaining on scene longer then needed. EFIT recommended to Commander Lowe and Commander Terysa Bowie ("SOD") that APD rectify and streamline the process.   APD has now implemented corrective changes. Additionally, as the Tactical Team will assist other New Mexico law enforcement agencies (out of area Mutual Aid), it still needs to report any UOF by an APD officer. We noted that

the response time could be hampered if an APD officer uses force in a jurisdiction far away from Albuquerque.

50. On September 7, 2021, at the request of EFIT, a Memorandum of Understanding (See Ex. D), was issued between IAFD and SOD regarding the procedure change for IAFD/EFIT to respond if UOF occurs. This will also streamline the process of returning SOD Officers into service.

51. The relevant documents governing EFIT establish a procedure for those instances, hopefully rare, where they are disagreements regarding classifying the UOF. When the IAFD detective/investigator and EFIT investigator cannot agree on the appropriate classification, the matter is to be referred to the EFIT Lead Supervisor and IAFD Deputy Commander. If there is still not a consensus, the matter is to be elevated to the EFIT Administrator and IAFD Commander. There have been certain occasions where the classifications have been modified by the relevant chain of command. These usually occur when there is a close call between a Level One or Level Two UOF.

52. Finally, the relevant documents governing EFIT also outline the process IAFD and EFIT need to take if a UOF might subject an APD officer to criminal liability. EFIT/IAFD have made two such referrals to the Multi-Agency Task Force. The protocols outlined in the Process Narrative worked well in such instances.

53. While closed UOF cases are presented to the FRB, it is important to note that EFIT has no role in the FRB process other than as an observer. However, at least one member of the EFIT Executive Team always attends these meetings.

54. Mr. Hurlock and Mr. Neier meet once a week with Associate Monitors Phil Coyne and William Toms, the IMT's subject matter experts on force. While supervision and technical assistance are required under the Stipulated Order, these meetings are extremely helpful for any contemplated process changes. This relationship between EFIT and the IMT is set forth more fully in Paragraph 24 of the Stipulated Order. Additionally, the IMT received EFIT's first three investigation reports to review and provide comment. EFIT looks forward to receiving same in the future.

**Relevant Issues and EFIT's Accomplishments To Date**

55. EFIT members were provided with background material on the monitorship, IAFD, APD policies, the CASA, and IMRs. Additionally, prior to onboarding, each EFIT team member was provided with the first three investigations that the EFIT Executive Team reviewed and were asked to review the cases and provide feedback to the EFIT Executive Team.

56. Prior to starting the first rotation period, a Zoom meeting was held individually with each EFIT team (APD and the IMT also participated). This meeting included introductions and a discussion of:

    a. EFIT SOPs;

    b. CASA, Stipulated Order, and related documents;

    c. Logistics; and

    d. APD onboarding.

57. With the assistance of APD and IAFD, EFIT began each new rotation with a two-day onboarding process conducted by APD, IAFD and the EFIT Executive Team members. Topics covered, included but were not limited to:

    a. Issuing APD identification cards;

    b. OBRD issuance and Evidence.com class;

  c. Issuing APD radios and a familiarization class;

  d. Instruction on IAPro, Blue Team, PowerDMS;

  e.  UOF trends, covering;

  f. Introducing IAFD & on-call procedures;

  g. SOP – Use of Force Policy Suite and Relevant SOPs related to force investigations and misconduct;

  h. On-Scene Response; and

  i.  IAFD Forms.

58. Upon beginning the EFIT process, Mr. Neier met with all Division Field Commanders and many of the specialized unit Commanders, to explain the EFIT process, its qualifications and what their officers could expect upon EFIT responding to incidents of UOF. Additionally, it was important for Commanders to freely provided concerns they are experiencing with the UOF investigative process. The EFIT Executive Team continues  field visits and various Division briefings concerning EFIT.

59. As of the writing of this report, EFIT is pleased to share that it accomplished several changes to the IAFD investigatory process and established a certain level of professionalism within the IAFD team. The EFIT Executive Team addressed a number of significant issues facing APD. Indeed, the Process Narrative has been revised as a result of issues and violations of the original version. The proposed changes were circulated to APD legal, DOJ and the IM. Comments were received and when appropriate incorporated and/or discussed with APD legal, DOJ and the IM. This revised Process Narrative was filed with the Court on September 27, 2021 (Doc. 862). Once filed, the revised Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators.

Paragraph 14 now reads:

> *"While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork. On a very limited bases, and with written authorization of an IAFD Lieutenant or higher, and the agreement by the EFIT Lead Supervisor or higher, a verbal statement can be recorded in lieu of the written use of force narrative. If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared."*

Paragraph 16 was added:

> *"If, at any point during the on-scene investigation, the level of force cannot be determined by an IAFD Detective and EFIT Investigator, the on-call IAFD Supervisor will respond to the scene to assist in the proper classification. Any level 2 or level 3 use of force that is determined to be a level 1 use of force will be reviewed within 24-hours by the EFIT Lead Supervisor for a determination as to the level of force."*

60. When EFIT began, IAFD was conducting interviews somewhat haphazardly in random locations. Detectives were asking leading questions and did not allow witnesses to state what happened by using open-ended questions. Essential critical listening skills were not present. There were interruptions of interviewees during their statements.

61. EFIT stressed to avoid leading questions. In one case, a detective told the interviewee, off the record and prior to the interview, that he did not see any issues with the incident. The EFIT investigator addressed this with the detective, explaining it is inappropriate to provide an opinion to an employee – especially prior to concluding an investigation.

62. Often IAFD detectives and the officers under UOF investigation were dressed inappropriately and unprofessionally. Moreover, EFIT noticed several investigative reports with numerous grammatical errors that needed to be corrected prior to supervisory review. EFIT believes that it is imperative that the tone and tenor – in accordance with the seriousness of these investigations – be established at the outset.

63. Union representatives often interrupted the interviews in clear contravention of the Albuquerque Police Officers' Association's ("APOA") Collective Bargaining Agreement ("CBA"). Forms were often incomplete or not filled out at all. In addition, the schedules for IAFD supervisors and the assigned detectives were not coordinated.

64. After the meeting that Mr. Neier and Mr. Hurlock had with certain union representatives, there have been no instances where union representatives have been interjecting questions in contravention of the CBA. To the extent that any statements are made, they are limited to proscribe periods of time at the beginning and/or end of the interview. In addition, EFIT created a standard employee observer form (See Ex. E) that IAFD must use when conducting interviews. This saves a tremendous amount of time, while affording union members the ability to be heard. As a result, interviews are conducted more efficiently.

65. Specifically, with regards to the forms, there remains a continuing concern that admonitions and witness statements are incomplete. Admonishments and witness statements are still taken that lack much of the important witness's biographical data and case information. When EFIT raised this with IAFD, EFIT discovered that there was no IAFD requirement to use standard witness forms. EFIT recommended that IAFD review accepted forms and encourage the standardization of use within the Division to capture all the pertinent information needed for a law enforcement investigation.

66. EFIT is pleased with the progress achieved to date. As of this writing, there are two interview rooms dedicated to UOF investigations. These rooms are fully equipped with audio and video capabilities. Thus, detectives now may utilize OBRD during the interviews.

67. There have been very promising observations regarding the improvement of the IAFD detectives' interview skills since EFIT started. All interviews are now briefed by EFIT with the assigned IAFD Detective/Investigator prior to the interview and debriefed at the conclusion of the interview. This serves as a mentoring tool and there is a noticeable improvement in the interview process. IAFD Detectives now have a mandatory dress code of dress shirt and ties.

68. One of the most important changes to the interview process of Officers that utilized/witnessed force was immediately addressed by EFIT. Prior to EFIT, IAFD would respond to the UOF scene, complete the on-scene process and immediately schedule interviews with all Officers.

