# EXTERNAL FORCE INVESTIGATION TEAM'S ("EFIT'S") Second Quarterly Report

October 16, 2021 – February 16, 2022

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
February 16, 2022

TABLE OF CONTENTS

PAGE

TABLE OF EXHIBITS AND CHARTS ........................................................................3

INTRODUCTION ...........................................................................................4

EXECUTIVE SUMMARY .....................................................................................4

EFIT'S MANDATE.........................................................................................6

RELEVANT ISSUES AND EFIT'S ACCOMPLISHMENTS TO DATE..........................................13

UPCOMING DATES ........................................................................................28

### TABLE OF EXHIBITS & CHARTS

PAGE

EXHIBIT A-STIPULATED ORDER OF ESTABLISHING AN EXTERNAL FORCE INVESTIGATIVE TEAM.................................................................................7

EXHIBIT B-  APD PROCESS NARRATIVE  JULY 12, 2021,............................  7

EXHIBIT C- APD PROCESS NARRATIVE SEPTEMBER 8, 2021,  .......................7

EXHIBIT D- INTERVIEW TRANSITION POLICY  .............................................13

EXHIBIT E- REVISED EMPLOYEE REPRESENTATIVE ADMONITION  .............. 18

CHART TIME OF CALLOUTS ....................................................................... 24

**Introduction**

1. Please accept this Second Quarterly Report of the External Force Investigative Team ("EFIT").[1]

**<u>Executive Summary</u>**

2. In February 2021, the City of Albuquerque ("City") and the United States entered into a Stipulated Agreement. As a result, an Order was filed with the United States District Court for the District of New Mexico ("Court") on February 26, 2021, to stay a contempt of court proceeding ("Stipulated Order") (Doc. 720). The Stipulated Order established the EFIT and its attendant mandate. On May 2, 2021, a preliminary contract was signed between DLG, Accounting and Advisory Services ("DLG, LLC") and the City. On June 23, 2021, the full contract was signed by DLG, LLC and the City, enabling EFIT to commence full operations on July 16, 2021.

3. The parties should be aware, and pursuant to the relevant documents, EFIT is on call 24/7 and must respond to all call outs within one hour of notification. All Use of Force ("UOF") investigations must be completed within 60 days with an additional 30-day supervisory review period for a total of 90 days from start to finish. Pursuant to the Order, EFIT must conduct joint investigations with APD Internal Affairs Force Division ("IAFD") of all Level 2 and Level 3 UOF incidents – this includes all Tactical Deployments where UOF is utilized. EFIT must also assist APD with training concerning the UOF.  Formal training will be

---

[1] While the Stipulated Order Establishing an EFIT, Doc. 720, and its attendant mandate does not require EFIT to file quarterly reports, in the interest of transparency, the EFIT Executive Team decided to prepare and file quarterly reports. On November 12, 2021, EFIT filed its first quarterly report, covering July 16, 2021, to October 16, 2021. Doc. 873.  In addition, for the sake of the timing and completeness of this report, the data contained herein covers October 16, 2021, to February 16, 2022, inclusive. EFIT will file its next quarterly report on May 16, 2022.

provided by Aegis Training Solutions. A contract was awarded to Agis and is pending. On December 14, 2021, the City Council referred the contract to committee where it is pending formal approval. However, EFIT is currently providing on going mentoring of all Detectives/Investigators to include, but not limit, UOF scene investigative practices, interview, and written reporting of the UOF investigations.

4. The EFIT Executive Team worked with APD IAFD to establish a detailed IA Investigation Process Narrative ("Process Narrative")[2] that governs the response and investigative protocols to any Level 2 and 3 UOF cases.[3] These documents are the basis for EFIT to evaluate IAFD.

5. As of this report[4], 15 out of the 141 (10.63%) of the UOF investigations closed by EFIT/IAFD were found to be out of APD UOF policies. However, 48 out of the 141 (34.04%) of the UOF investigations closed by EFIT/IAFD were found to be out of compliance when evaluated against the Process Narrative used to assess investigations. These violations range from IAFD failing to conduct required UOF meetings and/or interviews without EFIT's attendance, IAFD's lack of written or incomplete investigative plans, failure to assign UOF investigations for extended periods of time, failure to upload and/or provide documents to EFIT and incomplete UOF scene investigations - to include documentation from witnesses and officers. EFIT's next quarterly report, which is to be filed with the Court on May 16, 2022, will continue to analyze these issues based on the findings of both APD UOF compliance and case investigative compliance.

_____

[2] Filed with the Court on July 12, 2021 (Doc. 839).
[3] A revised Process Narrative was filed on September 27, 2021 (Doc. 862).
[4] Statistical data is through January 27, 2022.

6. While this quarterly report addresses EFIT's qualitative findings up to and including, February 16, 2022, our statistical findings are as of January 27, 2022, and as of this date, EFIT responded to 241 Level 2 and Level 3 UOF[5] incidents, including 6 Officer Involved Shootings ("OIS"). EFIT opened joint investigations with IAFD on each incident. EFIT/IAFD completed 141 investigations within the 90-day time period outlined in the Stipulated Order.[6] EFIT assumed 10 UOF investigations pursuant to Paragraph 23(b) of the Stipulated Order as those investigations became close to violating the stipulated timelines.

7. It is EFIT's intention that this report will provide a better understanding of APD's successes, issues and failures, particularly IAFD. It is EFIT's goal to teach, mentor and professionalize IAFD so that when this assignment is completed, EFIT leaves the City with a sustainable division that investigates UOF incidents in a timely, objective and professional manner.[7]

8. A major accomplishment in this reporting period, is that seven IAFD Detectives and two IAFD Investigators were identified as attaining the requisite experience level to start transitioning the UOF Interview process from a joint EFIT/IAFD interview, to conducting interviews without EFIT's participation (*See* Para. 31-38).

**EFIT's Mandate**

9. The Stipulated Order established the EFIT and its mandate. Currently, EFIT's contract will expire on May 3, 2022. EFIT understands, based on discussions with the City and DOJ, that this contract will be extended.

---

[5] Additionally, EFIT responded to 16 UOF cases that were reclassified as Level 1 UOF, which will be investigated by the Field Services Division pursuant to the relevant documents.

[6] One of the closed cases involved an Officer who was subsequently severely injured during an OIS. This case was reported to all parties and the Federal District Court (Doc. 864) and was closed (122 days).

[7] For extensive background information on the EFIT Executive and Investigatory Teams please *See* EFIT's First Quarterly Report dated October 16, 2021 (Doc. 873).

10. As stated previously, EFIT derives its authority and jurisdiction from the Stipulated Order (Doc. 720) (*See* Ex. A) and the Process Narrative (July 12, 2021, revised September 8, 2021) filed with the Court on July 16, 2021, (Doc. 839) and September 27, 2021, (Doc. 862), respectively. (*See* Exs. B & C).

11. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond within one hour notification. EFIT and IAFD conduct joint investigations. All UOF investigations must be completed within 60 days and a 30-day supervisory review period for a total of 90 days from start to finish. Provisions are in place if an extension of these timelines is needed for extenuating circumstances, such as an inability to interview an officer sustaining serious injuries due to an OIS.[8]

12. The Stipulated Order also establishes the staffing levels for the APD IAFD. As of August 28, 2021, IAFD must be staffed with 25 Detectives.[9] Currently IAFD has 11 civilian investigators[10] and 20 sworn detectives, however in recent discussions with the IAFD Commander, EFIT discovered that by the end of February 2022, IAFD will be at a total staffing level of 25 due to retirements, promotions, officers "bidding" (or requesting another assignment out of IAFD and back to Field Divisions) and the loss of Investigators. These staffing levels must be maintained pursuant to the relevant court documents, but EFIT has concerns that these numbers fluctuate and retaining  both sworn and civilian personnel is a

---

[8] On October 20, 2021, a Notice was filed with the Court (Doc. 864) due to an OIS delaying the completion of two 60-day investigations.

[9] For the purpose of this report the term "Detective" equates to sworn APD personnel and "Investigator" is used for civilians conducting UOF investigations.

[10] Training of IAFD personnel takes approximately 3 to 4 weeks for sworn officers to over 2 months for civilian investigators to attain the requisite effectiveness, which enables them to respond to UOF investigations. It should be noted that sustainability of staffing is one of the main concerns of EFIT and will continue to be addressed in this and future reports to the Court.

constant concern as IAFD again moves close to falling below required staffing levels.[11]

13. Specifically, EFIT continues to express concern about retaining  Investigators and Detectives in IAFD. Mr. Neier and Mr. Hurlock met several times with APD's senior officers and counsel for the City regarding this issue. In addition to detectives transferring  out of IAFD, in mid-January two civilian investigators (after completing their IAFD training) applied to transfer out of IAFD to APD's Organized Crime Task force without informing IAFD Command Staff, including but not limited to, the Acting Superintendent of Reform.

