# EXTERNAL FORCE INVESTIGATIVE TEAM'S (EFIT'S) THIRD Quarterly Report

## February 17, 2022 – April 22, 2022

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
May 16, 2022

TABLE OF CONTENTS

PAGE

TABLE OF EXHIBITS ........................................................................................................2

INTRODUCTION ..............................................................................................................3

EXECUTIVE SUMMARY....................................................................................................5

EFIT'S MANDATE............................................................................................................7

ACCOMPLISHMENTS TO DATE ......................................................................................13

CONCERNS TO DATE.....................................................................................................24

    SUPERVISION...........................................................................................................24

    ALBUQUERQUE POLICE OFFICERS ASSOCIATION .........................................................29

    CITY LEGAL .............................................................................................................30

    SUSTAINABILITY .......................................................................................................32

AMENDED STIPULATED ORDER AND BACKLOG FORCE CASES ("EFIT 2") ........................35

UPCOMING DATES ........................................................................................................37

TABLE OF EXHIBITS

PAGE

EXHIBIT A-STIPULATED ORDER OF ESTABLISHING AN EXTERNAL FORCE
INVESTIGATIVE TEAM...................................................................................3

EXHIBIT B- AMENDED STIPULATED ORDER OF ESTABLISHING AN
EXTERNAL FORCE INVESTIGATIVE TEAM ........................................................3

EXHIBIT C- APD PROCESS NARRATIVE JULY 12, 2021................................8

EXHIBIT D- APD PROCESS NARRATIVE- SEPTEMBER 8, 2021.........................8

EXHIBIT E- INTERVIEW TRANSITION POLICY ............................................13

EXHIBIT F- REVISED EMPLOYEE REPRESENTATIVE ADMONITION ...............30

EXHIBIT G- METHODOLOGY FOR BACKLOG CASES ....................................36

EXHIBIT H- CITY'S RESPONSE TO PETITION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE
RELIEF METHODOLOGY FOR BACKLOG CASES ...........................................30

**Introduction**

1. Please accept this third quarterly report of the External Force Investigative Team ("EFIT").[1]

**Executive Summary**

1. On February 26, 2021, the United States District Court for the District of New Mexico (the "Court") granted a joint motion filed by the United States Department of Justice ("DOJ") and the City of Albuquerque ("City") with the concurrence of the Independent Monitor ("IM") by entering a Stipulated Order Establishing an External Force Investigation Team ("Stipulated Order") in the case *United States v. City of Albuquerque,* No. CIV. 14-1024 JB\SMV. (Doc. 720) (See Ex. A). The purpose of the joint motion was to stay a contempt of court proceeding. The Stipulated Order established the External Force Investigation Team ("EFIT") and its attendant mandate. On May 2, 2021, a preliminary contract was signed between DLG, Accounting and Advisory Services ("DLG, LLC") and Albuquerque Police Department ("APD"). On June 23, 2021, the full contract was signed by DLG, LLC and the City, enabling EFIT to commence full operations on July 16, 2021.

2. On March 21, 2022, the Court granted a joint motion filed by DOJ and the City with the concurrence of the IM by entering an Amended Stipulated Order Establishing an External Force Investigation Team ("Amended Stipulated Order") (Doc. 906) (See Ex. B). The Amended Stipulated Order modifies and supersedes the Stipulated Order previously entered by the Court ( Doc. 720).

---

[1] While the Stipulated Order Establishing EFIT (Doc. 720), and its attendant mandate *did not require* EFIT to file quarterly reports, in the interest of transparency, the EFIT Executive Team decided to prepare and file quarterly reports. In addition, for the sake of the timing and completeness of this report, the data contained herein covers February 17, 2022, to April 22, 2022, inclusive. EFIT will file its next quarterly report on August 16, 2022.

3. The Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways. First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part ("Backlog Force Cases"), in violation of the Court Approved Settlement Agreement ("CASA") (Doc. 465-1). Second, the Amended Stipulated Order extends by 24 months, from May 2022 through May 2024, the period during which the City shall continue to engage EFIT to assist IAFD to investigate new Level 2 and Level 3 use-of-force incidents ("New Force Cases").

4. In April 2022, the EFIT Executive Team was informed that the City of Albuquerque extended and funded EFIT's contract up to, and including, June 30, 2022. While the contracts related to the Amended Stipulated Order are presented to City Council for ratification. To date, the City has not filed a Notice with the Court regarding the status of funding to effectuate the Amended EFIT Stipulated Order.

5. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond to all call outs within one hour of notification. All Use of Force ("UOF") investigations must be completed within 60 days with an additional 30-day supervisory review period for a total of 90 days from start to finish. Pursuant to the Amended Stipulated Order, EFIT must conduct joint investigations with APD Internal Affairs Force Division ("IAFD") of all Level 2 and Level 3 UOF incidents – this includes all Tactical Deployments where UOF is utilized. EFIT must also assist APD with training concerning the UOF. The EFIT Executive Team worked with APD IAFD to establish a detailed IA Investigative Process Narrative[2] that governs the response protocols to any Level 2 and 3 UOF cases.[3] These documents are the basis for EFIT to evaluate IAFD.

6. As of this report, 21 out of the 229 (9.17%) of the UOF investigations closed by EFIT/IAFD were found to be not within the APD UOF policies (this is a decrease from the 10.63% reported in the previous quarterly report). Most significantly, 102 out of the 229 (44.54%) of the UOF investigations closed by EFIT/IAFD were found to be out of compliance when evaluated against the Process Narrative utilized to assess investigations (this is an increase from 34.4% reported in the previous quarterly report). This development must be an obvious concern for IAFD.

