No. CIV 14-1825

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

TABLE OF CONTENTS

| SUBJECT | TAB |
|---|---|
| Executive Summary / Involved People | M |
| Issues of Concern | Me |
| Investigative Report | N |
| Recommended Findings and Conclusions | O |
| Supervisor's Recommendation Form | P |
| Timeline | Q |
| Lt. Edison's Telestaff entries (April 2021) | R |
| Evidence | S |

- Copy of BlueTeam Entry
- Copy of Commander Armijo's memorandum
- Copy of extension request memorandum
- Copy of Lt. Edison's April 2021 payroll timesheet
- Copy of Lt. Edison's call summary for April 1-24 2021
- Copy of Lt. Edison's April 2021 cellular phone log
- Copy of Det. Jones's April 2021 cellular phone log & Telestaff
- Copy of Det. Eichel's April 2021 cellular phone log & Telestaff
- Copy of Lt. Edison's text messages to Commander Armijo
- Copy of Lt. Edison's emails to Commander Armijo ref. OT (April 24-26)
- Copy of DC Smathers' text messages to Commander Armijo (April 23-28)
- Copy of Lt. Edison's timesheet correction request (April 21, 2021)
- Copy of Lt. Edison's emails to Payroll ref. self-audit

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

Copy of Lt. Edison's email (Jan. 21, 2021)

Copy of Special Order 20-85 and 20-26

Misc. Documentation

- Copy of Subject of Investigation letters

- Copy of additional documents provided by Lt. Edison

- Copy of Purchasing Card Policies and Procedures Manual

- Copy of Travel Card Policies and Procedures Manual

- Copy of Lt. Edison's card agreement

- Copy of incident involving Sarah Smoot (APD case #210027289)

Recorded Interviews

- IA transcribed interview with   Commander Elizabeth Armijo   U

- IA transcribed interview with   Margaret Baldonado   V

- IA transcribed interview with   DC Michael Smathers   W

- IA transcribed interview with   Lt. Jim Edison   X

- CD with audio recording of interviews   Y



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

In conclusion, the investigation determined that Lt. Edison claimed 2-hours of "call-out" overtime for voicemails that he received regarding COVID-19 and he then forwarded the voicemail to COVID-19 case managers to investigate the cases. The investigation found that Lt. Edison often claimed "call-out" overtime that did not fall under COVID-19 or the definitions of a "call-out" per the APOA CBA or per Special Order 20-85.

The investigation determined Cmdr. Armijo told Deputy Chief (DC) Smathers she had issues of concern with Lt. Edison's Telestaff. Despite this, DC Smathers signed off on Lt. Edison's Telestaff without proper review into the items Lt. Edison was claiming on his timesheet.

In conclusion, Lt. Edison violated Department policy 1-1-4B2 and 1-1-4D19a. These issues of concern were SUSTAINED. DC Smathers violated Department policy 1-1-4B6b and 3-14-4A15. These issues of concern were SUSTAINED.

Detective Anastacio Zamora
IA Professional Standards

Page 4 of 44

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

## EXECUTIVE SUMMARY

On April 27, 2021, Commander (Cmdr.) Elizabeth Armijo completed a Blue Team entry alleging potential misconduct involving Lieutenant (Lt.) Jim Edison.

1. Detective Anastacio Zamora, was assigned this Internal Affairs administrative investigation on May 3, 2021.1 began my investigation by reviewing all the evidence submitted in BlueTeam and I reviewed Cmdr. Armijo's memorandum.

The allegations were set out as follows:

Effective Saturday, April 24, 2021, Lt. Edison was transferred to the Homeland Security Division reporting to Cmdr. Armijo. On Friday, April 23, 2021 (the day prior to Lt. Edison's transfer to Cmdr. Armijo's supervision) Deputy Chief (DC) Smathers asked Cmdr. Armijo (via text message) to ensure Lt. Edison's transfer was completed and for Cmdr. Armijo to complete his payroll approval (April 23 was the pay period ending date).

On April 23, 2021, Cmdr. Armijo logged into Telestaff and checked, for the first time, to see if she had access to Lt. Edison's Telestaff entries and discovered that she did have access. Cmdr. Armijo observed that Lt. Edison had claimed a large number of overtime hours for the pay period. The Telestaff entries she looked over were the entries from April 9, 2021 thru April 23, 2021.

While Cmdr. Armijo reviewed Lt. Edison's Telestaff entries, she immediately became concerned with Lt. Edison's overtime entries and she did not feel comfortable approving the submitted overtime. Her concerns involved Lt. Edison claiming several hours of "call-out" overtime, nearly every day, when the justification for "call-out" overtime did not meet the requirement per Special Order 20-85 or the Albuquerque Police Officers Association (APOA) collective bargaining agreement (CBA). Much of this overtime should have been claimed as "administrative overtime." Lt. Edison was also claiming 8 hours of comp time for being "on-call" every week despite having at least three officers, a police service aide, and one civilian assigned to assist him with his duties.

After viewing the Lt. Edison's Telestaff entries for the pay period, Cmdr. Armijo had concerns with nearly every single overtime entry and she did not feel there was sufficient justification for what Lt. Edison was claiming. On April 23, 2021, Cmdr. Armijo informed Deputy Chief (DC) Smathers of her concerns with Lt. Edison's Telestaff overtime entries and she told him she was uncomfortable approving the overtime for the pay period. DC Smathers signed off on and approved Lt. Edison's overtime, without proper review into the overtime that Lt. Edison claimed on his timesheet.

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

**INVOLVED PERSONS**

| INVOLVEMENT | NAME | PHONE NUMBER | REASON IF NOT INTERVIEWED | INTERVIEWED |
|---|---|---|---|---|
| Complainant | Cmdr. Elizabeth Armijo | 505-768-2200 | | N/A |
| Subject | DC Michael Smathers | 505-768-2200 | | N/A |
| Subject | Lt. Jim Edison | 505-768-2200 | | N/A |



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

## ISSUES OF CONCERN

### Lieutenant Jim Edison

1.  Did Lieutenant Edison comply with Albuquerque Police Department General Order 1-1-4B2 [1-7]? General Order 1-1-4B2 states:

    *1-1 PERSONNEL CODE OF CONDUCT 1-1-4 Rules of Conduct*
    *B. Compliance with Laws, Rules, and Regulations*

    *2. Personnel will obey all federal, state, and local laws, all applicable rules and regulations. (Effective 11/14/17) [1-7]*

2.  Did Lieutenant Edison comply with Albuquerque Police Department General Order 1-1-4D19a [1-7]? General Order 1-1-4D19a states:

    *1-1 PERSONNEL CODE OF CONDUCT*
    *1-1-4 Rules of Conduct D. On-Duty Conduct*

    *19. Personnel will not alter, misrepresent, or make any false statement in any verbal or written report or in any other written document that has been completed in the course of their employment. (Effective 11/14/17) [1-7]*

    *a. Written documents include, but are not limited to reports, citations, public records or documents, public vouchers, overtime slips, leave requests, personnel records, affidavits, or any other written instrument completed by Department personnel.*

**In addition to those S.O.P. violations already identified, supervisors will review the Issues of concern and identify any other possible S.O.P. infractions.**

Page 6 of 44

ALBUQUERQUE POLICE DEPARTMENT
GENERAL ORDERS
SOP 1-1    Effective: 11/14/18 Review Due: 11/14/18 Replaces: 12/01/16

# 1-1 PERSONNEL CODE OF CONDUCT



## Index

1-    1-1 - Purpose

1-1-2-Policy 1-1-3-Definitions

1-1-4 - Rules of Conduct

   A.   Training

   B.   Compliance with Laws, Rules, and Regulations

   C.   Reporting for Duty

   D.   On-Duty Conduct

   E.   On and Off-Duty Conduct

   F.   Department Property

   G.   Special Consideration, Privilege, and Professional Courtesy

   H.   Use of Department-Issued Telephones

   I.   Outside Employment

   J.   Alcoholic Beverages and Controlled Substances

   K.   Gratuities and Conduct

   L.   Documenting Officer and Employee Conduct

## 1-1-1 Purpose

The purpose of this policy is to establish a Code of Conduct for all Department personnel to follow.

## 1-1-2 Policy

The Department's mission is to assure a safe and secure community by developing a police force that upholds the Constitution and protects the rights of all citizens, and through the shared responsibility of police personnel, government leaders, and the overall community. The Department fairly enforces the laws and protects the lives, property, and safety of Albuquerque citizens, victims, offenders, and its law enforcement officers. In partnership with the community, the Department engages in constitutional policing to promote public safety, and it enforces all laws to reduce crime.

Department personnel, whether sworn or nonsworn, are expected to follow a prescribed code of conduct and to act responsibly whether on or off duty. The Department will hold all personnel accountable for their actions, particularly when those actions reflect adversely on the Department or result in an appearance of impropriety or conflict of interest that may violate the public trust and erode the public's confidence in the Department.

ALBUQUERQUE POLICE DEPARTMENT
GENERAL ORDERS
SOP 1-1        Effective: 11/14/17 Review Due: 11/14/18 Replaces: 12/01/16

visiting log the name and phone number of the APD personnel they will visit and *their time of entry. All visitors must return the visitor's pass to Security upon departure.*

# 1-1-4 Rules of Conduct

A.  Training

The Department will provide training on the rules of conduct, as detailed in this policy, to all cadets during basic training at the Police Academy. Subsequently, an annual one-hour in-service training will be provided to all officers concerning the rules of conduct. This refresher will be scheduled as an annual in-service training and tracked through the Department's Advanced Training Academy's record maintenance system.



