# EXTERNAL FORCE INVESTIGATION TEAM'S (EFIT'S) FOURTH Quarterly Report

## April 22, 2022 – August 5, 2022

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
August 23, 2022

TABLE OF CONTENTS

PAGE

TABLE OF EXHIBITS .......................................................................................................2

INTRODUCTION .............................................................................................................3

EXECUTIVE SUMMARY ..................................................................................................3

EFIT'S MANDATE .........................................................................................................8

ACCOMPLISHMENTS TO DATE ....................................................................................13

CONCERNS TO DATE ..................................................................................................27

    SUPERVISION ......................................................................................................27

    ALBUQUERQUE POLICE OFFICERS ASSOCIATION ..............................................28

    CITY LEGAL .......................................................................................................31

    SUSTAINABILITY ................................................................................................32

AMENDED STIPULATED ORDER AND BACKLOG FORCE CASES ("EFIT 2") ........................35

UPCOMING DATES ......................................................................................................41

TABLE OF EXHIBITS

PAGE

EXHIBIT A - STIPULATED ORDER ESTABLISHING AN EXTERNAL
FORCE INVESTIGATION TEAM (DOC. 720) ....................................................3

EXHIBIT B - AMENDED STIPULATED ORDER ESTABLISHING AN
EXTERNAL FORCE INVESTIGATION TEAM (DOC. 906) ................................4

EXHIBIT C - APD PROCESS NARRATIVE - JULY 12, 2021
(DOC. 839-1) ................................................................................................ 8

EXHIBIT D - APD PROCESS NARRATIVE - SEPTEMBER 8, 2021
 (DOC. 862-1) ................................................................................................8

EXHIBIT E - INTERVIEW TRANSITION POLICY – JANUARY 20, 2022
 (DOC. 900, EXHIBIT D) ..............................................................................13

EXHIBIT F - REVISED EMPLOYEE REPRESENTATIVE ADMONITION
(DOC. 912, EXHIBIT E) ............................................................................ 31

EXHIBIT G - METHODOLOGY FOR BACKLOG CASES
(DOC. 912, EXHIBIT F) ..............................................................................35

**Introduction**

1. Please accept this fourth quarterly report of the External Force Investigation Team ("EFIT").[1]

2. The EFIT Backlog Team ("EFIT 2" or "Backlog Team") also herein submits its first quarterly report at this time.

3. For the sake of the timing and completeness of this report, the data contained herein covers April 22, 2022, to August 5, 2022, inclusive. EFIT files its next quarterly report on November 16, 2022.

**<u>Executive Summary</u>**

4. On February 26, 2021, the United States District Court for the District of New Mexico (the "Court") granted a joint motion filed by the United States Department of Justice ("DOJ") and the City of Albuquerque ("City") with the concurrence of the Independent Monitor ("IM") by entering a Stipulated Order Establishing an External Force Investigation Team ("Stipulated Order") in the case *United States v. City of Albuquerque,* No. CIV. 14-1024 JB\SMV. (Doc. 720) (See Ex. A). The purpose of the joint motion was to stay a contempt of court proceeding. The Stipulated Order established the EFIT and its attendant mandate. On May 2, 2021, a preliminary contract was signed between DLG, Accounting and Advisory Services ("DLG, LLC") and Albuquerque Police Department ("APD"). On June 23, 2021, the full contract was signed by DLG, LLC and the City, enabling EFIT to commence full operations on July 16, 2021.

---

[1] While the Stipulated Order Establishing EFIT (Doc. 720), and its attendant mandate, or the Order establishing the EFIT Backlog Team, *did not require* either EFIT entity to file quarterly reports, in the interest of transparency, the EFIT Executive Team decided to prepare and file quarterly reports for both EFIT 1 and EFIT 2. In addition, for the sake of the timing and completeness of this report, the data contained herein covers April 22, 2022 to August 5, 2022, inclusive. EFIT will file its next quarterly report on November 16, 2022.

5. On March 21, 2022, the Court granted a joint motion filed by DOJ and the City with the concurrence of the IM by entering an Amended Stipulated Order Establishing an External Force Investigation Team ("Amended Stipulated Order") (Doc. 906) (See Ex. B). The Amended Stipulated Order modifies and supersedes the Stipulated Order previously entered by the Court ( Doc. 720).

6. The Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways.  First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part ("Backlog Force Cases"), in violation of the Court Approved Settlement Agreement ("CASA") (Doc. 465-1). Second, the Amended Stipulated Order extends by 24 months[2], from May 2022 through May 2024, the period during which the City shall continue to engage EFIT to assist IAFD to investigate new Level 2 and Level 3 use-of-force incidents ("New Force Cases").

7. In April 2022, the EFIT Executive Team was informed that the City of Albuquerque extended and funded EFIT's contract up to, and including, May 2024.  The full contract was presented to, and approved by, the City Council on May 16, 2022.  The contracts related to the Amended Stipulated Order were presented to and ratified by the City Council for ratification. On May 17, 2022, the City filed a Notice with the Court regarding the status of funding to effectuate the Amended EFIT Stipulated Order and the subsequent funding for EFIT 2. (Doc. 913).

---

[2] Or until the mission of EFIT 1 and EFIT 2 are fulfilled.

8. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond to all call outs within one hour of notification. All Use of Force ("UOF") investigations must be completed within 60 days with an additional 30-day supervisory review period for a total of 90 days from start to finish. Pursuant to the Amended Stipulated Order, EFIT must conduct joint investigations with APD Internal Affairs Force Division ("IAFD") of all Level 2 and Level 3 UOF incidents – this includes all Tactical Deployments where UOF is utilized. EFIT must also assist APD with training concerning the UOF. The EFIT Executive Team worked with APD IAFD to establish a detailed IA Investigative Process Narrative[3] that governs the response protocols to any Level 2 and 3 UOF cases.[4] These documents and the procedures for an IAFD/EFIT investigation and are the basis for EFIT to evaluate IAFD.

9. As of this report[5], 26 out of the 361 (7.20%) of the UOF investigations closed by EFIT/IAFD were found to be not within the APD UOF policies (this is a reduction from the 9.17% reported in the previous quarterly report). Most significantly, 121 out of the 361 (33.51%) of the UOF investigations closed by EFIT/IAFD were out of compliance when evaluated against the Process Narrative (Doc. 862)[6] utilized to assess investigations (this is a reduction from 44.45% reported in the previous quarterly report). While this is still an obvious concern for IAFD EFIT we are very encouraged by the approximately 11-point reduction.

10. EFIT's next quarterly report, which is to be filed with the Court on November 16, 2022, will continue to contain an analysis of these issues based on the findings of both APD UOF compliance and case investigative compliance.

---

[3] As required by Paragraph 14 of the Stipulated Order (Doc. 720 at 5), the Process Narrative was filed with the Court on July 12, 2021 (Doc. 839-1).
[4] A revised Process Narrative was filed on September 27, 2021 (Doc. 862-1).
[5] For these statistical purposes EFIT will be using August 5, 2022, as a cutoff date unless otherwise noted.

11. While this quarterly report addresses EFIT's qualitative findings up to and including, August 23, 2022, EFIT's statistical findings are as of August 5, 2022. However, the report provides a comprehensive review of EFIT's experience since inception.

12. As of August 5, 2022, EFIT and IAFD responded to (since July 16, 2021) and/or opened investigations on 502[7] UOF incidents to include 15 Officer Involved Shootings ("OIS")[8] and made 3 referrals to the Multi-Agency Task Force ("MATF")[9] for potential criminal violations. EFIT/IAFD completed 361 investigations all within the 90-day time period outlined in the Amended Stipulated Order.[10] Since inception, EFIT assumed 13 UOF investigations, but only 2 this reporting period, pursuant to Paragraph 23(b) of the Amended Stipulated Order as those investigations became close to violating the stipulated timelines but assumed only one case during this reporting period.[11]

13. EFIT is pleased to report that it witnessed a marked improvement in the workings of IAFD. Indeed, while there remains a great deal of work to be done, the tone and tenor within IAFD has improved substantially in this reporting period, the details of which are detailed below. (See Paras. 35-53 below).

---

[7] Two UOF investigations were transferred to the Internal Affairs Professional Standards Division ("IAPS") for both UOF and misconduct investigations. Other than responding to the scene, these investigations are not included in EFIT's statistics.

[8] One OIS was determined by IAFD/EFIT and the FRB, as being Out of APD Policy.

[9] The MATF i*s an investigatory task force composed of different law enforcement agencies and prosecuting offices as established by a Memorandum of Agreement. The purpose of the MATF is to conduct criminal investigations related to critical incidents involving OISs, uses of force where criminal allegations are made, and in-custody deaths* (APD SOP 1-67).

[10] Two of the closed cases involved an Officer who was involved in both cases and severely injured during the second of the two cases, an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days, respectively; and are not included in the statistical findings related to length of investigation or days to close the investigation.

[11] EFIT assumed one case during this recording reporting period.

14. EFIT also noted previous concerns regarding supervision and sustainability, which are also detailed below. (See Paras. 80 – 109 below).  It appears that APD is taking this issue seriously and EFIT welcomes the addition of Commander Scott Norris to head the IAFD Department. EFIT is working closely with Commander Norris to address this issue.

15. It is EFIT's intention that this report will provide the Court with a better understanding of the successes, recommendations and the failures of APD, particularly IAFD. It is EFIT's goal to teach, mentor and professionalize IAFD so that when EFIT's assignment is completed, EFIT leaves the City with a sustainable division that investigates UOF incidents in a timely and professional manner.[12]

16. Pursuant to the Amended Stipulated Order the City drafted a contract for EFIT to establish a secondary team ("EFIT 2") to investigate and address the 667 backlog cases. The City Council unanimously approved the contract on May 16, 2022, and EFIT 2 commenced work on June 15, 2022, with the training of two additional EFIT Teams in Albuquerque. The EFIT 2 Team was fully onboarded, established an approved methodology[13] and commenced investigating and closing the backlog cases pursuant to the relevant paragraphs of the Amended Stipulated Order (Doc. 906). (See Paras. 115-119 below).

---

[12] For extensive background information on the EFIT Executive and EFIT 1 Investigatory Teams please see EFIT's First Quarterly Report dated October 16, 2021 (Doc. 873).
[13] Approved by APD, IMT and DOJ on April 27, 2022 (Exs. G).

**EFIT's Mandate**

17. The Stipulated Order established the EFIT and its mandate. Based on discussions with the City, and to comply with the Amended Stipulated Order, EFIT 1's contract was extended and funded up to and including June 30, 2022. The full contract was presented to the City Council by way of a Letter of Introduction on April 29, 2022, to be presented to the full City Council on May 16, 2022.

18. Mr. Neier and Mr. Hurlock attended the City Council meeting on May 16, 2022. On the agenda were EC-22-76 and EC-22-77 extending and funding EFIT and the establishment and funding of the EFIT Backlog team, both until May 2024. These contracts were unanimously approved at that meeting. Both the EFIT 1 and EFIT 2 engagements are extended up to, and including, May 2024.

19. As stated previously, EFIT 1 derives its authority and jurisdiction from the Stipulated Order (Doc. 720) superseded by the Amended Stipulated Order (Doc. 906), Process Narratives (July 12, 2021, revised September 8, 2021) filed with the Court on July 16, 2021 (Doc. 839-1) and September 27, 2021 (Doc. 862-1), respectively (Exs. C & D).

20. Pursuant to the relevant documents, EFIT and IAFD are on call 24/7 and must respond within one hour of notification. EFIT and IAFD conduct joint investigations. All UOF investigations must be completed within 60 days and a 30-day supervisory review period for a total of 90 days from start to finish. Provisions are in place if an extension of these timelines is needed for extenuating circumstances, such as an inability to interview an officer sustaining serious injuries due to an OIS.[14]

---

[14] On October 20, 2021, a Notice was filed with the Court (Doc. 864) due to an OIS delaying the completion of two 60-day investigations.

21. The Amended Stipulated Order (Doc. 906 at Para. 12), and the Stipulated Order before it (Doc. 720 at Para. 12), establishes the staffing levels for the APD IAFD. As of August 5, 2022, IAFD met with the staffing requirement that IAFD must be staffed with 25 Detectives/Investigators.[15] Currently IAFD[16] has 15 civilian Investigators[17] and 14 Detectives, however in recent discussions with IAFD Commanders, it is anticipated that by the end of the current year, IAFD may lose several of the most experienced personnel due to retirements, promotions, and Officers requesting transfers to field divisions and specialized field units (See Paras. 104-109 below). Chief Medina authorized the staffing of IAFD to be increased in anticipation of the expected loss of an additional 7 sworn personnel.

22. While these staffing levels must be maintained under the Amended Stipulated Court Order (Doc. 906 at Para. 12), EFIT continues to express concern that these numbers tend to fluctuate and retention of both sworn and civilian personnel is a constant concern as IAFD moves extremely close to falling below required staffing levels.

23. Specifically, EFIT continues to express concern regarding the retention of Lieutenants, Sergeants, Investigators and Detectives in IAFD. Mr. Neier and Mr. Hurlock continue to meet with APD's Executives and counsel for the City regarding this issue. (See Paras. 107-109 below) and have had a preliminary meeting June 7, 2022, with DOJ and the legal counsel of the APOA.[18]

---

[15] For the purpose of this report, the term "Detective" equates to sworn APD personnel and "Investigator" is used for civilians conducting UOF investigations.

[16] As of August 8, 2022.

[17] Training of IAFD takes approximately 3 to 4 weeks for sworn personnel to over 2 months for civilians resulting in operational effectiveness (currently 5 are in training). It should be noted that sustainability of staffing is one of the main concerns of EFIT and will continue to be addressed in future reports to the Court.

[18] As of this report additional meetings are pending with the DOJ, EFIT and the APOA.

24. APD's Remedial Action Plan (Doc. 899) for IAFD was filed with the Court on February 15, 2022, and the parties' joint status report on EFIT filed with the Court on February 16, 2022, (Doc. 901) recognizing that EFIT is contributing to improvements in the IAFD process and recommending an extension of EFIT. Ultimately, the goal is for EFIT to return responsibility back to APD for UOF investigations.

25. As stated previously, the EFIT Executive Team worked to establish a detailed Process Narrative that governs the response protocols to Level 2 and 3 UOF cases. EFIT continues to review this document to ensure that it is serving the interests of the assignment and has made modifications, as necessary. Any modification is reviewed by the City Attorney's Office, DOJ and the IM. A revised Process Narrative was filed with the Court on September 27, 2021, (Doc. 862-1) and serves as the working procedure that IAFD/EFIT follows and the basis for EFIT to evaluate IAFD.

26. Once filed, the Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators.  In addition, the EFIT Executive Team conducted a class as to how the Detectives/Investigators would be evaluated by EFIT. The entire IAFD attended the class. This document establishes specific timelines and procedures to be followed for every Level 2 and Level 3 UOF investigation.

27. Cases that are fully investigated by IAFD/EFIT are reviewed by the EFIT Team Supervisor, then forwarded to the IAFD Sergeant for their review.  The IAFD Sergeant determines if the force is within APD policy, then forwards for an IAFD Command review. It is after the Command level review that the EFIT Executive Team reviews the UOF determination and recommends closing a case when appropriate.

28. Provisions were written into the Amended Stipulated Order should EFIT need to assume full responsibility of an investigation or disagree with IAFD's investigative findings.   In this fourth reporting period EFIT has assumed one UOF investigation, based on a concern regarding timeliness, pursuant to Paragraph 23(b) of the Amended Stipulated Order.

29. EFIT continues to recommend increased supervision going forward to prevent these issues from occurring in the future, Commander Norris requested a revision of the 5 squads of detectives/investigators to 6 squad overseen by an additional Sergeant to assist in the span of control. A pilot project involving two Sergeants was developed by IAFD/EFIT (See Paras. 72-74 below).

30. Finally, the Process Narrative also outlines the process IAFD and EFIT need to take if a UOF might subject an APD Officer to criminal liability. (Doc. 862 at Para. 18.) EFIT/IAFD made 0 referral to the due to the type of force utilized during this reporting period. While MATF will investigate for criminal liability IAFD/EFIT will continue the UOF investigation and IAFD will review the case for any misconduct by the Officers. Of the three cases referred to the MATA for review: – August 2021 – still under investigation:[19] September 2021 – District Attorney declined to prosecute;[20] and March 2022 still under investigation.[21]

---

[19] IAPS Investigated the UOF along with misconduct and found the UOF was within APD UOF Policies.

[20] IAPS Investigated the UOF along with misconduct and found the UOF was out of APD UOF Policies.

[21] IAFD Investigated the UOF along with misconduct and found the UOF was out of APD UOF Policies.

31. Closed UOF cases are presented to the Force Review Board ("FRB").[22] All Level 3 cases, tactical deployments, OIS, and 10 % of Level 2 cases are presented at FRB. Initially, EFIT had no role in the FRB process other than as an observer. However, as the cases that EFIT jointly investigated with IAFD are now at the FRB level. Mr. Neier and Mr. Hurlock believed that EFIT should have a more active role in the FRB. To that end, Mr. Neier and Mr. Hurlock met with APD, DOJ and the IM team to discuss the parameters for such participation to occur.

