# EXTERNAL FORCE INVESTIGATION TEAM'S (EFIT'S) SIXTH Quarterly Report

October 28, 2022 – February 16, 2023

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
March 1, 2023

Table of Contents

Page

Table of Exhibits ...........................................................................................2

Introduction ..................................................................................................3

Executive Summary ......................................................................................3

Background ...................................................................................................6

EFIT's Mandate ..........................................................................................11

Accomplishments To Date ..........................................................................16

Phase 1 ........................................................................................................18

Phase 2 ........................................................................................................18

Phase 3 ........................................................................................................19

Phase 4 ........................................................................................................19

Concerns To Date ........................................................................................35

Sustainability ..............................................................................................35

    Supervision...........................................................................................39

    Albuquerque Police Officers Association ............................................41

    City Legal .............................................................................................42

Amended Stipulated Order and Backlog Force Cases ("EFIT 2") .........43

Upcoming Dates ..........................................................................................54

TABLE OF EXHIBITS

PAGE

EXHIBIT A - INTERVIEW TRANSITION POLICY – JANUARY 20, 2022
 (DOC. 900, EXHIBIT D) ...............................................................................1

EXHIBIT B - AMENDED STIPULATED ORDER ESTABLISHING AN
EXTERNAL FORCE INVESTIGATION TEAM (DOC. 906) ..................................4

EXHIBIT C – APD PROCESS NARRATIVE, JULY 12, 2021 (DOC. 906).........30

EXHIBIT D - APD PROCESS NARRATIVE - REVISED SEPTEMBER 8, 2021
 (DOC. 862-1) ...........................................................................................42

EXHIBIT E – JOINT AGREEMENT TO EXTEND TIME (DOC. 864) .................55

EXHIBIT F - METHODOLOGY FOR BACKLOG CASES
(DOC. 912, EXHIBIT F) ...........................................................................61

EXHIBIT G - EFIT PROCESS CHANGES – JANUARY 3, 2023 .................67

**Introduction**

1. Please accept this sixth quarterly report of the External Force Investigation Team ("EFIT").[1]

2. The EFIT Backlog Team ("EFIT 2" or "Backlog Team") also herein submits its third quarterly report at this time.

3. For the sake of the timing and completeness of this report, the data contained herein covers October 28, 2022, to February 16, 2023, inclusive. Both EFIT and EFIT 2 will file their next quarterly report on or about May 25, 2023.

**Executive Summary**

4. As of this report,[2] and cumulatively since EFIT went live in July 2021, 43 out of the 606 (7.09%) UOF investigations closed by EFIT/IAFD were found not within the APD UOF policies (this is a 0.15% increase from what was reported in the previous quarterly report).[3] Most significantly, 144 out of the 606 (23.76%) of the UOF investigations closed by EFIT/IAFD were out of compliance when evaluated against the Process Narrative (Doc. 862)[4] utilized to assess investigations (this is a cumulative reduction of 6.17% from what was reported in the previous quarterly report).

---

[1] While the Stipulated Order Establishing EFIT (Doc. 720) and its attendant mandate *did not require* EFIT to file quarterly reports, in the interest of transparency, the EFIT Executive Team (Messrs. Neier, Hurlock and Bone), decided to prepare and file quarterly reports for EFIT. The Order establishing the EFIT Backlog Team (Doc. 906), Statement of Work ("SOW") requires that EFIT backlog team prepare and file quarterly reports. For the sake of the timing and completeness of this report, the data contained herein covers October 27, 2022, to February 16, 2023, inclusive. However, EFIT, consistent with past practices, respectfully reserves the right to amend its report if necessary.

[2] For these statistical purposes EFIT will be using February 16, 2023, as a cutoff date unless otherwise noted.

[3] See paragraphs 80-83 and the associated table (page 32) for a quarterly analysis.

5.  EFIT's next quarterly report, which is to be filed with the Court on or about May 25, 2023, will continue to contain an analysis of these issues based on the findings of both APD UOF compliance and case investigative (Process Narrative) compliance.

6.  While this quarterly report addresses EFIT's qualitative findings up to, and including, February 23, 2023, EFIT's statistical findings are as of February 16, 2023. However, the report provides a comprehensive review of EFIT's experience since inception.

7.  As of February 16, 2023, EFIT and IAFD (since July 16, 2021), responded to  investigated, and/or opened or are monitoring 745[5] UOF incidents to include 26 Officer Involved Shootings ("OIS")[6] and cumulatively made 5 referrals to the Multi-Agency Task Force ("MATF")[7] for potential criminal violations (one referral was made during this quarter related to a backlog investigation, and one referral was made by IAFD on a Level 1 UOF). EFIT/IAFD completed all investigations within the 90-day time period outlined in the Amended Stipulated Order (except for detailed below).[8]

---

[5] Two UOF investigations were transferred to the Internal Affairs Professional Standards Division ("IAPS") for both UOF and misconduct investigations. Other than responding to the scene, these investigations are not included in EFIT's statistics.

[6] One OIS was determined by IAFD/EFIT and the FRB, as out of APD Policy.

[7] The MATF i*s an investigatory task force composed of different law enforcement agencies and prosecuting offices as established by a Memorandum of Agreement. The purpose of the MATF is to conduct criminal investigations related to critical incidents involving OISs, uses of force where criminal allegations are made and in-custody deaths* (APD SOP 1-67).

[8] Two of the closed cases involved an Officer who was involved in both cases and severely injured during the second of the two cases: an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days, respectively, and are not included in the statistical findings related to length of investigation or days to close the investigation. Additionally, during the prior reporting period an extremely complex UOF investigation was conducted that necessitated extending the mandated timelines. The parties were notified and agreed to the extension. DOJ memorialized this in a memorandum and the UOF Investigation was completed in 120 days. This case is not included in the statistical findings related to length of investigation or days to close the investigation.

8. Since inception, EFIT assumed 13 UOF investigations, pursuant to Paragraph 23(b) of the Amended Stipulated Order.  During this reporting period EFIT did not assume any UOF investigations from IAFD, an improvement from prior quarters. However, on February 7, 2023, EFIT issued a memorandum to the parties, pursuant to the Amended Stipulated Order (Doc. 906 Para. 22-26) outlining EFIT's reasoning (and supporting analysis) as to why EFIT did not agree with IAFD's findings that the Officer Involved Shooting (22-00878XX) was reasonable, necessary, proportional, and minimal and within APD SOPs and guidelines. This case will be presented by IAFD before the APD Force Review Board on March 2, 2023.

9. EFIT is pleased to report that it continues to witness a marked improvement in IAFD. Indeed, while there remains work to be done, the atmosphere within IAFD again improved substantially in this reporting period, the details of which are detailed below. (See Paras. 64-72 below).

10. The EFIT Executive Team is also pleased to report that, pursuant to the established protocols[9] (See Ex. A), it is transitioning IAFD Detective/Investigators to conduct interviews without EFIT's direct supervision. As a result, 5 graduated the transition process (2 unfortunately, separating from APD) while those remaining are conducting UOF investigations with minimal EFIT oversight.  Currently 9 IAFD personnel are progressing through the Phases (See Paras. 42-50 below).

---

[9] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

11. EFIT also noted previous concerns regarding supervision and sustainability. (See Paras. 97-118 below).  It appears that APD is taking these issues seriously and is working closely with EFIT to address them.  Specifically, EFIT works closely with IAFD Commander Norris and Deputy Director Zak Cottrell to address these and other issues on a daily basis.

12. It is EFIT's intention that this report provides the Court with a better understanding of the successes, recommendations and failures of APD, particularly IAFD. It is EFIT's goal to teach, mentor and professionalize IAFD so that when EFIT's assignment is completed, EFIT leaves the City with a sustainable division that investigates UOF incidents in a timely, thorough and professional manner.[10]

**Background**

13. On February 26, 2021, the United States District Court for the District of New Mexico (the "Court") granted a joint motion filed by the United States Department of Justice ("DOJ") and the City of Albuquerque ("City") with the concurrence of the Independent Monitor ("IM") by entering a Stipulated Order Establishing an External Force Investigation Team ("Stipulated Order") in the case *United States v. City of Albuquerque,* No. CIV. 14-1025 JB\SMV. (Doc. 720).  The Stipulated Order established EFIT and its attendant mandate. On May 2, 2021, a preliminary contract was signed between DLG, Accounting and Advisory Services ("DLG, LLC") and Albuquerque Police Department ("APD"). On June 23, 2021, the full contract was signed by DLG, LLC and the City, enabling EFIT to commence full operations on July 16, 2021.

---

[10] For extensive background information on the EFIT Executive and the EFIT Investigatory Teams please see EFIT's First Quarterly Report dated October 16, 2021. (Doc. 873).

14. On March 21, 2022, the Court granted a joint motion filed by DOJ and the City with the concurrence of the IM by entering an Amended Stipulated Order Establishing an External Force Investigation Team ("Amended Stipulated Order") (Doc. 906) (See Ex. B). The Amended Stipulated Order modifies and supersedes the Stipulated Order previously entered by the Court ( Doc. 720).

15. The Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways.  First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part ("Backlog Force Cases"), in violation of the Court Approved Settlement Agreement ("CASA") (Doc. 465-1)[11]. Second, the Amended Stipulated Order extends by 24 months,[12] from May 2022 through May 2024, the period during which the City shall continue to engage EFIT to assist IAFD to investigate new Level 2 and Level 3 use-of-force incidents ("New Force Cases").

16. Classifications of Force[13] that EFIT works within are enumerated in the APD UOF Policies. (See Paras. 17-19 below).

---

[11] For extensive background information on the EFIT 2 Executive and EFIT Investigatory Teams please see EFIT's Fourth Quarterly Report dated August 23, 2022 (Doc. 942).
[12] Or until the mission of EFIT 1 and EFIT 2 are fulfilled, whichever is earlier.
[13] APD SOP Procedural Order 2-53 - Revised on January 26, 2023, https://www.cabq.gov/police/standard-operating-procedures/standard-operating-procedures-manual.

17. **Level 1 Use of Force:** Any use of force that is likely to cause only temporary pain, disorientation, and/or discomfort during its application as a means of gaining compliance; or any show of force.

    a. Any Level 1 use of force against an individual in handcuffs remains a Level 1 use of force.

18. **Level 2 Use of Force:** Any use of force that causes injury, that could reasonably be expected to cause injury, or that results in a complaint of injury greater than temporary pain, regardless of whether the use of force was unintentional or unavoidable. A Level 2 use of force includes:

    a. Discharge of an ECW, including where an ECW is fired at an individual but misses;

    b. Use of a beanbag shotgun or 40-millimeter impact launcher, including when it is fired at an individual but misses;

        i. The use of a 40-millimeter impact launcher as a tool to defeat a window of a commercial or residential structure or a window of an occupied vehicle or another type of barrier will not be investigated as a use of force unless it strikes an individual.

    c. Use of oleoresin capsicum ("OC") spray, including when it is sprayed at an individual but misses;

    d. Use of empty-hand techniques that result in injury or complaint of injury (e.g., strikes, kicks, takedowns or leg sweeps);

    e. Strikes and attempted strikes with impact weapons;

        i. This excludes strikes to the head, neck, throat, chest, or groin, with a beanbag shotgun or 40-millimeter impact launcher and strikes to the head, neck, throat, chest, or groin with a baton or improvised impact weapon, which are considered deadly force.

    f.  Deployment of a noise flash diversionary device ("NFDD") inside a structure;

        i.  If an NFDD is deployed outside of a structure or outside an enclosed vehicle and is used as a means to gain the attention of an individual, it will not be considered a use of force.

    g.  Use of a horse rein strike on an individual's extremities; and

    h.  Use of the Precision Immobilization Technique ("PIT") maneuver at 35 mph or below.

19. **Level 3 Use of Force:** Any use of force that results in, or could reasonably result in, serious physical injury, hospitalization, or death, regardless of whether the use of force was unintentional or unavoidable. Level 3 use of force includes:

    a.  Use of deadly force;

    b.  Critical firearm discharge;

    c.  Force resulting in hospitalization, serious medical episode, loss of consciousness, and/or a seizure;

    d.  Police service dog ("PSD") directed bite;

    e.  Three (3) or more ECW discharges on an individual during a single interaction, regardless of the mode or duration of the discharge, and regardless of whether the discharges are by the same or different officers;

    f.  An ECW discharge on an individual during a single interaction for longer than fifteen (15) seconds, whether continuous or consecutive, regardless of the mode of discharge;

    g.  Four (4) or more strikes with a baton or improvised impact weapon;

    h.  Any Level 2 use of force against a handcuffed individual;

    i.  Use of the PIT maneuver thirty-five (35) mph or below that results in, or could reasonably result in, serious physical injury, hospitalization, or death; and

    j.  Use of the PIT maneuver above thirty-five (35) mph.

20. EFIT's full contract was presented to, and approved by, the City Council on May 16, 2022. On May 17, 2022, the City filed a Notice with the Court regarding the status of funding to effectuate the Amended EFIT Stipulated Order and the subsequent funding for EFIT 2. (Doc. 913).

21. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond to all call outs within one hour of notification. All Use of Force ("UOF") investigations must be completed within 60 days with an additional 30-day supervisory review period for a total of 90 days from start to finish. Pursuant to the Amended Stipulated Order, EFIT must conduct joint investigations with APD IAFD of all Level 2 and Level 3 UOF incidents – this includes all Tactical Deployments where UOF is utilized. EFIT must also assist APD with training concerning the UOF.

22. The EFIT Executive Team worked with APD IAFD to establish a detailed IA Investigative Process Narrative[14] that governs the response protocols to any Level 2 and 3 UOF cases.[15] These documents, and the procedures for an IAFD/EFIT investigation, are the basis for EFIT to evaluate IAFD. It is anticipated that, EFIT will file with the Court an amended and revised Process Narrative that will reflect the new UOF Policies[16] (effective date January 26, 2023) and amendments to the CASA submitted to the Court by the Parties (Doc. 979 and 981).

---

[14] As required by Paragraph 14 of the Stipulated Order (Doc. 720 at 5), the Process Narrative was filed with the Court on July 12, 2021 (Doc. 839-1).

[15] A revised Process Narrative was filed on September 27, 2021 (Doc. 862-1).

[16] APD SOP Procedural Order 2-52 through 2- 57 - Revised on January 26, 2023, https://www.cabq.gov/police/standard-operating-procedures/standard-operating-procedures-manual

23. EFIT presented the Fifth Quarterly Report summary at a status conference on December 6, 2022, to the Court and all parties (Doc. 973).

24. Pursuant to the Amended Stipulated Order the City drafted a contract for EFIT to establish a secondary team ("EFIT 2") to investigate and address the 667 backlog cases.[17] EFIT 2 commenced work on June 20, 2022, to address the backlog cases pursuant to the relevant paragraphs of the Amended Stipulated Order (Doc. 906). (See Paras. 125-158 below). EFIT established a detailed procedure for first addressing the most serious cases (OISs, Officers involved in multiple uses of force) once it commenced operations. At this point, EFIT 2 completed all OIS investigations and presented its findings to the APD FRB. A total of 5 cases were deemed out of policy, however the FRB disagreed with two of the cases voting that the OIS was within APD Policy (See Para. 130 below).

25. The City Council extended the funding for both EFIT 1 and EFIT 2 (Backlog team) until May 2024.

**EFIT's Mandate**

26. The Stipulated Order established the EFIT and its mandate. Based on discussions with the City, and to comply with the Amended Stipulated Order, EFIT 1's contract was extended and funded up to and including May 2024.

27. As stated previously, EFIT 1 derives its authority and jurisdiction from the Stipulated Order (Doc. 720) superseded by the Amended Stipulated Order (Doc. 906), Process Narratives (July 12, 2021, revised September 8, 2021) filed with the Court on July 16, 2021 (Doc. 839-1) and September 27, 2021 (Doc. 862-1), respectively (Exs. C & D).

---

[17] It should be noted that within the 667 backlog cases there are a total of 2,537 incidents when various levels of force were applied to an individual.

28. Pursuant to the relevant documents, EFIT and IAFD are on call 24/7 and must respond within one hour of notification. EFIT ensures that the IAFD investigations are a high quality, thorough and impartial investigation. All UOF investigations must be completed within 60 days and a 30-day supervisory review period for a total of 90 days from start to finish. Provisions are in place if an extension of these timelines is needed for extenuating circumstances, such as an inability to interview an officer sustaining serious injuries due to an OIS and/or a complex investigation.[18]

29. The Amended Stipulated Order (Doc. 906 at Para. 12), and the Stipulated Order before it (Doc. 720 at Para. 12), establish the staffing levels for the APD IAFD. As of this reporting period, IAFD fell below the minimum staffing level for 10-days (January 5, 2023 – January 14, 2023) due to a promotion and transfers. That was rectified. IAFD must be staffed with 25 Detectives/Investigators.[19] Currently IAFD has 17 civilian Investigators[20] and 8 Detectives. (See Paras. 103 & 105 below). Chief Medina authorized the staffing of additional IAFD personnel in anticipation of expected losses and IAFD interviewed and filled certain of the positions.

---

[18] On October 20, 2021, a Notice was filed with the Court (Doc. 864) due to an OIS delaying the completion of two investigations. Additionally, a complex investigation required an agreement among the parties to extend the mandated time frame issued a memorandum to capture same. (Exhibit E).

[19] For the purpose of this report, the term "Detective" equates to sworn APD personnel and "Investigator" is used for civilians conducting UOF investigations.

[20] Training of IAFD takes approximately 3 to 4 weeks for sworn personnel to over 2 months for civilians resulting in operational effectiveness (currently 5 are in training). Sustainability of staffing is one of the main concerns of EFIT and will continue to be addressed in future reports to the Court.

30. While these staffing levels must be maintained under the Amended Stipulated Court Order (Doc. 906 at Para. 12), EFIT continues to express concern that Detectives and Investigators that are in the EFIT Transition Plan (See Paras. 98-108) will no longer be assigned to IAFD. Indeed two fully graduated IAFD members have since left the department. This is an obvious concern for all parties.

31. Specifically, EFIT continues to express concern regarding the retention of Lieutenants, Sergeants, Investigators and Detectives in IAFD. Mr. Neier and Mr. Hurlock continue to meet with APD's Executives, counsel for the City and the APOA regarding this issue.

32. APD's Remedial Action Plan (Doc. 899) for IAFD was filed with the Court on February 15, 2022, and the parties' joint status report on EFIT filed with the Court on February 23, 2022, (Doc. 901) recognizing that EFIT is contributing to improvements in the IAFD process and recommending an extension of EFIT. Ultimately, the goal is for EFIT to return responsibility back to APD for UOF investigations. APD's next Remedial Action Plan will be filed with the Court on or about March 8, 2023

33. As stated previously, the EFIT Executive Team worked with APD to establish a detailed Process Narrative that governs the response protocols to Level 2 and 3 UOF cases. EFIT and APD continue to review this document to ensure that it is serving the interests of the assignment and has made modifications, as necessary. Any modification is reviewed by the City Attorney's Office, DOJ and the IM. A revised Process Narrative was filed with the Court on September 27, 2021, (Doc. 862-1) and serves as the working procedure that IAFD/EFIT follows and the basis for EFIT to evaluate IAFD.

34. Once filed, the Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators. During this reporting period IAFD achieved a 98.84% rating in complying with the Process Narrative (See Paras. 67, 80-90 below).

35. Cases that are fully investigated by IAFD/EFIT are reviewed by the EFIT Team Supervisor, and forwarded to the IAFD Sergeant for their review. The IAFD Sergeant determines if the force is within APD policy and forwards it for an IAFD Command review. It is after the Command level review that the EFIT Executive Team reviews the UOF determination and recommends closing a case when appropriate.

36. Provisions were written into the Amended Stipulated Order should EFIT need to assume full responsibility of an investigation or disagree with IAFD's investigative findings.   In this reporting period EFIT did not assumed any UOF investigation, pursuant to Paragraph 23(b) of the Amended Stipulated Order, and it should be noted that EFIT has not assumed an investigation since August 2022.

