# EXTERNAL FORCE INVESTIGATION TEAM'S (EFIT'S) SEVENTH Quarterly Report

## February 16, 2023 – May 31, 2023

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
June 1, 2023

TABLE OF CONTENTS

PAGE

TABLE OF EXHIBITS ....................................................................................2

Introduction ....................................................................................................3

Executive Summary ........................................................................................3

Background .....................................................................................................6

    Level 1 Use of Force ..............................................................................7

    Level 2 Use of Force: ............................................................................7

    Level 3 Use of Force: ............................................................................8

EFIT's Mandate .............................................................................................10

Accomplishments To Date ............................................................................14

Albuquerque Police Officers Association ("APOA") ...................................32

City Legal .....................................................................................................33

Amended Stipulated Order and Backlog Force Cases ("EFIT 2") ..............33

    EFIT's Basis and Authority .................................................................33

Upcoming Dates ...........................................................................................43

TABLE OF EXHIBITS

PAGE

Exhibit A- Interview Transition Policy – January 20, 2022 ( Doc. 900, Exhibit D) ............5

Exhibit B- Revised Process Narrative (Doc. 989) ................................................................12

Exhibit C- EFIT Process Changes – January 3, 2023 ..........................................................18

Exhibit D- Internal Affairs Force Division Handbook – May 2023 .....................................19

Exhibit E- APD Process Narrative – Revised September 8, 2021 (Doc. 862-1) ..................23

**Introduction**

1.  Please accept this seventh quarterly report of the External Force Investigation Team ("EFIT").[1]

2.  The EFIT Backlog Team ("EFIT 2" or "Backlog Team") also herein submits its fourth quarterly report at this time.

3.  For the sake of the timing and completeness of this report, the data contained herein covers February 16, 2023, to May 31, 2023, inclusive. Both EFIT and EFIT 2 will file their next quarterly report on or about September 1, 2023.

**<u>Executive Summary</u>**

4.  As of this report,[2] and cumulatively since EFIT went live in July 2021, 46 out of the 715 (6.43%) UOF investigations closed by EFIT/IAFD were found not within the APD UOF policies (this is a 0.66% decrease from what was reported in the previous quarterly report), and overall a 3.47% reduction from the first full quarter monitored by EFIT (October 1 – December 31, 2021.[3]

5.  EFIT's next quarterly report, which is to be filed with the Court on or about September 1, 2023, will continue to contain an analysis of these issues based on the findings of both APD UOF compliance and case investigative (Process Narrative) compliance.

---

[1] While the Stipulated Order Establishing EFIT (Doc. 720) and its attendant mandate *did not require* EFIT to file quarterly reports, in the interest of transparency, the EFIT Executive Team (Messrs. Neier, Hurlock and Bone), decided to prepare and file quarterly reports for EFIT. The Order establishing the EFIT Backlog Team (Doc. 906), Statement of Work ("SOW") requires that EFIT backlog team prepare and file quarterly reports. For the sake of the timing and completeness of this report, the data contained herein covers February 16, 2023, to June 1, 2023, inclusive. However, EFIT, consistent with past practices, respectfully reserves the right to amend its report if necessary.

[2] For these statistical purposes EFIT will be using May 31, 2023, as a cutoff date unless otherwise noted.

[3] See paragraphs 81 – 82 and the associated table (page 23) for a quarterly analysis.

6. While this quarterly report addresses EFIT's qualitative findings up to, and including, June 1, 2023, EFIT's statistical findings are as of May 31, 2023 (unless otherwise noted). However, the report provides a comprehensive review of EFIT's experience since inception.

7. As of May 31, 2023, EFIT and IAFD (since July 16, 2021), responded to, investigated, and/or opened or are monitoring 859[4] UOF incidents to include 30 Officer Involved Shootings ("OIS")[5] and cumulatively made 6 referrals to the Multi-Agency Task Force ("MATF")[6] for potential criminal violations (one referral was made during this quarter related to a backlog investigation, and one referral was made by IAFD on a Level 1 UOF). EFIT/IAFD completed all investigations within the 90-day time period outlined in the Amended Stipulated Order, with three exceptions that were granted extensions to complete due to various complexities.[7]

8. Since inception, EFIT assumed 13 UOF investigations, pursuant to Paragraph 23(b) of the Amended Stipulated Order. EFIT has not assumed any UOF investigations from IAFD since August 2022, and only once disagreed with IAFD's ultimate findings as outlined in its sixth quarterly report (Doc. 984 Para. 8).

---

[4] Two UOF investigations were transferred to the Internal Affairs Professional Standards Division ("IAPS") for both UOF and misconduct investigations. Other than responding to the scene, these investigations are not included in EFIT's statistics.

[5] One OIS was determined by IAFD/EFIT and the FRB, as out of APD Policy.

[6] The MATF is *an investigatory task force composed of different law enforcement agencies and prosecuting offices as established by a Memorandum of Agreement. The purpose of the MATF is to conduct criminal investigations related to critical incidents involving OISs, uses of force where criminal allegations are made and in-custody deaths* (APD SOP 1-67).

[7] Two of the closed cases involved an Officer who was involved in both cases and severely injured during the second of the two cases: an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days, respectively, and are not included in the statistical findings related to length of investigation or days to close the investigation. Additionally, during the prior reporting period an extremely complex UOF investigation was conducted that necessitated extending the mandated timelines. The parties were notified and agreed to the extension. DOJ memorialized this in a memorandum and the UOF Investigation was completed in 120 days. This case is not included in the statistical findings related to length of investigation or days to close the investigation.

9.  EFIT is pleased to report that it continues to witness a marked improvement in IAFD. Indeed, while there remains work to be done, the atmosphere within IAFD again improved substantially in this reporting period, the details of which are detailed below. (See Paras 100 - 103 below).

10. The EFIT Executive Team is also pleased to report that, pursuant to the established protocols[8] (See Exhibit. A), it is transitioning IAFD Detective/Investigators to conduct interviews without EFIT's direct supervision. As a result, 8 graduated the transition process (2 unfortunately, separating from APD) while those remaining are conducting UOF investigations with minimal EFIT oversight.  Currently 7 IAFD personnel are progressing through the Phases (See Paras. 46 - 51 below).  EFIT estimates that the remaining Detectives/Investigators currently in Phase 4 of the Transition Plan 5 will graduate by July 2023, assuming the completeness and accuracy of their UOF Investigations meet the applicable standards .

11. EFIT also noted previous concerns regarding supervision and sustainability. (See Paras. 97-99 below).  It appears that APD is taking these issues seriously and is continuing to work closely with EFIT to address them.  Specifically, EFIT works closely with IAFD Commander Norris and Deputy Director Zak Cottrell and Deputy Chief Cori Lowe to address these and other issues on a daily basis and provides transition recommendations and input as requested.

12. It is EFIT's intention that this report provides the Court with a better understanding of the successes, recommendations and failures of APD, particularly IAFD. It is EFIT's goal to teach, mentor and professionalize IAFD so that when EFIT's assignment is completed, EFIT leaves

---

[8] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

the City with a sustainable division that investigates UOF incidents in a timely, thorough and professional manner.[9]

**Background**

13. On February 26, 2021, the United States District Court for the District of New Mexico (the "Court") granted a joint motion filed by the United States Department of Justice ("DOJ") and the City of Albuquerque ("City") with the concurrence of the Independent Monitor ("IM") by entering a Stipulated Order Establishing an External Force Investigation Team ("Stipulated Order") in the case *United States v. City of Albuquerque,* No. CIV. 14-1025 JB\SMV. (Doc. 720). The Stipulated Order established EFIT and its attendant mandate. On May 2, 2021, a preliminary contract was signed between DLG, Accounting and Advisory Services ("DLG, LLC") and Albuquerque Police Department ("APD"). On June 23, 2021, the full contract was signed by DLG, LLC and the City, enabling EFIT to commence full operations on July 16, 2021.

