# EXTERNAL FORCE INVESTIGATION TEAM'S (EFIT'S) EIGHTH Quarterly Report

## June 2, 2023 – September 19, 2023

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
September 21, 2023

TABLE OF CONTENTS

PAGE

TABLE OF EXHIBITS ............................................................. 2

INTRODUCTION .................................................................. 3

EXECUTIVE SUMMARY ........................................................ 3

BACKGROUND ................................................................... 6

EFIT MANDATE................................................................. 10

ACCOMPLISHMENTS TO DATE ............................................. 14

IAFD IMPROVEMENT TABLE................................................ 22

SUSTAINABILITY ............................................................... 25

SUPERVISION .................................................................. 26

ALBUQUERQUE POLICE OFFICERS ASSOCIATION "APOA"............ 27

CITY LEGAL ..................................................................... 28

AMENDED STIPULATED ORDER AND BACKLOG FORCE CASES ("EFIT2")
EFIT'S BASIS AND AUTHORITY ............................................ 28

UPCOMING DATES ............................................................ 37

TABLE OF EXHIBITS

PAGE

Exhibit A- Notice of Filing External Force Investigation Team

    Stipulated Order Remedial Action Plan Quarterly Report and

    Action Plan ................................................................. 5,13

Exhibit B- Internal Affairs Force Division Current Processes

    September 7, 2023, .................................................... 14

**Introduction**

1. Please accept this eighth quarterly report of the External Force Investigation Team ("EFIT").[1]

2. The EFIT Backlog Team ("EFIT 2" or "Backlog Team") also herein submits its fifth quarterly report at this time.

3. For the sake of the timing and completeness of this report, the data contained herein covers June 2, 2023, to September 15, 2023, inclusive. Both EFIT and EFIT 2 will file their next quarterly report on or about January 6, 2024.

**Executive Summary**

4. As of this report,[2] and cumulatively since EFIT went live in July 2021, 50 out of the 991 (5.04%) UOF investigations closed by EFIT/Internal Affairs Force Division ("IAFD") were found not within the Albuquerque Police Department ("APD") use of force ("UOF") policies (this is a 1.39 decrease from what was reported in the previous quarterly report).[3] Most significantly, 157 out of the 991 (15.84%) of the UOF investigations closed by EFIT/IAFD were out of compliance when evaluated against the Process Narrative (Doc. 862)[4] utilized to assess investigations (this is a cumulative reduction of 4.99% from what was reported in the previous quarterly report).

---

[1] While the Stipulated Order Establishing EFIT (Doc. 720) and its attendant mandate *did not require* EFIT to file quarterly reports, in the interest of transparency, the EFIT Executive Team (Messrs. Neier, Hurlock and Bone), decided to prepare and file quarterly reports for EFIT. The Order establishing the EFIT Backlog Team (Doc. 906), Statement of Work ("SOW") requires that the EFIT backlog team prepare and file quarterly reports. For the sake of the timing and completeness of this report, the data contained herein covers June 2, 2023, to September 15, 2023, inclusive. However, EFIT, consistent with past practices, respectfully reserves the right to amend its report if necessary.

[2] For these statistical purposes EFIT will be using September 15, 2023, as a cutoff date unless otherwise noted.

[3] See paragraphs 69-72 and the associated table (page 22) for a quarterly analysis.

5.  EFIT's next quarterly report, which is to be filed with the Court on or about January 6, 2024, will continue to contain an analysis of these issues based on the findings of both APD UOF compliance and case investigative (Process Narrative) compliance.

6.  While this quarterly report addresses EFIT's qualitative findings up to, and including, September 11, 2023, EFIT's statistical findings are as of September 15, 2023. However, the report provides a comprehensive review of EFIT's experience since inception.

7.  As of September 15, 2023, EFIT and IAFD (since July 16, 2021), responded to, investigated, and/or opened or are monitoring 1019[5] UOF incidents, to include 37 Officer Involved Shootings ("OIS") and cumulatively made 6 referrals to the Multi-Agency Task Force ("MATF")[6] for potential criminal violations (none were made during this quarter). EFIT/IAFD completed all investigations within the 90-day time period outlined in the Amended Stipulated Order (any exceptions?).[7]

---

[5] Two UOF investigations were transferred to the Internal Affairs Professional Standards Division ("IAPS") for both UOF and misconduct investigations. Other than responding to the scene, these investigations are not included in EFIT's statistics.

[6] The MATF is *an investigatory task force composed of different law enforcement agencies and prosecuting offices as established by a Memorandum of Agreement. The purpose of the MATF is to conduct criminal investigations related to critical incidents involving OISs, uses of force where criminal allegations are made and in-custody deaths* (APD SOP 1-67).

[7] Two of the closed cases involved an officer who was involved in both cases and severely injured during the second of the two cases: an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days, respectively, and are not included in the statistical findings related to length of investigation or days to close the investigation. Additionally, during the prior reporting period an extremely complex UOF investigation was conducted that necessitated extending the mandated timelines. The parties were notified and agreed to the extension. The United States memorialized this in a memorandum and the UOF Investigation was completed in 120 days. This case is not included in the statistical findings related to length of investigation or days to close the investigation.

8. Since inception, EFIT assumed 13 UOF investigations, pursuant to Paragraph 23(b) of the Amended Stipulated Order.  During this reporting period EFIT did not assume any UOF investigations from IAFD and has not assumed any UOF investigations since August 2022.

9. EFIT is pleased to report that it continues to witness a marked improvement in IAFD. Indeed, while there remains certain work to be done, the atmosphere within IAFD again improved in this reporting period, the details of which are detailed below. (See Paras. 91 – 94 below).

10. The EFIT Executive Team is also pleased to report that, pursuant to the established protocols[8] (See Ex. A), it is continuing to transition IAFD Detectives/Investigators to conduct interviews without EFIT's direct supervision. As a result, 12 Detectives/Investigators graduated from the transition process (unfortunately, two separated from APD and one is currently a Field Supervisor) while those remaining are conducting UOF investigations with minimal EFIT oversight.  Currently 8 IAFD personnel are progressing through the Phases (See Paras. 41 - 53 below).  Pursuant to protocols established between and amongst the parties, EFIT believes IAFD will have the requisite number of graduated Detectives/Investigators when EFIT achieves its target date for completion.

11. It is EFIT's intention that this report provides the Court with a better understanding of the successes, recommendations, and failures of APD, particularly IAFD. It is EFIT's goal to teach, mentor and professionalize IAFD so that when EFIT's assignment is completed in January 2024, EFIT leaves the City with a sustainable division that investigates UOF incidents in a timely, thorough, and professional manner.[9]

---

[8] These protocols were distributed to APD, the Independent Monitor Team ("IMT") and the United States Department of Justice ("DOJ") and comments were incorporated into the final process.
[9] For extensive background information on the EFIT Executive and the EFIT Investigatory Teams, please see EFIT's First Quarterly Report dated October 16, 2021. (Doc. 873).

