IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

    v.                                                                                   1:14-cv-1025 JB/JFR

THE CITY OF ALBUQUERQUE,

    **Defendant,**

    v.

THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,

    **Intervenor.**

## JOINT MOTION FOR PARTIAL TERMINATION

Plaintiff, United States of America, and Defendant, City of Albuquerque (collectively, "the Parties"), file this joint motion of partial termination, with the consent of Intervenor, Albuquerque Police Officers' Association ("APOA"), and approval of the Independent Monitor, regarding the termination of certain portions of the Court-Approved Settlement Agreement ("CASA").

## BACKGROUND

This lawsuit was originally filed in 2014 after an investigation by the United States determined that the Albuquerque Police Department ("APD") had engaged in a pattern or practice of use of excessive force, including deadly force, in violation of the Fourth Amendment to the United States Constitution.  *See* Findings Letter 1 (Doc. 1-1).  The Parties worked together to craft a solution to the issues identified by the United States and submitted the first CASA for approval on November 14, 2014.  *See* Doc. 9.  The Parties and the Independent Monitor worked

for the next several years to achieve compliance with the CASA. In 2017, 2019, and 2023, the Parties submitted the First, Second, and Third Amended CASAs, respectively. *See* First Amended and Restated Court-Approved Settlement Agreement (Doc. 247-1), Second Amended and Restated Court-Approved Settlement Agreement (Doc. 365-1), Third Amended and Restated Court-Approved Settlement Agreement ("3d Amended CASA") (Doc. 988-2).

The Monitor's methodology utilizes three levels to assess the City's compliance with the requirements of the CASA. "To obtain primary compliance, APD must have in place operational policies and procedures designed to guide officers, supervisors, and managers in the performance of the tasks outlined in the CASA." *See, e.g.*, Monitor's 17th Rep. ("IMR-17") 7 (Doc. 990).[1] "Secondary compliance is attained by providing acceptable training related to supervisory, managerial, and executive practices designed to (and effective in) implementing the policy as written." *Id*. "Operational compliance is attained at the point that the adherence to policies is apparent in the day-to-day operation of the agency." *Id*. Although the City rather quickly attained high levels of primary and secondary compliance, the City has faced several difficulties in achieving operational compliance with CASA requirements. However, beginning with the Monitor's 14th Report ("IMR-14"), the City began to make consistent and sustained progress towards achieving operational compliance. *See* IMR-14 (Doc. 872) (finding 62% operational compliance, an increase of 3% from Monitor's 13th Report); Monitor's 15th Report ("IMR-15") (Doc. 910) (finding 70% operational compliance, an increase of 8% from IMR-14); Monitor's 16th Report ("IMR-16") (Doc. 959) (finding 80% operational compliance, an increase of 10% from IMR-15); IMR-17 (Doc. 990) (finding 92% operational compliance, an increase of 12% from IMR-16).

---

[1] Page citations refer to ECF numbering.

Specifically, in IMR-17, the Monitor made several observations regarding APD's progress. The Monitor noted APD had moved "several of the more difficult compliance processes" into operational compliance. IMR-17 at 3 (Doc. 990). All training requirements as well as paragraphs regarding the Crisis Intervention Unit are now in operational compliance. *Id.* "IAFD [Internal Affairs Force Division] and EFIT [External Force Investigation Team] continue to generate industry-standard force investigations, and the rate of uses of force has remained relatively stable over the last three reporting periods, with these levels significantly lower than three years ago." *Id.* The Monitor commented that since IMR-14, APD has demonstrated "a new attitude" towards CASA compliance, indicating that the agency "is committed to full compliance with the CASA." *Id.* at 194. The Monitor concluded that APD has reached a "significant milestone" in this litigation, with primary and secondary compliance findings at 100% and operational compliance "at a new high" of 92%. *Id.* at 193.

As the City has achieved sustained operational compliance with a number of paragraphs, the Parties have agreed that the Monitor may refrain from reviewing those paragraphs, pursuant to Paragraph 302.[2] *See* Joint Notice of the Parties' Agrmt. for the Monitor to Refrain from Conducting Compliance Reviews of Certain CASA Rqmts. (Doc. 948); *see also* Amended Joint Notice of the Parties' Second Agrmt. for the Monitor to Refrain from Conducting Compliance Reviews of Certain CASA Rqmts. (Doc. 979). Instead, the City is assessing its own compliance with those CASA requirements and reporting the results to the Court, the United States, and the

---

[2] Paragraph 302 provides: "[w]here the Parties agree, the Monitor shall refrain from conducting a compliance review of a requirement previously found by the Monitor to be in sustained compliance for at least two years pursuant to audits or reviews, or where outcome assessments or other information indicate that the outcome intended by the requirement has been achieved." 3d Amended CASA ¶ 302 (Doc. 988-2).

public. *See, e.g.*, City's Notice of Filing Self-Assessment Report (Doc. 974). Currently, approximately one-third of the CASA's requirements are in self-assessment.

