**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

    **v.**                                 **1:14-cv-1025 JB/SMV**

**THE CITY OF ALBUQUERQUE,**

      **Defendant,**

    **v.**

**THE ALBUQUERQUE POLICE
OFFICERS' ASSOCIATION,**

      **Intervenor.**

**<u>SECOND JOINT MOTION FOR PARTIAL TERMINATION</u>**

Plaintiff, United States of America, and Defendant, City of Albuquerque (collectively, "the Parties"), file this second joint motion of partial termination, with the consent of Intervenor, Albuquerque Police Officers' Association ("APOA"), and approval of the Independent Monitor, regarding termination of certain portions of the Court-Approved Settlement Agreement ("CASA").

## BACKGROUND

This lawsuit was originally filed in 2014 after an investigation by the United States determined that the Albuquerque Police Department ("APD") had engaged in a pattern or practice of use of excessive force, including deadly force, in violation of the Fourth Amendment to the United States Constitution. *See* Findings Letter 1 (Doc. 1-1). The Parties worked together to craft a solution to the issues identified by the United States and submitted the first CASA for approval on November 14, 2014. *See* Doc. 9. The Parties and the Independent Monitor worked for the next several years to achieve compliance with the CASA. In 2017, 2019, and 2023, the Parties submitted the First, Second, and Third Amended CASAs, respectively.

*See* First Amended and Restated Court-Approved Settlement Agreement (Doc. 247-1), Second Amended and Restated Court-Approved Settlement Agreement (Doc. 365-1), Third Amended and Restated Court-Approved Settlement Agreement ("3d Amended CASA") (Doc. 988-2).

The Monitor's methodology utilizes three levels to assess the City's compliance with the requirements of the CASA. "To obtain primary compliance, APD must have in place operational policies and procedures designed to guide officers, supervisors, and managers in the performance of the tasks outlined in the CASA." *See, e.g.*, Monitor's 17th Rep. ("IMR-17") 7 (Doc. 990).[1] "Secondary compliance is attained by providing acceptable training related to supervisory, managerial, and executive practices designed to (and effective in) implementing the policy as written." *Id.* "Operational compliance is attained at the point that the adherence to policies is apparent in the day-to-day operation of the agency." *Id.* Although the City rather quickly attained high levels of primary and secondary compliance, the City has faced several difficulties in achieving operational compliance with CASA requirements. However, beginning with the Monitor's 14th Report ("IMR-14"), the City began to make consistent and sustained progress towards achieving operational compliance. *See* IMR-14 (Doc. 872) (finding 62% operational compliance, an increase of three percentage points from Monitor's 13th Report); Monitor's 15th Report ("IMR-15") (Doc. 910) (finding 70% operational compliance, an increase of eight percentage points from IMR-14); Monitor's 16th Report ("IMR-16") (Doc. 959) (finding 80% operational compliance, an increase of ten percentage points from IMR-15); IMR-17 (Doc. 990) (finding 92% operational compliance, an increase of twelve percentage points from IMR-16); Monitor's Eighteenth Report ("IMR-18") (Doc. 1023) (finding 94% operational compliance, an increase of two percentage points from IMR-17); Monitor's Nineteenth Report ("IMR-19") (Doc. 1054) (finding 96% operational compliance, an increase of two percentage points from IMR-18).

---

[1] Page citations refer to ECF numbering.

Though APD's compliance rating changed by only two percentage points between IMR-18 and IMR-19, the Monitor remarked in IMR-19, "[t]he change in compliance levels does not effectively demonstrate the progress made by APD and CPOA during this reporting period." *See* IMR-19, Doc. 1054 at 115. The Monitor also stated, "[t]he number of APD self-monitored paragraphs is at the highest point in the history of the CASA compliance efforts. This is a significant achievement, indicating that APD is now capable of assuming responsibility for oversight of CASA requirements and is not reliant on the monitoring team to do so." *Id.* at 3. The Monitor noted all CASA paragraphs regarding discipline are now compliant, another important milestone. *See id.* Specifically, the Monitor remarked, "APD has demonstrated its commitment to policies, supervisory oversight, and, importantly, a disciplinary process that holds officers accountable when necessary." *Id.* at 115. Moreover, the Monitor stated that the limited issues identified in force investigations, as well as the continued decrease in Level 2 and 3 uses of force, are "strong evidence that APD's policies, supervisory oversight, and disciplinary systems are working as designed." *Id.* at 3. Internal Affairs Force Division's (IAFD) success is especially significant as the External Force Investigation Team ("EFIT") ceased providing oversight over current force investigations prior to the close of the IMR-19 monitoring period and the Monitor's sample included investigations completed by fully autonomous IAFD investigators, without EFIT oversight. *See* Notice Regarding Transition of the Investigation of All New Level 2 and 3 Force Investigations from the External Force Investigation Team Back to the Albuquerque Police Department's Internal Affairs Force Division (Doc. 1029) (filed Dec. 18, 2023). In IMR-19, the Monitor continued to highlight APD's dedication to achieving and sustaining compliance with CASA requirements.

