# EXTERNAL FORCE INVESTIGATION TEAM'S ALBUQUERQUE POLICE DEPARTMENT'S USE OF FORCE BACKLOG INVESTIGATION FINAL REPORT

Prepared by: Darryl S. Neier, DLG LLC
EFIT Administrator
May 31, 2024

## TABLE OF CONTENTS

PAGE

Table of Exhibits ........................................................................................ 2

Introduction ............................................................................................... 3

EFIT Basis of Authority ............................................................................ 3

Backlog Findings ....................................................................................... 7

Highest Level of Force Applied Table ..................................................... 10

Decrease of Level 3 Use of Force Table .................................................. 10

Out of Policy Use of Force by Type of Force Table ................................ 11

Unreported Force Table ............................................................................ 14

Upcoming Dates ........................................................................................ 15

## TABLE OF EXHIBITS

Exhibit A - Amended Stipulated Order (Doc. 906) ........................................................................ 3

Exhibit B - EFIT Backlog Methodology (Doc. 912-1) .................................................................. 4

Exhibit C – Course of Business Memorandum ............................................................................... 6

Exhibit D –Process Narrative .......................................................................................................... 9

Exhibit E – Notice of Transition (Doc. 1029) ................................................................................. 9

**Introduction**

1. Please accept this final report from the External Force Investigation Team Backlog Team ("EFIT") on the Albuquerque Police Department ("APD") Use of Force ("UOF") Backlog Investigations, which is submitted pursuant to Paragraph 25 of the Scope of Work to Remedy the Backlog Force Cases (Doc. 906, Exhibit A).

2. The Amended Stipulated Order (Ex. A) requires EFIT 2 to investigate all UOF incidents occurring from January 1, 2020 through July 16, 2021, that the Albuquerque Police Department ("APD") did not investigate, in full or in part ("Backlog Force Cases"), in violation of the Court-Approved Settlement Agreement ("CASA") (Doc. 465-1).

3. In addition to various backlog investigative requirements, the Amended Stipulated Order (Doc. 906, Ex. 1, Para 24.) provides: "*The EFIT Administrator will file quarterly reports with the Court that provide status updates on the Backlog Force Cases, including cases assigned and completed, significant findings, recommended corrective actions, and analyses provided to the FRB.*" All prior quarterly reports that EFIT filed with the Court can be found on the DLG Consulting website: https://www.dlgconsult.us/albuquerque-pd-efit.

**Amended Stipulated Order and Backlog Force Cases ("EFIT 2")**

**EFIT's Basis and Authority**

4. EFIT 2's original backlog team consisted of two groups, with each group comprising a supervisor and three investigators. To capture certain efficiencies, the EFIT Executive Team reformed the teams and added a third and fourth team, comprised of a supervisor and investigators originally assigned to EFIT 1 - once a partial transition of the EFIT oversight to the Internal Affairs Force Division ("IAFD") was completed in December 2023.

5. In April 2022, EFIT executives, with the assistance of APD, drafted the Backlog Methodology that was circulated to APD, the Department of Justice ("DOJ") and the Independent Monitor ("IMT") for comment. Final approval was received on April 27, 2022, and the Backlog

Methodology was filed on May 16, 2022, (Doc. 912-1, Ex. B).

6. Specifically, EFIT invoked that portion of the Amended Stipulated Order as follows:

   A. *The City shall enable the EFIT Administrator to establish a Backlog Team to complete investigations of the Backlog Force Cases in accordance with the SOW attached to this Amended Order as Exhibit 1. The Parties shall jointly file a notice with the Court when the EFIT Backlog Team is fully constituted and commences operations.*

   B. *When the Backlog Team completes an investigation, the EFIT Administrator shall submit the case materials, including narratives and recommendations, to IAFD for final closure. Upon receiving a completed backlog case from EFIT, IAFD shall close the case by performing the administrative steps outlined in the revised IAFD Process Narrative, Doc. 862-1, ¶¶ 59–63.*

   C. *The Force Review Board[1] ("FRB") shall review completed EFIT Backlog Team investigations pursuant to the process identified in SOW, ¶ 20. Consistent with the CASA, Doc. 465-1, ¶ 78(b), any Backlog Team investigation reviewed by the FRB shall be presented by the EFIT Administrator or Deputy Administrator.*