69. EFIT suggested that the IAFD Detective/Investigator and the EFIT Investigator prepare a detailed investigative plan that would include the appropriate Officers/Witnesses to interview after reviewing preliminary OBRD and UOF reports. There now is a policy that within 72 hours only those individuals are interviewed that are essential in making a determination whether the UOF utilized is in or out of APD policy. This change quickened the investigative process, while not compromising the investigation.  Importantly, it also keeps APD Officers in the field.

70. When EFIT "went live" on July 16, 2021, we immediately noted that IAFD Detectives and their immediate Supervisors were not always working on the same schedule. We felt that this was a major impediment to the EFIT process and recommended that all Detectives and Supervisors work the same schedule. This recommendation was implemented.

71. EFIT is also constantly monitoring the UOF investigation case assignments to ensure that work is distributed evenly within IAFD. This issue is crucial to ensure that the applicable timelines are met. This issue becomes particularly acute as assignments are made between sworn officers and civilian investigators.

72. Indeed, EFIT also worked closely with APD on many issues including, but not limited to, call outs. At the outset it is important to note that EFIT is pleased with the collaborative approach that Commander (now Deputy Chief) Cori Lowe and Acting Commander Richard Evans took with the EFIT team. It is only though this collaborative approach that EFIT can fulfill its court-ordered mandate.

73. In addition, the EFIT Executive Team meets weekly with APD, DOJ, the IM and other City officials. These meetings enhance the level of communication between these parties. EFIT firmly believes that communication is essential to fulfilling its court-ordered mandate.

74. At the outset, EFIT was informed by the senior command structure – especially the Deputy Chiefs – that there was a lack of confidence in the quality and completeness of UOF investigations. The issue was so acute that at each level of review, the individual reviewing the case investigation felt it necessary to review *all* of the evidence as if it was an initial review. This was extremely inefficient. EFIT recommended policies and procedures that enhanced the confidence of all relevant personnel when conducting case reviews to reduce inefficiencies.

75. The EFIT Executive Team noticed that officers remained on scene for extended periods of time. While EFIT appreciates officer safety, once a scene is secured, EFIT recommended, and APD instituted, a new practice where nonessential officers – including those officers that did not use or witness the force event are now cleared and sent back on patrol.  This will

address staffing concerns regarding the need for patrols to combat the issues that the City is currently facing.

76. In addition, releasing nonessential officers from a UOF scene will reduce the amount of OBRD footage that must be reviewed for a UOF investigation. In addition, as stated previously, EFIT recommended and APD implemented a revised practice wherein not all personnel need to be interviewed during an investigation. EFIT believes that only those personnel directly involved in UOF incidents need to be interviewed and only their OBRD needs to be reviewed. This saves a tremendous amount of time when conducting UOF investigations.

77. EFIT remains committed to conducting thorough UOF investigations and will never sacrifice the quality or completeness of a UOF investigation for the sake of time. However, EFIT believes that making the process more efficient enhances the quality of investigations going forward. EFIT also recommended a policy wherein field officers are notified when investigations are completed. That had not previously occurred.

78. Several of the IAFD detectives are well prepared and thorough during interviews. The detectives consistently conduct pre-interview discussions with their EFIT counterparts and remain open to suggestions. There has been a significant increase in the EFIT investigators mentoring and training IAFD detectives and investigators.

79. EFIT identified an experience gap between newer and more experienced IAFD detectives. regarding UOF interviews. However, the new detectives are not negatively affecting the outcome of the interviews. They are attempting to establish themselves in their new position. It is expected that as the IAFD detectives with seniority began to demonstrate growth and confidence, the newer detectives will also over time.

80. EFIT investigators worked closely with IAFD detectives to ensure that they spent the requisite amount of time to work with the newly hired investigators that are not sworn officers. These civilian investigators do not have law enforcement experience but, have a variety of investigative backgrounds, *e.g.*, child protective services, family services and other departments. Where identified, EFIT investigators pay close attention to ensure that these civilian investigators are equipped with the tools and skills to conduct investigations at the same level and quality of their sworn officer counterparts.

81. Unfortunately, EFIT still encounters instances where IAFD personnel are not cooperating with the process. Issues range from routine forms remaining incomplete, civilian investigators not receiving mentorship from IAFD detectives, violations of the Process Narrative, on-scene level of force categorization and not following EFIT recommendations. These exceptions occurred often and been immediately addressed by the EFIT Executive Team, which raised the issues to Deputy Commanders and/or Commander Evans, who address the situations. The EFIT Executive Team members will continue to work closely with IAFD to offer additional training going forward.

82. Regrettably, there have been four OISs since EFIT began responding to force incidents in mid-July 2021, and EFIT assisted APD with these matters. Specifically, the OIS on August 19, 2021, that left four APD Offices seriously injured involved a multi-agency (federal, state and local) activation response with a very large crime scene. Approximately sixteen percent of APD responded to this scene. This resulted in the uploading of 556 OBRD recordings of various duration. Mr. Neier and Mr. Hurlock discussed a plan to place the OBRDs into various categories with EFIT investigators taking a first review. If UOF or misconduct was identified, the Deputy Commander was to be notified and the case assigned to an IAFD

Detective and EFIT Investigator for further investigation.

83. After speaking with the IMT, EFIT developed the following review plan wherein the EFIT Team 1 and Team 2 supervisors reviewed all OBRDs to determine the appropriate category. This process was completed within five days. The potential instances of UOF were placed in the highest-level category from the following:

    1.  Actual UOF;

    2.  Witness UOF;

    3.  Show of Force;

    4.  Officer(s) with Prisoner(s);

    5.  Canvas Team(s);

    6.  Officer(s) on Perimeter; and

    7.  Other (for further determination by the EFIT Executive Team).

84. Once the categories were established, assignments for a full OBRD review, with the exception of categories 6 & 7 above, were assigned to EFIT investigators. This was completed within two weeks. If misconduct was noted during the review, EFIT Lead Supervisor Mr. Bone would review.

85. Allegations of misconduct were to be sent by Mr. Bone to the IAFD Deputy Commander for assignment to an IAFD Detective and/or IAPS. After all the ORBD's were fully reviewed, Mr. Neier, Mr. Hurlock, Mr. Bone, IAFD Acting Commander and the Deputy Commander were to meet to discuss an investigative plan and then implement the plan with an IAFD Detective(s) and EFIT Investigator(s) for follow-up and interviews.

86. Since activating on July 16, 2021, and as of October 11, 2021,[13] EFIT responded to 124 UOF incidents, including four Officer Involved Shootings ("OISs"). Of those, 9 were classified as Level 1; 93 were classified as Level 2; and 22 were classified as Level 3 UOF with 2 referrals made to the MATF.

87. The following chart captures the UOF by level:



---

[13] EFIT provided updated information in the executive summary, however for statistical purposes the actual cut-off date is October 11, 2021.

88. The following chart captures call outs by response time:



89. As of October 11, 2021, IAFD/EFIT are averaging 50.7 days of investigative time per case. While this is slightly higher than previously reported, it is still well under the 60-day approved time frame under the Stipulated Order. EFIT is reviewing the reasons for the added investigative time. Particularly, since the addition of several Detectives and Civilian Investigators to IAFD reduced the case load per Detective/Investigator. There were 95 Internal Affairs Referrals ("IARs") issued by IAFD from July 16, 2021, through October 16, 2021,[14] for a variety of misconduct stemming from UOF investigations.

90. Each of EFIT's three teams is averaging 33.3 cases, which equates to approximately 11.1 per week. The IAFD/EFIT response time to the scene averaged 28.67 minutes over the last month.

---

[14] As stated at the outset, for the sake of timing and completeness, this report captures data from July 16, 2021, to October 16, 2021, inclusive.

91. The following chart captures call outs per each EFIT team:



92. EFIT and IAFD conduct a weekly case status meeting and track cases at the 40, 60, 75, 85 and 90-day intervals. These meetings identify concerns regarding case prioritization and allocation of investigators. The concerns are addressed with supervisors immediately and if necessary, with IAFD command at the conclusion of the meeting.