14. Retaining trained IAFD Detectives/Investigators (apart from the continued violations of the Process Narrative) is the EFIT Executive Team's main concern related to the transition process of EFIT/IAFD to IAFD working totally independently. EFIT anticipated that this would be addressed to promote sustainability (adhering to the court mandated 25 personnel) and longevity during the Albuquerque Police Officers' Association's ("APOA") contract process. In this regard, the collective bargaining agreement ("CBA") signed by the City and the APOA on December 30, 2021, provided IAFD personnel the same incentive pay as their counterparts receive for remaining within the same area command or IAFD/IAPS. Pursuant to section 3.1.10 of the APOA contract "*An officer will receive $1,300.00 for each year served for the entire year in the same Area Command or the IA Division, up to and capped at four years of continuous service or $5,200.00 per year.*" While EFIT believes this will be helpful, additional incentives must be explored by APD  to ensure that  highly trained and motivated teams remain within IAFD.

15. On February 3, 2022, the EFIT Administrator and Deputy Administrator met with APD Legal Counsel Carlos Pacheco to discuss EFIT's concerns. While the CBA governs and

---

[11] Currently, IAFD advertised and is authorized to hire 4 civilian investigators.

describes incentives for sworn members of IAFD, EFIT made recommendations regarding civilian Investigators, ranging from providing identical incentive pay as sworn officers (discussed in the paragraph above), providing official, visible, approved APD professional clothing that will identify themselves not only to APD Officers but the public at large, and ensuring each Investigator has a take home vehicle as not all investigators are assigned them. Additionally, EFIT recommended that Investigations be required to reimburse the City for training costs if they choose to leave IAFD within a proscribed period of time (to be determined). In addition, senior APD command must communicate if any IAFD member seeks to apply for another Division once such an application or notice is received.

16. On February 4, 2022, Chief Medina discussed EFIT's meeting with Mr. Pacheco, and they are moving forward on executing many of EFIT's recommendations regarding civilian investigators. Chief Medina also advised that since speaking with Mr. Pacheco, the City approved the incentive pay recommendation. EFIT will continue making recommendations to the senior leadership of APD and report sustainability, related concerns and progress in future Quarterly Reports.

17. APD must create a Remedial Action Plan (Para. 31, Doc. 720) for IAFD that is approved by the IM and filed with the Court. APD must provide quarterly updates of this plan thereafter. DOJ becomes involved in this process only if the IM makes recommendations instead of approving the plan as submitted by APD. If that occurs, DOJ may intercede and provide approval for the City to file its proposed plan instead of adopting the IM's recommendations. Mr. Pacheco distributed a Remedial Action Plan to DOJ, the IM and EFIT on December 14, 2021, for comments. This document was finalized and filed with the Court on Tuesday, February 15, 2022.

18. APD and DOJ must evaluate EFIT and the evaluation is to commence in January 2022. After that point, the Parties must indicate whether EFIT's services should extend beyond the initial nine month term in a status report filed with the Court by February 16, 2022. (Para. 38, Doc. 720).

19. As noted previously, the Parties must decide by March 2022 whether to terminate the EFIT program when the contract expires on May 3, 2022, or to extend EFIT with a new ending date. DOJ and the City informed EFIT that the contract will be extended and a new Stipulated Agreement will be filed with the Court. Ultimately, the goal is for EFIT to return responsibility back to APD for UOF investigations.

20. The EFIT Executive Team worked to establish a detailed Process Narrative that governs the response protocols to Level 2 and 3 UOF cases. EFIT is constantly reviewing this document to ensure that it is serving the interests of EFIT's mandate. To that end, EFIT made several modifications as necessary. It is important to note that any such modification is reviewed by the City Attorney's Office, DOJ and the IM. This document is filed with the Court and serves as the working procedure that IAFD/EFIT follows when conducting investigations. It also serves as the basis for EFIT to evaluate IAFD.

21. Once filed, the Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators.  In addition, the EFIT Executive Team conducted a class as to how the Detectives/Investigators would be evaluated by EFIT. The entire IAFD attended the class. This document establishes specific timelines and procedures to be followed for every Level 2 and Level 3 UOF investigation. All new IAFD Detectives/Investigators are provided the Process Narrative during the onboarding and internal training sessions.

22. Cases that are fully investigated by IAFD/EFIT are reviewed by the EFIT Team Supervisor,

then forwarded to the IAFD Sergeant for their review.  The IAFD Sergeant determines if the force is within ADP policy and forwards the case for an IAFD Command review. It is after the Command level that the EFIT Executive Team reviews the UOF determination and recommends closing a case. To date, EFIT disagreed on 4 UOF classification determinations as to whether the UOF is out of APD policy. Pursuant to the Stipulated Order these cases are discussed with APD (DOJ and IMT are notified). After these meetings and reconsideration by IAFD Command, these UOF cases were ruled out of APD policy.

23. Provisions were written into the Stipulated Order should EFIT need to assume full responsibility of an investigation or if EFIT disagrees with IAFD's investigative findings. Between October 25, 2021, and February 16, 2022, EFIT assumed 10 UOF investigations at various levels of completion pursuant to Paragraph 23(b) of the Stipulated Order as these investigations became close to violating the stipulated timelines.

24. Specifically, on January 10, 2022, EFIT assumed responsibility pursuant to Paragraphs 23(b) and 24 of the Stipulated Order to finish a UOF investigation. EFIT learned  that an IAFD detective experienced an equipment malfunction and lost the evaluative narrative. Given past poor communications issues internally with IAFD and externally with EFIT, and the fact that the investigation was in serious jeopardy of becoming time-barred, EFIT assumed the investigation. This case was completed by EFIT, but it also went through the Supervisor and Command review and was closed in 87 days on February 6, 2022.

25. EFIT continues to recommend increased supervision – at all levels of IAFD - going forward to prevent the takeover of cases from occurring in the future.  In addition, such supervision is necessary to ensure that IAFD Detectives/Investigators are adhering to the procedures contained in the Process narrative. These issues are particularly acute at the Sergeant, Deputy

Command and Command levels. First line Supervision is paramount to the success of IAFD; these supervisors must take an active role with Detectives/Investigators under their command to know each UOF investigation and assist the Detectives/Investigators recognize the strengths and weaknesses of each investigation. By conducting case status meetings twice a week utilizing a robust investigative plan and reviewing OBRD prior to receiving the case for a supervisor review, these UOF cases will withstand EFIT's scrutiny. Without the first line supervisors taking this role, it will continue to prolong the EFIT oversight of IAFD.  The EFIT Executive Team will continue to monitor these issues very closely going forward.

26. Finally, the relevant documents governing EFIT also outline the process IAFD and EFIT need to take if a UOF might subject an APD officer to criminal liability. EFIT/IAFD have not made any referrals to the Multi-Agency Task Force during this reporting period.

27. Closed UOF cases are presented to the FRB.[12] Initially, EFIT had no role in the FRB process other than as an observer. However, as the cases that EFIT jointly investigated with IAFD are now at the FRB level, Mr. Neier and Mr. Hurlock believed that EFIT should have a more active role in the FRB hearings. To that end, Mr. Neier and Mr. Hurlock met with APD, DOJ and the Independent Monitoring Team to discuss the parameters for such participation to occur.

28. As a result, all parties agreed that EFIT may take a more active role in presentations made to the FRB. For those cases where EFIT assumed responsibility for the investigation, Mr. Neier or Mr. Hurlock will present  the case to the FRB.

29. Moreover, for all FRB proceedings at least one member of the EFIT Executive Team always attends the meetings. In addition, EFIT Team Supervisors also attend FRB proceedings.  As

---

[12] All Level 3 UOF investigations and 10% of Level 2 are presented to the FRB.

of this report, 10 UOF investigations where EFIT/IAFD conducted a joint investigation were presented to the FRB.

30. Mr. Hurlock and Mr. Neier continue to meet once a week with Associate Monitors Phillip Coyne and William Toms, the IMT's subject matter experts on force. While supervision and technical assistance are required under the Stipulated Order, these meetings are extremely helpful for any contemplated process changes. This relationship between EFIT and the IMT is set forth more fully in Paragraph 24 of the Stipulated Order.

**Relevant Issues and EFIT's Accomplishments To Date**

31. The EFIT Executive Team is pleased to report that it established protocols[13] (*See* Ex. D) to begin to transition IAFD Detectives/Investigators to conduct interviews without EFIT's direct supervision. Once a Detective/Investigator is identified by an EFIT Investigator, Supervisor, or Executive Team Member as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team determines whether the IAFD Detective/Investigator may conduct interviews. The following process will be followed:

32. The EFIT Administrator and/or Deputy Administrator will notify the Superintendent, IAFD Division Commander and Deputy Chief, IMT, and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

33. The Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

---

[13] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

34. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

35. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in the phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief and IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

36. The EFIT Lead Supervisor will meet with IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase:

**Phase 1**

    a. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) no later than 24 hours with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.

    b. The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours before the interview to discuss the impending interview.

    c. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

    d. Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.

e.  This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.

f.  Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

**Phase 2**

a.  The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.

b.  After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

c.  Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.

d.  This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.

e.  Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

**Phase 3**

a.  The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.

b.  The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.

c. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

d. EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

37. Beginning on January 17, 2022, to present, the EFIT Executive Team identified nine Detective(s)/Investigator(s) from IAFD that will be moving into the Interview Transition Process. Chief Medina recognized the significance of this transition for the Detectives/ Investigators and for EFIT on his weekly "Chief's Corner" on the Daily 49 Podcast of January 21, 2022, after the first three entered into the Interview Transition Process. EFIT will continue to identify Detectives/Investigators who are eligible to enter the Interview Transition Process. If successful in this process, these Detectives/ Investigators/Detectives will become the first to conduct complete investigations without direct EFIT supervision of EFIT.