7. EFIT's next quarterly report, which is to be filed with the Court on August 16, 2022, will continue to contain an analysis of these issues based on the findings of both APD UOF compliance and case investigative compliance.

---

[2] As required by Paragraph 14 of the Stipulated Order (Doc. 720 at 5), the Process Narrative was filed with the Court on July 12, 2021 (Doc. 839).
[3] A revised Process Narrative was filed on September 27, 2021 (Doc. 862).

8.  While this quarterly report addresses EFIT's qualitative findings up to and including, May 16, 2022, our statistical findings are as of April 22, 2022. However, the report provides a comprehensive review of EFIT's experience as EFIT approaches its one-year anniversary.

9.  As of April 22, 2022, EFIT and IAFD responded to and/or opened investigations on 367[4] UOF incidents to include 11 Officer Involved Shootings ("OIS") and made 3 referrals to the Multi-Agency Task Force ("MATF")[5] for potential criminal violations. EFIT/IAFD completed 229 investigations within the 90-day time period outlined in the Amended Stipulated Order[6]. EFIT assumed 10 UOF investigations pursuant to Paragraph 23(b) of the Amended Stipulated Order as those investigations became close to violating the stipulated timelines.[7]

10. EFIT noted several major accomplishments in this reporting period, which are detailed below. (See Paras. 31-61 below).

11. EFIT also noted several major concerns in this reporting period, which can be classified into two major categories of supervision and sustainability. Both are detailed below. (See Paras. 62-93 below).

---

[4] Two UOF investigations were transferred to the Internal Affairs Professional Standards Division ("IAPS") for both UOF and misconduct investigations. Other than responding to the scene, these investigations are not included in EFIT's statistics.

[5] The MATF i*s an investigatory task force composed of different law enforcement agencies and prosecuting offices as established by a Memorandum of Agreement. The purpose of the MATF is to conduct criminal investigations related to critical incidents involving OISs, uses of force where criminal allegations are made, and in-custody deaths* (APD SOP 1-67).

[6] Two of the closed cases involved an Officer who was involved in both cases and severely injured during the second of the two cases, an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days and are not included in the statistical findings related to length of investigation or days to close the investigation.

[7] EFIT assumed no cases during this recording reporting period.

12. It is EFIT's intention that this report will provide a better understanding of the successes, recommendations and the failures of APD, particularly IAFD. It is EFIT's goal to teach, mentor and professionalize IAFD so that when the assignment is completed, EFIT leaves the City with a sustainable division that investigates UOF incidents in a timely and professional manner.[8]

13. Pursuant to the Amended Stipulated Order the City drafted a contract for EFIT to establish a secondary team ("EFIT 2") to investigate and address the 667 backlog cases. While the EFIT 2 contact is pending approval with the City, the EFIT Executive Team has been diligently interviewing and securing the personnel and prepared the methodology by which the EFIT Backlog team will address the backlog cases pursuant to various paragraphs of the Amended Stipulated Order (Doc. 906). (Paras. 94-99 below).

**EFIT's Mandate**

14. The Stipulated Order established the EFIT and its mandate. Currently, EFIT's contract will expire on May 3, 2022. After much work, EFIT understands, based on discussions with the City and to comply with the Amended Stipulated Order that this contract is extended and funded up to and including June 30, 2022. The full contract was presented to the City Council by way of a Letter of Introduction on April 29, 2022. The EFIT 1 and EFIT 2 contracts were voted on by the City Council on May 16, 2022 and extended EFIT's engagements up to, and including, May 2024.

---

[8] For extensive background information on the EFIT Executive and Investigatory Teams please see EFIT's First Quarterly Report dated October 16, 2021 (Doc. 873).

15. As stated previously, EFIT derives its authority and jurisdiction from the Stipulated Order (Doc. 720) superseded by the Amended Stipulated Order (Doc. 906), Process Narratives (July 12, 2021, revised September 8, 2021) filed with the Court on July 16, 2021 (Doc. 839) and September 27, 2021 (Doc. 862), respectively (Exs. C & D).

16. Pursuant to the relevant documents, EFIT and IAFD are on call 24/7 and must respond within one hour of notification. EFIT and IAFD conduct joint investigations. All UOF investigations must be completed within 60 days and a 30-day supervisory review period for a total of 90 days from start to finish. Provisions are in place if an extension of these timelines is needed for extenuating circumstances, such as an inability to interview an Officer sustaining serious injuries due to an OIS.[9]

---

[9] On October 20, 2021, a Notice was filed with the Court (Doc. 864) due to an OIS delaying the completion of two 60-day investigations.

17. The Amended Stipulated Order (Doc. 906 at Para. 12), and the Stipulated Order before it (Doc. 720 at Para. 12), establishes the staffing levels for the APD IAFD. As of August 28, 2021, IAFD met with the staffing requirement that IAFD must be staffed with 25 Detectives/Investigators.[10] Currently IAFD[11] has 14 civilian Investigators[12] and 13 Detectives, however in recent discussions with IAFD Commanders it revealed that by the end of August 2022,  IAFD may lose several of the most experienced personnel due to retirements, promotions, Officers requesting back to field divisions and specialized  field units. Chief Medina authorized the staffing of IAFD to be increased to 31 personnel in anticipation of the expected loss.

18. While these staffing levels must be maintained under the Amended Stipulated Court Order (Doc. 906 at Para. 12), EFIT continues to express concern that these numbers tend to fluctuate and retention of both sworn and civilian personnel is a constant concern as IAFD moves extremely close to falling below required staffing levels.

19. Specifically, EFIT continues to express concern regarding the retention of Investigators and Detectives in IAFD. Mr. Neier and Mr. Hurlock met several times with APD's Executives and counsel for the City regarding this issue. (See Paras. 85-93 below).