*E7|* B. Compliance with Laws, Rules, and Regulations

1.  All sworn personnel, Prisoner Transport Officers, and Police Service Aides are required to take an oath of office.

2.  Personnel will obey all federal, state, and local laws, all applicable rules and regulations. Personnel will also enforce those lawful directives while protecting the rights of individuals, as established in the Constitution of the United States and the Constitution of the State of New Mexico. Adherence includes, but is not limited to, obeying all felony, misdemeanor, and traffic laws, applicable local ordinances, as well as all lawfully-issued civil orders of any jurisdiction. Each quarter, the Department will compile and review violation reports to identify trends.

*71*     3.  Personnel shall maintain all state certification requirements and standards established by the New Mexico State Law Enforcement Academy. Permanent revocation of certification will be prima facie evidence of a violation of this policy. Upon receiving notification that an employee's certification has been suspended or revoked by the New Mexico Law Enforcement Academy, sworn personnel must notify the appropriate deputy chief or major in writing through their chain of command *within 24 hours of* said notification.

*~4~1*   4.  Personnel who are served with a Court Order of Protection will immediately provide a copy of that Order of Protection through the chain of command to the assistant chief.

5.  Personnel will not commit any act that constitutes a violation of the rules, regulations, directives, or orders of the Department, to include, but not limited to, those outlined in this policy. Personnel will at all times be held accountable for their personal policy and procedure violations and must report any such violations to their chain of command.

6.  Personnel will perform any act required by the City's or Department's rules, regulations, directives, orders, or settlement agreement.

-4-



**S4il**

7. Both on duty and off duty, personnel will conduct themselves in a manner that reflects favorably on the Department. Conduct unbecoming an officer or employee of APD includes the following:

   a. Conduct that could bring disrepute, shame, dishonor, disgrace, or embarrassment to the Department.

   b. Conduct that interferes with or compromises the efficiency of personnel and employees.

   c. Conduct that impairs the operation or efficiency of the Department.

~H

8. Personnel arrested or cited for any federal, state, or local criminal offense or traffic violation occurring in any jurisdiction must inform their immediate supervisor.

   a. This includes any arrest or citation for conduct occurring while on-duty or off- duty.

   b. Personnel must inform their supervisor within 48 hours after the arrest or citation.

   c. Completion of a criminal investigation establishing a reasonable belief that the employee has committed a federal, state, or local felony and/or misdemeanor, or has failed to report or document an alleged violation of law.

   d. The return of an indictment or filing of a criminal information, complaint, or other formal criminal charge for the violation of any federal, state, or local felony or misdemeanor

~7~1    C. Reporting for Duty

   1. All personnel, including supervisors and command staff, will report for duty at the time and place required by assignment or order, and all personnel shall be physically and mentally fit to perform their assigned duties when reporting for duty and at all times when on duty.

   2. Personnel will report for work in possession of all proper department issued equipment so that they may immediately assume their duty role.

   3. Personnel will not feign illness or injury, falsely report themselves ill or injured, or otherwise deceive or attempt to deceive any official of the Department or the City of Albuquerque as to the condition of their health.

<P7>   D. On-Duty Conduct

   1. Personnel will constantly, intelligently, and efficiently direct their best efforts to accomplish the purposes of the Department.

5

ALBUQUERQUE POLICE DEPARTMENT
GENERAL ORDERS

SOP 1-1       Effective: 11/14/17 Review Due: 11/14/18 Replaces: 12/01/16

a. The supervisor, upon receiving notice of a prior conflicting order, bears the responsibility for resolving any such conflict.

b. After notifying the supervisor of the conflicting order, personnel will obey the second, or conflicting, order, unless instructed otherwise by the supervisor.

c. ███████████████████████████████████ If in doubt as to the legality of an order, personnel will request that the issuing supervisor clarify the order or personnel may confer with higher ranking authority.

12. Personnel will not recommend or suggest to the Department, Department members, or any private citizen, a contracting, employment, procurement, or retention of a particular product, service, or commercial activity.

a. This includes, but is not limited to, recommending or suggesting an attorney, ambulance service, towing service, bondsman, or mortician.

b. However, this restriction does not apply to personal transactions involving nonofficial department business.

13. While on duty, personnel will not possess or distribute personal business cards or any forms of marketing or advertisement promoting personal business.

14. Personnel must not act officiously, abuse their lawful authority, or permit their personal feelings, animosities, or friendships to influence their official decisions.

15. Personnel will treat the public with respect, courtesy and professionalism at all times.

16. Police officers and Department employees are expected to conduct themselves in a professional manner at all times. Personnel are discouraged from using any language that could be considered profane, derogatory, or disrespectful toward any person. In certain situations, profanity may be acceptable, subject to review on a case-by-case basis.

17. Personnel will obtain information from the public in an official, prompt, and courteous manner, and they will then act upon it in a proper and judicious manner within the scope of their duties. Personnel who use this information will take prompt, timely, and appropriate action.

18. Personnel will have an operating telephone in their residence(s), either a landline and/or a cell phone. Personnel will report any changes to telephone numbers or addresses to their supervisor and to the Personnel Management Division within two working days of the change.

6-71

w]



ALBUQUERQUE POLICE DEPARTMENT
GENERAL ORDERS
SOP 1-1    Effective: 11/14/17 Review Due: 11/14/18 Replaces: 12/01/16

## 1-1 PERSONNEL CODE OF CONDUCT

### Index

1-1-1 - Purpose

1-1-2 - Policy 1-1-3 -Definitions 1-1-4 - Rules of Conduct

  A.   Training

  B.   Compliance with Laws, Rules, and Regulations

  C.   Reporting for Duty

  D.   On-Duty Conduct

  E.   On and Off Duty Conduct

  F.   Department Property

  G.   Special Consideration, Privilege, and Professional Courtesy

  H.   Use of Department-Issued Telephones

  I.   Outside Employment

  J.   Alcoholic Beverages and Controlled Substances

  K.   Gratuities and Conduct

  L.   Documenting Officer and Employee Conduct

### 1-1-1 Purpose

The purpose of this policy is to establish a Code of Conduct for all Department personnel to follow.

### 1-1-2 Policy

The Department's mission is to assure a safe and secure community by developing a police force that upholds the Constitution and protects the rights of all citizens, and through the shared responsibility of police personnel, government leaders, and the overall community. The Department fairly enforces the laws and protects the lives, property, and safety of Albuquerque citizens, victims, offenders, and its law enforcement officers. In partnership with the community, the Department engages in constitutional policing to promote public safety, and it enforces all laws to reduce crime.

Department personnel, whether sworn or nonsworn, are expected to follow a prescribed code of conduct and to act responsibly whether on or off duty. The Department will hold all personnel accountable for their actions, particularly when those actions reflect adversely on the Department or result in an appearance of impropriety or conflict of interest that may violate the public trust and erode the public's confidence in the Department.

- 1 -

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS

INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

## ISSUES OF CONCERN

### Deputy Chief Michael Smathers

1. Did Deputy Chief Michael Smathers comply with Albuquerque Police Department General Order I-1-4B6b [1-7]? General Order I-1-4B6b states:

   *1-1 PERSONNEL CODE OF CONDUCT 1-1-4 Rules of Conduct*
   *B. Compliance with Laws, Rules, and Regulations*

   *6. Personnel will perform any act required by the City's or Department's rules, regulations, directives, orders, or settlement agreement.*

   *b. All supervisors will also be held accountable for identifying and responding to policy or procedure violations by personnel under their command. (Effective 11/14/17) [1-7]*

2. Did Deputy Chief Michael Smathers comply with Albuquerque Police Department Administrative Order 3-14-4A15 [6-7]? Administrative Order 3-14-4A15 states:

   *3-14 SUPERVISORY LEADERSHIP 3-14-4 Procedures*

   *A. All supervisors, regardless of the level of supervision, will:*
   *15. Review, and forward as appropriate any reports or documents prepared by subordinates. (Effective 09/29/16) [6-7]*

**In addition to those S.O.P. violations already identified, supervisors will review the issues of concern and identify any other possible S.O.P. infractions.**

Page 7 of 44

SOP 1-1                 ALBUQUERQUE POLICE DEPARTMENT
                        Effective: 11/14/17 Replaces: 11/14/18 Replaces: 12/01/16
                        GENERAL ORDERS

visiting log the name and phone number of the APD personnel they will visit and their time of entry. All visitors must return the visitor's pass to Security upon departure.

## 1-1-4 Rules of Conduct

### A. Training

The Department will provide training on the rules of conduct, as detailed in this policy, to all cadets during basic training at the Police Academy. Subsequently, an annual one-hour in-service training will be provided to all officers concerning the rules of conduct. This refresher will be scheduled as an annual in-service training and tracked through the Department's Advanced Training Academy's record maintenance system.

### 1-7 B. Compliance with Laws, Rules, and Regulations

1. All sworn personnel, Prisoner Transport Officers, and Police Service Aides are required to take an oath of office.

2. Personnel will obey all federal, state, and local laws, all applicable rules and regulations. Personnel will also enforce those lawful directives while protecting the rights of individuals, as established in the Constitution of the United States and the Constitution of the State of New Mexico. Adherence includes, but is not limited to, obeying all felony, misdemeanor, and traffic laws, applicable local ordinances, as well as all lawfully-issued civil orders of any jurisdiction. Each quarter, the Department will compile and review violation reports to identify trends.