32. As a result, all parties agreed that EFIT may take a more active role in presentations made to the FRB. For those cases where EFIT assumed responsibility for the investigation, Mr. Neier or Mr. Hurlock will make the full presentation to the FRB. As no cases which EFIT assumed were selected for presentation to the FRB, Messrs. Neier and Hurlock have not made any such presentations as of the date of this report but have addressed questions that arose at the FRB for those cases where EFIT worked with IAFD to close.

33. Moreover, for all FRB proceedings at least one member of the EFIT Executive Team (often more than one) always attends the meetings. In addition, EFIT Team Supervisors now also attend FRB proceedings.  As of this report, 42 UOF investigations where EFIT/IAFD conducted a joint investigation were presented to the FRB (6 OIS, 27 Level 3 UOF and 9 Level 2 UOF).

---

[22] FRB - It is the policy of the Albuquerque Police Department (Department) *to conduct timely, comprehensive, and reliable reviews of (a) Level 2 and Level 3 use of force investigations to ensure the findings are supported by a preponderance of the evidence, and (b) tactical activations in order to analyze and critique specialized response protocols* (APD SOP 2-58) (emphasis added).

34. Mr. Hurlock, Mr. Neier and Mr. Bone continue to meet once a week with Associate Monitors members of the IMT, the IMT's subject matter experts regarding force related issues. While technical assistance is required under the Amended Stipulated Order, these meetings are extremely helpful for any contemplated process changes, discussions regarding pilot projects and ongoing investigations. The relationship between EFIT and the IMT is set forth more fully in Paragraph 27 – 29 of the Amended Stipulated Order.

35. EFIT is very pleased that there is a noticeable change in the tone and tenor within IAFD (since Commander Norris assumed the command of the division) among the Detectives/Investigators. This change includes a higher degree of motivation manifesting in such things as intersquad competition concerning the first to graduate the EFIT Transition Phase 4.

**Accomplishments To Date**

36. The EFIT Executive Team is pleased to report that, pursuant to the established protocols[23] (See Ex. E) to begin to transition IAFD Detective/Investigators to conduct interviews without EFIT's direct supervision, 11 IAFD personnel are progressing through the Phases of the system that will ultimately lead to an IAFD Detective/Investigators conducting UOF investigations without direct supervision of EFIT.

---

[23] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

37. Again, once a Detective/Investigator is identified by an EFIT Investigator, Supervisor or Executive Team Member, as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will make a determination that the IAFD Detective/Investigator may conduct interviews and the following process will be followed:

38. The EFIT Administrator and/or Deputy Administrator will notify APD Superintendent of Police Reform ("Superintendent"), IAFD Division Commander and Deputy Chief(s) (within the chain of command), along with the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

39. The Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

40. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

41. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in the phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief(s) and IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

42. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase:

**Phase 1 (10 Interviews/Investigations)**

a. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) no later than 24 hours with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.

b. The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours before the interview to discuss the impending interview.

c. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

d. Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.

e. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.

f. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT Investigator shall be involved in the interview.

**Phase 2 (10 Interviews/Investigations)**

a. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.

b. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

c.  Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.

d.  This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.

e.  Should the EFIT Executive Team deem that a second interview be necessary, an EFIT Investigator shall be involved in the interview.

**Phase 3 (2 Interviews/Investigations)**

a.  The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.

b.  The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.

c.  After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

d.  EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

**Phase 4 (On Scene 3 Responses)**

a.  The EFIT Executive Team will confirm that the cases the Detective/Investigator are assigned to are 95% compliant with the Process Narrative. This along with the results of the prior phases will be a determining factor that the Detective/Investigator and are ready to enter Phase 4.

b.  IAFD on-call Supervisor will be contacted by the EFIT On-Call Supervisor of the need to respond to a Level 2 or Level 3 UOF. Except for an OIS[24], the IAFD Detective/Investigator will respond without the direct oversight of EFIT and comply with all provisions of the Process Narrative.

c. The EFIT On-Call Supervisor will assign the case to an EFIT Investigator who will review Blue Team and the OBRD of the IAFD Detective/Investigator within 24 hours of the Blue Team entry. The EFIT Investigator will prepare a critique to be forwarded through the chain of command to the EFIT Executive Team.

d. Upon successful completion of three UOF responses, the EFIT Executive Team will communicate to the IAFD Commander that the IAFD Detective/Investigator can conduct UOF Investigations (other than an OIS) without direct EFIT supervision.

e. EFIT will continue to track the case through the Weekly Case Status meetings and if no concerns are raised, the case will be reviewed by the EFIT Executive Team prior to the UOF Investigation closed by IAFD.

43. As of this report, the EFIT Executive Team identified 10 Detective(s)/Investigator(s) from IAFD that advanced into the Interview Transition Process. 4 IAFD Detective/Investigators are currently in Phase 1, 1 IAFD Detective/Investigator are currently in Phase 2, 1 IAFD Detectives/Investigators are currently in Phase 3, and 4 IAFD Detectives/Investigators are currently in Phase 4.

44. EFIT is extremely pleased to report that as of the filing of this report one IAFD Detective graduated Phase 4, which will allow them to conduct investigations *without EFIT direct supervision*.

---

[24] EFIT will continue to respond to an OIS until further notice.

45. EFIT's overall evaluation of these interviews and UOF investigations for detectives/investigators in the transition phases are very positive to date. The members of IAFD admitted into this process are complying with the Transition Policy and EFIT Investigators report a positive interaction.

46. Based on the progress EFIT witnessed of the individuals in the transition process, the EFIT Executive Team expects that, within the next 3-4 weeks, two IAFD Detectives/Investigators completing the four phases will respond to, and investigate, UOF incidents without any EFIT direct supervision. Indeed, an additional Investigator was just elevated to Phase 4 on August 3, 2022.

47. The EFIT Executive Team continues to meet with all Division Field Commanders and many of the specialized unit Commanders, to explain the EFIT process, its qualifications and what their Officers could expect upon EFIT responding to UOF incidents. Additionally, it was important for Commanders to freely communicate concerns they are experiencing with the UOF investigative process. The EFIT Executive Team continues field visits and various Division briefings concerning EFIT, specifically any changes or modifications to the Process Narrative and relevant protocols.

48. As of the writing of this report, and the one-year, plus anniversary of the establishment of EFIT (May 2021), EFIT is pleased to share that it accomplished several changes to the IAFD investigatory process and established a certain level of professionalism within the IAFD team.

49. While certain of IAFD's accomplishments were reported in the first three EFIT Quarterly Reports filed with the Court, (Docs. 873, 900, 912), EFIT believes it is important to reflect on the on-going process. The EFIT Executive Team addressed a number of significant issues

facing APD. Indeed, the current Process Narrative and associated protocols were revised on more than one occasion as the result of issues and violations of the original version. Any proposed changes are circulated to APD legal, DOJ and the IM. Comments are received and when appropriate incorporated into the Narrative and/or discussed with the relevant entities.

50. When EFIT began, IAFD was conducting interviews somewhat haphazardly in random locations. Detectives were asking leading questions and did not allow witnesses to state what happened by using open-ended questions. Essential critical listening skills were not present. There were interruptions of interviewees during their statements.

51. EFIT stressed the avoidance of leading questions, and the Detectives/Investigators mostly adhere to this standard with minor exceptions that are addressed directly with the IAFD Detectives/Investigators. EFIT will continue to identify Detectives/Investigators that are eligible to enter the Interview Transition Process,

52. IAFD Detectives/Investigators and the Officers under UOF investigations are now dressed appropriately and professionally. Investigative reports are improving with each EFIT review and IAFD is now presented with high quality reports for the Supervisory, Command and FRB review.

53. EFIT believed that it was imperative that the tone and tenor – in accordance with the seriousness of these investigations – was established at the outset. That professionalism continues to develop as EFIT moves forward and it is important to note that IAFD has now embraced these changes on an institutional level.

54. Additionally, EFIT recommended certain few procedural changes and Special Order ("SO") be issued regarding SOD Tactical Activations where the APD SOD Tactical Commander requests assistance from an outside law enforcement agency and the assisting agency utilizes force. A meeting was held with the APD, DOJ, and the IMT, and a Special Order was approved.

55. The EFIT Administrator and Deputy Administrator participate in compliance meetings with APD, DOJ and the IMT and also participates in the current APD SOPs revisions and the proposed draft SOs as it relates to IAFD and/or UOF policies.

56. EFIT constantly monitors the UOF investigation case assignments to ensure that work is distributed evenly within IAFD. This issue is crucial to ensuring that the applicable timelines are met. This issue becomes particularly acute as assignments are made between Officers and civilian Investigators. EFIT made a number of recommendations that facilitated this process that were accepted by IAFD regarding callouts and case distribution. When EFIT observes that this process was not followed, any concerns are communicated to IAFD Command to be discussed and/or rectified.

57. Indeed, EFIT also worked closely with APD on many issues including, but not limited to, call outs. It is only through this collaborative approach that EFIT can fulfill its Court ordered mandate and eventually return the IAFD investigatory function back to the Department.

58. In addition, the EFIT Executive Team continues to meet weekly with APD, DOJ, the IM and other City officials. These meetings enhance the level of communication between these parties. EFIT firmly believes that communication is essential to fulfilling its Court ordered mandate.

59. Mr. Neier and Mr. Hurlock attended the recent meeting of the Civilian Police Oversight Agency ("CPOA") in an effort to make representatives of EFIT's Executive Team available to the Agency.

60. Mr. Neier and Mr. Hurlock participated in a series of Amici/Stakeholder meetings listed below:  June 21, 2022, Community Policing Council ("CPC"); June 22, 2022, Community Coalition, June 22, 2022, Mental Health Response Advisory Committee ("MHRAC"), June 22, 2022, Albuquerque Police Department Forward Coalition; June 23, 2022, Civilian Police Oversight Agency ("CPOAB"), June 24, 2022, McClendon Sub-Class, July 12, 2022, Albuquerque Police Department Forward.

61. On August 3, 2022, Mr. Neier and Mr. Hurlock presented to the SW Community Policing Council and look forward to presenting to other groups as requested so that the public can receive real time updates as to the EFIT process and progress.

62. Again, the EFIT Executive Team believes that transparency with all concerned groups is essential for EFIT to fulfill its Court ordered mandate.

63. In the first Quarterly Report the EFIT Executive Team reported that APD Officers remained on scene for extended periods of time. While EFIT appreciates Officer safety, once a scene is secured, EFIT recommended, and APD instituted, a new practice where nonessential Officers – including those Officers that did not use or witness the force event are now cleared and sent back on patrol.

64. This issue was addressed with Field Commanders. Once on the scene EFIT/IAFD (on average 26 minutes from notification) they are briefed by a field supervisor, if EFIT/IAFD observe Officers not involved in the UOF or is a witness to the UOF the supervisor is instructed to have to Officer(s) return to service. EFIT/IAFD are fully clearing these UOF scenes on an average of 53 minutes. EFIT is pleased to report that this positive trend continues during this reporting period.

65. As August 5, 2022, EFIT/IAFD responded to, and are investigating, a total of 502[25] UOF incidents. These investigations are completed on an average of 53.84 days. In addition, 361 UOF investigations were closed,[26] averaging a total of 87.10[27] days for closure. Although there is improvement, EFIT remains concerned (although within the time constraints of the Amended Stipulated Order) that these averages are too close to the maximum range and remain too high if EFIT is to complete its Court ordered mandate. Supervisor reviews remain at an average of 20.81 days. Of the UOF cases closed (361), 26 UOF cases were out of APD Policy (7.20%)[28] and 121 of the 361 investigations (33.51%) failed to comply with the Process Narrative.

---

[25] Two UOF investigations were transferred to IAPS for both UOF and misconduct investigations and other than responding to the scene they are not included in EFIT's statistics.
[26] This includes a comprehensive EFIT Executive Team review period.
[27] Two of the closed cases involved an Officer who was subsequently severely injured during an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days and are not included in the statistical findings related to length of investigation or days to close the investigation.
[28] It should be noted that one of the cases transferred to IAPS was out of APD policy and is not included in the statistics of EFIT assumed cases.

| Period by Quarter | Inv. Days | Supr. Review Days | Total Days for UOF Inv. To be Closed | Cases Closed | % Out of Compliance | % Out of APD UO Policy |
|---|---|---|---|---|---|---|
| July 16, 2021 - Sept 30, 2021 | 53.83 | | | | | |
| Oct 1. 2021 - Dec 31, 2021 | 55.35 | 24.94 | 88.37 | 111 | 27.02% | 9.90 |
| Jan. 1, 2022 - March 31, 2022 | 53.63 | 18.71 | 87.88 | 103 | 60.19% | 7.76 |
| April 1, 2022 – June 30, 2022 | 53.03 | 16.02 | 85.39 | 103 | 22.33% | 5.82 |
| July 1, 2022 – August 18, 2022 | 51.13 | 18.26 | 86.87 | 55 | 14.54% | 5.45 |

66. During this quarterly reporting period APD experienced 4 OIS incidents, 2 accidental discharges in addition to 15 tactical activations, 3 use of K9, 22 use of an ECW, and 12 involving an impact weapon. EFIT previously identified numerous issues regarding these cases. Specifically, during this most recent quarter, EFIT observed and/or discovered that IAFD made a noticeable improvement with the way IAFD is handling OIS and other complex investigations

67. Mr. Neier continues to work with representatives of Aegis Solutions LLC ("Aegis"). Aegis is developing an Internal Affairs Training program for IAFD pursuant to the express requirements of the Amended Stipulated Order[29] Par. 32 (Doc. 906). The EFIT Executive Team will continue to provide any addition assistance as requested. When the two-week Aegis training is provided to IAFD, EFIT will be responsible for all of the on-scene investigations (during training periods) for IAFD Detectives/Investigators to complete this mandated training pursuant to the Amended Stipulated Order.

68. EFIT and IAFD continue to conduct a weekly case status meeting and track cases at all intervals. These meetings identify concerns regarding investigative obstacles, case prioritization and allocation of resources. The concerns are addressed with

---

[29] As of March 21, 2022, Amended Stipulated Order.

Detectives/Investigators and Supervisors immediately and if necessary, with IAFD Command at the conclusion of the meeting.

69. EFIT Investigators and Supervisors continue to oversee all cases to include review of onsite work, interviews and reporting. EFIT is constantly evaluating IAFD Detectives, Investigators, Supervisors and the IAFD Division. To that end, EFIT is conducting weekly meetings with APD Command Staff, Field Commands and many of the Specialized Units.

70. EFIT continues to utilize the evaluation rubric (previously approved by the IM and DOJ). This is a valuable tool to evaluate IAFD and relevant personnel pursuant to the Amended Stipulated Order, Doc. 906 at Para. 33. EFIT implemented this process for *each* investigation conducted by IAFD and EFIT commencing on or after September 7, 2021.

71. The rubric was updated as of December 1, 2021. While it continues to contain approximately forty-five areas where IAFD personnel are evaluated, and closely tracks the Process Narrative, there are now eight enumerated categories where an individual must pass or be considered failing. Based on a close review of the process, the EFIT Executive Team added another category that will automatically take a case out of compliance as a result of IAFD's failure to address systemic issues, such as the lack of an investigative plan or failing to collect available evidence.

72. A Detective/Investigator must still attain a 95% proficiency rating for two consecutive terms before they are deemed proficient to conduct interviews outside of the presence of an EFIT Investigator.

73. EFIT, while working closely with the senior officers in APD, is pleased to report the establishment of a group of investigators and detectives dedicated to investigating all Level 1 use of force incidents. Many of the members who will participate in this newly formed investigatory team were trained by EFIT personnel.

74. EFIT is pleased to report that previously cancelled IAFD supervisory meetings for the entire IAFD department were reinstated upon the arrival of Commander Norris. Additionally, a pilot project was approved by the IMT and DOJ that the EFIT Executive Team and IAFD Command established together, to enhance supervision.   Currently, IAFD detectives/investigators are required to develop and follow an Investigative plan pursuant to the Process Narrative, to ensure they meet specific deadlines, assist in organization, and ensure the investigation adheres to the process narrative.  This is used as a self-management control for the detectives/investigators, and management control for the supervisors.  This responsibility currently falls on the investigator/detective, with sergeant and EFIT oversight. During the pilot project, the investigative plan is now the responsibility of the supervisor with input from EFIT at the required 72-hour meeting.

75. IAFD and EFIT Command believe this will compel the first line supervisor to direct the investigation while the investigator conducts the investigation.  The first line supervisor will provide the completed investigative plan, setting timelines, goals and objectives to the detective/investigator and ensure they are followed.  This will allow the supervisor to become intimately involved with the investigation and execute necessary corrections in real-time instead of at the conclusion - or late in the investigation.  Additionally, EFIT believes this will compress the time for the supervisory review, minimize after-the-fact corrections and requests for extensions and promote closer supervision and oversight.