37. Finally, the Process Narrative also outlines the protocol IAFD and EFIT must take if a UOF might subject an APD Officer to criminal liability. (Doc. 862 at Para. 18.) EFIT/IAFD made 5 such referrals as a result of the type of force utilized since EFIT's inception. While MATF will investigate these matters for criminal liability, IAFD/EFIT will continue the UOF investigation and IAFD will review the case for any misconduct by the Officers.[21]   EFIT made one referral to MATF during this quarter related to a backlog UOF investigation; however, on January 26, 2023, a declination letter was issued by the District Attorney stating that the statute of limitations for aggravated battery passed. (See Para. 131 below).

---

[21] IAFD Investigated the UOF along with misconduct and found the UOF was out of APD UOF Policies.

38. Closed UOF cases are presented to the Force Review Board ("FRB").[22] All Level 3 cases, tactical deployments, OIS, and 10 % of Level 2 cases are presented at FRB. Initially, EFIT had no role in the FRB process other than as an observer. However, as the cases that EFIT jointly investigated with IAFD are now at the FRB level, Mr. Neier and Mr. Hurlock believed that EFIT should have a more active role in the FRB. To that end, Mr. Neier and Mr. Hurlock met with APD, DOJ and the IM team to discuss the parameters for such participation to occur.

39. As a result, all parties agreed that EFIT may take a more active role in presentations made to the FRB. For those cases where EFIT assumed responsibility for the investigation, Mr. Neier or Mr. Hurlock will make the full presentation to the FRB. As of this reporting period Messrs. Neier and Hurlock made 10 presentations to the FRB on backlog investigations, and addressing questions that arose at the FRB for those current cases where EFIT worked with IAFD to close.

40. Moreover, for all FRB proceedings at least one member of the EFIT Executive Team attends the meetings. In addition, EFIT Team Supervisors now also attend FRB proceedings.  As of this report all UOF investigations where EFIT/IAFD conducted a joint investigation were presented to the FRB. Additionally, Mr. Neier or Mr. Hurlock present all Backlog OIS and any out of APD Policy UOF investigations closed by the EFIT Backlog Team to the FRB (5 OIS, 32 Level 3 UOF and 11 Level 2 UOF).

---

[22] FRB - It is the policy of the Albuquerque Police Department (Department) *to conduct timely, comprehensive, and reliable reviews of (a) Level 2 and Level 3 use of force investigations to ensure the findings are supported by a preponderance of the evidence, and (b) tactical activations in order to analyze and critique specialized response protocols* (APD SOP 2-58) (emphasis added).

41. As reported previously, EFIT is very pleased that there is a noticeable change within IAFD (since Commander Norris assumed the command of the division) among the Detectives/Investigators. This change includes a higher degree of motivation manifesting in such things as intersquad competition concerning the EFIT Transition Plan and selection for pilot projects.

**Accomplishments To Date**

42. The EFIT Executive Team is pleased to report that, pursuant to the established protocols[23] (See Ex. A), it is transitioning IAFD Detective/Investigators to conduct interviews without EFIT's direct supervision or oversight. As a result, 3 graduated the transition process and are conducting UOF investigations with minimal EFIT oversight, currently 9 IAFD personnel are progressing through the Phases[24] of the system that will ultimately lead to an IAFD Detective/Investigators conducting UOF investigations without direct supervision or oversight of EFIT.

43. Again, once a Detective/Investigator is identified by an EFIT Investigator, Supervisor or Executive Team Member, as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will make a determination that the IAFD Detective/Investigator may conduct interviews and the following process will be followed:

44. The EFIT Administrator and/or Deputy Administrator will notify APD Superintendent of Police Reform ("Superintendent"), IAFD Division Commander and Deputy Chief(s) (within

---

[23] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

[24] These statistics do not include two IAFD Detectives that were in the transition phases, one transferred from IAFD to the Level 1 Pilot Project and the other was promoted.

the chain of command), along with the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

45. Mr. Bone ("Lead Supervisor") will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

46. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

47. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in the phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief(s) and IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

48. As stated above, unfortunately, two graduates left APD. Again, sustainability is a real concern for EFIT. Sustainability, and its attendant consequences, are further addressed in this report.

49. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase.

50. It is important to note the EFIT Executive Team modified these protocols during this reporting period. The previous protocols are listed below, and the new protocols follow. The EFIT Executive Team thought it prudent to include both sets of protocols in this report since they were both applicable at different times during this reporting period.

**Phase 1 (10 Interviews)**

    a.   The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) no later than 24 hours with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.

    b.   The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours before the interview to discuss the impending interview.

    c.   After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

    d.   Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.

    e.   This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.

    f.   Should the EFIT Executive Team deem that a second interview be necessary, an EFIT Investigator shall be involved in the interview.

**Phase 2 (10 Interviews)**

    a.   The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.

    b.   After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

c. Within 24-hours after the recorded interview is uploaded to Evidence.com, the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.

d. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.

e. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT Investigator shall be involved in the interview.

**Phase 3 (2 Interviews)**

a. The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.

b. The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.

c. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

d. EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

**Phase 4 (On Scene 3 Responses)**

a. The EFIT Executive Team will confirm that the cases the Detective/Investigator are assigned to are 95% compliant with the Process Narrative. This along with the results of the prior phases will be a determining factor that the Detective/Investigator and are ready to enter Phase 4.

    b.  IAFD on-call Supervisor will be contacted by the EFIT On-Call Supervisor of the need to respond to a Level 2 or Level 3 UOF. Except for an OIS[25], the IAFD Detective/Investigator will respond without the direct oversight of EFIT and comply with all provisions of the Process Narrative.

    c.  The EFIT On-Call Supervisor will assign the case to an EFIT Investigator who will review Blue Team and the OBRD of the IAFD Detective/Investigator within 24 hours of the Blue Team entry. The EFIT Investigator will prepare a critique to be forwarded through the chain of command to the EFIT Executive Team.

    d.  Upon successful completion of three UOF responses, the EFIT Executive Team will communicate to the IAFD Commander that the IAFD Detective/Investigator can conduct UOF Investigations (other than an OIS) without direct EFIT supervision.

    e.  EFIT will continue to track the case through the Weekly Case Status meetings and if no concerns are raised, the case will be reviewed by the EFIT Executive Team prior to the UOF Investigation closed by IAFD.

51. On January 3, 2023, the EFIT Executive Team, with notice to the DOJ, APD, and IMT, modified the training protocols as follows once an IAFD Detective/Investigator is identified by EFIT as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will review the recommendation. Only the EFIT Administrator or in his absence the Deputy Administrator will make a final determination that the IAFD Detective/Investigator may conduct interviews without direct supervision, and the following process must be followed:

---

[25] EFIT will continue to respond to an OIS until further notice.

a. The EFIT Administrator and/or Deputy Administrator will notify the APD Superintendent, Deputy Chief, IAFD Division Commander, the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

b. The EFIT Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

c. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

d. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in a phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief, IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

e. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss the Detective/Investigator's performance prior to advancing from each phase.

## Phase 1 - 10 Interviews

a. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent), no later than  24 hours prior to the interview, with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.

    b.  The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours prior to the interview to discuss the impending interview.

    c.  After the interview, and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

    d.  Within 24-hours [after the recorded interview is uploaded into Evidence.com] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.

    e.  This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.

    f.  Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

**Phase 2 – 10 Interviews (Changed to 5 Interviews, and limited EFIT Responses)**

    a.  The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.

    b.  After the interview, and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

c.   Within 24-hours [after the recorded interview is uploaded to Evidence.com,] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.

d.   This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.

e.   Should the EFIT Executive Team deem that a second interview is necessary, an EFIT investigator shall be involved in the interview.

**Phase 3 (2 Interviews)**

a.   IAFD on-call Supervisor will be contacted by the EFIT on-call Supervisor of the need to respond to a Level 2 or Level 3 UOF. Except for an OIS[26], the IAFD Detective/Investigator will respond without the direct oversight of EFIT and shall comply with all provisions of the Process Narrative.

b.   The EFIT on-call Supervisor will assign the case to an EFIT Investigator who will review Blue Team and the OBRD of the IAFD Detective/Investigator within 24 hours of the Blue Team entry. The EFIT Investigator will prepare a critique of the on-scene response, to be forwarded through the chain of command to the EFIT Executive Team.

c.   The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.

d.   The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.

---

[26] EFIT will continue to respond to an OIS until further notice.

e.  After the interview, and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

f.  EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

g.  Should the EFIT Executive Team deem that a second interview is necessary, an EFIT investigator shall be involved in the interview.

**Phase 4 - (On Scene 3 Responses)**

a.  The EFIT Executive Team will confirm that the cases the Detective/Investigator are assigned to are 95% compliant with the Process Narrative for the last two consecutive quarters. This, along with the results of the prior phases, will be a determining factor that the Detective/Investigator is ready to enter Phase 4.

b.  The IAFD on-call Supervisor will be contacted by the EFIT on-call Supervisor of the need to respond to a Level 2 or Level 3 UOF. Except for an OIS[27], the IAFD Detective/Investigator will respond without the direct EFIT oversight and comply with all provisions of the Process Narrative.

c.  The EFIT on-call Supervisor will assign the case to an EFIT Investigator who will review Blue Team and the OBRD of the IAFD Detective/Investigator within 24 hours of the Blue Team entry. The EFIT Investigator will prepare a critique of the case to be forwarded through the chain of command to the EFIT Executive Team.

---

[27] EFIT will continue to respond to an OIS until further notice.

    d.  Upon successful completion of three UOF responses, the EFIT Executive Team will communicate to the IAFD Commander that the IAFD Detective/Investigator can conduct UOF Investigations (other than an OIS) without direct EFIT supervision.

    e.  EFIT will continue to track the case through the Weekly Case Status meetings and if no concerns are raised, the case will be reviewed by the EFIT Executive Team prior to the UOF Investigation closed by IAFD.

52. Further, on January 3,2023, the EFIT Executive Team modified its relevant protocols as follows:

53. Effective January 3, 2023, the following process changes will take effect in a further effort to transition Use Of Force ("UOF") investigations back to IAFD. The EFIT Executive Team determined that while much work and further accomplishments are needed within IAFD, EFIT's mentorship in all phases of the investigative process, coupled with the reduction of total UOF incidents requiring on scene responses, and the successes outlined in EFIT's quarterly reports filed with the Federal District Court, District of New Mexico, a change in the protocols is appropriate.

54. Transition Phase 1 and Phase 4 will remain the same with all the requirements as previously identified in the EFIT Transition Policy dated January 20, 2022, (Doc. 900, Exhibit D).

55. As for Transition Phase 2, the number of required interviews will be reduced from 10 to 5. Furthermore, the requirements regarding these interviews such as, EFIT notification, review of questions and mentorship as outlined in the EFIT Transition Policy January 20, 2022, (Doc. 900, Exhibit D) will remain the same.

56. Finally, as to Transition Phase 3, the required interviews and reviews as outlined in the EFIT Transition Policy dated January 20, 2022, (Doc. 900, Exhibit D) will remain the same.

Specifically, EFIT will not respond to the scene with the exceptions of an OIS.

57.  Due to these changes, the EFIT Executive Team reduced the number of EFIT Investigators per team[28] for callout and interviews and transitioned their investigators to EFIT 2 (backlog).

58.  If this process is successful, and additional graduates of the transition process continue to excel, the EFIT Executive Team will make a recommendation with timetables for full transition of UOF Investigations back to IAFD during the second quarter of 2023.

59.  As of this report, the EFIT Executive Team identified 9 Detective(s)/Investigator(s) from IAFD that advanced into the Transition Process. 2 IAFD Detective(s)/Investigator(s) are currently in Phase 1, 0 IAFD Detective(s)/Investigator(s) are currently in Phase 2, 4 IAFD Detective(s)/Investigator(s) are currently in Phase 3, and 3 IAFD Detective(s)/Investigator(s) are currently in Phase 4.

60.  EFIT is pleased to report that as of the filing of this report 1 IAFD Detective and 2 Investigators graduated Phase 4, which will allow them to conduct investigations *without EFIT direct supervision and oversight*.

61.  EFIT issued a Memorandum of Understanding ("MOU") circulated to APD, DOJ and the IMT regarding EFIT's responsibilities once a detective/investigator graduates the transition plan. (Exhibit G).

62.  EFIT's overall evaluation of these interviews and UOF investigations for

---

[28] In the event of a major UOF deployment or if EFIT Investigators are conducting interviews, supervisor Losey or a member of the EFIT Executive Team will respond to assist at the scene, only. Additionally, a special team will be developed once APD schedules the two-week IAFD Internal Affairs Training to respond to any UOF scene response.

detectives/investigators in the transition phases remain very positive to date. The members of IAFD admitted into this process are complying with the Transition Policy and EFIT Investigators report a positive interaction.

63. Messrs. Neier, Hurlock and Bone are working closely with DOJ and APD to ascertain a total number of Detectives/Investigators that must be qualified to conduct investigations independently to provide sufficient staffing. EFIT is in the process of developing a train-the-trainer program to facilitate the process and future sustainability once EFIT is no longer involved with IAFD.

64. The EFIT Executive Team continues to meet with all Division Field Commanders and many of the specialized unit Commanders, to explain the EFIT process, its qualifications and what their Officers could expect upon EFIT responding to UOF incidents. Additionally, it was important for Commanders to freely communicate concerns they are experiencing with the UOF investigative process. The EFIT Executive Team continues field visits and various Division briefings concerning EFIT, specifically any changes or modifications to the Process Narrative and relevant protocols.

65. As of the writing of this report, the EFIT Executive Team is pleased to share that it suggested several changes to the IAFD investigatory process to build upon the level of professionalism within the IAFD team.

66. While certain of IAFD's accomplishments were reported in the first five EFIT Quarterly Reports filed with the Court, (Docs. 873, 900, 912, 942 and 960), EFIT Executive Team believes it is important to reflect on the on-going process. The EFIT Executive Team addressed a number of significant issues facing APD.

67. Indeed, the current Process Narrative and associated protocols were revised on more than one

occasion as the result of issues and violations of the original version. Any proposed changes are circulated to City Legal, DOJ and the IM. Comments are received and when appropriate incorporated into the Narrative and/or discussed with the relevant entities. As previously mentioned, it is anticipated that the Process Narrative will again be revised to conform with the new UOF Policy and CASA amendments pending with the Court.

68. Additionally, EFIT Executive Team recommended certain procedural changes and Special Orders ("SOs") be issued regarding SOD Tactical Activations where the APD SOD Tactical Commander requests assistance from an outside law enforcement agency and the assisting agency utilizes force. A meeting was held with the APD, DOJ, and the IMT, and a Special Order was approved.

69. The EFIT Administrator,  and Deputy Administrator participate in compliance meetings with APD, DOJ and the IMT and also work with APD regarding the SOPs revisions and the proposed draft SOs as they relate to IAFD and/or UOF policies.

70. EFIT Executive Team constantly monitors the UOF investigation case assignments to ensure that work is distributed evenly within IAFD. This issue is crucial to ensuring that the applicable timelines are met. This issue becomes particularly acute as assignments are made between sworn and civilian Investigators.

71. The EFIT Executive Team made a number of recommendations that facilitated this process that were accepted by IAFD regarding callouts and case distribution. When EFIT observes that this process was not followed, any concerns are immediately communicated to IAFD Command.

72. Indeed, the EFIT Executive Team continues to work closely with APD on many issues including, but not limited to, call outs. It is only through this collaborative approach that EFIT

can fulfill its Court ordered mandate and eventually return the IAFD investigatory function back to the Department.

73. In addition, the EFIT Executive Team continues to meet weekly with APD, DOJ, the IM and other City officials. These meetings enhance the level of communication between these parties. EFIT Executive Team firmly believes that communication is essential to fulfilling its Court ordered mandate.

74. Messrs. Neier and Hurlock participate in the IM's weekly compliance meetings.

75. Mr. Neier and Mr. Hurlock attend meetings of the Civilian Police Oversight Agency ("CPOA") in an effort to make representatives of EFIT's Executive Team available to the Agency upon request.

76. Mr. Neier and Mr. Hurlock participated in an Amici/Stakeholder meeting on February 15, 2023, with the Albuquerque Community Policing Council ("ACPC"). Messrs. Neier and Hurlock provided the ACPC with an update on EFIT and EFIT 2's efforts and fielded questions from the group.

77. Mr. Neier and Mr. Hurlock look forward to presenting to additional groups as requested so that the public can receive real time updates as to both of the EFIT entities' progress and challenges.

78. Again, the EFIT Executive Team believes that transparency with all concerned groups is essential for EFIT to fulfill its Court ordered mandate.

79. In the first Quarterly Report the EFIT Executive Team reported that Officers remained on scene for extended periods of time. While EFIT appreciates Officer safety, once a scene is secured, EFIT recommended, and APD instituted, a practice where nonessential Officers –

including those Officers that did not use or witness the force event are now cleared and sent back on patrol.  This issue was addressed with Field Commanders.

80. Once on the scene EFIT/IAFD (for this quarter, on average 24.19 minutes from notification) they are briefed by a field supervisor, if EFIT/IAFD observe Officers not involved in the UOF or is a witness to the UOF the supervisor is instructed to clear Officer(s) return to service. EFIT/IAFD are fully clearing these UOF scenes, for this quarter, on an average of 15.01 minutes. EFIT is pleased to report that this positive trend continues during this reporting period.

81. Since July 16, 2021, and as of February 16, 2023, EFIT/IAFD responded to, and are investigating and/or monitoring a total of 745[29] UOF incidents. These investigations are completed on an average of 54.29 days. In addition, 606 UOF investigations were closed,[30] averaging a total of 86.99[31] days for closure. Supervisor reviews remain at an average of 19.35 days. Of the UOF cases closed (606), 43 UOF cases were out of APD Policy (7.09%)[32] and 149 of the 606 investigations (24.58%) failed to comply with the Process Narrative.

---

[29] Two UOF investigations were transferred to IAPS for both UOF and misconduct investigations and other than responding to the scene they are not included in EFIT's statistics.
[30] This includes a comprehensive EFIT Executive Team review period.
[31] Two of the closed cases involved an Officer who was subsequently severely injured during an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days respectfully and are not included in the statistical findings related to length of investigation or days to close the investigation. Additionally, during this reporting period an extremely complex UOF investigation was conducted that necessitated extending the mandated timelines. The parties were notified and agreed to the extension. DOJ memorialized this in a memorandum (Exhibit E) and the UOF Investigation was completed in 120 days. This case is not included in the statistical findings related to length of investigation or days to close the investigation.
[32] It should be noted that one of the cases transferred to IAPS was out of APD policy and is not included in the statistics of EFIT assumed cases.

82. The Process Narrative (Doc. 862-1) that is attached to this report (Exhibit C) is a detailed 69 paragraph document that guides a UOF investigation. It should be clear that only 8 of the paragraphs (12, 15 through 17, 29, 33, 34 and 38) will take an investigation out of compliance. This is not to suggest that an insufficient investigation was conducted or the UOF findings were wrong, it is a way of evaluating the IAFD Detective(s)/Investigator(s) concerning critical aspects of a thorough investigation as EFIT moves through transitioning IAFD back to APD. EFIT works closely with APD to ensure that this document is updated and adhered to in all aspects.