14. On March 21, 2022, the Court granted a joint motion filed by DOJ and the City with the concurrence of the IM by entering an Amended Stipulated Order Establishing an External Force Investigation Team ("Amended Stipulated Order") (Doc. 906) (See Ex. B). The Amended Stipulated Order modifies and supersedes the Stipulated Order previously entered by the Court ( Doc. 720).

15. The Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways. First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part

---

[9] For extensive background information on the EFIT Executive and the EFIT Investigatory Teams please see EFIT's First Quarterly Report dated October 16, 2021. (Doc. 873).

("Backlog Force Cases"), in violation of the Court Approved Settlement Agreement ("CASA") (Doc. 465-1)[10]. Second, the Amended Stipulated Order extends by 24 months,[11] from May 2022 through May 2024, the period during which the City shall continue to engage EFIT to assist IAFD to investigate new Level 2 and Level 3 use-of-force incidents ("New Force Cases").

16. Classifications of Force[12] that EFIT works within are enumerated in the APD UOF Policies. (See Paras. 95 - 96 below).

17. **Level 1 Use of Force:** Any use of force that is likely to cause only temporary pain, disorientation, and/or discomfort during its application as a means of gaining compliance; or any show of force.

    a. Any Level 1 use of force against an individual in handcuffs remains a Level 1 use of force.

18. **Level 2 Use of Force:** Any use of force that causes injury, that could reasonably be expected to cause injury, or that results in a complaint of injury greater than temporary pain, regardless of whether the use of force was unintentional or unavoidable. A Level 2 use of force includes:

    a. Discharge of an ECW, including where an ECW is fired at an individual but misses;

    b. Use of a beanbag shotgun or 40-millimeter impact launcher, including when it is fired at an individual but misses;

        i. The use of a 40-millimeter impact launcher as a tool to defeat a window of a commercial or residential structure or a window of an occupied

---

[10] For extensive background information on the EFIT 2 Executive and EFIT 1 Investigatory Teams please see EFIT's Fourth Quarterly Report dated August 23, 2022 (Doc. 942).

[11] Or until the mission of EFIT 1 and EFIT 2 are fulfilled, whichever is earlier.

[12] APD SOP Procedural Order 2-53 - Revised on January 26, 2023, https://www.cabq.gov/police/standard-operating-procedures/standard-operating-procedures-manual.

vehicle or another type of barrier will not be investigated as a use of force unless it strikes an individual.

c. Use of oleoresin capsicum ("OC") spray, including when it is sprayed at an individual but misses;

d. Use of empty-hand techniques that result in injury or complaint of injury (e.g., strikes, kicks, takedowns or leg sweeps);

e. Strikes and attempted strikes with impact weapons;

    i. This excludes strikes to the head, neck, throat, chest, or groin, with a beanbag shotgun or 40-millimeter impact launcher and strikes to the head, neck, throat, chest, or groin with a baton or improvised impact weapon, which are considered deadly force.

f. Deployment of a noise flash diversionary device ("NFDD") inside a structure;

    i. If an NFDD is deployed outside of a structure or outside an enclosed vehicle and is used as a means to gain the attention of an individual, it will not be considered a use of force.

g. Use of a horse rein strike on an individual's extremities; and

h. Use of the Precision Immobilization Technique ("PIT") maneuver at 35 mph or below.

19. **Level 3 Use of Force:** Any use of force that results in, or could reasonably result in, serious physical injury, hospitalization, or death, regardless of whether the use of force was unintentional or unavoidable. Level 3 use of force includes:

a. Use of deadly force;

b. Critical firearm discharge;

c. Force resulting in hospitalization, serious medical episode, loss of consciousness, and/or a seizure;

d. Police service dog ("PSD") directed bite;

e. Three (3) or more ECW discharges on an individual during a single interaction, regardless of the mode or duration of the discharge, and regardless of whether the discharges are by the same or different officers;

f. An ECW discharge on an individual during a single interaction

for longer than fifteen (15) seconds, whether continuous or consecutive, regardless of the mode of discharge;

   g.  Four (4) or more strikes with a baton or improvised impact weapon;

   h.  Any Level 2 use of force against a handcuffed individual;

   i.  Use of the PIT maneuver thirty-five (35) mph or below that results in, or could reasonably result in, serious physical injury, hospitalization, or death; and

   j.  Use of the PIT maneuver above thirty-five (35) mph.

20. EFIT's full contract was presented to, and approved by, the City Council on May 16, 2022. On May 17, 2022, the City filed a Notice with the Court regarding the status of funding to effectuate the Amended EFIT Stipulated Order and the subsequent funding for EFIT 2. (Doc. 913).

21. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond to all call outs within one hour of notification. All Use of Force ("UOF") investigations must be completed within 60 days with an additional 30-day supervisory review period for a total of 90 days from start to finish. Pursuant to the Amended Stipulated Order, EFIT must conduct joint investigations with APD IAFD of all Level 2 and Level 3 UOF incidents – this includes all Tactical Deployments where UOF is utilized. EFIT must also assist APD with training concerning the UOF investigations.

22. The EFIT Executive Team worked with APD IAFD to establish a detailed IA Investigative Process Narrative[13] that governs the response protocols to any Level 2 and 3 UOF cases.[14] These documents, and the procedures for an IAFD/EFIT investigation, are the basis for EFIT

---

[13] As required by Paragraph 14 of the Stipulated Order (Doc. 720 at 5), the Process Narrative was filed with the Court on July 12, 2021 (Doc. 839-1).

[14] A revised Process Narrative was filed on September 27, 2021 (Doc. 862-1).

to evaluate IAFD. EFIT filed with the Court an amended and revised Process Narrative that reflected the new UOF Policies[15] effective date January 26, 2023. (Doc. 989).

23. EFIT presented the Fifth Quarterly Report summary at a status conference on December 6, 2022, to the Court and all parties (Doc. 973).

24. Pursuant to the Amended Stipulated Order the City drafted a contract for EFIT to establish a secondary team ("EFIT 2") to investigate and address the 667 backlog cases.[16] EFIT 2 commenced work on June 20, 2022, to address the backlog cases pursuant to the relevant paragraphs of the Amended Stipulated Order (Doc. 906). (See Paras. 131- 132 below).

25. EFIT established a detailed procedure for first addressing the most serious cases (OISs, Officers involved in multiple uses of force) once it commenced operations. At this point, EFIT _ completed all OIS investigations and presented its findings to the APD FRB. To date, out of 181 Backlog Cases fully investigated, EFIT 2 has deemed a total of 12 UOF cases out of policy. To date, the FRB disagreed with 3 of the 12 EFIT backlog conclusions, voting that the UOF was within APD Policy (See Para. 128 below).

26. The City Council extended the funding for both EFIT 1 and EFIT 2 (Backlog team) until May 2024.

**EFIT's Mandate**

27. The Stipulated Order established the EFIT and its mandate. Based on discussions with the City, and to comply with the Amended Stipulated Order, EFIT 1's contract was extended and funded up to and including May 2024.

---

[15] APD SOP Procedural Order 2-52 through 2- 57 - Revised on January 26, 2023, https://www.cabq.gov/police/standard-operating-procedures/standard-operating-procedures-manual
[16] Within the 667 backlog cases there are a total of 2,537 incidents when various levels of force were applied to an individual.

28. As stated previously, EFIT 1 derives its authority and jurisdiction from the Stipulated Order (Doc. 720) superseded by the Amended Stipulated Order (Doc. 906), Process Narratives (July 12, 2021, revised September 8, 2021) filed with the Court on July 16, 2021 (Doc. 839-1) and September 27, 2021 (Doc. 862-1), respectively (Exs. C & D).