**Background**

12. On February 26, 2021, the United States District Court for the District of New Mexico (the "Court") granted a joint motion filed by the DOJ and the City of Albuquerque ("City") with the concurrence of the IM by entering a Stipulated Order Establishing an External Force Investigation Team ("Stipulated Order") in the case *United States v. City of Albuquerque,* No. CIV. 14-1025 JB\SMV. (Doc. 720).  The Stipulated Order established EFIT and its attendant mandate. On May 2, 2021, a preliminary contract was signed between DLG, Accounting and Advisory Services ("DLG, LLC") and APD. On June 23, 2021, the full contract was signed by DLG, LLC and the City, enabling EFIT to commence full operations on July 16, 2021.

13. On March 21, 2022, the Court granted a joint motion filed by DOJ and the City with the concurrence of the IM by entering an Amended Stipulated Order Establishing an External Force Investigation Team ("Amended Stipulated Order") (Doc. 906). The Amended Stipulated Order modifies and supersedes the Stipulated Order previously entered by the Court ( Doc. 720).

14. The Amended Stipulated Order restates many of the Original Stipulated Order's requirements and supplements them in two ways.  First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate all use-of-force incidents occurring from January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part ("Backlog Force Cases"), in violation of the Court Approved Settlement Agreement ("CASA") (Doc. 465-1)[10]. Second, the Amended Stipulated Order extends by 24 months,[11] from May 2022 through May 2024, the period during which the City shall continue to engage EFIT to assist IAFD to investigate new Level 2 and Level 3 use-of-force incidents ("New Force Cases").

---

[10] For extensive background information on the EFIT 2 Executive and EFIT Investigatory Teams, please see EFIT's Fourth Quarterly Report dated August 23, 2022 (Doc. 942).
[11] Or until the mission of EFIT 1 and EFIT 2 are fulfilled, whichever is earlier.

15. Classifications of Force[12] that EFIT works within are enumerated in the APD UOF Policies as follows.

16. **Level 1 Use of Force:** Any use of force that is likely to cause only temporary pain, disorientation, and/or discomfort during its application as a means of gaining compliance; or any show of force.

    a. Any Level 1 use of force against an individual in handcuffs remains a Level 1 use of force.

17. **Level 2 Use of Force:** Any use of force that causes injury, which could be expected to cause injury, or that results in a complaint of injury greater than temporary pain, regardless of whether the use of force was unintentional or unavoidable. A Level 2 use of force includes:

    a. Discharge of an ECW, including where an ECW is fired at an individual but misses;

    b. Use of a beanbag shotgun or 40-millimeter impact launcher, including when it is fired at an individual but misses;

        i. The use of a 40-millimeter impact launcher as a tool to defeat a window of a commercial or residential structure or a window of an occupied vehicle or another type of barrier will not be investigated as a use of force unless it strikes an individual.

    c. Use of oleoresin capsicum ("OC") spray, including when it is sprayed at an individual but misses;

    d. Use of empty-hand techniques that result in injury or complaint of injury

---

[12] APD SOP Procedural Order 2-53 - Revised on January 26, 2023.

7

(e.g., strikes, kicks, takedowns or leg sweeps);

    e. Strikes and attempted strikes with impact weapons;

        i. This excludes strikes to the head, neck, throat, chest, or groin, with a beanbag shotgun or 40-millimeter impact launcher and strikes to the head, neck, throat, chest, or groin with a baton or improvised impact weapon, which are considered deadly force.

    f. Deployment of a noise flash diversionary device ("NFDD") inside a structure;

        i. If an NFDD is deployed outside of a structure or outside an enclosed vehicle and is used as a means to gain the attention of an individual, it will not be considered a use of force.

    g. Use of a horse rein strike on an individual's extremities; and

    h. Use of the Precision Immobilization Technique ("PIT") maneuver at 35 mph or below.

18. **Level 3 Use of Force:** Any use of force that results in, or could reasonably result in, serious physical injury, hospitalization, or death, regardless of whether the use of force was unintentional or unavoidable. Level 3 uses of force include:

    a. Use of deadly force;

    b. Critical firearm discharge;

    c. Force resulting in hospitalization, serious medical episode, loss of consciousness, and/or a seizure;

    d. Police service dog ("PSD") directed bite;

    e. Three (3) or more ECW discharges on an individual during a single interaction, regardless of the mode or duration of the discharge, and regardless of whether the discharges are by the

same or different officers;

f.   An ECW discharge on an individual during a single interaction for longer than fifteen (15) seconds, whether continuous or consecutive, regardless of the mode of discharge;

g.   Four (4) or more strikes with a baton or improvised impact weapon;

h.   Any Level 2 use of force against a handcuffed individual;

i.   Use of the PIT maneuver at 35 mph or below that results in, or could reasonably result in, serious physical injury, hospitalization, or death; and

j.   Use of the PIT maneuver above 35 mph.

19. EFIT's full contract was presented to, and approved by, the City Council on May 16, 2022. On May 17, 2022, the City filed a Notice with the Court regarding the status of funding to effectuate the Amended EFIT Stipulated Order and the subsequent funding for EFIT 2. (Doc. 913).

20. Pursuant to the relevant documents, EFIT is on call 24/7 and must respond to all call outs within one hour of notification. All UOF investigations must be completed within 60 days with an additional 30-day supervisory review period for a total of 90 days from start to finish. Pursuant to the Amended Stipulated Order, EFIT must conduct joint investigations with APD IAFD of all Level 2 and Level 3 UOF incidents – this includes all Tactical Deployments where UOF is utilized. EFIT must also assist APD with training concerning the UOF.

21. The EFIT Executive Team worked with APD IAFD to establish a detailed IA Investigative

Process Narrative[13] that governs the response protocols to any Level 2 and 3 UOF cases.[14] These documents, and the procedures for an IAFD/EFIT investigation, are the basis for EFIT to evaluate IAFD. EFIT filed with the Court an amended and revised Process Narrative that reflected the new UOF Policies[15] effective date January 26, 2023. (Doc. 979 and 981).

22. EFIT presented the Seventh Quarterly Report summary at a status conference on June 6, 2023, to the Court and all parties (Doc. 995).

23. Pursuant to the Amended Stipulated Order the City drafted a contract for EFIT to establish a secondary team ("EFIT 2") to investigate and address the 667 backlog cases.[16] EFIT 2 commenced work on June 20, 2022, to address the backlog cases pursuant to the relevant paragraphs of the Amended Stipulated Order (Doc. 906). (See Paras. 94 - 125 below).

24. EFIT 2 established a detailed procedure for first addressing the most serious cases (OISs, officers involved in multiple uses of force) once it commenced operations. At this point, EFIT 2 completed 324 backlog cases. A total of 16 cases were deemed out of policy.  (See Para. 121 below).