**ARGUMENT IN FAVOR OF PARTIAL TERMINATION**

The Parties believe that the City's consistent improvement in operational compliance over the last two years demonstrates the City's ability to independently sustain this operational compliance moving forward. Under the CASA, termination is appropriate when "the City has been in full and effective compliance…for two years." 3d Amended CASA ¶ 342 (Doc. 988-2). In addition, the CASA permits the Parties to "make changes, modifications, and amendments to [the] Agreement." *Id.* ¶ 338. Accordingly, the Parties wish to modify the CASA by removing certain sections and subsections in which all paragraphs have been in operational compliance for at least two years and under self-assessment, *i.e.*, paragraphs with which APD has independently sustained "full and effective compliance." This partial termination will not affect the validity of the remaining paragraphs in the CASA, over which this Court will retain jurisdiction.

Specifically, the Parties move to terminate the following paragraphs of the CASA:

- Paragraphs 81-85, regarding the Multi-Agency Task Force;[3]
- Paragraphs 90-105, regarding Specialized Tactical Units;
- Paragraphs 106-109, regarding Specialized Investigative Units;[4]
- Paragraphs 155-161, regarding the Field Training Evaluation Program;[5]
- Paragraphs 164-168, regarding Public Information on Civilian Complaints;[6]
- Paragraphs 232-246, regarding Recruiting, Selection, and Promotion;[7] and

---

[3] The City's first self-assessment report was filed on January 5, 2023. *See* (Doc. 974-1).
[4] The City's first self-assessment report was filed on August 22, 2023. *See* (Doc. 1010-1).
[5] The City's first self-assessment report was filed on July 19, 2021. *See* (Doc. 1005-1).
[6] The City's first self-assessment report was filed on July 19, 2023. *See* (Doc. 1004-1).
[7] The City's first self-assessment report was filed on February 27, 2023. *See* (Doc. 983-1).

- Paragraphs 247-253, regarding Officer Assistance and Support.[8]

## PROCEDURE FOR MODIFICATION OF CASA REQUIREMENTS

Pursuant to the CASA, when the Parties jointly stipulate to a change, modification, or amendment to the CASA, it goes into effect without further action of the Court 45 days after the filing of the joint stipulation.  *See* 3d Amended CASA ¶ 338 (Doc. 988-2).  However, the Court has instructed the Parties, when submitting modifications to the CASA under Paragraph 338, to file briefing explaining: (1) the nature and purpose of the change; (2) a description of the practices or events necessitating the change; and (3) an explanation of why each party consents to the change.  *See* Mem. Op. and Order Approving Settlement Agrmt. 13 (Doc. 134).[9]  Accordingly, the Parties follow the Court's direction here.

### A. Nature and purpose of the change

The Parties seek to terminate certain sections and subsections of the CASA based upon the City's demonstration of independent, sustained compliance with these specific paragraphs.  The purposes of this change are to prepare the City for the ultimate conclusion of this lawsuit and to allow the Parties and the Monitor to focus on the City achieving and sustaining operational compliance with the remaining paragraphs.  The Parties agree that this type of partial termination is an appropriate modification to the CASA pursuant to Paragraph 338 and is in keeping with the intent of Paragraph 342, which allows for termination when the City has demonstrated "full and effective compliance . . . for two years."  3d Amended CASA ¶ 342 (Doc. 988-2).

---

[8] The City's first self-assessment report was filed on March 21, 2023.  *See* (Doc. 987-1).
[9] Although this Memorandum Opinion and Order addressed a prior version of the CASA, the Parties have followed this same procedure with the Second and Third Amended and Restated CASAs. *See, e.g.*, Mot. for Approval of Third Amended and Restated CASA (Doc. 988).

5

### B. Practices or Events Necessitating the Change

The City has demonstrated a willingness and ability to comply with the goals of the CASA, which itself was drafted to remedy the United States' findings that APD engaged in a pattern or practice of unconstitutional force. Specifically, the City has achieved and maintained operational compliance with the sections and subsections identified above for at least two years. The Tenth Circuit has indicated that a consent decree should be kept in place "as long as necessary to cure an unlawful condition." *Jackson v. Los Linas Cmty. Program*, 880 F. 3d 1176, 1192 (10th Cir. 2018) (citing *Missouri v. Jenkins*, 515 U.S. 70, 88–89 (1995)). However, "when the objects of the decree have been attained, responsibility for discharging the [government's] obligations [should be] returned promptly to the [government] and its officials." *Id.* at 1193 (quoting *Frew v Hawkins*, 540 U.S. 431, 441 (2004)). Here, the Parties agree that the City has attained certain "objects of the decree," and has demonstrated that it can be solely responsible for discharging those obligations. Partial termination recognizes the City's achievement and also frees up resources among the Parties and the Monitor to focus on aspects of the CASA where the City has not yet attained "full and effective compliance."