As the City has achieved sustained operational compliance with several paragraphs, the Parties have agreed that the Monitor may refrain from reviewing those paragraphs, pursuant to Paragraph 302.[2] *See* Joint Notice of the Parties' Agreement for the Monitor to Refrain from Conducting Compliance Reviews of Certain CASA Requirements (Doc. 948); *see also* Amended Joint Notice of the Parties' Second Agreement for the Monitor to Refrain from Conducting Compliance Reviews of Certain CASA Requirements (Doc. 979); Joint Notice of the Parties' Third Agreement for the Monitor to Refrain from Conducting Compliance Reviews of Certain CASA Requirements (Doc. 1009); Joint Notice of the Parties' Fourth Agreement for the Monitor to Refrain from Conducting Compliance Reviews of Certain CASA Requirements (Doc. 1041). Instead, the City is assessing its own compliance with those CASA requirements and reporting the results to the Court, the United States, and the public. *See, e.g.*, City's Notice of Filing Self-Assessment Report (Doc. 974); City's Notice of Filing Self-Assessment Report (Doc. 1042); City's Notice of Filing Self-Assessment Report (Doc. 1048). Currently, approximately two-thirds of the CASA's requirements are in self-assessment.

In addition to moving paragraphs into self-assessment, the parties have terminated certain sections and subsections from the CASA. On October 27, 2023, the Parties filed a Joint Motion for Partial Termination (Doc. 1022), removing fifty-nine paragraphs from the Third Amended CASA on topics including the Multi-Agency Task Force; Specialized Tactical Units; Specialized Investigative Units; Field Training Evaluation Program; Public Information on Civilian Complaints; Recruiting, Selection, and Promotion; and Officer Assistance and Support. The Court entered an Order granting the Motion on December 8, 2023 (Doc. 1027).

---

[2] Paragraph 302 provides: "[w]here the Parties agree, the Monitor shall refrain from conducting a compliance review of a requirement previously found by the Monitor to be in sustained compliance for at least two years pursuant to audits or reviews, or where outcome assessments or other information indicate that the outcome intended by the requirement has been achieved." 3d Amended CASA ¶ 302 (Doc. 988-2).

For ease of reference, the Parties have attached a document setting out CASA paragraphs that have been moved into self-monitoring and self-assessment or terminated, as well as the additional paragraphs proposed for termination herein. *See* Ex. 1.

## ARGUMENT IN FAVOR OF PARTIAL TERMINATION

The Parties believe that the City's consistent improvement in operational compliance over the last two-and-a-half years demonstrates the City's ability to independently sustain this operational compliance moving forward. Under the CASA, termination is appropriate when "the City has been in full and effective compliance…for two years." 3d Amended CASA ¶ 342 (Doc. 988-2). In addition, the CASA permits the Parties to "make changes, modifications, and amendments to [the] Agreement." *Id.* ¶ 338. Accordingly, the Parties seek to terminate sections and subsections of the CASA in which all paragraphs have been in operational compliance for at least two years, *i.e.*, paragraphs with which APD has sustained "full and effective compliance." This partial termination will not affect the validity of the remaining paragraphs in the CASA, over which this Court will retain jurisdiction.

Specifically, the Parties move to terminate the following ninety-three (93) paragraphs of the CASA:

- Paragraphs 18-23 (Use of Firearms); Paragraphs 39-40 (Crowd Control and Incident Management); Paragraphs 41-45 (Use of Force Reporting);

- Paragraphs 86-89 (Use of Force Training);

- Paragraphs 111-117 (Mental Health Response Advisory Committee);[3]

- Paragraphs 119-122 (Behavioral Health Training);

- Paragraphs 139-154 (Policies and Training);[4]

- Paragraph 163 (Reporting Misconduct);

---

[3] The first self-assessment for these provisions was filed on March 19, 2024. (Doc. 1048)
[4] The first self-assessment for these provisions was filed on October 18, 2023. (Doc. 1018).