   D. *Within 30 days after EFIT completes an investigation pursuant to the SOW, APD shall respond in writing to the recommendations, if any, made by the EFIT Administrator and/or the EFIT Executive Team in that investigation pursuant to the SOW.*

   E. *Within 90 days after EFIT completes the investigation of all Backlog Force Cases,*

---

[1] FRB - It is the policy of the Albuquerque Police Department to conduct timely, comprehensive, and reliable reviews of (a) Level 2 and Level 3 use of force investigations to ensure the findings are supported by a preponderance of the evidence, and (b) tactical activations in order to analyze and critique specialized response protocols (APD SOP 2-58).

> the City shall provide a written report to the EFIT Executive Team, DOJ, and the Independent Monitor, which includes, at a minimum:
>
> 1. the City's response to the EFIT Administrator's summary report, required by the SOW, ¶ 25, which identifies significant findings in individual cases, trends among all cases, root causes of the backlog, recommendations, and potential solutions to ensure against future IAFD investigations failing to be completed within timelines imposed by the CASA;
>
> 2. the number of APD officers who were involved in a use-of-force event between January 1, 2020, through July 16, 2021, which did not comply with APD policy or the law;
>
> 3. the number of use-of-force incidents occurring between January 1, 2020, through July 16, 2021, that did not comply with APD policy or the law;
>
> 4. the EFIT recommendations made pursuant to the SOW that APD adopted or will adopt, and APD's plan for implementing them; and
>
> 5. the EFIT recommendations made pursuant to the SOW that APD rejected or will reject, and the rationales for APD's decisions to reject each recommendation.

7. As EFIT investigators began the backlog investigations, it was noted that numerous UOF files (maintained by IAFD) were missing required critical documentation. EFIT requested an audit of the backlog cases. On September 26, 2022, IAFD completed this audit that determined that in 466 UOF cases, some or all of the required documentation was missing due to administrative and IAFD investigative negligence. This negligence occurred by IAFD Detectives not securing the required documents from APD field officers, nor once obtained, uploading the documents into IAPro:

   - 427 UOF cases did not contain Computer Aided Dispatch data;
   - 357 UOF cases did not contain IAFD Reports;
   - 417 UOF cases did not contain Admonishments;

5

- 333 UOF cases did not contain Witness Statements;

- 268 UOF cases did not contain UOF Narratives;

- 222 UOF cases did not contain Field and/or Supplemental Reports;

- 449 UOF cases did not contain photographs of the Individual's force injuries; and

- 125 UOF cases did not contain OBRDs.

8. EFIT has very experienced Investigators that could determine whether an officer's use of force utilization complied with APD policy, even if all required documentation was not present by using the remaining documents, and/or conducting interviews. It was determined that 6 UOF cases from the 466 files missing the required documentation were out of APD policy (6 applications of a 40 MM Impact Launcher, 1 application of an ECW, 1 application of an Empty Hand Takedown and Control and 1 Pursuit Intervention Technique – ("PIT") authorization). However, in cases with insufficient documentation to determine whether the force complied with APD policy, the matter was reviewed by the team supervisor and when the supervisor concurred, the EFIT Executive Team catalogued the case as "Insufficient Documentation for Evaluation." (Para. 23).

9. Based upon an agreement between the Parties, APD's Data Analysis Unit conducted an analysis of the backlog UOF cases that are now considered a Level 1 UOF due to policy changes and the Third Amended CASA. EFIT reviewed these cases only for potential criminality, identification of a lawful objective, if the force was in policy, and potential policy violations. UOF reporting and data tracking was developed, along with an APD Course of Business Memorandum (Ex. C) outlining the review process (Para. 25).

10. The EFIT Executive Team conducted several meetings with APD's Accountability Bureau, including the Compliance and Oversight Division and Data Analytics Division, and calculated

normative thresholds for UOF incidents to identify officer(s) who utilized force over the expected incident rate and are considered High Incident Officers.

11. With the assistance of APD's Accountability Bureau, the EFIT Executive Team obtained the data on all Backlog Force Cases identified in the Amended Stipulated Order (Doc. 906).