93. Approximately 28% of the cases are completed and are in supervisory review. The time to submit cases to supervisors continues to drift upward and presently is at an average of 50.7 days. At this point, 32 cases are in supervisory review, seven are in Deputy Commander review and two cases are through the review process and now closed.[15]  IAFD and EFIT are jointly working on 21 active UOF cases.

---

[15] By EFIT's next Quarterly Report (January 16, 2022), approximately 120 cases will be completed, reviewed and closed. This will allow EFIT to provide a more detailed report concerning UOF policy review and investigative compliance.

94. Internally, EFIT conducts Executive Team meetings every Monday to discuss the upcoming week and decide how to best address matters of concern. In turn, Lead Supervisor Mr. Bone conducts a follow-up meeting with the EFIT supervisors to discuss concerns and relay information from the Executive Team meeting. The EFIT supervisors hold weekly meetings with their teams to convey direction from the Executive staff. The meetings also serve as a mechanism for information to flow up and down the EFIT chain. In addition to these weekly staff meetings, the outgoing and incoming teams meet the Thursday night prior to rotation change. This meeting allows the teams to discuss identified trends and aids in a smooth transition between teams. Occasionally, an all-hands meeting is held to discuss critical events or significant changes in procedure.

95. EFIT investigators and supervisors oversee all cases to include review of onsite work, interviews and reporting. EFIT is conducting constant evaluation of IAFD detectives, investigators, supervisors and the IAFD Division. To that end, EFIT is conducting weekly meetings with APD Command Staff, Field Commands and many of the Specialized Units.

96. Mr. Neier and Mr. Hurlock met with the six court-approved *amici* and CASA stakeholders (*i.e.,* APD Forward Coalition, Community Coalition, McClendon Subclass Counsel, Community Policing Councils, Civilian Police Oversight Agency, and Mental Health Response Advisory Committee) in an effort to provide transparency and openness to EFIT's work and processes. (See Ex. F). The meetings led to a good discussion between the participants.

97. On September 2, 2021, the EFIT Executive Team conducted a mandatory IAFD Division-wide briefing (attended by Superintendent Sylvester Stanley and Deputy Chief Eric Garcia) to discuss the EFIT evaluation rubric (previously approved by the IM and DOJ). The EFIT

Executive Team will utilize this evaluation tool to assist in the evaluation of IAFD and relevant personnel assigned, pursuant to the Stipulated Order Para. 34. EFIT implemented this process for each investigation conducted by IAFD and EFIT commencing September 7, 2021.

98. The rubric contains approximately forty-five areas where individuals will be evaluated. The rubric closely tracks the Process Narrative. There are six enumerated categories where an individual must pass or be considered a failing. An individual must attain a 95% proficiency rating for two consecutive terms before they are deemed proficient to conduct interviews outside of the presence of an EFIT investigator.

99. EFIT members observed and participated in a number of IAFD training sessions. Classes have been held on a number of areas including, but not limited to, conducting interviews. For instance, a day-long class on interview techniques was recently held and consisted of approximately twenty participants from IAFD's sworn and civilian ranks conducted at the APD Training Academy.

100.  The class was presented with an emphasis on a review of the CASA, IAFD Force Trends, and how IAFD is attempting to improve and move beyond the CASA. This portion of the training incorporated group activities and encouraged meaningful participation for all attendees. Specifically, the training focused on interview techniques, administrative interviews, cognitive interviews, misconduct interviews, *Garrity* and *Miranda* Warnings[16] when interviewing officers, civilians, individuals involved in the UOF and the union.  Both presenters strongly encouraged group and individual participation.

---

[16] EFIT will continue to address issues relating to *Miranda* and its progeny as it continues its work under the contract.

**Upcoming Dates**

101.  On or before December 16, 2021, APD will file with the Court its Remedial Action Plan, after approval from DOJ, the IM and EFIT. Going forward this plan will be updated quarterly.

102.  On January 16, 2022, EFIT will file with the Court its second Quarterly Report.

103.  Commencing January 2022, DOJ and APD will evaluate EFIT. This evaluation with be filed with the Court on or before February 16, 2022. The EFIT contract requires that a decision be made by March 2022 to end the EFIT program contract by May 3, 2022.  If the EFIT contract is extended, a new ending date will be set.

104.  We thank the Court for the opportunity to submit this report. I, and my team, are available should the Court have any questions or need any additional information concerning EFIT or its attendant mandate.


Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

Encls.

# EXHIBIT

# A

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 2 6 2021

**MITCHELL R. ELFERS**
**CLERK**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

THE CITY OF ALBUQUERQUE,        No. CIV. 14-1025 JB\SMV

        Defendant,

vs.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## STIPULATED ORDER ESTABLISHING AN EXTERNAL FORCE INVESTIGATION TEAM

This matter comes before the Court on the Joint Motion of Plaintiff United States of America and Defendant City of Albuquerque (collectively, the Parties), with the concurrence of the Independent Monitor, for entry of this Stipulated Order, which requires the City to establish, on a temporary basis, an External Force Investigation Team (EFIT) to assist the Albuquerque Police Department (APD) in conducting investigations of Level 2 and Level 3 uses of force by APD officers, while also assisting APD with improving the quality of its own Internal Affairs (IA) force investigations. This Stipulated Order also requires the City to improve APD's IA processes, increase the number APD IA force investigators, and provide additional training to APD's IA force investigators. The Parties intend the measures in this Stipulated Order to ensure high-quality, timely investigations of Level 2 and Level 3 force incidents, and to address the investigative deficiencies in APD's IA force investigations identified in the Independent



Monitor's Twelfth Report, Doc. 652.  The Court approves this Stipulated Order and enters it as

an Order of the Court.

## A. Establishment of the External Force Investigation Team

1. The City shall establish an EFIT to guide and direct IA force personnel, and when
   necessary, conduct investigations of Level 2 and Level 3 uses of force; provide written
   assessments of IA investigations carried out by IA force personnel; and provide written
   feedback on IA force personnel's work product.  *See* Doc. 465-1 ¶ 48 (defining Level 2
   and Level 3 uses of force).

2. For the purposes of this Order, "IA force personnel" includes IA force investigators and
   supervisors, other than IA Commanding Officers; "investigations of Level 2 and Level 3
   uses of force" include both investigations and the review of investigations by supervisors;
   and "Independent Monitor" may include members of the Independent Monitoring Team.

3. EFIT shall be overseen by an Administrator.  The City shall empower the EFIT
   Administrator to hire and retain the staff necessary to fulfill the requirements of this
   Order.  It is anticipated that the EFIT Administrator will hire and retain a number of
   Investigators, as well as administrative support staff and Supervisors, as necessary to
   fulfill the duties under the EFIT Administrator's contract with the City.  The EFIT
   Administrator shall ensure that a sufficient number of EFIT Investigators to meet the
   requirements of Paragraph 17 of this Order are physically present in Albuquerque and
   able to respond to the scene of Level 2 and Level 3 uses of force.

4. The EFIT Administrator shall have experience and expertise in investigating law
   enforcement misconduct, the constitutional standards for police officers' use of force, and
   systems reform litigation.  The EFIT Supervisors and Investigators shall have experience

and expertise in investigating law enforcement misconduct and the constitutional standards for police officers' use of force.  Neither the EFIT Administrator, Supervisors, nor Investigators shall have any current or previous employment relationship or contract for services with APD or the City.

5. The City shall contract with the EFIT Administrator and fund the operations of EFIT in accordance with its Public Purchases Ordinance, specifically, ROA 1994, § 5-5-20(U) (exempting "[c]ontracts and expenditures in connection with court or administrative proceedings, including, but not limited to, experts, mediators, interpreters, translators, court reporters, process servers, witness fees, and printing and duplicating of materials for filing" from competitive requirements of the article), or any other appropriate provision of the Public Purchases Ordinance.

6. The City shall widely publish a request for letters of interest for the EFIT Administrator no later than March 1, 2021.