38. Additionally, as of this report, these Detectives/Investigators completed interviews without EFIT's oversight. EFIT's evaluation of these interviews has been very positive to date and members of IAFD admitted into this process are complying with the aforementioned Interview Transition Policy, EFIT investigators reported a positive interaction.

39. The EFIT Executive Team continues to meet with all Area Commanders and many of the specialized unit Commanders, to explain the EFIT process, its protocols, and what their officers can expect upon EFIT responding to UOF incidents. Additionally, it was important for Commanders to freely relay concerns they are experiencing with the UOF investigative process. The EFIT Executive Team continues to conduct field visits and various Division

briefings concerning EFIT, specifically any changes or modifications to the Process Narrative and relevant protocols.

40. As of this report, EFIT is pleased to share that it accomplished several changes to the IAFD investigatory process and established a certain level of professionalism within the IAFD team. The EFIT Executive Team addressed a number of significant issues facing APD. Indeed, the Process Narrative and associated protocols were revised on more than one occasion as a result of updates required to address issues. It is important to note that any proposed changes are circulated to the City Attorney's Office, DOJ and the IM. Comments are received and when appropriate incorporated into the Process Narrative and/or discussed with the relevant entities.

41. When EFIT began, IAFD was conducting interviews somewhat haphazardly in random locations. Detectives were asking leading questions and did not allow witnesses to state what happened by using open-ended questions. Essential critical listening skills were not present. There were interruptions of interviewees during their statements.

42. EFIT stressed the avoidance of leading questions and, for the most part, the Detectives/Investigators adhered to this standard with minor exceptions that are addressed with the IAFD Detectives/Investigators.

43. IAFD Detectives/Investigators and the Officers under UOF investigations are now dressed appropriately and professionally. Investigative reports are improving with each EFIT review and IAFD is now presented with high-quality reports for the Supervisory, Command, and FRB review.

44. EFIT believed that it was imperative that the tone and tenor – in accordance with the seriousness of these investigations – was established at the outset. That professionalism

continues to develop as EFIT moves forward.

45. EFIT reported on the prior actions of the APOA where the union's representatives interrupted interviews in clear contravention of the CBA. While EFIT, for the most part, did not experience these issues, unfortunately there were incidents where representatives interrupted interviews in an unprofessional manner.

46. When such conduct was identified, Mr. Neier and Mr. Hurlock immediately requested a meeting, and met with, counsel for the APOA John James D'Amato, Esq., Acting Superintendent Eric Garcia, Deputy Chief Zakary Cottrell, Deputy Commander Adam Anaya and APOA Vice President Matthew Fisher briefly attended the meeting. During the meeting, Mr. Neier and Mr. Hurlock informed Mr. D'Amato and Mr. Fisher that such conduct would not be tolerated in the future. Mr. D'Amato informed all participants that he would address these issues with the relevant APOA representatives and such conduct would immediately cease.

47. In addition, the EFIT Executive Team amended the Employee Representation Admonition form (standard employee representative observer form (*See* Ex. E) that IAFD must use when conducting interviews. Mr. Neier and Mr. Hurlock intend to monitor this issue very closely going forward.

48. With regards to forms, there remains a continuing concern that admonitions and witness statements are incomplete from the UOF scene. Admonishments and witness statements are still taken by both IAFD Detective/Investigators and field officers that lack much of the important witness's biographical data, contact information and case information. IAFD must ensure that if documentation is obtained by field officers documentation needs to be reviewed by IAFD for completeness. In addition, Supervisors must ensure that

Detectives/Investigators complete the relevant forms.

49. When EFIT initially raised this issue with IAFD, EFIT discovered that there was no IAFD requirement to use standard witness forms. EFIT recommended that IAFD review accepted forms and encourage the standardization of use within the Division to capture all the pertinent information needed for a law enforcement investigation.

50. These forms were developed and approved by APD in October 2021, however EFIT still sees incomplete witness statements taken by IAFD and Field Officers. This violates the Process Narrative and impedes  transitioning IAFD UOF investigations back to APD without EFIT's involvement.

51. EFIT still has serious concerns that the detailed investigative plan process it developed in May 2021, and approved by APD, IMT and DOJ is still haphazardly completed. Pursuant to the Process Narrative (Doc. 862 Par 33) "*The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing of evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the **immediate supervisor** earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.*" (emphasis added).

This document is essential to any investigation as it serves as  a "road map" to completing successful, detailed, timely and well-supervised investigations.

52. On numerous occasions, EFIT suggested that the IAFD Detective/Investigator and the EFIT Investigator, in coordination with, and with the approval of, the assigned IAFD Supervisor,

prepare a detailed investigative plan that includes the appropriate officers/witnesses to interview after reviewing preliminary OBRD and UOF reports.

53. As the EFIT Executive team noted in the Executive Summary of this report, 48 out of the 141 (34.04%) of the UOF investigations closed by EFIT/IAFD were out of compliance when evaluated against the Process Narrative. It should be noted that 32 of these 48 investigations (66.66%) were out of compliance in part for lacking accurate and/or effective investigative plans. This is a fundamental failure at the IAFD supervisory level and is an impediment in transitioning IAFD UOF investigations back to APD without EFIT's involvement.

54. Where EFIT identifies those Detectives/Investigators that are found to be lacking in certain skill sets discussions are immediately held with IAFD Command to address the areas in need of improvement. Some of the additional training is completed by additional mentoring by IAFD and/or EFIT. More intense training of Investigators/Detectives is conducted through IAFD remedial actions and in certain occasions those Detectives/Investigators in need are placed on a very structured Performance Improvement Plan. The EFIT Executive team is committed to working with IAFD Command on these issues and will closely monitor this issue going forward.

55. While EFIT is not involved with misconduct investigations stemming from a UOF investigation, the EFIT Executive Team observed that when closing out UOF cases, IAFD often requests extensions for the misconduct investigations, which would authorize them to extend the investigation to 120 days. However, certain of these cases exceeded required timelines and are over 120 days. This issue was also raised by the FRB voting members, as UOF investigations are presented to the FRB while the misconduct case is still pending resolution. EFIT believes that misconduct investigations resulting from a UOF should be

concurrent investigations with UOF closures.

56. A/Deputy Chief Cottrell advised that as of January 1, 2022, all misconduct cases will now be tracked under one "I" number and IAFD stopped using Force Internal Investigation "FII" numbers. Additionally, IAFD Command is now working on accurately tracking and concluding these cases concurrently with the UOF investigations.

57. EFIT recently discovered that IAFD personnel present on-scene for tactical activations were haphazardly collecting the Special Operations Division ("SOD") On-Scene Accountability Check-list. Prior to EFIT commencing operations, the EFIT Executive Team recommended certain protocols developed, in May 2021, with the assistance of Commander Bowie, Deputy Chief Lowe, Mr. Hurlock and Mr. Neier. This SOD On-Scene Accountability Check-list must be completed by the Tactical On-scene Sergeant and provided to IAFD/EFIT.

58. Specifically, this form lists everyone who is on scene, the force used and/or witnessed and must be collected prior to, or during the on-scene briefing. This is a roadmap to ensure that everyone is accounted for, admonished, photographed and all necessary protocols have been met and completed. Mr. Neier directed that all EFIT investigators now ensure that the SOD On-Scene Accountability Check-list is collected and uploaded into IAPro.

59. Additionally, EFIT recommended a procedural change and Special Order be issued regarding an SOD Tactical Activation when assistance is required by an outside law enforcement agency at the direction of the APD SOD Tactical Commander and the assisting agency utilizes force. A meeting was held with the appropriate APD parties,[14] and a Special Order is now pending review by the IMT and DOJ.

60. During the Public Hearing held before the Honorable James O. Browning, United States

---

[14] EFIT, SOD Command, IAFD Command, Deputy Chiefs and the Superintendent of Reform.

District Judge on December 16, 2021, Mr. Neier stated that "*We [EFIT] were also advised that officers utilizing force were never provided with a disposition letter after cases were closed by IAFD. I [Mr. Neier] found this unconscionable, that an Officer would not know whether his use of force was found in or out of policy*."

61. The letter notifying the Officers was developed and approved by APD in November 2021, however, due to numerous administrative delays the letter was never sent to Officers. On January 20, 2022, A/Deputy Chief Cottrell instructed IAFD Command to implement this practice effective January 24, 2022. As a result, APD Officers are now notified when force investigations are closed by IAFD/EFIT and the findings of same.

62. EFIT constantly monitors the UOF investigation case assignments to ensure that work is distributed evenly within IAFD. On average each Detective/Investigator has 4 UOF investigations. This issue is crucial to ensure that the applicable timelines are met. This issue becomes particularly acute as assignments are made between sworn officers and civilian investigators. EFIT made a number of recommendations to facilitate this process that IAFD accepted and implemented regarding callouts and case distribution.

63. EFIT is also working closely with IAFD A/Deputy Commander Evans on many issues and recommendations including, but not limited to, call outs. It is only though this collaborative approach between IAFD Command and EFIT, that the court-ordered mandate and eventual successful return of the IAFD investigatory function can revert back to the Department.