---

[10] For the purpose of this report, the term "Detective" equates to sworn APD personnel and "Investigator" is used for civilians conducting UOF investigations.

[11] As of May 2, 2022.

[12] Training of IAFD takes approximately 3 to 4 weeks for sworn personnel to over 2 months for civilians resulting in operational effectiveness (currently 5 are in training). It should be noted that sustainability of staffing is one of the main concerns of EFIT and will continue to be addressed in future reports to the Court.

20. APD's Remedial Action Plan (Doc. 899) for IAFD was filed with the Court on February 15, 2022, and the parties' joint status report on EFIT filed with the Court on February 16, 2022, (Doc. 901) recognizing that EFIT is contributing to improvements in the IAFD process and recommending an extension of EFIT. Ultimately, the goal is for EFIT to return responsibility back to APD for UOF investigations.

21. As stated previously, the EFIT Executive Team worked to establish a detailed Process Narrative that governs the response protocols to Level 2 and 3 UOF cases. EFIT continues to review this document to ensure that it is serving the interests of the assignment and has made modifications, as necessary. Any modification is reviewed by the City Attorney's Office, DOJ and the IM. A revised Process Narrative was filed with the Court on September 27, 2021, (Doc. 862) and serves as the working procedure that IAFD/EFIT follows and the basis for EFIT to evaluate IAFD.

22. Once filed, the Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators.  In addition, the EFIT Executive Team conducted a class as to how the Detectives/Investigators would be evaluated by EFIT. The entire IAFD attended the class. This document establishes specific timelines and procedures to be followed for every Level 2 and Level 3 UOF investigation.

23. Cases that are fully investigated by IAFD/EFIT are reviewed by the EFIT Team Supervisor, then forwarded to the IAFD Sergeant[13] for their review.  The IAFD Sergeant determines if the force is within APD policy, then forwards for an IAFD Command[14] review. It is after the Command level review that the EFIT Executive Team reviews the UOF determination and recommends closing a case when appropriate.

24. Provisions were written into the Amended Stipulated Order should EFIT need to assume full responsibility of an investigation or disagree with IAFD's investigative findings.   In this third reporting period EFIT has not assumed any UOF investigations  pursuant to Paragraph 23(b) of the Amended Stipulated Order.

25. As stated previously and reported in our Second Quarterly Report (Doc. 900), on January 10, 2022, EFIT assumed responsibility pursuant to Paragraphs 23(b) and 24 of the Stipulated Order (Doc. 720) to finish a UOF investigation. Specifically, EFIT was informed that an IAFD Detective experienced an equipment malfunction and lost the evaluative narrative. Given past poor communications issues and because the investigation was in serious jeopardy of becoming time-barred, EFIT assumed the investigation. This case was completed by EFIT, went through the Supervisor and Command review, and was closed in 87 days on February 6, 2022. EFIT continues to recommend increased supervision going forward to prevent these issues from occurring in the future.

---

[13] As of May 2, 2022, IAFD Supervisory Staff includes - 1 Lieutenant and 1 Acting Lieutenant, 4 Sergeants and 2 Acting Sergeants
[14] As of May 2, 2022, IAFD Command Staff includes - 1 Acting Commander, 2 Deputy Commanders and 2 Acting Deputy Commanders.

26. Finally, the Process Narrative also outlines the process IAFD and EFIT need to take if a UOF might subject an APD Officer to criminal liability. (Doc. 862 at Para. 18.) EFIT/IAFD made one referral involving two Officers to the MATF on March 29, 2022, due to the type of force utilized. While MATF will investigate for criminal liability IAFD/EFIT will continue the UOF investigation and IAFD will review the case for any misconduct by the Officers.

27. Closed UOF cases are presented to the Force Review Board ("FRB").[15] All Level 3 cases, tactical deployments, OIS, and 10 % of Level 2 cases are presented at FRB. Initially, EFIT had no role in the FRB process other than as an observer. However, as the cases that EFIT jointly investigated with IAFD are now at the FRB level. Mr. Neier and Mr. Hurlock believed that EFIT should have a more active role in the FRB. To that end, Mr. Neier and Mr. Hurlock met with APD, DOJ and the IM team to discuss the parameters for such participation to occur.

28. As a result, all parties agreed that EFIT may take a more active role in presentations made to the FRB. For those cases where EFIT assumed responsibility for the investigation, Mr. Neier or Mr. Hurlock will make the full presentation to the FRB. As no cases which EFIT assumed were selected for presentation to the FRB, Messrs. Neier and Hurlock have not made any such presentations as of the date of this report, but have addressed questions that arose at the FRB for those cases where EFIT has worked with IAFD to close.

---

[15] FRB - It is the policy of the Albuquerque Police Department (Department) *to conduct timely, comprehensive, and reliable reviews of (a) Level 2 and Level 3 use of force investigations to ensure the findings are supported by a preponderance of the evidence, and (b) tactical activations in order to analyze and critique specialized response protocols* (APD SOP 2-58).

29. Moreover, for all FRB proceedings at least one member of the EFIT Executive Team always attends the meetings. In addition, EFIT Team Supervisors now also attend FRB proceedings. As of this report, 37 UOF investigations where EFIT/IAFD conducted a joint investigation were presented to the FRB (28 Level 3 UOF and 9 Level 2 UOF).

30. Mr. Hurlock and Mr. Neier continue to meet once a week with Associate Monitors Phil Coyne and William Toms, the IMT's subject matter experts on force. In addition, Mr. Bone (EFIT) and Mr. Necelis (IMT) have also joined these meetings. While technical assistance is required under the Amended Stipulated Order, these meetings are extremely helpful for any contemplated process changes. This relationship between EFIT and the IMT is set forth more fully in Paragraph 27 of the Amended Stipulated Order.