3. Personnel shall maintain all state certification requirements and standards established by the New Mexico State Law Enforcement Academy. Permanent revocation of certification will be prima facie evidence of a violation of this policy. Upon receiving notification that an employee's certification has been suspended or revoked by the New Mexico Law Enforcement Academy, sworn personnel must notify the appropriate deputy chief or major in writing through their chain of command *within 24 hours of said notification.*

4. Personnel who are served with a Court Order of Protection will immediately provide a copy of that Order of Protection through the chain of command to the assistant chief.

5. Personnel will not commit any act that constitutes a violation of the rules, regulations, directives, or orders of the Department, to include, but not limited to, those outlined in this policy. Personnel will at all times be held accountable for their personal policy and procedure violations and must report any such violations to their chain of command.

6. Personnel will perform any act required by the City's or Department's rules, regulations, directives, orders, or settlement agreement.

-4-

ALBUQUERQUE POLICE DEPARTMENT
GENERAL ORDERS

SOP 1-1        Effective: 11/14/17 Review Due: 11/14/18 Replaces: 12/01/16



a.   Personnel will report any known or observed violation of policy or procedure to a supervisor.

b.   All supervisors will also be held accountable for identifying and responding to policy or procedure violations by personnel under their command.

7.  Both on duty and off duty, personnel will conduct themselves in a manner that reflects favorably on the Department. Conduct unbecoming an officer or employee of APD includes the following:

a.   Conduct that could bring disrepute, shame, dishonor, disgrace, or embarrassment to the Department.

b.   Conduct that interferes with or compromises the efficiency of personnel and employees.

c.   Conduct that impairs the operation or efficiency of the Department.

8.  Personnel arrested or cited for any federal, state, or local criminal offense or traffic violation occurring in any jurisdiction must inform their immediate supervisor.

a.   This includes any arrest or citation for conduct occurring while on-duty or off- duty.

b.   Personnel must inform their supervisor within 48 hours after the arrest or citation.

c.   Completion of a criminal investigation establishing a reasonable belief that the employee has committed a federal, state, or local felony and/or misdemeanor, or has failed to report or document an alleged violation of law.

d.   The return of an indictment or filing of a criminal information, complaint, or other formal criminal charge for the violation of any federal, state, or local felony or misdemeanor.

C. Reporting for Duty

1.  All personnel, including supervisors and command staff, will report for duty at the time and place required by assignment or order, and all personnel shall be physically and mentally fit to perform their assigned duties when reporting for duty and at all times when on duty.

2.  Personnel will report for work in possession of all proper department issued equipment so that they may immediately assume their duty role.

3.  Personnel will not feign illness or injury, falsely report themselves ill or injured, or otherwise deceive or attempt to deceive any official of the Department or the City of Albuquerque as to the condition of their health

D. On-Duty Conduct

1.  Personnel will constantly, intelligently, and efficiently direct their best efforts to accomplish the purposes of the Department.

- 5 -

ALBUQUERQUE POLICE DEPARTMENT
ADMINISTRATIVE ORDERS

SOP 3-14          Effective: 08/29/16 Review Due: 12/26/16 Replaces: 05/16/16



## 3-14-4 Procedures

A. All supervisors, regardless of the level of supervision, will:

1. Obey, support and carry out all directives, policies, procedures and plans established by the Chief of Police.

2. Enforce and apply all directives, policies and procedures applicable to that supervisor's area of responsibility in full accordance with Constitutional protections for individuals.

3. Act as a liaison or intermediary between those above and below them in the chain of command, and transmit information, directives, orders and communications as necessary.

4. Establish and promote professional, ethical and lawful behavior from their subordinates.

5. Instruct, advise, coach and mentor subordinates in the performance of their duties.

6. Evaluate subordinates for effectiveness, efficiency and adherence to directives, policies and procedures, the department's mission statement, vision and core values, Constitutional standards as well as federal state and municipal law.

7. Document and report conduct not in compliance with law or policy. Take steps necessary to improve the subordinate's performance.

8. Convey a sense of pride and professionalism to all subordinates.

9. Hold accountable those subordinates who persist in failing to carry out directives, policies, procedures and plans established by the Chief of Police, the Constitution or the laws of the state or municipality.

10. Initiate or recommend commendations when a subordinate's performance is extraordinary and far exceeds normal and customary adherence to employment responsibilities.

11. Initiate or recommend disciplinary action when a subordinate's performance significantly departs or deviates from the directives, policies, procedures and plans established by the Chief of Police, or constitutes a violation of federal, state or municipal law.

12. Maintain accurate monthly records of a subordinate's work related activities.



ALBUQUERQUE POLICE DEPARTMENT
ADMINISTRATIVE ORDERS

SOP 3-14 Effective: 06/29/16 Review Due: 12/26/16 Replaces: 05/16/16

13. Recommend a subordinate's temporary assignment to specialty units, when appropriate, for the purpose of giving the subordinate knowledge and allowing the subordinate to gain experience in the specialty unit.

14. Identify any subordinate's training deficiencies, and require training or retraining as necessary using the APD Mandatory Training Recommendation Form.

15. Review, and forward as appropriate any reports or documents prepared by subordinates.

16. Document and report any allegation or complaint of on the job harassment (including sexual harassment) or discrimination to the Department's Equal Employment Opportunity Complaint Coordinator (APD Personnel Manager) in accordance with the Harassment Policy.

17. Additionally, sworn supervisors shall:

    a. Review and report all arrest reports for any subordinate within the area of the supervisor's area of authority.

    b. If assigned to the Field Services Bureau, ensure that subordinates attend at least two community meetings annually which are open to the public, such as the Community Outreach and Public Information Program. Record and maintain records of subordinates' attendance at such meetings. Address and respond to areas of community concern that may be raised at such meetings, and record any reported issue or area of concern on monthly reports.

B. Uses of Force

For all known uses offeree, supervisors will report to the scene of any use offeree in order to report and document the use of force, classify the use of force, and investigate where appropriate, in accordance with the Use of Force Reporting and Supervisory Investigation Requirements SOP.

C. On Body Recording Devices

Supervisors will comply with the On-Body Recording Devices SOP and ensure that all officers under their command have appropriate equipment and comply with the policy as well. Supervisors will inspect recording devices used by their officers at least monthly to ensure functionality, and will requisition repair and replacement as necessary if devices are not functioning properly. Supervisors will review recordings for any subordinates involved in a use of force, injury, show of force, or foot pursuit. Supervisors will also review any recordings of a subordinate that are the subject alleged misconduct reported to that supervisor. In addition, supervisors will review at least two other recordings per month from each assigned individual and incorporate any knowledge gained from all of these reviews into ongoing evaluation and supervision. Supervisors shall make a note on the monthly inspection form, if positive feedback and/or training opportunities arise during the reviews.

-3-



INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora
ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS

**INVESTIGATIVE REPORT Summary of**

**Internal Affairs Request 11 AR)**

On April 27, 2021, Commander (Cmdr.) Elizabeth Armijo completed a BlueTeam entry and an interoffice memorandum alleging potential misconduct involving Lieutenant (Lt.) Jim Edison.

**Investigation**

On May 3, 2021, I was assigned this Internal Affairs administrative investigation.

As part of this investigation, I reviewed Cmdr. Armijo's LAR and interoffice memorandum, which are included in this investigation for the reader's review (refer to the attached documents for details). I also reviewed Lt. Edison's attached Telestaff to include his overtime and accrued comp time for the month of April 2021 (Refer to Lt. Edison's attached Telestaff for details.) This investigation is very similar to Detective Whitney Burton's LAPS investigation (I-152-21), which also involved overtime being claimed as "call-out."

**According to Commander Armijo's memorandum the following events occurred:**

On April 24, 2021, Lt. Edison was transferred to the Homeland Security Division reporting to Cmdr. Armijo. On Friday, April 23,2021 (the day prior to Lt. Edison's transfer to Cmdr. Armijo's supervision) DC Smathers asked Cmdr. Armijo (via a text message) to ensure Lt. Edison's transfer was completed and for her to do his payroll approval (Friday, April 23, was the pay period ending date).

On Friday, April 23, 2021, Lt. Armijo logged into Telestaff and checked (for the first time) to see if she had access to Lt. Edison's Telestaff entries and discovered she did have access. Lt. Armijo observed that Lt. Edison had claimed a large number of overtime entries for the pay period. The only Telestaff entries she looked over were the entries from the preceding fourteen days and no others (from 4/9/21-4/23/21).

Cmdr. Armijo became concerned with Lt. Edison's overtime entries and did not feel comfortable approving his overtime. On April 23,2021, Cmdr. Armijo met with DC Smathers and advised him of her concerns with Lt. Edison's overtime. DC Smathers told her "*I don't want you to do anything you're not comfortable with.*" Cmdr. Armijo's issues of concern included the following:

1. Lt. Edison claimed many overtime "call-outs" that pay period which appeared to consist of phone calls that he forwarded to Detective (Det.) Jones to handle. Lt. Edison also appeared to be doing a lot of proactive administrative work outside of business hours and was utilizing "call-out" overtime justification for the administrative work.

2. Lt. Edison sent COVID-19 statistic emails almost every morning and claimed a minimum of two hours of "OT call-out" for sending them. These emails appeared to require minimal updating from day to day and it did not seem reasonable that the standard, routine updates each morning would require two hours to complete.

3. Lt. Edison was on-call every week despite Lt. Edison working with at least three officers, a PSA, and one civilian. Cmdr. Armijo questioned why Lt. Edison needed to be on-call every week and why the on-call schedule was not

ALBUQUERQUE POLICE DEPARTMENT
LA PROFESSIONAL STANDARDS
INVESTIGATION 1-247-21
(INVESTIGATOR: Det. A. Zamora

rotated. She knew from a previous conversation with Lt. Edison (via email) that Lt. Edison had taken some days off (4/16 - 4/19) and that someone would have had to handle the phone calls and COVID needs without him, so it seemed possible to her that the on-call schedule could be rotated within the unit.