76. Additionally, since Commander Norris assumed the lead in IAFD, the use of roundtable discussions, and enhanced approved training opportunities not offered in the past by the APD Police Academy have been and will be scheduled for investigators assigned to IAFD and IAPS. These include, but are not limited to, legal block and RBT training. EFIT supports this training and will also participate as time permits.

77. Communication at all levels within IAFD and APD Superintendents Office have dramatically improved over the last quarter these include but are not limited to bi-weekly meetings with the A/Superintendent, A/Deputy Superintendent, Commander Norris and EFIT Executives, weekly status meetings between IAFD Command Staff and EFIT Executives, conducting roundtables and weekly briefings on high profile and/or sensitive investigations, coordination between IAFD and Internal Affairs Professional Standards ("IAPS") and joint APD training opportunities for IAFD and EFIT investigators.

78. Due to a recent tactical activation approximately 327 OBRDs were uploaded from SOD, Investigative Support Unit and the Gun Violence Reduction Unit as potential evidence. As done previously, EFIT received authorization from IMT to conduct a preliminary review and place these OBRDs into various reviewed categories:

   a. Actual Use of Force;

   b. Witness Use of Force;

   c. Show of Force;

   d. Officers on the Perimeter;

   e. Officers detailed to talk to the public; and

   f. Other.

79. Additionally, EFIT divided the Investigative Support Unit and the Gun Violence Reduction Unit OBRDs into the following categories:

   a.  Any Contact with or surveillance of the Individuals;

   b.  Show of Force;

   c.  Officers on the Perimeter;

   d.  Officers detailed to talk to the public; and

   e.  Other.

80. EFIT welcomes the opportunity to assist, and train IAFD personnel regarding these important issues and supports efforts to mitigate the amount of OBRD needed to be viewed during UOF Investigations. EFIT Investigators will continue to follow the Individual from inception (first contact) with APD through the final contact. EFIT will review all evidence necessary to determine if the force was reasonable, necessary, proportionate, minimal and within APD SOP's and guidelines.

## Concerns To Date

81. While there have been improvements in the overall process, EFIT remains concerned with the IAFD supervisors and the sustainability of IAFD's recruitment and retention of personnel.

## Supervision

82. EFIT previously expressed concerns with the manner in which the IAFD first line supervisors are handling daily supervision of the Detectives/Investigators in the Division. EFIT believes that this is clearly a first line supervisory issue that, if left uncorrected, will continue to render investigations out of compliance with the Process Narrative (Doc. 862). EFIT is pleased to see that Commander Norris and the APD senior personnel have taken numerous steps to address these issues.

83. As discussed, supervision, at all levels was severely lacking. Indeed, supervisors, at all levels, must take responsibility for compliance. IAFD is making strides with the daily mentoring of EFIT at the Detective/Investigator levels. IAFD Command is now focusing on all levels of supervision to ensure that the IAFD reaches a 95% compliance level as required by the Amended Stipulated Order. At this point, it appears the IAFD is now on the correct path to achieving compliance.

84. While the scheduling dramatically improved, failure to notice the EFIT Investigator, still occurs and EFIT recommends that the directive be reissued. EFIT Investigators were advised that if the scheduling procedure is not followed, they should recommend that the interview be rescheduled so that they have the ability to properly prepare. If the interview continues without EFIT being present, the entire investigation is deemed out of compliance pursuant to the process narrative.

85. It should be noted that EFIT is not advocating speed at the expense of a thorough and complete investigation. However, EFIT believes that it is possible to have a thorough and complete investigation in a timely manner.  When EFIT provides direct guidance during a UOF investigation the total completion time is averaging 88.01 days. EFIT believes that with proper supervision by IAFD these investigation and review timelines will decrease.

**Albuquerque Police Officers Association**

86. On May 3, 2022, Mr. Neier was informed that the APOA filed a Petition for Temporary Restraining Order & Preliminary Injunctive Relief related to an OIS on the purported grounds that IAFD predetermined the OIS and that the APOA was demanding that the case be investigated by an outside agency. As this OIS was under investigation by EFIT/IAFD and interviews are scheduled, DOJ was immediately notified.

87. A meeting, requested by DOJ, was held on May 6, 2022, with DOJ, APD, APD Legal and EFIT (Mr. Neier and Mr. Hurlock). EFIT was advised that the APOA filed the petition with the Albuquerque Labor Relations Board and a hearing date was set for May 16, 2022. EFIT further advised that the APOA requested a consensual agreement that until the matter was heard, no further interviews would be conducted. This request was denied by APD, and IAFD/EFIT will proceed with the investigation. After discussing strategy and the possibility of removing the matter to this Court.

88. The APOA's application was heard by the Labor Relations Board on May 10, 2022. The Board denied the APOA's application in its entirety. However, if successful, APOA's application would seriously impact the timetables set forth in the relevant documents regarding UOF Investigations.

89. This reporting period Mr. Neier and AUSA Hager attended a meeting with APOA legal counsel Fred Mowrer and John D'Amato. It was evident, based on the initial tone of the meeting, that APOA counsel received complaints from IAFD and others within APD concerning the number of investigations conducted, communications regarding investigations, EFIT assumption of investigations and how the timelines of UOF investigations/closings should be extended.

90. The information that Mr. Mowrer and Mr. D'Amato shared with Mr. Neier and AUSA Hager was completely inaccurate. Indeed, most of it was antidotal from the leadership of the APOA and formed the basis of the alleged grievances from IAFD personnel.

91. During the meeting, Mr. Neier provided accurate information, based on documentation, to refute these accusations. Mr. Mowrer requested copies of the documentation and data.

92. With DOJ's express authorization, Mr. Neier provided Mr. Mowrer with the following material:

- A letter issued on May 27, 2022, wherein EFIT notified DOJ, the City and the Monitor that is was assuming two UOF investigations;

- A page from the EFIT Weekly status report 50 that contained weekly statistical data;

- Court Document 862, the Process Narrative that IAFD and EFIT must follow when conducting a UOF investigation; and

- Statistical data that, as of June 3, 2022, confirmed that 21 Detectives/Investigators have active UOF investigations of approximately 2.71 cases. Five Sergeants are in the process of reviewing 5.8 UOF cases. IAFD Detectives/Investigators are currently investigating 17 misconduct cases in totality.

93. At this meeting, Mr. Neier and AUSA Hager were also advised that the APD Investigators (IAFD included) filed a petition to unionize as part of the APOA. Additional meetings will be scheduled between the APOA Counsel, DOJ and EFIT.

94. While it is the right of the APOA to file any grievance they deem appropriate to protect the members of the APOA, the EFIT Executive Team will monitor any actions filed with the Albuquerque Labor Relations Board or Personnel Board with the potential of impacting the mission of EFIT.

95. Due to the severity of one UOF investigation, a request was made to the APOA to waive Section 20.1.7 of the APOA Collective Bargaining Agreement ("CBA") that would allow only two participants to conduct IAFD/IAPS interviews. On August 3, 2022, a written waiver of Section 20.1.7 was granted by Mr. Mowrer on behalf of the APOA on this specific UOF investigation.

96. EFIT reported on the prior actions of the APOA where the union's representatives interrupted interviews in clear contravention of CBA. Since EFIT's inception and after the initial meetings with the APOA, EFIT is not experiencing the number of issues originally observed. However, on occasion these issues unfortunately occur with representatives interrupting interviews or acting in an unprofessional manner.

97. When such conduct was identified, Mr. Neier and Mr. Hurlock immediately requested a meeting, and met with, counsel for the APOA to rectify the situation.

98. In addition, the EFIT Executive Team requested that the Employee Representation Admonition form (standard employee representative observer form that IAFD must use when conducting interviews) become an official document of APD. On April 12, 2022, APD advised EFIT that this form was renamed "Sworn Employee Representative Admonition Form" and is now an official APD document (PD 1142) (See Ex. F ).

**City Legal**

99. Most disconcerting this reporting period, late Friday afternoon of June 24th, Mr. Hurlock received notification from the United States District Court that City Legal filed the City's EFIT Remedial Action Plan Quarterly Report.

100.  Regrettably, the report contained numerous factual inaccuracies provided from – at best - questionable sources. Once filed, Messrs. Neier and Hurlock worked around the clock to ascertain what occurred and to respond to the factually inaccurate report.

101.  Mr. Hurlock also worked very closely with City Legal and DOJ to effectuate a motion to strike the report and to file a corrected report. Despite EFIT's sense of urgency, these documents were not filed until late Monday afternoon.

102.  EFIT expressed many concerns that such a report could ever be filed with a United States District Court Judge. The report was a gross misrepresentation of EFIT's work over the last year. Clearly the report was never forwarded to APD senior executives for review prior to filing and/or there is a complete lack of engagement on the part of certain key individuals within City Legal as to what is really going on with regards to EFIT's work. Either way, it is extremely troubling and must never occur again.

103.  Messrs. Neier and Hurlock met with senior APD leadership concerning this issue. In addition, Messrs. Neier and Hurlock provided written comments to the draft Amended and Corrected Report. Most recently, the Judge signed the order to strike the erroneous report. However, it remains on the Court's docket will full access to the public and press. EFIT strongly believed that the record needed to be corrected as soon as possible for the benefit of all concerned.

104.  On July 8, 2022, the City filed with United States District Court the City's Amended *EFIT Remedial Action Plan Quarterly Report* (Doc. 935 and 935-1). EFIT reviewed and commented on the document prior to filing. However, most concerning, the erroneous document remained on the Court's docket, with full public access, for some time.

**<u>Sustainability</u>**

105.  While there have been numerous notable and important changes during this reporting period, sustainability of trained IAFD Detectives/Investigators continue to be one of the EFIT Executive Team's main concerns related to the eventual transfer of responsibility from EFIT to APD for conducting thorough and complete investigations of Level 2 and Level 3 UOFs as individual IAFD Detectives/Investigators and Supervisors meet the qualifications identified in Paragraph 33 of the Amended Stipulated Order. (Doc. 906).

106. As stated previously, the collective bargaining agreement between the City and the APOA contract enables sworn personnel to "bid" based in part with seniority into APD's various divisions on an annual basis. EFIT witnessed the lack of sworn personnel interested in transferring into IAFD requiring APD to assign those applicants from the bottom of the bid list[30] to IAFD to ensure compliance with the staffing levels of the Amended Stipulated Order.

107. This is especially so when promotions, requests for transfer of senior sworn personnel occur and a bid is announced. The loss of these trained personnel can be devastating. It is anticipated that by December 2022, numerous sworn personnel that are in the transition process will no longer be assigned to IAFD.  Additionally, four of the first line supervisors have tested for promotion and if promoted will have to transfer out of IAFD.

108. As EFIT expressed concern, APD committed to over staffing the civilian investigators in IAFD.  However, EFIT mentioned previously that a well-functioning Internal Affairs Division needs both sworn and civilian personnel.

109. As of August 5, 2022, IAFD is currently staffed as follows:

11 Sworn fully trained;

2 Sworn on leave (counted in the 11 above);

2 Sworn in PRU[31] (not counted of the 11 above);

1 Sworn Vacancy;

10 Civilian Investigators fully trained;

1 Civilian Investigator in training;

1 Civilian Investigator on leave (counted in the 10 above);

---

[30] Certain Officers have less than one year of active duty with APD, once transferred to IAFD they are afforded "Detective" status.
[31] These individuals are not actively working on Level 2 or Level 3 use of force investigations.

1 Civilian working on FRB preparation work[32] (not counted in the 10 above);

4 Sergeants;[33]

1 PRU Sergeant;[34]

2 Acting Sergeants;

0 Lieutenants;

1   Acting Lieutenant;[35]

2 Deputy Commanders;

2 Acting Deputy Commanders; and

4 Support personnel.

IAFD was authorized to hire 7 civilian investigators. 3 have a hire date and one is pending a hire date; thus, 4 are pending.

110.  EFIT, IAFD Command and APD Command Staff are discussing various ways that will not impact the APOA CBA with incentives for members of IAFD. Additionally, the DOJ and EFIT executives will be holding additional meetings with APOA to discuss various issues including the sustainability of IAFD.

---

[32] These Individual are not actively working on Level 2 or Level 3 use of force investigations.
[33] Three have taken and passed the written portion of the APD promotional examination for lieutenant.
[34] These individuals are not actively working on Level 2 or Level 3 use of force investigations.
[35] One has taken and passed the written portion of the APD promotional examination for lieutenant.

**Amended Stipulated Order and Backlog Force Cases ("EFIT 2")**
**EFIT's Basis and Authority**

111. On March 21, 2022, the Court signed the Amended Stipulated Order (Doc. 906) that established and provided the authority for EFIT to investigate the Albuquerque Police Department ("APD") Use of Force ("UOF) backlog cases pursuant to Exhibit 1 (Scope of Work or "SOW") attached to the Amended Stipulated Order (Doc. 906).

112. In April 2022, EFIT executives, with the assistance of APD, drafted the Backlog Methodology that was circulated to APD, DOJ and the IMT for comment. Final approval was received on April 27, 2022, and the Backlog Methodology was filed on May 16, 2022, by EFIT as Exhibit G to the EFIT Third Quarterly Report (Doc. 912) (See Ex. G). Additionally, on June 17, 2022, APD issued Special Order 22-76 Implementation of the External Force Investigative Team ("EFIT 2").

113. Specifically, EFIT invoked that portion of the Amended Stipulated Order as follows:

   A. The City shall enable the EFIT Administrator to establish a Backlog Team to complete investigations of the Backlog Force Cases in accordance with the SOW attached to this Amended Order as Exhibit 1.  The Parties shall jointly file a notice with the Court when the EFIT Backlog Team is fully constituted and commences operations.

   B. When the Backlog Team completes an investigation, the EFIT Administrator shall submit the case materials, including narratives and recommendations, to IAFD for final closure. Upon receiving a completed backlog case from EFIT, IAFD shall close the case by performing the administrative steps outlined in the revised IAFD process narrative, Doc. 862-1, ¶¶ 59–63.

C. The Force Review Board (FRB) shall review completed EFIT Backlog Team investigations pursuant to the process identified in SOW, ¶ 20.  Consistent with the CASA, Doc. 465-1, ¶ 78(b), any Backlog Team investigation reviewed by the FRB shall be presented by the EFIT Administrator or Deputy Administrator. The first presentation of an OIS on August 10, 2020, will be presented to the FRB on September 8, 2022. This particular OIS was found to be reasonable, necessary, proportionate and minimal within APD guidelines and SOPs at the time of the UOF.

D. Within 30 days after EFIT completes an investigation pursuant to the SOW, APD shall respond in writing to the recommendations, if any, made by the EFIT Administrator and/or the EFIT Executive Team in that investigation pursuant to the SOW.

E. Within 90 days after EFIT completes the investigation of all Backlog Force Cases, the City shall provide a written report to the EFIT Executive Team, DOJ, and the Independent Monitor, which includes, at a minimum:

114.  The City's response to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;

A. the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

B. the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

C.  the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

D.  the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

Amended Stipulated Order Paras. C7 through C11.

115.  Specifically, EFIT invoked that portion of the Special Order as follows:

A.  The Department has authorized EFIT 2 personnel to conduct administrative investigations and to perform all investigatory functions set forth in Department Standard Operating Procedures ("SOPs").

B.  All Department personnel shall fully cooperate with EFIT 2 personnel that conduct investigations. Department personnel who fail to do so may be subject to discipline pursuant to Department SOPs, including but not limited to SOP 1-1 Personnel Code of Conduct, subsection 1-1-6 A.3.a and SOP 3-41 Complaints Involving Department Personnel.

116.  The EFIT Executive Team conducted interviews for the Backlog Force Case Investigations Team and is pleased to announce that several seasoned and experienced attorneys and former law enforcement personnel will serve as EFIT 2.[36]

---

[36] Two teams of one supervisor and three Investigators along with the existing EFIT Executive and analytical Support Teams.

117. On June 16-17, 2022, an intensive on-boarding occurred with all members of EFIT 2 Backlog Teams at APD Headquarters. While the approved methodology for the backlog teams outlines the order the UOF investigations will be completed, each backlog investigator was provided with two Level 2 UOF investigations prior to formally investigating these cases.

118. APD issued a Special Order (SO 22-76) outlining the cooperation expected from all Sworn APD Officers as the EFIT Backlog Team went "live" on June 20, 2022.

119. On May 17, 2022, the City filed with the United States District Court for the District of New Mexico the City's Notice of Funding of the External Force Investigative Teams (Doc. 913).

120. As previously noted, the Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways.  First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate the Backlog Force Cases, namely, all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part, in violation of the CASA, (Doc. 465-1). Exhibit 1: Scope of Work to Remedy the Backlog Force Cases ("SOW") to the Amended Stipulated Order (Doc. 906, Ex. 1 at 1-2, Para. 6) provides:

*"The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases. The City, DOJ, and the Independent Monitor shall*

*provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it. The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor."*

121. The EFIT Executive Team conducted a number of meetings with APD's Accountability Bureau, including the Compliance and Oversight Division and the newly created Data Analytics Division who will also assist calculating normative thresholds for UOF to identify the Officer(s) who utilize UOF over the expected incident rate and are thus considered High Incident Officers.