83. As shown by the chart below, IAFD made significant improvement in key areas since the arrival of EFIT related to the mandated timelines, and compliance with the Process Narrative. APD, has seen a reduction of Out of Policy UOF. When EFIT first commenced operations in July 2021, the out of policy UOF was 9.90 % as of February 16, 2023, it was reduced to 7.09%.

| Period by Quarter | Inv. Days | Supr. Review Days | Total Days for EFIT to Close UOF[33] | Total Days for UOF Inv. To be Closed | Cases Closed | % Out of Compliance | % Out of APD UO Policy |
|---|---|---|---|---|---|---|---|
| July 16, 2021 - Sept 30, 2021 | 53.83 | | | | | | |
| Oct 1. 2021 - Dec 31, 2021 | 55.35 | 24.94 | | 88.37 | 111 | 27.02 | 9.90 |
| Jan. 1, 2022 - March 31, 2022 | 53.63 | 18.71 | 8 | 87.88 | 103 | 60.19 | 7.76 |
| April 1, 2022 – June 30, 2022 | 53.03 | 16.02 | 6 | 85.39 | 103 | 22.33 | 5.82 |
| July 1, 2022 – September 30, 2022 | 51.64 | 17.97 | 5 | 86.91 | 110 | 15.38 | 5.00 |
| October 1, 2022 – December 31, 2022 | 56.51 | 15.24 | 6 | 80.31/86.31 | 137 | 9.48 | 6.56 |
| January 1, 2023 – Present | 54.84 | 18.18 | 5.77 | 82.07/87.84 | 62 | 1.61 | 4.83 |

84. During this quarterly reporting period, APD experienced: 2 OIS incidents, 0 accidental

---

[33] EFIT conducts a comprehensive review prior to closure to ensure that a case was sufficiently investigated and reviewed.

discharges, 4 tactical activations, 7 use of K9, 9 use of an ECW, and 6 involving an impact weapon. EFIT previously identified numerous issues regarding these cases.

85. Specifically, during this most recent quarter, EFIT observed and/or discovered that IAFD made a noticeable improvement with IAFD's handling OIS and other complex investigations.

86. Mr. Neier continues to work with APD representatives in developing an Internal Affairs Training program for IAFD pursuant to the express requirements of the Amended Stipulated Order[34] Par. 32 (Doc. 906). The EFIT Executive Team will continue to provide additional assistance as requested. When the training is provided to IAFD, EFIT will be responsible for providing coverage for on-scene IAFD investigations to allow all Detectives/Investigators to complete this mandated training pursuant to the Amended Stipulated Order.

87. With the new UOF policy issued on January 25, 2023, APD will start training the full department during the next reporting period and EFIT will be included in the training both at an executive level and then the EFIT Investigators will train alongside of IAFD Investigators/Detectives. This will ensure continuity in UOF investigations.

88. EFIT and IAFD continue to conduct  bi-weekly case status meetings and track cases at all intervals. These meetings identify concerns regarding investigative obstacles, case prioritization and allocation of resources. The concerns are addressed with Detectives/Investigators and Supervisors immediately and if necessary, with IAFD Command at the conclusion of the meeting.

89. EFIT Investigators and Supervisors continue to oversee all cases to include review of onsite work, interviews and reporting. EFIT is constantly evaluating IAFD Detectives, Investigators,

---

[34] As of March 21, 2022, Amended Stipulated Order.

Supervisors and the IAFD Division as a whole. To that end, the EFIT Executive Team conducts weekly meetings with APD Command Staff, Field Commands and many of the Specialized Units.

90. The EFIT Executive Team continues to utilize the evaluation rubric (previously approved by the IM and DOJ). This is a valuable tool to evaluate IAFD and relevant personnel pursuant to the Amended Stipulated Order, (Doc. 906 at Para. 33). The EFIT Executive Team implemented this process for *each* investigation conducted by IAFD and EFIT commencing on or after September 7, 2021.

91. The rubric was updated as of December 1, 2021. While it continues to contain approximately forty-five areas where IAFD personnel are evaluated, and closely tracks the Process Narrative, there are now eight enumerated categories where an individual must pass or be considered failing. A Detective/Investigator must still attain a 95% proficiency rating, for two consecutive terms, before they are deemed proficient to conduct interviews outside of the presence of an EFIT Investigator.

92. The EFIT Executive Team is pleased to report that the IAFD supervisory meetings for the entire IAFD department, under Commander Norris' leadership have enhanced communications and captured attendant efficiencies. Additionally, a pilot project was approved by the IMT and DOJ that the EFIT Executive Team and IAFD Command established together, to enhance supervision. The pilot project was a success and was made a permanent process within IAFD on October 17, 2023.

93. IAFD detectives/investigators are required to develop and follow an investigative plan pursuant to the Process Narrative, to ensure they meet specific deadlines, assist in organization, and ensure the investigation adheres to the process narrative.  This is used as a self-

management control for the Detectives/Investigators, and management control for the Supervisors. This responsibility fell on the Investigator/Detective, with Sergeant and EFIT oversight. During the pilot project, the investigative plan is now the responsibility of the Supervisor with input from EFIT at the required 72-hour meeting.

94. Under this change, the first line Supervisors provide the completed investigative plan, setting timelines, goals and objectives for the Detective/Investigator and ensure they are now followed.

95. This change allowed the Supervisor to become intimately involved with the investigation and execute necessary corrections in real-time instead of at the conclusion - or later in the investigation. Additionally, this compresses the time for the supervisory review, minimizes after-the-fact corrections and requests for extensions and promotes closer supervision and oversight.

96. Additionally, since Commander Norris assumed command of IAFD, the use of roundtable discussions on all complex investigations (including EFIT and Internal Affairs Professional Standards ("IAPS") personnel and enhanced approved training opportunities, not offered in the past by the APD Training Academy, enhanced the skill set for Detectives/Investigators assigned to IAFD and IAPS. These include, but are not limited to, legal block, reality -based training ("RBT") and training by specialized divisions. EFIT supports this training and will also participate.

97. Communication at all levels within IAFD and the APD Police Reform Bureau dramatically improved over the last quarter, this includes, but is not limited to: bi-weekly meetings with Superintendent Valdez, Executive Director Garcia, Deputy Director Cottrell, Deputy Director Collins, Commander Norris and EFIT Executives; weekly status meetings between IAFD

Command Staff and EFIT Executives; roundtables and weekly briefings on high profile and/or sensitive investigations; coordination between IAFD IAPS; and joint APD training opportunities for IAFD and EFIT investigators.

**Concerns To Date**

98. While  improvements occurred in the overall process, the EFIT Executive Team remains concerned with the IAFD supervisors and the sustainability of IAFD's recruitment and retention of personnel.

**Sustainability**

99. While there have been numerous notable and important changes during this reporting period, sustainability of trained IAFD Detectives/Investigators continues to be one of the EFIT Executive Team's main concerns related to the eventual transfer of responsibility from EFIT to APD for conducting thorough and complete investigations of Level 2 and Level 3 UOFs. Specifically, this is a concern as individual IAFD Detectives/Investigators and Supervisors meet the qualifications identified in Paragraph 33 of the Amended Stipulated Order. (Doc. 906).

100.   As stated previously, the collective bargaining agreement between the City and the APOA contract enables sworn personnel to "bid" based in part with seniority into APD's Field Services Bureau on an annual basis. Officers interested in transferring into other divisions complete an application process.  In the past, EFIT witnessed the lack of sworn personnel interested in transferring into IAFD requiring APD to assign those applicants from the bottom of the bid list[35]. Currently, IAFD has three vacancies for sworn officers for IAFD and efforts

---

[35] Certain Officers have less than one year of active duty with APD, once transferred to IAFD they are afforded "Detective" status.

are underway to recruit for these positions.

101.    This is especially so when promotions, requests for transfer of senior sworn personnel occur and a bid is announced. The loss of these trained personnel is serious. Specifically, and most importantly, two fully graduated Investigators/Detectives left IAFD after completing the EFIT training program. EFIT cannot stress enough that this serious issue must be addressed by APD, the City and APOA.

102.    Mr. Neier and Mr. Hurlock continue to work with counsel and representatives of the APOA to address these concerns, including, but not limited to, allowing sworn personnel to remain in IAFD if they so choose.

103.    As EFIT expressed concern, APD committed to over-staffing the civilian investigators in IAFD. However, based on best practices and Mr. Neier's experience,  a well-functioning IAFD needs both sworn and civilian personnel.

104.    As stated previously, IAFD fell below the Court mandated number of IAFD Investigators/Detectives for a two-week period of time during this quarter. This was due to an IAFD Acting Sergeant being promoted, after his Temporary Duty ("TDY") back to IAFD expired, he was transferred to a Field Division requiring a Detective to be elevated to Acting Sergeant. This Sergeant who wanted to remain in IAFD had to test for the open position and ultimately was transferred back to IAFD. The Acting Sergeant went back to his Detective position bringing the staffing to the Court mandated number of IAFD Investigators/Detectives.

105.    Efforts have been made related the sustainability of civilian Investigators. Due to the efforts of the APD Police Reform Bureau (specifically Deputy Director Cottrell who took the lead), civilian Investigators will become classified employees. By becoming classified employees, it will afford them stability, salary increases and additional parity with sworn employees of

IAFD.

106.     As of February 16, 2023, IAFD is currently staffed as follows:

8 Sworn fully trained;

1  Sworn on leave (counted in the 8 above);

3 Sworn Vacancies;

15 Civilian Investigators fully trained;

2 Civilian Investigator in training;

4 Sergeants;

1 Acting Sergeants;

1 Lieutenants;

3 Deputy Commanders;

1 Acting Deputy Commanders; and

4 Support personnel.

107.     IAFD is currently in the process of interviewing candidates, and it is anticipated additional

Investigators will be hired during the next reporting period.

108.     EFIT, IAFD Command and APD Command staff continue to discuss various ways that

will not impact the APOA CBA to incentivize IAFD members. Additionally, the DOJ and

EFIT executives continue to conduct meetings with APOA to discuss various issues, including

but not limited to, the sustainability of IAFD.

109.     Due to the efforts of APD, the IAFD stabilized the division; eight Investigators/Detectives

were in the Department for over a year and three Detectives were in the Department for over

two years. Additionally, one Detective, promoted to Sergeant remains within IAFD and two Detectives are in the testing process for Sergeant and will remain within the Division once promoted.

**Supervision**

110.     The EFIT Executive Team previously expressed concerns with the manner in which the IAFD first line Supervisors were handling daily supervision of the Detectives/Investigators in the Division. EFIT notices improvements, but still believes that this is clearly a first line supervisory issue that, if left uncorrected, will continue to render investigations out of compliance with the Process Narrative (Doc. 862).

111.     The EFIT Executive Team is pleased to see that Commander Norris and the APD senior executives took numerous steps to address these issues. In addition, EFIT worked to revise the process by which certain UOF investigations were reviewed.

112.     As stated previously, the 90-day pilot with two IAFD supervisors was a success compelling the first line Supervisor to direct the investigation while the Detective/Investigator conducts the investigation. EFIT always believed that it is important that Supervisors become more intimately involved with the investigation enabling them to execute course corrections in real-time, as opposed to corrections made at the conclusion of the UOF investigation.

113.     Additionally, EFIT observed that it significantly shortened the supervisory review time and most importantly promoted closer supervision - allowing the Supervisor to set UOF completion dates shorter than the mandated 60 days if warranted.

114.     Many meetings have been conducted with all of the first-line Supervisors, Lieutenants, Deputy Commanders, Commander, and EFIT regarding the new IAFD Investigative Plan. It was determined that the Investigative Plan would remain an active document, in that after the Supervisor makes updates or completes a weekly meeting, the form will be continually uploaded into IAPro. This will allow access to all parties within the chain of command, including EFIT, to monitor the progress of any case in real time.

115.    While this process will not completely address all of EFIT's supervisory concerns, the EFIT Executive Team will continue to monitor this issue and will continue to address it in future Quarterly Reports.

116.    As discussed, supervision at all levels was severely lacking when EFIT began its work in July 2021. Indeed, supervisors, at all levels, must take responsibility for compliance. IAFD is making strides with the daily mentoring of EFIT at the Detective/Investigator levels. IAFD Command is now focusing on all levels of supervision to ensure that the IAFD reaches a 95% compliance level as required by the Amended Stipulated Order. At this point, it appears that IAFD is now further on the correct path to achieving compliance. (Doc. 906, Para. 34 (e)).

117.    While the scheduling and completion of UOF investigations within timelines dramatically improved, failure to notify the EFIT Investigator, and/or complete the investigations within timelines, still occurs. Specifically, *twice* this reporting period, IAFD missed the 60-day time mark for UOF investigations. This continues to be a serious issue. On several occasions the EFIT Executive Team raised this serious turn of events with APD and will continue to monitor same going forward.

118.    The EFIT Executive Team continues to work closely with Commander Norris and recommend  a number of directives that were issued by him, related to timeframes, dress code, professionalism and documentation to promote uniformity and consistent supervision that will reduce finding the entire investigation out of compliance pursuant to the Process Narrative.

119.    It should be noted that the EFIT Executive Team is not advocating speed at the expense of a thorough and complete investigation. However, EFIT believes that it is possible to conduct a thorough and complete investigation in a timely manner.  When EFIT provides direct guidance during a UOF investigation, the total completion time is averaging 81.02 days with

EFIT Executives review time of an additional 6.10 days on average from the date the investigation is routed. EFIT believes that with proper supervision by IAFD these investigation and review timelines will decrease.

120.    Another incentive IAFD adopted are the weekly "On Call Briefings." These briefings are conducted by Deputy Commander Anaya every Thursday with the new on call team and Sergeant. They review forms needed in the field, situational analyses and notifications. Since these briefings began in August 2022, there has been a corresponding dramatic reduction of on scene violations to the Process Narrative.

### Albuquerque Police Officers Association ("APOA")

121.    Mr. Neier and Mr. Hurlock met with DOJ and counsel for the APOA many times to discuss a number of mutual concerns ranging from the number of interviewers (IAPS, IAFD and EFIT) attending interviews, overall professionalism, and most importantly, sustainability.

122.    Mr. Mowrer, counsel for the APOA, agreed to address the afore-mentioned concerns with the APOA and report back to EFIT. Unfortunately, despite numerous attempts to engage in a productive dialogue, these follow-up meetings never occurred.

123.    On January 9, 2023, the IAFD Investigators petitioned the City of Albuquerque Labor-Management Relations Board LB23-01, seeking to be recognized as the exclusive bargaining agent of the employees.

124.    As of this report, the EFIT Executive Team remains hopeful that it can continue to work with the APOA to address all mutual concerns going forward. However, the EFIT Executive team still awaits the APOA's response to the concerns raised at these meetings and the potential MOUs issued by the APOA.

125.    The EFIT Executive Team reported on the prior actions of the APOA where the union's representatives interrupted interviews in clear contravention of the CBA. When such conduct was identified, Mr. Neier and Mr. Hurlock immediately requested a meeting, and met with counsel for the APOA to rectify the situation. During this reporting period EFIT has not experienced any issues during interviews.

**City Legal**

126.    EFIT continues to work with City contract attorney Taylor Rahn, Esq. who has experience in CASAs, UOF SOPs and misconduct matters.  EFIT looks forward to working with Ms. Rahn and City Legal to achieve our common goals. Additionally, Mr. Neier continues to conduct productive meetings with City Attorney Lauren Keefe to discuss areas of mutual concern.

**Amended Stipulated Order and Backlog Force Cases ("EFIT 2")**

**EFIT's Basis and Authority**

127.    As stated previously, on March 21, 2022, the Court signed the Amended Stipulated Order
(Doc. 906) that established and provided the authority for EFIT to investigate the APD UOF
backlog cases pursuant to Exhibit 1 (Scope of Work or "SOW") attached to the Amended
Stipulated Order (Doc. 906).

128.    EFIT 2's original backlog team consisted of two groups with each group comprising a
supervisor and three investigators. In an effort to capture certain efficiencies the EFIT
Executive Team reformed the teams and added a third team with a supervisor and investigators
that were originally assigned to EFIT 1.

129.    The Backlog Teams are now comprised of three groups. Each group has a supervisor and
three Investigators. This reorganization has allowed the Backlog Team to review cases more
expeditiously and efficiently, while not sacrificing accuracy. It is important to note that the
EFIT Executive team will never sacrifice quality and thoroughness for expediency.

130.    In April 2022, EFIT executives, with the assistance of APD, drafted the Backlog
Methodology that was circulated to APD, DOJ and the IMT for comment. Final approval was
received on April 27, 2022, and the Backlog Methodology was filed on May 16, 2022, by EFIT
as Exhibit G to the EFIT Third Quarterly Report (Doc. 912) (See Ex. G).  Additionally, on
June 17, 2022, APD issued Special Order 22-76 Implementation of the External Force
Investigative Team ("EFIT 2").

131.  Specifically, EFIT invoked that portion of the Amended Stipulated Order 22-76 as follows:

   A.  The City shall enable the EFIT Administrator to establish a Backlog Team to complete investigations of the Backlog Force Cases in accordance with the SOW attached to this Amended Order as Exhibit 1.  The Parties shall jointly file a notice with the Court when the EFIT Backlog Team is fully constituted and commences operations.

   B.  When the Backlog Team completes an investigation, the EFIT Administrator shall submit the case materials, including narratives and recommendations, to IAFD for final closure. Upon receiving a completed backlog case from EFIT, IAFD shall close the case by performing the administrative steps outlined in the revised IAFD process narrative, Doc. 862-1, ¶¶ 59–63.

   C.  The Force Review Board ("FRB") shall review completed EFIT Backlog Team investigations pursuant to the process identified in SOW, ¶ 20.  Consistent with the CASA, Doc. 465-1, ¶ 78(b), any Backlog Team investigation reviewed by the FRB shall be presented by the EFIT Administrator or Deputy Administrator.

   D.  Within 30 days after EFIT completes an investigation pursuant to the SOW, APD shall respond in writing to the recommendations, if any, made by the EFIT Administrator and/or the EFIT Executive Team in that investigation pursuant to the SOW.

   E.  Within 90 days after EFIT completes the investigation of all Backlog Force Cases, the City shall provide a written report to the EFIT Executive Team, DOJ, and the Independent Monitor, which includes, at a minimum:

      a.  the City's response to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends

44

among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;

b.   the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

c.   the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

d.   the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

e.   the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

132.   If warranted, the EFIT Executive Team will identify additional candidates to enhance the backlog team. While the audit of the backlog cases was completed by IAFD, the EFIT Executive Team is still concerned with the lack documentation and the use of subpar verbal UOF Narratives for these cases.

133.   If the EFIT Investigator cannot make a determination of the force incident, the matter will be reviewed by the team supervisor and if the supervisor concurs, the EFIT Executive Team will temporarily move the case into a category delineated as "Insufficient Documentation for Evaluation" to expeditiously complete those cases for which there is sufficient documentation to make a determination as to force.

134.   The EFIT Executive Team will monitor this category and make a recommendation as to the investigation and/or closure of these cases at a future date. EFIT developed a modified report for all Level Two investigations that EFIT determines to be in policy, with no unreported uses of force, and no potential criminal conduct.

135.   As of this report, Messrs. Neier and Hurlock presented 11 cases to the FRB. Of those

eleven, EFIT ruled five of those cases as out of policy. Out of those 5 cases, FRB concurred

that 4 of the cases were out of policy. There was one OIS case and one ECW deployment where

the FRB disagreed with EFIT's conclusion and ruled the case in policy.

136.    In addition, during this reporting period, on December 15, 2022, EFIT made one criminal

referral to MATF concerning a Backlog case. As reported prior in this report, on January 26,

2023, a declination letter was issued by the District Attorney that the statute of limitations for

Aggravated Battery passed.

137.   While improvements were made, EFIT is still severely hampered from conducting its

investigations, as many of the files are incomplete. This issue continues to seriously impact

EFIT's ability to review the cases in a timely and complete manner.

138.   The EFIT Executive Team held several meetings with APD senior officers to address this

issue.

139.   The documentation for each UOF case should include the following:

    a.   CAD;

    b.   IAFD Reports;

    c.   Admonishments;

    d.   Witness Statements (if applicable);

    e.   UOF Narratives;

    f.   Field and/or Supplemental reports;

    g.   CSS Photographs; and

    h.   OBRD(s).