29. Pursuant to the relevant documents, EFIT and IAFD are on call 24/7 and must respond within one hour of notification. EFIT ensures that the IAFD investigations are high quality, thorough and impartial. All UOF investigations must be completed within 60 days and a 30-day supervisory review period for a total of 90 days from start to finish. Provisions are in place if an extension of these timelines is needed for extenuating circumstances, such as an inability to interview an officer sustaining serious injuries due to an OIS and/or a complex investigation.[17]

30. The Amended Stipulated Order (Doc. 906 at Para. 12), and the Stipulated Order before it (Doc. 720 at Para. 12), establish the staffing levels for the APD IAFD. As of this reporting period, IAFD did not fall below the minimum staffing level. IAFD must be staffed with 25 Detectives/Investigators.[18] Currently IAFD has 21 civilian Investigators[19] and 7 Detectives. (See Paras. 104 & 105 below).

31. APD's most recent Quarterly Report on the Remedial Action Plan (Doc. 985) for IAFD, filed with the Court on March 8, 2023, recognized that EFIT is contributing to improvements in the IAFD process. Ultimately, the goal is for EFIT to return responsibility back to APD for UOF

---

[17] On October 20, 2021, a Notice was filed with the Court (Doc. 864) due to an OIS delaying the completion of two investigations. Additionally, a complex investigation required an agreement among the parties to extend the mandated time frame issued a memorandum to capture same. (Exhibit E).

[18] For the purpose of this report, the term "Detective" equates to sworn APD personnel and "Investigator" is used for civilians conducting UOF investigations.

[19] Training of IAFD takes approximately 3 to 4 weeks for sworn personnel to over 2 months for civilians resulting in operational effectiveness (currently 2 are in training).

investigations and this report will detail the transition process with the goal to transfer the current UOF Investigations without any EFIT oversite by January 1, 2024 (See Paras. 46 & 49 below).

32. As stated previously, the EFIT Executive Team worked with APD to establish a detailed Process Narrative that governs the response protocols to Level 2 and 3 UOF cases. EFIT and APD continue to review this document to ensure that it is serving the interests of the assignment and  made modifications, as necessary. Any modification is reviewed by the City Attorney's Office, DOJ and the IM. A revised Process Narrative was filed with the Court on April 21, 2023, (Doc. 989) and serves as the working procedure that IAFD/EFIT follows and the basis for EFIT to evaluate IAFD (Exhibit B), however, implementation is contingent on the Court approving the Court Approved Settlement Agreement ("CASA") modifications previously filed.

33. Once filed, the Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators. During this reporting period IAFD achieved a 100% rating in complying with the Process Narrative (See Paras. 36, 79-80 below).

34. Cases that are fully investigated by IAFD/EFIT are reviewed by the EFIT Team Supervisor, and forwarded to the IAFD Sergeant for their review.  The IAFD Sergeant determines if the force is within APD policy and forwards it for an IAFD Command review. It is after the Command level review that the EFIT Executive Team reviews the UOF determination and recommends closing a case when appropriate.

35. Provisions were written into the Amended Stipulated Order should EFIT need to assume full responsibility of an investigation or disagree with IAFD's investigative findings.  In this reporting period EFIT did not assume any UOF investigation, pursuant to Paragraph 23(b) of

the Amended Stipulated Order, and it should be noted, as previously reported, that EFIT has not assumed an investigation since August 2022.

36. Finally, the Process Narrative also outlines the protocol IAFD and EFIT must take if a UOF might subject an APD Officer to criminal liability. (Doc. 989 at Para. 18.) EFIT/IAFD made 6 such referrals as a result of the type of force utilized since EFIT's inception. While MATF will investigate these matters for criminal liability, IAFD/EFIT will continue the UOF investigation and IAFD will review the case for any misconduct by the Officers.[20] EFIT made no referrals to MATF during this quarter related to a backlog UOF investigation (See Para. 129 below).

37. Closed UOF cases are presented to the Force Review Board ("FRB").[21] All Level 3 cases, tactical deployments, OIS, and 10 % of Level 2 cases are presented at FRB. Initially, EFIT had no role in the FRB process other than as an observer. However, as the cases that EFIT jointly investigated with IAFD are now at the FRB level, Mr. Neier and Mr. Hurlock believed that EFIT should have a more active role in the FRB. To that end, Mr. Neier and Mr. Hurlock met with APD, DOJ and the IM team to discuss the parameters for such participation to occur.

38. As a result, all parties agreed that EFIT may take a more active role in presentations made to the FRB. For those cases where EFIT assumed responsibility for the investigation, Mr. Neier or Mr. Hurlock will make the full presentation to the FRB. As of this reporting period, Mr. Hurlock made 1 presentation to the FRB on backlog investigations, and 1 presentation is pending by Mr. Neier.

---

[20] IAFD Investigated the UOF along with misconduct and found the UOF was out of APD UOF Policies.

[21] FRB - It is the policy of the Albuquerque Police Department (Department) *to conduct timely, comprehensive, and reliable reviews of (a) Level 2 and Level 3 use of force investigations to ensure the findings are supported by a preponderance of the evidence, and (b) tactical activations in order to analyze and critique specialized response protocols* (APD SOP 2-58) (emphasis added).

39. Moreover, for all FRB proceedings at least one member of the EFIT Executive Team attends the meetings. In addition, EFIT Team Supervisors now also attend FRB proceedings.  As of this report all UOF investigations where EFIT/IAFD conducted a joint investigation were presented to the FRB. Additionally, Mr. Neier or Mr. Hurlock present all Backlog OIS and any out of APD Policy UOF investigations closed by the EFIT Backlog Team to the FRB (as of this reporting period, 6 OIS, 1 Level 3 UOF and 5 Level 2 UOF).

40. As reported previously, EFIT remains very pleased that there is a noticeable change within IAFD (since Commander Norris assumed the command of the division) among the Detectives/Investigators. This change includes a higher degree of motivation manifesting in such things as intersquad competition concerning the EFIT Transition Plan and selection for pilot projects.

**Accomplishments To Date**

41. The EFIT Executive Team is pleased to report that, pursuant to the established protocols[22] (See Ex. A), it is transitioning IAFD Detective/Investigators to conduct interviews without EFIT's direct supervision or oversight. As a result, EFIT graduated 8 Detectives/Investigators through the transition process, 6 of whom are still with IAFD and are conducting UOF investigations with minimal EFIT oversight.

42. Again, once a Detective/Investigator is identified by an EFIT Investigator, Supervisor or Executive Team Member, as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will make a determination that the IAFD Detective/Investigator may conduct interviews and the following process will be followed:

---

[22] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

43. The EFIT Administrator and/or Deputy Administrator will notify APD Superintendent of Police Reform ("Superintendent"), IAFD Division Commander and Deputy Chief(s) (within the chain of command), along with the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

44. Mr. Bone ("Lead Supervisor") will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

45. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

46. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in the phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief(s) and IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

47. As stated above, unfortunately, 2 graduates left APD. Again, sustainability is a real concern for EFIT. Sustainability, and its attending consequences, are further addressed in this report.

48. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase. The EFIT Executive Team modified these protocols during the previous reporting period. The new protocols are listed below.