25. The City Council extended the funding for both EFIT 1 and EFIT 2 until May 2024.

**EFIT's Mandate**

26. The Stipulated Order established the EFIT and its mandate. Based on discussions with the City, and to comply with the Amended Stipulated Order, EFIT 1's contract was extended and funded up to and including May 2024.

27. As stated previously, EFIT 1 derives its authority and jurisdiction from the Stipulated Order

---

[13] As required by Paragraph 14 of the Stipulated Order (Doc. 720 at 5), the Process Narrative was filed with the Court on July 12, 2021 (Doc. 839-1).
[14] A revised Process Narrative was filed on September 27, 2021 (Doc. 862-1).
[15] APD SOP Procedural Order 2-52 through 2- 57 - Revised on January 26, 2023.
[16] Within the 667 backlog cases there are a total of 2,537 incidents when various levels of force were applied to an individual.

(Doc. 720) superseded by the Amended Stipulated Order (Doc. 906), Process Narratives (July 12, 2021, revised September 8, 2021) filed with the Court on July 16, 2021 (Doc. 839-1) and September 27, 2021 (Doc. 862-1), respectively (Exs. C & D).

28. Pursuant to the relevant documents, EFIT and IAFD are on call 24/7 and must respond within one hour of notification. EFIT ensures that the IAFD investigations are high quality, thorough and impartial. All UOF investigations must be completed within 60 days and a 30-day supervisory review period for a total of 90 days from start to finish. Provisions are in place if an extension of these timelines is needed for extenuating circumstances, such as an inability to interview an officer sustaining serious injuries due to an OIS and/or a complex investigation.[17]

29. The Amended Stipulated Order (Doc. 906 at Para. 12), and the Stipulated Order before it (Doc. 720 at Para. 12), establish the staffing levels for the APD IAFD. As of this reporting period, IAFD did not fall below the minimum staffing level. IAFD must be staffed with 25 Detectives/Investigators.[18] Currently IAFD has 17 civilian Investigators[19] and 8 Detectives. (See Paras. 86 & 88 below).

30. APD's most recent Remedial Action Plan (Doc. 1011-1) for IAFD was filed with the Court on September 8, 2023, recognizing that EFIT is contributing to improvements in the IAFD process: *"IAFD made no requests for technical assistance by the IMT during this quarter, instead focusing on direct communications with EFIT..... EFIT's written feedback on the work*

---

[17] On October 20, 2021, a Notice was filed with the Court (Doc. 864) due to an OIS delaying the completion of two investigations. Additionally, a complex investigation required an agreement among the parties to extend the mandated time frame issued a memorandum to capture same.

[18] For the purpose of this report, the term "Detective" equates to sworn APD personnel and "Investigator" is used for civilians conducting UOF investigations.

[19] Training of IAFD takes approximately three to four weeks for sworn personnel to over two months for civilians resulting in operational effectiveness (currently five are in training). Sustainability of staffing is one of the main concerns of EFIT and will continue to be addressed in future reports to the Court.

*product of IAFD has proven helpful, assisting in through accurate investigations and timeline compliance...IAFD has used EFIT's feedback as an opportunity to regularly initiate roundtable discussions on all complex investigations (including EFIT and Internal Affairs Professional Standards personnel)."* Ultimately, the goal is for EFIT to return responsibility back to APD for UOF investigations.

31. As stated previously, the EFIT Executive Team worked with APD to establish a detailed Process Narrative that governs the response protocols to Level 2 and 3 UOF cases. EFIT and APD continue to review this document to ensure that it is serving the interests of the assignment and has made modifications, as necessary. Any modification is reviewed by the City Attorney's Office, DOJ and the IM. A revised Process Narrative was filed with the Court on September 27, 2021, (Doc. 862-1) and serves as the working procedure that IAFD/EFIT follows and the basis for EFIT to evaluate IAFD. On April 21, 2023, due to modifications made on the Court Approved Settlement Agreement ("CASA"), a Revised Process Narrative was filed with Court (Doc. 989), that was fully implemented.

32. Once filed, the Process Narrative was disseminated to all IAFD Detectives/Investigators and EFIT Investigators. During this reporting period IAFD achieved a 96.12% rating in complying with the Process Narrative (See Paras. 52, 53, 69 below). Additionally, IAFD has established (with the assistance of the Compliance and Oversite Division and EFIT) a Quality Assurance Dashboard and PEMS Command Initiated Assessment that are fully operational and successfully being utilized currently, that will take the place of the EFIT Process Narrative when IAFD has been fully transitioned (See Paras. 113 - 115 below).

33. Prior to September 25, 2023, cases that are fully investigated by IAFD/EFIT are reviewed by the EFIT Team Supervisor and forwarded to the IAFD Sergeant for their review.  The IAFD

Sergeant determines if the force is within APD policy and forwards it for an IAFD Command review. It is after the Command level review that the EFIT Executive Team reviews the UOF determination and recommends closing a case when appropriate. Effective September 25, 2023, and in an effort to facilitate the successful transition from EFIT oversite to IAFD the responsibility of the review of investigations prior to being submitted to the IAFD Sergeant will no longer take place. (See Ex. A).

34. Provisions were written into the Amended Stipulated Order (Para. 23(b)) should EFIT need to assume full responsibility for an investigation or disagree with IAFD's investigative findings. In this reporting period EFIT did not assume any UOF investigation, pursuant to Paragraph 23(b) of the Amended Stipulated Order. It should be noted, as previously reported, that EFIT has not assumed an investigation since August 2022.

35. Finally, the Process Narrative also outlines the protocol IAFD and EFIT must take if a UOF might subject an APD Officer to criminal liability. (Doc. 989 at Para. 18.) EFIT/IAFD made 6 such referrals as a result of the type of force utilized since EFIT's inception. While MATF will investigate these matters for criminal liability, IAFD/EFIT will continue the UOF investigation and IAFD will review the case for any misconduct by the Officers.[20] IAFD/EFIT made no such referrals to MATF during this quarter related to a backlog UOF investigation (See Para. 109 below).

36. Closed UOF cases are presented to the FRB [21] pursuant to the CASA and APD policy. As the

---

[20] IAFD Investigated the UOF along with misconduct and found the UOF was out of APD UOF Policies.

[21] FRB - It is the policy of the Albuquerque Police Department (Department) *to conduct timely, comprehensive, and reliable reviews of (a) Level 2 and Level 3 use of force investigations to ensure the findings are supported by a preponderance of the evidence, and (b) tactical activations in order to analyze and critique specialized response protocols* (APD SOP 2-58) (emphasis added).

cases that EFIT jointly investigated with IAFD are now at the FRB level, Mr. Neier and Mr. Hurlock believed that EFIT should have a more active role in the FRB. To that end, Mr. Neier and Mr. Hurlock met with APD, DOJ and the IM team to discuss the parameters for such participation to occur.

37. As a result, all parties agreed that EFIT may take a more active role in presentations made to the FRB. For those cases where EFIT assumed responsibility for the investigation, Mr. Neier or Mr. Hurlock will make the full presentation to the FRB. As of this reporting period Messrs. Neier and Hurlock made 15 presentations to the FRB on backlog investigations and addressed questions that arose at the FRB for current cases that EFIT worked with IAFD to close.