### C. Parties', Intervenor's, and Independent Monitor's Statements on Why They Consent to Partially Terminating the CASA

#### 1. Statement of the United States

The United States' goal in this litigation is "to remedy the [City's] violations of constitutional and federal law and to ensure that the Albuquerque Police Department implements sustainable reforms that will result in effective and constitutional policing." Comp. 1 (Doc. 1). The City has demonstrated that it has implemented such sustainable reforms in the sections and subsections of the CASA identified in this joint motion. Terminating these portions of the CASA recognizes Albuquerque's strides towards constitutional policing, while allowing the

Parties and the Monitor to focus their efforts on the remaining areas of the CASA where the City has not yet achieved "full and effective compliance."

### 2. Statement of the City of Albuquerque

The City has worked diligently to achieve and maintain compliance with over a third of the CASA's requirements. As the Monitor remarked in IMR-17, this report was the fourth report in a row that showed significant improvements in operational compliance. *See* (Doc. 990), p. 194. "What [the Monitor has] seen at APD in the 17th monitoring period indicates an agency that is committed to full compliance with the CASA." *Id.* Achieving and maintaining compliance with these paragraphs demonstrates an ability and commitment by the City to implement the objectives of the CASA and the express requirements of these paragraphs. The United States Supreme Court has repeatedly cautioned courts to be mindful of the consequences of institutional reform injunctions. "Injunctions of this sort bind state and local officials to the policy preferences of their predecessors and may thereby 'improperly deprive future officials of their designated legislative and executive powers.'" *Horne v. Flores*, 557 U.S. 433, 449 (2009) (quoting *Frew v. Hawkins*, 540 U.S. 431, 441 (2004)). States and localities "depen[d] upon successor officials, both appointed and elected, to bring new insights and solutions to problems of allocating revenues and resources." *Frew*, 540 U.S. at 442. "Where 'state and local officials ... inherit overbroad or outdated consent decrees that limit their ability to respond to the priorities and concerns of their constituents,' they are constrained in their ability to fulfill their duties as democratically-elected officials." *Horne*, 557 U.S. at 449 (citation omitted). These federalism concerns "are heightened when, as in these cases, a federal-court decree has the effect of dictating state or local budget priorities." *Id.* at 448. The City remains committed to the overall objectives of the CASA regardless of whether it continues to remain subject to these specific

paragraphs. However, elimination of required review of particular paragraphs will allow the Parties to focus the litigation itself on the remaining outstanding areas of compliance and is in line with the United States Supreme Court's guidance on this topic.

### 3. Statement of the Albuquerque Police Officers' Association

The APOA approves of the Parties' proposed Motion for Termination.

### 4. Statement of the Independent Monitor

The Monitor concurs with the Parties' motion for partial termination of the Third Amended and Restated Court-Approved Settlement Agreement in re 14-cv-1025 JB/JFR. The City of Albuquerque continues to exhibit behavior that indicates a commitment to full compliance with the requirements of the CASA, resulting in strong progress during the most recent reporting periods. The City continues its past performance by bringing additional paragraphs into full compliance with the requirements of the CASA. Most importantly, these newly compliant paragraphs focus on key aspects of the CASA, including supervision, leadership, and discipline, which are key elements of long-term "full and effective compliance."

**WHEREFORE**, the Parties and the Intervenor, with the concurrence of the Independent Monitor, respectfully submit this Notice of Partial Termination of certain sections and sub-sections of the Third Amended and Restated CASA.

October 27, 2023                                             Respectfully submitted,

                                              Plaintiff UNITED STATES OF AMERICA:

                                              ALEXANDER M.M. UBALLEZ
United States Attorney
District of New Mexico
AJA BROOKS
Executive Assistant U.S. Attorney

    */s/ Ruth Keegan*
RUTH KEEGAN
Civil Division Chief
U.S. Attorney's Office
District of New Mexico
P.O. Box 607
Albuquerque, NM 87103
Telephone: (505) 346-7274

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
PAUL KILLEBREW
Deputy Chief
JEAN ZACHARIASIEWICZ
PATRICK KENT
JARED HAGER
MELODY JOY FIELDS
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 305-3229
Jean.Zachariasiewicz@usdoj.gov

Defendant CITY OF ALBUQUERQUE

   *Approved by email*
TAYLOR S. RAHN
Robles, Rael & Anaya, PC
500 Marquette Ave. NW, Suite 700
Albuquerque, NM 87102
(505) 242-2228
taylor@roblesrael.com

LAUREN KEEFE
City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
lkeefe@cabq.gov
Intervenor ALBUQUERQUE POLICE OFFICERS' ASSOCIATION:

FREDERICK M. MOWRER, Esq.
Sanchez, Mowrer & Desiderio, P.C.
JOHN JAMES D'AMATO, JR.
The D'Amato Law Firm, P.C.
P.O. Box 1966 1112 Second Street N.W.
Albuquerque, NM 87103 Albuquerque, NM 87102
(505) 247-4321
(505) 246-0045

Independent Monitor JAMES D. GINGER, Ph.D.

JAMES D. GINGER, Ph.D.
Public Management Resources, Inc.
6877 Francis Marion Road
Pamplico, SC 29583
(843) 493-6293
pmrinc@mac.com

## CERTIFICATE OF SERVICE

     I hereby certify that on October 27, 2023, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

 /s/ Ruth Keegan
Ruth Keegan