- Paragraphs 169-182 (Complaint Intake: Classification and Training);[5]

- Paragraphs 195-197 (Preventing Retaliation);

- Paragraphs 209-211 (Supervisor Training);

- Paragraphs 220-231 (On-Body Recording Devices);

- Paragraphs 255-259 (Community and Problem-Oriented Policing);

- Paragraphs 260-265 (Community Meetings and Public Information); and

- Paragraphs 266-270 (Community Policing Councils)

**PROCEDURE FOR MODIFICATION OF CASA REQUIREMENTS**

Pursuant to the CASA, when the Parties jointly stipulate to a change, modification, or amendment to the CASA, it goes into effect without further action of the Court 45 days after the filing of the joint stipulation. *See* 3d Amended CASA ¶ 338 (Doc. 988-2). However, the Court has instructed the Parties, when submitting modifications to the CASA under Paragraph 338, to file briefing explaining: (1) the nature and purpose of the change; (2) a description of the practices or events necessitating the change; and (3) an explanation of why each party consents to the change. *See* Mem. Op. and Order Approving Settlement Agrmt. 13 (Doc. 134).[6] Accordingly, the Parties follow the Court's direction here.

**A.  Nature and purpose of the change**

The Parties seek to terminate sections and subsections of the CASA based upon the City's demonstration of sustained compliance with these specific paragraphs. Building on the Parties' first Joint Motion for Partial Termination (Doc. 1022), the purposes of this change are to continue to prepare the City for the ultimate conclusion of this lawsuit and to allow the Parties and the Monitor to focus on the

---

[5] The first self-assessment for these provisions was filed on July 19, 2023. (Doc. 1004).
[6] Although this Memorandum Opinion and Order addressed a prior version of the CASA, the Parties have followed this same procedure with the Second and Third Amended and Restated CASAs. *See, e.g.*, Mot. for Approval of Third Amended and Restated CASA (Doc. 988).

City achieving and sustaining operational compliance with the remaining paragraphs. The Parties agree that this type of partial termination is an appropriate modification to the CASA pursuant to Paragraph 338 and is in keeping with the intent of Paragraph 342, which allows for termination when the City has demonstrated "full and effective compliance…for two years." 3d Amended CASA ¶ 342 (Doc. 988-2).

### B.  Practices or Events Necessitating the Change

The City has demonstrated a willingness and ability to comply with the goals of the CASA, which itself was drafted to remedy the United States' findings that APD engaged in a pattern or practice of unconstitutional force. Specifically, the City has achieved and maintained operational compliance with the sections and subsections identified above for at least two years. The Tenth Circuit has indicated that a consent decree should be kept in place "as long as necessary to cure an unlawful condition." *Jackson v. Los Lunas Cmty. Program*, 880 F. 3d 1176, 1192 (10th Cir. 2018) (citing *Missouri v. Jenkins*, 515 U.S. 70, 88–89 (1995)). However, "when the objects of the decree have been attained, responsibility for discharging the [government's] obligations [should be] returned promptly to the [government] and its officials." *Id.* at 1193 (quoting *Frew v Hawkins*, 540 U.S. 431, 441 (2004)). Here, the Parties agree that the City has attained certain "objects of the decree," and has demonstrated that it can be solely responsible for discharging those obligations. Partial termination recognizes the City's achievement and also frees up resources among the Parties and the Monitor to focus on aspects of the CASA where the City has not yet attained "full and effective compliance."

### C.  Parties', Intervenor's, and Independent Monitor's Statements on Why They Consent to Partially Terminating the CASA

#### 1.  Statement of the United States

The United States' goal in this litigation has been "to remedy the [City's] violations of constitutional and federal law and to ensure that the Albuquerque Police Department implements sustainable reforms that will result in effective and constitutional policing." Comp. 1 (Doc. 1). The City

has demonstrated that it has implemented such sustainable reforms in the sections and subsections of the CASA identified herein, leading to the "full and effective compliance" mandated by the CASA for termination. The United States believes this partial termination will give the City further opportunity to demonstrate to the citizens of Albuquerque that it has made great strides towards constitutional policing, while allowing the Parties and the Monitor to focus their efforts on the remaining areas of the CASA where "full and effective compliance" is still elusive.