12. Additionally, the EFIT Executive Team worked with members of the Accountability Bureau to develop a dashboard that is similar to the current IAFD case tracking and management dashboard, stratifying the data distributed to APD, DOJ and the IMT when reporting on the Backlog Force Case investigations. This dashboard was successfully tested by the Data Analytics Division and EFIT.

13. As of this report, Messrs. Neier and Hurlock have presented 30 backlog out-of-policy cases to the FRB. Due to the FRB schedule, four backlog out-of-policy cases are pending presentation are pending in June 2024.

14. The EFIT Backlog investigations determined whether the Officers' actions were reasonable, necessary, proportional, minimal and within APD guidelines and SOPs.

15. All 667 UOF investigations were completed by the backlog team. Prior to closure, the EFIT Executive Team reviewed each investigation and forwarded EFIT's conclusions to APD and DOJ (Para. 23).

**Backlog Findings:**

16. EFIT was hired by the City on May 2, 2021, and started investigating cases with IAFD in July 2021. From May to July 2021, EFIT developed processes and procedures with APD and reviewed prior independent monitor reports ("IMR"). The UOF backlog should not come as a surprise to anyone as Dr. Ginger discussed the second[2] APD UOF backlog in IMR 13 that

---

[2] The first APD UOF Backlog was completed between 2018 and 2020.

covered monitoring periods August 2020 through January 2021. This document was filed with the Court on May 3, 2021, (Doc. 781).

17. Dr. Ginger again addressed the second UOF backlog (667 UOF cases, more than double the first APD UOF Backlog) in IMR-14 filed with the Court on November 12, 2021 (Doc. 872). This report recognizes that in the 12 months spanning July 2020 to July 2021, IAFD completed close to zero percent of backlog UOF investigations. This raised concerns that this backlog may be intentional to ensure that officers are not disciplined for known policy violations.

18. In addressing the Court on December 16, 2021, DOJ also discussed the 667 UOF backlog cases in that APD does not know by not investigating these UOF cases whether its officers are violating the Fourth Amendment. This issue is a large part of the consent decree.

19. The EFIT Executive Team also believes that APD UOF Backlog cases arose over time due to the lack of administrative leadership within IAFD for reasons.

20. With the potential of a Contempt of Court proceeding in early 2021, the DOJ and the City of Albuquerque ("City") entered into a Federal Stipulated Agreement to ensure APD conducted complete and thorough UOF investigations in a timely manner. On February 26, 2021, the United States District Court for the District of New Mexico granted a joint motion filed by the DOJ and the City of Albuquerque with the concurrence of the Independent Monitor Team. By entering a Stipulated Order (Ex. A), it established EFIT 1 in this case. (Doc. 720).

21. Once the Stipulated Order (Doc. 720) was issued, APD and IAFD, preliminary protocols, and retaining EFIT. EFIT was fully operational on June 20, 2022, and unfortunately, for months (reported in various quarterly reports) EFIT encountered instances where IAFD personnel were not cooperating with the process. The issues ranged from inadequate interviews, routine forms remaining incomplete, civilian investigators not receiving mentorship from IAFD detectives,

8

on-scene level of force categorization, failure to follow EFIT's recommendations, and cases approaching and almost exceeding the 90-day timeframe assumed by EFIT to complete the investigation pursuant to the Stipulated Order (Doc. 720). These were all violations of the EFIT Process Narrative (Ex. D) and increased cases in the backlog.

22. IAFD Command determined that they would focus on the current UOF investigations, so that EFIT would not assume any additional current UOF investigations allowing the Backlog Cases to be investigated by contract employees and Officers who were on "light duty." The EFIT Executive Team believes that these contract employees and Officers did not have the requisite training, nor the sense of urgency to complete the investigations. Discipline could not be imposed even on the most severe UOF backlog cases.

23. APD changed the IAFD command on June 13, 2022. This was a pivotal moment for APD and IAFD that ultimately led to a smooth transition to IAFD operating without EFIT oversight, which was completed in January 2024. A Notice of Transition (Doc. 1029) was filed with the Court on December 18, 2023 (Ex. E). As Mr. Neier testified at a status conference before the Court on January 4, 2024: *"this is not the same functioning APD that I observed when EFIT started in May 2021."* This transition allowed EFIT to move all of its investigators to the backlog team.