7. The City shall accept input from the United States Department of Justice (DOJ) as the City solicits EFIT Administrator candidates and on the candidate that the City ultimately selects.  DOJ shall provide input within two (2) weeks of receiving information about the candidates, unless otherwise agreed by the City and DOJ.

8. The contract between the EFIT Administrator and the City shall include all standard terms for City contracts.

9. Within two weeks of the EFIT Administrator's selection, the City and DOJ shall file a notice with the Court to inform the Court of the Administrator's identity and professional background.

10. The City shall enter into a contract with an EFIT Administrator no later than May 3, 2021.

11. Within one month of the EFIT Administrator's selection, the City and the EFIT Administrator shall establish protocols for how APD IA and EFIT will coordinate on investigations of Level 2 and Level 3 uses of force. At a minimum, the protocols will specify procedures for coordinating the work of IA force personnel and EFIT personnel; and how APD IA will transmit investigative files to EFIT. The protocols will specify that EFIT shall not assist APD IA with investigations of Level 2 and Level 3 uses of force for which the investigatory deadlines established by the Court-Approved Settlement Agreement (CASA), APD policy, and the Collective Bargaining Agreement between the City and the Albuquerque Police Officers' Association (CBA) have expired at the time that EFIT begins providing services. The protocols shall be submitted to DOJ and the Independent Monitor for review and comment pursuant to the procedures of Paragraphs 147 and 148 of the CASA. Doc. 465-1 at 49-50.

**B. Staffing of IA Force Investigators; Technical Assistance**

12. The City shall ensure that APD maintains at least twenty-five (25) force investigators assigned to IA, unless and until APD can demonstrate by an internal staffing analysis that fewer investigators are necessary to timely investigate all Level 2 and Level 3 uses of force.

13. The Independent Monitor has provided and will continue to provide extensive technical to the City regarding IA processes, including the period before an EFIT administrator is selected.

14. Based on the technical assistance set forth in Paragraph 13, within two months of the entry of this Order, the City will submit a proposed written IA investigative process to DOJ and the Independent Monitor.  DOJ and the Independent Monitor will have 14 days to submit proposed revisions to the written IA investigative process.  The City will have seven days to agree to or reject any proposed revisions.  After the City, DOJ, and the Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court.  If the City, DOJ, and the Independent Monitor cannot reach an agreement on the proposed written IA investigative process, the City or DOJ may submit the matter to the Court for resolution.

15. After APD implements the written IA investigative process, the Independent Monitor will spend an additional week providing intensive technical assistance, in addition to the extensive technical assistance provided to date.

16. The City shall endeavor to negotiate longer investigative deadlines with the recognized exclusive representatives of relevant bargaining agreements.  Nothing in this order requires the City to violate the Labor Management Relations Ordinance or any collective bargaining agreement.

## C.  Investigations of Level 2 and Level 3 Uses of Force

17. From the date the EFIT contractor begins services and subject to EFIT staffing levels, APD and EFIT will both deploy investigators to the scene for every Level 2 and Level 3 use of force, unless APD deploys an APD IA investigator who has satisfied the requirements of Paragraph 35.

18. APD IA investigators shall act as the lead on-scene investigators for all Level 2 and Level 3 uses of force and shall be primarily responsible for conducting the on-scene

5

requirements of CASA Paragraphs 69(a), (b), (c), (d), and (e) (Doc. 465-1 at 27),

including but not limited to:

  a.  respond to the scene and consult with the on-scene supervisor to ensure that all
      personnel and subject(s) of use of force have been examined for injuries, that the
      use of force has been classified according to APD's classification procedures, that
      subject(s) have been interviewed for complaints of pain after advising the
      subject(s) of his or her rights, and that all officers and/or subject(s) have received
      medical attention, if applicable;

  b.  ensure that all evidence to establish material facts related to the use of force,
      including but not limited to audio and video recordings, photographs, and other
      documentation of injuries or the absence of injuries is collected;

  c.  ensure that a canvass for, and interview of, witnesses is conducted. In addition,
      witnesses should be encouraged to provide and sign a written statement in their
      own words;

  d.  ensure, consistent with applicable law, that all officers witnessing a Level 2 or
      Level 3 use of force by another officer provide a use of force narrative of the facts
      leading to the use of force;

  e.  provide a written admonishment to involved and witness officer(s) to the use of
      force that they are not to speak about the force incident with anyone until they are
      interviewed by [an] . . . investigator . . ..

19. The City shall transmit all documents, evidence, and investigative notes created or
    obtained by the on-scene investigator(s) to EFIT within 72 hours of the use of force, and

on an ongoing basis as additional evidence is provided.  EFIT will acknowledge receiving

all forwarded investigative documents, evidence, and notes.

20. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2

and Level 3 uses of force, subject to the exception in Paragraph 23.  IA force personnel

and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of

force in a manner that is consistent with the requirements of the CASA, APD policy, and

the CBA.

21. EFIT shall have full, direct, and timely access to APD staff, employees, facilities,

documents, data, and evidence to the extent necessary to fulfill the requirements of this

Order.  EFIT shall coordinate with APD and its legal counsel to access personnel,

facilities, and documents in a reasonable manner.  Should APD or its legal counsel

decline to provide EFIT with access to documents or data based on privilege, APD shall

inform EFIT, DOJ, and the Independent Monitor that it is withholding documents or data

on this basis, and shall provide EFIT, DOJ, and the Independent Monitor with a log

describing the documents or data and the basis of the privilege.

22. For each use of force investigation, EFIT shall evaluate the quality of IA force

personnel's investigations and immediately notify APD and APD's legal counsel of any

deficiencies or misconduct by IA force personnel related to their investigations.  APD

shall promptly address these deficiencies or misconduct through corrective action or

discipline, consistent with the CASA, APD policy, and the CBA.

23. EFIT shall be authorized to complete investigations and supervisory reviews of

investigations of Level 2 and Level 3 uses of force without the involvement of IA force

personnel if either of the following conditions are met:

    a.  EFIT or APD has alleged that the IA force personnel assigned to the investigation has committed misconduct in the course of the investigation, and EFIT believes that the IA force personnel's continued participation in the investigation is likely to undermine the integrity of the investigation; or

    b.  EFIT or APD believes that deficiencies in the tactics or work product of the IA force personnel assigned to the investigation is likely to prevent the investigation from being completed within the deadlines provided for in the CASA, APD policy, and the CBA.

24. EFIT shall provide written notice to DOJ, APD, and the Independent Monitor when EFIT exercises its authority under Paragraph 23 to complete investigations of Level 2 and Level 3 uses of force without the involvement of IA force personnel. EFIT's notice shall explain in writing the grounds for its actions. If DOJ or the City believes that EFIT's actions were improper, they will seek to resolve the matter with EFIT and the other party. If DOJ, APD, and EFIT cannot reach a resolution, DOJ or the City may bring the matter before the Court for resolution.

25. APD and EFIT shall identify all misconduct that occurred during the course of each use of force incident and provide information about all misconduct that it identifies to APD, for the purposes of screening, assigning an internal affairs number, and tracking by APD IA. IA force personnel and EFIT personnel shall complete the investigation of all misconduct related to the use of force, and APD IA shall complete the investigation of all misconduct not related to the use of force.

26. EFIT shall complete its investigations within 60 days of receiving on-scene investigation materials from APD. At the conclusion of each investigation, IA force personnel and

EFIT personnel shall prepare a joint investigative report, consistent with the requirements of the CASA and APD policy. In the report, IA force personnel and EFIT personnel shall recommend a determination of whether each use of force complied with APD policy and state and federal law. For any use of force for which the investigation determines that an officer violated APD policy or state or federal law, IA force personnel and EFIT shall recommend appropriate corrective and/or disciplinary action, consistent with the CASA and APD policy.

27. An IA Commanding Officer shall review each investigative report and recommendation, and state in writing whether he or she concurs with the report and recommendation's findings of whether the use of force complied with policy; the recommended disposition of any misconduct allegations; and any recommended corrective and/or disciplinary action. The IA Commanding Officer shall explain any concurrence or non-concurrence in writing. Any recommended discipline resulting from an investigation will be reviewed by APD's executive staff consistent with APD policy.