64. In addition, the EFIT Executive Team continues to meet weekly with APD, DOJ, the IM and other City officials. These meetings enhance the level of communication between these parties. EFIT firmly believes that communication is essential to fulfilling its court-ordered mandate.

65. Mr. Neier and Mr. Hurlock attended the January 31, 2022, meeting of the Civilian Police Oversight Agency ("CPOA") to continue to make representatives of EFIT's Executive Team available to the Agency.

66. In EFIT's First Quarterly report, the EFIT Executive Team reported that APD Officers remained on scene for extended periods of time. While EFIT appreciates officer safety, once a scene is secured, EFIT recommended, and APD instituted, a new practice where nonessential officers – including those officers that did not use or witness the force event - are now cleared and sent back on patrol.  This issue was addressed with Field Commanders when EFIT observes that less involved officers are on scene when arriving to conduct the UOF investigation. If EFIT sees that uninvolved officers are on scene it is documented, and EFIT notifies the field supervisor to release them into service. Since October 2021, EFIT kept statistics as to the amount of time "on-scene" during a UOF and EFIT is clearing the scenes in 54.20 minutes.

67. Since activating on July 16, 2021,[15] EFIT responded to and/or are investigating 258 UOF incidents[16], including 6 OISs. Of all those matters, 3 were classified as no UOF, 20 were classified as Level 1; 192 were classified as Level 2; and 43 were classified as a Level 3 UOF. The majority of the UOF callouts emanate from the Southeast Area Command.

68. From September 1, 2021, to January 6, 2022, EFIT identified 14 Level 2 and Level 3 UOF Cases that had ECW applications[17] (half were closed by EFIT/IAFD).[18] Three of the 7 closed

---

[15] Again, for statistical purposes, unless otherwise noted, the actual cut-off date is January 28, 2022.
[16] This takes into account all responses to UOF cases and any UOF case that is opened subsequent to a response.
[17] According to the CASA (Doc. 465, Para. 12) "*ECW application means the contact and delivery of an electrical impulse to a subject with an Electronic Control Weapon.*"
[18] With a combined total of 11 applications and 3 probable misses.

cases (5 total applications) 42.87 %, were determined to be out of APD policy. Of the 7 ECW

UOF investigations still under various stages of investigation and/or supervisory review,

misconduct investigations for the ECW applications have been opened on 3 of these cases.

EFIT recommends that this issue be reviewed in detail to determine the reason for the

significant ECW applications that are deemed to be out of policy.

69. The following chart captures call outs by time of day:[19]



70. As of January 27, 2022, IAFD/EFIT are averaging 55.90 days of investigative time per case.

While this is higher than previously reported, it is still under the 60-day approved time frame

mandated under the Stipulated Order. As EFIT noted in this report, IAFD

Detectives/Investigators on average have *only* four UOF investigations. EFIT identified three

main issues as to why these investigations are not completed in an expediently manner. First,

is a perceived lack of urgency, second, time management skills are deficient and third, the

lack of IAFD Supervisory involvement (discussed below).

---

[19] EFIT did not begin to record this information until September 2021.

71. IAFD Supervisors must proactively meet with Detectives/Investigators under their command to ensure investigations are completed as expeditiously as possible and are not consistently hitting the end of the 60-day timeline. Additionally, IAFD Command staff must ensure that the supervisor review is completed within 15 days from receipt of the completed UOF investigation from the Detectives/Investigators. This is a directive from A/Deputy Chief Cottrell as of January 21, 2022.

72. If IAFD Supervisors are ensuring that the Detectives/Supervisors under their command are completing an accurate investigative plan and are consistently meeting with these Detectives/Investigators, there is absolutely no reason that IAFD cannot shorten the current average of 24.51 days to a 15-day period as directed by A/Deputy Chief Cottrell.

73. It should be noted that EFIT is not advocating speed at the expense of a thorough and complete investigation. However, EFIT believes that it is possible to have a thorough and complete investigation in a timely manner.

74. When EFIT provides direct guidance during a UOF investigation the total completion time is averaging 88.86 days. EFIT believes that with proper supervision by IAFD these investigation and review timelines will decrease. EFIT is also concerned that the timely completion of investigations will *cease* upon transfer back to IAFD.

75. Each of EFIT's three teams responded to a total of 246 UOF callouts with IAFD. This break downs is as follows:  Team 1 – 88 callouts; Team 2 – 76 callouts; and Team 3 - 82 callouts. During this reporting period, EFIT/IAFD are averaging 5.38 UOF calls per week, this is significantly less than the last quarter reporting period.

76. The IAFD/EFIT response time to the scene averages 24.85 minutes and is well under the protocols established in the relevant documents that established EFIT.

77. EFIT and IAFD continue to conduct a weekly case status meeting and track cases at the 40, 60, 75, 85 and 90-day intervals. These meetings identify concerns regarding investigative obstacles, case prioritization and allocation of resources. Any concerns are addressed with IAFD Detectives/Supervisors immediately and if necessary, with IAFD command at the conclusion of the meeting. EFIT reviews cases at the 50-60 day and 85-90 day mark if a matter should be assumed due to timeline/investigative concerns.

78. Internally, EFIT continues to conduct Executive Team meetings every Monday to discuss the upcoming week and decide how to best address matters of concern. In turn, EFIT Lead Supervisor Mr. Bone conducts a follow-up meeting with the EFIT Supervisors to discuss concerns and relay information from the Executive Team meeting. The EFIT supervisors hold weekly meetings with their teams to convey direction from the Executive Team. The meetings also serve as a mechanism for information to flow up and down the EFIT chain of command.

79. In addition to these weekly staff meetings, the outgoing and incoming teams meet the Thursday night prior to a rotation change. This meeting allows the teams to discuss identified trends and aids in a smooth transition. Occasionally, an all-hands meeting is held to discuss critical events or significant changes in procedure.

80. EFIT investigators and supervisors continue to oversee all cases to include review of onsite work, interviews and reporting. EFIT is constantly evaluating IAFD detectives, investigators, supervisors and the IAFD Division. To that end, EFIT is conducting weekly meetings with APD Command Staff and many of the Specialized Units.

81. EFIT continues to utilize the evaluation rubric (previously approved by the IM and DOJ). This is a valuable tool to evaluate IAFD and relevant personnel pursuant to the Stipulated

Order (Para. 34). EFIT implemented this process for *each* investigation conducted by IAFD and EFIT commencing September 7, 2021.

82. The rubric was updated as of December 1, 2021. While it continues to contain approximately forty-five areas where individuals are evaluated, and closely tracks the Process Narrative, there are now seven enumerated categories where an individual must pass or be considered failing. When such occurs, the investigation is automatically considered to violate the Process Narrative. During this reporting period, as a result of issues regarding the investigative plan and failure to collect complete forms identified above, the EFIT Executive Team added another category that will automatically take a case out of compliance.

83. A Detective/Investigator must still attain a 95% proficiency rating for two consecutive terms before they are deemed proficient to conduct investigations outside of the presence of an EFIT investigator.

84. The EFIT Executive Team also established protocols to ensure that IAFD continues to advance the investigatory process as outlined above.

85. EFIT members observed and participated in a number of IAFD training sessions. Classes were held on a number of areas including, but not limited to, conducting interviews.

86. Training classes are presented with an emphasis on a review of the CASA, IAFD force trends and how IAFD is attempting to improve and incorporate the relevant provisions of the CASA. Training continues to incorporate group activities and encourages meaningful participation for all attendees. Specifically, training focuses on interview techniques: including administrative interviews; cognitive interviews; misconduct interviews; and *Garrity* and *Miranda* warnings - when interviewing officers, civilians, individuals involved in the UOF and the APOA.

**Upcoming Dates**

87. On May 16, 2022, EFIT will file with its third Quarterly Report with the Court.

88. DOJ and APD will file their respective evaluations of EFIT with the Court on or before February 16, 2022.

89. The EFIT contract requires that a decision be made by March 2022 to end the EFIT program contract by May 3, 2022.  If the EFIT contract is extended, a new end date must be established. As mentioned above, preliminary discussions are under way regarding this issue.

90. Once again, we thank the Court for the opportunity to submit this report. I, and my team, are available should the Court have any questions or need any additional information concerning EFIT or its attendant mandate.

<div style="margin-left:2em">

Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

</div>

Encls.

# EXHIBIT

# A

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 2 6 2021

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

  vs.

THE CITY OF ALBUQUERQUE,            No. CIV. 14-1025 JB\SMV

        Defendant,

  vs.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## STIPULATED ORDER ESTABLISHING AN
## EXTERNAL FORCE INVESTIGATION TEAM

This matter comes before the Court on the Joint Motion of Plaintiff United States of

America and Defendant City of Albuquerque (collectively, the Parties), with the concurrence of

the Independent Monitor, for entry of this Stipulated Order, which requires the City to establish,

on a temporary basis, an External Force Investigation Team (EFIT) to assist the Albuquerque

Police Department (APD) in conducting investigations of Level 2 and Level 3 uses of force by

APD officers, while also assisting APD with improving the quality of its own Internal Affairs

(IA) force investigations.  This Stipulated Order also requires the City to improve APD's IA

processes, increase the number APD IA force investigators, and provide additional training to

APD's IA force investigators.  The Parties intend the measures in this Stipulated Order to ensure

high-quality, timely investigations of Level 2 and Level 3 force incidents, and to address the

investigative deficiencies in APD's IA force investigations identified in the Independent



Monitor's Twelfth Report, Doc. 652. The Court approves this Stipulated Order and enters it as an Order of the Court.