**Accomplishments To Date**

31. The EFIT Executive Team is pleased to report that, pursuant to the established protocols[16] (See Ex. E) to begin to transition IAFD Detective/Investigators to conduct interviews without EFIT's direct supervision, Nine IAFD personnel are progressing through the Phases of the system that will ultimately lead to an IAFD Detective/Investigators conducting UOF investigations without direct supervision of EFIT.

32. Again, once a Detective/Investigator is identified by an EFIT Investigator, Supervisor or Executive Team Member, as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will make a determination that the IAFD Detective/Investigator may conduct interviews and the following process will be followed:

---

[16] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

33. The EFIT Administrator and/or Deputy Administrator will notify APD Superintendent of Reform ("Superintendent"), IAFD Division Commander and Deputy Chief(s) (within the chain of command), along with the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

34. The Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

35. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

36. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in the phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief(s) and IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

37. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase:

**Phase 1 (10 Interviews)**

   a. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) no later than 24 hours with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.

   b. The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours before the interview to discuss the impending interview.

c.  After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

d.  Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.

e.  This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.

f.  Should the EFIT Executive Team deem that a second interview be necessary, an EFIT Investigator shall be involved in the interview.

## Phase 2 (10 Interviews)

a.  The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.

b.  After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

c.  Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.

d.  This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.

e. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT Investigator shall be involved in the interview.

**Phase 3 (2 Interviews)**

a. The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.

b. The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.

c. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

d. EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

**Phase 4 (On Scene 3 Responses)**

a. The EFIT Executive Team will confirm that the cases the Detective/Investigator are assigned to are 95% compliant with the Process Narrative. This along with the results of the prior phases will be a determining factor that the Detective/Investigator and are ready to enter Phase 4.

b. IAFD on-call Supervisor will be contacted by the EFIT On-Call Supervisor of the need to respond to a Level 2 or Level 3 UOF. Except for an OIS[17], the IAFD Detective/Investigator will respond without the direct oversight of EFIT and comply with all provisions of the Process Narrative.

---

[17] EFIT will continue to respond to an OIS until further notice.

c.  The EFIT On-Call Supervisor will assign the case to an EFIT Investigator who will review Blue Team and the OBRD of the IAFD Detective/Investigator within 24 hours of the Blue Team entry. The EFIT Investigator will prepare a critique to be forwarded through the chain of command to the EFIT Executive Team.

d.  Upon successful completion of three UOF responses, the EFIT Executive Team will communicate to the IAFD Commander that the IAFD Detective/Investigator can conduct UOF Investigations (other than an OIS) without direct EFIT supervision.

e.  EFIT will continue to track the case through the Weekly Case Status meetings and if no concerns are raised, the case will be reviewed by the EFIT Executive Team prior to the UOF Investigation closed by IAFD.

38. As of the reporting date for this report, the EFIT Executive Team identified nine Detective(s)/Investigator(s) from IAFD that advanced into the Interview Transition Process. 5 IAFD Detective/Investigators are currently in Phase 1 and 4 IAFD Detective/Investigator are currently in Phase 2.

39. As of this report, the aforementioned Detectives/Investigators have completed 74 interviews in Phase 1 and 6 interviews in Phase 2. EFIT's overall evaluation of these interviews has been very positive to date. The members of IAFD admitted into this process are complying with the Interview Transition Policy and EFIT Investigators report a positive interaction.

40. The EFIT Executive Team continues to meet with all Division Field Commanders and many of the specialized unit Commanders, to explain the EFIT process, its qualifications and what their Officers could expect upon EFIT responding to UOF incidents. Additionally, it was important for Commanders to freely communicate concerns they are experiencing with the UOF investigative process. The EFIT Executive Team continues field visits and various Division briefings concerning EFIT, specifically any changes or modifications to the Process Narrative and relevant protocols.

41. As of the writing of this report, and the one-year anniversary of the establishment of EFIT (May 2021), EFIT is pleased to share that it accomplished several changes to the IAFD investigatory process and established a certain level of professionalism within the IAFD team. While certain of IAFD's accomplishments were reported in the first two EFIT Quarterly Reports filed with the Court, (Docs. 873, 900), it is important to reflect on the on-going process. The EFIT Executive Team addressed a number of significant issues facing APD. Indeed, the current Process Narrative and associated protocols were revised on more than one occasion as the result of issues and violations of the original version. Any proposed changes are circulated to APD legal, DOJ and the IM. Comments are received and when appropriate incorporated into the Narrative and/or discussed with the relevant entities.

42. When EFIT began, IAFD was conducting interviews somewhat haphazardly in random locations. Detectives were asking leading questions and did not allow witnesses to state what happened by using open-ended questions. Essential critical listening skills were not present. There were interruptions of interviewees during their statements.

43. EFIT stressed the avoidance of leading questions, and the Detectives/Investigators mostly adhere to this standard with minor exceptions that are addressed directly with the IAFD Detectives/Investigators. EFIT will continue to identify Detectives/Investigators that are eligible to enter the Interview Transition Process,

44. IAFD Detectives/Investigators and the Officers under UOF investigations are now dressed appropriately and professionally. Investigative reports are improving with each EFIT review and IAFD is now presented with high quality reports for the Supervisory, Command and FRB review.

45. EFIT believed that it was imperative that the tone and tenor – in accordance with the seriousness of these investigations – was established at the outset. That professionalism continues to develop as EFIT moves forward.

46. Additionally, EFIT recommended a procedural change and Special Order be issued regarding SOD Tactical Activations where the APD SOD Tactical Commander requests assistance from an outside law enforcement agency and the assisting agency utilizes force. A meeting was held with the APD, DOJ, and the IMT, and a Special Order was approved.