4.  Because Lt. Edison was on-call, routine and brief calls and emails pertaining to his duties should have been understood as part of his on-call responsibilities and not claimed as a "call-out." Special Order 20-85 (amended SOP 3-20-4.E.3) also indicates, *"Call-out overtime shall only be used in cases requiring immediate intervention by personnel who are off-duty... for personnel who are off-duty to report for duty."* Brief administrative work does not meet the requirement of reporting for duty. **(Refer to Cmdr. Armijo's attached memorandum for details).**

On April 26, 2021, Cmdr. Armijo held an introductory meeting with Lt. Edison. During the meeting, she discussed his April overtime and his on-call status. Lt. Edison allegedly was not happy with the changes and chose to transfer out of the unit. On April 26, 2021, Cmdr. Armijo text DC Smathers and informed him Lt. Edison became defensive during the meeting. DC Smathers text Cmdr. Armijo telling her he was told by Chief Harold Medina of comments she allegedly made regarding Lt. Edison's attorney John D'Amato.

Cmdr. Armijo believed Lt. Edison had intentionally misrepresented their conversation and that nothing Cmdr. Armijo said could have been remotely misconstrued into the message allegedly relayed to Mr. D'Amato. Cmdr. Armijo had concerns about how Lt. Edison was claiming overtime and that she did not want to get disciplined for approving overtime he claimed that was in violation of policy or contract. Cmdr. Armijo believed she had more than reasonable objections about Lt. Edison's overtime entries.

During the course of the preliminary investigation, it was also discovered Lt. Edison was claiming

2-      hours of overtime (under "call-out") for "COVID stats" emails that he was sending every day in the very early morning hours. He was claiming this overtime without receiving a "call back to work" (per the CBA is *"when an officer is called to work at a period other than his/her regularly scheduled working hours, he/she is guaranteed pay at either his/her hourly overtime rate for two*

ALBUQUERQUE POLICE DEPARTMENT
1A PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
RESPECT & PROFESSIONALISM (REDACTED) issues that Lt.
INVESTIGATION (REDACTED) found issues that Lt.
Edison claimed "call-out" overtime that did not fall under COVID-19 or the definitions of "call back" or "call-out."

(2) hours work or overtime pay for the hours actually worked, whichever is greater.

**Special Order 20-85: Overtime, Compensatory Time, and Work Shift Designation**

The investigation found that in 2020, Lt. Edison was tasked (by DC Smathers) to revamp and author a new overtime policy based on previous issues pertaining to overtime. On October 29, 2020, Special Order 20-85 was disseminated and temporarily in place until the approval process was complete for a new SOP on overtime. Lt. Edison authored the new special order on overtime.

The special order was in place during the time periods of April 2021, and is currently still in place.

The following are the areas found within SO 20-85 that were issues of concern during the course of the investigation.

3- 20-4 Rules, Responsibilities, and Procedures A. Overtime

4. *All overtime, with the exception of court overtime and COT, **must be pre-approved** by the on-duty supervisor and recorded on a daily basis within the payroll time keeping system that the personnel has been assigned.*

5. *When possible, personnel working during normal business hours shall schedule work-related meetings, interviews, or appointments during their shifts. If personnel cannot schedule meetings, interviews, or appointments during their shift(s), they shall notify their immediate supervisor and obtain approval from their commander before scheduling meetings, interviews, or appointments during off-duty hours.*

6. *When possible, personnel shall consolidate appointments or meetings to reduce overtime expenditures.*

1. Overtime/Comp Time Approval

3. Call-Out Overtime

*All call-out overtime shall only be used in cases requiring immediate intervention by personnel who are off-duty. Requests for personnel who are off-duty to report for duty shall only be made by an on-scene supervisor. Only the necessary personnel are to be called out. Call-out overtime must be reviewed every hour by an on-duty supervisor who shall evaluate the need for the continued use of overtime.*

**City of Albuquerque and Albuquerque Police Officers Association Collective Bargaining Agreement (CBA), FLSA, & Labor Laws**

This section will review the applicable sections relevant to the investigation, which will reference

3.2 "Overtime," 3.3 "Compensatory Time," 3.4 "Fair Labor Standards Act (FLSA)," and 11.2 "On-Call and Call Backs."

Page 10 of 44

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

## 3.2  Overtime

This section of the CBA explains that employees are entitled to overtime compensation at the rate of time-and-one-half their regular straight-time rate when they perform work in excess of forty (40) hours in any one work week.

Note: There is a 12-Hour MOU in place within the contract, which as of the date of this investigation was in effect, however, the Department no longer implements 12-hour shifts.

## 3.3  Compensatory Time

3.3.1  Time worked over 40 hours per week will be compensated at 1-1/2 times the officer's regular rate of pay, or in the form of compensatory time. Compensatory time will be computed at the rate of 1-1/2 time the hours worked. The maximum accrual of comp time for any officer, including Aviation Police, is 150 hours.

## 3.4  Fair Labor Standards Act (FLSA)

3.4.1  Under the FLSA, paid leave is not considered time worked for the purpose of computing overtime and the regular rate for the purpose of computing overtime includes all remunerations (money paid for work or a service).

3.4.2  The parties hereto agree that for the purpose of computing overtime, paid leave will be considered time worked and the regular rate includes the hourly rate with no other remunerations included.

## 11.2  On-Call and Call Backs

11.2.1  On-call status shall be defined as the ability of an officer to assume full responsibilities of the officer's assignment with one (1) hours' notice. The standards for the assumption of these responsibilities shall be those required by the FLS A's Rules and Regulations for standby time.

11.2.2  Call-Back Time: When an officer is called to work at a period other than his/her regularly scheduled working hours, he/she is guaranteed pay at either his/her hourly overtime rate for two

INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora



11.2.3   Time shall be computed from the time of notification.

11.2.4   When an employee is assigned to on-call status, the officer will receive eight (8) hours of straight compensatory time for each seven (7) days of such assignment. If an officer is on-call on a day-to-day basis, the officer will receive two (2) hours of straight compensatory time for every twenty-four hours of such assignment, not to exceed eight (8) hours in a week.

Note: The comp time claimed is at straight time (1 hour-for-1 hour), compared to Administrative comp time (1 hour =1.5 hours of comp time) **(Refer to the CBA contract for further details).**

From a previous investigation (1-152-21) related to overtime and compensatory time, Det. Burton spoke with APOA Union President Shaun Willoughby, and APOA Union Attorney Fred Mowrer was present. They explained an officer was entitled to on-call comp time when in an on-call status. If on-call for a 24-hour period the officer can claim 2-hours of on-call comp time, or if on-call for the entire week the officer can claim 8-hours of on-call comp time. The comp time claimed was explained as an officer being compensated for the inconvenience of being on-call. During the explanation of claiming overtime, it was stated (by both Mr. Mowrer and Det. Willoughby) an officer could report to work, actually go to a call-out and receive a minimum of 2-hours of time or the time that is actually worked. Det. Willoughby also explained that officers could claim 2-hours of overtime if an officer could show a "work product," work that was completed and can be proven an employee had actual work related to a phone call. (Note this "work product" is not defined per the CBA or FLSA)

- Note: Through the course of the 1-152-21 investigation, Det. Burton interviewed several investigative sergeants who all worked in on-call statuses, within various specialized areas of the Department. All sergeants stated they never claimed phone calls while they were on- call; the 8-hours of comp time were to handle the miscellaneous phone calls received during the week. (Stipulated in APOA Contract, section 11.2) The only time that overtime (or comp time) could be obtained was when they were requested and reported to the scene of an incident. There were sergeants who indicated 2-hours of overtime could be claimed if the phone call lasted over 15 minutes. This is also coupled with SO 20-85: Call-out: *"All call-out overtime shall only be used in cases requiring immediate intervention by personnel who are off-duty. Requests for personnel who are off-duty to report for duty shall only be made by an on-scene supervisor. Only the necessary personnel are to be called out. Callout overtime must be reviewed every hour by an on-duty supervisor who shall evaluate the need for the continued use of overtime* **(Refer to SO 20-85; CBA and FLSA)**

The "call-out" code is a code widely known throughout the Department related to *being called out to a scene* in reference to ongoing investigations. Other Internal Affairs investigations and interviews revealed that call-outs are widely known as detectives/officers responding to a scene to further investigate situations, such as: SWAT call-outs. Impact, Sex Crimes, Crimes Against Children, Narcotics, Fatal Traffic Crashes, etc. Throughout the Albuquerque Police Department's existence various new units are added or taken away based on the needs of the City of Albuquerque, for example: the Gun Violent Reduction Unit, Street Crimes Unit, Night Detectives, etc. The COVID-19 Response Unit is an additional division that was

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

implemented based on the needs of the Department.

Per FLSA overtime and time rounding rules: *"Employees time for one to seven minutes may be rounded down, and not counted towards the employee's hours worked, but employee time for eight to 14 minutes must be rounded up and counted as a quarter hour of worked time.* **(Refer to Time Rounding Rules under FLSA)**

FLSA "Call-Back" definition: pay is extra compensation paid to an employee for responding to a call from the employer to perform extra work that was **unanticipated by the employer.** Such pay is in addition to the compensation for the time actually worked. Callback pay is in addition to the compensation for the time actually worked. Callback pay may be excluded from the regular rate provided the callback was not prearranged. **(Refer to FLSA definition)**



### Albuquerque Police Department COVID-19 Rules

On April 15, 2020, former Chief of Police Michael Geier signed Special Order 20-26, which indicated that all information and Department protocol regarding COVID-19 will be posted to the department's protopage (http://www.mcotopaue.com/apdweb.cabq.iio/#COVID19).