122. With assistance from APD's Accountability Bureau, the EFIT Executive Team obtained the data of all the Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906). Additionally, the EFIT Executive Team worked with members of the Accountability Bureau to develop a dashboard that is similar to the current IAFD case tracking and management dashboard, stratifying the data readability that will be distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboardhas been tested by the Data Analytics Division and EFIT and is distributed weekly along with the EFIT Weekly Status Report to various individuals of APD, City Legal, DOJ and the IMT.

123. Pursuant to the Statement of Work for the Backlog Force Cases ("SOW") the EFIT Backlog Team had to review 12 UOF investigations previously completed by IAFD during the period the Amended Stipulated Agreement was being negotiated between the City and DOJ.

124. These 12 UOF investigations were assigned to the backlog team supervisors who determined that a sufficient investigation was conducted and agreed with the findings of IAFD, for 8 investigations the Officers' actions were reasonable, necessary, proportionate and minimal and within APD guidelines and SOPs and 4 (one or more of the officers) UOF were outside of APD UOF Policies.

125. As of this report, EFIT assigned 52 UOF investigations to the backlog team that completed 27 investigations. Prior to being closed, each case is reviewed by the EFIT Executive Team and forwarded to APD.

126. Pursuant to the SOW, EFIT, when appropriate and/or warranted, will make observations and recommendations in the body of the report. The final reports are recommendations sent to Deputy Chief Lowe who will respond in writing within 30 days to recommendations made by EFIT.

127. While not a requirement in the SOW, EFIT Executives discussed with Deputy Chief Lowe the need to issue a letter to the involved Officer(s) similar to the letter recommended by EFIT that is utilized by IAFD when a case is closed. This letter will include that the case was closed within or outside APD policy, observations and recommendations made by EFIT, and any administrative investigations that may have occurred had these investigations been completed in a timely manner. This letter will serve not only as notification to the Officer(s), but as best practices identified to facilitate Constitutional policing.

128. The backlog teams are currently investigating OIS and High Incident Officers (excluding the 12 cases previously investigated by IAFD and reviewed by EFIT) and opined that the officers' actions were reasonable, necessary, proportionate and minimal and within APD guidelines and SOPs in all of the UOF backlog force cases closed so far.

129. If an APD Officer is identified as a High Incident Officer, once all the cases involving the Officer are completed, the EFIT Executive team will conduct a review of all the cases and issue a memorandum identifying patterns or practices identified.

130. The following table captures the status of the backlog cases assigned to EFIT:

**EFIT 2 – UOF Backlog Update**

| EFIT BACKLOG INVESTIGATIONS AS OF August 23, 2022 | |
|---|---|
| **Total Backlog** | **667** |
| Assigned to EFIT Investigators | 43 |
| 12 UOF Investigations Previously Completed by IAFD Assigned to EFIT | 12 |
| Sub-Total | 52 |
| 12 UOF Investigations Previously Completed by IAFD Closed by EFIT | 12 |
| EFIT Investigators - UOF Investigations Closed | 14 |
| Total Completed | 27 |
| **Investigations Pending** | **640** |

**Upcoming Dates**

131. In September 2022, EFIT will present its Quarterly Report to the Court and all parties.

132. On November 16, 2022, EFIT will file its fifth Quarterly Report with the Court.

133. Once again, we thank the Court for the opportunity to submit this report. I, and my team, are available should the Court have any questions or need any additional information concerning EFIT or its attendant mandate.

Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

Encls.

# EXHIBIT

# A

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

FEB 2 6 2021

MITCHELL R. ELFERS
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

Plaintiff,

vs.

THE CITY OF ALBUQUERQUE,                    No. CIV. 14-1025 JB\SMV

Defendant,

vs.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

Intervenor.

## STIPULATED ORDER ESTABLISHING AN
## EXTERNAL FORCE INVESTIGATION TEAM

This matter comes before the Court on the Joint Motion of Plaintiff United States of

America and Defendant City of Albuquerque (collectively, the Parties), with the concurrence of

the Independent Monitor, for entry of this Stipulated Order, which requires the City to establish,

on a temporary basis, an External Force Investigation Team (EFIT) to assist the Albuquerque

Police Department (APD) in conducting investigations of Level 2 and Level 3 uses of force by

APD officers, while also assisting APD with improving the quality of its own Internal Affairs

(IA) force investigations. This Stipulated Order also requires the City to improve APD's IA

processes, increase the number APD IA force investigators, and provide additional training to

APD's IA force investigators. The Parties intend the measures in this Stipulated Order to ensure

high-quality, timely investigations of Level 2 and Level 3 force incidents, and to address the

investigative deficiencies in APD's IA force investigations identified in the Independent



Monitor's Twelfth Report, Doc. 652.  The Court approves this Stipulated Order and enters it as

an Order of the Court.

## A.  Establishment of the External Force Investigation Team

1.  The City shall establish an EFIT to guide and direct IA force personnel, and when

    necessary, conduct investigations of Level 2 and Level 3 uses of force; provide written

    assessments of IA investigations carried out by IA force personnel; and provide written

    feedback on IA force personnel's work product.  *See* Doc. 465-1 ¶ 48 (defining Level 2

    and Level 3 uses of force).

2.  For the purposes of this Order, "IA force personnel" includes IA force investigators and

    supervisors, other than IA Commanding Officers; "investigations of Level 2 and Level 3

    uses of force" include both investigations and the review of investigations by supervisors;

    and "Independent Monitor" may include members of the Independent Monitoring Team.

3.  EFIT shall be overseen by an Administrator.  The City shall empower the EFIT

    Administrator to hire and retain the staff necessary to fulfill the requirements of this

    Order.  It is anticipated that the EFIT Administrator will hire and retain a number of

    Investigators, as well as administrative support staff and Supervisors, as necessary to

    fulfill the duties under the EFIT Administrator's contract with the City.  The EFIT

    Administrator shall ensure that a sufficient number of EFIT Investigators to meet the

    requirements of Paragraph 17 of this Order are physically present in Albuquerque and

    able to respond to the scene of Level 2 and Level 3 uses of force.

4.  The EFIT Administrator shall have experience and expertise in investigating law

    enforcement misconduct, the constitutional standards for police officers' use of force, and

    systems reform litigation.  The EFIT Supervisors and Investigators shall have experience

and expertise in investigating law enforcement misconduct and the constitutional

standards for police officers' use of force.  Neither the EFIT Administrator, Supervisors,

nor Investigators shall have any current or previous employment relationship or contract

for services with APD or the City.

5.  The City shall contract with the EFIT Administrator and fund the operations of EFIT in

accordance with its Public Purchases Ordinance, specifically, ROA 1994, § 5-5-20(U)

(exempting "[c]ontracts and expenditures in connection with court or administrative

proceedings, including, but not limited to, experts, mediators, interpreters, translators,

court reporters, process servers, witness fees, and printing and duplicating of materials

for filing" from competitive requirements of the article), or any other appropriate

provision of the Public Purchases Ordinance.

6.  The City shall widely publish a request for letters of interest for the EFIT Administrator

no later than March 1, 2021.

7.  The City shall accept input from the United States Department of Justice (DOJ) as the

City solicits EFIT Administrator candidates and on the candidate that the City ultimately

selects.  DOJ shall provide input within two (2) weeks of receiving information about the

candidates, unless otherwise agreed by the City and DOJ.

8.  The contract between the EFIT Administrator and the City shall include all standard

terms for City contracts.

9.  Within two weeks of the EFIT Administrator's selection, the City and DOJ shall file a

notice with the Court to inform the Court of the Administrator's identity and professional

background.

10. The City shall enter into a contract with an EFIT Administrator no later than May 3, 2021.

11. Within one month of the EFIT Administrator's selection, the City and the EFIT Administrator shall establish protocols for how APD IA and EFIT will coordinate on investigations of Level 2 and Level 3 uses of force.  At a minimum, the protocols will specify procedures for coordinating the work of IA force personnel and EFIT personnel; and how APD IA will transmit investigative files to EFIT.  The protocols will specify that EFIT shall not assist APD IA with investigations of Level 2 and Level 3 uses of force for which the investigatory deadlines established by the Court-Approved Settlement Agreement (CASA), APD policy, and the Collective Bargaining Agreement between the City and the Albuquerque Police Officers' Association (CBA) have expired at the time that EFIT begins providing services.  The protocols shall be submitted to DOJ and the Independent Monitor for review and comment pursuant to the procedures of Paragraphs 147 and 148 of the CASA.  Doc. 465-1 at 49-50.

B. **Staffing of IA Force Investigators; Technical Assistance**

12. The City shall ensure that APD maintains at least twenty-five (25) force investigators assigned to IA, unless and until APD can demonstrate by an internal staffing analysis that fewer investigators are necessary to timely investigate all Level 2 and Level 3 uses of force.

13. The Independent Monitor has provided and will continue to provide extensive technical to the City regarding IA processes, including the period before an EFIT administrator is selected.

4

14. Based on the technical assistance set forth in Paragraph 13, within two months of the entry of this Order, the City will submit a proposed written IA investigative process to DOJ and the Independent Monitor.  DOJ and the Independent Monitor will have 14 days to submit proposed revisions to the written IA investigative process.  The City will have seven days to agree to or reject any proposed revisions.  After the City, DOJ, and the Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court.  If the City, DOJ, and the Independent Monitor cannot reach an agreement on the proposed written IA investigative process, the City or DOJ may submit the matter to the Court for resolution.

15. After APD implements the written IA investigative process, the Independent Monitor will spend an additional week providing intensive technical assistance, in addition to the extensive technical assistance provided to date.

16. The City shall endeavor to negotiate longer investigative deadlines with the recognized exclusive representatives of relevant bargaining agreements.  Nothing in this order requires the City to violate the Labor Management Relations Ordinance or any collective bargaining agreement.

C.  **Investigations of Level 2 and Level 3 Uses of Force**

17. From the date the EFIT contractor begins services and subject to EFIT staffing levels, APD and EFIT will both deploy investigators to the scene for every Level 2 and Level 3 use of force, unless APD deploys an APD IA investigator who has satisfied the requirements of Paragraph 35.

18. APD IA investigators shall act as the lead on-scene investigators for all Level 2 and Level 3 uses of force and shall be primarily responsible for conducting the on-scene

requirements of CASA Paragraphs 69(a), (b), (c), (d), and (e) (Doc. 465-1 at 27),

including but not limited to:

    a.  respond to the scene and consult with the on-scene supervisor to ensure that all personnel and subject(s) of use of force have been examined for injuries, that the use of force has been classified according to APD's classification procedures, that subject(s) have been interviewed for complaints of pain after advising the subject(s) of his or her rights, and that all officers and/or subject(s) have received medical attention, if applicable;

    b.  ensure that all evidence to establish material facts related to the use of force, including but not limited to audio and video recordings, photographs, and other documentation of injuries or the absence of injuries is collected;

    c.  ensure that a canvass for, and interview of, witnesses is conducted. In addition, witnesses should be encouraged to provide and sign a written statement in their own words;

    d.  ensure, consistent with applicable law, that all officers witnessing a Level 2 or Level 3 use of force by another officer provide a use of force narrative of the facts leading to the use of force;

    e.  provide a written admonishment to involved and witness officer(s) to the use of force that they are not to speak about the force incident with anyone until they are interviewed by [an] . . . investigator . . ..

19. The City shall transmit all documents, evidence, and investigative notes created or obtained by the on-scene investigator(s) to EFIT within 72 hours of the use of force, and

on an ongoing basis as additional evidence is provided.  EFIT will acknowledge receiving all forwarded investigative documents, evidence, and notes.

20. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23.  IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

21. EFIT shall have full, direct, and timely access to APD staff, employees, facilities, documents, data, and evidence to the extent necessary to fulfill the requirements of this Order.  EFIT shall coordinate with APD and its legal counsel to access personnel, facilities, and documents in a reasonable manner.  Should APD or its legal counsel decline to provide EFIT with access to documents or data based on privilege, APD shall inform EFIT, DOJ, and the Independent Monitor that it is withholding documents or data on this basis, and shall provide EFIT, DOJ, and the Independent Monitor with a log describing the documents or data and the basis of the privilege.

22. For each use of force investigation, EFIT shall evaluate the quality of IA force personnel's investigations and immediately notify APD and APD's legal counsel of any deficiencies or misconduct by IA force personnel related to their investigations.  APD shall promptly address these deficiencies or misconduct through corrective action or discipline, consistent with the CASA, APD policy, and the CBA.

23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 uses of force without the involvement of IA force personnel if either of the following conditions are met:

a. EFIT or APD has alleged that the IA force personnel assigned to the investigation has committed misconduct in the course of the investigation, and EFIT believes that the IA force personnel's continued participation in the investigation is likely to undermine the integrity of the investigation; or

b. EFIT or APD believes that deficiencies in the tactics or work product of the IA force personnel assigned to the investigation is likely to prevent the investigation from being completed within the deadlines provided for in the CASA, APD policy, and the CBA.

24. EFIT shall provide written notice to DOJ, APD, and the Independent Monitor when EFIT exercises its authority under Paragraph 23 to complete investigations of Level 2 and Level 3 uses of force without the involvement of IA force personnel. EFIT's notice shall explain in writing the grounds for its actions. If DOJ or the City believes that EFIT's actions were improper, they will seek to resolve the matter with EFIT and the other party. If DOJ, APD, and EFIT cannot reach a resolution, DOJ or the City may bring the matter before the Court for resolution.

25. APD and EFIT shall identify all misconduct that occurred during the course of each use of force incident and provide information about all misconduct that it identifies to APD, for the purposes of screening, assigning an internal affairs number, and tracking by APD IA. IA force personnel and EFIT personnel shall complete the investigation of all misconduct related to the use of force, and APD IA shall complete the investigation of all misconduct not related to the use of force.

26. EFIT shall complete its investigations within 60 days of receiving on-scene investigation materials from APD. At the conclusion of each investigation, IA force personnel and

EFIT personnel shall prepare a joint investigative report, consistent with the requirements of the CASA and APD policy.  In the report, IA force personnel and EFIT personnel shall recommend a determination of whether each use of force complied with APD policy and state and federal law.  For any use of force for which the investigation determines that an officer violated APD policy or state or federal law, IA force personnel and EFIT shall recommend appropriate corrective and/or disciplinary action, consistent with the CASA and APD policy.

27. An IA Commanding Officer shall review each investigative report and recommendation, and state in writing whether he or she concurs with the report and recommendation's findings of whether the use of force complied with policy; the recommended disposition of any misconduct allegations; and any recommended corrective and/or disciplinary action.  The IA Commanding Officer shall explain any concurrence or non-concurrence in writing.  Any recommended discipline resulting from an investigation will be reviewed by APD's executive staff consistent with APD policy.

**D.  Role of the Independent Monitor with Regard to EFIT**

28. The Independent Monitor shall assist APD, DOJ, and the EFIT Administrator as the EFIT is established by, at a minimum:

   a.  orienting EFIT regarding CASA requirements and relevant CASA compliance deficiencies by APD;

   b.  providing technical assistance to EFIT regarding the Independent Monitor's compliance assessment methodology; expectations regarding EFIT's processes, work product, and records production; and other relevant matters, as the EFIT Administrator and the Independent Monitor deem appropriate; and

9

c.  conducting informal assessments of force investigations completed with EFIT's

involvement, particularly in the early stages of EFIT's implementation, to ensure

that investigations completed with EFIT's involvement comply with CASA

requirements regarding the quality of force investigations.  The Independent

Monitor shall convey the outcome of these informal assessments to the EFIT

Administrator, APD, and DOJ.

29. The City recognizes that the requirements of Paragraph 28 of this Order are beyond the

scope of the Independent Monitor's duties under the CASA and the City's annual budgets

for the Independent Monitor's services under the CASA.  The City shall therefore enter

into separate compensation agreements with the Independent Monitor for the provision of

the services required by Paragraph 28 of this Order, as described in Paragraph 334 of the

CASA.

30. The Independent Monitor shall conduct formal compliance assessments of force

investigations completed with EFIT's involvement as it would investigations completed

by APD.  Except for the requirements of Paragraph 28 of this Order, this Order is not

intended to, and does not, alter the responsibilities or authority of the Independent

Monitor under the CASA.

E.  **Remedial Action Plan**

31. Within five months of the start date of the contract with EFIT, the City shall draft a

remedial action plan for IA force investigations and submit it to DOJ, the Independent

Monitor, and the EFIT Administrator.  The plan will identify concrete actions that the

City and EFIT will take to improve the quality and timeliness of investigations of Level 2

and Level 3 uses of force by IA.  The Independent Monitor may recommend changes or

approve the plan consistent with the requirements of Paragraph 147 of the CASA.  After the Independent Monitor approves of the plan, the City shall file it with the Court.  If either the City, DOJ, or both disagree with the Monitor's recommendations, such party or parties may file the plan with the Court and move for its approval.