140.    APD assigned personnel to locate all missing items and upload them into IAPro. EFIT

receives a weekly report on the status of each case. Once complete, EFIT will assign an

investigator to review. If documents cannot be located, the EFIT Executive team will make a

determination as to how best proceed.

141.    Specifically, EFIT invoked that portion of the Special Order as 22-76 follows:

A.  The Department has authorized EFIT 2 personnel to conduct administrative

investigations and to perform all investigatory functions set forth in Department

Standard Operating Procedures ("SOPs").

B.  All Department personnel shall fully cooperate with EFIT 2 personnel that

conduct investigations. Department personnel who fail to do so may be subject

to discipline pursuant to Department SOPs, including but not limited to SOP 1-

1 Personnel Code of Conduct, subsection 1-1-6 A.3.a and SOP 3-41

Complaints Involving Department Personnel.

142.    The EFIT Backlog Force Case Investigation Teams are comprised of seasoned and

experienced attorneys and former law enforcement personnel.[36]

143.    APD issued a Special Order (SO 22-76) outlining the cooperation expected from all Sworn

APD Officers as the EFIT Backlog Team went "live" on June 20, 2022.

144.    As previously noted, the Amended Stipulated Order restates many of the Original Stipulated

Order's requirements and supplements them in two ways.  First, the Amended Stipulated Order

requires the City to modify its existing contract to allow EFIT to investigate the Backlog Force

Cases, namely, all use-of-force incidents occurring between January 1, 2020, through July 16,

---

[36] Three teams of one supervisor and two Investigators along with the existing EFIT Executive
and analytical Support Teams.

2021, that APD did not investigate, in full or in part, in violation of the CASA, (Doc. 465-1). Exhibit 1: Scope of Work to Remedy the Backlog Force Cases ("SOW") to the Amended Stipulated Order (Doc. 906, Ex. 1 at 1-2, Para. 6) provides:

> *"The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases. The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it. The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor."*

145. The EFIT Executive Team conducted a number of meetings with APD's Accountability Bureau, including the Compliance and Oversight Division, and the newly created Data Analytics Division calculated normative thresholds for UOF incidents to identify the Officer(s) who utilize UOF over the expected incident rate and are thus, considered High Incident Officers.

146. With assistance from APD's Accountability Bureau, the EFIT Executive Team obtained the data of all the Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906). Additionally, the EFIT Executive Team worked with members of the Accountability Bureau to develop a dashboard that is similar to the current IAFD case tracking and management

dashboard, stratifying the data distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboard was successfully tested by the Data Analytics Division and EFIT.

147.   Backlog investigations review whether the Officers' actions were reasonable, necessary, proportional, minimal and within APD guidelines and SOPs and if the UOF was outside of APD's policies.

148.   As of this report, EFIT assigned 123 UOF investigations to the backlog team for investigation. Prior to closure, each case is reviewed by the EFIT Executive Team and forwarded to APD and DOJ.

149.   Pursuant to the SOW, EFIT, when appropriate and/or warranted, will make observations and recommendations in its report. The final reports and recommendations are sent to Deputy Chief Lowe who responds to EFIT, in writing, within 30 days.

150.   While not a requirement in the SOW, EFIT Executives discussed with Deputy Chief Lowe the need to issue a letter to the involved Officer(s) similar to the letter recommended by EFIT that is utilized by IAFD when a case is closed. This letter will include whether the closed case was within or outside APD policy, EFIT's observations and recommendations and any administrative investigations that would have occurred if the investigation was completed in a timely manner. This letter will serve not only as notification to the Officer(s), but as best practices to facilitate Constitutional policing.

151.   The backlog teams completed their investigation of OIS and are now near completion of High Incident Officers and review whether the officers' actions were reasonable, necessary, proportional and minimal and within APD's SOPs.

152.   EFIT's findings, as of as of February 16, 2023, are that 98 of the 107 (91.58%) backlog

cases investigated by EFIT are within APD guidelines and SOPs. Additionally, 67.28% were

Level 2 UOF, 18.69 % were Level 3 UOF, 6.54% were Level 3-OIS, 6.54% were Level 1

UOF.

153.   The following table captures the level of force applied:

| Level of Force Applied | Number of Cases |
|---|---|
| Low Level Control | 1 |
| Level 1 | 7 |
| Level 2 | 72 |
| Level 3 – OIS | 7 |
| Level 3 | 20 |
| Total | 107 |

154.    The following table captures the highest level of force applied and the number of out of policy finding:

| Type of Force Applied | Number of Cases | Cases Out of Policy |
|---|---|---|
| OIS | 7 | 2 |
| Intermediate Weapon System | 19 | 5 |
| Empty Hand Takedown | 56 | 1 |
| Empty Hand Control | 15 | 1 |
| Handcuffing w/ Injury | 1 | 0 |
| SOD | 5 | 0 |
| K-9 | 3 | 0 |
| Low Level Control | 1 | 0 |
| Total | 107 | 9 |

155.    If an APD Officer is identified as a High Incident Officer, upon completion of all the cases involving the Officer, the EFIT Executive team will conduct a review and issue a memorandum detailing any patterns or practices identified.

156. Eleven cases were presented to FRB this quarter by Messrs. Neier and Hurlock:

| 21-00334XX | Level 2 | 40 mm |
| 21-00291XX | Level 3 | Firearm - OIS |
| 20-00586XX | Level 2 | Beanbag shotgun |
| 20-00493XX | Level 2 | ECW |
| 20-00567XX | Level 2 | ECW |
| 20-00637XX | Level 3 | Firearm - OIS |
| 20-00824XX | Level 3 | Firearm - OIS |
| 20-00837XX | Level 3 TA | Firearm - OIS |
| 20-00637XX | Level 3 | Firearm - OIS |
| 21-00521XX | Level 3 | Firearm - OIS |
| 20-00567XX | Level 3 | ECW |

157. In two of the eleven cases 21-00291XX and 20-00567XX the FRB disagree with the EFIT findings that the case was Out of Policy voting they were within APD Policy.

158. The City responds to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;

    A. the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

    B. the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

    C. the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

D.  the EFIT recommendations made pursuant to the SOW that APD rejected or
will reject, and the rationales for APD's decisions to reject each
recommendation.

(Amended Stipulated Order Paras. C7 through C11).

159.   The following table captures the status of the backlog cases assigned to EFIT:

| EFIT BACKLOG INVESTIGATIONS AS OF – February 24, 2023 | |
|---|---|
| **Total Backlog** | **667** |
| Assigned to EFIT Investigators | 133 |
| 12 UOF Investigations Previously Completed by IAFD Assigned to EFIT | 12 |
| **Total Assigned Cases** | **145** |
| 12 UOF Investigations Previously Completed by IAFD Closed by EFIT | 12 |
| EFIT Investigators - UOF Investigations Closed | 90 |
| Total Completed | 102 |
| **Investigations Pending** | **565** |

**Upcoming Dates**

160.    EFIT looks forward to presenting this Sixth Quarterly Report to the Court and all parties.

161.    On or about May 25, 2023, EFIT will file its seventh Quarterly Report with the Court and

EFIT 2 will file its Quarterly Report and all parties.

162.    Once again, we thank the Court for the opportunity to submit this report. I, and my team,

are available should the Court have any questions or need any additional information

concerning EFIT, EFIT 2 or their attendant mandates.


Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

Encls.

# EXHIBIT

# A

**DLG** ACCOUNTING ADVISORY SERVICES

7073 Edison Place, Palm Beach Gardens, FL 33418
Info@dlgcpa.com  |  201-841-1776  |  www.dlgcpa.com

TO:           United States Department of Justice
              Independent Monitor – Dr. James Ginger
              Acting Superintendent Eric Garcia - Albuquerque Police Department
              Deputy Chief Cori Lowe - Albuquerque Police Department
              Acting Deputy Chief Zak Cottrell- Albuquerque Police Department
              Acting Commander Richard Evans - Albuquerque Police Department
              Acting Deputy Commander Adam Anaya - Albuquerque Police Department

FROM:        EFIT Administrator Darryl S. Neier *DSN*
RE:          Interview Transition Back To IAFD
DATE:        January 20, 2022

While this is a subjective determination, once an IAFD Detective/Investigator is identified by EFIT as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will review the recommendation. Only the EFIT Administrator or in his absence the Deputy Administrator will make a final determination that the IAFD Detective/Investigator may conduct interviews without direct supervision, and the following process must be followed:

1. The EFIT Administrator and/or Deputy Administrator will notify the APD Superintendent, Deputy Chief, IAFD Division Commander, the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.
2. The EFIT Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.
3. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.
4. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in a phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief, IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.
5. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase.

Phase 1

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) no later than 24 hours prior to the interview with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.
2. The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours before the interview to discuss the impending interview.
3. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

2

**DLG** ACCOUNTING ADVISORY SERVICES

7073 Edison Place, Palm Beach Gardens, FL 33418
Info@dlgcpa.com | 201-841-1776 | www.dlgcpa.com

4. Within 24-hours [after the recorded interview is uploaded to Evidence.com] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.
5. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.
6. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

Phase 2

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.
2. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.
3. Within 24-hours [after the recorded interview is uploaded to Evidence.com,] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.
4. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.
5. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.


Phase 3

1. The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.
2. The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.
3. After the interview and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.
4. EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

3

# EXHIBIT

# B

4

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

    vs.                                          No. CIV. 14-1025 JB\SMV

THE CITY OF ALBUQUERQUE,

        Defendant,

    vs.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## AMENDED STIPULATED ORDER ESTABLISHING
## AN EXTERNAL FORCE INVESTIGATION TEAM

This matter comes before the Court on the Joint Motion of Plaintiff United States of America and Defendant City of Albuquerque (collectively, the Parties), with the concurrence of the Independent Monitor, for entry of this Amended Stipulated Order, which modifies and supersedes the Stipulated Order Establishing an External Force Investigation Team that this Court entered on February 26, 2021 (Original Order). Doc. 720. The Original Order required the City to establish, on a temporary basis, an External Force Investigation Team (EFIT) to assist the Albuquerque Police Department (APD) in conducting investigations of Level 2 and Level 3 uses of force by APD officers and improve the quality of force investigations conducted by APD's Internal Affairs Force Division (IAFD). The Original Order also required the City to improve APD's internal affairs processes, maintain an increased number of IAFD investigators, and provide additional training to IAFD investigators.

5

This Amended Order restates many of the Original Order's requirements and supplements them in two ways. First, this Amended Order requires the City to modify its existing contract with DLG, Accounting and Advisory Services (DLG) to enable EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part (Backlog Force Cases), in violation of the Court Approved Settlement Agreement (CASA), Doc. 465-1. Second, this Amended Order extends by 24 months, from May 2022 through May 2024, the period during which the City shall continue to enable EFIT to assist IAFD in investigating new Level 2 and Level 3 use-of-force incidents (New Force Cases).

The Parties intend the measures in this Amended Order to ensure high-quality, timely investigations of New Force Cases, to minimize and correct deficiencies in IAFD investigations as identified in the Independent Monitor's Twelfth and Thirteenth Reports, Docs. 652 and 782, and to address APD's failure to investigate the Backlog Force Cases as identified in the Independent Monitor's Fourteenth Report, Doc. 872. The Court approves this Amended Stipulated Order and enters it as an Order of the Court.

## A. Definitions

1. For the purposes of this Amended Order,

    a. "IAFD" means APD's Internal Affairs Force Division;

    b. "IAFD personnel" includes IAFD investigators and supervisors, other than IAFD Commanding Officers;

    c. "investigations of New Force Cases" include both investigations and the review of investigations by supervisors of Level 2 and Level 3 use-of-force incidents that occur after July 16, 2021;

2

d. "investigations of the Backlog Force Cases" means investigations of all use-of-force incidents that occurred between January 1, 2020, through July 16, 2021, and that IAFD failed to investigate, in whole or in part, as required by the CASA, a set that includes, but may not be limited to, 143 Level 3 uses of force, 470 Level 2 uses of force, 42 Level 1 uses of force, and 12 uses of force that IAFD subsequently investigated;[1] and

e. "Independent Monitor" may include members of the Independent Monitoring Team.

## B. Establish an External Force Investigation Team

2. The City shall establish and maintain EFIT to guide and direct IAFD personnel, and when necessary, conduct investigations of New Force Cases; assess investigations carried out by IAFD personnel; provide written feedback on IAFD personnel's work product; and complete investigations of the Backlog Force Cases.

3. EFIT shall be overseen by an Administrator. The City shall empower the EFIT Administrator to hire and retain the staff necessary to fulfill the requirements of this Amended Order. The EFIT Administrator shall ensure that a sufficient number of EFIT investigators to meet the requirements of Paragraph 16 of this Amended Order are physically present in Albuquerque and able to respond to the scene of Level 2 and Level 3 uses of force. The EFIT Administrator shall also ensure that a sufficient number of EFIT

---

[1] The City provided DOJ and the Independent Monitor with this accounting of 667 cases. Doc. 872 at 4. If EFIT identifies other uninvestigated force cases that occurred during the relevant period or finds a different number of force cases in a particular category, those cases will be considered Backlog Force Cases.

7

investigators and supervisors are hired and retained exclusively to investigate the Backlog Force Cases, as required by Paragraphs 7–9 of this Amended Order.

4. The EFIT Administrator shall have experience and expertise in investigating law enforcement misconduct, the constitutional standards for police officers' use of force, and systems reform litigation. EFIT supervisors and investigators shall have experience and expertise in investigating law enforcement actions and the constitutional standards governing use of force. The EFIT Administrator, supervisors, and investigators shall have no current or previous employment relationship or contract for services with APD or the City when they join EFIT. The Parties agree that the City selected a qualified candidate, DLG, to be the EFIT Administrator and that the EFIT Administrator has, to date, selected qualified supervisors and investigators in compliance with the Original Order's requirements. Doc. 720, ¶¶ 4, 6–7; *see also* Doc. 873, ¶¶ 12–35 (EFIT personnel's qualifications). If DLG ceases to be the EFIT Administrator before the termination of this Amended Order pursuant to Paragraphs 39 or 41, the City shall reconstitute EFIT pursuant to the process and subject to the requirements laid out in the Original Order. *See* Doc. 720, ¶¶ 3–10.

5. The City shall contract with the EFIT Administrator and fund the operations of EFIT in accordance with its Public Purchases Ordinance, specifically, ROA 1994, § 5-5-20(U) (exempting "[c]ontracts and expenditures in connection with court or administrative proceedings, including, but not limited to, experts, mediators, interpreters, translators, court reporters, process servers, witness fees, and printing and duplicating of materials for filing" from competitive requirements of the article), or any other appropriate provision of the Public Purchases Ordinance. The contract between the EFIT Administrator and the

City shall include all standard terms for City contracts.  In compliance with the Original Order, the City finalized a contract with DLG, on June 23, 2021, which enabled DLG to commence operations as the EFIT Administrator on July 16, 2021.  Doc. 873, ¶ 2; *see* Doc. 782, ¶¶ 2, 5 and Exhibit D.  Subject to the terms of Paragraphs 39–41, the City shall modify the EFIT Administrator contract as necessary to enable EFIT to provide the additional services identified in this Amended Order.

6.  The City and the EFIT Administrator shall establish and maintain protocols that require APD and EFIT to coordinate on investigations of new Level 2 and Level 3 uses of force. The protocols shall, at a minimum, specify how IAFD personnel and EFIT personnel will coordinate their work, and direct APD to transmit investigative files to EFIT.  The protocols shall be submitted to DOJ and the Independent Monitor for review and comment pursuant to the procedures of Paragraphs 147 and 148 of the CASA.  Doc. 465-1 at 49–50. The protocols shall not preclude EFIT from investigating the Backlog Force Cases.

**C.  Investigate and Report on the Backlog Force Cases**

7.  The City shall enable the EFIT Administrator to establish a Backlog Team to complete investigations of the Backlog Force Cases in accordance with the Scope of Work (SOW) attached to this Amended Order as Exhibit 1.  The Parties shall jointly file a notice with the Court when the EFIT Backlog Team is fully constituted and commences operations.

8.  When the Backlog Team completes an investigation, the EFIT Administrator shall submit the case materials, including narratives and recommendations, to IAFD for final closure. Upon receiving a completed backlog case from EFIT, IAFD shall close the case by performing the administrative steps outlined in the revised IAFD process narrative, Doc. 862-1, ¶¶ 59–63.

9.  The Force Review Board (FRB) shall review completed EFIT Backlog Team investigations pursuant to the process identified in SOW, ¶ 20.  Consistent with the CASA, Doc. 465-1, ¶ 78(b), any Backlog Team investigation reviewed by the FRB shall be presented by the EFIT Administrator or Deputy Administrator.

10. Within 30 days after EFIT completes an investigation pursuant to the SOW, APD shall respond in writing to the recommendations, if any, made by the EFIT Administrator and/or the EFIT Executive Team in that investigation pursuant to the SOW.

11. Within 90 days after EFIT completes investigation of all Backlog Force Cases, the City shall provide a written report to the EFIT Executive Team, DOJ, and the Independent Monitor, which includes, at a minimum:

    a.  the City's response to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;

    b.  the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

    c.  the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

    d.  the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

e.   the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

## D.  Maintain Increased Staffing of IAFD; Technical Assistance

12. The City shall ensure that APD maintains at least twenty-five (25) force investigators assigned to IAFD, unless and until APD can demonstrate by an internal staffing analysis that fewer investigators are necessary to timely investigate all Level 2 and Level 3 uses of force.

13. As required by the Original Order, Doc. 720, ¶ 14, the City filed a written process narrative for IAFD investigations with the Court on July 16, 2021.  Doc. 839-1.  The City filed a revised process narrative on September 27, 2021.  Doc. 862-1.  Any further revisions to the IAFD process narrative shall be subject to the agreement of the City, DOJ, and the Independent Monitor.  If the City, DOJ, and the Independent Monitor cannot agree on a proposed revision, the City or DOJ may submit the matter to the Court for resolution.

14. As required by the Original Order, Doc. 720, ¶ 15, the Parties agree that the Independent Monitor provided APD with intensive technical assistance as to implementing the IAFD process narrative required by Paragraph 13 of this Amended Order.

15. The City shall endeavor to negotiate longer investigative deadlines with the recognized exclusive representatives of relevant bargaining agreements.  Nothing in this Amended Order requires the City to violate the Labor Management Relations Ordinance or any collective bargaining agreement.

## E.  Investigate New Level 2 and Level 3 Uses of Force

16. EFIT commenced operations on July 16, 2021.  Doc. 873, ¶ 2.  Since then, APD and EFIT have deployed investigators to the scene of every Level 2 and Level 3 use of force, as

required by the Original Order. Doc. 720, ¶ 17. The EFIT and APD shall both continue to deploy investigators to the scene of these New Force Cases, unless APD deploys an IAFD investigator who has satisfied the requirements of Paragraph 34 of this Amended Order.

17. IAFD personnel shall act as the lead on-scene investigators for all New Force Cases and shall be primarily responsible for conducting the on-scene requirements of CASA Paragraphs 69(a), (b), (c), (d), and (e), Doc. 465-1 at 27, including but not limited to:

    a. respond to the scene and consult with the on-scene supervisor to ensure that all personnel and subject(s) of use of force have been examined for injuries, that the use of force has been classified according to APD's classification procedures, that subject(s) have been interviewed for complaints of pain after advising the subject(s) of his or her rights, and that all officers and/or subject(s) have received medical attention, if applicable;

    b. ensure that all evidence to establish material facts related to the use of force, including but not limited to audio and video recordings, photographs, and other documentation of injuries or the absence of injuries is collected;

    c. ensure that a canvass for, and interview of, witnesses is conducted. In addition, witnesses should be encouraged to provide and sign a written statement in their own words;

    d. ensure, consistent with applicable law, that all officers witnessing a Level 2 or Level 3 use of force by another officer provide a use of force narrative of the facts leading to the use of force;

    e.   provide a written admonishment to involved and witness officer(s) to the use of force that they are not to speak about the force incident with anyone until they are interviewed by [an] . . . investigator . . . .