49. On January 3, 2023, the EFIT Executive Team, with notice to the DOJ, APD, and IMT, modified the training protocols as follows once an IAFD Detective/Investigator is identified

by EFIT as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will review the recommendation. Only the EFIT Administrator or in his absence the Deputy Administrator will make a final determination that the IAFD Detective/Investigator may conduct interviews without direct supervision, and, although not required by the Amended Stipulated Order, the following process must be followed pursuant to APD's agreement with EFIT:

a.  The EFIT Administrator and/or Deputy Administrator will notify the APD Superintendent, Deputy Chief, IAFD Division Commander, the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

b.  The EFIT Lead Supervisor will arrange a meeting with the IAFD Detective/Investigator and IAFD Supervisor, to inform them of the decision, review the phased approach and document the meeting.

c.  The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

d.  If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in a phase longer, or remedial action is required, the reasons will be documented and provided to the Superintendent, Deputy Chief, IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

e.  The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss the Detective/Investigator's performance prior to advancing from each phase.

50. Effective January 3, 2023, the following process changes took effect in a further effort to transition Use Of Force ("UOF") investigations back to IAFD. The EFIT Executive Team determined that while work and further accomplishments are needed within IAFD, EFIT's mentorship in all phases of the investigative process, coupled with the reduction of total UOF incidents requiring on scene responses, and the successes outlined in EFIT's quarterly reports filed with the Federal District Court, District of New Mexico, a change in the protocols is appropriate.

51. Transition Phase 1 will remain the same with all the requirements as previously identified in the EFIT Transition Policy dated January 20, 2022, (Doc. 900, Exhibit D).

52. As for Transition Phase 2, the number of required interviews will be reduced from 10 to 5. Furthermore, the requirements regarding these interviews such as, EFIT notification, review of questions and mentorship as outlined in the EFIT Transition Policy January 20, 2022, (Doc. 900, Exhibit D) will remain the same.

53. Finally, as to Transition Phase 3, the required interviews and reviews as outlined in the EFIT Transition Policy dated January 20, 2022, (Doc. 900, Exhibit D) will remain the same. Specifically, EFIT will not respond to the scene with the exceptions of an OIS.

54.  Due to these changes, the EFIT Executive Team reduced the number of EFIT Investigators per team[23] for callout and interviews and transitioned their investigators to EFIT 2 (backlog).

---

[23] In the event of a major UOF deployment or if EFIT Investigators are conducting interviews, supervisor Losey or a member of the EFIT Executive Team will respond to assist at the scene,

55. If this process is successful, and additional graduates of the transition process continue to excel, the EFIT Executive Team will make a recommendation with timetables for full transition of UOF Investigations back to IAFD.

56. As of this report, the EFIT Executive Team identified 7 Detective(s)/Investigator(s) from IAFD that advanced into the Transition Process. 0 IAFD Detective(s)/Investigator(s) are currently in Phase 1, 1 IAFD Detective(s)/Investigator(s) is currently in Phase 2, 1 IAFD Detective(s)/Investigator(s) is currently in Phase 3, and 5 IAFD Detective(s)/Investigator(s) are currently in Phase 4.

57. EFIT is pleased to report that as of the filing of this report 6 current IAFD Detective(s)/Investigator(s) graduated Phase 4, which allows them to conduct investigations *without EFIT direct supervision and oversight*.

58. EFIT issued a Memorandum of Understanding ("MOU") circulated to APD, DOJ and the IMT regarding EFIT's responsibilities once a Detective/Investigator graduates the transition plan. (Exhibit C).

59. EFIT's overall evaluation of these interviews and UOF investigations for Detectives/Investigators in the transition phases continues to remain very positive to date. The members of IAFD admitted into this process are complying with the Transition Policy and EFIT Investigators report a positive interaction.

60. Messrs. Neier, Hurlock and Bone are working closely with DOJ and APD to ascertain a total number of Detectives/Investigators that must be qualified to conduct investigations independently to provide sufficient staffing. IAFD is in the process of developing an IAFD

---

only. Additionally, a special team will be developed once APD schedules the two-week IAFD Internal Affairs Training to respond to any UOF scene response.

Investigator/Detective Training Program to facilitate the process and future sustainability once EFIT is no longer involved with IAFD. The purpose of this program is to provide a standardized and objective program to facilitate a Detective/Investigator's transition from the onboarding process to conduct use-of-force investigations. IAFD is developing qualifications for current Detectives/Investigators to participate in this program along with determining roles, responsibilities, length of the program, case management of the training investigators/detectives and assessment of new personnel.

61. Additionally, to aid in the transition process and for sustainability after the departure of EFIT, IAFD has also developed and implemented a new handbook. The handbook guides Investigators/Detectives through the investigative process. The handbook mirrors the process narrative step-by-step with a detailed Table of Contents (Exhibit D) along with exemplars of blank and completed applicable forms for a Level 2 and 3 UOF investigation.

62. The EFIT Executive Team continues to meet with all Division Field Commanders, it is important for Commanders to freely communicate concerns they are experiencing with the UOF investigative process. The EFIT Executive Team continues field visits and various Division briefings concerning EFIT, specifically any changes or modifications to the Process Narrative and relevant protocols.

63. As of the writing of this report, the EFIT Executive Team is pleased to share that it suggested several changes to the IAFD investigatory process to build upon the level of professionalism within the IAFD team and APD as a whole.

64. While certain of IAFD's accomplishments were reported in the first six EFIT Quarterly Reports filed with the Court, (Docs. 873, 900, 912, 942 and 960), EFIT Executive Team

believes it is important to reflect on the on-going process. The EFIT Executive Team addressed a number of significant issues facing APD.

65. Indeed, the current Process Narrative and associated protocols were revised on more than one occasion as the result of issues and violations of the original version. Any proposed changes are circulated to City Legal, DOJ and the IM. Comments are received and when appropriate incorporated into the Narrative and/or discussed with the relevant entities. As previously mentioned, the Process Narrative was revised to conform with the new UOF Policy and CASA amendments. (Doc. 989)

66. Additionally, EFIT Executive Team recommended certain procedural changes and Special Orders ("SOs") be issued regarding SOD Tactical Activations where the APD SOD Tactical Commander requests assistance from an outside law enforcement agency and the assisting agency utilizes force. A meeting was held with the APD, DOJ, and the IMT, and a Special Order was approved.

67. The EFIT Administrator,  and Deputy Administrator participate in compliance meetings with APD, DOJ and the IMT and also work with APD regarding the SOPs revisions and the proposed draft SOs as they relate to IAFD and/or UOF policies.

68. EFIT Executive Team constantly monitors the UOF investigation case assignments to ensure that work is distributed evenly within IAFD. This issue is crucial to ensuring that the applicable timelines are met. This issue becomes particularly acute as assignments are made between sworn Detectives and civilian Investigators.

69. The EFIT Executive Team made a number of recommendations that facilitated this process that were accepted by IAFD regarding callouts and case distribution. When EFIT observes that

this process was not followed any concerns are immediately communicated to IAFD Command.

70. Indeed, the EFIT Executive Team continues to work closely with APD on many issues including, but not limited to, call outs. It is only through this collaborative approach that EFIT can fulfill its Court ordered mandate and eventually return the IAFD investigatory function back to the Department.

71. In addition, the EFIT Executive Team continues to meet weekly with APD, DOJ, the IM and other City officials. These meetings enhance the level of communication between these parties. EFIT Executive Team firmly believes that communication is essential to fulfilling its Court ordered mandate.

72. Messrs. Neier and Hurlock participate in the IM's bi-weekly compliance meetings and participate in other compliance meetings and/or review pertinent material as requested.

73. Mr. Neier and Mr. Hurlock attend meetings of the Civilian Police Oversight Agency ("CPOA") in an effort to make representatives of EFIT's Executive Team available to the Agency upon request.

74. Mr. Neier and Mr. Hurlock continue to participate in Amici/Stakeholder meetings. At these meetings, Messrs. Neier and Hurlock provide the stakeholders with an update on EFIT and EFIT 2's efforts and field questions from the various groups.

75. Mr. Neier and Mr. Hurlock look forward to presenting to additional groups as requested so that the public can receive real time updates as to both of the EFIT entities' progress and challenges.