38. As reported previously, EFIT remains very pleased that there continues to be a noticeable change within IAFD (since Commander Norris assumed the command of the division) among the Detectives/Investigators. This change includes a higher degree of motivation manifested in such things as intersquad competition concerning the EFIT Transition Plan and selection for pilot projects. This is facilitating the ultimate goal of a full and successful transition of EFIT oversight to IAFD conducting UOF investigations without EFIT.

**<u>Accomplishments To Date</u>**

39. Most significantly this Quarter, EFIT is pleased to report that IAFD provided a comprehensive transition plan ("IAFD Transition Plan") on August 1, 2023, and IAFD Remedial Action Plain (Doc. 1011-1 See Ex. B) to address those areas relating to EFIT's mandate where APD was not in operational compliance with the CASA, as well as those projects/processes outside the scope of the CASA, and to transition related initiatives that were implemented. The IAFD Transition plan goes a long way to address EFIT's concerns regarding IAFD's sustainability, once EFIT's assignment is complete.

40. EFIT believes that adherence to the protocols outlined in these documents will ensure IAFD addresses the last areas relating to EFIT's mandate and bring IAFD into full compliance with the CASA.

41. The EFIT Executive Team continues, pursuant to the established protocols,[22] to transition IAFD Detective/Investigators to conduct interviews without EFIT's direct supervision or oversight. As a result, nine Detectives/Investigators graduated from the transition process and are conducting UOF investigations without EFIT oversight, unless specifically requested by IAFD command. Currently eight IAFD personnel are progressing through the Phases[23] of the system that will ultimately lead to the ability to conduct UOF investigations without direct supervision or oversight from EFIT.

42. Again, once a Detective/Investigator is identified by an EFIT Investigator, Supervisor or Executive Team Member as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will make a determination that the IAFD Detective/Investigator may conduct interviews and the following process will be followed:

43. The EFIT Administrator and/or Deputy Administrator will notify the IAFD Division Commander and Deputy Chief(s) (within the chain of command), along with the IMT and DOJ of the IAFD Detective/Investigator deemed qualified to commence the transition process and will document this decision.

44. Mr. Bone ("Lead Supervisor") arranges a meeting with the IAFD Detective/Investigator and IAFD Supervisor to inform them of the decision, review the phased approach and document the meeting.

---

[22] These protocols were distributed to APD, IMT and DOJ and comments were incorporated into the final process.

[23] These statistics do not include two IAFD Detectives who were in the transition phases – one transferred from IAFD to the Level 1 Pilot Project and the other was promoted.

45. The Lead Supervisor will inform the EFIT Supervisors who in turn will notify the EFIT Teams of the IAFD Detective/Investigator in the transition process.

46. If at any time during a transition phase the EFIT Executive Team believes that the IAFD Detective/Investigator needs to remain in the phase longer or remedial action is required, the reasons will be documented and provided to the Deputy Chief(s) and IAFD Commander. Examples of remedial action include, but are not limited to, coaching by EFIT staff, the Detective/Investigator remaining in a phase for an extended period of time and such other actions as determined by EFIT.

47. As stated above, two graduates separated from APD, and one graduate was promoted to Sergeant. While this is a loss to IAFD, it will be a positive benefit to APD. While sustainability is still a concern for EFIT, ADP and IAFD are taking positive steps (See Para. 53 below).

48. The EFIT Lead Supervisor will meet with the IAFD Detectives/Investigators and their Supervisor to discuss performance prior to advancing from each phase.

49. On January 3, 2023, the EFIT Executive Team, with notice to the DOJ, APD, and IMT, modified the training protocols for Detectives/Investigators as follows: once an IAFD Detective/Investigator is identified by EFIT as attaining the requisite capabilities to conduct interviews without EFIT's direct supervision, the EFIT Executive Team will review the recommendation. Only the EFIT Administrator or in his absence the Deputy Administrator will make a final determination that the IAFD Detective/Investigator may conduct interviews without direct supervision.

50. Due to these changes, the EFIT Executive Team reduced the number of EFIT Investigators

per team[24] for callout and interviews and transitioned their investigators to EFIT 2 (backlog).

51. As of this report, the EFIT Executive Team identified 20 Detective(s)/Investigator(s) from IAFD that advanced into the Transition Process. 4 IAFD Detective(s)/Investigator(s) are currently in Phase 1, 0 IAFD Detective(s)/Investigator(s) are currently in Phase 2, 1 IAFD Detective(s)/Investigator(s) are currently in Phase 3, and 3 IAFD Detective(s)/Investigator(s) are currently in Phase 4.

EFIT is pleased to report that as of the filing of this report 9 IAFD Detectives/Investigators graduated Phase 4, which will allow them to conduct investigations *without EFIT direct supervision and oversight*.

52. EFIT issued a Memorandum of Understanding ("MOU") circulated to APD, DOJ and the IMT regarding EFIT's responsibilities once a detective/investigator graduates the transition plan.

53. EFIT's overall evaluation of the interviews and UOF investigations for detectives/investigators in the transition phases continues to remain very positive. The members of IAFD admitted into this process are complying with the Transition Policy and EFIT Investigators report a positive interaction.

54. Messrs. Neier, Hurlock and Bone are working closely with DOJ and APD to ascertain a total number of Detectives/Investigators that must be qualified to conduct investigations independently to provide sufficient staffing. IAFD, with the assistance of EFIT, is in the process of developing an IAFD Training and Evaluation program to facilitate the process and future sustainability once EFIT is no longer involved with IAFD. This program will be tested as a pilot toward the end of September with two EFIT graduates assigned as the training

---

[24] In the event of a major UOF deployment or if EFIT Investigators are conducting interviews, supervisor Losey or a member of the EFIT Executive Team will respond to assist at the scene, only. Additionally, a special team will be developed once APD schedules the two-week IAFD Internal Affairs Training to respond to any UOF scene response.

officers with the goal of training officers present within each squad of Detectives/Investigators.

55. The EFIT Executive Team continues to meet with all Division Field Commanders and many of the specialized unit Commanders, to explain the EFIT process, its qualifications and what their officers could expect upon EFIT responding to UOF incidents. Additionally, it was important for Commanders to freely communicate concerns they are experiencing with the UOF investigative process. The EFIT Executive Team continues field visits and various Division briefings concerning EFIT, specifically any changes or modifications to the Process Narrative and relevant protocols.

56. As of the writing of this report, the EFIT Executive Team is pleased to share that it suggested several changes to the IAFD investigatory process to build upon the level of professionalism within the IAFD team, which were adopted.

57. While certain of IAFD's accomplishments were reported in the first seven EFIT Quarterly Reports filed with the Court, (Docs. 873, 900, 912, 942, 960 and 995), the EFIT Executive Team believes it is important to reflect on the on-going process.