### 2.  Statement of the City of Albuquerque

The City has worked diligently to achieve and maintain compliance with over half of the CASA's requirements. The City has made steady progress since IMR-14 and has achieved a new high in compliance ratings in every report since then. Moreover, since the movement of certain paragraphs to self-assessment, the City has demonstrated its ability to maintain compliance absent oversight by the Monitor. Achieving and maintaining compliance with these paragraphs demonstrates an ability and commitment by the City to implement the objectives of the CASA and the express requirements of these paragraphs. The United States Supreme Court has repeatedly cautioned courts to be mindful of the consequences of institutional reform injunctions. "Injunctions of this sort bind state and local officials to the policy preferences of their predecessors and may thereby 'improperly deprive future officials of their designated legislative and executive powers.'" *Horne v. Flores*, 557 U.S. 433, 449 (2009) (quoting *Frew v. Hawkins*, 540 U.S. 431, 441 (2004). States and localities "depen[d] upon successor officials, both appointed and elected, to bring new insights and solutions to problems of allocating revenues and resources." *Frew*, at 442. "Where 'state and local officials ... inherit overbroad or outdated consent decrees that limit their ability to respond to the priorities and concerns of their constituents,' they are constrained in their ability to fulfill their duties as democratically-elected officials." *Horne*, 557 U.S. 449 (citation omitted). These federalism concerns "are heightened when, as in these cases, a federal-court decree has the effect of

dictating state or local budget priorities." *Id.* at 448. The City remains committed to the overall objectives of the CASA regardless of whether it continues to remain subject to these specific paragraphs. However, elimination of required review of particular paragraphs will allow the Parties to focus the litigation itself on the remaining outstanding areas of compliance and is in line with the United States Supreme Court's guidance on this topic.

### 3.  Statement of the Albuquerque Police Officers' Association

The APOA approves of the Parties' proposed Motion for Termination.

### 4.  Statement of the Independent Monitor

The Monitor concurs with the Second Joint Motion for Partial Termination. We find the data generated in our most recent report supports the motion as worded, and is reflective of the CASA-related work completed by APD.

**WHEREFORE**, the Parties and the Intervenor, with the concurrence of the Independent Monitor, respectfully submit this Second Motion for Partial Termination of certain sections and sub-sections of the Third Amended and Restated CASA.

May 13, 2024                                    Respectfully submitted,


                                                Plaintiff UNITED STATES OF AMERICA:

                                                ALEXANDER M.M. UBALLEZ
                                                United States Attorney
                                                District of New Mexico
                                                AJA BROOKS
                                                Executive Assistant U.S. Attorney


                                                ____*/s/ Ruth Keegan*_____
                                                RUTH KEEGAN
                                                Civil Division Chief
                                                U.S. Attorney's Office
                                                District of New Mexico
                                                P.O. Box 607

Albuquerque, NM 87103
Telephone: (505) 346-7274

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

STEVEN H. ROSENBAUM
Chief
PAUL KILLEBREW
Deputy Chief
JEAN ZACHARIASIEWICZ
PATRICK KENT
JARED HAGER
MELODY JOY FIELDS
Trial Attorneys
Special Litigation Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 305-3229
Jean.Zachariasiewicz@usdoj.gov

Defendant CITY OF ALBUQUERQUE

*Approved by email*
TAYLOR S. RAHN
Robles, Rael & Anaya, PC
500 Marquette Ave. NW, Suite 700
Albuquerque, NM 87102
(505) 242-2228
taylor@roblesrael.com

LAUREN KEEFE
City Attorney
P.O. Box 2248
Albuquerque, NM 87103
(505) 768-4500
lkeefe@cabq.gov

Intervenor ALBUQUERQUE POLICE OFFICERS' ASSOCIATION:

FREDERICK M. MOWRER, Esq.

Sanchez, Mowrer & Desiderio, P.C.
JOHN JAMES D'AMATO, JR.
The D'Amato Law Firm, P.C.
P.O. Box 1966 1112 Second Street N.W.
Albuquerque, NM 87103 Albuquerque, NM 87102
(505) 247-4321
(505) 246-0045

Independent Monitor JAMES D. GINGER, Ph.D.

JAMES D. GINGER, Ph.D.
Public Management Resources, Inc.
6877 Francis Marion Road
Pamplico, SC 29583
(843) 493-6293
pmrinc@mac.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2024, I filed the foregoing pleading electronically through the CM/ECF system which caused all parties or counsel and the Independent Monitor to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Ruth Keegan*
Ruth Keegan