24. EFIT investigated 667 cases totaling 2,750 individual force applications events where Officers used force against a civilian. EFIT found that 34 of the 656[3] (5.18%) backlog cases involved at least one use of force that violated APD guidelines and policies. All out-of-policy cases, along with all backlog officer involved shootings, regardless of policy determination were

---

[3] 11 investigations failed to contain sufficient documentation for EFIT to render a final UOF determination.

9

detailed in an EFIT Investigative Report presented to the FRB pursuant to the Amended Stipulated Order (Doc. 906).

25. The following table captures the highest level of force applied:

| Highest Level of Force Applied | Number of Cases |
|---|---|
| Low Level Control | 18 |
| Level 1 | 98 |
| Level 2 | 403 |
| Level 3 – OIS | 8 |
| Level 3 | 123 |
| Non-Force | 6 |
| Sub-Total | 656 |
| Insufficient Documentation | 11 |
| Total | 667 |

26. In comparison, in 2023, APD reported a total of 517 UOF cases by force level. While this is not the same duration of time as the backlog cases, it does reveal a positive trend that APD Officers are reducing Level 3 use of force when effectuating arrests:

|  | Backlog | Percentage | APD 2023 | Percentage |
|---|---|---|---|---|
| L1 UOF | 98 | 14.93 | 111 | 21.47 |
| L2 UOF | 403 | 61.43 | 321 | 62.08 |
| L3 UOF | 131 | 18.75 | 85 | 16.44 |
| Total | 632 |  | 517 |  |

27. As discussed in paragraph 12 of this report, based upon an agreement between the Parties, the APD Data Analysis Unit conducted an analysis of the backlog UOF cases that are now considered a Level 1 UOF due to policy changes and the Third Amended CASA. A total of 143 cases were identified, of those 90 were closed based on the established Level 1

10

methodology, and 53 were determined to be a Level 2 or 3 UOF and investigated by the EFIT Backlog Team.

28. The following table captures the number of out-of-policy findings by type of force from the period of January 1, 2020, through July 16, 2021.

| Type of Force Applied | Number of Cases | Cases Out of Policy |
|---|---|---|
| OIS | 8 | 2 |
| Intermediate Weapon System | 97 | 24 |
| Empty Hand Takedown | 324 | 3 |
| Empty Hand Control | 124 | 1 |
| Handcuffing w/ Injury | 36 | 1 |
| Special Operations Division Activation | 24 | 0 |
| K-9 | 16 | 0 |
| Low Level Control or Non-Force | 23 | 0 |
| Pursuit Intervention Technique – PIT | 3 | 2 |
| Emergency Response Team | 1 | 1 |
| Total | 656 | 34 |

29. The highest category of out of policy cases concerned Intermediate Weapon Systems; of the 24 out of policy applications of force, EFIT determined that 16 were from ECW applications, 7 were 40 mm deployments and 1 was a Bean Bag deployment.

30. Pursuant to the SOW, EFIT, when appropriate and/or warranted, made observations and recommendations in the UOF reports. The final reports and recommendations were sent to the

11

APD Deputy Chief within the Accountability Bureau, who responded to EFITs recommendations.

31. In total, 143 case recommendations were made regarding policy, training, equipment, standard operating procedures, and updating IAPro (software and analytical tools) with correct information. In some instances, more than one recommendation was made within a particular UOF report.

32. For instance, early in the process, EFIT investigators identified a consistent concern regarding the placement of body-worn cameras (On-Body Recording Devices, "OBRDs") on officers' uniforms. Specifically, officers commonly wore their OBRDs on the duty belt, which frequently provided a poor view of incidents. In addition, such a placement obscured by clothing or equipment. EFIT noted this issue and recommended APD direct its employees to wear OBRD's on their chest. APD adopted EFIT's recommendation and emphasized that OBRDs be worn chest high through the issuance of Special Order 24-75 issued on May 24, 2024 and SOP 2-8 (Para. B-1a, effective 12/20/23) "*The OBRD shall be worn forward facing on the outermost garment at chest level, in a position intended to maximize the OBRD's ability to record*". A review of new use of force investigations verified Officers modified OBRD placement. This resulted in more productive and efficient use of the device.