**D. Role of the Independent Monitor with Regard to EFIT**

28. The Independent Monitor shall assist APD, DOJ, and the EFIT Administrator as the EFIT is established by, at a minimum:

    a. orienting EFIT regarding CASA requirements and relevant CASA compliance deficiencies by APD;

    b. providing technical assistance to EFIT regarding the Independent Monitor's compliance assessment methodology; expectations regarding EFIT's processes, work product, and records production; and other relevant matters, as the EFIT Administrator and the Independent Monitor deem appropriate; and

c.   conducting informal assessments of force investigations completed with EFIT's involvement, particularly in the early stages of EFIT's implementation, to ensure that investigations completed with EFIT's involvement comply with CASA requirements regarding the quality of force investigations.  The Independent Monitor shall convey the outcome of these informal assessments to the EFIT Administrator, APD, and DOJ.

29. The City recognizes that the requirements of Paragraph 28 of this Order are beyond the scope of the Independent Monitor's duties under the CASA and the City's annual budgets for the Independent Monitor's services under the CASA.  The City shall therefore enter into separate compensation agreements with the Independent Monitor for the provision of the services required by Paragraph 28 of this Order, as described in Paragraph 334 of the CASA.

30. The Independent Monitor shall conduct formal compliance assessments of force investigations completed with EFIT's involvement as it would investigations completed by APD.  Except for the requirements of Paragraph 28 of this Order, this Order is not intended to, and does not, alter the responsibilities or authority of the Independent Monitor under the CASA.

E.  Remedial Action Plan

31. Within five months of the start date of the contract with EFIT, the City shall draft a remedial action plan for IA force investigations and submit it to DOJ, the Independent Monitor, and the EFIT Administrator.  The plan will identify concrete actions that the City and EFIT will take to improve the quality and timeliness of investigations of Level 2 and Level 3 uses of force by IA.  The Independent Monitor may recommend changes or

approve the plan consistent with the requirements of Paragraph 147 of the CASA. After

the Independent Monitor approves of the plan, the City shall file it with the Court. If

either the City, DOJ, or both disagree with the Monitor's recommendations, such party or

parties may file the plan with the Court and move for its approval.

32. After filing a joint remedial action plan or after the Court approves the plan, and until the

plan has been fully implemented, the City shall file brief reports to the Court, due every

three months from the date the remedial action plan was filed, to inform the Court of

progress in implementing the plan, any barriers to implementation that it has faced, and

any modifications to the plan that may be necessary. The City's quarterly reports will

include, at a minimum:

    a.  a summary of the City's progress regarding the implementation of the written IA

        investigative process required by Paragraph 14, including a summary of the

        intensive technical assistance provided by the Independent Monitor;

    b.  a summary of written evaluations by EFIT of the quality of IA force investigators'

        investigations during the previous quarter;

    c.  a summary of written feedback by EFIT of IA force investigators' work product

        during the previous quarter;

    d.  any formal training that IA force investigators received during the previous

        quarter;

    e.  the number of force investigators assigned to IA and, if APD has not yet retained

        25 force investigators, the steps that APD will take in the next quarter to achieve

        full staffing;

f.  the number of investigations or reviews of investigations that EFIT completed without the involvement of IA force personnel, pursuant to Paragraph 23;

g.  the number of IA force investigators conducting investigations independent of the EFIT, pursuant to Paragraph 35; and

h.  for Level 2 and Level 3 force investigations:

    i.  the number of investigations initiated during the previous quarter;

    ii.  the number of investigations completed during the previous quarter;

    iii.  the average and mean number of days from initiation to completion for the investigations completed during the previous quarter;

    iv.  the number of investigations during the previous quarter that were completed within the deadlines required by the CASA, APD policy, and the CBA; and

    v.  the number of investigations during the previous quarter that were not completed within the deadlines required by the CASA, APD policy, and the CBA.

## F.  Training of IA Force Personnel

33.  Subject to extensions necessary due to COVID-19-related restrictions and availability, and subject to the approval of the proposed contractor by the by the Monitoring Team and DOJ, within three months of the entry of this Order, APD shall identify and hire a contractor to who shall, in concert with APD's Academy, develop and provide training to IA force personnel on conducting high-quality and timely force investigations.  This training shall be developed, approved, and provided consistent with APD policy and the CASA, and shall incorporate problem-solving, experiential adult-learning principles.

12

This training shall be subject to review and approval by the Independent Monitor and DOJ.

## G. Returning Responsibility for Full Investigations of Level 2 and Level 3 Uses of Force to APD

34. An IA Commanding Officer and EFIT shall prepare written evaluations of each investigator and supervisor who are assigned as IA force personnel on a quarterly basis. These evaluations shall be considered confidential consistent with City Personnel Rules and Regulations and state law, but shall be provided to the Monitor and DOJ upon request and shall be kept confidential pursuant to the requirements of Paragraph 326 of the CASA. These evaluations shall include, at a minimum:

    a. a description of the nature and extent of all training provided to the IA force investigator or supervisor during the previous quarter;

    b. a summary of written assessments by EFIT of the quality of the IA force investigator's or supervisor's investigations;

    c. a summary of written feedback by EFIT on the IA force investigator's or supervisor's work product;

    d. a description of any allegations that the IA force investigator or supervisor committed misconduct related to their investigations during the previous quarter, including how the allegation was ultimately resolved;

    e. the number of the IA force investigator's or supervisor's investigations from the previous quarter in which the IA force investigator or supervisor failed to satisfy CASA requirements for investigations, compared to the number of investigations that the IA force investigator or supervisor conducted during the previous quarter;

13

 f. an evaluation of the IA force investigator's or supervisor's overall performance; and

 g. any actions that will be taken during the following quarter to improve the IA force investigator's or supervisor's performance.

35. APD may transfer responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to IA force personnel only after a quarterly evaluation demonstrates:

 a. that the IA force investigator or supervisor has received training on all aspects of Level 2 and Level 3 force investigations;

 b. that the IA force investigator or supervisor has regularly conducted high-quality investigations for at least two months, as demonstrated by EFIT's written assessments of the investigations;

 c. that the IA force investigator or supervisor regularly produces high-quality work product, as demonstrated by EFIT's written feedback;

 d. that the IA force investigator or supervisor has not committed misconduct during the course of investigations; and

 e. that 95% of the IA force investigator's or supervisor's investigations from the previous quarter satisfied all CASA requirements for investigations.

36. APD shall notify the EFIT Administrator in writing two weeks before APD intends to transfer sole responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to an IA force investigator or supervisor. The EFIT Administrator shall promptly notify the City, APD, DOJ, and the Independent Monitor in writing if the EFIT Administrator determines that the IA force investigator or supervisor does not meet

the qualifications identified in Paragraph 35 of this Order. The City, APD, DOJ, the Independent Monitor, and the EFIT Administrator shall confer about any disagreements between APD and the EFIT Administrator regarding the qualifications of any IA force investigator or supervisor to take responsibility for conducing full investigations of Level 2 and Level 3 uses of force. The City and DOJ shall seek to resolve any such disagreements. If the City and DOJ are unable to resolve such disagreements, they may bring the matter before the Court for resolution.

37. The City and DOJ anticipate that APD will take responsibility for conducting full investigations of Level 2 and Level 3 uses of force over time as individual IA force investigators and supervisors meet the qualifications identified in Paragraph 35.

38. The City will endeavor to ensure that the responsibility for conducting full investigations of Level 2 and Level 3 uses of force returns entirely to APD within nine (9) months of EFIT beginning to provide services. Within six (6) months of the EFIT beginning to provide services, the Parties will evaluate the progress of APD, to include considering whether the EFIT is contributing to improvements in the progress of APD to meet the requirements of the CASA. Based on this evaluation, the Parties will file a status report with the Court within seven (7) months of the EFIT beginning to provide services, indicating whether the services of the EFIT should extend beyond nine (9) months.