## A. Establishment of the External Force Investigation Team

1. The City shall establish an EFIT to guide and direct IA force personnel, and when necessary, conduct investigations of Level 2 and Level 3 uses of force; provide written assessments of IA investigations carried out by IA force personnel; and provide written feedback on IA force personnel's work product. *See* Doc. 465-1 ¶ 48 (defining Level 2 and Level 3 uses of force).

2. For the purposes of this Order, "IA force personnel" includes IA force investigators and supervisors, other than IA Commanding Officers; "investigations of Level 2 and Level 3 uses of force" include both investigations and the review of investigations by supervisors; and "Independent Monitor" may include members of the Independent Monitoring Team.

3. EFIT shall be overseen by an Administrator. The City shall empower the EFIT Administrator to hire and retain the staff necessary to fulfill the requirements of this Order. It is anticipated that the EFIT Administrator will hire and retain a number of Investigators, as well as administrative support staff and Supervisors, as necessary to fulfill the duties under the EFIT Administrator's contract with the City. The EFIT Administrator shall ensure that a sufficient number of EFIT Investigators to meet the requirements of Paragraph 17 of this Order are physically present in Albuquerque and able to respond to the scene of Level 2 and Level 3 uses of force.

4. The EFIT Administrator shall have experience and expertise in investigating law enforcement misconduct, the constitutional standards for police officers' use of force, and systems reform litigation. The EFIT Supervisors and Investigators shall have experience

2

and expertise in investigating law enforcement misconduct and the constitutional

standards for police officers' use of force.  Neither the EFIT Administrator, Supervisors,

nor Investigators shall have any current or previous employment relationship or contract

for services with APD or the City.

5.   The City shall contract with the EFIT Administrator and fund the operations of EFIT in

accordance with its Public Purchases Ordinance, specifically, ROA 1994, § 5-5-20(U)

(exempting "[c]ontracts and expenditures in connection with court or administrative

proceedings, including, but not limited to, experts, mediators, interpreters, translators,

court reporters, process servers, witness fees, and printing and duplicating of materials

for filing" from competitive requirements of the article), or any other appropriate

provision of the Public Purchases Ordinance.

6.   The City shall widely publish a request for letters of interest for the EFIT Administrator

no later than March 1, 2021.

7.   The City shall accept input from the United States Department of Justice (DOJ) as the

City solicits EFIT Administrator candidates and on the candidate that the City ultimately

selects.  DOJ shall provide input within two (2) weeks of receiving information about the

candidates, unless otherwise agreed by the City and DOJ.

8.   The contract between the EFIT Administrator and the City shall include all standard

terms for City contracts.

9.   Within two weeks of the EFIT Administrator's selection, the City and DOJ shall file a

notice with the Court to inform the Court of the Administrator's identity and professional

background.

10. The City shall enter into a contract with an EFIT Administrator no later than May 3, 2021.

11. Within one month of the EFIT Administrator's selection, the City and the EFIT Administrator shall establish protocols for how APD IA and EFIT will coordinate on investigations of Level 2 and Level 3 uses of force.  At a minimum, the protocols will specify procedures for coordinating the work of IA force personnel and EFIT personnel; and how APD IA will transmit investigative files to EFIT.  The protocols will specify that EFIT shall not assist APD IA with investigations of Level 2 and Level 3 uses of force for which the investigatory deadlines established by the Court-Approved Settlement Agreement (CASA), APD policy, and the Collective Bargaining Agreement between the City and the Albuquerque Police Officers' Association (CBA) have expired at the time that EFIT begins providing services.  The protocols shall be submitted to DOJ and the Independent Monitor for review and comment pursuant to the procedures of Paragraphs 147 and 148 of the CASA.  Doc. 465-1 at 49-50.

**B. Staffing of IA Force Investigators; Technical Assistance**

12. The City shall ensure that APD maintains at least twenty-five (25) force investigators assigned to IA, unless and until APD can demonstrate by an internal staffing analysis that fewer investigators are necessary to timely investigate all Level 2 and Level 3 uses of force.

13. The Independent Monitor has provided and will continue to provide extensive technical to the City regarding IA processes, including the period before an EFIT administrator is selected.

14. Based on the technical assistance set forth in Paragraph 13, within two months of the entry of this Order, the City will submit a proposed written IA investigative process to DOJ and the Independent Monitor.  DOJ and the Independent Monitor will have 14 days to submit proposed revisions to the written IA investigative process.  The City will have seven days to agree to or reject any proposed revisions.  After the City, DOJ, and the Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court.  If the City, DOJ, and the Independent Monitor cannot reach an agreement on the proposed written IA investigative process, the City or DOJ may submit the matter to the Court for resolution.

15. After APD implements the written IA investigative process, the Independent Monitor will spend an additional week providing intensive technical assistance, in addition to the extensive technical assistance provided to date.

16. The City shall endeavor to negotiate longer investigative deadlines with the recognized exclusive representatives of relevant bargaining agreements.  Nothing in this order requires the City to violate the Labor Management Relations Ordinance or any collective bargaining agreement.

## C.  Investigations of Level 2 and Level 3 Uses of Force

17. From the date the EFIT contractor begins services and subject to EFIT staffing levels, APD and EFIT will both deploy investigators to the scene for every Level 2 and Level 3 use of force, unless APD deploys an APD IA investigator who has satisfied the requirements of Paragraph 35.

18. APD IA investigators shall act as the lead on-scene investigators for all Level 2 and Level 3 uses of force and shall be primarily responsible for conducting the on-scene

requirements of CASA Paragraphs 69(a), (b), (c), (d), and (e) (Doc. 465-1 at 27),

including but not limited to:

    a.  respond to the scene and consult with the on-scene supervisor to ensure that all personnel and subject(s) of use of force have been examined for injuries, that the use of force has been classified according to APD's classification procedures, that subject(s) have been interviewed for complaints of pain after advising the subject(s) of his or her rights, and that all officers and/or subject(s) have received medical attention, if applicable;

    b.  ensure that all evidence to establish material facts related to the use of force, including but not limited to audio and video recordings, photographs, and other documentation of injuries or the absence of injuries is collected;

    c.  ensure that a canvass for, and interview of, witnesses is conducted. In addition, witnesses should be encouraged to provide and sign a written statement in their own words;

    d.  ensure, consistent with applicable law, that all officers witnessing a Level 2 or Level 3 use of force by another officer provide a use of force narrative of the facts leading to the use of force;

    e.  provide a written admonishment to involved and witness officer(s) to the use of force that they are not to speak about the force incident with anyone until they are interviewed by [an] . . . investigator . . ..

19. The City shall transmit all documents, evidence, and investigative notes created or obtained by the on-scene investigator(s) to EFIT within 72 hours of the use of force, and

on an ongoing basis as additional evidence is provided.  EFIT will acknowledge receiving all forwarded investigative documents, evidence, and notes.

20. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23.  IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

21. EFIT shall have full, direct, and timely access to APD staff, employees, facilities, documents, data, and evidence to the extent necessary to fulfill the requirements of this Order.  EFIT shall coordinate with APD and its legal counsel to access personnel, facilities, and documents in a reasonable manner.  Should APD or its legal counsel decline to provide EFIT with access to documents or data based on privilege, APD shall inform EFIT, DOJ, and the Independent Monitor that it is withholding documents or data on this basis, and shall provide EFIT, DOJ, and the Independent Monitor with a log describing the documents or data and the basis of the privilege.

22. For each use of force investigation, EFIT shall evaluate the quality of IA force personnel's investigations and immediately notify APD and APD's legal counsel of any deficiencies or misconduct by IA force personnel related to their investigations.  APD shall promptly address these deficiencies or misconduct through corrective action or discipline, consistent with the CASA, APD policy, and the CBA.

23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 uses of force without the involvement of IA force personnel if either of the following conditions are met:

a. EFIT or APD has alleged that the IA force personnel assigned to the investigation has committed misconduct in the course of the investigation, and EFIT believes that the IA force personnel's continued participation in the investigation is likely to undermine the integrity of the investigation; or

b. EFIT or APD believes that deficiencies in the tactics or work product of the IA force personnel assigned to the investigation is likely to prevent the investigation from being completed within the deadlines provided for in the CASA, APD policy, and the CBA.

24. EFIT shall provide written notice to DOJ, APD, and the Independent Monitor when EFIT exercises its authority under Paragraph 23 to complete investigations of Level 2 and Level 3 uses of force without the involvement of IA force personnel. EFIT's notice shall explain in writing the grounds for its actions. If DOJ or the City believes that EFIT's actions were improper, they will seek to resolve the matter with EFIT and the other party. If DOJ, APD, and EFIT cannot reach a resolution, DOJ or the City may bring the matter before the Court for resolution.

25. APD and EFIT shall identify all misconduct that occurred during the course of each use of force incident and provide information about all misconduct that it identifies to APD, for the purposes of screening, assigning an internal affairs number, and tracking by APD IA. IA force personnel and EFIT personnel shall complete the investigation of all misconduct related to the use of force, and APD IA shall complete the investigation of all misconduct not related to the use of force.