47. EFIT constantly monitors the UOF investigation case assignments to ensure that work is distributed evenly within IAFD. This issue is crucial to ensuring that the applicable timelines are met. This issue becomes particularly acute as assignments are made between Officers and civilian Investigators. EFIT made a number of recommendations that facilitated this process that were accepted by IAFD regarding callouts and case distribution. When EFIT observes that this process was not followed, any concerns are communicated to IAFD Command to be discussed and/or rectified.

48. Indeed, EFIT also worked closely with APD on many issues including, but not limited to, call outs. It is only through this collaborative approach that EFIT can fulfill its Court ordered mandate and eventually return the IAFD investigatory function back to the Department.

49. In addition, the EFIT Executive Team continues to meet weekly with APD, DOJ, the IM and other City officials. These meetings enhance the level of communication between these parties. EFIT firmly believes that communication is essential to fulfilling its Court ordered mandate.

50. Mr. Neier and Mr. Hurlock attended the January 31, 2022, meeting of the Civilian Police Oversight Agency ("CPOA") in an effort to make representatives of EFIT's Executive Team available to the Agency.

51. On March 30, 2022, Messrs. Neier and Hurlock met with Rachel Biggs (Healthcare for the Homeless) and Maxwell Kaufman (Disability Rights, New Mexico) of the Mental Health Response Advisory Committee ("MHRAC") along with DOJ to discuss the work that EFIT has undertaken. Again, the EFIT Executive Team believes that transparency with all concerned groups is essential for EFIT to fulfill its Court ordered mandate.

52. On April 12, 2022, Messrs. Neier and Hurlock met with Peter Cubra and Lawrence Kronen, counsel for the McClendon subclass *amici*. Again, Messrs. Neier and Hurlock briefed the attorneys on the work that EFIT has undertaken and relevant issues in an effort to provide as much transparency as possible in the process.

53. In the first Quarterly Report the EFIT Executive Team reported that APD Officers remained on scene for extended periods of time. While EFIT appreciates Officer safety, once a scene is secured, EFIT recommended, and APD instituted, a new practice where nonessential Officers – including those Officers that did not use or witness the force event are now cleared and sent back on patrol.  This issue was addressed with Field Commanders. Once on the scene EFIT/IAFD are briefed by a field supervisor, if EFIT/IAFD observe Officers not involved in the UOF or is a witness to the UOF the supervisor is instructed to have to Officer(s) return to service. EFIT/IAFD are fully clearing these UOF scenes on an average of 54 minutes.

54. As of this report, EFIT/IAFD responded to, and are investigating, a total of 367 UOF incidents. These investigations are completed on an average of 54.31 days.[18] In addition, 229 UOF investigations were closed, averaging a total of 88.01[19] days for closure. While this currently meets the applicable timelines under the relevant documents, it will need to be addressed going forward to lower this number. Supervisor reviews still average 22.87 days however, EFIT observed slight improvement from February 1, 2022, through April 22, 2022[20]. The average supervisor review during this time period is now 17.41 days. Of the UOF cases closed (229), 21 UOF cases were out of APD Policy (9.17%) and 102 of the 229 investigations (44.54%) failed to comply with the Process Narrative. These levels remain extremely high and EFIT repeatedly meets with APD to address them.[21]

55. During this reporting period APD experienced 5 OIS incidents. EFIT identified numerous issues regarding these cases. Specifically, during this most recent quarter, EFIT observed and/or discovered numerous issues with the way IAFD is handling OIS investigations

---

[18] IAFD Detective/Investigators are assigned varying numbers of active UOF investigations. This is an issue that EFIT has raised numerous times. In addition, EFIT recently has been made aware that certain IAFD Supervisors may be requesting Detectives/Investigators to "sit on" completed investigations so not to make others in IAFD "make look bad." This conduct is inexcusable if EFIT is to complete its Court ordered mandate.

[19] Two of the closed cases involved an Officer who was involved in both cases and was severely injured during the second case, an OIS case. These two cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days and are not included in the statistical findings related to length of investigation or days to close the investigation.

[20] After a directive from A/Deputy Superintendent Cottrell that Supervisory reviews are to be completed within 15 days; IAFD Supervisors are working toward this requirement.

[21] It is important to note that two investigations were assumed by APD's IAPS. One investigation was completed in 124 days and the second 93 days. These are not to be included in those investigations total pursuant to the Court ordered mandate for EFIT/IAFD.

56. March 14-15, 2022, Mr. Neier, along with representatives of APD, the City Attorney's Office, IMT and DOJ participated in a meeting with Mr. Thor Morrison of Aegis Solutions LLC ("Aegis"). Aegis is developing an Internal Affairs Training program for IAFD pursuant to a contract signed on February 11, 2022, pursuant to the express requirements of the Stipulated Order[22] Par. 33 (Doc. 720). Subsequent meetings were also held during the week of April 11, 2022 (Aegis site visit), and the EFIT Executive Team will provide any addition assistance as requested.

57. EFIT and IAFD continue to conduct a weekly case status meeting and track cases at all intervals. These meetings identify concerns regarding investigative obstacles, case prioritization and allocation of resources. The concerns are addressed with Detectives/Investigators and supervisors immediately and if necessary, with IAFD Command at the conclusion of the meeting.

58. EFIT Investigators and Supervisors continue to oversee all cases to include review of onsite work, interviews and reporting. EFIT is constantly evaluating IAFD Detectives, Investigators, Supervisors and the IAFD Division. To that end, EFIT is conducting weekly meetings with APD Command Staff, Field Commands and many of the Specialized Units.