Any information and/or instructions posted on this site will fall under this Special Order: **(Refer to Special Order 20-26)**

In the protocols section located under COVID-19 on the protopage, is the "Frequently Asked Questions." This protocol portion, to include the frequently asked questions, was drafted by Lt. Edison. The protocols were signed off on by DC Smathers and then Chief Geier, and eventually adopted by Chief of Police Harold Medina.

Upon reviewing that document, there were listed protocols for employees who have been exposed or claimed to have tested positive for COVID and the employee was not wearing PPE. One of the first steps listed was *"Call Lt. Edison and self-isolate if possible until a decision has been made. Add comments to the CAD. Add a "hazard" to the property once you know the true status of "source" who reside at this location. Stop the spread to the community."* The instruction states to call Lt. Edison (telephone number listed three times on the last page: 505-280-2592) for all "high- risk" exposures, not feeling well, possibility of symptoms, or family (live in same household) does not feel well.

The second portion of the protocols states: *"Once I call Lt. Edison what happens next?"*

• *Lt. Edison will ask you about your contact with the "source" of COVID-19:* (There are a total of eight questions asked following your call to Lt. Edison)

(Note: This portion of the protocol indicates Lt. Edison **will** answer the phone calls and conduct the investigation into the situation. [Refer to the attached frequently asked questions page for details].)



ALBUQUERQUE POLICE DEPARTMENT
1A PROFESSIONAL STANDARDS
ION: I-247-2)
INTERVIEW WITH Commander Elizabeth Armijo ESTIGATOR: Det. A. Zamora

**Wednesday, May 12, 2021 Interview with Commander Elizabeth Armijo**

I interviewed Cmdr. Armijo on May 12, 2021.I informed Cmdr. Armijo she was a witness in the investigation, the interview was being recorded and the Chief of Police considered the investigation confidential. Cmdr. Armijo indicated she understood and agreed to cooperate.



ALBUQUERQUE POLICE DEPARTMENT
LA PROFESSIONAL STANDARDS



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS



Page 16 of 44

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-20
INVESTIGATOR: Det. A. Zamora

**Wednesday, May 19, 2021, 2nd Interview with Commander Elizabeth Armijo**

I interviewed Cmdr. Armijo on May 19, 2021.I informed Cmdr. Armijo she was a witness of the investigation, the interview was being recorded and the Chief of Police considered the investigation confidential. Cmdr. Armijo indicated she understood and agreed to cooperate.



**Wednesday, June 9, 2021, Interview with Margaret Baldonado**

I interviewed Margaret Baldonado on June 9, 2021.I informed Mrs. Baldonado she was a witness of the investigation, the interview was being recorded and the Chief of Police considered the investigation confidential. Mrs. Baldonado indicated she understood and agreed to cooperate.

Page 20 of44

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS

**Tuesday, Jung 22, 2021 Interview with DC Michael Smathers**

I interviewed DC Smathers on June 22, 2021. Also present during this interview was IAPS Manager Paul Skotchdopole. I informed DC Smathers he was a subject of the investigation, the interview was being recorded and the Chief of Police considered the investigation confidential. Cmdr. Smathers indicated he understood and agreed to cooperate.



ALBUQUERQUE POLICE DEPARTMENT
1A PROFESSIONAL STANDARDS

ALBUQUERQUE POLICE DEPARTMENT
LA PROFESSIONAL STANDARDS



**Wednesday, June 30, 2021, Interview with Lt. Jim Edison**

I interviewed Lt. Edison on June 30, 2021. Present during this interview was his attorney, John D'Amato. Also present during this interview was LAPS Manager Paul Skotchdopole. I informed Lt. Edison he was a subject of the investigation, the interview was being recorded and the Chief of Police considered the investigation confidential. Lt. Edison indicated he

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora



understood and agreed to cooperate.



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS

Page 25 of 44

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS



Page 26 of 44

INVESTIGATION: 1-247-21
INVESTIGATOR: Del. A. Zamora



**Friday, July 2, 2021, 2nd Interview with Lt. Jim Edison**

I continued with my interview with Lt. Edison on July 2, 2021. Present during this interview was his attorney, John D'Amato. Also present during this interview was LAPS Manager Paul Skotchdopole. I informed Lt. Edison he was a subject of the investigation, the interview was being recorded and the Chief of Police considered the investigation confidential. Lt. Edison indicated he understood and agreed to cooperate.



INVESTIGATION: 1-247-21
INVESTIGATOR: Dct. A. Zamora



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS



ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS

[redacted]

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora



Investigator's notes

2 hours overtime for listening to the voicemail, forwarding the voicemail, and then reviewing the email generated by the detective.

Lt. Edison was on-call every week despite having at least two officers on-call as well. Cmdr. Armijo also knew from a previous conversation with Lt. Edison (via text message) that he had taken some days off (4/16 - 4/19) and that someone would have had to handle phone calls and COVID needs without him, so it seemed possible the on-call schedule could be rotated in the unit. Because Lt. Edison was on-call, routine and brief calls and emails pertaining to his duties should have been understood as part of his on-call responsibilities and not claimed as a "call-out." Special Order 20-85 (amended SOP 3-20-4.E.3) also indicates, *"call-out overtime shall only be used in cases requiring immediate intervention by personnel who are off-duty... for personnel who are off-duty to report for duty.*" "Brief administrative work does not meet the requirement of *"reporting for duty.*"

Additionally, Lt. Edison was sending Covid-19 statistic emails almost every morning and was claiming two hours of "OT call-out" for sending the email. These emails appeared to require minimal updating from day to day and it did not seem reasonable that the standard, routine updates each morning would require two hours to complete. DC Smathers said 99% of these emails could have been sent to him during normal work hours. On April 21,2021, at 0734 hours, DC Smathers sent Cmdr. Armijo and Lt. Edison an email regarding COVID-19 stats. The email reads: *"I think we can finally scale these reports down to once per week on Mondays so please adjust accordingly. Jim your work on COVID has been instrumental in keeping APD functioning at a high level and I cannot thank you enough for the work of you and your team."* (Refer to DC Smathers' attached email for details).

Lt. Edison consistently claimed overtime for receiving notifications from an APD Employees, listening to the voicemail, forwarding the voicemail, and reviewing emails generated and sent by COVID Detectives. This should not be claimed as call-out overtime and appears to be part of his routine on-call responsibilities. This overtime does not appear to meet the APOA collective bargaining agreement (CBA) contractual justification for a call-out or meet the requirement of a call-out per Special Order 20-85 (amended SOP 3-20-4E3) and appears to be proactive administrative work.

Lt. Edison claimed Starchase training as "call-out" overtime. Lt. Edison said because he was the trainer; he was not required to adjust his hours, however per Department SO 20-85 training overtime: *"Training shall normally be conducted during designated duty hours and work hours*

ALBUQUERQUE POLICE DEPARTMENT
1A PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

shall be adjusted to meet training needs." Additionally, 3-20-4A4 (overtime) requires: "All overtime, with the exception of court overtime and COT, must be preapproved by the on-duty supervisor..." Per SO 20-85, he should not have claimed the training as overtime and Lt. Edison was required to adjust his work hours to meet the training needs.

On April 21,2021, Lt. Edison again claimed 1.5 hours "call-out" overtime from 0700-0830 hours for "COVID-19 and Star Chase follow up on cases with Jones. Training new operators and trainers for Star Chase." DC Smathers said he was unaware Lt. Edison was claiming the training as COVID related. **(Refer to Lt. Edison's attached timesheet and SO 20-85 for details).**
During my interview with Lt. Edison, he sai ▮▮

(Note: During Det. Burton's investigation, she found that Lt. Edison attempted to schedule a meeting with Central Payroll Supervisor Ms. Stewart on August 17, 2020. On August 24, 2020, Lt. Edison wrote and

▮▮▮▮▮▮▮▮▮▮▮▮▮

] Lt. Edison did have a ZOOM meeting with Carmen Marquez who discussed coding and could not indicate if the time code was within APOA contract or SOP. Det. Burton's investigation also found that Ms. Duran could not recall ever having a meeting with Lt. Edison about call-out over time as Lt. Edison indicated. She wrote in an email that it was not at the direction of payroll to determine if the time claimed was valid, it was on the supervisor (DC Smathers) to determine if the time claimed was valid and allowed) **(Refer to Lt. Edison's attached mails provided by Lt. Edison).**

Cmdr. Armijo identified SOP 1-1-4D19 as a possible issue of concern as she believed Lt. Edison may have spoken with Chief Medina or DC Smathers and provided them with inaccurate information regarding their meeting and what she allegedly said to Lt. Edison. The text message conversation Cmdr. Armijo and DC Smathers had is evidence that Lt. Edison spoke with Mr. D'Amato. Mr. D'Amato communicated with Chief Medina, who then spoke with DC Smathers, and Smathers related the information to Cmdr. Armijo.

Cmdr. Armijo also identified SOP 1-1-4D20 as a possible issue of concern as she believed Lt. Edison was not appropriately claiming his overtime that he made on his Telestaff timesheet entries. After this investigation concluded, it was determined this SOP was not applicable and SOP 1-1-4D19 (sanction 1-7) was identified as an issue of concern and was SUSTAINED.