32. After filing a joint remedial action plan or after the Court approves the plan, and until the plan has been fully implemented, the City shall file brief reports to the Court, due every three months from the date the remedial action plan was filed, to inform the Court of progress in implementing the plan, any barriers to implementation that it has faced, and any modifications to the plan that may be necessary.  The City's quarterly reports will include, at a minimum:

   a. a summary of the City's progress regarding the implementation of the written IA investigative process required by Paragraph 14, including a summary of the intensive technical assistance provided by the Independent Monitor;

   b. a summary of written evaluations by EFIT of the quality of IA force investigators' investigations during the previous quarter;

   c. a summary of written feedback by EFIT of IA force investigators' work product during the previous quarter;

   d. any formal training that IA force investigators received during the previous quarter;

   e. the number of force investigators assigned to IA and, if APD has not yet retained 25 force investigators, the steps that APD will take in the next quarter to achieve full staffing;

    f.   the number of investigations or reviews of investigations that EFIT completed without the involvement of IA force personnel, pursuant to Paragraph 23;

    g.   the number of IA force investigators conducting investigations independent of the EFIT, pursuant to Paragraph 35; and

    h.   for Level 2 and Level 3 force investigations:

        i.   the number of investigations initiated during the previous quarter;

        ii.   the number of investigations completed during the previous quarter;

        iii.   the average and mean number of days from initiation to completion for the investigations completed during the previous quarter;

        iv.   the number of investigations during the previous quarter that were completed within the deadlines required by the CASA, APD policy, and the CBA; and

        v.   the number of investigations during the previous quarter that were not completed within the deadlines required by the CASA, APD policy, and the CBA.

**F.  Training of IA Force Personnel**

33. Subject to extensions necessary due to COVID-19-related restrictions and availability, and subject to the approval of the proposed contractor by the by the Monitoring Team and DOJ, within three months of the entry of this Order, APD shall identify and hire a contractor to who shall, in concert with APD's Academy, develop and provide training to IA force personnel on conducting high-quality and timely force investigations.  This training shall be developed, approved, and provided consistent with APD policy and the CASA, and shall incorporate problem-solving, experiential adult-learning principles.

This training shall be subject to review and approval by the Independent Monitor and

DOJ.

**G. Returning Responsibility for Full Investigations of Level 2 and Level 3 Uses of Force to APD**

34. An IA Commanding Officer and EFIT shall prepare written evaluations of each

investigator and supervisor who are assigned as IA force personnel on a quarterly basis.

These evaluations shall be considered confidential consistent with City Personnel Rules

and Regulations and state law, but shall be provided to the Monitor and DOJ upon

request and shall be kept confidential pursuant to the requirements of Paragraph 326 of

the CASA.  These evaluations shall include, at a minimum:

   a. a description of the nature and extent of all training provided to the IA force

   investigator or supervisor during the previous quarter;

   b. a summary of written assessments by EFIT of the quality of the IA force

   investigator's or supervisor's investigations;

   c. a summary of written feedback by EFIT on the IA force investigator's or

   supervisor's work product;

   d. a description of any allegations that the IA force investigator or supervisor

   committed misconduct related to their investigations during the previous quarter,

   including how the allegation was ultimately resolved;

   e. the number of the IA force investigator's or supervisor's investigations from the

   previous quarter in which the IA force investigator or supervisor failed to satisfy

   CASA requirements for investigations, compared to the number of investigations

   that the IA force investigator or supervisor conducted during the previous quarter;

    f.  an evaluation of the IA force investigator's or supervisor's overall performance; and

    g.  any actions that will be taken during the following quarter to improve the IA force investigator's or supervisor's performance.

35. APD may transfer responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to IA force personnel only after a quarterly evaluation demonstrates:

    a.  that the IA force investigator or supervisor has received training on all aspects of Level 2 and Level 3 force investigations;

    b.  that the IA force investigator or supervisor has regularly conducted high-quality investigations for at least two months, as demonstrated by EFIT's written assessments of the investigations;

    c.  that the IA force investigator or supervisor regularly produces high-quality work product, as demonstrated by EFIT's written feedback;

    d.  that the IA force investigator or supervisor has not committed misconduct during the course of investigations; and

    e.  that 95% of the IA force investigator's or supervisor's investigations from the previous quarter satisfied all CASA requirements for investigations.

36. APD shall notify the EFIT Administrator in writing two weeks before APD intends to transfer sole responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to an IA force investigator or supervisor. The EFIT Administrator shall promptly notify the City, APD, DOJ, and the Independent Monitor in writing if the EFIT Administrator determines that the IA force investigator or supervisor does not meet

the qualifications identified in Paragraph 35 of this Order. The City, APD, DOJ, the Independent Monitor, and the EFIT Administrator shall confer about any disagreements between APD and the EFIT Administrator regarding the qualifications of any IA force investigator or supervisor to take responsibility for conducing full investigations of Level 2 and Level 3 uses of force. The City and DOJ shall seek to resolve any such disagreements. If the City and DOJ are unable to resolve such disagreements, they may bring the matter before the Court for resolution.

37. The City and DOJ anticipate that APD will take responsibility for conducting full investigations of Level 2 and Level 3 uses of force over time as individual IA force investigators and supervisors meet the qualifications identified in Paragraph 35.

38. The City will endeavor to ensure that the responsibility for conducting full investigations of Level 2 and Level 3 uses of force returns entirely to APD within nine (9) months of EFIT beginning to provide services. Within six (6) months of the EFIT beginning to provide services, the Parties will evaluate the progress of APD, to include considering whether the EFIT is contributing to improvements in the progress of APD to meet the requirements of the CASA. Based on this evaluation, the Parties will file a status report with the Court within seven (7) months of the EFIT beginning to provide services, indicating whether the services of the EFIT should extend beyond nine (9) months.

39. The City and DOJ agree to jointly ask the Court to terminate this Order once there are a sufficient number of IA force personnel who have met the qualifications identified in Paragraph 35 to complete all full investigations of Level 2 and Level 3 uses of force within the timelines required by the CASA, APD policy, and the CBA.

40. Notwithstanding Paragraph 39 of this Order, if the Independent Monitor, after conducting the informal assessments required by Paragraph 28(c) of this Order, or the formal assessments required by the CASA, determines that EFIT regularly fails to conduct investigations consistent with CASA requirements and APD policy, the City, with the concurrence of DOJ, may seek to terminate its contract with EFIT, and the Parties may seek to modify this Order accordingly.

41. If the City and DOJ are unable to reach agreement about asking the Court to terminate this Order, either Party may seek to terminate this Order.  In the case of termination sought by the City, prior to filing a motion to terminate, the City agrees to notify DOJ in writing when the City has determined that there are grounds for termination of this Order. Thereafter, the City and DOJ shall promptly confer about the City's assertions.  If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ and/or the Independent Monitor may wish to undertake, the City and DOJ cannot resolve any disagreements, the City may file a motion to terminate this Order.  If the City moves for termination of this Order, DOJ will have 60 days after the receipt of the City's motion to object to the motion.  If DOJ does not object, the Court may grant the City's motion. If DOJ objects, the Court will hold a hearing on the motion, and the burden shall be on the City to demonstrate that it has fully complied with this Order and that the grounds for termination of this Order are supported by a preponderance of the evidence.

The Court recognizes and approves of the measures in the Stipulated Order as good faith efforts by the Parties to address investigative deficiencies in APD's force investigations, as identified by the Independent Monitor in his Twelfth Report, and therefore approves this Stipulated Order as an Order of the Court.

16

**THEREFORE,**

**IT IS ORDERED** that the Parties' Joint Motion for Entry of Stipulated Order

Establishing an External Force Investigation Team is approved, and the Stipulated Order is

hereby entered as an Order of the Court.

**IT IS FURTHER ORDERED** that that the Court will retain jurisdiction to enforce the

provisions of the Order.

HON. JAMES O. BROWNING
United States District Judge

*Counsel:*

Fred J. Federici
  Acting United States Attorney
Elizabeth M. Martinez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

--and--

Paul Killebrew
  Special Counsel
Corey M. Sanders
  Trial Attorney
Stephen M. Ryals
  Trial Attorney
Patrick Kent
  Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Washington, D.C.

    *Attorneys for the United States*

17

Esteban A. Aguilar, Jr.
    City Attorney
Lindsay Van Meter
    Managing Assistant City Attorney
Robyn Rose
    Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico

*Attorneys for the City of Albuquerque*

# EXHIBIT

# B

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

THE CITY OF ALBUQUERQUE,              No. CIV. 14-1025 JB\SMV

        Defendant,

vs.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## AMENDED STIPULATED ORDER ESTABLISHING
## AN EXTERNAL FORCE INVESTIGATION TEAM

This matter comes before the Court on the Joint Motion of Plaintiff United

States of America and Defendant City of Albuquerque (collectively, the Parties), with

the concurrence of the Independent Monitor, for entry of this Amended Stipulated

Order, which modifies and supersedes the Stipulated Order Establishing an External

Force Investigation Team that this Court entered on February 26, 2021 (Original

Order).  Doc. 720.  The Original Order required the City to establish, on a temporary

basis, an External Force Investigation Team (EFIT) to assist the Albuquerque Police

Department (APD) in conducting investigations of Level 2 and Level 3 uses of force

by APD officers and improve the quality of force investigations conducted by APD's

Internal Affairs Force Division (IAFD).  The Original Order also required the City to improve APD's internal affairs processes, maintain an increased number of IAFD investigators, and provide additional training to IAFD investigators.

This Amended Order restates many of the Original Order's requirements and supplements them in two ways.  First, this Amended Order requires the City to modify its existing contract with DLG, Accounting and Advisory Services (DLG) to enable EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part (Backlog Force Cases), in violation of the Court Approved Settlement Agreement (CASA), Doc. 465-1.  Second, this Amended Order extends by 24 months, from May 2022 through May 2024, the period during which the City shall continue to enable EFIT to assist IAFD in investigating new Level 2 and Level 3 use-of-force incidents (New Force Cases).

The Parties intend the measures in this Amended Order to ensure high-quality, timely investigations of New Force Cases, to minimize and correct deficiencies in IAFD investigations as identified in the Independent Monitor's Twelfth and Thirteenth Reports, Docs. 652 and 782, and to address APD's failure to investigate the Backlog Force Cases as identified in the Independent Monitor's Fourteenth Report, Doc. 872. The Court approves this Amended Stipulated Order and enters it as an Order of the Court.

**A. Definitions**

1.  For the purposes of this Amended Order,

a. "IAFD" means APD's Internal Affairs Force Division;

b. "IAFD personnel" includes IAFD investigators and supervisors, other than IAFD Commanding Officers;

c. "investigations of New Force Cases" include both investigations and the review of investigations by supervisors of Level 2 and Level 3 use-of-force incidents that occur after July 16, 2021;

d. "investigations of the Backlog Force Cases" means investigations of all use-of-force incidents that occurred between January 1, 2020, through July 16, 2021, and that IAFD failed to investigate, in whole or in part, as required by the CASA, a set that includes, but may not be limited to, 143 Level 3 uses of force, 470 Level 2 uses of force, 42 Level 1 uses of force, and 12 uses of force that IAFD subsequently investigated;[1] and

e. "Independent Monitor" may include members of the Independent Monitoring Team.

## B. Establish an External Force Investigation Team

2. The City shall establish and maintain EFIT to guide and direct IAFD personnel, and when necessary, conduct investigations of New Force Cases; assess investigations carried out by IAFD personnel; provide written feedback on

---

[1] The City provided DOJ and the Independent Monitor with this accounting of 667 cases. Doc. 872 at 4. If EFIT identifies other uninvestigated force cases that occurred during the relevant period or finds a different number of force cases in a particular category, those cases will be considered Backlog Force Cases.

IAFD personnel's work product; and complete investigations of the Backlog Force Cases.

3. EFIT shall be overseen by an Administrator.  The City shall empower the EFIT Administrator to hire and retain the staff necessary to fulfill the requirements of this Amended Order.  The EFIT Administrator shall ensure that a sufficient number of EFIT investigators to meet the requirements of Paragraph 16 of this Amended Order are physically present in Albuquerque and able to respond to the scene of Level 2 and Level 3 uses of force.  The EFIT Administrator shall also ensure that a sufficient number of EFIT investigators and supervisors are hired and retained exclusively to investigate the Backlog Force Cases, as required by Paragraphs 7–9 of this Amended Order.

4. The EFIT Administrator shall have experience and expertise in investigating law enforcement misconduct, the constitutional standards for police officers' use of force, and systems reform litigation.  EFIT supervisors and investigators shall have experience and expertise in investigating law enforcement actions and the constitutional standards governing use of force.  The EFIT Administrator, supervisors, and investigators shall have no current or previous employment relationship or contract for services with APD or the City when they join EFIT. The Parties agree that the City selected a qualified candidate, DLG, to be the EFIT Administrator and that the EFIT Administrator has, to date, selected qualified supervisors and investigators in compliance with the Original Order's

requirements.  Doc. 720, ¶¶ 4, 6–7; *see also* Doc. 873, ¶¶ 12–35 (EFIT personnel's qualifications).   If DLG ceases to be the EFIT Administrator before the termination of this Amended Order pursuant to Paragraphs 39 or 41, the City shall reconstitute EFIT pursuant to the process and subject to the requirements laid out in the Original Order.  *See* Doc. 720, ¶¶ 3–10.

5. The City shall contract with the EFIT Administrator and fund the operations of EFIT in accordance with its Public Purchases Ordinance, specifically, ROA 1994, § 5-5-20(U) (exempting "[c]ontracts and expenditures in connection with court or administrative proceedings, including, but not limited to, experts, mediators, interpreters, translators, court reporters, process servers, witness fees, and printing and duplicating of materials for filing" from competitive requirements of the article), or any other appropriate provision of the Public Purchases Ordinance.  The contract between the EFIT Administrator and the City shall include all standard terms for City contracts.  In compliance with the Original Order, the City finalized a contract with DLG, on June 23, 2021, which enabled DLG to commence operations as the EFIT Administrator on July 16, 2021.  Doc. 873, ¶ 2; *see* Doc. 782, ¶¶ 2, 5 and Exhibit D.  Subject to the terms of Paragraphs 39–41, the City shall modify the EFIT Administrator contract as necessary to enable EFIT to provide the additional services identified in this Amended Order.

6. The City and the EFIT Administrator shall establish and maintain protocols that require APD and EFIT to coordinate on investigations of new Level 2 and Level 3 uses of force. The protocols shall, at a minimum, specify how IAFD personnel and EFIT personnel will coordinate their work, and direct APD to transmit investigative files to EFIT. The protocols shall be submitted to DOJ and the Independent Monitor for review and comment pursuant to the procedures of Paragraphs 147 and 148 of the CASA. Doc. 465-1 at 49–50. The protocols shall not preclude EFIT from investigating the Backlog Force Cases.

## C. Investigate and Report on the Backlog Force Cases

7. The City shall enable the EFIT Administrator to establish a Backlog Team to complete investigations of the Backlog Force Cases in accordance with the Scope of Work (SOW) attached to this Amended Order as Exhibit 1. The Parties shall jointly file a notice with the Court when the EFIT Backlog Team is fully constituted and commences operations.

8. When the Backlog Team completes an investigation, the EFIT Administrator shall submit the case materials, including narratives and recommendations, to IAFD for final closure. Upon receiving a completed backlog case from EFIT, IAFD shall close the case by performing the administrative steps outlined in the revised IAFD process narrative, Doc. 862-1, ¶¶ 59–63.

9. The Force Review Board (FRB) shall review completed EFIT Backlog Team investigations pursuant to the process identified in SOW, ¶ 20. Consistent with

the CASA, Doc. 465-1, ¶ 78(b), any Backlog Team investigation reviewed by the FRB shall be presented by the EFIT Administrator or Deputy Administrator.

10. Within 30 days after EFIT completes an investigation pursuant to the SOW, APD shall respond in writing to the recommendations, if any, made by the EFIT Administrator and/or the EFIT Executive Team in that investigation pursuant to the SOW.

11. Within 90 days after EFIT completes investigation of all Backlog Force Cases, the City shall provide a written report to the EFIT Executive Team, DOJ, and the Independent Monitor, which includes, at a minimum:

    a. the City's response to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;

    b. the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

    c. the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

    d. the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

e. the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

## D. Maintain Increased Staffing of IAFD; Technical Assistance

12. The City shall ensure that APD maintains at least twenty-five (25) force investigators assigned to IAFD, unless and until APD can demonstrate by an internal staffing analysis that fewer investigators are necessary to timely investigate all Level 2 and Level 3 uses of force.

13. As required by the Original Order, Doc. 720, ¶ 14, the City filed a written process narrative for IAFD investigations with the Court on July 16, 2021.  Doc. 839-1. The City filed a revised process narrative on September 27, 2021.  Doc. 862-1. Any further revisions to the IAFD process narrative shall be subject to the agreement of the City, DOJ, and the Independent Monitor.  If the City, DOJ, and the Independent Monitor cannot agree on a proposed revision, the City or DOJ may submit the matter to the Court for resolution.

14. As required by the Original Order, Doc. 720, ¶ 15, the Parties agree that the Independent Monitor provided APD with intensive technical assistance as to implementing the IAFD process narrative required by Paragraph 13 of this Amended Order.

15. The City shall endeavor to negotiate longer investigative deadlines with the recognized exclusive representatives of relevant bargaining agreements.  Nothing

in this Amended Order requires the City to violate the Labor Management Relations Ordinance or any collective bargaining agreement.