18. The City shall transmit all documents, evidence, and investigative notes created or obtained by the on-scene investigator(s) to EFIT within 72 hours of the use of force, and on an ongoing basis as additional evidence is obtained. EFIT will acknowledge receiving all forwarded investigative documents, evidence, and notes.

19. Except as provided by Paragraph 23 of this Amended Order, IAFD personnel and EFIT personnel shall jointly investigate and review all new Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

20. EFIT shall have full, direct, and timely access to APD staff, employees, facilities, documents, data, and evidence to the extent necessary to fulfill the requirements of this Amended Order. EFIT shall coordinate with APD and APD's legal counsel to access personnel, facilities, and documents in a reasonable manner. If APD or APD's legal counsel decline to provide EFIT with access to documents or data based on privilege, APD shall inform EFIT, DOJ, and the Independent Monitor that it is withholding documents or data on this basis, and shall provide EFIT, DOJ, and the Independent Monitor with a log describing the documents or data and the basis of the privilege.

21. For each use of force investigation, EFIT shall evaluate the quality of IAFD personnel's work product and immediately notify APD and APD's legal counsel of any deficiencies or misconduct by IAFD personnel related to their investigations. APD shall promptly address these deficiencies or misconduct through corrective action or discipline, consistent with the CASA, APD policy, and the CBA.

13

22. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of New Force Cases without the involvement of IAFD personnel if either of the following conditions are met:

    a. EFIT or APD has alleged that IAFD personnel assigned to the investigation has committed misconduct in the course of the investigation, and EFIT believes that IAFD personnel's continued participation in the investigation is likely to undermine the integrity of the investigation; or

    b. EFIT or APD believes that deficiencies in the tactics or work product of IAFD personnel assigned to the investigation is likely to prevent the investigation from being completed within the deadlines provided for in the CASA, APD policy, and the CBA.

23. The EFIT Administrator shall provide written notice to DOJ, APD, and the Independent Monitor when EFIT exercises the authority under Paragraph 22 to complete investigations of New Force Cases without the involvement of IAFD personnel.  The notice shall explain in writing the grounds for the EFIT Administrator's actions.  If DOJ or the City believes that the EFIT Administrator's actions were improper, they will seek to resolve the matter with EFIT and the other party.  If DOJ, the City, and EFIT cannot reach a resolution, DOJ or the City may bring the matter before the Court for resolution.

24. IAFD and EFIT shall identify all misconduct that occurred during the course of each New Force Case investigation.  IAFD and EFIT investigators shall provide information about all misconduct they identify to APD for screening, assigning an internal affairs number, and tracking by APD Internal Affairs.  IAFD and EFIT investigators shall complete the investigation of all misconduct related to the use of force, and APD Internal Affairs

14

Professional Standards shall complete the investigation of all misconduct not related to the use of force.

25. EFIT shall complete its investigations of New Force Cases within 60 days of receiving on-scene investigation materials from APD. At the end of each investigation, IAFD and EFIT personnel shall prepare a joint investigative report, consistent with the requirements of the CASA and APD policy. The report shall include a recommended determination of whether each use of force complied with APD policy and state and federal law. When IAFD personnel recommend that an officer violated APD policy or state or federal law, they shall recommend appropriate corrective and/or disciplinary action, consistent with the CASA and APD policy.

26. An IAFD Commanding Officer shall review each investigative report and recommendation to determine whether they concur with the report and the recommended finding for each use of force; the recommended disposition of any misconduct allegations; and any recommended corrective and/or disciplinary action. The IAFD Commanding Officer shall explain any concurrence or non-concurrence in writing. Any recommended discipline resulting from an investigation will be reviewed by APD's executive staff consistent with APD policy.

**F. Role of the Independent Monitor with Regard to EFIT**

27. The Independent Monitor shall continue to assist APD, DOJ, and the EFIT Administrator by, at a minimum:

   a. orienting EFIT personnel regarding CASA requirements and relevant CASA compliance deficiencies by APD;

    b.   providing technical assistance to EFIT regarding the Independent Monitor's compliance assessment methodology; expectations regarding EFIT's processes, work product, and records production; and other relevant matters, as the EFIT Administrator and the Independent Monitor deem appropriate; and

    c.   conducting informal assessments of the Backlog Force Case investigations and the New Force Case investigations completed with EFIT's involvement, particularly in the early stages of EFIT's implementation, to ensure that investigations completed with EFIT's involvement comply with CASA requirements regarding the quality of force investigations. The Independent Monitor shall convey the outcome of these informal assessments to the EFIT Administrator, APD, and DOJ.

28. The City recognizes that the requirements of Paragraph 27 of this Amended Order are beyond the scope of the Independent Monitor's duties under the CASA and the City's annual budgets for the Independent Monitor's services under the CASA. The City filed an unopposed motion to provide additional compensation to the Independent Monitor for the additional services required by Paragraph 27 of this Amended Order, which the Court granted. Doc. 837 (Motion); Doc. 845 (Order).

29. The Independent Monitor shall conduct formal compliance assessments of force investigations completed with EFIT's involvement as it would investigations completed by APD. Except for the requirements of Paragraph 27, this Amended Order is not intended to, and does not, alter the responsibilities or authority of the Independent Monitor under the CASA.

## G. Remedial Action Plan for New IAFD Investigations

30. The City submitted a remedial action plan for IAFD investigations to DOJ, the Independent Monitor, and the EFIT Administrator on December 14, 2021. Doc. 720, ¶ 31. The plan must identify concrete actions to improve the quality and timeliness of IAFD's investigations of new Level 2 and Level 3 uses of force. The Independent Monitor may recommend changes or approve the plan consistent with the requirements of Paragraph 147 of the CASA. After the Independent Monitor approves of the plan, the City shall file it with the Court. If either the City, DOJ, or both disagree with the Monitor's recommendations, such party or parties may file the plan with the Court and move for its approval.

31. After filing a joint remedial action plan or after the Court approves the plan, and until the plan has been fully implemented, the City shall file brief reports to the Court, due every three months from the date the remedial action plan is filed, to inform the Court of progress in implementing the plan, any barriers to implementation that it has faced, and any modifications to the plan that may be necessary. The City's quarterly reports shall, at a minimum:

    a. summarize the City's progress on implementing the IAFD process narrative required by Paragraph 13, including a summary of the technical assistance provided by the Independent Monitor;

    b. summarize EFIT's written evaluations of the quality of investigations conducted by IAFD investigators during the previous quarter;

    c. summarize EFIT's written feedback on the work product of IAFD investigators' during the previous quarter;

d.  identify any formal training that IAFD investigators received during the previous quarter;

e.  identify the number of force investigators assigned to IAFD and, if APD has not yet retained 25 IAFD investigators, the steps that APD will take in the next quarter to achieve full staffing;

f.  identify the number of investigations or reviews of investigations that EFIT completed without the involvement of IAFD personnel, pursuant to Paragraph 22;

g.  identify the number of IAFD investigators conducting investigations independent of the EFIT, pursuant to Paragraph 35; and

h.  for investigations of Level 2 and Level 3 use-of-force incidents that occurred after July 16, 2021, identify:

   i.   the number of investigations initiated during the previous quarter;

   ii.  the number of investigations completed during the previous quarter;

   iii. the average and mean number of days from initiation to completion for the investigations completed during the previous quarter;

   iv.  the number of investigations during the previous quarter that were completed within the deadlines required by the CASA, APD policy, and the CBA; and

   v.   the number of investigations during the previous quarter that were not completed within the deadlines required by the CASA, APD policy, and the CBA.

**H.  Train IAFD Personnel**

14

32. Subject to extensions necessary due to COVID-19-related restrictions and availability, and subject to the approval of the proposed contractor by the Independent Monitor and DOJ, within three months of the entry of this Amended Order, APD shall identify and hire a contractor who shall, in concert with APD's Academy, develop and provide training to IAFD personnel on conducting high-quality and timely force investigations. This training shall be developed, approved, and provided consistent with APD policy and the CASA, and shall incorporate problem-solving, experiential adult-learning principles.

**I. Returning Responsibility for Full Investigations of New Level 2 and Level 3 Uses of Force to APD**

33. An IAFD Commanding Officer, with input from the EFIT evaluations prepared pursuant to the process narrative, shall prepare written evaluations of each investigator and supervisor who are assigned as IAFD personnel on a quarterly basis. These evaluations shall be considered confidential consistent with City Personnel Rules and Regulations and state law, but shall be provided to the Independent Monitor and DOJ upon request and shall be kept confidential pursuant to the requirements of Paragraph 326 of the CASA. These evaluations shall, at a minimum:

    a.  describe the nature and extent of all training provided to the IAFD investigator or supervisor during the previous quarter;

    b.  summarize EFIT's written assessments of the quality of the IAFD investigator's or supervisor's investigations;

    c.  summarize EFIT's written feedback on the IAFD investigator's or supervisor's work product;

    d.  describe any misconduct allegations against the IAFD investigator or supervisor related to their investigations during the previous quarter, including how the allegation was ultimately resolved;

    e.  compare the number of the IAFD investigator's or supervisor's investigations from the previous quarter that failed to satisfy CASA requirements for investigations with the number of investigations that the IAFD investigator or supervisor conducted during the previous quarter;

    f.  evaluate the IAFD investigator's or supervisor's overall performance; and

    g.  identify any actions that will be taken during the following quarter to improve the IAFD investigator's or supervisor's performance.

34. APD may transfer responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to IAFD personnel only after a quarterly evaluation demonstrates:

    a.  that the IAFD investigator or supervisor has received training on all aspects of Level 2 and Level 3 force investigations;

    b.  that the IAFD investigator or supervisor has regularly conducted high-quality investigations for at least two months, as demonstrated by EFIT's written assessments;

    c.  that the IAFD investigator or supervisor regularly produces high-quality work product, as demonstrated by EFIT's written feedback;

    d.  that the IAFD investigator or supervisor has not committed misconduct during the course of investigations; and

    e.  that 95% of the IAFD investigator's or supervisor's investigations from the previous quarter satisfied all CASA requirements for investigations.

16

20

35. APD shall notify the EFIT Administrator in writing two weeks before APD intends to transfer sole responsibility for conducting full investigations of Level 2 and Level 3 uses of force from EFIT to an IAFD investigator or supervisor. The EFIT Administrator shall promptly notify the City, APD, DOJ, and the Independent Monitor in writing if the EFIT Administrator determines that the IAFD investigator or supervisor does not meet the qualifications identified in Paragraph 34 of this Amended Order. The City, APD, DOJ, the Independent Monitor, and the EFIT Administrator shall confer about any disagreements between APD and the EFIT Administrator regarding the qualifications of any IAFD investigator or supervisor to take responsibility for conducting full investigations of Level 2 and Level 3 uses of force. The City and DOJ shall seek to resolve any such disagreements. If the City and DOJ are unable to resolve such disagreements, they may bring the matter before the Court for resolution.

36. The City and DOJ anticipate that APD will take responsibility for conducting full investigations of Level 2 and Level 3 uses of force over time as individual IAFD investigators and supervisors meet the qualifications identified in Paragraph 34.

37. The City will endeavor to ensure that the responsibility for conducting full investigations of Level 2 and Level 3 uses of force returns entirely to APD within 24 months of that date this Amended Order is entered as a Court order. The Parties shall evaluate APD's progress every six (6) months, including whether EFIT is contributing to improvements in APD's progress on complying the CASA. After conducting two evaluations, the City, in consultation with DOJ, will file a status report with the Court indicating whether the services of the EFIT should extend beyond 24 months.

21

38. The City and DOJ agree to jointly ask the Court to terminate this Amended Order once there are a sufficient number of IAFD personnel who have met the qualifications identified in Paragraph 34 to complete investigations of all new Level 2 and Level 3 uses of force within the timelines required by the CASA, APD policy, and the CBA, provided that the EFIT Backlog Team has completed investigations of the Backlog Force Cases pursuant to the Scope of Work attached to this Amended Order as Exhibit 1.

39. Notwithstanding Paragraph 38 of this Amended Order, if the Independent Monitor, after conducting the informal assessments required by Paragraph 27(c), or the formal assessments required by Paragraph 29 and the CASA, determines that EFIT regularly fails to conduct investigations consistent with CASA requirements and APD policy, the City, with the concurrence of DOJ, may seek to terminate its contract with the EFIT Administrator, and the Parties may seek to modify this Amended Order accordingly.

40. If the City and DOJ are unable to reach agreement about asking the Court to terminate this Amended Order, either Party may seek to terminate this Amended Order. However, before the City may file a motion to terminate this Amended Order, the City shall notify DOJ in writing of the grounds for the motion. Thereafter, the City and DOJ shall promptly confer about the City's assertions. If, after a reasonable period of consultation and the completion of any audit or evaluation that DOJ and/or the Independent Monitor may wish to undertake, the City and DOJ cannot resolve any disagreements, the City may file a motion to terminate this Amended Order. If the City moves to terminate this Amended Order, DOJ will have 60 days after the receipt of the City's motion to file objections. If DOJ does not object, the Court may grant the City's motion. If DOJ objects, the Court will hold a hearing on the motion, and the burden shall be on the City to demonstrate that it has fully complied with

18

22

this Amended Order and that the grounds for termination of this Amended Order are supported by a preponderance of the evidence.

The Court recognizes and approves of the measures in this Amended Order as good faith efforts by the Parties to address deficiencies in IAFD's investigations, as identified by the Independent Monitor in his Twelfth, Thirteenth, and Fourteenth Reports, and therefore approves this Amended Order as an Order of the Court.

**THEREFORE,**

**IT IS ORDERED** that the Parties' Joint Motion for Entry of this Amended Stipulated Order Establishing an External Force Investigation Team is approved, and the Amended Stipulated Order is hereby entered as an Order of the Court.

**IT IS FURTHER ORDERED** that the Court will retain jurisdiction to enforce the provisions of the Order.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Fred J. Federici
   United States Attorney
Elizabeth M. Martinez
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

   --and--

Paul Killebrew
   Deputy Chief
Patrick E. Kent
   Trial Attorney
Jared D. Hager

23

Trial Attorney
Jean M. Zachariasiewicz
   Trial Attorney
U.S. Department of Justice
Civil Rights Division
Special Litigation Section
Washington, D.C.
        *Attorneys for the United States*

Kevin A. Morrow
   Acting City Attorney
Lauren Keefe
   Special Counsel
Carlos Pacheco
   Managing Assistant City Attorney
Trevor Rigler
   Assistant City Attorney
City of Albuquerque
Albuquerque, New Mexico
        *Attorneys for the City of Albuquerque*

24

**Exhibit 1: Scope of Work to Remedy the Backlog Force Cases**

The City of Albuquerque (City) shall modify its existing contract with DLG Consulting and Advisory Services (DLG), to enable the External Force Investigation Team (EFIT) to investigate all use-of-force incidents that the Albuquerque Police Department (APD) Internal Affairs Force Division (IAFD) did not investigate, in whole or in part, from January 1, 2020, through July 16, 2021 (Backlog Force Cases),[2] in violation of the Court Approved Settlement Agreement (CASA), Doc. 465-1 of the Court's docket. The EFIT shall investigate the Backlog Force Cases pursuant to this Scope of Work (SOW).

## A. Establishing the EFIT Backlog Team

1. Pursuant to DLG's modified contract with the City, the EFIT Administrator will create an EFIT Backlog Team, which shall consist of additional staff hired and retained by the EFIT Administrator to fulfill the requirements of the Amended Stipulated Order and this SOW. It is anticipated that the EFIT Administrator will hire and retain at least six (6) additional investigators and two (2) additional supervisors to investigate, evaluate, identify appropriate corrective action, if any, that APD shall formally adjudicate, and report back on the Backlog Force Cases in accord with this SOW.

2. The EFIT Administrator will ensure that EFIT Backlog Team members have experience and expertise in investigating law enforcement actions and constitutional standards governing use of force. Members of the EFIT Backlog Team shall have no current or previous employment relationship or contract for services with APD or the City.

3. The EFIT Executive Team, which currently consists of Darryl Neier, William Hurlock and Darriell Bone, shall have discretion to determine whether and to what extent EFIT Backlog Team members will provide services in Albuquerque or from remote locations.

4. As soon as practicable after the Amended Stipulated Order is entered by the United States District Court for the District of New Mexico (Court) as an Order, and a contract is signed with the City, the EFIT Backlog Team will be fully constituted and begin investigating the Backlog Force Cases. The EFIT Administrator will advise the City and DOJ of the date on which the EFIT Backlog Team is fully constituted and operating so that the Parties can notify the Court.

5. The EFIT Backlog Team shall be sufficiently staffed and shall complete the tasks outlined in this SOW within 24 months of the date the Amended Stipulated Order is entered as a Court order and a contract is signed with the City.

6. The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT

---

[2] EFIT was not involved in and is not in any way responsible for APD's backlogs.

Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases. The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it. The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor.

## B.    Investigation Protocol for Backlog Force Cases

7.    Within two (2) days of the date the City and DOJ file a joint motion to amend the EFIT Stipulated Order, Doc. 720, IAFD shall provide to the EFIT Executive Team access through IAPro/BlueTeam for all documents in its possession for each of the Backlog Force Cases, whether final or in draft form, including but not limited to: the IAFD case files, officers' use-of-force narrative forms, on-scene recorded verbal statements, on-body recording device (OBRD) recordings, the names of all involved officers, witness officers, and civilian witnesses, any recorded written or verbal witness statements, crime scene specialist photographs, responding supervisors' on-scene checklists, any related Internal Affairs Request (IAR) or Multi-Agency Task Force (MATF) referrals, all supervisory on-scene investigation forms, IAFD Evaluative Data forms, any entries in Blue Team or IAPro, and any other evidence of the force incidents.

8.    The EFIT Executive Team shall exercise its discretion in deciding how to assign the Backlog Force Cases to the EFIT Backlog Team investigators and supervisors, while first prioritizing Level 3 force investigations involving use of lethal force and then prioritizing cases from 2020. EFIT will have discretion to expand the scope of a use-of-force investigation as necessary to reach reliable conclusions.

9.    For each use-of-force incident, the EFIT Backlog Team investigators shall develop an appropriate investigative plan with input from their respective supervisors, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 31–40. An appropriate investigative plan will vary depending on the use-of-force incident and the available evidence. However, unless variance is granted by the EFIT Executive Team, an appropriate investigative plan will include, but is not limited to, the following minimum requirements:

   a.    Evaluating APD's on-scene investigation, if any, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 1–30, however, the plan shall incorporate the IAFD process narrative as it relates to potential criminal conduct, *id.*, ¶ 17;

   b.    Reviewing available documentary evidence, including but not limited to use-of-force narratives, OBRD recordings, and recorded witness statements; and

   c.    Conducting appropriate interviews of involved officers, witness officers, and, if necessary, civilian witnesses. The EFIT will have discretion to decide whether interviews will be conducted in person or remotely, by Zoom.

10.    EFIT Backlog Team investigators will prepare a narrative report for each case that, at a minimum, identifies the data reviewed, evaluates the use-of-force incident, and recommends a

finding for whether each application of force complied with APD policy. Investigators will identify training, equipment, or policy concerns arising from the use-of-force incident. Investigators will also identify other substantial APD policy violations related to the use of force that they become aware of during an investigation.

11.     When policy violations are found, investigators will identify appropriate corrective action, which may include but is not limited to: training, counseling for involved or witness officers, equipment modifications, changes to policies or protocols, or reassignment of involved officers. While EFIT may make recommendations, it is APD's responsibility to review the recommendations and make the final determination for such actions.

12.     EFIT Backlog Team investigators will submit completed investigations, including narrative reports, case materials, and recommendations to their supervisors for further review.