76. Again, the EFIT Executive Team believes that transparency with all concerned groups is essential for EFIT to fulfill its Court ordered mandate.

77. In the first Quarterly Report the EFIT Executive Team reported that Officers remained on scene for extended periods of time. While EFIT appreciates Officer safety, once a scene is secured, EFIT recommended, and APD instituted, a practice where nonessential Officers – including those Officers that did not use or witness the force event, are cleared and sent back on patrol.  This issue was addressed with Field Commanders.

78. Once on the scene, EFIT/IAFD (for this quarter, on average 14.29 minutes from notification) are briefed by a field supervisor and, if EFIT/IAFD observe Officers not involved in the UOF or not a witness to the UOF, the supervisor is instructed to clear those Officer(s) to return to service. EFIT/IAFD are fully clearing these UOF scenes, for this quarter, in an average of 15.25 minutes. EFIT is pleased to report that this positive trend continues during this reporting period.

79. Between July 16, 2021, and June 1, 2023, EFIT/IAFD responded to, and are investigating and/or monitoring, a total of 859 UOF incidents. These investigations are completed in an average of 54.16 days. In addition, 715 UOF investigations were closed,[24] averaging a total of 87.01[25] days for closure; all under the time constraints of the Amended Stipulated Order of 90-Days. Supervisor reviews average 18.56 days. Of the UOF cases closed (715), 46 UOF cases were out of APD Policy (6.43%)[26] and 149 of the 715 investigations (20.83%) failed to comply

---

[24] This includes a comprehensive EFIT Executive Team review period.

[25] The statistical findings related to length of investigation or days to close the investigation exclude 3 closed cases. Two involved an Officer who was subsequently severely injured during an OIS. These two cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days respectfully. Additionally, during a prior period an extremely complex UOF investigation was conducted that necessitated extending the mandated timelines. The parties were notified and agreed to the extension. DOJ memorialized this in a memorandum (Exhibit E) and the UOF Investigation was completed in 120 days. This case is not included in the statistical findings related to length of investigation or days to close the investigation.

[26] One of the cases transferred to IAPS was out of APD policy and is not included in the statistics of EFIT assumed cases.

with the Process Narrative. These overall numbers improved dramatically over the past three quarters. There were no violations of the Process Narrative this reporting period.

80. The Process Narrative (Doc. 862-1 and 989) that is attached to this report (Exhibit E and B) is a detailed document that guides a UOF investigation. It should be clear that only 8 of the paragraphs (12, 15 through 17, 29, 33, 34 and 38) will take an investigation out of compliance. This is not to suggest that an insufficient investigation was conducted or the UOF findings were wrong, it is a way of evaluating the IAFD Detective(s)/Investigator(s) concerning critical aspects of a thorough investigation as EFIT moves through transitioning IAFD back to APD. EFIT works closely with APD to ensure that this document is updated and adhered to in all aspects.

81. As shown by the chart below, IAFD made significant improvement in key areas since the arrival of EFIT related to the mandated timelines and compliance with the Process Narrative. APD has seen a reduction of Out of Policy UOF. When EFIT first commenced operations in July 2021, the out of policy UOF was 9.90 % in the last full quarter ending on March 31, 2023, it was dramatically reduced to 3.77 % (4 out of 113).  In the current quarter commencing April 1, 2023, only 2 of the 52 cases closed were determined out of APD policy (3.84%). Additionally, IAFD has not had a UOF Investigation violate the Process Narrative since February 2023.

| Period by Quarter | Inv. Days | Supr. Review Days | Total Days for EFIT to Close UOF[27] | Total Days for UOF Inv. To be Closed | Cases Closed | % Out of Compliance | % Out of APD UO Policy |
|---|---|---|---|---|---|---|---|
| July 16, 2021 - Sept 30, 2021 | 53.83 | | | | | | |
| Oct 1. 2021 - Dec 31, 2021 | 55.35 | 24.94 | | 88.37 | 111 | 27.02 | 9.90 |
| Jan. 1, 2022 - March 31, 2022 | 53.63 | 18.71 | 8 | 87.88 | 103 | 60.19 | 7.76 |
| April 1, 2022 – June 30, 2022 | 53.03 | 16.02 | 6 | 85.39 | 103 | 22.33 | 5.82 |
| July 1, 2022 – September 30, 2022 | 51.64 | 17.97 | 5 | 86.91 | 110 | 15.38 | 5.00 |
| October 1, 2022 – December 31, 2022 | 56.51 | 15.24 | 6 | 80.31/86.31 | 137 | 9.48 | 6.56 |
| January 1, 2023 – March 31,2022 | 54.46 | 16.71 | 5.46 | 82.01/87.56 | 113 | 1.76 | 3.77 |
| April 1, 2023 – Present | 52.45 | 12.53 | 7.36 | 79.15/86.50 | 52 | 0.00 | 3.84 |

82. During this quarterly reporting period, APD experienced: 4 OIS incidents, 0 accidental discharges, 10 tactical activations, 2 use of K9, 7 use of an ECW, and 3 use of an impact weapon.

83. Specifically, during this most recent quarter, EFIT observed and/or discovered that IAFD made a noticeable improvement with IAFD's handling of OIS and other complex investigations.

84. With the new UOF policies issued on January 25, 2023, APD commenced training the entire police department on April 11, 2023. It is anticipated that this department-wide training will be completed by July 2023. Day one of the two-day training session, attendees are provided classroom instruction on the new UOF policies and in groups work through scenarios based on actual UOF cases. On day two, the attendees review Reality Based Training ("RBT") live scenarios. This is a big step to ensuring continuity in understanding the new UOF policies and how IAFD/IAPS will conduct investigations going forward when EFIT is finished. All EFIT personnel completed this two-day training.

---

[27] EFIT conducts a comprehensive review prior to closure to ensure that a case was sufficiently investigated and reviewed.

85. EFIT successfully transitioned to IAFD the bi-weekly case status meetings and the task of tracking cases at all intervals. These meetings are now conducted by an IAFD Lieutenant with Mr. Bone in attendance as an observer. If any concerns arise regarding investigative obstacles, case prioritization and allocation of resources, they are addressed with Detectives/Investigators

86. and Supervisors immediately and, if necessary, with IAFD Command at the conclusion of the meeting.

87. EFIT Investigators and Supervisors continue to oversee all cases to include review of onsite work, interviews and reporting. EFIT is constantly evaluating IAFD Detectives, Investigators, Supervisors and the IAFD as a whole except for EFIT Graduates[28]. To that end, the EFIT Executive Team conducts weekly meetings with APD/IAFD Command Staff to facilitate the transition process.

88. The EFIT Executive Team continues to utilize the evaluation rubric (previously approved by the IM and DOJ). This is a valuable tool to evaluate IAFD and relevant personnel pursuant to the Amended Stipulated Order, (Doc. 906 at Para. 33). The EFIT Executive Team implemented this process for *each* investigation conducted by IAFD and EFIT commencing on or after September 7, 2021.

89. The rubric was updated as of December 1, 2021. While it continues to contain approximately forty-five areas where IAFD personnel are evaluated, and closely tracks the Process Narrative, there are now eight enumerated categories where an individual must pass or be considered failing. A Detective/Investigator must still attain a 95% proficiency rating, for two consecutive terms, before they are deemed proficient to conduct interviews outside of the presence of an

---

[28] A UOF Investigation competed by an EFIT Graduate is reviewed by the EFIT Executive Team after the Command Review and prior to final closeout.

EFIT Investigator.  As reported previously, EFIT has not identified any violations of the Process Narrative since February 2023.