58. Indeed, the current Process Narrative and associated protocols were revised on more than one occasion as the result of issues and violations of the original version. Any proposed changes are circulated to City Legal, DOJ and the IM. Comments are received and when appropriate incorporated into the Narrative and/or discussed with the relevant entities.

59. As previously mentioned, the Process Narrative was revised to conform with the new UOF Policy and CASA amendments before the Court.

60. The EFIT Administrator and Deputy Administrator participate in compliance meetings with APD, DOJ and the IMT and also work with APD regarding policy revisions and proposed draft special orders as they relate to IAFD and/or UOF policies.

61. The EFIT Executive Team constantly monitors the UOF investigation case assignments to ensure that work is distributed evenly within IAFD. This issue is crucial to ensuring that the applicable timelines are met. This issue is important as assignments are made between sworn and civilian Investigators.

62. The EFIT Executive Team made a number of recommendations regarding callouts and case distribution that were accepted by IAFD. When EFIT observes that these processes were not followed, any concerns are immediately communicated to IAFD Command.

63. Indeed, the EFIT Executive Team continues to work closely with APD on many issues including, but not limited to, call outs. It is only through this collaborative approach that EFIT can fulfill its Court-ordered mandate and eventually return the IAFD investigatory function to the Department.

64. In addition, the EFIT Executive Team continues to meet with APD, DOJ, the IM and other City officials. These meetings enhance the level of communication between these parties. The EFIT Executive Team firmly believes that communication is essential to fulfilling its Court-ordered mandate.

65. Messrs. Neier and Hurlock participate in the IM's monthly compliance meetings and other meetings with the Parties when requested by APD.

66. Messrs. Neier and Hurlock attend meetings of the Civilian Police Oversight Agency ("CPOA") in an effort to make representatives of EFIT's Executive Team available to the Agency upon request.

67. Messrs. Neier and Hurlock also continue to participate in Amici/Stakeholder meetings. At these meetings, Messrs. Neier and Hurlock provide the stakeholders with an update on EFIT and EFIT 2's efforts and field questions from the various groups.

19

68. Messrs. Neier and Hurlock look forward to presenting to additional groups as requested so that the public can receive real-time updates as to both of the EFIT entities' progress and challenges.

69. Again, the EFIT Executive Team believes that transparency with all concerned groups is essential for EFIT to fulfill its Court-ordered mandate.

70. In the first Quarterly Report, the EFIT Executive Team reported that officers remained on scene for extended periods of time. While EFIT appreciates the importance of officer safety, once a scene is secured, EFIT recommended, and APD instituted, a practice where nonessential officers – including those officers that did not use or witness the force event – are now cleared and sent back on patrol.   This issue was addressed with Field Commanders. This issue dramatically improved and is a non-issue this quarter.

71. Since July 16, 2021, and as of September 15, 2023, EFIT/IAFD responded to, and are investigating and/or monitoring, a total of 1019[25] UOF incidents. These investigations are completed on an average of 54.68 days. In addition, 991 UOF investigations were closed,[26] averaging a total of 86.97[27] days for closure. Supervisor reviews average 17.94 days. Of the UOF cases closed (991), 50 UOF cases were out of APD Policy (5.04%)[28] and 157 of the 991

---

[25] Two UOF investigations were transferred to IAPS for both UOF and misconduct investigations and other than responding to the scene they are not included in EFIT's statistics.
[26] This includes a comprehensive EFIT Executive Team review period.
[27] Two of the closed cases involved an Officer who was subsequently severely injured during an OIS. These cases were reported to all parties and the Federal District Court (Doc. 864) and were closed in 122 and 184 days respectfully and are not included in the statistical findings related to length of investigation or days to close the investigation. Additionally, during this reporting period an extremely complex UOF investigation was conducted that necessitated extending the mandated timelines. The parties were notified and agreed to the extension. DOJ memorialized this in a memorandum and the UOF Investigation was completed in 120 days. This case is not included in the statistical findings related to length of investigation or days to close the investigation.
[28] It should be noted that one of the cases transferred to IAPS was out of APD policy and is not included in the statistics of EFIT assumed cases.

investigations (15.84%) failed to comply with the Process Narrative. There were five violations of the Process Narrative this reporting period.

72. The Process Narrative (Doc. 862-1) is a detailed sixty-nine paragraph document that guides a UOF investigation. It should be clear that only eight of the paragraphs (12, 15 through 17, 29, 33, 34 and 38) will take an investigation out of compliance. This is not to suggest that an insufficient investigation was conducted or the UOF findings were wrong. Rather, the Process Narrative is a way of evaluating the IAFD Detective(s)/Investigator(s) concerning critical aspects of a thorough investigation as EFIT moves through transitioning IAFD back to APD. EFIT works closely with APD to ensure that this document is updated and adhered to in all aspects.

73. As shown by the chart below, IAFD made significant improvement since the arrival of EFIT in key areas related to the mandated timelines and compliance with the Process Narrative. APD has seen a reduction of out-of-policy UOF. When EFIT first commenced operations in July 2021, the out-of-policy UOF rate was 9.90%. As of September 15, 2023, that rate was reduced to 2.10%.

| Period by Quarter | Inv. Days | Supr. Review Days | Total Days for EFIT to Close UOPF | Total Days for UOF Inv. To be Closed | Cases Closed | % Out of Compliance | %Out of APD UOF Policy |
|---|---|---|---|---|---|---|---|
| July 16, 2021 - Sept 30, 2021 | 53.83 | | | | | | |
| Oct 1. 2021 - Dec 31, 2021 | 55.35 | 24.94 | | 88.37 | 111 | 27.02 | 9.90 |
| Jan. 1, 2022 - March 31, 2022 | 53.63 | 18.71 | 8 | 87.88 | 103 | 60.19 | 7.76 |
| April 1, 2022 – June 30, 2022 | 53.03 | 16.02 | 6 | 85.39 | 103 | 22.33 | 5.82 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **July 1, 2022 – September 30, 2022** | 51.64 | 17.97 | 5 | 86.91 | 110 | 15.38 | 5.00 |
| **October 1, 2022 – December 31, 2022** | 56.51 | 15.24 | 6 | 80.31/86.31 | 137 | 9.48 | 6.56 |
| **January 1, 2023 – March 31,2022** | 54.46 | 16.71 | 5.46 | 82.01/87.56 | 113 | 1.76 | 3.77 |
| **April 1, 2023 – June 30, 2022** | 53.72 | 13.62 | 6.64 | 78.87/85.51 | 100 | 3 | 3.00 |
| **July 1, 2023 – present (9/15)** | 56.50 | 14.34 | 6.73 | 80.29/87.02 | 99 | 2.20 | 2.20 |

74. During this quarterly reporting period, APD experienced and IAFD/EFIT responded to seven OIS incidents, one accidental discharge, eight tactical activations, two uses of K9, 12 uses of an ECW, and seven incidents involving an impact weapon.