33. EFIT found a high rate of out-of-policy ECW applications in many backlog investigations resulting in force applications. EFIT made recommendations when appropriate for additional officer training leading to the ECW application for inclusion in annual ECW training.

34. After the SOP 24-22 "Amendment to SOP 2-54 Use of Force: Intermediate Weapon Systems" was issued on February 7, 2024, amending sections A "ECW Modes", B "ECW Discharge Guidelines", E "ECW Post-use Guideline and Requirements" and H "Administrative

12

Procedure for the ECW." EFIT acknowledged that if an ECW activation and/or UOF incident took place today, certain out of policy findings concerning ECW use would be within APD policy.

35. Additionally, APD has transitioned to a new ECW, the Taser model 10. On February 8, 2024, Taser 10 Operator Certification Training began and was completed on April 12, 2024. Additional training dates will be conducted for those officers returning to duty from Military, Injury Leave, and Administrative Leave. As of April 22, 2024, 812 sworn officers attended the training, which is 100% of the active sworn personnel required to attend the training.

36. Per the express requirements of the Amended Stipulated Order, EFIT must identify and report on force trends within APD. As such, at the conclusion of this reporting period, EFIT identified three officers designated by the APD Performance Evaluation and Management System Section ("PEMS") as involved in multiple out-of-policy force issues. As two of these three officers are no longer with the Department, they are not addressed here. However, the third officer remains with APD and the EFIT Executive Team notified Deputy Chief Michael Smathers and Deputy Superintendent Eric Garcia and DOJ via a letter on May 6, 2024, of the findings associated with this specific employee.

37. On May 30, 2024, EFIT was notified by Deputy Chief Michael Smathers that the officer in question has completed mandatory retraining for five cases covering use of force investigation, crime scene management, use and application of the PRS restraint, handcuffing and personnel management/inadvertent covering with firearm and going hands on while having a rifle to overcome active resistance.

38. Finally of note, during the investigation of the UOF backlog, EFIT found 213 unreported force applications.[4]

39. The EFIT Investigation determined that 15 of the UOF applications were out of APD policy:

| Unreported Force | Unreported Force | Highest Level of Force |
|---|---|---|
| Baton Push, 40mm Pointing, Empty Hand Control, Rifle Pointing, and Handgun Pointing | 5 | 3 |
| Show of Force (Pointing a Firearm) x1 | 1 | 3 |
| Deployment of ECW, Empty Hand Control x2 | 3 | 3 |
| Show of Force – Rifle | 1 | 3 |
| UOF-Complaint of Pain | 1 | 2 |
| Resisted Handcuffing | 1 | 3 |
| Empty Hand Control x3 | 3 | 3 |

40. To ensure that UOF statistical data is accurate, when unreported force applications were identified (regardless of the application and the policy determinations), EFIT always recommended that IAPro be updated with the correct information so that the statistical information utilized by APD is accurate. By comparison, in 2023, APD reported that 61 unreported shows of force were investigated for potential misconduct. While this is a significant reduction from the number of unreported uses of force EFIT found in the backlog, APD should continue to be vigilant in ensuring that officers properly identify force applications.

---

[44] Due to the police union contact, all unreported UOF or out of policy uses of force cannot be subject to misconduct investigations.

14

41. On May 29, 2024, the local Albuquerque media reported that APD will start a return-to-work program to encourage retired law enforcement officers to return to the department under New Mexico House Bill 236. This Bill allows retired law enforcement officers to return to work in law enforcement and retain their pension payments. EFIT recommends that part of the vetting process would entail a review of the backlog cases, specifically those identified by PEMS as considered high incident officers.

**Upcoming Dates**

42. EFIT looks forward to presenting this final EFIT Backlog Quarterly Report to the Court and all parties on June 4, 2024.

43. Once again, we thank the Court for the opportunity to submit this report and serve in this important capacity. I, and my team, are available should the Court have any questions or need any additional information concerning EFIT or our backlog team EFIT 2.

Respectfully submitted,

*Darryl S. Neier*

Darryl S. Neier

Encls.