39. The City and DOJ agree to jointly ask the Court to terminate this Order once there are a sufficient number of IA force personnel who have met the qualifications identified in Paragraph 35 to complete all full investigations of Level 2 and Level 3 uses of force within the timelines required by the CASA, APD policy, and the CBA.

40. Notwithstanding Paragraph 39 of this Order, if the Independent Monitor, after conducting the informal assessments required by Paragraph 28(c) of this Order, or the formal assessments required by the CASA, determines that EFIT regularly fails to conduct investigations consistent with CASA requirements and APD policy, the City, with the concurrence of DOJ, may seek to terminate its contract with EFIT, and the Parties may seek to modify this Order accordingly.

41. If the City and DOJ are unable to reach agreement about asking the Court to terminate this Order, either Party may seek to terminate this Order. In the case of termination sought by the City, prior to filing a motion to terminate, the City agrees to notify DOJ in writing when the City has determined that there are grounds for termination of this Order. Thereafter, the City and DOJ shall promptly confer about the City's assertions. If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ and/or the Independent Monitor may wish to undertake, the City and DOJ cannot resolve any disagreements, the City may file a motion to terminate this Order. If the City moves for termination of this Order, DOJ will have 60 days after the receipt of the City's motion to object to the motion. If DOJ does not object, the Court may grant the City's motion. If DOJ objects, the Court will hold a hearing on the motion, and the burden shall be on the City to demonstrate that it has fully complied with this Order and that the grounds for termination of this Order are supported by a preponderance of the evidence.

The Court recognizes and approves of the measures in the Stipulated Order as good faith efforts by the Parties to address investigative deficiencies in APD's force investigations, as identified by the Independent Monitor in his Twelfth Report, and therefore approves this Stipulated Order as an Order of the Court.

16

**THEREFORE,**

    **IT IS ORDERED** that the Parties' Joint Motion for Entry of Stipulated Order

Establishing an External Force Investigation Team is approved, and the Stipulated Order is

hereby entered as an Order of the Court.

    **IT IS FURTHER ORDERED** that that the Court will retain jurisdiction to enforce the

provisions of the Order.

<br>

                    HON. JAMES O. BROWNING
                    United States District Judge

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Elizabeth M. Martinez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

 --and--

Paul Killebrew
  Special Counsel
Corey M. Sanders
  Trial Attorney
Stephen M. Ryals
  Trial Attorney
Patrick Kent
  Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Washington, D.C.

    *Attorneys for the United States*

Esteban A. Aguilar, Jr.
   City Attorney
Lindsay Van Meter
   Managing Assistant City Attorney
Robyn Rose
   Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico

   *Attorneys for the City of Albuquerque*

# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE CITY OF ALBUQUERQUE,                No. CIV. 14-1025 JB\SMV

        Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS"

COMES NOW, the City of Albuquerque, and hereby files the attached "Albuquerque Police Department Internal Affairs Force Division Current Processes, July 12, 2021." Exhibit 1.

Paragraph 14 of the Court's February 26, 2021, *Stipulated Order Establishing an External Force Investigation Team*, Document 720, (hereafter, *Stipulated Order*) requires the City to "submit a proposed written IA investigative process to the United States and Independent Monitor" within two months of entry of the Order. The City submitted the proposed investigative process to the Independent Monitor and United States on April 26, 2021, and thus complied with the Court's deadline Paragraph 14. Thereafter, the United States and Monitor considered the proposed investigative process, recommended revisions, and the City considered the recommendations and revised the process, as required by Paragraph 14.

1

Paragraph 14 of the *Stipulated Order* provides that "[a]fter the City, DOJ, and the Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court." Doc. 720 at 5. The Independent Monitor, United States, and City have now agreed on the attached *Albuquerque Police Department Internal Affairs Force Division Current Process.* Exhibit 1. The City therefore files it with the Court as required by Paragraph 14 of the *Stipulated Order.*

Respectfully submitted this 16th day of July, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY

*Lindsay Van Meter*
LINDSAY VAN METER
Managing Assistant City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
lvanmeter@cabq.gov
trigler@cabq.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*Lindsay Van Meter*
Lindsay Van Meter
Managing Assistant City Attorney
City of Albuquerque

2



# ALBUQUERQUE POLICE DEPARTMENT

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

### July 12, 2021

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases. This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025. This document reflects the current investigative process at IAFD. The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

Exhibit 1

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

**ON-SCENE AND ADMINISTRATIVE - USE of FORCE**

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene. If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
    a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
        i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
            1. If the individual invokes his/her rights, questions will not be asked.
        ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
            1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
        iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
            1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
    a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
    b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation. Additional witness officers may have to be identified later in the investigation as more evidence and information is available. For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses. If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement. The responding supervisor may obtain a verbal statement if the witness is willing to do so.

7. The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8. The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.   If needed, he/she will watch the witness officers' OBRD to classify properly.

   a. If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command. If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9. The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident. The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene. IAFD will maintain a roster of three detectives on-call each week. The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

    a. IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork. If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they needs to complete it themselves:

    • Identify involved officers.
    • Identify witness officers.
    • Identify the individual in which force was used.
    • Identify civilian witnesses. If any civilian witnesses are on-scene, interview witnesses and encourage a written statement.  If a formal witness statement is required due to

circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.

- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
    - If the individual invokes his/her rights, no questions will be asked.
    - If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
        - This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours.  Note: this can occur at any point during the investigation.  *(See MISCONDUCT).*

17. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case.  Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email.  This can occur at any point during the investigation.

    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT).*

18. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion.  Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

19. Responding supervisor will complete the Supervisory On-Scene Investigation form.  This is turned in by the end of shift and emailed to the on-call IAFD detective.

20. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

21. The IAFD on-call detective will begin the Evaluative Data form.  This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team.  In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice.  The IAFD on-call detective will include the email in the case file for proof of 24-hour notification.  The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level

two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

22. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

23. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

24. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective. IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team. The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

25. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

    a. The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro. There are multiple entry types allowed in IAPro and Blue Team. Many of these entry types may be involved in one case and are linked together in IAPro. For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro. Also, the K-9 Unit enters all deployments into Blue Team. It should be noted that all K-9 deployments do not result in a K-9 bite. When there is a K-9 bite, the linked data will include a K-9 deployment entry and a use of force entry.

       Below are examples of entry types:
       Civilian Police Complaints (CPC) = CPC2021-000000
       Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
       K9 Utilization = K92021-000000
       Force = F2021-000000
       Award Nominations = AN2021-000000
       Vehicle Crashes = VC2021-000000
       Internal Investigations (IAPS misconduct) = I2021-000000
       Non-Force = NF2021-000000

26. The case will remain in IAPro until assigned to a case agent. Cases agent assignments shall be made expeditiously.

27. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team. The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data. The remainder of the case is in IAPro. The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

28. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702. IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

29. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.

**CASE AGENT – USE of FORCE**

30. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc. The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

31. *If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. (See MISCONDUCT).*

32. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment. The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

    a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

    b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

    c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

    d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

    e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

33. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

34. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

35. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

36. The case agent will upload all evidence into IAPro to include all forms and links.  At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.
37. The case agent will submit the case to the immediate supervisor for review in IAPro.
38. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.
39. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

**SERGEANT/LIEUTENANT**

40. The immediate supervisor will receive the case via IAPro.  If there is a force and a misconduct case, they may not be received at the same time.
41. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31).*
42. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT).*
43. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings. This includes watching OBRD videos.
44. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.
45. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.
46. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.
47. The immediate supervisor will complete the IAFD Chain of Command Review Form.  This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.
48. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.
49. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

50. The deputy commander or commander will receive the case in IAPro.
51. The deputy commander or commander will review bookmarked OBRD videos.
52. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.
53. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.

54. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.

55. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.

56. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.

57. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

58. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.

59. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.

60. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.

61. The IAFD administrative staff will close the case in IAPro.

62. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

63. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.

    a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.

        i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.

            1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.

            2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.

            3. IAFD will complete an IAR when an initial policy violation is identified.

                a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.

    b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

64. The misconduct case will follow the same investigative steps as a use of force investigation.  Each case will be reviewed by the IAFD chain of command.  The only difference is the misconduct interviews will involve compelled statements.

65. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action.   The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review.  The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

66. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

67. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.

   i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

68. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case.  *(See SOP 3-46 Discipline System).*

# EXHIBIT

# C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE CITY OF ALBUQUERQUE,           No. CIV. 14-1025 JB\SMV

        Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS Revised – September 8, 2021

COMES NOW Defendant City of Albuquerque and hereby files the attached

"Albuquerque Police Department Internal Affairs Force Division Current Processes, Revised –

September 8, 2021" (Revised Process Narrative). Exhibit 1.

On July 16, 2021, the City filed a Notice of Agreed "Albuquerque Police Department

Internal Affairs Force Division Current Process," which was attached as its Exhibit 1 a Process

Narrative dated July 12, 2021. *See* Doc. 839-1. By filing that Process Narrative, the City

complied with Paragraph 14 of the Court's February 26, 2021 *Stipulated Order Establishing an*

*External Force Investigation Team* (Stipulated Order), Doc. 720, which required the City to

"submit a proposed written IA investigative process to the United States and Independent

Monitor" within two months of entry of the Order and "[a]fter the City, DOJ, and the

Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court." Doc. 720 at 5.

After the IA Force Division (IAFD) and External Force Investigation Team (EFIT) began operations under the Process Narrative, Doc. 839-1, they identified a material disparity between the Process Narrative and applicable use of force policy regarding use of force reporting, namely, whether written statements should be required in all circumstances as stated in the Process Narrative, or whether recorded verbal statements could be permitted as allowed by policy. The Revised Process Narrative permits using recorded verbal statements under limited circumstances with supervisory approval. *See* Exhibit 1 at Paragraph 14.

The Revised Process Narrative also includes a process pursuant to which IAFD and EFIT may resolve on scene disagreements about the proper classification of the level of force to be investigated. *See* Exhibit 1 at Paragraph 16. This  process was not included in the original Process Narrative.

The Revised Process Narrative attached as Exhibit 1 hereto, which was prepared by the City was reviewed and approved by the United States and the Independent Monitor as required by Paragraph 14 of the Stipulated Order. The Independent Monitor, the United States, and the City have agreed on the attached Revised Process Narrative, which the City now files with the Court as required by Paragraph 14 of the Stipulated Order. Counsel for the Albuquerque Police Officers' Association was contacted regarding the attached Revised Process Narrative and approves to form.

Respectfully submitted this 27th day of September, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY

*Carlos F. Pacheco*
CARLOS F. PACHECO
Senior Managing City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
cpacheco@cabq.gov
trigler@cabq.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*Carlos F. Pacheco*
Carlos F. Pacheco
Senior Managing City Attorney
City of Albuquerque



**ALBUQUERQUE POLICE DEPARTMENT**

**INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES**

**Revised - September 8, 2021**

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases.  This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025.  This document reflects the current investigative process at IAFD.  The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

# INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

## ON-SCENE AND ADMINISTRATIVE - USE of FORCE

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene. If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
   a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
      i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
         1. If the individual invokes his/her rights, questions will not be asked.
      ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
         1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
      iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
         1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
   a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
   b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation. Additional witness officers may have to be identified later in the investigation as more evidence and information is available. For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses. If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement. The responding supervisor may obtain a verbal statement if the witness is willing to do so.

7. The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8. The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.    If needed, he/she will watch the witness officers' OBRD to classify properly.

    a. If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command. If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9. The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident. The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene. IAFD will maintain a roster of three detectives on-call each week.  The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

    a. IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork. On a very limited basis when IAFD and EFIT responded to UOF calls and when taking a written statement might not be feasible because of ongoing criminal conduct, the need to respond to other criminal conduct, or for officer safety reasons, and with written authorization of an IAFD Lieutenant or higher with the agreement by the EFIT Lead Supervisor or higher, a verbal statement can be recorded in lieu of the written use of force narrative. If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they need to complete it themselves:

    • Identify involved officers.

- Identify witness officers.
- Identify the individual in which force was used.
- Identify civilian witnesses. If any civilian witnesses are on-scene, interview witnesses and encourage a written statement. If a formal witness statement is required due to circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.
- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
  - If the individual invokes his/her rights, no questions will be asked.
  - If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
    - This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the level of force cannot be agreed upon by the assigned IAFD Detective and EFIT Investigator, the on-call IAFD Supervisor will respond to the scene to assist in properly classifying the level of force. For any level 2 or level 3 use of force call-out, that is classified on scene as a level 1 use of force, the classification will be reviewed (within 24-hours) by the EFIT Lead Supervisor to determine whether the UOF was properly classified.

17. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours. Note: this can occur at any point during the investigation. *(See MISCONDUCT)*.

18. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case. Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email. This can occur at any point during the investigation.
    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT)*.

19. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion. Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

20. Responding supervisor will complete the Supervisory On-Scene Investigation form. This is turned in by the end of shift and emailed to the on-call IAFD detective.

21. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

22. The IAFD on-call detective will begin the Evaluative Data form. This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team. In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice. The IAFD on-call detective will include the email in the case file for proof of 24-hour notification. The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

23. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

24. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

25. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective. IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team. The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

26. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

    a. The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro. There are multiple entry types allowed in IAPro and Blue Team. Many of these entry types may be involved in one case and are linked together in IAPro. For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro. Also, the K-9 Unit enters all deployments into Blue Team. It should be noted that all K-9 deployments do not result in a K-9 bite. When there is a K-9 bite, the linked data will include a K-9 deployment entry and a use of force entry.

    Below are examples of entry types:
    Civilian Police Complaints (CPC) = CPC2021-000000
    Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
    K9 Utilization = K92021-000000
    Force = F2021-000000
    Award Nominations = AN2021-000000
    Vehicle Crashes = VC2021-000000
    Internal Investigations (IAPS misconduct) = I2021-000000
    Non-Force = NF2021-000000

27. The case will remain in IAPro until assigned to a case agent. Cases agent assignments shall be made expeditiously.

28. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team. The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data. The remainder of the case is in IAPro. The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

29. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702. IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

30. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.

## CASE AGENT – USE of FORCE

31. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc. The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

32. If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. *(See MISCONDUCT)*.

33. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment. The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

    a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

    b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

    c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

    d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

    e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators, and IAFD supervisor, to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

34. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

35. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

36. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

37. The case agent will upload all evidence into IAPro to include all forms and links. At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.

38. The case agent will submit the case to the immediate supervisor for review in IAPro.

39. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.

40. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

## SERGEANT/LIEUTENANT

41. The immediate supervisor will receive the case via IAPro. If there is a force and a misconduct case, they may not be received at the same time.

42. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31).*

43. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT).*

44. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings. This includes watching OBRD videos.

45. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.

46. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.

47. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.

48. The immediate supervisor will complete the IAFD Chain of Command Review Form. This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.

49. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.

50. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

51. The deputy commander or commander will receive the case in IAPro.
52. The deputy commander or commander will review bookmarked OBRD videos.
53. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.
54. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.
55. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.
56. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.
57. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.
58. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

59. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.
60. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.
61. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.
62. The IAFD administrative staff will close the case in IAPro.
63. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

64. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.
    a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.
        i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.
            1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.

      2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.

      3. IAFD will complete an IAR when an initial policy violation is identified.

          a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.

   b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

65. The misconduct case will follow the same investigative steps as a use of force investigation. Each case will be reviewed by the IAFD chain of command. The only difference is the misconduct interviews will involve compelled statements.

66. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action. The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review. The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

67. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

68. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.

      i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

69. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case. *(See SOP 3-46 Discipline System).*

# EXHIBIT

# D



# City of Albuquerque
## Albuquerque Police Department

Timothy M. Keller
Mayor



Harold J. Medina
Chief of Police

**September 7, 2021**

## Interoffice Memorandum

**To:**       Terysa Bowie, Commander, SOD

**From:**     Richard Evans, Acting Commander, IAFD

**Subject:**  IAFD / SOD Mutual Aid Deployment

Effective September 7, 2021, the following procedure will take effect for SOD Mutual Aid Deployment that force is used by APD outside the City of Albuquerque NM.

Upon the use of force by any member of SOD, the on-scene supervisor will contact the on-call IAFD supervisor. The IAFD supervisor will obtain all pertinent information and dispatch an IAFD Detective and EFIT Investigator. Other than the individual not having to be in custody (only on Mutual Aid) all other IAFD Policies and Procedures regarding the investigation of the use of force will remain in effect.

APPROVED: _____     9/7/21
Richard Evans, Acting Commander, IAFD

_____     9/10/21
Terysa Bowie, Commander, SOD

Darryl S. Neier     09/07/21
Darryl Neier, Administrator, EFIT

# EXHIBIT

# E

*Memorandum*

| | To: | From: |
|---|---|---|
| ALBUQUERQUE POLICE | | |
| | **Subject:** **Employee Representative Admonition** IAFD# **2021-** | **Date:** |

You have been selected by_____and have voluntarily agreed to act as employee representative during the course of this official Internal Affairs Force Investigation. Your participation in this process is defined in the City of Albuquerque Police Officers Collective Bargaining Agreement Section 20:1.11.

As the employee representative, you are to participate in this interview as a representative only. At no time shall you interrupt the interview in any manner, including but not limited to: engaging in any form of verbal or non-verbal communication, making distracting noises, or hindering the flow or direction of the interview with the exception of objecting to a question, or you may ask for a question to be repeated or restated for clarification purposes.

At the conclusion of this interview, the employee or representative will be given a reasonable amount of time to make any additional comments or provide any information deemed necessary. You are further ordered not to discuss this investigation with anyone other than the Principal or the assigned investigators.

Failure to comply with the orders contained in this admonition shall result in your immediate removal from the interview room. If a representative is removed, the officer may be allowed up to 2 hours to obtain another representative before the interview is conducted.

The assigned investigators are:

I acknowledge that I have read and understand this memorandum.

_____          _____

Signature and Man Number                          Date

# EXHIBIT

# F



# IAFD -EFIT
### External
### Force
### Investigation
### Team

*14th Amici Meeting*
*October 15, 2021*



⊕ **DLG** | ACCOUNTING
ADVISORY SERVICES



Darryl Neier has twenty years of experience with a New Jersey Prosecutor's Office, Commanding Internal Affairs, Complex White-Collar Crime and Political Corruption.

For seventeen years he was the Principal in Charge of forensic accounting/litigation services group at a top 200 accounting firm, working on matters to include, Federal Deferred Prosecution Agreements and Monitorships. In July 2006, he was the Deputy Independent Investigator, related to an Arizona Federal District Court appointment to conduct internal affairs investigations within the Maricopa County Sheriff Office, AZ.

In January 2019, Darryl joined DLG Accounting and Advisory Services, LLC to expand the advisory services offerings.

⊕ **DLG** | ACCOUNTING
ADVISORY SERVICES



William L. Hurlock, Esq. is the managing partner of Mueller Law, LLC, a national law firm.  Prior to working at Mueller, Bill served as a federal prosecutor in Washington, D.C., where he investigated allegations of corruption at the highest levels of the Federal Government.

He is also the Deputy Mayor/First Ward Councilor for Montclair, N.J. where he serves on the public safety committee. He also recently served on the committee that worked to obtain the Montclair Police Department's accreditation.

He is admitted to practice in courts throughout the country, including the United States District Court for the District of New Mexico.

# DOJ Pattern-or-Practice Investigations and Police Reform

- November 2012 – DOJ commences Police Pattern-or-Practice Investigation of APD;

- November 2014 – ABQ City Council unanimously votes to endorse the use of force settlement agreement;

- January 2015 – DOJ and COA recommend Dr. James R. Ginger as the monitor, who was then appointed by the Court(IMR 14 is pending);

- February 2021 – ABQ and DOJ entered into a Stipulated Agreement to stay a contempt of court proceeding.

DLG | ACCOUNTING ADVISORY SERVICES

# Stipulated Agreement (Doc. 720)
# EFIT and Use of Force

- Establishes an External Force Investigation Team ("EFIT");
- Staffing of APD IAFD (25 Investigators – August 28, 2021 – 5 are civilian);
- Joint Investigation of all Level 2 and Level 3 UOF, to include Tactical Deployments that UOF was utilized;
- Creation of a Remedial Action Plan for APD IAFD;
- Training;
- Return responsibility back to APD for UOF investigations.

**◆DLG** | ACCENTURE ADVISORY SERVICES

# Stipulated Agreement – EFIT

- Darryl Neier – EFIT Administrator
  - EFIT is evaluated by DOJ and the IM;
- Executive Team (Deputy Administrator William Hurlock and Lead Supervisor Darriell Bone);
- Three Teams (1 Supervisor and 4 Investigators per team) in ABQ working on UOF Investigations - three-week rotations;
- All UOF investigations must be completed within 60 days and a 30-day supervisory review period – Total of 90 days;
- EFIT Preliminary Contract – May 2021;
- EFIT went Live July 16, 2021 – Contract expires May 3, 2022.

⊕DLG | ACCOUNTING ADVISORY SERVICES

# Experience of EFIT Investigators

- All highly experienced in Internal Affairs UOF Investigations and providing LE education;

- Many were Commanders and/or Chief of Police, tactical and K9, legal, and some served in their respective departments while under a CASA or court order(s).



# EFIT – Use of Force Investigations

- EFIT works under the *Stipulated Agreement* (Doc. 720) and *Process Narrative* – (July 12, 2021) filed with the Federal District Court on July 16, 2021 (Doc. 839);

- The *Process Narrative* revised September 8, 2021 (Doc. 862) was filed Monday September 27, 2021, in Federal District Court;

- Call Out Process – Respond with IAFD 24/7 and conduct joint investigations;

- Since July EFIT responded to 128 UOF incidents, including 4 OIS (31 cases are now completed (within) 50.7 days and are in Supervisor review, 11 are in Command Review and have signed off and closed 4 cases).

⊕DLG | ACCOUNTING
ADVISORY SERVICES

# EFIT's Accomplishments

- IAFD Process Changes;
- Professionalism within IAFD;
- Mentorship/Training of IAFD Detectives and Investigators;
- Case Oversite to include onsite review, interviews and reporting;
- Evaluation of IAFD Detectives, Investigator, Supervisors and the IAFD Division;
- Weekly meetings with APD Command Staff, Field Commands and many of the Specialized Units.

⬧DLG | ᴇxᴇᴄᴜᴛɪᴠᴇ ᴀᴅᴠɪꜱᴏʀʏ ꜱᴇʀᴠɪᴄᴇꜱ

# Important Dates

- October 16, 2021 – EFIT Draft Quarterly Report (DOJ/IM)
    - After review period it will be filed with the Federal District Court
- December 16, 2021 – APD to File with the Federal District Court a Remedial Action Plan (after approval from DOJ, IM and EFIT) – this plan will have quarterly updates.
- Evaluation of EFIT by DOJ and APD to start in January 2022 (6 months) and filed with the Federal District Court by February 16, 2022 (7 months).
- A decision needs to be made by March 2022 to end the EFIT program contract by May 3rd or to extend with a new ending date.

DLG | ACCOUNTING ADVISORY SERVICES

## *Contact Information*

Darryl S. Neier

dneier@cabq.gov
201-841-1776

## William L. Hurlock, Esq.
## whurlock@cabq.gov
## 347-556-8624