26. EFIT shall complete its investigations within 60 days of receiving on-scene investigation materials from APD. At the conclusion of each investigation, IA force personnel and

EFIT personnel shall prepare a joint investigative report, consistent with the requirements of the CASA and APD policy. In the report, IA force personnel and EFIT personnel shall recommend a determination of whether each use of force complied with APD policy and state and federal law. For any use of force for which the investigation determines that an officer violated APD policy or state or federal law, IA force personnel and EFIT shall recommend appropriate corrective and/or disciplinary action, consistent with the CASA and APD policy.

27. An IA Commanding Officer shall review each investigative report and recommendation, and state in writing whether he or she concurs with the report and recommendation's findings of whether the use of force complied with policy; the recommended disposition of any misconduct allegations; and any recommended corrective and/or disciplinary action. The IA Commanding Officer shall explain any concurrence or non-concurrence in writing. Any recommended discipline resulting from an investigation will be reviewed by APD's executive staff consistent with APD policy.

**D. Role of the Independent Monitor with Regard to EFIT**

28. The Independent Monitor shall assist APD, DOJ, and the EFIT Administrator as the EFIT is established by, at a minimum:

    a.   orienting EFIT regarding CASA requirements and relevant CASA compliance deficiencies by APD;

    b.   providing technical assistance to EFIT regarding the Independent Monitor's compliance assessment methodology; expectations regarding EFIT's processes, work product, and records production; and other relevant matters, as the EFIT Administrator and the Independent Monitor deem appropriate; and

    c.   conducting informal assessments of force investigations completed with EFIT's involvement, particularly in the early stages of EFIT's implementation, to ensure that investigations completed with EFIT's involvement comply with CASA requirements regarding the quality of force investigations.  The Independent Monitor shall convey the outcome of these informal assessments to the EFIT Administrator, APD, and DOJ.

29. The City recognizes that the requirements of Paragraph 28 of this Order are beyond the scope of the Independent Monitor's duties under the CASA and the City's annual budgets for the Independent Monitor's services under the CASA.  The City shall therefore enter into separate compensation agreements with the Independent Monitor for the provision of the services required by Paragraph 28 of this Order, as described in Paragraph 334 of the CASA.

30. The Independent Monitor shall conduct formal compliance assessments of force investigations completed with EFIT's involvement as it would investigations completed by APD.  Except for the requirements of Paragraph 28 of this Order, this Order is not intended to, and does not, alter the responsibilities or authority of the Independent Monitor under the CASA.

**E.  Remedial Action Plan**

31. Within five months of the start date of the contract with EFIT, the City shall draft a remedial action plan for IA force investigations and submit it to DOJ, the Independent Monitor, and the EFIT Administrator.  The plan will identify concrete actions that the City and EFIT will take to improve the quality and timeliness of investigations of Level 2 and Level 3 uses of force by IA.  The Independent Monitor may recommend changes or

approve the plan consistent with the requirements of Paragraph 147 of the CASA. After the Independent Monitor approves of the plan, the City shall file it with the Court. If either the City, DOJ, or both disagree with the Monitor's recommendations, such party or parties may file the plan with the Court and move for its approval.

32. After filing a joint remedial action plan or after the Court approves the plan, and until the plan has been fully implemented, the City shall file brief reports to the Court, due every three months from the date the remedial action plan was filed, to inform the Court of progress in implementing the plan, any barriers to implementation that it has faced, and any modifications to the plan that may be necessary. The City's quarterly reports will include, at a minimum:

   a. a summary of the City's progress regarding the implementation of the written IA investigative process required by Paragraph 14, including a summary of the intensive technical assistance provided by the Independent Monitor;

   b. a summary of written evaluations by EFIT of the quality of IA force investigators' investigations during the previous quarter;

   c. a summary of written feedback by EFIT of IA force investigators' work product during the previous quarter;

   d. any formal training that IA force investigators received during the previous quarter;

   e. the number of force investigators assigned to IA and, if APD has not yet retained 25 force investigators, the steps that APD will take in the next quarter to achieve full staffing;

    f.   the number of investigations or reviews of investigations that EFIT completed without the involvement of IA force personnel, pursuant to Paragraph 23;

    g.   the number of IA force investigators conducting investigations independent of the EFIT, pursuant to Paragraph 35; and

    h.   for Level 2 and Level 3 force investigations:

        i.   the number of investigations initiated during the previous quarter;

        ii.   the number of investigations completed during the previous quarter;

        iii.   the average and mean number of days from initiation to completion for the investigations completed during the previous quarter;

        iv.   the number of investigations during the previous quarter that were completed within the deadlines required by the CASA, APD policy, and the CBA; and

        v.   the number of investigations during the previous quarter that were not completed within the deadlines required by the CASA, APD policy, and the CBA.

## F.  Training of IA Force Personnel

33. Subject to extensions necessary due to COVID-19-related restrictions and availability, and subject to the approval of the proposed contractor by the by the Monitoring Team and DOJ, within three months of the entry of this Order, APD shall identify and hire a contractor to who shall, in concert with APD's Academy, develop and provide training to IA force personnel on conducting high-quality and timely force investigations. This training shall be developed, approved, and provided consistent with APD policy and the CASA, and shall incorporate problem-solving, experiential adult-learning principles.

This training shall be subject to review and approval by the Independent Monitor and

DOJ.

## G. Returning Responsibility for Full Investigations of Level 2 and Level 3 Uses of Force to APD

34. An IA Commanding Officer and EFIT shall prepare written evaluations of each

investigator and supervisor who are assigned as IA force personnel on a quarterly basis.

These evaluations shall be considered confidential consistent with City Personnel Rules

and Regulations and state law, but shall be provided to the Monitor and DOJ upon

request and shall be kept confidential pursuant to the requirements of Paragraph 326 of

the CASA.  These evaluations shall include, at a minimum:

   a. a description of the nature and extent of all training provided to the IA force

   investigator or supervisor during the previous quarter;

   b. a summary of written assessments by EFIT of the quality of the IA force

   investigator's or supervisor's investigations;

   c. a summary of written feedback by EFIT on the IA force investigator's or

   supervisor's work product;

   d. a description of any allegations that the IA force investigator or supervisor

   committed misconduct related to their investigations during the previous quarter,

   including how the allegation was ultimately resolved;

   e. the number of the IA force investigator's or supervisor's investigations from the

   previous quarter in which the IA force investigator or supervisor failed to satisfy

   CASA requirements for investigations, compared to the number of investigations

   that the IA force investigator or supervisor conducted during the previous quarter;

13

f.  an evaluation of the IA force investigator's or supervisor's overall performance; and

g.  any actions that will be taken during the following quarter to improve the IA force investigator's or supervisor's performance.

35. APD may transfer responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to IA force personnel only after a quarterly evaluation demonstrates:

a.  that the IA force investigator or supervisor has received training on all aspects of Level 2 and Level 3 force investigations;

b.  that the IA force investigator or supervisor has regularly conducted high-quality investigations for at least two months, as demonstrated by EFIT's written assessments of the investigations;

c.  that the IA force investigator or supervisor regularly produces high-quality work product, as demonstrated by EFIT's written feedback;

d.  that the IA force investigator or supervisor has not committed misconduct during the course of investigations; and

e.  that 95% of the IA force investigator's or supervisor's investigations from the previous quarter satisfied all CASA requirements for investigations.

36. APD shall notify the EFIT Administrator in writing two weeks before APD intends to transfer sole responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to an IA force investigator or supervisor. The EFIT Administrator shall promptly notify the City, APD, DOJ, and the Independent Monitor in writing if the EFIT Administrator determines that the IA force investigator or supervisor does not meet

the qualifications identified in Paragraph 35 of this Order. The City, APD, DOJ, the

Independent Monitor, and the EFIT Administrator shall confer about any disagreements

between APD and the EFIT Administrator regarding the qualifications of any IA force

investigator or supervisor to take responsibility for conducing full investigations of Level

2 and Level 3 uses of force. The City and DOJ shall seek to resolve any such

disagreements. If the City and DOJ are unable to resolve such disagreements, they may

bring the matter before the Court for resolution.

37. The City and DOJ anticipate that APD will take responsibility for conducting full

investigations of Level 2 and Level 3 uses of force over time as individual IA force

investigators and supervisors meet the qualifications identified in Paragraph 35.

38. The City will endeavor to ensure that the responsibility for conducting full investigations

of Level 2 and Level 3 uses of force returns entirely to APD within nine (9) months of

EFIT beginning to provide services. Within six (6) months of the EFIT beginning to

provide services, the Parties will evaluate the progress of APD, to include considering

whether the EFIT is contributing to improvements in the progress of APD to meet the

requirements of the CASA. Based on this evaluation, the Parties will file a status report

with the Court within seven (7) months of the EFIT beginning to provide services,

indicating whether the services of the EFIT should extend beyond nine (9) months.

39. The City and DOJ agree to jointly ask the Court to terminate this Order once there are a

sufficient number of IA force personnel who have met the qualifications identified in

Paragraph 35 to complete all full investigations of Level 2 and Level 3 uses of force

within the timelines required by the CASA, APD policy, and the CBA.