59. EFIT continues to utilize the evaluation rubric (previously approved by the IM and DOJ). This is a valuable tool to evaluate IAFD and relevant personnel pursuant to the Amended Stipulated Order Para. 34. EFIT implemented this process for *each* investigation conducted by IAFD and EFIT commencing September 7, 2021.

---

[22] As of March 21, 2022, Amended Stipulated Order.

60. The rubric was updated as of December 1, 2021. While it continues to contain approximately forty-five areas where IAFD personnel are evaluated, and closely tracks the Process Narrative, there are now eight enumerated categories where an individual must pass or be considered failing. The EFIT Executive Team added another category that will automatically take a case out of compliance as a result of IAFD's failure to address systemic issues, such as the lack of an investigative plan or failing to collect available evidence.

61. A Detective/Investigator must still attain a 95% proficiency rating for two consecutive terms before they are deemed proficient to conduct interviews outside of the presence of an EFIT Investigator.

**Concerns To Date**

62. The most troubling concerns of EFIT continue to be with the IAFD supervisors and the sustainability of IAFD's recruitment:

**Supervision**

63. EFIT has serious concerns with the manner in which IAFD first line supervisors are handling daily supervision of the Detectives/Investigators in the Division. EFIT believes that this is clearly a first line supervisory issue that, if left uncorrected, will continue to render investigations out of compliance with the Process Narrative (Doc. 862).

64. EFIT observed improvement when the IAFD Detective(s)/Investigator(s) respond to the scene of a UOF when conducting a thorough investigation and are now finally collecting the proper documentation. However, a nationally accepted standard investigative technique and requirement of the Process Narrative (Doc. 862, Par. 33) is that within three business days of the UOF, the IAFD Supervisor and IAFD Detective/Investigator along with EFITs input[23], must develop an Investigative Plan.

65. *The case agent and the immediate supervisor will meet to discuss and **draft the investigative plan** (with **input from the EFIT** investigator) within three business days of the case assignment. The investigative plan is **designed to create benchmarks** throughout the investigative process to ensure cases are completed within timelines, to **keep supervisors informed**, and to **identify any issues as early in the investigation** as possible. **This includes** the **reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up.** An **integral part** of the investigative plan is to involve the immediate supervisor earlier in the investigative process **to allow for closer supervision and collaboration** between the supervisor and the detective."[24]*  (emphasis added).

66. These investigative plans are not only best practices throughout the country, they insure proper first line supervision of Detectives/Investigators, enabling the supervisors to know the case and status, and guiding the Detectives/Investigators through the UOF investigations along with immediate problem solving.  An added benefit to the first line supervisor is that, once the case is presented for review, they already know the case and can conduct their review in an expedient manner.

---

[23] IAFD viewed the Investigative Plan as merely a "to do list" and has ignored EFIT's repeated suggestions.

[24] Process Narrative (Doc. 862).

67. IAFD Supervisors should proactively meet weekly with Detectives/Investigators under their command to review and update the investigative plans and to ensure these investigations are completed as expeditiously as possible and are not consistently at the end of the 60-day timeline. The Supervisors reluctantly agreed to do this and implementation has been slow (See Paras. 69 c below).

68. After months of the EFIT Executive Team offering assistance to IAFD to address consistent violations of the Process Narrative without response, on March 17, 2022, Mr. Neier and Mr. Hurlock provided training to all IAFD Supervisors and IAFD Command Staff as to how to compile a sufficient investigative plan. (Exhibit XX).

69. Approximately a month after providing the investigative plan training, 29 current UOF investigative plans were reviewed by the EFIT Executive Team:

   a. 13.79 % - Were not filed in IAPro;

   b. 37.93% - Investigative plan was deemed insufficient by EFIT; and

   c. 62.06 % - Failure to conduct follow-up weekly meetings and/or failure to update Investigative Plans in IAPro.[25]

70. The aforementioned concerns, will undoubtably take the UOF investigations (no matter what the outcome of APD policy decisions) out of compliance with the Process Narrative. This will have the attendant consequence of prolonging EFIT's tenure to fulfill its Court ordered mandate. These findings were discussed with IAFD Command.

---

[25] This totals more than 100% as certain of the deficiencies were in multiple categories.

71. As discussed, over the last 9-10 months, supervision at all levels is severely lacking. Indeed, supervisors, at all levels, must take responsibility for compliance. IAFD is making strides with the daily mentoring of EFIT at the Detective/Investigator levels. However, IAFD Command must focus on all levels of supervision to ensure that the IAFD reaches a 95% compliance level as required by the Amended Stipulated Order. At this point, a great deal must be done if IAFD is to ever attain this goal. (See Report *Infra.*).

72. Until recently, during this quarter IAFD Command ignored EFIT's recommendations on how staffing of high level UOF investigations (OIS and/or cases that have the potential of criminality and/or egregious misconduct) must be conducted. EFIT's concerns range from IAFD assigning inexperienced Detectives/Investigators, not following through with EFIT reporting recommendations,[26] missing deadlines set by IAFD Command and/or EFIT, assigning Detective/Investigators who are scheduled to resign or go on leave.[27] These staffing decisions seriously hamper IAFD's ability to ensure through and timely investigations.

---

[26] *"[R]eview of reporting by IAFD Detective(s)/Investigator(s) are both substantive and grammatical, expecting that our comments are incorporated into the final product. Evidently the report did not incorporate many of the changes outlined by EFIT. As a result, the FRB has been provided, what EFIT believes is a substandard unprofessional document and review."* Memorandum issued by Mr. Neier on April 4, 2022.

[27] To address these concerns, EFIT overstaffed OIS investigations and the EFIT Executive Team has direct involvement.