Page 35 of 44

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

## RECOMMENDED FINDINGS AND CONCLUSIONS

Lieutenant Jim Edison

1. Did Lieutenant Edison comply with Albuquerque Police Department General Order 1-1-4B2 [1-7]?

General Order 1-1-4B2 states:

*1-1 PERSONNEL CODE OF CONDUCT*

*1-1-4 Rules of Conduct*

*B. Compliance with Laws, Rules, and Regulations*

*2. Personnel will obey all federal, state, and local laws, all applicable rules and regulations. (Effective 11/14/17) [1-7]*

The alleged misconduct concerned whether or not Lt. Edison complied with all applicable rules and regulations (SO 20-26, SO 20-85, and SOP 3-20).

The investigation determined Lt. Edison claimed 2 hours of COVID-19 "call-out" overtime for listening to the voicemail, forwarding the voicemail to one of his detectives, and then reviewing the email generated by the detective.

Because Lt. Edison was "on-call" and received the phone call during his off duty hours, and performed the above tasks, he believed he was entitled to claimed overtime (automatic 2-hours). The investigation found the "work" Lt. Edison did, did not fall under the APOA contract due to Lt. Edison failing to follow and assume the full responsibilities of his duties for a "call-out." Additionally he was not answering his phone and allowing the person to leave a voicemail. Lt. Edison was not asking the person questions about the employees contact with the "source" of COVID-19 as he stipulated from April 15, 2020, signed Special Order 20-26. Lt. Edison claimed overtime (automatic 2-hours) for listening to a voicemail, forwarding voicemails for case managers to work the investigations, and reviewing the emails his detectives generated.

Furthermore, on April 15, 2021, Lt. Edison held a team-planning meeting and claimed COVID call-out overtime from 1630-1900 hours. The team meeting does not appear urgent and appears to be a meeting that could have taken place during normal business hours. Special Order 20-85 section 3-20-4A5 in part reads: *"When possible, personnel working during normal working business hours shall schedule work-related meetings, interviews, or appointments during their shift(s).* Additionally, 3-20-4A4 (overtime) requires: *"All overtime, with the exception of court overtime and COT, must be preapproved by the on-duty supervisor..."*

On April 7, and April 20, 2021, Lt. Edison claimed overtime Starchase training. Lt. Edison said because he was the trainer, he was not required to adjust his hours however per Department Special Order 20-85 subsection 3-20-4E12a-b (Training Overtime) reads: *"Training shall normally be conducted during designated duty hours. Work hours shall be adjusted to meet training needs. "Additionally, 3-20-4A4 (overtime) requires: "All overtime, with the exception of court overtime and COT, must be preapproved by the on-duty supervisor..." Per SO 20-85 he should not have been claiming the training as overtime and Lt. Edison was required to adjust his work hours to*

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

*meet the training needs.*

I recommend

**Detective Anastacio Zamora**
**IA Professional Standards**
**RECOMMENDED FINDINGS AND CONCLUSIONS**

Lieutenant Jim Edison

2. Did Lieutenant Edison comply with Albuquerque Police Department General Order I-I-4D19a [1-7]?

General Order I-I-4D19a states:

*1-1 PERSONNEL CODE OF CONDUCT 1-1-4*

*Rules of Conduct D. On-Duty Conduct*

19. *Personnel will not alter, misrepresent, or make any false statement in any verbal or written report or in any other written document that has been completed in the course of their employment (Effective 11/14/11) [1-7]*

a. *Written documents include, but are not limited to reports, citations, public records or documents, public vouchers, overtime slips, leave requests, personnel records, affidavits, or any other written instrument completed by Department personnel*

The alleged misconduct concerned whether or not Lt. Edison misrepresented his Telestaff timesheets.

The investigation determined Lt. Edison was consistently claiming every day, 2 hours of "callout" overtime for sending COVID stats sheets. Lt. Edison was not called back to work and began working at his own choosing. Working on and submitting COVID stats for review is not a "callout." DC Smathers did not order or direct Lt. Edison to send these stat sheets in the very early morning hours but Lt. Edison chose to work on and email the stat sheets during the hours that he did. DC Smathers said 99% of the time the COVID stats could have been emailed during Lt. Edison's normal working hours; Lt Edison's working hours are from 0830 hours to 1630 hours.

On April 15, 2021, Lt. Edison claimed 2.5 hours of COVID call-out overtime from 1630-1900 hours. On this same date, he also claimed 4.5 hours of call-out overtime from 1800-2230 hours. Became Lt. Edison was already being paid overtime from 1630-1900 hours, he should not have also claimed from 1800-2300 hours.

Page 37 of 44

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

Additionally, on April 20, 2021, Lt. Edison claimed 1.5 hours of call-out overtime from 0700- 0830 hours with the following Telestaff notes: *"Starchase training for Department at MHQ, Leading instruction and meetings with operators both old and new."* Additionally Lt. Edison claimed 1.5 hours of COVID call-out overtime from 1630-1800 hours, with the following Telestaff notes: *"Covid 19 and starchase training; training multiple officers in starchase and follow up on Covid cases IE Bowie, Lamarcus."* Lt. Edison said he did not adjust his hours for the Starchase training (per Special Order 20-85) because he was the trainer, not the trainee and because COVID did not stop, he still needed to work **(Lt. Edison's transcribed statements pages 23-25 lines 1022-1085).** Starchase training is not related to COVID. Furthermore, Det. Eichel generated an email to Acting Commander Bowie reference household COVID testing. Det. Eichel did not put in overtime for completing and sending this email (Note Det. Eichel's working hours are from 0800 hours to 1800 hours. Lt. Edison's working hours are from 0830 hours to 1630 hours). Lt. Edison claimed reviewing and approving Det. Eichel's email as part of his overtime. Lt. Edison claimed credit for an email that was authored and sent by Det. James Eichel on Tuesday, April 20, 2021, at 1812 hours.

This overtime does not appear to meet the APOA collective bargaining agreement (CBA) contractual justification for a "call-out" or meet the requirement of a "call-out" per Special Order 20-85 (amended SOP 3-20-4E3) and appears to be proactive administrative work.

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

I recommend

**Detective Anastacio Zamora**
**IA Professional Standards**

ALBUQUERQUE POLICE DEPARTMENT
1A PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

**RECOMMENDED FINDINGS AND CONCLUSIONS**

Deputy Chief of Police Michael Smathers

1. Did Deputy Chief Michael Smathers comply with Albuquerque Police Department General Order section I-1-4B6b [1-7]? General Order section I-1-4B6b states:

*1-1 PERSONNEL CODE OF CONDUCT 1-1-4 Rules of*

*Conduct*

*B. Compliance with Laws, Rules, and Regulations*

*6. Personnel will perform any act required by the City's or Department's rules, regulations, directives, orders, or settlement agreement.*

*b. All supervisors will also be held accountable for identifying and responding to policy or procedure violations by personnel under their command. (Effective 11/14/17) [1-7]*

The alleged misconduct concerned whether or not DC Smathers violated this policy by failing to follow Department rules and policies or identifying and responded to policy or procedure violations by Lt. Edison.

The investigation found that Lt. Edison was claiming large amounts of COVID "call-out" overtime each week to include 8 hours of comp time for being "on-call" each week. DC Smathers said in regards to Lt. Edison overtime, Lt. Edison ensured him he was following the spirit and the letter of the SOP. DC Smathers said he did not review Lt. Edison's Telestaff but was constantly having conversations with Lt. Edison about him ensuring him and his COVID Unit were documenting the overtime "correctly, properly and ethically."

Although it was alleged that DC Smathers had Lt. Edison conduct an audit to ensure the overtime he was claiming was correctly code, there is no evidence that DC Smathers conducted any follow-up with anyone (except Lt. Edison) to ensure things were done correctly.

Lt. Edison's overtime entries did not appear to meet the requirement of a "call-out" or meet the contractual justification for a "call-out" per Special Order 20-85 (amended SOP 3-20-4E3) and appears to be proactive administrative work. DC Smathers failed to ensure Lt. Edison was correctly coding his overtime and failed to identify that the overtime claimed was not within Department policy.

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

I recommend

**Detective Anastacio Zamora**
**IA Professional Standards**

ALBUQUERQUE POLICE DEPARTMENT
IA PROFESSIONAL STANDARDS
INVESTIGATION: I-247-21
INVESTIGATOR: Det. A. Zamora

**RECOMMENDED FINDINGS AND CONCLUSIONS**

<u>Deputy Chief of Police Michael Smathers</u>

2. Did Deputy Chief Michael Smathers comply with Albuquerque Police Department Administrative Order section 3-14-4A15 [6-7]? Administrative Order section 3-14-4A15 states:

*3-14 SUPERVISORY LEADERSHIP 3-14-4 Procedures*

*A. All supervisors, regardless of the level of supervision, will:*

*15. Review, and forward as appropriate any reports or documents prepared by subordinates. (Effective 09/29/16) [6-7]*

The alleged misconduct concerned whether or not DC Smathers violated this policy by failing to review Lt. Edison's Telestaff timesheets.

The investigation found DC Smathers did violate this policy by failing to review the Telestaff timesheets Lt. Edison submitted. DC Smathers took Lt. Edison for his word on what he claimed was accurate and appropriate. DC Smathers failed to review the documentation and overtime being claimed in April 2021 and to evaluate Lt. Edison's Telestaff timesheet to ensure what could and could not be claimed as overtime.

| I recommend |

Detective Anastacio Zamora

IA Professional Standards

Page 37 of 44

# Albuquerque Police Department
## Chain of Command
## Case Review Instructions

Each applicable level of the chain of command will note their recommendations on the Chain of Command Recommendation Form. For all sustained findings or non-concurrence with the investigator findings, the initial reviewing chain of command (a commander or division head) will write a Chain of Command Recommendation as an addendum to the Chain of Command Recommendation Form. This addendum will contain the information listed below and will be forwarded to the next appropriate level. All reviewers shall sign and date the Chain of Command Recommendation Form. Each level of the chain of command may concur with the previous level and indicate so in the space provided on the form.