## E. Investigate New Level 2 and Level 3 Uses of Force

16. EFIT commenced operations on July 16, 2021.  Doc. 873, ¶ 2.  Since then, APD and EFIT have deployed investigators to the scene of every Level 2 and Level 3 use of force, as required by the Original Order.  Doc. 720, ¶ 17.  The EFIT and APD shall both continue to deploy investigators to the scene of these New Force Cases, unless APD deploys an IAFD investigator who has satisfied the requirements of Paragraph 34 of this Amended Order.

17. IAFD personnel shall act as the lead on-scene investigators for all New Force Cases and shall be primarily responsible for conducting the on-scene requirements of CASA Paragraphs 69(a), (b), (c), (d), and (e), Doc. 465-1 at 27, including but not limited to:

   a. respond to the scene and consult with the on-scene supervisor to ensure that all personnel and subject(s) of use of force have been examined for injuries, that the use of force has been classified according to APD's classification procedures, that subject(s) have been interviewed for complaints of pain after advising the subject(s) of his or her rights, and that all officers and/or subject(s) have received medical attention, if applicable;

b. ensure that all evidence to establish material facts related to the use of force, including but not limited to audio and video recordings, photographs, and other documentation of injuries or the absence of injuries is collected;

c. ensure that a canvass for, and interview of, witnesses is conducted. In addition, witnesses should be encouraged to provide and sign a written statement in their own words;

d. ensure, consistent with applicable law, that all officers witnessing a Level 2 or Level 3 use of force by another officer provide a use of force narrative of the facts leading to the use of force;

e. provide a written admonishment to involved and witness officer(s) to the use of force that they are not to speak about the force incident with anyone until they are interviewed by [an] . . . investigator . . ..

18. The City shall transmit all documents, evidence, and investigative notes created or obtained by the on-scene investigator(s) to EFIT within 72 hours of the use of force, and on an ongoing basis as additional evidence is obtained.  EFIT will acknowledge receiving all forwarded investigative documents, evidence, and notes.

19. Except as provided by Paragraph 23 of this Amended Order, IAFD personnel and EFIT personnel shall jointly investigate and review all new Level 2 and Level

3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

20. EFIT shall have full, direct, and timely access to APD staff, employees, facilities, documents, data, and evidence to the extent necessary to fulfill the requirements of this Amended Order. EFIT shall coordinate with APD and APD's legal counsel to access personnel, facilities, and documents in a reasonable manner. If APD or APD's legal counsel decline to provide EFIT with access to documents or data based on privilege, APD shall inform EFIT, DOJ, and the Independent Monitor that it is withholding documents or data on this basis, and shall provide EFIT, DOJ, and the Independent Monitor with a log describing the documents or data and the basis of the privilege.

21. For each use of force investigation, EFIT shall evaluate the quality of IAFD personnel's work product and immediately notify APD and APD's legal counsel of any deficiencies or misconduct by IAFD personnel related to their investigations. APD shall promptly address these deficiencies or misconduct through corrective action or discipline, consistent with the CASA, APD policy, and the CBA.

22. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of New Force Cases without the involvement of IAFD personnel if either of the following conditions are met:

    a. EFIT or APD has alleged that IAFD personnel assigned to the investigation has committed misconduct in the course of the investigation, and EFIT believes that IAFD personnel's continued participation in the investigation is likely to undermine the integrity of the investigation; or

    b. EFIT or APD believes that deficiencies in the tactics or work product of IAFD personnel assigned to the investigation is likely to prevent the investigation from being completed within the deadlines provided for in the CASA, APD policy, and the CBA.

23. The EFIT Administrator shall provide written notice to DOJ, APD, and the Independent Monitor when EFIT exercises the authority under Paragraph 22 to complete investigations of New Force Cases without the involvement of IAFD personnel. The notice shall explain in writing the grounds for the EFIT Administrator's actions. If DOJ or the City believes that the EFIT Administrator's actions were improper, they will seek to resolve the matter with EFIT and the other party. If DOJ, the City, and EFIT cannot reach a resolution, DOJ or the City may bring the matter before the Court for resolution.

24. IAFD and EFIT shall identify all misconduct that occurred during the course of each New Force Case investigation. IAFD and EFIT investigators shall provide information about all misconduct they identify to APD for screening, assigning an internal affairs number, and tracking by APD Internal Affairs. IAFD and EFIT investigators shall complete the investigation of all misconduct related to

the use of force, and APD Internal Affairs Professional Standards shall complete the investigation of all misconduct not related to the use of force.

25. EFIT shall complete its investigations of New Force Cases within 60 days of receiving on-scene investigation materials from APD.  At the end of each investigation, IAFD and EFIT personnel shall prepare a joint investigative report, consistent with the requirements of the CASA and APD policy.  The report shall include a recommended determination of whether each use of force complied with APD policy and state and federal law.  When IAFD personnel recommend that an officer violated APD policy or state or federal law, they shall recommend appropriate corrective and/or disciplinary action, consistent with the CASA and APD policy.

26. An IAFD Commanding Officer shall review each investigative report and recommendation to determine whether they concur with the report and the recommended finding for each use of force; the recommended disposition of any misconduct allegations; and any recommended corrective and/or disciplinary action.  The IAFD Commanding Officer shall explain any concurrence or non-concurrence in writing.  Any recommended discipline resulting from an investigation will be reviewed by APD's executive staff consistent with APD policy.

## F. Role of the Independent Monitor with Regard to EFIT

27. The Independent Monitor shall continue to assist APD, DOJ, and the EFIT Administrator by, at a minimum:

    a. orienting EFIT personnel regarding CASA requirements and relevant CASA compliance deficiencies by APD;

    b. providing technical assistance to EFIT regarding the Independent Monitor's compliance assessment methodology; expectations regarding EFIT's processes, work product, and records production; and other relevant matters, as the EFIT Administrator and the Independent Monitor deem appropriate; and

    c. conducting informal assessments of the Backlog Force Case investigations and the New Force Case investigations completed with EFIT's involvement, particularly in the early stages of EFIT's implementation, to ensure that investigations completed with EFIT's involvement comply with CASA requirements regarding the quality of force investigations. The Independent Monitor shall convey the outcome of these informal assessments to the EFIT Administrator, APD, and DOJ.

28. The City recognizes that the requirements of Paragraph 27 of this Amended Order are beyond the scope of the Independent Monitor's duties under the CASA and the City's annual budgets for the Independent Monitor's services under the CASA.  The City filed an unopposed motion to provide additional

compensation to the Independent Monitor for the additional services required by Paragraph 27 of this Amended Order, which the Court granted.  Doc. 837 (Motion); Doc. 845 (Order).

29. The Independent Monitor shall conduct formal compliance assessments of force investigations completed with EFIT's involvement as it would investigations completed by APD.  Except for the requirements of Paragraph 27, this Amended Order is not intended to, and does not, alter the responsibilities or authority of the Independent Monitor under the CASA.

## G. Remedial Action Plan for New IAFD Investigations

30. The City submitted a remedial action plan for IAFD investigations to DOJ, the Independent Monitor, and the EFIT Administrator on December 14, 2021. Doc. 720, ¶ 31.  The plan must identify concrete actions to improve the quality and timeliness of IAFD's investigations of new Level 2 and Level 3 uses of force. The Independent Monitor may recommend changes or approve the plan consistent with the requirements of Paragraph 147 of the CASA.  After the Independent Monitor approves of the plan, the City shall file it with the Court. If either the City, DOJ, or both disagree with the Monitor's recommendations, such party or parties may file the plan with the Court and move for its approval.

31. After filing a joint remedial action plan or after the Court approves the plan, and until the plan has been fully implemented, the City shall file brief reports to the Court, due every three months from the date the remedial action plan is filed, to

inform the Court of progress in implementing the plan, any barriers to implementation that it has faced, and any modifications to the plan that may be necessary. The City's quarterly reports shall, at a minimum:

a. summarize the City's progress on implementing the IAFD process narrative required by Paragraph 13, including a summary of the technical assistance provided by the Independent Monitor;

b. summarize EFIT's written evaluations of the quality of investigations conducted by IAFD investigators during the previous quarter;

c. summarize EFIT's written feedback on the work product of IAFD investigators' during the previous quarter;

d. identify any formal training that IAFD investigators received during the previous quarter;

e. identify the number of force investigators assigned to IAFD and, if APD has not yet retained 25 IAFD investigators, the steps that APD will take in the next quarter to achieve full staffing;

f. identify the number of investigations or reviews of investigations that EFIT completed without the involvement of IAFD personnel, pursuant to Paragraph 22;

g. identify the number of IAFD investigators conducting investigations independent of the EFIT, pursuant to Paragraph 35; and

h. for investigations of Level 2 and Level 3 use-of-force incidents that occurred after July 16, 2021, identify:

    i. the number of investigations initiated during the previous quarter;

    ii. the number of investigations completed during the previous quarter;

    iii. the average and mean number of days from initiation to completion for the investigations completed during the previous quarter;

    iv. the number of investigations during the previous quarter that were completed within the deadlines required by the CASA, APD policy, and the CBA; and

    v. the number of investigations during the previous quarter that were not completed within the deadlines required by the CASA, APD policy, and the CBA.

## H. Train IAFD Personnel

32. Subject to extensions necessary due to COVID-19-related restrictions and availability, and subject to the approval of the proposed contractor by the Independent Monitor and DOJ, within three months of the entry of this Amended Order, APD shall identify and hire a contractor who shall, in concert with APD's Academy, develop and provide training to IAFD personnel on conducting high-quality and timely force investigations. This training shall be

developed, approved, and provided consistent with APD policy and the CASA, and shall incorporate problem-solving, experiential adult-learning principles.

**I. Returning Responsibility for Full Investigations of New Level 2 and Level 3 Uses of Force to APD**

33. An IAFD Commanding Officer, with input from the EFIT evaluations prepared pursuant to the process narrative, shall prepare written evaluations of each investigator and supervisor who are assigned as IAFD personnel on a quarterly basis. These evaluations shall be considered confidential consistent with City Personnel Rules and Regulations and state law, but shall be provided to the Independent Monitor and DOJ upon request and shall be kept confidential pursuant to the requirements of Paragraph 326 of the CASA. These evaluations shall, at a minimum:

   a. describe the nature and extent of all training provided to the IAFD investigator or supervisor during the previous quarter;

   b. summarize EFIT's written assessments of the quality of the IAFD investigator's or supervisor's investigations;

   c. summarize EFIT's written feedback on the IAFD investigator's or supervisor's work product;

   d. describe any misconduct allegations against the IAFD investigator or supervisor related to their investigations during the previous quarter, including how the allegation was ultimately resolved;

e. compare the number of the IAFD investigator's or supervisor's investigations from the previous quarter that failed to satisfy CASA requirements for investigations with the number of investigations that the IAFD investigator or supervisor conducted during the previous quarter;

f. evaluate the IAFD investigator's or supervisor's overall performance; and

g. identify any actions that will be taken during the following quarter to improve the IAFD investigator's or supervisor's performance.

34. APD may transfer responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to IAFD personnel only after a quarterly evaluation demonstrates:

a. that the IAFD investigator or supervisor has received training on all aspects of Level 2 and Level 3 force investigations;

b. that the IAFD investigator or supervisor has regularly conducted high-quality investigations for at least two months, as demonstrated by EFIT's written assessments;

c. that the IAFD investigator or supervisor regularly produces high-quality work product, as demonstrated by EFIT's written feedback;

d. that the IAFD investigator or supervisor has not committed misconduct during the course of investigations; and

e. that 95% of the IAFD investigator's or supervisor's investigations from the previous quarter satisfied all CASA requirements for investigations.

35. APD shall notify the EFIT Administrator in writing two weeks before APD intends to transfer sole responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to an IAFD investigator or supervisor. The EFIT Administrator shall promptly notify the City, APD, DOJ, and the Independent Monitor in writing if the EFIT Administrator determines that the IAFD investigator or supervisor does not meet the qualifications identified in Paragraph 34 of this Amended Order.  The City, APD, DOJ, the Independent Monitor, and the EFIT Administrator shall confer about any disagreements between APD and the EFIT Administrator regarding the qualifications of any IAFD investigator or supervisor to take responsibility for conducting full investigations of Level 2 and Level 3 uses of force.  The City and DOJ shall seek to resolve any such disagreements.  If the City and DOJ are unable to resolve such disagreements, they may bring the matter before the Court for resolution.

36. The City and DOJ anticipate that APD will take responsibility for conducting full investigations of Level 2 and Level 3 uses of force over time as individual IAFD investigators and supervisors meet the qualifications identified in Paragraph 34.

37. The City will endeavor to ensure that the responsibility for conducting full investigations of Level 2 and Level 3 uses of force returns entirely to APD within 24 months of that date this Amended Order is entered as a Court order.  The Parties shall evaluate APD's progress every six (6) months, including whether

EFIT is contributing to improvements in APD's progress on complying the CASA. After conducting two evaluations, the City, in consultation with DOJ, will file a status report with the Court indicating whether the services of the EFIT should extend beyond 24 months.

38. The City and DOJ agree to jointly ask the Court to terminate this Amended Order once there are a sufficient number of IAFD personnel who have met the qualifications identified in Paragraph 34 to complete investigations of all new Level 2 and Level 3 uses of force within the timelines required by the CASA, APD policy, and the CBA, provided that the EFIT Backlog Team has completed investigations of the Backlog Force Cases pursuant to the Scope of Work attached to this Amended Order as Exhibit 1.

39. Notwithstanding Paragraph 38 of this Amended Order, if the Independent Monitor, after conducting the informal assessments required by Paragraph 27(c), or the formal assessments required by Paragraph 29 and the CASA, determines that EFIT regularly fails to conduct investigations consistent with CASA requirements and APD policy, the City, with the concurrence of DOJ, may seek to terminate its contract with the EFIT Administrator, and the Parties may seek to modify this Amended Order accordingly.

40. If the City and DOJ are unable to reach agreement about asking the Court to terminate this Amended Order, either Party may seek to terminate this Amended Order. However, before the City may file a motion to terminate this Amended

Order, the City shall notify DOJ in writing of the grounds for the motion. Thereafter, the City and DOJ shall promptly confer about the City's assertions. If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ and/or the Independent Monitor may wish to undertake, the City and DOJ cannot resolve any disagreements, the City may file a motion to terminate this Amended Order.  If the City moves to terminate this Amended Order, DOJ will have 60 days after the receipt of the City's motion to file objections.  If DOJ does not object, the Court may grant the City's motion.  If DOJ objects, the Court will hold a hearing on the motion, and the burden shall be on the City to demonstrate that it has fully complied with this Amended Order and that the grounds for termination of this Amended Order are supported by a preponderance of the evidence.

The Court recognizes and approves of the measures in this Amended Order as good faith efforts by the Parties to address deficiencies in IAFD's investigations, as identified by the Independent Monitor in his Twelfth, Thirteenth, and Fourteenth Reports, and therefore approves this Amended Order as an Order of the Court.

**THEREFORE,**

**IT IS ORDERED** that the Parties' Joint Motion for Entry of this Amended Stipulated Order Establishing an External Force Investigation Team is approved, and the Amended Stipulated Order is hereby entered as an Order of the Court.

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction to enforce

the provisions of the Order.

_____
HON. JAMES O. BROWNING
United States District Judge

*Counsel:*

Fred J. Federici
  United States Attorney
Elizabeth M. Martinez
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  --and--

Paul Killebrew
  Deputy Chief
Patrick E. Kent
  Trial Attorney
Jared D. Hager
  Trial Attorney
Jean M. Zachariasiewicz
  Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Washington, D.C.
      *Attorneys for the United States*

Kevin A. Morrow
  Acting City Attorney
Lauren Keefe
  Special Counsel
Carlos Pacheco
  Managing Assistant City Attorney
Trevor Rigler
  Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico
      *Attorneys for the City of Albuquerque*

## Exhibit 1:  Scope of Work to Remedy the Backlog Force Cases

The City of Albuquerque (City) shall modify its existing contract with DLG Consulting and Advisory Services (DLG), to enable the External Force Investigation Team (EFIT) to investigate all use-of-force incidents that the Albuquerque Police Department (APD) Internal Affairs Force Division (IAFD) did not investigate, in whole or in part, from January 1, 2020, through July 16, 2021 (Backlog Force Cases),[2] in violation of the Court Approved Settlement Agreement (CASA), Doc. 465-1 of the Court's docket.  The EFIT shall investigate the Backlog Force Cases pursuant to this Scope of Work (SOW).

## A.      Establishing the EFIT Backlog Team

1.      Pursuant to DLG's modified contract with the City, the EFIT Administrator will create an EFIT Backlog Team, which shall consist of additional staff hired and retained by the EFIT Administrator to fulfill the requirements of the Amended Stipulated Order and this SOW.  It is anticipated that the EFIT Administrator will hire and retain at least six (6) additional investigators and two (2) additional supervisors to investigate, evaluate, identify appropriate corrective action, if any, that APD shall formally adjudicate, and report back on the Backlog Force Cases in accord with this SOW.