13.     EFIT Backlog Team supervisors will review each completed investigation for accuracy and completeness, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 41–50. The supervisor will discuss with the investigator, at a minimum, the incident, data, and recommended findings, and determine whether any revisions or additional investigation is needed. If revisions or additional investigation is needed, the supervisor will return the case to the investigator with an appropriate plan of action and a deadline to resubmit the completed investigation.

14.     EFIT Backlog Team supervisors will prepare a supervisory narrative that confirms whether each application of force complied with APD's use-of-force policy and identifies other substantial violations of APD policy. The supervisors will also approve, modify, or disapprove any corrective action recommended by the investigator.

15.     EFIT Backlog Team supervisors will submit the completed investigation and supervisory narratives to the EFIT Executive Team for final review and comment.

16.     The EFIT Executive Team will review the completed investigation and supervisory narratives to determine if they are thorough, objective, and complete, or if any revisions or additional investigation is needed, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 51–58. If revisions or additional investigation is needed, the Executive Team will return the case to the supervisor with an appropriate plan of action and a deadline to resubmit the completed investigation.

17.     The EFIT Executive Team will finalize the investigation of a backlog force case by identifying whether each application of force complied with APD's use-of-force policy, identifying other substantial violations of APD policy arising from the conduct under investigation, and identifying training, equipment, or policy concerns arising from the use-of-force incident.

18.     When policy violations are found, the EFIT Executive Team's final review will identify appropriate corrective action, which may include but is not limited to: training, counseling for involved or witness officers, equipment modifications, changes to policies or protocols, or

**Page 3**     **Exhibit 1 to the Amended Stipulated Order Establishing an EFIT**
               **EFIT Backlog Team Scope of Work**

reassignment of involved officers. The completed investigation will also identify what, if any, discipline may have been warranted had the City and APD met their obligation to investigate the force incident within timelines imposed by the CASA and APD policy. The EFIT Executive Team shall provide this information to APD. While EFIT may make recommendations, it will be APD's responsibility to review the recommendations and make the final determination for such actions. Any corrective actions derived out of the EFIT investigation are at the sole discretion of APD.

## C.    Closing Backlog Force Cases

19.    Upon finalizing an investigation, the EFIT Administrator will submit all case materials, including narratives and recommendations, to IAFD for closure pursuant to the administrative steps outlined in the revised IAFD process narrative, Doc. 862-1, ¶¶ 59–63.

20.    Consistent with the CASA ¶ 78(b), the EFIT Administrator or Deputy Administrator will present to the Force Review Board (FRB) completed investigations that involve (a) an application of lethal force, and (b) an application of non-lethal force that EFIT identifies as not complying with APD's use-of-force policy. The EFIT Administrator or Deputy Administrator also will present a general status report on the Backlog Force Cases to the FRB on a monthly basis, including any emerging themes or issues, data about the type of force being used and whether it complies with APD policy, and specific examples of any officers whose conduct is indicating a concerning pattern or anything else problematic that EFIT is identifying.

## D.    Ongoing Reviews and Reports

21.    Backlog Team investigators and their supervisors will meet at regular intervals, to be determined by the EFIT Executive Team, to discuss the status of ongoing investigations, revise investigative plans as necessary, and resolve any impediments to timely completing investigations.

22.    The EFIT Executive Team will meet with the Backlog Team supervisors and investigators at regular intervals, to be determined by the EFIT Administrator, to discuss the status of ongoing investigations, address concerns, and ensure that the Backlog Force Cases will be completely investigated within 24 months.

23.    The EFIT Executive Team will provide weekly written reports to DOJ, the City, IAFD, and the Independent Monitor that, at a minimum, contain status updates on the Backlog Force Cases, including cases assigned and completed, significant findings, and corrective actions.

24.    The EFIT Administrator will file quarterly reports with the Court that provide status updates on the Backlog Force Cases, including cases assigned and completed, significant findings, recommended corrective actions, and analyses provided to the FRB.

25.    Within 30 days of investigating all Backlog Force Cases, the EFIT Administrator shall provide the City and DOJ with a summary report identifying significant findings in individual cases, trends among all cases, root causes of the backlog, recommended corrective actions, and potential solutions to ensure against future IAFD investigations failing to be completed within

timelines imposed by the CASA. The City and DOJ will have two weeks to review and provide comments on the summary report. The EFIT Administrator will have two weeks to consider the comments and revise the draft summary report. Within 60 days of investigating all Backlog Force Cases, the EFIT Administrator will file a final summary report with the Court.

**Page 5      Exhibit 1 to the Amended Stipulated Order Establishing an EFIT
               EFIT Backlog Team Scope of Work**

# EXHIBIT

# C

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

v.

THE CITY OF ALBUQUERQUE,             No. CIV. 14-1025 JB\SMV

       Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

       Intervenor.

## NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS"

COMES NOW, the City of Albuquerque, and hereby files the attached "Albuquerque Police Department Internal Affairs Force Division Current Processes, July 12, 2021." Exhibit 1.

Paragraph 14 of the Court's February 26, 2021, *Stipulated Order Establishing an External Force Investigation Team*, Document 720, (hereafter, *Stipulated Order*) requires the City to "submit a proposed written IA investigative process to the United States and Independent Monitor" within two months of entry of the Order. The City submitted the proposed investigative process to the Independent Monitor and United States on April 26, 2021, and thus complied with the Court's deadline Paragraph 14. Thereafter, the United States and Monitor considered the proposed investigative process, recommended revisions, and the City considered the recommendations and revised the process, as required by Paragraph 14.

1

31

Paragraph 14 of the *Stipulated Order* provides that "[a]fter the City, DOJ, and the

Independent Monitor reach agreement on the proposed written IA investigative process, the

written IA investigative process shall be filed with the Court." Doc. 720 at 5.  The Independent

Monitor, United States, and City have now agreed on the attached *Albuquerque Police*

*Department Internal Affairs Force Division Current Process*.  Exhibit 1.  The City therefore files

it with the Court as required by Paragraph 14 of the *Stipulated Order*.

Respectfully submitted this 16th day of July, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY

*Lindsay Van Meter*
LINDSAY VAN METER
Managing Assistant City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
lvanmeter@cabq.gov
trigler@cabq.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I filed the foregoing pleading electronically through the
CM/ECF system which caused all parties or counsel and the Independent Monitor to be
served by electronic means as more fully reflected on the Notice of Electronic Filing.

*Lindsay Van Meter*
Lindsay Van Meter
Managing Assistant City Attorney
City of Albuquerque

2

32



# ALBUQUERQUE POLICE DEPARTMENT

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

### July 12, 2021

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases. This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025. This document reflects the current investigative process at IAFD. The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

Exhibit 1

33

# INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

**ON-SCENE AND ADMINISTRATIVE - USE of FORCE**

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene. If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
    a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
        i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
            1. If the individual invokes his/her rights, questions will not be asked.
        ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
            1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
        iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
            1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
    a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
    b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation. Additional witness officers may have to be identified later in the investigation as more evidence and information is available. For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses. If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement. The responding supervisor may obtain a verbal statement if the witness is willing to do so.

34

7. The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8. The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.    If needed, he/she will watch the witness officers' OBRD to classify properly.

   a. If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command.  If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9. The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident.  The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene.  IAFD will maintain a roster of three detectives on-call each week.  The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

    a. IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork.  If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they needs to complete it themselves:

    • Identify involved officers.
    • Identify witness officers.
    • Identify the individual in which force was used.
    • Identify civilian witnesses. If any civilian witnesses are on-scene, interview witnesses and encourage a written statement.  If a formal witness statement is required due to

circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.

- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
    - If the individual invokes his/her rights, no questions will be asked.
    - If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
        - This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours.  Note: this can occur at any point during the investigation. *(See MISCONDUCT).*

17. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case. Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email.  This can occur at any point during the investigation.
    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT).*

18. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion.  Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

19. Responding supervisor will complete the Supervisory On-Scene Investigation form. This is turned in by the end of shift and emailed to the on-call IAFD detective.

20. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

21. The IAFD on-call detective will begin the Evaluative Data form.  This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team.  In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice.  The IAFD on-call detective will include the email in the case file for proof of 24-hour notification.  The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level

two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

22. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

23. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

24. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective. IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team. The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

25. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

    a. The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro. There are multiple entry types allowed in IAPro and Blue Team. Many of these entry types may be involved in one case and are linked together in IAPro. For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro. Also, the K-9 Unit enters all deployments into Blue Team. It should be noted that all K-9 deployments do not result in a K-9 bite. When there is a K-9 bite, the linked data will include a K-9 deployment entry and a use of force entry.

    Below are examples of entry types:
    Civilian Police Complaints (CPC) = CPC2021-000000
    Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
    K9 Utilization = K92021-000000
    Force = F2021-000000
    Award Nominations = AN2021-000000
    Vehicle Crashes = VC2021-000000
    Internal Investigations (IAPS misconduct) = I2021-000000
    Non-Force = NF2021-000000

26. The case will remain in IAPro until assigned to a case agent. Cases agent assignments shall be made expeditiously.

27. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team. The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data. The remainder of the case is in IAPro. The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

28. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702. IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

29. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.

**CASE AGENT – USE of FORCE**

30. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc. The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

*31.* If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. *(See MISCONDUCT).*

32. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment. The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

    a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

    b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

    c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

    d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

    e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

33. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

34. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

35. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

36. The case agent will upload all evidence into IAPro to include all forms and links.   At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.

37. The case agent will submit the case to the immediate supervisor for review in IAPro.

38. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.

39. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

**SERGEANT/LIEUTENANT**

40. The immediate supervisor will receive the case via IAPro.  If there is a force and a misconduct case, they may not be received at the same time.

41. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31).*

42. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT).*

43. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings.  This includes watching OBRD videos.

44. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.

45. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.

46. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.

47. The immediate supervisor will complete the IAFD Chain of Command Review Form.  This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.

48. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.

49. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

50. The deputy commander or commander will receive the case in IAPro.

51. The deputy commander or commander will review bookmarked OBRD videos.

52. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.

53. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.

39

54. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.

55. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.

56. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.

57. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

58. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.

59. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.

60. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.

61. The IAFD administrative staff will close the case in IAPro.

62. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

63. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.

    a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.

        i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.

            1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.

            2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.

            3. IAFD will complete an IAR when an initial policy violation is identified.

                a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.

    b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

64. The misconduct case will follow the same investigative steps as a use of force investigation.  Each case will be reviewed by the IAFD chain of command.  The only difference is the misconduct interviews will involve compelled statements.

65. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action.  The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review.  The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

66. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

67. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.

      i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

68. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case.  *(See SOP 3-46 Discipline System).*

41

# EXHIBT

# D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.

THE CITY OF ALBUQUERQUE,              No. CIV. 14-1025 JB\SMV

        Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

        Intervenor.

## NOTICE OF AGREED "ALBUQUERQUE POLICE DEPARTMENT INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESS Revised – September 8, 2021

COMES NOW Defendant City of Albuquerque and hereby files the attached

"Albuquerque Police Department Internal Affairs Force Division Current Processes, Revised –

September 8, 2021" (Revised Process Narrative). Exhibit 1.

On July 16, 2021, the City filed a Notice of Agreed "Albuquerque Police Department

Internal Affairs Force Division Current Process," which was attached as its Exhibit 1 a Process

Narrative dated July 12, 2021. *See* Doc. 839-1. By filing that Process Narrative, the City

complied with Paragraph 14 of the Court's February 26, 2021 *Stipulated Order Establishing an*

*External Force Investigation Team* (Stipulated Order), Doc. 720, which required the City to

"submit a proposed written IA investigative process to the United States and Independent

Monitor" within two months of entry of the Order and "[a]fter the City, DOJ, and the

43

Independent Monitor reach agreement on the proposed written IA investigative process, the written IA investigative process shall be filed with the Court." Doc. 720 at 5.

After the IA Force Division (IAFD) and External Force Investigation Team (EFIT) began operations under the Process Narrative, Doc. 839-1, they identified a material disparity between the Process Narrative and applicable use of force policy regarding use of force reporting, namely, whether written statements should be required in all circumstances as stated in the Process Narrative, or whether recorded verbal statements could be permitted as allowed by policy. The Revised Process Narrative permits using recorded verbal statements under limited circumstances with supervisory approval. *See* Exhibit 1 at Paragraph 14.

The Revised Process Narrative also includes a process pursuant to which IAFD and EFIT may resolve on scene disagreements about the proper classification of the level of force to be investigated. *See* Exhibit 1 at Paragraph 16. This process was not included in the original Process Narrative.

The Revised Process Narrative attached as Exhibit 1 hereto, which was prepared by the City was reviewed and approved by the United States and the Independent Monitor as required by Paragraph 14 of the Stipulated Order. The Independent Monitor, the United States, and the City have agreed on the attached Revised Process Narrative, which the City now files with the Court as required by Paragraph 14 of the Stipulated Order. Counsel for the Albuquerque Police Officers' Association was contacted regarding the attached Revised Process Narrative and approves to form.

2

44

Respectfully submitted this 27th day of September, 2021.

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, CITY ATTORNEY


*Carlos F. Pacheco*
CARLOS F. PACHECO
Senior Managing City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
cpacheco@cabq.gov
trigler@cabq.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 27, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.


*Carlos F. Pacheco*
Carlos F. Pacheco
Senior Managing City Attorney
City of Albuquerque

3

45



## ALBUQUERQUE POLICE DEPARTMENT

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

## Revised - September 8, 2021

The purpose of this document is to outline the current investigative process at IAFD to investigate Use of Force cases.  This document is intended to fulfill the requirements of Paragraph 14 of the February 26, 2021, Stipulated Order in *United States v. City of Albuquerque*, 14-cv-1025.  This document reflects the current investigative process at IAFD.  The remedial action plan created pursuant to paragraph 31 of the Stipulated Order will supersede this investigative process.

46

## INTERNAL AFFAIRS FORCE DIVISION CURRENT PROCESSES

**ON-SCENE AND ADMINISTRATIVE - USE of FORCE**

1. Use of force occurs.
2. The supervisor of the officer(s) that used force will respond to the scene.  If the direct supervisor is unavailable or is either involved or a witness to the use of force, another supervisor will respond.
3. The supervisor will issue a direct order that the officers on-scene not to speak about the use of force. This happens either by radio transmission while the supervisor is en route to the call, or once arrived on-scene.
4. The supervisor will visually inspect involved officers and the individual(s) in which force was used (will be referred to as "individual" throughout this document) and shall assess independently for any visible injuries, and where necessary:
   a. Request Emergency Medical Services ("EMS") if there are visible injuries or a complaint of injury, if not done so already by the officers.
      i. When the responding supervisor asks the individual about injuries, he/she will first administer Miranda warning to the individual before asking any questions.
         1. If the individual invokes his/her rights, questions will not be asked.
      ii. If the individual is injured or complains of injury, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by either Albuquerque Police Department ("APD") personnel or by EMS.
         1. If transported to the hospital by APD, the transporting officer will record the starting and ending mileage via the Emergency Communication Center ("ECC"), also known as dispatch.
      iii. If an employee(s) is injured, he/she will either be treated at the scene, refuse treatment, or be transported to the hospital by AP personnel or EMS.
         1. Supervisors will also contact MedCor for reporting and further directions for employee injury.
5. The responding supervisor will contact the officers and identify all officers who were involved or witnessed the use of force.
   a. Involved officers are those who participated, ordered, or authorized the use(s) of force.
   b. Witness officers are those who were on-scene, and either eye witnessed the use of force, directly heard statements made by the individual(s) and/or officer(s) involved during the events leading up to the use of force, during the use of force, or after the use of force, or otherwise could provide material details for the use of force investigation.  Additional witness officers may have to be identified later in the investigation as more evidence and information is available.  For example, if there is a Noise Flash Diversionary Device ("NFDD") deployed during a tactical activation and that use of the NFDD is in question, the case agent will identify witness officers to address the inconsistency.
6. The responding supervisor will make a reasonable effort to identify all civilian witnesses.  If civilian witnesses have to leave the scene, the responding supervisor will obtain contact information and encourage a written statement.  The responding supervisor may obtain a verbal statement if the witness is willing to do so.

7. The responding supervisor or officers on-scene will request a Crime Scene Specialist ("CSS") to process the scene. This includes taking photographs of the scene, involved officers, the individual(s), and all visible injury(s) of any parties involved in the use of force.

8. The responding supervisor will classify the use of force by talking separately with the involved officers and watching the involved officers' On-Body Recording Device ("OBRD") of the use of force.   If needed, he/she will watch the witness officers' OBRD to classify properly.

    a. If the use of force is classified as a level one, the use of force investigation will remain with the officer's chain of command.  If the use of force is classified as a level two or three, the supervisor will request from ECC the Internal Affairs Force Division ("IAFD") on-call supervisor telephone number and call the IAFD on-call supervisor.

9. The responding supervisor will report via telephone to the IAFD on-call supervisor the classification of the use of force and all known details about the incident.  The IAFD on-call supervisor will ask specific questions of the responding supervisor such as: if they have started their canvass to ensure all material witnesses do not leave the scene before APD can request their written statement, whether they have ordered the officers not to discuss the actions leading up to the arrest and/or use of force in this incident, or if there were any injuries to either the individual or officers that require medical treatment and if medical treatment has been requested.

10. The IAFD on-call supervisor will determine which detective responds to the scene.  IAFD will maintain a roster of three detectives on-call each week.  The IAFD on-call supervisor bases their decision on the complexity of the case to avoid overloading any one detective with complex cases such as Special Operations Division ("SOD") uses of force during a tactical activation, Officer Involved Shooting ("OIS"), or in-custody deaths involving force.

    a. IAFD on-call supervisors will respond with the IAFD on-call detective when there is a level two or three use of force involving a tactical activation, OIS, or in-custody death that involves force.

11. The IAFD on-call supervisor will call the IAFD on-call detective, advise him/her of the location of the use of force and any details collected during the initial call between the responding and IAFD on-call supervisor.

12. The IAFD on-call supervisor will then notify the on-call External Force Investigation Team ("EFIT") supervisor who will assign an EFIT on-call investigator to respond with IAFD to the location of the use of force.

13. The IAFD on-call detective and EFIT on-call investigator will respond to the scene within one hour of the call.

14. While waiting for the IAFD on-call detective, the responding supervisor will ensure that officers begin their use of force paperwork.  On a very limited basis when IAFD and EFIT responded to UOF calls and when taking a written statement might not be feasible because of ongoing criminal conduct, the need to respond to other criminal conduct, or for officer safety reasons, and with written authorization of an IAFD Lieutenant or higher with the agreement by the EFIT Lead Supervisor or higher, a verbal statement can be recorded in lieu of the written use of force narrative. If the individual is going to be arrested, the responding supervisor will ensure that booking documents are prepared.

15. Once the IAFD on-call detective and EFIT on-call investigator ("IAFD team") are on-scene, they will verify that the following either has been completed by the responding supervisor and officers or if they need to complete it themselves:

    • Identify involved officers.

- Identify witness officers.
- Identify the individual in which force was used.
- Identify civilian witnesses. If any civilian witnesses are on-scene, interview witnesses and encourage a written statement. If a formal witness statement is required due to circumstances surrounding the event, the IAFD/EFIT team will request civilian witnesses respond to and provide the statement at an appropriate location.
- Determine if the individual is injured by physically checking or asking the individual if they are injured. Request medical attention, if necessary. Conduct a thorough interview with the Individual in which force was used. Administer Miranda warning prior to the interview.
    - If the individual invokes his/her rights, no questions will be asked.
    - If the individual is unable to be interviewed at that time, the IAFD detective will collect as much personal contact information as possible and will conduct the interview at a later date.
        - This does not preclude the interview of an individual under the influence of drugs, alcohol or impairment in any manner.
- Ensure all involved and witness officers sign written admonishments and collect same for the investigative file. Verify the initial classification of use of force.
- Ensure a CSS has processed the scene and taken photographs of the scene, officers, and individual(s).
- Canvass the area for all other evidence including but not limited to unidentified civilian witnesses, camera footage in the vicinity, etc.
- Verify and collect the responding supervisor on-scene checklist.