90. The EFIT Executive Team is pleased to report that the IAFD supervisory meetings for the entire IAFD department, under Commander Norris' leadership have enhanced communications and captured attendant efficiencies. EFIT has, and will continue to, attend these meetings. Additionally, IAFD continues to implement the weekly on-call briefings. These briefings occur the day before the new on-call rotation occurs to ensure the on-call personnel is adhering to the on-scene investigative steps as outlined in the process narrative.

91. A pilot project was approved by the IMT and DOJ that the EFIT Executive Team and IAFD Command established together, to enhance supervision. The pilot project was a success and was made a permanent process within IAFD on October 17, 2022.

92. IAFD supervisors are required to develop and follow an investigative plan pursuant to the Process Narrative, to ensure they meet specific deadlines, assist in organization, and ensure the investigation adheres to the process narrative.  This is used as a self-management control for the Detectives/Investigators, and management control for the Supervisors.  This responsibility currently falls on the Sergeant to develop the plan with the Detective/Supervisor with input from EFIT at the required 72-hour meeting.

93. Under this change, the first line Supervisors provide the completed investigative plan, setting timelines, goals and objectives for the Detective/Investigator and ensure they are now followed.

94. This change allowed the Supervisor to become intimately involved with the investigation and execute necessary corrections in real-time instead of at or after the conclusion of the investigation.  Additionally, this shortens the time needed for the supervisory review,

minimizes after-the-fact corrections and requests for extensions, and promotes closer supervision and oversight.

95. With the success of the investigative plan and first line Supervisors reviews, the process was again modified. The goal with the modified investigative plan was to compress the time taken for first-line supervisors to complete their reviews.  While the new investigative plan helped with this, IAFD and EFIT identified another issue in the way first-line supervisors were documenting their reviews. They continued to document their reviews in a way that was repeating the investigation.  This redundancy and duplication of work were compromising the efficiency of the division and taking away from the first-line supervisor's ability to be more closely involved in the investigation.  It is important to note that the review process has not changed, and the original intent of the modified investigative plan was to be utilized as a real-time supervisory review.  To fully accomplish this, IAFD has recently changed the first-line supervisory review form by compressing the narrative portion, adding it to the end of the investigative plan, and focusing on specific tasks to ensure the accuracy, completeness, and thoroughness of the investigation.

96. EFIT assisted IAFD Command in the development of a Command Initiated Assessment to capture issues specifically related to performance measures in IAFD investigations and reviews. This is an essential part of an effective transition from EFIT oversight to IAFD, ensuring compliance and that UOF investigations are conducted at the highest standard.

97. An evaluative rubric, as a quantitative analysis, assists all investigators and all levels of IAFD supervisors to ensure accurate, complete, and thorough investigations.  The rubric consists of different levels of criteria, including, but not limited to; deficient investigations, deficient reviews, missed timelines, interviews, critical writing (boilerplate/canned language, legal

justifications, and conclusory statements), force classification, identification of force, evidence collection, follow-up measures and identifying/interviewing witnesses. These criteria are weighed/scored by a point value rubric based on critical aspects of the investigation and review. This rubric includes failure to meet specific criteria which would affect the validity of the investigation's findings. An accumulation of (10) ten points will deem the investigation or review deficient. A total of (2) two or more deficient investigations or reviews will trigger a command-initiated assessment, followed by appropriate corrective and/or disciplinary action.

98. Additionally, since Commander Norris assumed command of IAFD, the use of roundtable discussions on all complex investigations (including EFIT and Internal Affairs Professional Standards ("IAPS") personnel) and enhanced approved training opportunities, not offered in the past by the APD Training Academy, enhanced the skill set for Detectives/Investigators assigned to IAFD and IAPS. These include, but are not limited to, legal block, reality-based training ("RBT") and training by specialized divisions. EFIT supports this training and will also participate when appropriate.

99. Communication at all levels within IAFD and the APD Police Reform Bureau dramatically improved over the last quarter. This includes, but is not limited to: bi-weekly meetings with Executive Director Garcia, Deputy Director Cottrell, Deputy Director Collins, Commander Norris and EFIT Executives; weekly status meetings between IAFD Command Staff and EFIT Executives; roundtables and weekly briefings on high profile and/or sensitive investigations; coordination between IAFD and IAPS; and joint APD training opportunities for IAFD and EFIT investigators.

100.    EFIT has suggested that additional communication changes be made within the next few months to facilitate the transition of EFIT oversight to IAFD. These include a modification to

the BlueTeam UOF notification and assuming the responsibility of the Weekly Report sent to the DOJ, IMT and various members of APD.

101.    While there have been numerous notable and important changes during this reporting period, sustainability of trained IAFD Detectives/Investigators continues to be one of the EFIT Executive Team's main concerns related to the eventual transfer of responsibility from EFIT to APD for conducting timely, thorough and complete investigations of Level 2 and Level 3 UOFs. Specifically, this is a concern as individual IAFD Detectives/Investigators and Supervisors meet the qualifications identified in Paragraph 34 of the Amended Stipulated Order. (Doc. 906).

102.    This is especially so when promotions or requests for transfer of senior sworn personnel occur and a bid is announced. The loss of these trained personnel is serious. In the past, fully graduated Investigators/Detectives left IAFD after completing the EFIT training program. EFIT cannot stress enough that this serious issue continues and must be addressed by APD, the City and APOA.

103.    As EFIT previously expressed concerns, APD committed to over-staffing the civilian investigators in IAFD. However, based on best practices and Mr. Neier's experience,  a well-functioning IAFD needs both sworn and civilian personnel.

104.    Efforts have been made related to the sustainability of civilian Investigators. Due to the efforts of the APD Police Reform Bureau (specifically Deputy Director Cottrell who took the lead), civilian Investigators are classified employees. By becoming classified employees, it will afford them stability, salary increases and additional parity with sworn employees of IAFD.

105.    As of May 31, 2023, IAFD is currently staffed as follows:

7 Sworn fully trained;

0  Sworn on leave;

6 Sworn Vacancies;

19 Civilian Investigators fully trained;

2 Civilian Investigators in training;

4 Sergeants;

1 Acting Sergeant;

1 Lieutenant;

3 Deputy Commanders;

1 Acting Deputy Commander; and

5 Support personnel.

106.    EFIT, IAFD Command and APD Command staff continue to discuss various ways that will not impact the APOA CBA to incentivize IAFD members. Additionally, the DOJ and EFIT executives continue to conduct meetings with APOA to discuss various issues, including but not limited to, the sustainability of IAFD.

107.    During this reporting period an IAFD Detective (assigned to the division on February 27, 2021), was promoted (March 11, 2023) and finished his on-the-job job training ("OJT") for new Sergeants on April 7, 2023. The Sergeant (a highly valued member of IAFD) requested a TDY back to IAFD for an open Sergeant position, pending the testing process. Inexplicably, the Sergeant's TDY request was denied by an Area Commander.

108.    Ultimately, after three weeks of discussion and the intervention of the APD Executive Staff, specifically Mr. Neier, through discussions with Chief Medina and Deputy Chief Lowe, the Sergeant was finally transferred back (not a TDY) to IAFD on April 29, 2023. However,

this transfer took an inordinate amount of time to occur.

109.  On May 20, 2023, a current Acting Sergeant, and a member of IAFD since February 25, 2021, was promoted to finish his on-the-job training ("OJT") for new Sergeants. EFIT recommends that this Acting Sergeant (another highly valued member of IAFD) once his OJT is completed, should immediately be transferred back to reassume his duties as a first line supervisor of his team of Detectives/Investigators.

110.  EFIT is sympathetic to the needs of the Field Division and the need for qualified Sergeants. However, IAFD and APD are in the final stages of becoming in Operational Compliance with the CASA. IAFD cannot reach that level of compliance until they can transition to sustainability, without EFIT oversight. These first line supervisors, and other IAFD Command Staff are an integral part of the transition process.