75. Specifically, during this most recent quarter, EFIT found that IAFD made improvements with its handling of OIS and other complex investigations through the utilization of effective investigative plans, supervision and the use of roundtable discussions that include EFIT and IAPS personnel.

76. Mr. Neier continues to work with IAFD in the development of the IAFD Departmental Training Officer program. IAFD identified two EFIT graduates who will be paired with new Detectives/Investigators after the initial onboarding to IAFD has been completed. This pilot program will start by the end of September 2023. Once the program is evaluated and modifications are made, by APD, it will become permanent, utilizing both Detectives and Investigators as the training officers.

77. After the new UOF policy issued on January 25, 2023, APD finished department-wide training (including all of EFIT) in July 2023. This is a big step to ensuring continuity in UOF investigations.

78. EFIT and IAFD continue to conduct bi-weekly case status meetings and track cases at all intervals. These meetings are now conducted by IAFD personnel (with EFIT personnel in attendance) and identify concerns regarding investigative obstacles, case prioritization and allocation of resources. The concerns are addressed with Detectives/Investigators and Supervisors immediately and if necessary, with IAFD Command at the conclusion of the meeting.

79. EFIT Investigators and Supervisors continue to oversee all cases to include review of on-site work, interviews and reporting. EFIT is constantly evaluating IAFD Detectives, Investigators, Supervisors and the IAFD Division as a whole. To that end, the EFIT Executive Team conducts weekly meetings with APD Command Staff, Field Commands and many of the Specialized Units.

80. The EFIT Executive Team continues to utilize the evaluation rubric (previously approved by the IM and DOJ). This is a valuable tool to evaluate IAFD and relevant personnel pursuant to the Amended Stipulated Order (Doc. 906 at Para. 33). The EFIT Executive Team implemented this process for *each* investigation conducted by IAFD and EFIT commencing on or after September 7, 2021.

81. The rubric was updated as of December 1, 2021. While it continues to contain approximately forty-five areas where IAFD personnel are evaluated, and closely tracks the Process Narrative, there are now eight enumerated categories where an individual must pass or be considered failing. A Detective/Investigator must still attain a 95% proficiency rating, for two consecutive terms, before they are deemed proficient at conducting interviews outside of the presence of an EFIT Investigator.

82. The EFIT Executive Team is pleased to report that, under Commander Norris' leadership, the

IAFD supervisory meetings for the entire IAFD department have enhanced communication and captured attendant efficiencies. EFIT has and will continue to attend these meetings. Additionally, IAFD continues to hold weekly on-call briefings. These briefings occur the day before the new on-call rotation to ensure the on-call personnel are provided with updated information and are adhering to the on-scene investigative steps.

83. Many meetings have been conducted with all of the first-line Supervisors, Lieutenants, Deputy Commanders, Commander, and EFIT regarding the new IAFD Investigative Plan. It was determined that the Investigative Plan would remain an active document, in that after the Supervisor makes updates or completes a weekly meeting, the form will be continually uploaded into IAPro. This will allow access to all parties within the chain of command, including EFIT, to monitor the progress of any case in real time.

84. IAFD Supervisors are required to develop and follow an investigative plan to ensure they meet specific deadlines, assist in organization, and ensure the investigation adheres to the Process Narrative.  This is used as a self-management control for the Detectives/Investigators, and management control for the Supervisors.

85. The investigative plan permits the Supervisor to become intimately involved with the investigation and execute necessary corrections in real-time instead of at the conclusion of an investigation.  Additionally, it compresses the time for the supervisory review, minimizes after-the-fact corrections and requests for extensions and promotes closer supervision and oversight.

86. Communication at all levels within IAFD and the APD Police Reform Bureau dramatically improved over the last quarter, including, but is not limited to: bi-weekly meetings with Executive Director Garcia, Deputy Director Cottrell, Deputy Director Collins, Commander Norris and EFIT Executives; weekly status meetings between IAFD Command Staff and EFIT

Executives; roundtables and weekly briefings on high-profile and/or sensitive investigations; coordination between IAFD and IAPS; and joint APD training opportunities for IAFD and EFIT investigators.

### Sustainability

87. While there have been numerous notable and important changes during this reporting period, sustainability of trained IAFD Detectives/Investigators continues to be one of the EFIT Executive Team's main concerns related to the eventual transfer of responsibility from EFIT to APD for conducting thorough and complete investigations of Level 2 and Level 3 UOFs.

88. When EFIT previously expressed concerns, APD committed to over-staffing the civilian investigators in IAFD. However, based on best practices and Mr. Neier's experience, a well-functioning IAFD needs both sworn and civilian personnel. Currently, civilian investigative personnel outnumber sworn personnel by approximately 2 to 1.

89. Efforts were made related to the sustainability of civilian Investigators. Due to the efforts of the APD Police Reform Bureau (specifically Deputy Director Cottrell, who took the lead), civilian Investigators became classified employees. By becoming classified employees, it will afford them stability, salary increases and additional parity with sworn employees of IAFD. However, EFIT recommended a step system for the advancement of civilian personnel including IAFD Supervisor.

90. As of September 11, 2023, IAFD is currently staffed as follows:

    8 Sworn fully trained;

    0 Sworn on leave (counted in the 8 above);

    1 Sworn Vacancy;

    17 Civilian Investigators fully trained;

1 Civilian Investigator in training;

4 Sergeants;

1 Acting Sergeant;

1 Lieutenant;

3 Deputy Commanders;

1 Acting Deputy Commander; and

5 Support personnel.

91. EFIT, IAFD Command and APD Command staff continue to discuss various ways to incentivize IAFD members that will not impact the Albuquerque Police Officers Association ("APOA") collective bargaining agreement ("CBA"). Additionally, DOJ and EFIT executives continue to meet with APOA to discuss various issues, including but not limited to, the sustainability of IAFD.

92. Due to the efforts of APD, IAFD has stabilized the Division; seven Investigators/Detectives were in the Department for over a year and four Detectives were in the Department for over two years. Additionally, one Detective, promoted to Sergeant remained within IAFD after promotion.

**<u>Supervision</u>**

93. EFIT noticed dramatic improvement this quarter. The EFIT Executive Team previously expressed concerns with the manner in which the IAFD first line Supervisors were handling daily supervision of the Detectives/Investigators in the Division. EFIT noticed dramatic improvement this quarter.

94. The EFIT Executive Team is pleased to see that Commander Norris and the APD senior executives continue to take steps to address supervision. In addition, EFIT worked to revise

the process by which certain UOF investigations were reviewed by IAFD command. However, EFIT continues to recommend that a Deputy Commander take the roll of reviewing UOF investigations prior to closeout, utilizing the same protocols as the EFIT Executive Team. Once this individual is identified, EFIT offered to facilitate the training of this Deputy Commander so that IAFD maintains a consistent review process similar to EFIT. We see this as an imperative step in the successful transition process. Additionally, EFIT observed that the review process significantly shortens the supervisory review time and most importantly promotes closer supervision, which ultimately allows the Supervisor to set UOF completion dates shorter than the mandated 60 days, if warranted.