40. Notwithstanding Paragraph 39 of this Order, if the Independent Monitor, after conducting the informal assessments required by Paragraph 28(c) of this Order, or the formal assessments required by the CASA, determines that EFIT regularly fails to conduct investigations consistent with CASA requirements and APD policy, the City, with the concurrence of DOJ, may seek to terminate its contract with EFIT, and the Parties may seek to modify this Order accordingly.

41. If the City and DOJ are unable to reach agreement about asking the Court to terminate this Order, either Party may seek to terminate this Order.  In the case of termination sought by the City, prior to filing a motion to terminate, the City agrees to notify DOJ in writing when the City has determined that there are grounds for termination of this Order. Thereafter, the City and DOJ shall promptly confer about the City's assertions.  If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ and/or the Independent Monitor may wish to undertake, the City and DOJ cannot resolve any disagreements, the City may file a motion to terminate this Order.  If the City moves for termination of this Order, DOJ will have 60 days after the receipt of the City's motion to object to the motion.  If DOJ does not object, the Court may grant the City's motion. If DOJ objects, the Court will hold a hearing on the motion, and the burden shall be on the City to demonstrate that it has fully complied with this Order and that the grounds for termination of this Order are supported by a preponderance of the evidence.

The Court recognizes and approves of the measures in the Stipulated Order as good faith efforts by the Parties to address investigative deficiencies in APD's force investigations, as identified by the Independent Monitor in his Twelfth Report, and therefore approves this Stipulated Order as an Order of the Court.

**THEREFORE,**

**IT IS ORDERED** that the Parties' Joint Motion for Entry of Stipulated Order

Establishing an External Force Investigation Team is approved, and the Stipulated Order is

hereby entered as an Order of the Court.

**IT IS FURTHER ORDERED** that that the Court will retain jurisdiction to enforce the

provisions of the Order.

HON. JAMES O. BROWNING
United States District Judge

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Elizabeth M. Martinez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  --and--

Paul Killebrew
  Special Counsel
Corey M. Sanders
  Trial Attorney
Stephen M. Ryals
  Trial Attorney
Patrick Kent
  Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Washington, D.C.

      *Attorneys for the United States*

17

Esteban A. Aguilar, Jr.
  City Attorney
Lindsay Van Meter
  Managing Assistant City Attorney
Robyn Rose
  Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico

*Attorneys for the City of Albuquerque*

# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

THE CITY OF ALBUQUERQUE,              No. CIV. 14-1025 JB\SMV

       Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

       Intervenor.

**NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT
INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS"**

COMES NOW, the City of Albuquerque, and hereby files the attached "Albuquerque Police Department Internal Affairs Force Division Current Processes, July 12, 2021." Exhibit 1.

Paragraph 14 of the Court's February 26, 2021, *Stipulated Order Establishing an External Force Investigation Team*, Document 720, (hereafter, *Stipulated Order*) requires the City to "submit a proposed written IA investigative process to the United States and Independent Monitor" within two months of entry of the Order. The City submitted the proposed investigative process to the Independent Monitor and United States on April 26, 2021, and thus complied with the Court's deadline Paragraph 14. Thereafter, the United States and Monitor considered the proposed investigative process, recommended revisions, and the City considered the recommendations and revised the process, as required by Paragraph 14.

1

Paragraph 14 of the *Stipulated Order* provides that "[a]fter the City, DOJ, and the Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court." Doc. 720 at 5. The Independent Monitor, United States, and City have now agreed on the attached *Albuquerque Police Department Internal Affairs Force Division Current Process*. Exhibit 1. The City therefore files it with the Court as required by Paragraph 14 of the *Stipulated Order*.

Respectfully submitted this 16th day of July, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY

*Lindsay Van Meter*
LINDSAY VAN METER
Managing Assistant City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
lvanmeter@cabq.gov
trigler@cabq.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*Lindsay Van Meter*
Lindsay Van Meter
Managing Assistant City Attorney
City of Albuquerque



## ALBUQUERQUE POLICE DEPARTMENT

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

## July 12, 2021

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases.  This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025.  This document reflects the current investigative process at IAFD.  The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

Exhibit 1

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

### ON-SCENE AND ADMINISTRATIVE - USE of FORCE

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene. If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
    a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
        i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
            1. If the individual invokes his/her rights, questions will not be asked.
        ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
            1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
        iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
            1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
    a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
    b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation. Additional witness officers may have to be identified later in the investigation as more evidence and information is available. For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses. If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement. The responding supervisor may obtain a verbal statement if the witness is willing to do so.

7. The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8. The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.   If needed, he/she will watch the witness officers' OBRD to classify properly.

   a. If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command.  If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9. The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident.  The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene.  IAFD will maintain a roster of three detectives on-call each week.  The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

    a. IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork.  If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they needs to complete it themselves:

   • Identify involved officers.
   • Identify witness officers.
   • Identify the individual in which force was used.
   • Identify civilian witnesses. If any civilian witnesses are on-scene, interview witnesses and encourage a written statement.  If a formal witness statement is required due to

circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.

- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
  - ○ If the individual invokes his/her rights, no questions will be asked.
  - ○ If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
    - ▪ This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours.  Note: this can occur at any point during the investigation.  *(See MISCONDUCT).*

17. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case.  Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email.  This can occur at any point during the investigation.

    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT).*

18. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion.  Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

19. Responding supervisor will complete the Supervisory On-Scene Investigation form.  This is turned in by the end of shift and emailed to the on-call IAFD detective.

20. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

21. The IAFD on-call detective will begin the Evaluative Data form.  This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team.  In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice.  The IAFD on-call detective will include the email in the case file for proof of 24-hour notification.  The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level

two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

22. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

23. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

24. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective. IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team. The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

25. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

   a. The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro. There are multiple entry types allowed in IAPro and Blue Team. Many of these entry types may be involved in one case and are linked together in IAPro. For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro. Also, the K-9 Unit enters all deployments into Blue Team. It should be noted that all K-9 deployments do not result in a K-9 bite. When there is a K-9 bite, the linked data will include a K-9 deployment entry and a use of force entry.

   Below are examples of entry types:
   Civilian Police Complaints (CPC) = CPC2021-000000
   Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
   K9 Utilization = K92021-000000
   Force = F2021-000000
   Award Nominations = AN2021-000000
   Vehicle Crashes = VC2021-000000
   Internal Investigations (IAPS misconduct) = I2021-000000
   Non-Force = NF2021-000000

26. The case will remain in IAPro until assigned to a case agent. Cases agent assignments shall be made expeditiously.

27. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team. The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data. The remainder of the case is in IAPro. The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

28. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702. IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

29. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.

**CASE AGENT – USE of FORCE**

30. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc. The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

31. If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. *(See MISCONDUCT).*

32. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment. The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

   a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

   b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

   c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

   d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

   e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

33. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

34. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

35. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

36. The case agent will upload all evidence into IAPro to include all forms and links.  At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.
37. The case agent will submit the case to the immediate supervisor for review in IAPro.
38. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.
39. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

**SERGEANT/LIEUTENANT**

40. The immediate supervisor will receive the case via IAPro.  If there is a force and a misconduct case, they may not be received at the same time.
41. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31).*
42. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT).*
43. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings. This includes watching OBRD videos.
44. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.
45. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.
46. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.
47. The immediate supervisor will complete the IAFD Chain of Command Review Form.  This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.
48. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.
49. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

50. The deputy commander or commander will receive the case in IAPro.
51. The deputy commander or commander will review bookmarked OBRD videos.
52. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.
53. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.

54. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.

55. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.

56. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.

57. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

58. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.

59. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.

60. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.

61. The IAFD administrative staff will close the case in IAPro.

62. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

63. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.

    a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.

        i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.

            1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.

            2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.

            3. IAFD will complete an IAR when an initial policy violation is identified.

                a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.

    b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

64. The misconduct case will follow the same investigative steps as a use of force investigation. Each case will be reviewed by the IAFD chain of command. The only difference is the misconduct interviews will involve compelled statements.

65. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action. The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review. The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

66. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

67. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.

    i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

68. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case. *(See SOP 3-46 Discipline System)*.

# EXHIBIT

# C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE CITY OF ALBUQUERQUE,               No. CIV. 14-1025 JB\SMV

        Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS Revised – September 8, 2021

COMES NOW Defendant City of Albuquerque and hereby files the attached

"Albuquerque Police Department Internal Affairs Force Division Current Processes, Revised –

September 8, 2021" (Revised Process Narrative). Exhibit 1.

On July 16, 2021, the City filed a Notice of Agreed "Albuquerque Police Department

Internal Affairs Force Division Current Process," which was attached as its Exhibit 1 a Process

Narrative dated July 12, 2021. *See* Doc. 839-1. By filing that Process Narrative, the City

complied with Paragraph 14 of the Court's February 26, 2021 *Stipulated Order Establishing an*

*External Force Investigation Team* (Stipulated Order), Doc. 720, which required the City to

"submit a proposed written IA investigative process to the United States and Independent

Monitor" within two months of entry of the Order and "[a]fter the City, DOJ, and the

Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court." Doc. 720 at 5.

After the IA Force Division (IAFD) and External Force Investigation Team (EFIT) began operations under the Process Narrative, Doc. 839-1, they identified a material disparity between the Process Narrative and applicable use of force policy regarding use of force reporting, namely, whether written statements should be required in all circumstances as stated in the Process Narrative, or whether recorded verbal statements could be permitted as allowed by policy. The Revised Process Narrative permits using recorded verbal statements under limited circumstances with supervisory approval. *See* Exhibit 1 at Paragraph 14.