73. In addition, the EFIT Executive Team noted several instances where EFIT Investigators provided guidance and expertise to IAFD regarding OIS investigations, and such guidance was completely ignored by IAFD personnel. On one such OIS investigation, the EFIT Executive Team assigned two seasoned EFIT Investigator with extensive homicide and OIS experience. At the same time, the EFIT Executive Team suggested that IAFD Command reassign the IAFD Supervisor for lack of supervision and the Investigator with no OIS experience, stating that "she had to learn some time." EFIT Executive Team then suggested that a second IAFD investigator be assigned with her in an observation compacity, this suggestion was also ignored. IAFD Command ultimately reassigned the supervision of the UOF investigation. As a result, EFIT essentially assumed primary interview responsibilities for this investigation. Moreover, considerable time was unnecessarily expended as the Investigator missed several deadlines and submitted extra material *after* the report was issued late.

74. EFIT now documents delivery of all materials to the IAFD Detective/Investigator and their supervisor to ensure the guidance is understood and that corrections are made to IAFD reports, or discussions held with the IAFD Detective/Investigator (as to their reasoning why they believe the modifications should not be made). Notifications are also now routed through to IAPro to the Detective/Investigator to ensure consistency and that timelines are consistent. Through an agreement between EFIT and IAFD.

75. While EFIT is limited in directing IAFD, EFIT reserves the right under the Stipulated Order, (Doc. 720 Para. 23.b), and now the Amended Stipulated Order (Doc. 904, Para. 22.b) to complete investigations and supervisory/command review if *"believes that deficiencies in the tactics or work product of IAFD personnel assigned to the investigation is likely to prevent the investigation from being completed within the deadlines provided for in the CASA, APD policy, and the CBA."*

76. It should be noted that EFIT is not advocating speed at the expense of a thorough and complete investigation. However, EFIT believes that it is possible to have a thorough and complete investigation in a timely manner.  When EFIT provides direct guidance during a UOF investigation the total completion time is averaging 88.01 days. EFIT believes that with proper supervision by IAFD these investigation and review timelines will decrease. EFIT is concerned that the timely completion of investigations will cease upon transfer back to IAFD for the reasons articulated thus far throughout this report.

### Albuquerque Police Officers Association

77. EFIT reported on the prior actions of the APOA where the union's representatives interrupted interviews in clear contravention of Collective Bargaining Agreement ("CBA"). Since EFIT's inception and after the initial meetings with the APOA, EFIT is not experiencing the number of issues originally observed. However, on occasion these issues unfortunately occur with representatives interrupting interviews or acting in an unprofessional manner.

78. When such conduct was identified, Mr. Neier and Mr. Hurlock immediately requested a meeting, and met with, counsel for the APOA to rectify the situation. In addition, the EFIT Executive Team requested that the Employee Representation Admonition form (standard employee representative observer form that IAFD must use when conducting interviews) become an official document of APD. On April 12, 2022, APD advised EFIT that this form was renamed "Sworn Employee Representative Admonition Form" and is now an official APD document (PD 1142) (See Ex. F). The EFIT Executive Team will continue to monitor the APOA involvement in interviews and immediately discuss any issue with APOA counsel reserving all rights afforded to under the relevant documents to rectify the situation, if not satisfied with the outcome.

79. EFIT was informed that the APOA recently filed an injunction with the City of Albuquerque Labor Relations Management Board concerning an OIS investigation. The APOA's application was heard on Monday, May 16, 2022. If successful, APOA's application would have seriously impacted the timetables set forth in the relevant documents regarding UOF Investigations. However, the City's Legal Department successfully defeated the APOA's application and the application was denied in its totality. (See Ex. H).

**<u>City Legal</u>**

80. EFIT identified certain issues regarding the City and its legal department. These issues include but are not limited to: the ability to secure the contracts and funding for the continuation of EFIT's current contract and the EFIT backlog team; issuing opinion letters regarding the interpretation of certain labor agreements; and clarification of the legal protocols concerning OIS events.

81. On March 21, 2022, the United States District Judge James O. Browning signed the Amended Stipulated Order that included a Statement of Work ("SOW") for the backlog cases (Doc. 906). Mr. Neier and Mr. Hurlock reviewed and approved final contract revisions for the extension of EFIT 1 and the establishment of EFIT 2 ("Backlog Team") matters.  City legal advised Mr. Neier on March 31, 2022, that the final contracts were currently under review by the ABQ Fiscal Department and EFIT should quickly receive the contracts for execution. However, on April 5, 2022, Messrs. Neier and Hurlock and DOJ were informed that these contracts could not be approved without the full City Council's vote.

82. Since the EFIT contract expires on May 1, 2022, City Legal proposed a two month "stop gap" appropriation that does not require City Council approval, with the intention of introducing a Letter of Introduction and EFIT 1 and EFIT 2 (backlog) contracts. Mr. Neier signed the "stop gap" contract on April 14, 2022, however, in the interest of full disclosure, EFIT has received a fully executed contract as of this report.

83. EFIT and DOJ was informed on April 15, 2022, that both the full EFIT 1 contract and EFIT 2 (backlog investigations) contracts were approved by the Mayor's Office and Letters of Introduction were filed with the City Council on or about April 29, 2022, with the City Council to take final action on May 16, 2022.

84. The Letters of Introduction were filed with the City Council on April 29, 2022 (EC-22-76 and EC-22-77), with the expectation of final action by City Council on May 16, 2022.

**Sustainability**

85. Sustainability of trained IAFD Detectives/Investigators (apart from violations of the Process Narrative) continue to be one of the EFIT Executive Team's main concern related to the eventual transfer of responsibility from EFIT to APD for conducting full investigations of Level 2 and Level 3 UOFs as individual IAFD Detectives/Investigators and Supervisors meet the qualifications identified in Paragraph 34 of the Amended Stipulated Order. (Doc. 906).