Only the final reviewer will complete the Chief of Police/Bureau Head Proposed Findings Form. SOP 3-44-4E3(b&i) states that if the appropriate level of discipline is a level less than or equal to a 39-hour suspension and is in concurrence with the IA/ CPOA investigator findings; the Bureau Head makes the final decision. If the appropriate level of discipline is 40 hours or more or there is non-concurrence with the IA/CPOA investigator, the final decision is made by the Chief or Assistant Chief. The Disciplinary Action Packet should be utilized to determine appropriate sanctions. Any deviation from the Chart of Sanctions or the IAS class recommendations in the packet must be thoroughly documented with a comprehensive explanation of aggravating or mitigating circumstances allowing for the deviation. Proposed suspensions prior to a pre-discipline hearing will be presented in range format applicable to the sanction level (9 to 32 hours etc.)

The Commander/Division Head will complete the Training and Policy Recommendation Form even when there are no recommendations. The chain of command reviewing the case will note concurrence or non-concurrence in instances where recommendations are made. Any level of the chain of command review may make training and policy recommendations if applicable.

All review and recommendations will be in compliance with SOP 3-44.

Chain of Command Recommendations Addendum Instructions:

1. Address each Standard Operating Procedure separately to include at minimum:

   -State whether or not you concur with CPOA/POB or IA Investigator findings.

   -If there is non-concurrence with the finding, write a detailed explanation supported by fact.

   -State the class you are assigning to each specific SOP violation. Only SOP sections with classes listed next to them can be cited as violations. All of the material within a subsection will be subject to the same class unless otherwise noted. If you do not concur with the IAS class recommendation for an identified violation with a range of applicable class designations (i.e. 1-7), describe the totality of factors affecting your determined class assignment for the violation.

2. State in a separate paragraph the recommended disciplinary action to include mitigating/aggravating factors.

   -Include how this action was formulated.

   -Example: Two class 7 violations according to the Chart of Sanctions is a Written Reprimand.

   -Any deviation from the Chart of Sanctions or Disciplinary Action Packet must be thoroughly explained.

3. Training Recommendations should be noted here and on the attached Training and Policy Recommendation Form.

1

Albuquerque Police Department
Definition of Findings

1.  Unfounded
Investigation classification when the investigator determines, by clear and convincing evidence, that alleged misconduct did not occur or did not involve the subject officer.

2.  Sustained
Investigation classification when the investigator determines, by a preponderance of the evidence, the alleged misconduct did occur by the subject officer.

3.  Not Sustained
Investigation classification when the investigator is unable to determine one way or the other, by a preponderance of the evidence, whether the alleged misconduct either occurred or did not occur.

4.  Exonerated
Investigation classification where the investigator determines, by a preponderance of the evidence, that alleged conduct in the underlying complaint did occur but did not violate APD policies, procedures, or training.

5.  Sustained Violation Not Based on Original Complaint
Investigation classification where the investigator determines, by a preponderance of the evidence, misconduct did occur that was not alleged in the original complaint (whether CPC or internal complaint) but that other misconduct was discovered during the investigation, and by a preponderance of the evidence, that misconduct did occur.

6.  Administratively Closed
Investigation classification where the investigator determines:
a. the policy violation of a minor nature and do not constitute a pattern of misconduct (i.e. a violation subject to a class 1 sanction — with no pattern or history of misconduct)
b. the allegations are duplicative;
c. the complaints, even if true, do not constitute misconduct; or
d. the investigation cannot be conducted because of the lack of information in the complaint, and further investigation would be futile, i. Such complaints may be reopened if additional information becomes available.









# Albuquerque Police Department

## Chain of Command
## Case Review Instructions

Each applicable level of the chain of command will note their recommendations on the Chain of Command Recommendation Form. For all sustained findings or non-concurrence with the investigator findings, the initial reviewing chain of command (a commander or division head) will write a Chain of Command Recommendation as an addendum to the Chain of Command Recommendation Form. This addendum will contain the information listed below and will be forwarded to the next appropriate level. All reviewers shall sign and date the Chain of Command Recommendation Form. Each level of the chain of command may concur with the previous level and indicate so in the space provided on the form.

Only the final reviewer will complete the Chief of Police/Bureau Head Proposed Findings Form. SOP 3-44-4E3(D&I) states that if the appropriate level of discipline is a level less than or equal to a 39-hour suspension and is in concurrence with the IA/CPOA investigator findings; the Bureau Head makes the final decision. If the appropriate level of discipline is 40 hours or more or there is non-concurrence with the IA/CPOA investigator, the final decision is made by the Chief or Assistant Chief. The Disciplinary Action Packet should be utilized to determine appropriate sanctions. Any deviation from the Chart of Sanctions or the IAS class recommendations in the packet must be throughly documented with a comprehensive explanation of aggravating or mitigating circumstances allowing for the deviation. Proposed suspensions prior to a pre-discipline hearing will be presented in range format applicable to the sanction level (8 to 32 hours etc.)

The Commander/Division Head will complete the Training and Policy Recommendation Form even when there are no recommendations. The chain of command reviewing the case will note concurrence or non-concurrence in instances where recommendations are made. Any level of the chain of command review may make training and policy recommendations if applicable.

All review and recommendations will be in compliance with SOP 3-44.

Chain of Command Recommendations Addendum Instructions:

1.  Address each Standard Operating Procedure separately to include at minimum:

    -State whether or not you concur with CPOA/POB or IA Investigator findings.

    -If there is non-concurrence with the finding, write a detailed explanation supported by fact.

    -State the class you are assigning to each specific SOP violation. Only SOP sections with classes listed next to them can be cited as violations. All of the material within a subsection will be subject to the same class unless otherwise noted. If you do not concur with the IAS class recommendation for an identified violation with a range of applicable class designations (i.e. 1-7), describe the totality of factors affecting your determined class assignment for the violation.

2.  State in a separate paragraph the recommended disciplinary action to include mitigating/aggravating factors.

    -Include how this action was formulated.

    -Example: Two class 7 violations according to the Chart of Sanctions is a Written Reprimand.

    -Any deviation from the Chart of Sanctions or Disciplinary Action Packet must be thoroughly explained.

3.  Training Recommendations should be noted here and on the attached Training and Policy Recommendation Form.

# Albuquerque Police Department
## Definition of Findings

**1. Unfounded**
Investigation classification when the investigator determines, by clear and convincing evidence, that alleged misconduct did not occur or did not involve the subject officer.

**2. Sustained**
Investigation classification when the investigator determines, by a preponderance of the evidence, the alleged misconduct did occur by the subject officer.

**3. Not Sustained**
Investigation classification when the investigator is unable to determine one way or the other, by a preponderance of the evidence, whether the alleged misconduct either occurred or did not occur.

**4. Exonerated**
Investigation classification where the investigator determines, by a preponderance of the evidence, that alleged conduct in the underlying complaint did occur but did not violate APD policies, procedures, or training.

**5. Sustained Violation Not Based on Original Complaint**
Investigation classification where the investigator determines, by a preponderance of the evidence, misconduct did occur that was not alleged in the original complaint (whether CPC or internal complaint) but that other misconduct was discovered during the investigation, and by a preponderance of the evidence, that misconduct did occur.

**6. Administratively Closed**
Investigation classification where the investigator determines:

    a.   with no pattern or history of misconduct);

    b.   the allegations are duplicative;

    c.   the allegations--even if true, do not constitute misconduct; or

    d.   the investigation cannot be conducted because of the lack of information in the complaint, and further investigation would be futile, i. Such complaints may be reopened if additional information becomes available.

2









# CITY OF ALBUQUERQUE



Albuquerque Police Department, Harold J. Medina, Chief of Police

October 29, 2021

1-247-2021

Jim                Edison

400 Roma NW
Albuquerque, NM 87102

SUBJECT: FINAL DECISION TO DISCIPLINE

Lieutenant Edison:

You had a pre-disciplinary conference during which you were allowed the opportunity to provide information in your favor relevant to the proposed discipline. Your response has been considered and I have decided to impose a one hundred and twenty (120) hour suspension. I have reviewed and considered your past disciplinary record, and work history in reaching my decision.

You are charged with die following violations of the Standard Operating Procedures (SOP) of the Albuquerque Police Department: *(and/or City of Albuquerque rules* 400 Roma NW    *and regulations or other City directives and conditions of employment if applicable>*

Lieutenant Edison claimed 2 hours of Covid-19 "call-out" overtime for listening to a voicemail, forwarding the voicemail to one of his detectives, and then reviewing the email generated by the detective. Lieutenant Edison also misrepresented his overtime in Telestaff.

*1-1-4 Rules of Conduct (40 hour suspension)*
*B. Compliance with Laws, Rules, and Regulations*
*2. Personnel will obey all federal, state, and local laws, all applicable rules and regulations Personnel will also enforce those lawful directives while protecting the rights of individuals, as established in the Constitution of the United States and the Constitution of the State of New Mexico. Adherence includes, but is not limited to, obeying all felony, misdemeanor, and traffic laws, applicable local ordinances, as well as all lawfully-issued civil orders of any jurisdiction. Each quarter, the Department will compile and review violation reports to identify trends.*

*D.   On-Duty Conduct (80 hour suspension)*
*19.   Personnel will not alter, misrepresent, or make any false statement in any verbal or written report or in any other written document that has been completed in the course of their employment*

Albuquerque          New Mexico 37102

Albuquerque - Making History 1706-2006

ISSUED BY:

Harold Medina
Superintendent of Police Reform/DCAO

SS%

RECEIVED BY:
lieutenant Jim Edison
October 29, 2021 1-247-
2021 Page - 2 -

**APPEAL:**

You may have the right to appeal this discipline in accordance with the provisions of the Merit System Ordinance or the terms and conditions of a Collective Bargaining Agreement (CBA).