2.      The EFIT Administrator will ensure that EFIT Backlog Team members have experience and expertise in investigating law enforcement actions and constitutional standards governing use of force.  Members of the EFIT Backlog Team shall have no current or previous employment relationship or contract for services with APD or the City.

3.      The EFIT Executive Team, which currently consists of Darryl Neier, William Hurlock and Darriell Bone, shall have discretion to determine whether and to what extent EFIT Backlog Team members will provide services in Albuquerque or from remote locations.

4.      As soon as practicable after the Amended Stipulated Order is entered by the United States District Court for the District of New Mexico (Court) as an Order, and a contract is signed with the City, the EFIT Backlog Team will be fully constituted and begin investigating the Backlog Force Cases.  The EFIT Administrator will advise the City and DOJ of the date on which the EFIT Backlog Team is fully constituted and operating so that the Parties can notify the Court.

---

[2] EFIT was not involved in and is not in any way responsible for APD's backlogs.

5.      The EFIT Backlog Team shall be sufficiently staffed and shall complete the tasks outlined in this SOW within 24 months of the date the Amended Stipulated Order is entered as a Court order and a contract is signed with the City.

6.      The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases.  The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it.  The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor.

**B.      Investigation Protocol for Backlog Force Cases**

7.      Within two (2) days of the date the City and DOJ file a joint motion to amend the EFIT Stipulated Order, Doc. 720, IAFD shall provide to the EFIT Executive Team access through IAPro/BlueTeam for all documents in its possession for each of the Backlog Force Cases, whether final or in draft form, including but not limited to:  the IAFD case files, officers' use-of-force narrative forms, on-scene recorded verbal statements, on-body recording device (OBRD) recordings, the names of all involved officers, witness officers, and civilian witnesses, any recorded written or verbal witness statements, crime scene specialist photographs, responding supervisors' on-scene checklists, any related Internal Affairs Request (IAR) or Multi-Agency Task Force (MATF) referrals, all supervisory on-scene investigation forms, IAFD Evaluative Data forms, any entries in Blue Team or IAPro, and any other evidence of the force incidents.

8.      The EFIT Executive Team shall exercise its discretion in deciding how to assign the Backlog Force Cases to the EFIT Backlog Team investigators and supervisors, while first prioritizing Level 3 force investigations involving use of lethal force and then prioritizing cases from 2020.  EFIT will have discretion to expand the scope of a use-of-force investigation as necessary to reach reliable conclusions.

9.      For each use-of-force incident, the EFIT Backlog Team investigators shall develop an appropriate investigative plan with input from their respective supervisors, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 31–40.  An appropriate investigative plan will vary depending on the use-of-force incident and the available evidence.  However, unless variance is granted by the EFIT Executive Team,

an appropriate investigative plan will include, but is not limited to, the following minimum requirements:

a.   Evaluating APD's on-scene investigation, if any, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 1–30, however, the plan shall incorporate the IAFD process narrative as it relates to potential criminal conduct, *id.*, ¶ 17;

b.   Reviewing available documentary evidence, including but not limited to use-of-force narratives, OBRD recordings, and recorded witness statements; and

c.   Conducting appropriate interviews of involved officers, witness officers, and, if necessary, civilian witnesses.  The EFIT will have discretion to decide whether interviews will be conducted in person or remotely, by Zoom.

10.   EFIT Backlog Team investigators will prepare a narrative report for each case that, at a minimum, identifies the data reviewed, evaluates the use-of-force incident, and recommends a finding for whether each application of force complied with APD policy. Investigators will identify training, equipment, or policy concerns arising from the use-of-force incident.   Investigators will also identify other substantial APD policy violations related to the use of force that they become aware of during an investigation.

11.   When policy violations are found, investigators will identify appropriate corrective action, which may include but is not limited to:  training, counseling for involved or witness officers, equipment modifications, changes to policies or protocols, or reassignment of involved officers.  While EFIT may make recommendations, it is APD's responsibility to review the recommendations and make the final determination for such actions.

12.   EFIT Backlog Team investigators will submit completed investigations, including narrative reports, case materials, and recommendations to their supervisors for further review.

13.   EFIT Backlog Team supervisors will review each completed investigation for accuracy and completeness, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 41–50.  The supervisor will discuss with the investigator, at a minimum, the incident, data, and recommended findings, and determine whether any revisions or additional investigation is needed.  If revisions or additional investigation is needed, the

supervisor will return the case to the investigator with an appropriate plan of action and a deadline to resubmit the completed investigation.

14.   EFIT Backlog Team supervisors will prepare a supervisory narrative that confirms whether each application of force complied with APD's use-of-force policy and identifies other substantial violations of APD policy.  The supervisors will also approve, modify, or disapprove any corrective action recommended by the investigator.

15.   EFIT Backlog Team supervisors will submit the completed investigation and supervisory narratives to the EFIT Executive Team for final review and comment.

16.   The EFIT Executive Team will review the completed investigation and supervisory narratives to determine if they are thorough, objective, and complete, or if any revisions or additional investigation is needed, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 51–58.  If revisions or additional investigation is needed, the Executive Team will return the case to the supervisor with an appropriate plan of action and a deadline to resubmit the completed investigation.

17.   The EFIT Executive Team will finalize the investigation of a backlog force case by identifying whether each application of force complied with APD's use-of-force policy, identifying other substantial violations of APD policy arising from the conduct under investigation, and identifying training, equipment, or policy concerns arising from the use-of-force incident.

18.   When policy violations are found, the EFIT Executive Team's final review will identify appropriate corrective action, which may include but is not limited to:  training, counseling for involved or witness officers, equipment modifications, changes to policies or protocols, or reassignment of involved officers.  The completed investigation will also identify what, if any, discipline may have been warranted had the City and APD met their obligation to investigate the force incident within timelines imposed by the CASA and APD policy.  The EFIT Executive Team shall provide this information to APD.  While EFIT may make recommendations, it will be APD's responsibility to review the recommendations and make the final determination for such actions.  Any corrective actions derived out of the EFIT investigation are at the sole discretion of APD.

## C.   Closing Backlog Force Cases

19.   Upon finalizing an investigation, the EFIT Administrator will submit all case materials, including narratives and recommendations, to IAFD for closure pursuant to

the administrative steps outlined in the revised IAFD process narrative, Doc. 862-1, ¶¶ 59–63.

20.     Consistent with the CASA ¶ 78(b), the EFIT Administrator or Deputy Administrator will present to the Force Review Board (FRB) completed investigations that involve (a) an application of lethal force, and (b) an application of non-lethal force that EFIT identifies as not complying with APD's use-of-force policy.  The EFIT Administrator or Deputy Administrator also will present a general status report on the Backlog Force Cases to the FRB on a monthly basis, including any emerging themes or issues, data about the type of force being used and whether it complies with APD policy, and specific examples of any officers whose conduct is indicating a concerning pattern or anything else problematic that EFIT is identifying.

## D.     Ongoing Reviews and Reports

21.     Backlog Team investigators and their supervisors will meet at regular intervals, to be determined by the EFIT Executive Team, to discuss the status of ongoing investigations, revise investigative plans as necessary, and resolve any impediments to timely completing investigations.

22.     The EFIT Executive Team will meet with the Backlog Team supervisors and investigators at regular intervals, to be determined by the EFIT Administrator, to discuss the status of ongoing investigations, address concerns, and ensure that the Backlog Force Cases will be completely investigated within 24 months.

23.     The EFIT Executive Team will provide weekly written reports to DOJ, the City, IAFD, and the Independent Monitor that, at a minimum, contain status updates on the Backlog Force Cases, including cases assigned and completed, significant findings, and corrective actions.

24.     The EFIT Administrator will file quarterly reports with the Court that provide status updates on the Backlog Force Cases, including cases assigned and completed, significant findings, recommended corrective actions, and analyses provided to the FRB.

25.     Within 30 days of investigating all Backlog Force Cases, the EFIT Administrator shall provide the City and DOJ with a summary report identifying significant findings in individual cases, trends among all cases, root causes of the backlog, recommended corrective actions, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA.  The City and DOJ will

have two weeks to review and provide comments on the summary report.  The EFIT Administrator will have two weeks to consider the comments and revise the draft summary report.  Within 60 days of investigating all Backlog Force Cases, the EFIT Administrator will file a final summary report with the Court.

# EXHIBIT

# C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

THE CITY OF ALBUQUERQUE,            No. CIV. 14-1025 JB\SMV

       Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

       Intervenor.

## **NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS"**

COMES NOW, the City of Albuquerque, and hereby files the attached "Albuquerque Police Department Internal Affairs Force Division Current Processes, July 12, 2021." Exhibit 1.

Paragraph 14 of the Court's February 26, 2021, *Stipulated Order Establishing an External Force Investigation Team*, Document 720, (hereafter, *Stipulated Order*) requires the City to "submit a proposed written IA investigative process to the United States and Independent Monitor" within two months of entry of the Order. The City submitted the proposed investigative process to the Independent Monitor and United States on April 26, 2021, and thus complied with the Court's deadline Paragraph 14. Thereafter, the United States and Monitor considered the proposed investigative process, recommended revisions, and the City considered the recommendations and revised the process, as required by Paragraph 14.

1

Paragraph 14 of the *Stipulated Order* provides that "[a]fter the City, DOJ, and the

Independent Monitor reach agreement on the proposed written IA investigative process, the

written IA investigative process shall be filed with the Court." Doc. 720 at 5.  The Independent

Monitor, United States, and City have now agreed on the attached *Albuquerque Police*

*Department Internal Affairs Force Division Current Process*.  Exhibit 1.  The City therefore files

it with the Court as required by Paragraph 14 of the *Stipulated Order*.

Respectfully submitted this 16th day of July, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY

*Lindsay Van Meter*
LINDSAY VAN METER
Managing Assistant City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
lvanmeter@cabq.gov
trigler@cabq.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I filed the foregoing pleading electronically through the
CM/ECF system which caused all parties or counsel and the Independent Monitor to be
served by electronic means as more fully reflected on the Notice of Electronic Filing.

*Lindsay Van Meter*
Lindsay Van Meter
Managing Assistant City Attorney
City of Albuquerque

2



## ALBUQUERQUE POLICE DEPARTMENT

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

### July 12, 2021

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases.  This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025.  This document reflects the current investigative process at IAFD.  The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

Exhibit 1

# INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

## ON-SCENE AND ADMINISTRATIVE - USE of FORCE

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene. If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
   a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
      i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
         1. If the individual invokes his/her rights, questions will not be asked.
      ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
         1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
      iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
         1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
   a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
   b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation. Additional witness officers may have to be identified later in the investigation as more evidence and information is available. For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses. If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement. The responding supervisor may obtain a verbal statement if the witness is willing to do so.

7. The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8. The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.  If needed, he/she will watch the witness officers' OBRD to classify properly.

   a. If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command. If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9. The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident. The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene.  IAFD will maintain a roster of three detectives on-call each week.  The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

   a. IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork.  If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they needs to complete it themselves:

   • Identify involved officers.
   • Identify witness officers.
   • Identify the individual in which force was used.
   • Identify civilian witnesses.  If any civilian witnesses are on-scene, interview witnesses and encourage a written statement.  If a formal witness statement is required due to

circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.

- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
  - If the individual invokes his/her rights, no questions will be asked.
  - If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
    - This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours.  Note: this can occur at any point during the investigation. *(See MISCONDUCT).*

17. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case. Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email.  This can occur at any point during the investigation.
    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT).*

18. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion.  Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

19. Responding supervisor will complete the Supervisory On-Scene Investigation form.  This is turned in by the end of shift and emailed to the on-call IAFD detective.

20. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

21. The IAFD on-call detective will begin the Evaluative Data form.  This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team.  In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice.  The IAFD on-call detective will include the email in the case file for proof of 24-hour notification.  The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level

two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

22. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

23. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

24. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective.  IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team.  The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

25. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

    a.    The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro.  There are multiple entry types allowed in IAPro and Blue Team.  Many of these entry types may be involved in one case and are linked together in IAPro.  For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro.  Also, the K-9 Unit enters all deployments into Blue Team.  It should be noted that all K-9 deployments do not result in a K-9 bite.  When there is a K-9 bite, the linked data will include  a K-9 deployment entry and a use of force entry.

Below are examples of entry types:
Civilian Police Complaints (CPC) = CPC2021-000000
Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
K9 Utilization = K92021-000000
Force = F2021-000000
Award Nominations = AN2021-000000
Vehicle Crashes = VC2021-000000
Internal Investigations (IAPS misconduct) = I2021-000000
Non-Force = NF2021-000000

26. The case will remain in IAPro until assigned to a case agent.  Cases agent assignments shall be made expeditiously.

27. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team.  The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data.  The remainder of the case is in IAPro.  The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

28. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702.   IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

29. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.

**CASE AGENT – USE of FORCE**

30. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc. The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

31. If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. *(See MISCONDUCT).*

32. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment. The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

    a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

    b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

    c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

    d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

    e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

33. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

34. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

35. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

36. The case agent will upload all evidence into IAPro to include all forms and links.  At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.
37. The case agent will submit the case to the immediate supervisor for review in IAPro.
38. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.
39. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

**SERGEANT/LIEUTENANT**

40. The immediate supervisor will receive the case via IAPro.  If there is a force and a misconduct case, they may not be received at the same time.
41. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31).*
42. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT).*
43. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings.  This includes watching OBRD videos.
44. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.
45. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.
46. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.
47. The immediate supervisor will complete the IAFD Chain of Command Review Form.  This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.
48. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.
49. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

50. The deputy commander or commander will receive the case in IAPro.
51. The deputy commander or commander will review bookmarked OBRD videos.
52. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.
53. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.

54. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.

55. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.

56. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.

57. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

58. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.

59. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.

60. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.

61. The IAFD administrative staff will close the case in IAPro.

62. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

63. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.
   a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.
      i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.
         1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.
         2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.
         3. IAFD will complete an IAR when an initial policy violation is identified.
            a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.
   b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

64. The misconduct case will follow the same investigative steps as a use of force investigation. Each case will be reviewed by the IAFD chain of command. The only difference is the misconduct interviews will involve compelled statements.

65. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action. The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review. The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

66. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

67. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.

      i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

68. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case. *(See SOP 3-46 Discipline System).*

EXHIBT

D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE CITY OF ALBUQUERQUE,               No. CIV. 14-1025 JB\SMV

        Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

**<u>NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT
INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS
Revised – September 8, 2021</u>**

COMES NOW Defendant City of Albuquerque and hereby files the attached

"Albuquerque Police Department Internal Affairs Force Division Current Processes, Revised –

September 8, 2021" (Revised Process Narrative). Exhibit 1.

On July 16, 2021, the City filed a Notice of Agreed "Albuquerque Police Department

Internal Affairs Force Division Current Process," which was attached as its Exhibit 1 a Process

Narrative dated July 12, 2021. *See* Doc. 839-1. By filing that Process Narrative, the City

complied with Paragraph 14 of the Court's February 26, 2021 *Stipulated Order Establishing an*

*External Force Investigation Team* (Stipulated Order), Doc. 720, which required the City to

"submit a proposed written IA investigative process to the United States and Independent

Monitor" within two months of entry of the Order and "[a]fter the City, DOJ, and the

Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court." Doc. 720 at 5.

After the IA Force Division (IAFD) and External Force Investigation Team (EFIT) began operations under the Process Narrative, Doc. 839-1, they identified a material disparity between the Process Narrative and applicable use of force policy regarding use of force reporting, namely, whether written statements should be required in all circumstances as stated in the Process Narrative, or whether recorded verbal statements could be permitted as allowed by policy. The Revised Process Narrative permits using recorded verbal statements under limited circumstances with supervisory approval. *See* Exhibit 1 at Paragraph 14.

The Revised Process Narrative also includes a process pursuant to which IAFD and EFIT may resolve on scene disagreements about the proper classification of the level of force to be investigated. *See* Exhibit 1 at Paragraph 16. This  process was not included in the original Process Narrative.

The Revised Process Narrative attached as Exhibit 1 hereto, which was prepared by the City was reviewed and approved by the United States and the Independent Monitor as required by Paragraph 14 of the Stipulated Order. The Independent Monitor, the United States, and the City have agreed on the attached Revised Process Narrative, which the City now files with the Court as required by Paragraph 14 of the Stipulated Order. Counsel for the Albuquerque Police Officers' Association was contacted regarding the attached Revised Process Narrative and approves to form.

2

Respectfully submitted this 27th day of September, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY


*Carlos F. Pacheco*
CARLOS F. PACHECO
Senior Managing City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
cpacheco@cabq.gov
trigler@cabq.gov


## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.


                                        *Carlos F. Pacheco*
                                        Carlos F. Pacheco
                                        Senior Managing City Attorney
                                        City of Albuquerque



**ALBUQUERQUE POLICE DEPARTMENT**

**INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES**

**Revised - September 8, 2021**

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases.  This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025.  This document reflects the current investigative process at IAFD.  The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

**ON-SCENE AND ADMINISTRATIVE - USE of FORCE**

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene.  If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
    a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
        i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
            1. If the individual invokes his/her rights, questions will not be asked.
        ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
            1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
        iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
            1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
    a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
    b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation.  Additional witness officers may have to be identified later in the investigation as more evidence and information is available.  For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses.  If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement.  The responding supervisor may obtain a verbal statement if the witness is willing to do so.