16. If, at any point during the on-scene investigation, the level of force cannot be agreed upon by the assigned IAFD Detective and EFIT Investigator, the on-call IAFD Supervisor will respond to the scene to assist in properly classifying the level of force. For any level 2 or level 3 use of force call-out, that is classified on scene as a level 1 use of force, the classification will be reviewed (within 24-hours) by the EFIT Lead Supervisor to determine whether the UOF was properly classified.

17. If, at any point during the on-scene investigation, the IAFD on-call team identifies potential misconduct, the IAFD detective will initiate a misconduct investigation by entering an Internal Affairs Request ("IAR") through Blue Team within 24-hours. Note: this can occur at any point during the investigation. *(See MISCONDUCT).*

18. If, at any point the level two or level three use of force is identified as potentially criminal, the IAFD Commander and EFIT Administrator will be notified both telephonically and via email and provided a synopsis of the case. Upon review, if the IAFD Commander concurs with the assessment, the IAFD commander will refer to the Multi-Agency Task Force ("MATF") through the MATF commander via email. This can occur at any point during the investigation.
    a. Any potentially criminal referral will have a corresponding misconduct IAR for the misconduct administrative investigation. *(See MISCONDUCT).*

19. The involved or witnessing officers will complete their use of force narrative by end of shift. Responding supervisors will review and approve officer narratives for accuracy, detail, and completion. Narrative forms will be submitted via email to the IAFD on-call team by the end of shift.

49

20. Responding supervisor will complete the Supervisory On-Scene Investigation form. This is turned in by the end of shift and emailed to the on-call IAFD detective.

21. On-scene follow-up may be required by the IAFD detective based on the need for material evidence collection such as camera footage not available at the time of the call-out.

22. The IAFD on-call detective will begin the Evaluative Data form. This is an inventory of all of the evidence collected for the case. As soon as practicable, but no later than 24-hours of the call-out, the IAFD detective will enter the use of force in Blue Team. In the case of a technology or server failure, the IAFD on-call detective will send an email to the Chief of Police, attaching the Evaluative Data Form in the email, which will serve as the 24-hour notice. The IAFD on-call detective will include the email in the case file for proof of 24-hour notification. The entry includes basic information about the use of force case which is sent to the Chief of Police for the 24-hour notification required for every level two and level three use of force. This entry is also sent to the IAFD administrative staff and the IAFD chain of command to include the Superintendent.

23. The IAFD team will meet with the IAFD immediate supervisor the next business day following the call-out to brief them regarding the use of force. This includes reviewing the reported use of force portion of OBRD together.

24. The IAFD on-call detective will upload his/her OBRD the next business day and prior to meeting with their supervisor.

25. The IAFD administrative staff shall receive the initial Blue Team entry from the IAFD detective. IAFD administrative staff request photographs taken by the CSS from the Scientific Evidence Division (SED)-photo lab through Blue Team. The SED uploads the photographs in Blue Team and sends it back to the IAFD administrative staff.

26. The IAFD administrative staff accepts the case from Blue Team into IAPro. Blue Team feeds into IAPro and IAPro feeds into the data warehouse.

   a. The IAFD administrative staff will assign a file number (or force number) to the use of force in IAPro. There are multiple entry types allowed in IAPro and Blue Team. Many of these entry types may be involved in one case and are linked together in IAPro. For example, vehicle pursuits can result in a use of force, misconduct, and a job well done; therefore, all four will be linked in IAPro. Also, the K-9 Unit enters all deployments into Blue Team. It should be noted that all K-9 deployments do not result in a K-9 bite. When there is a K-9 bite, the linked data will include a K-9 deployment entry and a use of force entry.

   Below are examples of entry types:
   Civilian Police Complaints (CPC) = CPC2021-000000
   Force Internal Investigations (FII)/IAFD investigated misconduct = FII2021-000000
   K9 Utilization = K92021-000000
   Force = F2021-000000
   Award Nominations = AN2021-000000
   Vehicle Crashes = VC2021-000000
   Internal Investigations (IAPS misconduct) = I2021-000000
   Non-Force = NF2021-000000

27. The case will remain in IAPro until assigned to a case agent. Cases agent assignments shall be made expeditiously.

28. Once the case is assigned, the administrative staff will send the case to the case agent in both IAPro and Blue Team. The case agent will receive the case in both platforms as Blue Team houses use of force injury and applications data. The remainder of the case is in IAPro. The case agent will organize cases in IAPro using sub-folders such as, IAFD interviews, extensions, admonishments, and OBRD.

29. The case agent will cooperatively work with the EFIT investigator assigned. IA force personnel and EFIT personnel shall jointly conduct investigations of all Level 2 and Level 3 uses of force, subject to the exception in Paragraph 23 of the stipulated agreement Doc. 702. IA force personnel and EFIT personnel shall jointly investigate and review all Level 2 and Level 3 uses of force in a manner that is consistent with the requirements of the CASA, APD policy, and the CBA.

30. Within 72 hours of the use of force call-out and on an ongoing basis, the case agent will provide EFIT all evidence collected, and EFIT will acknowledge receipt of all evidence.

## CASE AGENT – USE of FORCE

31. The case agent and EFIT Investigator will review all collected evidence. This includes reports, OBRD, civilian witness statements, etc. The amount of time spent on evidence review varies by the volume of evidence for each case, specifically OBRD footage.

*32.* If, at any point during the investigation, the IAFD detective and/or EFIT investigator identifies potential misconduct, the IAFD detective or EFIT investigator will initiate a misconduct investigation by entering an IAR through Blue Team as soon as practicable but no later than 24-hours. *(See MISCONDUCT).*

33. The case agent and the immediate supervisor will meet to discuss and draft the investigative plan (with input from the EFIT investigator) within three business days of the case assignment. The investigative plan is designed to create benchmarks throughout the investigative process to ensure cases are completed within timelines, to keep supervisors informed, and to identify any issues as early in the investigation as possible. This includes the reviewing evidence, scheduling, preparing and conducting interviews, along with case analysis and write-up. An integral part of the investigative plan is to involve the immediate supervisor earlier in the investigative process to allow for closer supervision and collaboration between the supervisor and the detective.

    a. An important part of the investigative plan is developing interview questions based on policy, potential policy violation(s), and the evidence of the case.

    b. Once approved by the immediate supervisor the investigative plan will be uploaded into IAPro.

    c. It is imperative that this investigative plan be updated and approved by the immediate supervisor as investigative steps are completed.

    d. The immediate supervisor will set fifteen-day, thirty-day, and sixty-day case timelines for the case agents and will be tracked as tasks on the IAPro dashboard and are viewable by the supervisor. These dates also trigger meetings between the case agent and the immediate supervisor, along with EFIT, to review the case progression. Depending on the capabilities of the detective and the complexity of the case, the immediate supervisor can increase the number or frequency of these meetings.

    e. The EFIT Lead Supervisor will have at a minimum, weekly meetings with all case agents and EFIT investigators, and IAFD supervisor, to discuss the status of ongoing Level 2 and Level 3 investigations to ensure that all timelines will be met.

51

34. The case agent, with guidance and participation of the EFIT investigator will conduct interviews with involved and witness officers. During those interviews, the IAFD interview script will be read into the record, which includes introductory, breaks off record, and conclusory language. In the event a break is taken during the interview, the case agent will record the date and time and the reason for taking the break. Once back on record, the date and time will be stated again. The date and time of the conclusion of the interview will also be stated for the record.

35. The case agent will complete the Investigative Data form, which includes data necessary for CASA requirements.

36. The case agent will complete the Evaluative Narrative form, which includes the overall investigation in chronological order, including the analysis of each use of force.

37. The case agent will upload all evidence into IAPro to include all forms and links. At this time, the case agent will also make any necessary updates in Blue Team as all of the applications of force and injuries are captured in that system.

38. The case agent will submit the case to the immediate supervisor for review in IAPro.

39. Pursuant to the stipulated Order Doc. 702 par. 23. EFIT shall be authorized to complete investigations and supervisory reviews of investigations of Level 2 and Level 3 use of force without the involvement of IAFD if EFIT or APD has alleged that the IAFD personnel assigned to the investigation has committed misconduct during the course of the investigation, and it is likely to undermine the investigation; or if EFIT or APD believes that deficiencies in the tactics or work product of IAFD is likely to prevent the investigation for being completed within proscribed deadlines.

40. The EFIT Administrator, through the Lead Supervisor, will be immediately notified of such situations described. The EFIT Administrator will immediately, upon said briefing, notify the IAFD Commander.

**SERGEANT/LIEUTENANT**

41. The immediate supervisor will receive the case via IAPro. If there is a force and a misconduct case, they may not be received at the same time.

42. The immediate supervisor will meet with the case agent to discuss, draft, and approve the investigative plan and any subsequent revisions. *(See Case Agent – USE of Force section, #31).*

43. If the immediate supervisor finds additional misconduct, the misconduct will be reported via an IAR through Blue Team. *(See MISCONDUCT).*

44. The immediate supervisor will review the case agent's investigation for accuracy, completeness, and based on the investigation, determine the findings. This includes watching OBRD videos.

45. In addition to the investigative plan meetings, the immediate supervisor will meet with the case agent to discuss any questions he/she may have regarding the case.

46. If there are any revisions or corrections that need to be made to either the case, to include the Blue Team entry, the immediate supervisor will return the case to the case agent via IAPro.

47. Depending on the kind of corrections needed, the immediate supervisor will assign the case agent a deadline in which to make those changes and re-submit the case to the immediate supervisor through IAPro.

48. The immediate supervisor will complete the IAFD Chain of Command Review Form. This document includes findings, additional follow-up documentation if needed, and coaching elements for the case agent to aid future investigations.

49. The immediate supervisor will upload the IAFD Chain of Command Review into IAPro and review Blue Team for accuracy.

50. The immediate supervisor will route the case to an IAFD commanding officer via IAPro.

**DEPUTY COMMANDER OR COMMANDER**

51. The deputy commander or commander will receive the case in IAPro.
52. The deputy commander or commander will review bookmarked OBRD videos.
53. The deputy commander or commander will review the case to ensure that the findings are supported by the preponderance of the evidence.
54. The deputy commander or commander will route the case back through the chain of command for revisions via IAPro if necessary.
55. Depending on the kind of corrections needed, the deputy commander/commander will assign a deadline in which to make those changes and re-submit the case to the deputy commander/commander through IAPro.
56. The deputy commander or commander may provide additional feedback for future performance of IAFD staff either in person or via email.
57. Once the case is reviewed by the deputy commander or commander, he/she will determine if the case is thorough, objective, and complete, the deputy commander or commander will complete the IAFD Commander Force Review form.
58. The deputy commander or commander will route the case to the administrative staff via IAPro advising it is closed and if the use of force case is in or out of policy.

**ADMINISTRATIVE STAFF**

59. The IAFD administrative staff will receive the completed case from the deputy commander or commander in IAPro.
60. The IAFD administrative staff will review the file to make sure that all necessary documents are there. They do not review the contents of the documents.
61. The IAFD administrative staff will use the date the use of force case was submitted by the deputy commander or commander as the case closed date.
62. The IAFD administrative staff will close the case in IAPro.
63. Once cases are closed via the IAFD administrative staff, each level two and three use of force is housed in the data warehouse. As of May 2021, the FRB staff has a dashboard which includes closed use of force cases within a selected date range and available for selection for FRB presentation. (*See SOP 2-58, Force Review Board and City Ordinance 9-4-1-4C3 Civilian Police Oversight Agency*).

**MISCONDUCT**

64. Both Internal Affairs (IA) divisions use IAPro for misconduct cases, and each misconduct case is linked to the corresponding force case in IAPro.
    a. Once the IAR is submitted to the Internal Affairs Professional Standards (IAPS) Division, IAPS will intake the IAR and will determine if IAFD will investigate the misconduct.
        i. If IAPS determines that IAFD will investigate the misconduct, the IAR will result in a Force Internal Investigation or "FII," which means the misconduct investigation timeline starts on that date.
            1. IAPS will submit the FII to IAFD for the case target letter(s), assignment, and completion.

2. In most instances, the FII will return back to the original IAFD investigator unless the case needs reassignment.

3. IAFD will complete an IAR when an initial policy violation is identified.

   a. As additional policy violations are identified, additional policy violations will be added to the original FII after conferring with their immediate supervisor, not to exceed 24-hours.

b. Regardless of who investigates the misconduct, that portion will be bifurcated from the force investigation and documented in the case to separate the force investigation from the misconduct investigation.

65. The misconduct case will follow the same investigative steps as a use of force investigation. Each case will be reviewed by the IAFD chain of command. The only difference is the misconduct interviews will involve compelled statements.

66. For sustained violations, after the IAFD commanding officer completes his/her review and approval of the misconduct case, the deputy commander/commander will complete a Disciplinary Action Packet (DAP) which includes recommended disciplinary action.  The IAFD deputy commander/commander sends the DAP via email to the IAPS Investigative Manager to review. The purpose of this review is to ensure IAFD includes IAPS in the misconduct process to ensure both divisions are providing similar work product.

67. Once IAPS completes and returns their portion of the DAP, the IAFD deputy commander/commander will forward the case in IAPro to the IAFD administrative staff for the thirty-day chain of command review.

68. The Deputy Chief of Police or Superintendent will make the final decision if the level of discipline is thirty-nine hours or below.

   i. If the level of discipline of is forty hours or over, the Chief of Police or Superintendent will make the final decision.

69. Once the final decision is documented, the misconduct case will be returned to the IAFD administrative staff to close out the case. *(See SOP 3-46 Discipline System).*

54

# EXHIBIT

# E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.

THE CITY OF ALBUQUERQUE,            No. CIV. 14-1025 JB\SMV

      Defendant,

v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

      Intervenor.

**JOINT NOTICE OF AGREED UPON EXTENSIONS OF TIMELINES FOR
COMPLETING TWO FORCE INVESTIGATIONS UNDER STIPULATED
ORDER ESTABLISHING EXTERNAL FORCE INVESTIGATION TEAM (DOC. 720)**

      Plaintiff United States of America (United States) and Defendant City of Albuquerque

(City), collectively, the Parties, with the approval of the Independent Monitor, James D. Ginger,

Ph.D., and the consent of Intervenor Albuquerque Police Officers' Association (APOA),

respectfully notify the Court of their agreement to extend in two cases the 60-day timeline to

complete force investigations set by Paragraph 26 of the Court's February 26, 2021 *Stipulated*

*Order Establishing an External Force Investigation Team* (the EFIT Stipulated Order). Doc.

720. The Parties hereby notify the Court that there are unanticipated, exceptional, and

extenuating circumstances underlying the Parties' agreement to extend by 30 days the 60-day

timeline for completing two specific force investigations.

      The EFIT Stipulated Order is a temporary remedial measure to address serious deficiencies

in the Albuquerque Police Department's (APD) investigations of use of force incidents identified

56

in the Independent Monitor's Twelfth Report, Doc. 652, and reaffirmed in the Monitor's Thirteenth Report. Doc. 781. The EFIT Stipulated Order requires the City to establish an EFIT to guide and direct APD's Internal Affairs Force Division (IAFD) in investigating Level 2 and Level 3 uses of force[1] by APD officers and improving the quality of APD's force investigations. *Id.* at 1. Paragraph 26 of the EFIT Stipulated Order prescribes a 60-day timeline for the EFIT and IAFD to complete force investigations after receiving on-scene investigation materials[2] and requires the EFIT and IAFD to then prepare a joint investigative report, consistent with the requirements of the Second Amended and Restated Court-Approved Settlement Agreement (CASA), Doc. 465-1, and APD policy. Doc. 720 at 8–9.

On July 16, 2021, the EFIT began responding with IAFD to Level 2 and Level 3 use of force incidents. To date, the EFIT and IAFD have successfully completed 42 investigations of

---

[1] Paragraph 48.b. of the CASA defines a Level 2 use of force as "force that causes injury, could reasonably be expected to cause injury, or results in a complaint of injury. Level 2 force includes use of an ECW, including where an ECW is fired at a subject but misses; use of a beanbag shotgun or 40 millimeter launcher, including where it is fired at a subject but misses; OC Spray application; empty hand techniques (i.e., strikes, kicks, takedowns, distraction techniques, or leg sweeps); and strikes with impact weapons, except strikes to the head, neck, or throat, which would be considered a Level 3 use of force." Doc. 465-1 at 23–24.

Paragraph 48.c. of the CASA defines a Level 3 use of force as "force that results in, or could reasonably result in, serious physical injury, hospitalization, or death. Level 3 force includes all lethal force; critical firearms discharges; all head, neck, and throat strikes with an object; neck holds; canine bites; three or more uses of an ECW on an individual during a single interaction regardless of mode or duration or an ECW application for longer than 15 seconds, whether continuous or consecutive; four or more strikes with a baton; any strike, blow, kick, ECW application, or similar use of force against a handcuffed subject; and uses of force resulting in a loss of consciousness." *Id.* at 24.

[2] Paragraph 191 of the CASA requires IA administrative investigations to be completed within 90 days of the initiation of the complaint investigation with a possible 30-day extension if approved by the Chief of Police. Doc. 465-1 at 64–65. The EFIT Stipulated Order reduces the investigative timeline for IAFD force investigations to 60 days to facilitate more efficient and effective force investigations by IAFD under the mentorship of the EFIT.

2

Level 2 and Level 3 force incidents within the prescribed 60-day period. However, on October 8 and 13, 2021, the EFIT informed the Parties that two force investigations (one Level 2 and one Level 3) would not be completed within the 60-day timeline. The EFIT and IAFD requested an additional 30 days to complete these investigations. The Parties agree that these extensions are warranted based on the particular facts of these two investigations, which are described in an October 18, 2021 Letter Agreement between the Parties.[3]

The Parties have ensured that the EFIT and IAFD understand that the extensions for completing these two investigations are extraordinary measures agreed to by the Parties and approved by the Independent Monitor only as the result of particular circumstances described in the Letter Agreement that were unanticipated by the Parties when they negotiated the EFIT Stipulated Order. The extensions of time are reasonably tailored to the needs and consistent with the 90-day deadline imposed by Paragraph 191 of the CASA. Doc. 465-1 at 64–65. The Parties informed the EFIT and IAFD that they will not agree to similar extensions prospectively absent similar extenuating circumstances.

For the foregoing reasons and as more specifically set forth in the Letter Agreement, the United States and the City have agreed to extend by 30 days the 60-day timeline in Paragraph 26 of the EFIT Stipulated Order for completing the investigations of the two force incidents. The Independent Monitor approves these two extensions and Intervenor APOA consents to the extensions.

---

[3] The Parties will make the Letter Agreement, which contains non-public investigative information and other information not subject to public disclosure, available to the Court *in camera* upon request.

Respectfully submitted this 20th day of October 2021,

Plaintiff UNITED STATES OF AMERICA:

FRED J. FEDERICI
Acting United States Attorney
District of New Mexico

*/s/ Elizabeth M. Martinez October 20, 2021*
ELIZABETH M. MARTINEZ
Assistant United States Attorney
U.S. Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque, NM  87103
Telephone: (505) 346-7274
Email: Elizabeth.Martinez@usdoj.gov

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
Special Litigation Section
PAUL KILLEBREW
Special Counsel
COREY M. SANDERS
PATRICK KENT
JARED D. HAGER
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC  20530
Telephone: (202) 305-3229
Paul.killebrew@usdoj.gov
Corey.Sanders@usdoj.gov
Patrick.Kent@usdoj.gov
Jared.hager2@usdoj.gov

*Attorneys for Plaintiff United States of America*

Defendant CITY OF ALBUQUERQUE:

ESTEBAN AGUILAR, JR.
CITY ATTORNEY

*Electronically approved October 20, 2021*
CARLOS PACHECO
Senior Managing City Attorney
TREVOR RIGLER
Assistant City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
cpacheco@cabq.gov
trigler@cabq.gov

*Attorneys for Defendant City of Albuquerque*

CONSENT BY:

Intervenor ALBUQUERQUE POLICE OFFICERS' ASSOCIATION:

SANCHEZ, MOWRER & DESIDERIO, P.C.            THE D'AMATO LAW FIRM, P.C.