111.  As shown in this report, numerous transitions from EFIT to IAFD have taken place and many more are pending completion. However, as stated in this report, supervision at all levels is a very critical part of this transition process.

112.  The EFIT Executive Team previously expressed concerns with the manner in which the IAFD first line Supervisors were handling daily supervision of the Detectives/Investigators in the Division. The EFIT Executive Team is pleased to see that Commander Norris and the APD senior executives took numerous steps to address these issues. In addition, EFIT worked to revise the process by which certain UOF investigations were reviewed.

113.  Once EFIT graduates a Detective/Investigator they are transferred into two teams led by two of the most experienced IAFD sergeants.  These two sergeants participated in the investigative plan pilot project and consistently produce excellent supervisor reviews and show strong leadership, coaching, and mentoring skills.  IAFD believes that transferring the

investigators/detectives who completing the EFIT transition process to these two sergeants will prevent any complacency with the quality of investigations that are no longer overseen by EFIT. This is an area where IAFD can operate independently of EFIT.

114.    Additionally, IAFD will submit data to the Independent Monitoring Team ("IMT") on a monthly basis. The data submissions will consist of a monthly list of completed and open cases identified by graduates vs. non-graduate investigators. The data will be submitted on ledgers consistent with past data submissions. This is a way for IAFD to frequently share information with the IMT related to sustainability independent of EFIT.

115.    The EFIT Executive Team continues to work closely with Commander Norris and recommend a number of directives that were issued by him, related to timeframes, dress code, professionalism and documentation to promote uniformity and consistent supervision that will reduce finding the entire investigation out of compliance with the Process Narrative.

116.    It should be noted that the EFIT Executive Team is not advocating speed at the expense of a thorough and complete investigation. However, EFIT believes that it is possible to conduct a thorough and complete investigation in a timely manner. When EFIT provides direct guidance during a UOF investigation, the current total completion time as of this report is averaging 79.78 days. This is well under the 90 days to complete a UOF investigation pursuant to the Amended Stipulated Order (Doc. 906). EFIT believes that with the transition initiatives currently in place and contemplated that with the proper leadership from first line supervisor to the IAFD Commander and support from APD Executives this can be a sustainable division once EFIT fully transitions oversight back to APD.

**Albuquerque Police Officers Association ("APOA")**

117.    Mr. Neier and Mr. Hurlock met with DOJ and counsel for the APOA many times to discuss

a number of mutual concerns ranging from the number of interviewers (IAPS, IAFD and EFIT) attending interviews, overall professionalism, and most importantly, sustainability. Follow-up meetings were to occur.

118. However, despite numerous requests, Mr. Mowrer, counsel for the APOA, and APOA representatives never held these follow-up meetings.

119. As of this report, the EFIT Executive Team remains hopeful that it can continue to work with the APOA to address all mutual concerns going forward. However, the EFIT Executive team still awaits the APOA's response to the concerns raised at these meetings and the potential MOUs issued by the APOA.

**City Legal**

120. EFIT continues to work with the City attorneys . EFIT looks forward to working with City Legal to achieve our common goals. Additionally, Mr. Neier continues to conduct productive meetings with City Attorney Lauren Keefe to discuss areas of mutual concern.

**Amended Stipulated Order and Backlog Force Cases ("EFIT 2")**

**EFIT's Basis and Authority**

121. As stated previously, on March 21, 2022, the Court signed the Amended Stipulated Order (Doc. 906) that established and provided the authority for EFIT to investigate the APD UOF backlog cases pursuant to Exhibit 1 (Scope of Work or "SOW") attached to the Amended Stipulated Order (Doc. 906).

122. EFIT 2's original backlog team consisted of two groups with each group comprising a supervisor and three investigators. Due to the transition progress of EFIT 1 and in an effort to capture certain efficiencies the EFIT Executive Team reformed the teams and added a third team with a supervisor and investigators that were originally assigned to EFIT 1.

123. The Backlog Team is now comprised of three groups. Each group has a supervisor and

three Investigators. This reorganization has allowed the Backlog Team to review cases more expeditiously and efficiently, while not sacrificing accuracy. It is important to note that the EFIT Executive team will never sacrifice quality and thoroughness for expediency.

124.    In April 2022, EFIT executives, with the assistance of APD, drafted the Backlog Methodology that was circulated to APD, DOJ and the IMT for comment. Final approval was received on April 27, 2022, and the Backlog Methodology was filed on May 16, 2022, by EFIT as Exhibit G to the EFIT Third Quarterly Report (Doc. 912) (See Ex. G).  Additionally, on June 17, 2022, APD issued Special Order 22-76 Implementation of the External Force Investigative Team ("EFIT 2").

125.    Specifically, EFIT invoked that portion of the Special Order 22-76 as follows:

A.  The City shall enable the EFIT Administrator to establish a Backlog Team to complete investigations of the Backlog Force Cases in accordance with the SOW attached to this Amended Order as Exhibit 1.  The Parties shall jointly file a notice with the Court when the EFIT Backlog Team is fully constituted and commences operations.

B.  When the Backlog Team completes an investigation, the EFIT Administrator shall submit the case materials, including narratives and recommendations, to IAFD for final closure. Upon receiving a completed backlog case from EFIT, IAFD shall close the case by performing the administrative steps outlined in the revised IAFD Process Narrative, Doc. 862-1, ¶¶ 59–63.

C.  The Force Review Board ("FRB") shall review completed EFIT Backlog Team investigations pursuant to the process identified in SOW, ¶ 20.  Consistent with the CASA, Doc. 465-1, ¶ 78(b), any Backlog Team investigation reviewed by the FRB

shall be presented by the EFIT Administrator or Deputy Administrator.

D.   Within 30 days after EFIT completes an investigation pursuant to the SOW, APD shall respond in writing to the recommendations, if any, made by the EFIT Administrator and/or the EFIT Executive Team in that investigation pursuant to the SOW.

E.   Within 90 days after EFIT completes the investigation of all Backlog Force Cases, the City shall provide a written report to the EFIT Executive Team, DOJ, and the Independent Monitor, which includes, at a minimum:

    a.   the City's response to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;

    b.   the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

    c.   the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

    d.   the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

    e.   the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

126.    If warranted, the EFIT Executive Team will identify additional candidates to enhance the Backlog Team. While the audit of the backlog cases was completed by IAFD, the EFIT Executive Team is still concerned with the lack documentation and the use of subpar verbal UOF Narratives for these cases.

127.    If the EFIT Investigator cannot make a determination regarding the force incident, the matter will be reviewed by the team supervisor and if the supervisor concurs, the EFIT Executive Team will temporarily move the case into a category delineated as "Insufficient Documentation for Evaluation" to expeditiously complete those cases for which there is sufficient documentation to make a determination as to force.

128.    The EFIT Executive Team will monitor this category and make a recommendation as to the investigation and/or closure of these cases at a future date. EFIT developed a modified report for all Level Two investigations that EFIT determines to be in policy, with no unreported uses of force, and no potential criminal conduct.

129.    As of this report, Messrs. Neier and Hurlock presented 12 cases to the FRB. Of those cases, EFIT ruled 7 out of policy. FRB concurred that 4 of those cases were out of policy. There were 3 cases where the FRB disagreed with EFIT's conclusion and ruled the case in policy.

130.    In addition, during this reporting period, the EFIT backlog team did not make any criminal referrals to MATF concerning a Backlog case. EFIT has invoked that portion of Special Order 22-76 follows:

    A.  The Department has authorized EFIT 2 personnel to conduct administrative investigations and to perform all investigatory functions set forth in Department Standard Operating Procedures ("SOPs").