95. The EFIT Executive Team continues to work closely with Commander Norris and recommend a number of directives that were issued by him, related to timeframes, dress code, professionalism and documentation. These directives are intended to promote uniformity and consistent supervision that will reduce finding the entire investigation out of compliance pursuant to the Process Narrative.

### Albuquerque Police Officers Association ("APOA")

96. Mr. Neier and Mr. Hurlock met with DOJ and counsel for the APOA many times to discuss a number of mutual concerns ranging from the number of interviewers (IAPS, IAFD and EFIT) attending interviews, overall professionalism, and most importantly, sustainability.

97. The EFIT Executive Team reports on the APOA's actions where the union's representatives interrupt interviews in clear contravention of the CBA and the District Court Judge's edict regarding investigations. When such conduct occurs, Mr. Neier and Mr. Hurlock immediately request meetings with counsel for the APOA to rectify the situation. Unfortunately, during this reporting period, EFIT experienced issues during interviews.

98. Specifically, on June 15, 2023, EFIT witnessed yet another incident involving APOA Vice President. This time, the representative refused to sign the relevant admonishment form. In so doing, the representative became disruptive to the interview. When he finally signed the admonishment, he did so by merely placing a line through the signature block. Such behavior is not only childish but is an apparent attempt to diminish the importance of the interview itself and cannot be tolerated in the future. This issue was addressed by the EFIT Executive Team and IAFD command directly to the APOA's counsel.

**City Legal**

99. EFIT continues to work with the City attorneys.  EFIT looks forward to working with City Legal to achieve our common goals. Additionally, Mr. Neier continues to conduct productive meetings with City Attorney Lauren Keefe to discuss areas of mutual concern.

**Amended Stipulated Order and Backlog Force Cases ("EFIT 2")**

**EFIT's Basis and Authority**

100.    As stated previously, on March 21, 2022, the Court signed the Amended Stipulated Order (Doc. 906) that established and provided the authority for EFIT to investigate the APD UOF backlog cases pursuant to Exhibit 1 (Scope of Work or "SOW") attached to the Amended Stipulated Order (Doc. 906).

101.    EFIT 2's original backlog team consisted of two groups with each group comprising a supervisor and three investigators. In an effort to capture certain efficiencies, the EFIT Executive Team reformed the teams and added a third team with a supervisor and investigators that were originally assigned to EFIT 1.

102.    The Backlog Teams are now comprised of three groups. Each group has a supervisor and three Investigators. This reorganization has allowed the Backlog Team to review cases more expeditiously and efficiently, while not sacrificing accuracy. It is important to note that the

EFIT Executive team will never sacrifice quality and thoroughness for expediency.

103.   In April 2022, EFIT executives, with the assistance of APD, drafted the Backlog Methodology that was circulated to APD, DOJ and the IMT for comment. Final approval was received on April 27, 2022, and the Backlog Methodology was filed on May 16, 2022, by EFIT to the EFIT Third Quarterly Report (Doc. 912).  Additionally, on June 17, 2022, APD issued Special Order 22-76 Implementation of the External Force Investigative Team ("EFIT 2").

104.   Specifically, EFIT invoked that portion of the Amended Stipulated Order 22-76 as follows:

A.   The City shall enable the EFIT Administrator to establish a Backlog Team to complete investigations of the Backlog Force Cases in accordance with the SOW attached to this Amended Order as Exhibit 1.  The Parties shall jointly file a notice with the Court when the EFIT Backlog Team is fully constituted and commences operations.

B.   When the Backlog Team completes an investigation, the EFIT Administrator shall submit the case materials, including narratives and recommendations, to IAFD for final closure. Upon receiving a completed backlog case from EFIT, IAFD shall close the case by performing the administrative steps outlined in the revised IAFD Process Narrative, Doc. 862-1, ¶¶ 59–63.

C.   The Force Review Board ("FRB") shall review completed EFIT Backlog Team investigations pursuant to the process identified in SOW, ¶ 20.  Consistent with the CASA, Doc. 465-1, ¶ 78(b), any Backlog Team investigation reviewed by the FRB shall be presented by the EFIT Administrator or Deputy Administrator.

D.   Within 30 days after EFIT completes an investigation pursuant to the SOW, APD shall respond in writing to the recommendations, if any, made by the EFIT

29

Administrator and/or the EFIT Executive Team in that investigation pursuant to the SOW.

E. Within 90 days after EFIT completes the investigation of all Backlog Force Cases, the City shall provide a written report to the EFIT Executive Team, DOJ, and the Independent Monitor, which includes, at a minimum:

a. the City's response to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;

b. the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;

c. the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

d. the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and

e. the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

105. If warranted, the EFIT Executive Team will identify additional candidates to enhance the backlog team.

106. While the audit of the backlog cases was completed by IAFD, the EFIT Executive Team is still concerned with the lack documentation and the use of sub-par verbal UOF Narratives for these cases.

107. If the EFIT Investigator cannot make a determination of the force incident, the matter will be reviewed by the team supervisor and if the supervisor concurs, the EFIT Executive Team

will temporarily move the case into a category delineated as "Insufficient Documentation for Evaluation" to expeditiously complete those cases for which there is sufficient documentation to make a determination as to force.

108.    The EFIT Executive Team will monitor this category and make a recommendation as to the investigation and/or closure of these cases at a future date. EFIT developed a modified report for all Level Two investigations that EFIT determines to be in-policy, with no unreported uses of force, and no potential criminal conduct.

109.    Based upon an agreement between the Parties, the Data Analysis Unit conducted an analysis of the backlog UOF cases that are now considered a Level 1 UOF due to the new policy changes and the Third Amended CASA. These cases (143) will be investigated only for any potential criminality, lawful objective, if the force was in or out of policy and for potential policy violations. UOF reporting and data tracking was developed, along with an APD Course of Business ("COB") memorandum outlining the review process.

110.    As of this report, Messrs. Neier and Hurlock presented 15 cases to the FRB that EFIT determined were out of APD Policy at the time the force was utilized.

111.    In addition, during this reporting period, EFIT made no criminal referrals to MATF concerning a Backlog case.

112.    The EFIT Backlog Force Case Investigation Teams are comprised of seasoned and experienced attorneys and former law enforcement personnel.[29]

113.    APD issued a Special Order (SO 22-76) outlining the cooperation expected from all Sworn APD Officers as the EFIT Backlog Team went "live" on June 20, 2022.

114.    As previously noted, the Amended Stipulated Order restates many of the Original Stipulated

---

[29] Three teams of one supervisor and two Investigators along with the existing EFIT Executive and analytical Support Teams.