The Revised Process Narrative also includes a process pursuant to which IAFD and EFIT may resolve on scene disagreements about the proper classification of the level of force to be investigated. *See* Exhibit 1 at Paragraph 16. This  process was not included in the original Process Narrative.

The Revised Process Narrative attached as Exhibit 1 hereto, which was prepared by the City was reviewed and approved by the United States and the Independent Monitor as required by Paragraph 14 of the Stipulated Order. The Independent Monitor, the United States, and the City have agreed on the attached Revised Process Narrative, which the City now files with the Court as required by Paragraph 14 of the Stipulated Order. Counsel for the Albuquerque Police Officers' Association was contacted regarding the attached Revised Process Narrative and approves to form.

Respectfully submitted this 27th day of September, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY


*Carlos F. Pacheco*
CARLOS F. PACHECO
Senior Managing City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
cpacheco@cabq.gov
trigler@cabq.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.


*Carlos F. Pacheco*
Carlos F. Pacheco
Senior Managing City Attorney
City of Albuquerque



## ALBUQUERQUE POLICE DEPARTMENT

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

## Revised - September 8, 2021

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases.  This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025.  This document reflects the current investigative process at IAFD.  The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

# INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

## ON-SCENE AND ADMINISTRATIVE - USE of FORCE

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene. If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
    a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
        i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
            1. If the individual invokes his/her rights, questions will not be asked.
        ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
            1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
        iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
            1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
    a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
    b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation. Additional witness officers may have to be identified later in the investigation as more evidence and information is available. For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses. If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement. The responding supervisor may obtain a verbal statement if the witness is willing to do so.

7.  The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8.  The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.   If needed, he/she will watch the witness officers' OBRD to classify properly.

    a.  If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command. If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9.  The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident. The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene. IAFD will maintain a roster of three detectives on-call each week. The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

    a.  IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork. On a very limited basis when IAFD and EFIT responded to UOF calls and when taking a written statement might not be feasible because of ongoing criminal conduct, the need to respond to other criminal conduct, or for officer safety reasons, and with written authorization of an IAFD Lieutenant or higher with the agreement by the EFIT Lead Supervisor or higher, a verbal statement can be recorded in lieu of the written use of force narrative. If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they need to complete it themselves:

    •   Identify involved officers.

- Identify witness officers.
- Identify the individual in which force was used.
- Identify civilian witnesses. If any civilian witnesses are on-scene, interview witnesses and encourage a written statement. If a formal witness statement is required due to circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.
- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
    - If the individual invokes his/her rights, no questions will be asked.
    - If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
        - This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the level of force cannot be agreed upon by the assigned IAFD Detective and EFIT Investigator, the on-call IAFD Supervisor will respond to the scene to assist in properly classifying the level of force. For any level 2 or level 3 use of force call-out, that is classified on scene as a level 1 use of force, the classification will be reviewed (within 24-hours) by the EFIT Lead Supervisor to determine whether the UOF was properly classified.

17. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours. Note: this can occur at any point during the investigation. *(See MISCONDUCT).*

18. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case. Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email. This can occur at any point during the investigation.
    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT).*

19. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion. Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

20. Responding supervisor will complete the Supervisory On-Scene Investigation form. This is turned in by the end of shift and emailed to the on-call IAFD detective.

21. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

22. The IAFD on-call detective will begin the Evaluative Data form. This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team. In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice. The IAFD on-call detective will include the email in the case file for proof of 24-hour notification. The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

23. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

24. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

25. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective. IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team. The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

26. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

    a. The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro. There are multiple entry types allowed in IAPro and Blue Team. Many of these entry types may be involved in one case and are linked together in IAPro. For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro. Also, the K-9 Unit enters all deployments into Blue Team. It should be noted that all K-9 deployments do not result in a K-9 bite. When there is a K-9 bite, the linked data will include a K-9 deployment entry and a use of force entry.

    Below are examples of entry types:
    Civilian Police Complaints (CPC) = CPC2021-000000
    Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
    K9 Utilization = K92021-000000
    Force = F2021-000000
    Award Nominations = AN2021-000000
    Vehicle Crashes = VC2021-000000
    Internal Investigations (IAPS misconduct) = I2021-000000
    Non-Force = NF2021-000000

27. The case will remain in IAPro until assigned to a case agent. Cases agent assignments shall be made expeditiously.

28. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team. The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data. The remainder of the case is in IAPro. The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

29. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702.   IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

30. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.


**CASE AGENT – USE of FORCE**

31. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc. The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

*32.* If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. *(See MISCONDUCT).*

33. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment. The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

    a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

    b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

    c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

    d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

    e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators, and IAFD supervisor, to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

34. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

35. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

36. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

37. The case agent will upload all evidence into IAPro to include all forms and links. At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.

38. The case agent will submit the case to the immediate supervisor for review in IAPro.

39. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.

40. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

**SERGEANT/LIEUTENANT**

41. The immediate supervisor will receive the case via IAPro. If there is a force and a misconduct case, they may not be received at the same time.

42. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31).*

43. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT).*

44. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings. This includes watching OBRD videos.

45. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.

46. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.

47. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.

48. The immediate supervisor will complete the IAFD Chain of Command Review Form. This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.

49. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.

50. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

51. The deputy commander or commander will receive the case in IAPro.
52. The deputy commander or commander will review bookmarked OBRD videos.
53. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.
54. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.
55. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.
56. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.
57. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.
58. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

59. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.
60. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.
61. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.
62. The IAFD administrative staff will close the case in IAPro.
63. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

64. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.
    a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.
        i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.
            1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.

      2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.

      3. IAFD will complete an IAR when an initial policy violation is identified.

            a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.

   b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

65. The misconduct case will follow the same investigative steps as a use of force investigation. Each case will be reviewed by the IAFD chain of command. The only difference is the misconduct interviews will involve compelled statements.

66. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action. The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review. The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

67. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

68. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.

        i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

69. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case. *(See SOP 3-46 Discipline System).*

# EXHIBT

# D

DLG ACCOUNTING ADVISORY SERVICES

7073 Edison Place, Palm Beach Gardens, FL 33418
Info@dlgcpa.com  |  201-841-1776  |  www.dlgcpa.com

TO:           United States Department of Justice
              Independent Monitor – Dr. James Ginger
              Acting Superintendent Eric Garcia - Albuquerque Police Department
              Deputy Chief Cori Lowe - Albuquerque Police Department
              Acting Deputy Chief Zak Cottrell- Albuquerque Police Department
              Acting Commander Richard Evans - Albuquerque Police Department
              Acting Deputy Commander Adam Anaya - Albuquerque Police Department

FROM:         EFIT Administrator Darryl S. Neier *DSN*
RE:           Interview Transition Back To IAFD
DATE:         January 20, 2022

While this is a subjective determination, once an IAFD Detective/Investigator is identified by EFIT as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will review the recommendation. Only the EFIT Administrator or in his absence the Deputy Administrator will make a final determination that the IAFD Detective/Investigator may conduct interviews without direct supervision, and the following process must be followed:

1. The EFIT Administrator and/or Deputy Administrator will notify the APD Superintendent, Deputy Chief, IAFD Division Commander, the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.
2. The EFIT Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.
3. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.
4. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in a phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief, IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.
5. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase.

Phase 1

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) no later than 24 hours prior to the interview with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.
2. The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours before the interview to discuss the impending interview.
3. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.


4. Within 24-hours [after the recorded interview is uploaded to Evidence.com] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.
5. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.
6. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

<u>Phase 2</u>

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.
2. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.
3. Within 24-hours [after the recorded interview is uploaded to Evidence.com,] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.
4. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.
5. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

<u>Phase 3</u>

1. The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.
2. The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.
3. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.
4. EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

# EXHIBIT

# E

*Memorandum*

| | To: | From: |
|---|---|---|
| **ALBUQUERQUE POLICE** | | |
| | **Subject:** **Employee Representative Admonition** IAFD# **2021-** | **Date:** |

You have been selected by_____and have voluntarily agreed to act as employee representative during the course of this official Internal Affairs Force Investigation. Your participation in this process is defined in the City of Albuquerque Police Officers Collective Bargaining Agreement Section 20:1.11**.**

As the employee representative, you are to participate in this interview as a representative only. At no time shall you interrupt the interview in any manner, including but not limited to: engaging in any form of verbal or non-verbal communication, making distracting noises, or hindering the flow or direction of the interview with the exception of objecting to a question, or you may ask for a question to be repeated or restated for clarification purposes.

At the conclusion of this interview, the employee or representative will be given a reasonable amount of time to make any additional comments and/or provide any case and fact specific information deemed necessary. You are further ordered not to discuss this investigation with anyone other than the Principal or the assigned investigators.

Failure to comply with the orders contained in this admonition shall result in your immediate removal from the interview room. If a representative is removed, the officer may be allowed up to 2 hours to obtain another representative before the interview is conducted.

The assigned investigators are:

I acknowledge that I have read and understand this memorandum.

_____          _____
Signature and Man Number          Date