86. The APOA contract enables sworn personnel to "bid" based in part with seniority to various Divisions. EFIT witnessed the lack of sworn personnel wanting to transfer into IAFD requiring APD to assign the bottom of the bid list[28] to IAFD to comply with the staffing levels of the Amended Stipulated Order.

87. At present little is done to keep sworn personnel in IAFD. This is especially so when promotions, requests for transfer of senior sworn personnel occur and a bid is announced. The loss of these trained personnel can be devastating. It is anticipated that by August 2022, approximately 40% of the sworn personnel that are in the transition process will no longer be assigned to IAFD.

88.  With EFIT's concern, APD is committed to over staffing the civilians in IAFD, bringing the Division to a level of 31 from the current numbers. We commend APD in that regard however a well-functioning Internal Affairs Division needs both sworn and civilian personnel.

---

[28] Certain Officers have less than one year of active duty with APD, once transferred to IAFD they are afforded "Detective" status.

89. While the City has made changes regarding incentives for IAFD personnel, EFIT believes more needs to be done.  While EFIT anticipated that this would be addressed further during the recent collective bargaining agreement negotiation process, minimal changes were made in this regard in the contact signed by the City and the APOA on December 30, 2021, by providing the same incentive pay as field Officers receive for staying within the same area command as those staying in IAFD or IAPS. Pursuant to section 3.1.10 of the APOA contract "*An officer will receive $1,300.00 for each year served for the entire year in the same Area Command or the IA Division, up to and capped at four years of continuous service or $5,200.00 per year.*"  As mentioned prior, we commend Chief Medina in providing this incentive to the civilian Investigators, however more incentives are needed to make IAFD a sought-after Division at APD with an environment that has motivated teams and provides the best equipment, training, and promotional opportunities to Officers.

90. The EFIT Administrator and Deputy Administrator met with APD Legal Counsel Carlos Pacheco and APD Executives numerous times to discuss EFIT's concerns. While the APOA contract clearly governs and incentivizes sworn members of IAFD, we have made recommendations regarding civilians. These range from providing them with the same incentive pay as the sworn Officers (discussed in above),[29] addressing the disparate on-call pay provided to Detectives and not Investigators (8 hours are provided to Detectives for every week on call), providing official APD professional clothing that will identify themselves not only to APD Officers but the public at large, vehicles and equipment.

---

[29] Chief Medina informed the EFIT Executive Team that this was approved by the City.

91. Additionally, a recommendation both civilian Investigators and Detectives be required to reimburse the City for training costs if they choose to leave IAFD within a proscribed period of time to be determined. The training and mentoring are a substantial cost via EFIT, and other external sources paid by the City.

92. The five new civilian Investigators that APD hired are continuing their onboarding and started responding to on-scene UOF incidents the end of April 29, 2022.

93. While IAFD is responding as required by the Amended Stipulated Order (within one hour), namely, within 42.43 minutes, its average response time is longer than EFIT's average response time, 28.17 minutes.[30] It is also longer than the previous the new civilian training time of 30.55 minutes. The assigned IAFD Detective/Investigator is required to pick up trainees on their way to a callout. This difference in time is due to the lack of assigned vehicles for trainees as a potential cause for this newfound delay. This has the attendant consequence of increasing the amount of time an Officer who utilized force must remain on scene.

---

[30] It is important to note that, at this point, EFIT does not commence the on-scene investigation until IAFD arrives. However, EFIT is evaluating changes to this process going forward.

**Amended Stipulated Order and Backlog Force Cases ("EFIT 2")**

94. As previously noted, the Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways.  First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate the Backlog Force Cases, namely, all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part, in violation of the CASA, (Doc. 465-1).  Exhibit 1: Scope of Work to Remedy the Backlog Force Cases ("SOW") to the Amended Stipulated Order (Doc. 906, Ex. 1 at 1-2, Para. 6) provides:

95. *"The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases.  The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it.  The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor."*

96. With assistance from APD's Accountability Bureau, the EFIT Executive Team  obtained an Excel spreadsheet containing the data of all the Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906). Additionally, the EFIT Executive Team worked with members of the Accountability Bureau and agreed that APD will develop a dashboard that is similar to the current IAFD case tracking and management dashboard, stratifying the data readability that will be distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboard will be developed by June 1, 2022, by APD's new Data Analytics Division and tested by the EFIT Executive Team prior to use.

97. The EFIT Executive Team conducted a number of meetings with APD's Accountability Bureau, including the Compliance and Oversight Division and the newly created Data Analytics Division who will also assist calculating normative thresholds for UOF to identify the Officer(s) who utilize UOF over the expected incident rate and are thus considered High Incident Officers.

98. On April 18, 2022, a draft methodology was sent to the APD, IMT and DOJ for comment and a final Backlog Force Case Investigations Methodology was finalized on April 27, 2022 (Ex. G).

99. The EFIT Executive Team conducted interviews for the Backlog Force Case Investigations Team ("EFIT 2")[31] and are currently awaiting for the City to execute and fund the contract to start the onboarding process and commence the investigations of 667 Backlog Force

---

[31] Two teams of one supervisor and three Investigators along with the EFIT Executive and Support Teams.

Cases.[32]

**<u>Upcoming Dates</u>**

100.  On August 16, 2022, EFIT will file its fourth Quarterly Report with the Court.

101.  Once again, we thank the Court for the opportunity to submit this report. I, and my team, are available should the Court have any questions or need any additional information concerning EFIT or its attendant mandate.

Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

Encls.

---

[32] Not including the 12 cases investigated by IAFD which EFIT-2 will review pursuant to the Amended Stipulated Order.