For Ctry HR/APD Payroll: _____

Employee ID: __0000025498__

Effective  Date: _____

Suspension: __120 hours__

Effective Date Approved Bit _____   t-

DATE: __11/6/21__

Jim Edison





# City of Albuquerque

### Albuquerque Police Department

## Interoffice Memorandum

**To:** Zak Cottrell, Commander, Internal Affairs Professional Standards/ Sylvester

**From:** Stanley, Superintendent of Police Reform/ DCAO^

**Subject:** PDH Findings -1-247-21, Lieutenant Jim Edison

On October 27, 2021 at 0830 hours a Pre-Disciplinary Hearing was held for Lieutenant Jim Edison in my office, also present in the room was Union Attorney John D'Amato, Union President Shaun Willoughby, and Commander Cottrell.

After this hearing, my decision remains the same, the case is sustained with a 120-hour suspension to be given.

# CITY OF ALBUQUERQUE



**Albuquerque Police Department**

Harold J. Medina, Chief of Police

October 5, 2021

1-247-
2021

Jim Edison
400 Roma NW Albuquerque,
NM 87102

SUBJECT: PRE-DETERMINATION HEARING NOTICE Lieutenant

Edison:

The purpose of this correspondence is to notify you that a pre-disciplinary hearing has been scheduled in mv office only "thru", 2021. atOQOO hours with me. The purpose of this hearing is to give you the opportunity to provide information in your favor relevant to the proposed discipline. Pursuant to my delegated authority, under the City of Albuquerque Merit Ordinance, the proposed discipline is a one hundred twenty hour (120) suspension.

## ALLEGATIONS:

Lieutenant Edison claimed 2 hours of Covid-19 "call-out" overtime for listening to a voicemail, forwarding the voicemail to one of his detectives, and then reviewing the email generated by the detective. Lieutenant Edison also misrepresmert hi. overtime in Telestaff

You are charged with the following violations of the Standard Operating Procedures (SOP) of the Albuquerque Police Department:

### APP Standard Operating Procedures:

1-1-4 *Rules of Conduct (40 hour suspension)*
B. *Compliance with Law, Rules, and Regulations*
2. *Personnel will obey all federal, state, and local lam, all applicable rules and regulations. Personnel will also enforce those lawful directives while protecting the rights of individuals, as established in the Constitution of the United States and the Constitution of the State of New Mexico. Adherence includes, but Is not limited to, obeying all felony, misdemeanor, and traffic lam, applicable local ordinances, as well as all lawfully-issued civil orders of any jurisdiction. Each quarter, the Department will compile and review violation reports to identify trends.*

D. *On-Duty Conduct (50 hour suspension)*
19. *Personnel will not alter, misrepresent, or make any false statement in any verbal or written report or in any other written document that has been completed in the course of their employment.*



30 Roma NW

Albuquerque

New Mexico 87102

www.cabq.gov

Lleuwellit/Jim Edison 1-247-2021 October 5,2021 Page-2-

## REPRESENTATION

You may have two representatives of your choice present at the hearing for advice, but the hearing is not a hill evidentiary hearing. The hearing will be recorded.

## MEDIATION

This matter has been submitted to the Mediation Coordinator for review in accordance with Section 902.2 of the Personnel Rules and Regulations. The Mediation Coordinator has the sole discretion to determine whether this issue is appropriate for mediation. If this matter is deemed appropriate for mediation the time limits for holding the Predetermination Hearing, taking disciplinary action and any resulting grievance will be held in abeyance until such time as the mediation takes place or the Coordinator deems it inappropriate for mediation.

No final decision on discipline will be made until after you have had an opportunity to be heard and until after your supervisors have given sufficient consideration to your explanation. Your past disciplinary record, if any, will be reviewed. You will be notified in writing of the final decision.

ISSUED BY

r-Stanley-\-<:
endent of Po>we Reform/DCAO
WITNESS (Employee Refused to Sign)
SS/jb

RECEIVED BY                                           DATE: 10/18/21

                                                      Jim Edison

Date:





ALBUQUERQUE   POLICE   DEPARTMENT   IA
PROFESSIONAL STANDARDS

INVESTIGATION: 1-247-21
INVESTIGATOR: Det. A. Zamora

TIMELINE

| DATE | ACTION |
|---|---|
| April 27, 2021 | Cmdr. Armijo made a Blue Team entry. |
| May 3, 2021 | LAPS investigation assigned. |
| May 10, 2021 | Electronic email target letter sent to Lt. Edison. |
| May 12, 2021 | Interviewed Cmdr. Armijo. |
| May 19, 2021 | 2nd interview with Cmdr. Armijo. |
| June 9, 2021 | Interview with Margaret Baldonado. |
| June 9, 2021 | Hand-delivered target letter to DC Smathers. |
| June 22, 2021 | Interviewed Lt. Edison. |
| July 2, 2021 | 2nd interview with Lt. Edison. |

5/13/2021 Personal Calendar

April 2021 Calendar ● Edison, Jim A.

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 28<br>04:00 - 06:00 OCO | 29<br>02:30 - 04:30 OCO -<br>08:30 - 10:00 CTSP<br>10:00 - 12:00 - Co...<br>12:00 - 14:30 CTSP | 30<br>05:00 - 07:00 OCO<br>08:30 - 16:30 - Co...<br>16:30 - 18:30 OCO | 31<br>04:00 - 06:00 OCO -<br>07:30 - 08:30 OCO -<br>08:30 - 16:30 - Co...<br>16:30 - 20:30 OCO | Apr 1<br>02:30 - 04:30 OCO -<br>08:00 - 08:30 OCO<br>08:30 - 16:30 - Co... | 2<br>04:00 - 06:00 OCO<br>08:30 - 16:30 - Co...<br>08:30 - 16:30 *P...<br>16:30 - 18:00 OCO | 3<br>16:00 - 18:00 OCO -<br>02:30 - 04:30 OCO |
| 4<br>05:00 - 07:00 OCO -<br>09:30 - 11:30 OCO -<br>16:00 - 18:00 OCO | 5<br>05:00 - 07:00 OCO -<br>08:30 - 16:30 - Co...<br>17:00 - 19:00 OCO -<br>20:30 - 22:30 OCO - | 6<br>04:30 - 06:30 OCO -<br>08:30 - 16:30 - Co...<br>17:00 - 19:00 OCO<br>22:00 - 00:00 OCO - | 7<br>05:00 - 07:00 OCO -<br>06:30 - 08:30 OCO<br>08:30 - 16:30 - Co...<br>16:30 - 20:00 OCO | 8<br>05:00 - 07:00 OCO -<br>08:00 - 08:30 OCO<br>08:30 - 16:30 - Co...<br>17:30 - 20:00 OCO - | 9<br>04:00 - 06:00 OCO<br>08:00 - 08:30 OCO<br>08:30 - 16:30 *PO -<br>08:30 - 16:30 - Co... | 10<br>04:00 - 06:00 OCO -<br>11:00 - 14:00 OCO - |
| 11<br>05:30 - 07:30 OCO<br>10:00 - 12:00 OCO<br>15:00 - 17:00 OCO | 12<br>05:00 - 07:00 OCO -<br>08:30 - 16:30 - Co...<br>16:30 - 19:00 OCO | 13<br>04:00 - 06:00 OCO<br>08:30 - 16:30 - Co...<br>16:30 - 18:30 OCO | 14<br>05:05 - 07:00 OCO -<br>08:30 - 16:30 - Co...<br>16:30 - 22:00 OCO - | 15<br>05:00 - 07:00 OCO -<br>07:00 - 08:30 OCO -<br>08:30 - 16:30 - Co...<br>16:30 - 19:00 OCO | 16<br>04:00 - 06:00 OCO<br>08:30 - 16:30 CTS<br>● 08:30 - 16:30 *P... | 17 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 18 | 19<br>08:30 - 16:00 CTSP<br>16:00 - 16:30 - Co... | 20<br>04:00 - 06:00 OCO -<br>07:00 - 08:30 OCO -<br>08:30 - 16:30 - Co...<br>16:30 - 18:00 OCO | 21<br>03:00 - 05:00 OCO -<br>07:00 - 08:30 OCO -<br>08:30 - 16:30 - Co...<br>16:30 - 19:00 OCO - | 22<br>07:00 - 08:30 OCO -<br>08:30 - 16:30 - Co...<br>16:30 - 19:00 OCO | 23<br>[illegible]<br>08:30 - 16:30 - Co...<br>● 16:30 - 18:30 O... | 24<br>● 13:30 - 15:30 OC... |
| 25<br>● 12:00 - 14:00 GC...<br>● 16:00 - 18:00 OC... | 26<br>● 05:00 - 08:00 OC...<br>08:00 - 16:00 - Co... | 27<br>08:00 - 16:00 ASO | 28<br>08:00 - 16:00 ASO | 29<br>08:00 - 16:00 - Co... | 30<br>[illegible] PTO -<br>08:00 - 14:30 - Co...<br>14:30 - 16:30 ASO | May 1 |