7. The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8. The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.  If needed, he/she will watch the witness officers' OBRD to classify properly.

   a. If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command. If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9. The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident. The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene.  IAFD will maintain a roster of three detectives on-call each week.  The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

    a. IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork. On a very limited basis when IAFD and EFIT responded to UOF calls and when taking a written statement might not be feasible because of ongoing criminal conduct, the need to respond to other criminal conduct, or for officer safety reasons, and with written authorization of an IAFD Lieutenant or higher with the agreement by the EFIT Lead Supervisor or higher, a verbal statement can be recorded in lieu of the written use of force narrative. If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they need to complete it themselves:

   • Identify involved officers.

- Identify witness officers.
- Identify the individual in which force was used.
- Identify civilian witnesses. If any civilian witnesses are on-scene, interview witnesses and encourage a written statement. If a formal witness statement is required due to circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.
- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
  - If the individual invokes his/her rights, no questions will be asked.
  - If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
    - This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the level of force cannot be agreed upon by the assigned IAFD Detective and EFIT Investigator, the on-call IAFD Supervisor will respond to the scene to assist in properly classifying the level of force. For any level 2 or level 3 use of force call-out, that is classified on scene as a level 1 use of force, the classification will be reviewed (within 24-hours) by the EFIT Lead Supervisor to determine whether the UOF was properly classified.

17. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours. Note: this can occur at any point during the investigation. *(See MISCONDUCT).*

18. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case. Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email. This can occur at any point during the investigation.
    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT).*

19. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion. Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

20. Responding supervisor will complete the Supervisory On-Scene Investigation form. This is turned in by the end of shift and emailed to the on-call IAFD detective.

21. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

22. The IAFD on-call detective will begin the Evaluative Data form. This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team. In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice. The IAFD on-call detective will include the email in the case file for proof of 24-hour notification. The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

23. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

24. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

25. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective. IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team. The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

26. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

    a. The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro. There are multiple entry types allowed in IAPro and Blue Team. Many of these entry types may be involved in one case and are linked together in IAPro. For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro. Also, the K-9 Unit enters all deployments into Blue Team. It should be noted that all K-9 deployments do not result in a K-9 bite. When there is a K-9 bite, the linked data will include a K-9 deployment entry and a use of force entry.

    Below are examples of entry types:
    Civilian Police Complaints (CPC) = CPC2021-000000
    Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
    K9 Utilization = K92021-000000
    Force = F2021-000000
    Award Nominations = AN2021-000000
    Vehicle Crashes = VC2021-000000
    Internal Investigations (IAPS misconduct) = I2021-000000
    Non-Force = NF2021-000000

27. The case will remain in IAPro until assigned to a case agent. Cases agent assignments shall be made expeditiously.

28. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team. The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data. The remainder of the case is in IAPro. The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

29. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702.   IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

30. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.

## CASE AGENT – USE of FORCE

31. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc.  The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

*32.* If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. *(See MISCONDUCT).*

33. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment.  The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up.  An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

    a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

    b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

    c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

    d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

    e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators, and IAFD supervisor, to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

34. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

35. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

36. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

37. The case agent will upload all evidence into IAPro to include all forms and links. At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.

38. The case agent will submit the case to the immediate supervisor for review in IAPro.

39. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.

40. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

**SERGEANT/LIEUTENANT**

41. The immediate supervisor will receive the case via IAPro. If there is a force and a misconduct case, they may not be received at the same time.

42. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31)*.

43. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT)*.

44. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings. This includes watching OBRD videos.

45. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.

46. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.

47. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.

48. The immediate supervisor will complete the IAFD Chain of Command Review Form. This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.

49. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.

50. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

51. The deputy commander or commander will receive the case in IAPro.
52. The deputy commander or commander will review bookmarked OBRD videos.
53. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.
54. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.
55. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.
56. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.
57. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.
58. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

59. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.
60. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.
61. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.
62. The IAFD administrative staff will close the case in IAPro.
63. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

64. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.
    a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.
        i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.
            1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.

2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.
3. IAFD will complete an IAR when an initial policy violation is identified.
   a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.

    b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

65. The misconduct case will follow the same investigative steps as a use of force investigation. Each case will be reviewed by the IAFD chain of command. The only difference is the misconduct interviews will involve compelled statements.

66. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action. The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review. The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

67. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

68. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.
   i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

69. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case. *(See SOP 3-46 Discipline System).*

# EXHIBIT

# E

**DLG**  ACCOUNTING ADVISORY SERVICES

7073 Edison Place, Palm Beach Gardens, FL 33418
Info@dlgcpa.com  |  201-841-1776  |  www.dlgcpa.com

TO:        United States Department of Justice
           Independent Monitor – Dr. James Ginger
           Acting Superintendent Eric Garcia - Albuquerque Police Department
           Deputy Chief Cori Lowe - Albuquerque Police Department
           Acting Deputy Chief Zak Cottrell- Albuquerque Police Department
           Acting Commander Richard Evans - Albuquerque Police Department
           Acting Deputy Commander Adam Anaya - Albuquerque Police Department

FROM:      EFIT Administrator Darryl S. Neier *DSN*
RE:        Interview Transition Back To IAFD
DATE:      January 20, 2022

While this is a subjective determination, once an IAFD Detective/Investigator is identified by EFIT as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will review the recommendation. Only the EFIT Administrator or in his absence the Deputy Administrator will make a final determination that the IAFD Detective/Investigator may conduct interviews without direct supervision, and the following process must be followed:

1. The EFIT Administrator and/or Deputy Administrator will notify the APD Superintendent, Deputy Chief, IAFD Division Commander, the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.
2. The EFIT Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.
3. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.
4. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in a phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief, IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.
5. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase.

Phase 1

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) no later than 24 hours prior to the interview with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.
2. The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours before the interview to discuss the impending interview.
3. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

**DLG** ACCOUNTING ADVISORY SERVICES

7073 Edison Place, Palm Beach Gardens, FL 33418
Info@dlgcpa.com  |  201-841-1776  |  www.dlgcpa.com

4. Within 24-hours [after the recorded interview is uploaded to Evidence.com] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.
5. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.
6. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

<u>Phase 2</u>

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.
2. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.
3. Within 24-hours [after the recorded interview is uploaded to Evidence.com,] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.
4. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.
5. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

<u>Phase 3</u>

1. The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.
2. The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.
3. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.
4. EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

# EXHIBIT F

*Memorandum*

| | To: | From: |
|---|---|---|
| ALBUQUERQUE POLICE | | |
| | **Subject:**   **Sworn Employee Representative Admonition** | **Date:** |

You have been selected by_____and have voluntarily agreed to act as a sworn employee representative during the course of this official Internal Affairs investigation. Your participation in this process is defined in the Albuquerque Police Officers' Collective Bargaining Agreement Section 20.1.11**.**

As the sworn employee representative, you are to participate in this interview  as  a representative only. At no time shall you interrupt the interview in any  manner, including  but not limited  to: engaging  in any form of verbal or non-verbal communication, making distracting noises, or hindering the flow or direction of the interview with the exception of objecting to a question, or you may ask for a question to be repeated or restated for clarification purposes.

At the conclusion of this interview, the sworn employee or their representative will be given a reasonable amount of time to make any additional comments and/or provide any case and fact-specific information deemed necessary. You are further ordered not to discuss this investigation with anyone other than the Principal or the assigned investigators.

Failure to comply with the orders contained in this admonition shall result in your immediate removal from the interview room. If a sworn employee representative is removed, they may be allowed upto two (2) hours to obtain another employee representative before the interview is conducted.

The assigned  investigators  are:

I acknowledge that I have read and understand  this memorandum.

_____          _____
Signature and Man Number                               Date

PD 1142 New 04/2022

# EXHIBIT

# G

DLG Consulting & Advisory Services, LLC
Methodology for Albuquerque Police Department
Use of Force – Backlog Investigations

Darryl S. Neier, EFIT Administrator
April 27, 2022   *DSN*

**DLG** CONSULTING & ADVISORY SERVICES, LLC

7073 Edison Place, Palm Beach Gardens, FL 33418
Phone: 201-841-1776

Background

On March 21, 2022, the United States District Court for the District of New Mexico (the "Court") granted a joint motion filed by the United States Department of Justice ("DOJ") and the City of Albuquerque ("City"), with the concurrence of the Independent Monitor ("IM"), by entering an Amended Stipulated Order Establishing an External Force Investigation Team ("Amended Stipulated Order") in the case *United States v. City of Albuquerque*, No. CIV. 14-1025 JB\SMV (Doc. 906). The Amended Stipulated Order modifies and supersedes the Stipulated Order Establishing an External Force Investigation Team that the Court entered on February 26, 2021 ( Doc. 720).

The Original Stipulated Order required the City to establish, on a temporary basis, an External Force Investigation Team ("EFIT") to assist the Albuquerque Police Department ("APD") in conducting investigations of Level 2 and Level 3 uses of force by APD officers and improve the quality of force investigations conducted by APD's Internal Affairs Force Division ("IAFD"). The Original Stipulated Order also required the City to improve APD's internal affairs processes, maintain an increased number of IAFD investigators and provide additional training to IAFD investigators.

The Amended Stipulated Order restates many of the Original Order's requirements and supplements them in two ways. First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part ("Backlog Force Cases"), in violation of the Court Approved Settlement Agreement ("CASA"), Doc. 465-1. Second, the Amended Stipulated Order extends by 24 months, from May 2022 through May 2024, the period during which the City shall continue to engage EFIT to assist IAFD to investigate new Level 2 and Level 3 use-of-force incidents ("New Force Cases").

Exhibit 1: Scope of Work to Remedy the Backlog Force Cases ("SOW") to the Amended Stipulated Order (Doc. 906, Ex. 1 at 1-2, Para. 6) provides:

*"The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases. The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it. The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor."*

DLG  CONSULTING &
ADVISORY SERVICES, LLC

7073 Edison Place, Palm Beach Gardens, FL 33418
Phone: 201-841-1776

Based on the data received from APD pursuant to the Amended Stipulated Order, the EFIT Executive Team ("EET") determined that between January 19, 2020, and July 14, 2021, a total 655 cases (2,537 UOF incidents) were not investigated by APD. In addition, of those, 12 UOF cases were either completed and/or were in the review process for a total of 667 cases[1].  In order to comply with the Amended Stipulated Order (Doc. 906), the EFIT Administrator has identified/interviewed, and anticipates hiring six investigators and two supervisors who are highly experienced professionals to work with the three members of the current EET to makeup the EFIT 2 "Backlog" Team.

EFIT and APD agreed to utilize three categories of cases for reporting, tracking and statistical purposes. The categories are: Inactive, Active, and Completed.[2] Currently, all backlog cases had the status changed in IAPro to now reflect a status of Inactive. Additionally, data was provided indicating the status of involved Officer(s) with APD (e.g., dates of hire and, if applicable, dates of separation).

The methodology, once approved, along with the SOW (attached), will guide EFIT's process of investigating the Backlog Force Cases.

## Methodology

This methodology statement, along with the SOW will guide the assignment of the backlog cases to the EFIT 2 Investigators for investigation and reporting.

With assistance from APD's Accountability Bureau, the EET obtained an Excel spreadsheet containing the data of all the Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906). Additionally, the EET worked with members of the Accountability Bureau and agreed that APD will develop a dashboard that is similar to the current IAFD case tracking and management dashboard, stratifying the data readability that will be distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboard will be developed by June 1, 2022, by APD's new Data Analytics Division and tested by the EET prior to use.

The EET conducted a number of meetings with APD's Accountability Bureau, including the Compliance and Oversight Division and the newly created Data Analytics Division who will also assist calculating normative thresholds for UOF to identify the Officer(s) who utilize UOF over the expected incident rate and are thus considered High Incident Officers.

---

[1] Three Backlog Force Cases have already been presented to the Force Review Board ("FRB").

[2] Inactive – unassigned backlog case; Active – a UOF investigation assigned for an investigation; Completed – a Backlog Force Case that has been closed by the EET.

3

**DLG** CONSULTING & ADVISORY SERVICES, LLC

7073 Edison Place, Palm Beach Gardens, FL 33418
Phone: 201-841-1776

The early intervention thresholds currently used by APD compare all Officers assigned to an area command shift to a threshold calculated for all Officers assigned to the shift. The Performance Evaluation and Management System Section ("PEMS") analysts found that shift was a better predictor of force for patrol officers than area command assignments. The threshold is set to identify the top 10% of officers who use force relative to the number of calls for service. Additionally, this model will be applied to specialized units to identify thresholds for those units compared to all other Officers in the unit.

Once the data is reviewed by the EET, the EET will use the expected incident rate of the involved Officer(s) to find those that significantly deviate from expectation, who will be labeled a "High-Incident Officer."

The EET will assign Backlog Force Cases according to the following prioritization levels –

1.  Officer Involved Shootings (regardless of the backlog year)[3]
2.  High-Incident Officer (regardless of the backlog year)[4]
3.  Ad-Hoc (regardless of the backlog year)[5]
4.  K-9 apprehension(s) and bite(s) other than a Tactical Activation
5.  Tactical Activation and any associated UOF
6.  Applications[6] of an ECW
7.  Level 3 UOF
8.  Level 2 UOF
9.  UOF of Officer(s) who separated from APD (except if the force is in the prioritization levels 1-5)[7]

Once the Backlog Team completes investigations of the Backlog Force Cases in prioritization tiers 1, 2, and 3 the EET will assign the Backlog Force Cases in tiers 4-9 within tiers 4-9, EFIT will prioritize force events occurring in 2020[8], then assign force events occurring in 2021.

---

[3] 4 OIS (2020) and 3 OIS (2021).

[4] The EET will assign all Backlog Force Cases involving a High-Incident Officer to one Backlog Team Investigator who will review all the associated Backlog Force Cases involving the officer to determine if a patten or practice arises and issue a consolidated report with the findings for all of that officers' Backlog Force Cases.

[5] At the discretion of EFIT.

[6] According to the CASA (Doc. 465, Para. 12) "*ECW application means the contact and delivery of an electrical impulse to a subject with an Electronic Control Weapon.*"

[7] If the separated officer was involved in a UOF with other Officer(s) still employed by APD, the case will be investigated at a higher prioritization tier.

[8] SOW, Para. 8.

**DLG** CONSULTING & ADVISORY SERVICES, LLC

7073 Edison Place, Palm Beach Gardens, FL 33418
Phone: 201-841-1776

Once the EET assigns case(s) to a Backlog Team Investigator the case will be deemed active in IAPro. The Backlog Team Investigator will follow the SOW:

*Para. 9 – "For each use-of-force incident, the EFIT Backlog Team investigators shall develop an appropriate investigative plan with input from their respective supervisors, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 31–40. An appropriate investigative plan will vary depending on the use-of-force incident and the available evidence. However, unless variance is granted by the EFIT Executive Team, an appropriate investigative plan will include, but is not limited to, the following minimum requirements:*

> *a.    Evaluating APD's on-scene investigation, if any, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 1–30, however, the plan shall incorporate the IAFD process narrative as it relates to potential criminal conduct, id., ¶ 17*

> *b.    Reviewing available documentary evidence, including but not limited to, use- of-force narratives, OBRD recordings[9], and recorded witness statements; and*

> *c.    Conducting appropriate interviews of involved officers, witness officers, and, if necessary, civilian witnesses. The EFIT will have discretion to decide whether interviews will be conducted in person or remotely, by Zoom."*

*Para. 10 – "EFIT Backlog Team investigators will prepare a narrative report[10] for each case that, at a minimum, identifies the data reviewed, evaluates the use-of-force incident, and recommends a finding for whether each application of force complied with APD policy. Investigators will identify training, equipment, or policy concerns arising from the use-of-force incident. Investigators will also identify other substantial APD policy violations related to the use of force that they become aware of during an investigation."*

The EET is aware that 12 Backlog Force Cases were investigated by IAFD and are in some process of review with three of the cases already presented to the FRB. For these cases, EFIT Backlog Team Supervisors will conduct an "over the top review". Once completed, these cases will be reviewed by a member(s) of the EET for a determination of completeness and closeout. If the investigation is deemed to be insufficient, the EET will reassign the case for a full investigation by a Backlog Team Investigator.

Upon completion of a Backlog Force Case investigation, a supervisory review process as outlined in the SOW (Paras. 11-16) will be followed along with the EET reporting and close out requirements (Paras. 17 – 20). Finally, on an ongoing basis, the EET will prepare all the required reporting as outlined in the SOW (Paras. 23-25).

---

[9] The OBRD review will follow the Individual from Pre-force, the Force Incident, Post-force, Transportation and any other OBRDs determined germane to the UOF investigation.

[10] This narrative report will be the same format already utilized when EFIT assumes an investigation from IAFD.