*Electronically approved October 20, 2021*
FREDERICK M. MOWRER, Esq.                    JOHN JAMES D'AMATO, JR.
P.O. Box 1966                                1112 Second Street N.W.
Albuquerque, NM 87103                        Albuquerque, NM 87102
(505) 247-4321                               (505) 246-0045

*Attorneys for Intervenor Albuquerque Police Officers' Association*


APPROVED BY:

INDEPENDENT MONITOR
JAMED D. GINGER, Ph.D.


*Electronically approved October 20, 2021*
JAMES D. GINGER, Ph.D.
Public Management Resources, Inc.
6877 Francis Marion Road
Pamplico, SC 29583
Telephone: (843) 493-6293
pmrinc@mac.com


## CERTIFICATE OF SERVICE

I hereby certify that on October 20, 2021, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

/s/ Elizabeth M. Martinez
ELIZABETH M. MARTINEZ
Assistant U.S. Attorney

# EXHIBIT

# F

DLG Consulting & Advisory Services, LLC
Methodology for Albuquerque Police Department
Use of Force – Backlog Investigations

Darryl S. Neier, EFIT Administrator
April 27, 2022    *DSN*

Background

On March 21, 2022, the United States District Court for the District of New Mexico (the "Court") granted a joint motion filed by the United States Department of Justice ("DOJ") and the City of Albuquerque ("City"), with the concurrence of the Independent Monitor ("IM"), by entering an Amended Stipulated Order Establishing an External Force Investigation Team ("Amended Stipulated Order") in the case *United States v. City of Albuquerque*, No. CIV. 14-1025 JB\SMV (Doc. 906). The Amended Stipulated Order modifies and supersedes the Stipulated Order Establishing an External Force Investigation Team that the Court entered on February 26, 2021 ( Doc. 720).

The Original Stipulated Order required the City to establish, on a temporary basis, an External Force Investigation Team ("EFIT") to assist the Albuquerque Police Department ("APD") in conducting investigations of Level 2 and Level 3 uses of force by APD officers and improve the quality of force investigations conducted by APD's Internal Affairs Force Division ("IAFD"). The Original Stipulated Order also required the City to improve APD's internal affairs processes, maintain an increased number of IAFD investigators and provide additional training to IAFD investigators.

The Amended Stipulated Order restates many of the Original Order's requirements and supplements them in two ways. First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part ("Backlog Force Cases"), in violation of the Court Approved Settlement Agreement ("CASA"), Doc. 465-1. Second, the Amended Stipulated Order extends by 24 months, from May 2022 through May 2024, the period during which the City shall continue to engage EFIT to assist IAFD to investigate new Level 2 and Level 3 use-of-force incidents ("New Force Cases").

Exhibit 1: Scope of Work to Remedy the Backlog Force Cases ("SOW") to the Amended Stipulated Order (Doc. 906, Ex. 1 at 1-2, Para. 6) provides:

> *"The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases. The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it. The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor."*

2

**DLG** CONSULTING & ADVISORY SERVICES, LLC

7073 Edison Place, Palm Beach Gardens, FL 33418
Phone: 201-841-1776

Based on the data received from APD pursuant to the Amended Stipulated Order, the EFIT Executive Team ("EET") determined that between January 19, 2020, and July 14, 2021, a total 655 cases (2,537 UOF incidents) were not investigated by APD. In addition, of those, 12 UOF cases were either completed and/or were in the review process for a total of 667 cases[1].  In order to comply with the Amended Stipulated Order (Doc. 906), the EFIT Administrator has identified/interviewed, and anticipates hiring six investigators and two supervisors who are highly experienced professionals to work with the three members of the current EET to makeup the EFIT 2 "Backlog" Team.

EFIT and APD agreed to utilize three categories of cases for reporting, tracking and statistical purposes. The categories are: Inactive, Active, and Completed.[2] Currently, all backlog cases had the status changed in IAPro to now reflect a status of Inactive. Additionally, data was provided indicating the status of involved Officer(s) with APD (e.g., dates of hire and, if applicable, dates of separation).

The methodology, once approved, along with the SOW (attached), will guide EFIT's process of investigating the Backlog Force Cases.

## Methodology

This methodology statement, along with the SOW will guide the assignment of the backlog cases to the EFIT 2 Investigators for investigation and reporting.

With assistance from APD's Accountability Bureau, the EET obtained an Excel spreadsheet containing the data of all the Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906). Additionally, the EET worked with members of the Accountability Bureau and agreed that APD will develop a dashboard that is similar to the current IAFD case tracking and management dashboard, stratifying the data readability that will be distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboard will be developed by June 1, 2022, by APD's new Data Analytics Division and tested by the EET prior to use.

The EET conducted a number of meetings with APD's Accountability Bureau, including the Compliance and Oversight Division and the newly created Data Analytics Division who will also assist calculating normative thresholds for UOF to identify the Officer(s) who utilize UOF over the expected incident rate and are thus considered High Incident Officers.

---

[1] Three Backlog Force Cases have already been presented to the Force Review Board ("FRB").
[2] Inactive – unassigned backlog case; Active – a UOF investigation assigned for an investigation; Completed – a Backlog Force Case that has been closed by the EET.

**DLG** CONSULTING & ADVISORY SERVICES, LLC

7073 Edison Place, Palm Beach Gardens, FL 33418
Phone: 201-841-1776

The early intervention thresholds currently used by APD compare all Officers assigned to an area command shift to a threshold calculated for all Officers assigned to the shift. The Performance Evaluation and Management System Section ("PEMS") analysts found that shift was a better predictor of force for patrol officers than area command assignments. The threshold is set to identify the top 10% of officers who use force relative to the number of calls for service. Additionally, this model will be applied to specialized units to identify thresholds for those units compared to all other Officers in the unit.

Once the data is reviewed by the EET, the EET will use the expected incident rate of the involved Officer(s) to find those that significantly deviate from expectation, who will be labeled a "High-Incident Officer."

The EET will assign Backlog Force Cases according to the following prioritization levels –

1. Officer Involved Shootings (regardless of the backlog year)[3]
2. High-Incident Officer (regardless of the backlog year)[4]
3. Ad-Hoc (regardless of the backlog year)[5]
4. K-9 apprehension(s) and bite(s) other than a Tactical Activation
5. Tactical Activation and any associated UOF
6. Applications[6] of an ECW
7. Level 3 UOF
8. Level 2 UOF
9. UOF of Officer(s) who separated from APD (except if the force is in the prioritization levels 1-5)[7]

Once the Backlog Team completes investigations of the Backlog Force Cases in prioritization tiers 1, 2, and 3 the EET will assign the Backlog Force Cases in tiers 4-9 within tiers 4-9, EFIT will prioritize force events occurring in 2020[8], then assign force events occurring in 2021.

---

[3] 4 OIS (2020) and 3 OIS (2021).
[4] The EET will assign all Backlog Force Cases involving a High-Incident Officer to one Backlog Team Investigator who will review all the associated Backlog Force Cases involving the officer to determine if a patten or practice arises and issue a consolidated report with the findings for all of that officers' Backlog Force Cases.
[5] At the discretion of EFIT.
[6] According to the CASA (Doc. 465, Para. 12) "*ECW application means the contact and delivery of an electrical impulse to a subject with an Electronic Control Weapon.*"
[7] If the separated officer was involved in a UOF with other Officer(s) still employed by APD, the case will be investigated at a higher prioritization tier.
[8] SOW, Para. 8.

7073 Edison Place, Palm Beach Gardens, FL 33418
Phone: 201-841-1776

**DLG** CONSULTING &
ADVISORY SERVICES, LLC

Once the EET assigns case(s) to a Backlog Team Investigator the case will be deemed active in IAPro. The Backlog Team Investigator will follow the SOW:

*Para. 9 – "For each use-of-force incident, the EFIT Backlog Team investigators shall develop an appropriate investigative plan with input from their respective supervisors, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 31–40. An appropriate investigative plan will vary depending on the use-of-force incident and the available evidence. However, unless variance is granted by the EFIT Executive Team, an appropriate investigative plan will include, but is not limited to, the following minimum requirements:*

> *a. Evaluating APD's on-scene investigation, if any, using as guidance the revised IAFD process narrative, Doc. 862-1, ¶¶ 1–30, however, the plan shall incorporate the IAFD process narrative as it relates to potential criminal conduct, id., ¶ 17*

> *b. Reviewing available documentary evidence, including but not limited to, use- of-force narratives, OBRD recordings[9], and recorded witness statements; and*

> *c. Conducting appropriate interviews of involved officers, witness officers, and, if necessary, civilian witnesses. The EFIT will have discretion to decide whether interviews will be conducted in person or remotely, by Zoom."*

*Para. 10 – "EFIT Backlog Team investigators will prepare a narrative report[10] for each case that, at a minimum, identifies the data reviewed, evaluates the use-of-force incident, and recommends a finding for whether each application of force complied with APD policy. Investigators will identify training, equipment, or policy concerns arising from the use-of-force incident. Investigators will also identify other substantial APD policy violations related to the use of force that they become aware of during an investigation."*

The EET is aware that 12 Backlog Force Cases were investigated by IAFD and are in some process of review with three of the cases already presented to the FRB. For these cases, EFIT Backlog Team Supervisors will conduct an "over the top review". Once completed, these cases will be reviewed by a member(s) of the EET for a determination of completeness and closeout. If the investigation is deemed to be insufficient, the EET will reassign the case for a full investigation by a Backlog Team Investigator.

Upon completion of a Backlog Force Case investigation, a supervisory review process as outlined in the SOW (Paras. 11-16) will be followed along with the EET reporting and close out requirements (Paras. 17 – 20). Finally, on an ongoing basis, the EET will prepare all the required reporting as outlined in the SOW (Paras. 23-25).

---

[9] The OBRD review will follow the Individual from Pre-force, the Force Incident, Post-force, Transportation and any other OBRDs determined germane to the UOF investigation.

[10] This narrative report will be the same format already utilized when EFIT assumes an investigation from IAFD.

# EXHIBIT
# G

# DLG
**CONSULTING & ADVISORY SERVICES, LLC**

7073 Ed son P ace, Pa m Beach Gardens, FL 33418
Phone: 201-841-1776

TO:         United States Department of Justice
            Independent Monitor – Dr. James Ginger
            Superintendent Victor Valdez
            Executive Director Eric Garcia - Albuquerque Police Department
            Deputy Chief Cori Lowe - Albuquerque Police Department
            Deputy Director Zak Cottrell - Albuquerque Police Department
            Deputy Director James Collins - Albuquerque Police Department
            Commander Scott Norris - Albuquerque Police Department
FROM:       EFIT Administrator Darryl S. Neier
RE:         EFIT Process Changes
DATE:       January 3, 2023

Effective January 3, 2023, the following process changes will take effect in a further effort to transition Use Of Force ("UOF") investigations back to IAFD.

The EFIT Executive Team determined that while much work and further accomplishments are needed within IAFD, EFIT's mentorship in all phases of the investigative process, coupled with the reduction of total UOF incidents requiring on scene responses, and the successes outlined in EFIT's quarterly reports filed with the Federal District Court, District of New Mexico, a change in the protocols is appropriate.

Transition Phase 1 and Phase 4 will remain the same with all the requirements as previously identified in the EFIT Transition Policy dated January 20, 2022, (Doc. 900, Exhibit D).

As for Transition Phase 2, the number of required interviews will be reduced from 10 to 5. Furthermore, the requirements regarding these interviews such as, EFIT notification, review of questions and mentorship as outlined in the EFIT Transition Policy January 20, 2022, (Doc. 900, Exhibit D) will remain the same.

Finally, as to Transition Phase 3, the required interviews and reviews as outlined in the EFIT Transition Policy dated January 20, 2022, (Doc. 900, Exhibit D) will remain the same. Specifically, EFIT will not respond to the scene with the exceptions of an OIS.

Due to these changes, the EFIT Executive Team reduced the number of EFIT Investigators per team[1] for callout and interviews and transitioned their investigators to EFIT 2 (backlog) as noted:

| EFIT 1 | | |
|---|---|---|
| **Team 1** | **Team 2** | **Team 3** |
| Super. D. ████ | Super. D. ████ | Super. D. ████ |
| Inv. R. ████ | Inv. M. ████ | Inv. C. ████ |
| Inv. K. ████ | Inv. J. ████ | Inv. C. ████ |

---

[1] In the event of a major UOF deployment or if EFIT Investigators are conducting interviews, supervisor Losey or a member of the EFIT Executive Team will respond to assist at the scene, only. Additionally, a special team will be developed once APD schedules the two-week IAFD Internal Affairs Training to respond to any UOF scene response.

1

68

**DLG** | CONSULTING & ADVISORY SERVICES, LLC

7073 Ed son P ace, Pa m Beach Gardens, FL 33418
Phone: 201-841-1776

If this process is successful, and additional graduates of the transition process continue to excel, the EFIT Executive Team will make a recommendation with timetables for full transition of UOF Investigations back to IAFD during the second quarter of 2023.

The backlog teams will be staffed as followed:

| EFIT 2 | | |
|---|---|---|
| **Team 1** | **Team 2** | **Team 3** |
| Super. R. ██████ | Super. C. ██████ | Super. C. ██████ |
| Inv. J. ████ | Inv. A. █████ | Inv. J. ███ |
| Inv. M. ████ | Inv. R. ████ | Inv. D. ███ |

The EFIT Executive Team will identify additional candidates within the first quarter of 2023 to enhance the backlog team as needed.

While the audit of the backlog cases was completed by IAFD, the EFIT Executive Team is still concerned with the lack documentation and the use of subpar verbal UOF Narratives for these cases. If the EFIT Investigator cannot make a determination of the force incident, the matter will be reviewed by the team supervisor and if the supervisor concurs, the EFIT Executive Team will temporarily move the case into a category delineated as "Insufficient Documentation for Evaluation" in an effort to expeditiously complete those cases for which there is sufficient documentation to make a determination as to force. The EFIT Executive Team will monitor this category and make a recommendation as to the investigation and/or closure of these cases at a future date.

TO:           United States Department of Justice
              Independent Monitor – Dr. James Ginger
              Superintendent Victor Valdez
              Executive Director Eric Garcia - Albuquerque Police Department
              Deputy Chief Cori Lowe - Albuquerque Police Department
              Deputy Director Zak Cottrell - Albuquerque Police Department
              Deputy Director James Collins - Albuquerque Police Department
              Commander Scott Norris - Albuquerque Police Department
FROM:       EFIT Administrator Darryl S. Neier
RE:         Transition Back To IAFD
DATE:       Updated January 3, 2023 – Original January 20, 2022 (Doc. 900 Exhibit D)

While this is a subjective determination, once an IAFD Detective/Investigator is identified by EFIT as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will review the recommendation. Only the EFIT Administrator or in his absence the Deputy Administrator will make a final determination that the IAFD Detective/Investigator may conduct interviews without direct supervision, and the following process must be followed:

1. The EFIT Administrator and/or Deputy Administrator will notify the APD Superintendent, Deputy Chief, IAFD Division Commander, the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

2. The EFIT Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

3. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

4. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in a phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief, IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

5. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss the Detective/Investigator's performance prior to advancing from each phase.

**DLG** ACCOUNTING ADVISORY SERVICES

7073 Edison Place, Palm Beach Gardens, FL 33418
Info@dlgcpa.com | 201-841-1776 | www.dlgcpa.com

<u>Phase 1 - 10 Interviews (No Changes)</u>

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent), no later than 24 hours prior to the interview, with a written interview outline and arrange a meeting with the EFIT Investigator to discuss the interview.
2. The EFIT Investigator will meet with the IAFD Detective/Investigator at least 12 hours prior to the interview to discuss the impending interview.
3. After the interview, and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

4. Within 24-hours [after the recorded interview is uploaded into Evidence.com] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator through the EFIT chain of command.
5. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator can advance to phase 2.
6. Should the EFIT Executive Team deem that a second interview be necessary, an EFIT investigator shall be involved in the interview.

<u>Phase 2 – 10 Interviews (Changed to 5 Interviews, and limited EFIT Responses)</u>

1. The IAFD Detective/Investigator will provide the EFIT Investigator (case agent) with a written interview outline no later than 24 hours before an interview.
2. After the interview, and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.
3. Within 24-hours [after the recorded interview is uploaded to Evidence.com,] the EFIT Investigator will review the recorded interview and provide a written critique to the IAFD Detective/Investigator and the EFIT chain of command.
4. This process will remain in place for a minimum of 10 interviews and until the EFIT Executive Team agrees that the IAFD Detective/Investigator is prepared to advance to phase 3.
5. Should the EFIT Executive Team deem that a second interview is necessary, an EFIT investigator shall be involved in the interview.

DLG | ACCOUNTING ADVISORY SERVICES

7073 Edison Place, Palm Beach Gardens, FL 33418
Info@dlgcpa.com | 201-841-1776 | www.dlgcpa.com

Phase 3 (2 Interviews)

1. IAFD on-call Supervisor will be contacted by the EFIT on-call Supervisor of the need to respond to a Level 2 or Level 3 UOF. Except for an OIS[1], the IAFD Detective/Investigator will respond without the direct oversight of EFIT and shall comply with all provisions of the Process Narrative.

2. The EFIT on-call Supervisor will assign the case to an EFIT Investigator who will review Blue Team and the OBRD of the IAFD Detective/Investigator within 24 hours of the Blue Team entry. The EFIT Investigator will prepare a critique of the on-scene response, to be forwarded through the chain of command to the EFIT Executive Team.

3. The IAFD Detective/Investigator will notify the EFIT Investigator at least 24 hours prior to the scheduled interview.

4. The IAFD Detective/Investigator will prepare a written interview outline and upload it into IAPro before the interview.

5. After the interview, and before the end of the current shift, the IAFD Detective/Investigator will upload the recording of the interview to Evidence.com and attach the interview link to the case in IAPro.

6. EFIT will review the interview as part of the normal course of continuing to provide investigative guidance on the use of force investigation.

7. Should the EFIT Executive Team deem that a second interview is necessary, an EFIT investigator shall be involved in the interview.

Phase 4 - (On Scene 3 Responses and limited EFIT Responses (No Changes)

1. The EFIT Executive Team will confirm that the cases the Detective/Investigator are assigned to are 95% compliant with the Process Narrative for the last two consecutive quarters. This, along with the results of the prior phases, will be a determining factor that the Detective/Investigator is ready to enter Phase 4.

2. The IAFD on-call Supervisor will be contacted by the EFIT on-call Supervisor of the need to respond to a Level 2 or Level 3 UOF. Except for an OIS[2], the IAFD Detective/Investigator will respond without the direct EFIT oversight and comply with all provisions of the Process Narrative.

---

72   [1] EFIT will continue to respond to an OIS until further notice.
[2] EFIT will continue to respond to an OIS until further notice.

3. The EFIT on-call Supervisor will assign the case to an EFIT Investigator who will review Blue Team and the OBRD of the IAFD Detective/Investigator within 24 hours of the Blue Team entry. The EFIT Investigator will prepare a critique of the case to be forwarded through the chain of command to the EFIT Executive Team.

4. Upon successful completion of three UOF responses, the EFIT Executive Team will communicate to the IAFD Commander that the IAFD Detective/Investigator can conduct UOF Investigations (other than an OIS) without direct EFIT supervision.

5. EFIT will continue to track the case through the Weekly Case Status meetings and if no concerns are raised, the case will be reviewed by the EFIT Executive Team prior to the UOF Investigation closed by IAFD.