    B.  All Department personnel shall fully cooperate with EFIT 2 personnel that

conduct investigations. Department personnel who fail to do so may be subject to discipline pursuant to Department SOPs, including but not limited to SOP 1-1 Personnel Code of Conduct, subsection 1-1-6 A.3.a and SOP 3-41 Complaints Involving Department Personnel.

131.    The EFIT Backlog Force Case Investigation Teams are comprised of seasoned and experienced attorneys and former law enforcement personnel.[29]

132.    APD issued a Special Order (SO 22-76) outlining the cooperation expected from all Sworn APD Officers as the EFIT Backlog Team went "live" on June 20, 2022.

133.    As previously noted, the Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways.  First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate the Backlog Force Cases, namely, all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part, in violation of the CASA, (Doc. 465-1). Exhibit 1: Scope of Work to Remedy the Backlog Force Cases ("SOW") to the Amended Stipulated Order (Doc. 906, Ex. 1 at 1-2, Para. 6) provides:

   "The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force

---

[29] Three teams of one supervisor and two Investigators along with the existing EFIT Executive and analytical Support Teams.

*Cases. The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it. The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor."*

134.  The EFIT Executive Team conducted a number of meetings with APD's Accountability Bureau, including the Compliance and Oversight Division, and the newly created Data Analytics Division calculated normative thresholds for UOF incidents to identify the Officer(s) who utilize UOF over the expected incident rate and are thus considered High Incident Officers.

135.  With assistance from APD's Accountability Bureau, the EFIT Executive Team obtained the data of all the Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906). Additionally, the EFIT Executive Team worked with members of the Accountability Bureau to develop a dashboard that is similar to the current IAFD case tracking and management dashboard, stratifying the data distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboard was successfully tested by the Data Analytics Division and EFIT.

136.  Backlog investigations review whether the Officers' actions were reasonable, necessary, proportional, minimal and within APD guidelines and SOPs and if the UOF was outside of APD's policies.

137.  As of this report, EFIT assigned 203 UOF investigations to the backlog team for investigation. Prior to closure, each case is reviewed by the EFIT Executive Team and forwarded to APD and DOJ.

138.   Pursuant to the SOW, EFIT, when appropriate and/or warranted, will make observations and recommendations in its report. The final reports and recommendations are sent to Deputy Chief Lowe who responds to EFIT, in writing, within 30 days.

139.   While not a requirement in the SOW, EFIT Executives discussed with Deputy Chief Lowe the need to issue a letter to the involved Officer(s) similar to the letter recommended by EFIT that is utilized by IAFD when a case is closed. This letter will include whether the closed case was within or outside APD policy, EFIT's observations and recommendations and any administrative investigations that would have occurred if the investigation was completed in a timely manner. This letter serves not only as notification to the Officer(s), but as best practices to facilitate Constitutional policing.

140.   The backlog teams completed their investigation of OIS and completing High Incident Officers to review whether the officers' actions were reasonable, necessary, proportional and minimal and within APD's SOPs.

141.   EFIT's findings, as of as of May 31, 2023, are that 167 of the 179 (93.30%) backlog cases investigated by EFIT are within APD guidelines and SOPs.

142.   The following table captures the level of force applied and associated percentages:

| Level of Force Applied | Number of Cases |
|---|---|
| Low Level Control | 3 |
| Level 1 | 13 |
| Level 2 | 118 |
| Level 3 – OIS | 8 |
| Level 3 | 39 |
| Total | 181 |

| Completed | Out of Policy | % No Force | % L1 | %L2 | %L3 | %L3 OIS | Cases w/ Recommendations[30] |
|---|---|---|---|---|---|---|---|
| 181 | 6.62 | 1.65 | 7.18 | 65.19 | 21.54 | 4.44 | 102 |

143.     The following table captures the highest level of force applied and the number of out of

policy finding:

| Type of Force Applied | Number of Cases | Cases Out of Policy |
|---|---|---|
| OIS | 7 | 2 |
| Intermediate Weapon System | 27 | 7 |
| Empty Hand Takedown | 90 | 1 |
| Empty Hand Control | 26 | 1 |
| Handcuffing w/ Injury | 11 | 0 |
| SOD | 10 | 0 |
| K-9 | 7 | 0 |
| Low Level Control | 2 | 0 |
| PIT | 1 | 1 |
| Total | 181 | 12 |

144.     If an APD Officer is identified as a High Incident Officer, upon completion of all the cases

involving the Officer, the EFIT Executive team will conduct a review and issue a memorandum

detailing any patterns or practices identified.

---

[30] APD responded to EFIT's recommendations.

145.   12 cases were presented to FRB this quarter by Messrs. Neier and Hurlock:

| Case | Level | Type | FRB Presentation |
|------|-------|------|------------------|
| 21-00291XX | Level 3 | Firearm – OIS | 12/22/22 |
| 20-00637XX | Level 3 | Firearm – OIS | 12/8/22 |
| 20-00824XX | Level 3 | Firearm – OIS | 10/6/22 |
| 20-00837XX | Level 3 TA | Firearm – OIS | 9/22/22 |
| 20-00637XX | Level 3 | Firearm – OIS | 9/8/22 |
| 21-00521XX | Level 3 | Firearm – OIS | 12/1/22 |
| 20-00586XX | Level 2 | Beanbag shotgun | 12/22/22 |
| 20-00493XX | Level 3 | ECW | 6/20/20 |
| 20-00493XX | Level 2 | ECW | 1/17/23 |
| Case | Level | Type | FRB Presentation |
| 20-00567XX | Level 2 | ECW | 2/23/23 |
| 21-00334XX | Level 2 | 40 mm | 10/20/22 |
| 20-00924XX | Level 2 | 40 mm | 5/18/23 |

146.   In 3 of the 12 UOF Investigations the FRB disagreed with the EFIT findings that the case was Out of Policy, voting they were within APD Policy.

147.   The City responds to the EFIT Administrator's summary report, required by the SOW, ¶25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA, including the following data:

    A.   the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

    B.   the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

    C.   the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

    D.  the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

(Amended Stipulated Order Paras. C7 through C11).

148.    As a result of the backlog findings to date, and a significant change in APD UOF policies, meetings were held in May 2023, involving EFIT, DOJ and APD. The parties agreed that EFIT will place investigations involving officers no longer with APD (38 cases) and/or force considered Level 1 under the Third Amended CASA (147 cases), at the end of the UOF investigation queue. APD and EFIT are finishing protocols to apply to these cases.

149.    Once EFIT 1 fully transitions oversight to IAFD, the EFIT Investigators currently assigned to EFIT 1 will be moved to our backlog teams. This will enable EFIT to complete all backlog UOF Investigations within the contractual period.

150.    The following table captures the status of the backlog cases assigned to EFIT:

| EFIT BACKLOG INVESTIGATIONS AS OF – May 31, 2023 | |
|---|---|
| **Total Backlog** | **667** |
| Assigned to EFIT Investigators | 184 |
| 12 UOF Investigations Previously Completed by IAFD Assigned to EFIT | 12 |
| **Total Assigned Cases** | **196** |
| 12 UOF Investigations Previously Completed by IAFD Closed by EFIT | 12 |
| EFIT Investigators - UOF Investigations Closed | 169 |
| Total Completed | 181 |
| Total Case with Insufficient Documentation to Investigate | 2 |
| **Investigations Pending** | **486** |

**Upcoming Dates**

151.     EFIT looks forward to presenting this Seventh Quarterly Report to the Court and all

parties.

152.     On or about September 1, 2023, EFIT will file its eighth Quarterly Report with the Court

and EFIT 2 will file its fifth Quarterly Report.

153.     Once again, we thank the Court for the opportunity to submit this report. I, and my team,

are available should the Court have any questions or need any additional information

concerning EFIT, EFIT 2 or their attendant mandates.

Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

Encls.

43