Order's requirements and supplements them. First, the Amended Stipulated Order requires the City to modify its existing contract to allow EFIT to investigate the Backlog Force Cases, namely, all use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that APD did not investigate, in full or in part, in violation of the CASA, (Doc. 465-1). *See* Exhibit 1: Scope of Work to Remedy the Backlog Force Cases ("SOW") to the Amended Stipulated Order (Doc. 906, Ex. 1 at 1-2, Para. 6) provides:

> *"The EFIT Administrator shall, within one month of the entry of the Amended Stipulated Order, provide the City, DOJ, and the Independent Monitor with a written plan for how it will accomplish the requirements of the Order. The plan shall describe, at a minimum, the methodology that the EFIT Backlog Team will use in investigating the Backlog Force Cases and how the EFIT Backlog Team will prioritize its investigations of the force incidents included in the Backlog Force Cases. The City, DOJ, and the Independent Monitor shall provide any comments or suggestions on the written plan to the EFIT Administrator within two weeks of receiving it. The EFIT Administrator shall work in good faith to address the concerns and suggestions provided by the City, DOJ, and the Independent Monitor."*

115. The EFIT Executive Team conducted a number of meetings with APD's Accountability Bureau, including the Compliance and Oversight Division, and Data Analytics Division calculated normative thresholds for UOF incidents to identify the Officer(s) who utilize force over the expected incident rate and are thus considered High Incident Officers.

116. With assistance from APD's Accountability Bureau, the EFIT Executive Team obtained the data on all Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906).

Additionally, the EFIT Executive Team worked with members of the Accountability Bureau to develop a dashboard that is similar to the current IAFD case tracking and management dashboard, stratifying the data distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboard was successfully tested by the Data Analytics Division and EFIT.

117.   Backlog investigations review whether the Officers' actions were reasonable, necessary, proportional, minimal and within APD guidelines and SOPs and if the UOF was outside of APD's policies.

118.   As of this report, EFIT assigned 391 UOF investigations to the backlog team for investigation. Prior to closure, each case is reviewed by the EFIT Executive Team and forwarded to APD and DOJ.

119.   The backlog teams have completed their investigation of all backlog cases involving OIS and High Incident Officers.

EFIT's findings, as of as of September 19, 2023, are that 320 of the 336 (95.23%) backlog cases investigated by EFIT are within APD guidelines and policies. 54.7% of the cases were Level 2 UOF, 17.55% were Level 3 UOF, 2.38% were Level 3-OIS, and 18.75% were Level 1 UOF.

120.   Based upon an agreement between the Parties, the Data Analysis Unit conducted an analysis of the backlog UOF cases that are now considered a Level 1 UOF due to the new policy changes and the Third Amended CASA. These cases (143) will be investigated only for any potential criminality, lawful objective, if the force was in or out of policy and for potential policy violations. UOF reporting and data tracking was developed, along with an APD Course of Business ("COB") memorandum outlining the review process for cases

assigned to both the IAFD Level 1 Team and EFIT for investigation. Statistical data from this endeavor is included in this report.

121.    Pursuant to the SOW, EFIT, when appropriate and/or warranted, will make observations and recommendations in its report. The final reports and recommendations are sent to Deputy Chief Lowe who responds to EFIT, in writing, within 30 days.  Deputy Chief Lowe has been extremely responsive to EFIT's recommendations.

122.    While not a requirement in the SOW, EFIT Executives discussed with Deputy Chief Lowe the need to issue a letter to the involved Officer(s) similar to the letter recommended by EFIT that is utilized by IAFD when a case is closed. This letter will include whether the closed case was within or outside APD policy, EFIT's observations and recommendations and any administrative investigations that would have occurred if the investigation were completed in a timely manner. This letter serves not only as notification to the Officer(s), but as a best practice to facilitate Constitutional policing.

123.    Based upon an agreement between the Parties, the Data Analysis Unit conducted an analysis of the backlog UOF cases that are now considered a Level 1 UOF due to the new policy changes and the Third Amended CASA. These cases (143) will be investigated only for any potential criminality, lawful objective, if the force was in or out of policy and for potential policy violations. UOF reporting and data tracking was developed, along with an APD Course of Business ("COB") memorandum outlining the review process.

**EFIT BACKLOG INVESTIGATIONS AS OF – September 19, 2023**

| Total Backlog | 667 |
|---|---|
| Assigned to EFIT Investigators | 284 |

| | |
|---|---|
| Level 1 Cases Assigned to APD Level 1 Team | 33 |
| Level 1 Cases Assigned to EFIT | 50 |
| **Total Assigned Cases** | **365** |
| 12 UOF Investigations Previously Completed by IAFD Closed by EFIT | 12 |
| EFIT Investigators - UOF Investigations Closed | 262 |
| APD Level 1 Team and EFIT Level 1 UOF Investigations Closed | 62 |
| Total Completed | **336** |
| Total Case with Insufficient Documentation to Investigate | 3 |
| **Level 1 Cases Submitted for Review (pending)** | **32** |
| **Level 1 Cases determined to be Level 2/3 (pending)** | **49** |
| **Investigations Pending** | **274** |

124.    The following table captures the level of force applied:

| Level of Force Applied | Number of Cases |
|---|---|
| Low Level Control | **17** |
| Level 1 | **63** |
| Level 2 | **184** |
| Level 3 – OIS | **8** |
| Level 3 | **59** |
| Non-Force | **5** |
| Total | **336** |

125.    The following table captures the highest level of force applied and the number of out-of-policy finding:

| Type of Force Applied | Number of Cases | Cases Out of Policy |
|---|---|---|

| | | |
|---|---|---|
| OIS | 8 | 2 |
| Intermediate Weapon System | 49 | 9 |
| Empty Hand Takedown | 148 | 2 |
| Empty Hand Control | 70 | 1 |
| Handcuffing w/ Injury | 12 | 1 |
| SOD | 16 | 0 |
| K-9 | 10 | 0 |
| Low Level Control/Non-Force | 22 | 0 |
| PIT | 1 | 1 |
| Total | 336 | 16 |

126.    If an APD Officer is identified as a High Incident Officer, upon completion of all cases involving the Officer, the EFIT Executive team will conduct a review and issue a memorandum detailing any patterns or practices identified.

127.    The City responds to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA.

> A.  the number of APD officers who were involved in a use-of-force event between
>
> January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;
>
> B.  the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;

C.   the EFIT recommendations made pursuant to the SOW that APD adopted or

will adopt, and APD's plan for implementing them; and

D.   the EFIT recommendations made pursuant to the SOW that APD rejected or

will reject, and the rationales for APD's decisions to reject each

recommendation.

(Amended Stipulated Order Paras. C7 through C11).

**Upcoming Dates**

128.   EFIT looks forward to presenting this Eighth Quarterly Report to the Court and all

parties.

129.   On or about January 6, 2024, EFIT will file its Ninth Quarterly Report with the Court and

EFIT 2 will file its Sixth Quarterly Report.

130.   Once again, we thank the Court for the opportunity to submit this report. I, and my team,

are available should the Court have any questions or need any additional information

concerning EFIT, EFIT 2 or their attendant mandates.

Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

Encls.

37